UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **NICOLE STEWART, ELIZABETH AGRAMONTE and SUMMER APICELLA, on behalf of themselves and all others similarly situated,** | Case No. 21-678 |
| *Plaintiffs*, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| **HAIN CELESTIAL GROUP, INC.,** | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT

Plaintiffs Nicole Stewart, Elizabeth Agramonte and Summer Apicella ("Plaintiffs"), by and through their counsel, on their own behalf and on behalf of all others similarly situated, bring this Class Action Complaint against Defendant Hain Celestial Group, Inc. ("Hain" or "Defendant") and allege the following facts in support of their claims against Hain based upon personal knowledge, where applicable, information and belief, and the investigation of counsel:

## I.  INTRODUCTION

1.    Parents and other caregivers, including Plaintiffs, reasonably believe that the baby food they purchase for their babies will be healthy, nutritious, and non-toxic, and that is what Hain wanted them to think.  Alarmingly, parents and Plaintiffs were wrong.  A recent report by the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform ("House Subcommittee") reveals that certain brands of commercial baby food – including Defendant Hain's Earth's Best Organic baby food (the "Tainted Baby Foods") – are tainted with significant and dangerous levels of toxic heavy metals, including arsenic, lead,

1

cadmium, and mercury. *See Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium and Mercury*, Staff Report Dated February 4, 2021, Subcommittee on Economic and Consumer Policy Committee on Oversight and Reform, U.S. House of Representatives (the "Congressional Report").[1]  Exposure to toxic heavy metals causes permanent decreases in IQ and endangers neurological development and long-term brain function, among numerous other deleterious alarming conditions and problems.

2.      Plaintiffs bring this class action against Defendant Hain for deceptive business practices, including misrepresentations and omissions, regarding the presence of dangerous levels of toxic heavy metals and other contaminants contained within its Earth's Best Organic baby foods that Plaintiffs purchased.  Plaintiffs seek injunctive and monetary relief on behalf of the proposed Class including (i) requiring full disclosure of all such substances and ingredients in Defendant's marketing, advertising, and labeling; (ii) requiring testing of all ingredients and final products for such substances; and (iii) restoring monies to the members of the proposed Class.

3.      No reasonable consumer purchasing baby foods or seeing Defendant's representations in advertising would expect the baby foods to contain dangerous levels of heavy metals or other undesirable toxins or contaminants.  Furthermore, reasonable consumers, like Plaintiffs, would consider the inclusion of dangerous levels of heavy metals or other undesirable toxins or contaminants a material fact when considering what baby food to purchase.

4.      Defendant intended for consumers to rely on its representations, and reasonable consumers did in fact so rely.  However, Defendant's business practices, representations and omissions were deceptive, misleading, unfair, and/or false because, among other things, the

---

[1] *Available at* https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (last accessed February 8, 2021).

Tainted Baby Foods contained undisclosed dangerous levels of toxic heavy metals or other undesirable toxins or contaminants.

5.     Plaintiffs bring this proposed consumer class action individually and on behalf of all other members of the Class (as defined herein), who, from the applicable limitations period up to and including the present, purchased for personal/household use and not resale any of Defendant's Tainted Baby Foods.   Through this action, Plaintiffs assert claims for unjust enrichment, and violations of New York General Business Law §§ 349 and 350 and the Florida Deceptive and Unfair Trade Practices Act, §501.201, *et. seq*., seeking monetary damages, injunctive relief, and all other relief as authorized in equity or by law.

## Parties

### *Plaintiffs*

6.     Plaintiff Nicole Stewart is a citizen and resident of the State of New York, residing in Hauppauge, New York.  During the applicable statute of limitations period, Plaintiff purchased Tainted Baby Foods that were manufactured and produced by Defendant Hain that have been found to contain dangerous levels of toxic heavy metals, including Earth's Best Organic Sweet Potato Cinnamon Flax & Oat Baby Meal.

7.     Plaintiff Elizabeth Agramonte is a citizen and resident of the State of Florida, residing in Naples, Florida.  During the applicable statute of limitations period, Plaintiff purchased Tainted Baby Foods that were manufactured and produced by Defendant Hain that have been found to contain dangerous levels of toxic heavy metals, including Earth's Best Organic Whole Grain Oatmeal Cereal.

8.     Plaintiff Summer Apicella is a citizen and resident of the State of New York, residing in Holbrook, New York.  During the applicable statute of limitations, Plaintiff purchased

Tainted Baby Foods that were manufactured and produced by Defendant Hain that have been found to contain dangerous levels of toxic heavy metals, including Earth's Best Organic Banana Raspberry & Brown Rice Pouch.

***Defendant Hain Celestial Group, Inc.***

9.      Defendant Hain Celestial Group, Inc. is a Delaware corporation with its principal place of business and headquarters located at 111 Marcus Avenue, #1, Lake Success, NY 11042. Defendant is a citizen of the State of New York.

10.      Defendant packages, labels, markets, advertises, formulates, manufactures, distributes, and sells its Tainted Baby Foods throughout the United States, including New York and Florida.

11.      Defendant's advertised mission is to "to be the leading marketer, manufacturer and seller of organic and natural better-for-you products."  Defendant repeatedly touts its commitment to and use of organic and non-GMO ingredients in its products, including the Tainted Baby Foods. Defendant emphasizes its ability to create and inspire "A Healthier Way of Life" for children through its products.[2]

12.      Defendant sells baby food products under the brand name "Earth's Best Organic." On its website, Defendant Hain describes its "Earth's Best Organic" line of products as "time-

_____

[2] http://www.hain.com/company/ (last accessed February 8, 2021).

trusted and safe" and claims said products "are made from pure ingredients to help children grow up strong and healthy:"[3]



13.     Defendant's products for infants include three (3) categories of food items: Organic Infant Cereal, Organic Baby Food Puree Pouches, and Organic Baby Food in Glass Jars.  The Organic Infant Cereal line of products includes Earth's Best Whole Grain Organic Oatmeal Cereal, Organic Rice Cereal, and Whole Grain Organic Multi-Grain Cereal.  Earth's Best makes numerous baby food products with ingredients that are tainted and contain dangerous levels of toxic heavy metals.

**Jurisdiction and Venue**

14.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d)(2), because at least one Class Member is of diverse

---

[3] http://www.hain.com/brands/#c5 (last accessed February 8, 2021).

state citizenship from Defendant, there are more than 100 Class Members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

15.     The Eastern District of New York has personal jurisdiction over Defendant as Defendant is headquartered in this District and conducts substantial business in this State and in this District through its headquarters, sale of products, and commercial website.

16.     Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant has its principal place of business in this District and because a substantial part of the events or omissions giving rise to the conduct alleged in this Complaint occurred in, were directed to, and were emanated from this District.

## II.     FACTUAL ALLEGATIONS

### Congressional Investigation Finds Dangerous Levels of Heavy Metals in Baby Foods

17.     On February 4, 2021, the House Subcommittee issued its Congressional Report detailing its findings that heavy metals, including arsenic, cadmium, lead, and mercury ("Heavy Metals"), were present in dangerously "significant levels" in numerous commercial baby food products.

18.     The Food and Drug Administration (the "FDA") and the World Health Organization ("WHO") have declared Heavy Metals dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects.  Even low levels of exposure can cause serious and often irreversible damage to brain development.  *See* Congressional Report at 2.  In fact, children's exposure to toxic heavy metals causes, among other things, permanent decreases in IQ, diminished future economic productivity, and increased risk of

future criminal and antisocial behavior.[4]  *See id*. at 9.  The FDA cautions that infants and children are at the greatest risk of harm from toxic heavy metal exposure.[5]

19.    On November 6, 2019, following reports alleging high levels of toxic heavy metals in baby foods, the House Subcommittee requested internal documents and test results from seven of the largest manufacturers of baby food in the United States, including both makers of organic and conventional products.  *See id*.  One of those companies was Defendant Hain, which sells baby food products under the brand name Earth's Best Organic.  *See id*.

20.    Hain responded to the House Subcommittee's requests and produced its internal testing policies, test results for ingredients and/or finished products, and documentation about what it did with ingredients and/or finished products that exceeded its internal testing limits.  *See id*.

21.    The FDA and other organizations have set rules and/or issued guidelines and recommendations as to the maximum allowable or advisable and safe levels of inorganic arsenic, lead, cadmium and mercury.  *See generally id*. at Point II.  The test results of Hain (Earth's Best Organic) baby foods and their ingredients eclipse those levels for inorganic arsenic, lead and cadmium and, shockingly, Hain does not even test for mercury in its baby food.  *See id*. at Findings, Paragraph 1.

22.    Hain (Earth's Best Organic) sold finished baby food products containing as much as 129 ppb inorganic arsenic.  Hain typically only tested its ingredients, not finished products. Documents show that Hain used ingredients testing as high as 309 ppb arsenic.  *See id*.

---

[4] Miguel Rodriguez-Barranco et al., *Association of Arsenic, Cadmium and Manganese Exposure with Neurodevelopment and Behavioral Disorders in Children:  A Systematic Review and Meta-Analysis* (April 9, 2013) – www.sciencedirect.com/science/article/abs/pii/S0048969713003409?via%3Dihub) (last accessed February 8, 2021).
[5] Food and Drug Administration, *Metals and Your Food* – www.fda.gov/food/chemicals-metals-pesticides-food/metals-and-your-food) (last accessed February 8, 2021).

23.     Hain (Earth's Best Organic) used ingredients containing as much as 352 ppb lead. Hain used many ingredients with high lead content, including 88 that tested over 20 ppb lead and six that tested over 200 ppb lead.  *See id*.

24.     Hain (Earth's Best Organic) used 102 ingredients in its baby food that tested over 20 ppb cadmium.  Some tested much higher, up to 260 ppb cadmium.  *See id*.

25.     Hain (Earth's Best Organics) does not even test for mercury in its baby food.  *See id*.

26.     Hain's internal company standards permit dangerously high levels of toxic Heavy Metals, and documents revealed that the Hain (Earth's Best Organic) has often sold foods that exceeded even its own inadequate internal standards.  For example, Hain's internal standard is 200 ppb for arsenic, lead and cadmium in some of its ingredients.  But Hain exceeded its internal policies, using ingredients containing 353 ppb lead and 309 ppb arsenic.  *See id*. at Findings, Paragraph 2.  Hain attempted to justify deviations above its internal ingredient testing standards based on "theoretical calculations," even after Hain admitted to the FDA that its internal testing underestimated final product toxic Heavy Metal levels.  *Id*.

27.     A secret industry presentation was made to federal regulators revealing increased risks of dangerous levels of toxic heavy metals in baby foods.  On August 1, 2019, the FDA received a secret slide presentation from Hain (Earth's Best Organic) which revealed (at Findings, Paragraph 4) that:

> Corporate policies to test only ingredients, not final products, underrepresent the levels of toxic heavy metals in baby foods.  In 100% of the Hain baby foods tested, inorganic arsenic levels were higher in the finished baby food than the company estimated they would be based on individual ingredient testing.  Inorganic arsenic was between 28% and 93% higher in the finished products.
>
> Many of Hain's baby foods were tainted with high levels of inorganic arsenic – half of its brown rice baby foods contained over 100 ppb inorganic arsenic; its average

brown rice baby food contained 97.62 ppb inorganic arsenic; and

Naturally occurring toxic heavy metals may not be the only problem causing the unsafe levels of toxic heavy metals in baby foods; rather, baby food producers like Hain may be adding ingredients that have high levels of toxic heavy metals into their products, such as vitamin/mineral pre-mix.

Hain's secret presentation made clear that ingredient testing is inadequate, and that only final product testing can measure the true danger posed by its baby foods.

28.     To this day, baby foods containing dangerous levels of toxic Heavy Metals bear no label or warning to parents.  But the Congressional Report makes clear that this is unacceptable and deceptive.

29.     As a result of its studies of toxic Heavy Metal levels in baby food, the House Subcommittee has recommended that parents should avoid baby foods that contain ingredients testing high in toxic Heavy Metals, such as rice products.  *See id*. at Findings, Paragraph 5.

30.     Baby food manufacturers hold a special position of public trust.  Consumers believe that they would not sell products that are unsafe.  Consumers also believe that the federal government would not knowingly permit the sale of unsafe baby food.  As the House Subcommittee's Report reveals, baby food manufacturers (including Hain (Earth's Best Organic)) have violated the public trust.  *See id*. at Findings, Paragraph 6.

31.     Hain does not regularly test finished baby food products for inorganic arsenic content.  It typically only test ingredients.  However, when Hain did test a small sample of finished product, it found 129 ppb inorganic arsenic.[6]

32.     The House Subcommittee's review of the ingredient test results reveals that Hain

---

[6] Hain, PowerPoint Presentation to FDA: FDA Testing Result Investigation (August 1, 2019) https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2/pdf (last accessed February 8, 2021).

routinely used ingredients with high levels of arsenic.  Hain used brown rice flour that had tested at 309 ppb arsenic.[7]  Hain likewise used a vitamin pre-mix containing 223 ppb arsenic, and raisin and wheat flour containing 200 ppb arsenic.[8]  The testing data shows that Hain used at least 24 ingredients after testing found that they contained more than 100 ppb arsenic, its already-dangerously-high internal standard for most ingredients.[9]

33.     Defendant sells baby food products under the brand name "Earth's Best Organic." On its website, Defendant Hain describes its "Earth's Best Organic" line of products as "time-trusted and safe" and claims said products "are produced without the use of potentially harmful pesticides."

34.     Based on Defendant's decision to advertise, label, and market its Tainted Baby Foods as healthy, nutritious, and safe for consumption, it had a duty to ensure that these statements were true and not misleading.  As such, Defendant knew or should have known the Tainted Baby Foods included undisclosed dangerous levels of Heavy Metals, and that these toxins can accumulate over time.

35.     The Tainted Baby Foods are available at numerous retail and online outlets.  The Tainted Baby Foods are widely advertised.

36.     As discussed above, the marketing of the Tainted Baby Foods also fails to disclose they contain or are at risk of containing dangerous levels of Heavy Metals or other undesirable toxins or contaminants.  Defendant intentionally omitted these contaminants in order to induce and

---

[7] *See* Hain, Raw Material Pre-Shipment Test Data History (December 11, 2019) https://oversight.house.gove/sites/democrats.oversight.house.gove/files/3_0.pdf (last accessed February 8, 2021).

[8] *See id.*

[9] *See* Hain, Raw Material Pre-Shipment Test Data History (December 11, 2019) https://oversight.house.gove/sites/democrats.oversight.house.gove/files/3_0.pdf (last accessed February 8, 2021.).

mislead reasonable consumers to purchase its Tainted Baby Foods.

## III.  CLASS ACTION ALLEGATIONS

37.      Pursuant to the provisions of Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal

Rules of Civil Procedure, Plaintiffs bring this class action on behalf of themselves and a nationwide

Class defined as:

> **All persons who, during the applicable statute of limitation period to the present, purchased Defendant's Tainted Baby Foods in the United States for personal/household use, and not for resale (the "Class").**

38.      Plaintiffs Stewart and Apicella also seek to represent a subclass (the "New York

Subclass"), defined as follows:

> **All persons who, during the applicable statute of limitation period to the present, purchased Defendant's Tainted Baby Foods in New York for personal/household use, and not for resale.**

39.      In addition, Plaintiff Agramonte also seeks to represent a subclass (the "Florida

Subclass"), defined as follows:

> **All persons who, during the applicable statute of limitation period to the present, purchased Defendant's Tainted Baby Foods in Florida for personal/household use, and not for resale.**

40.      Certification of Plaintiffs' claims for class-wide treatment is appropriate because

all elements of Fed. R. Civ. P. 23(a), (b)(2)-(3) are satisfied.  Plaintiffs can prove the elements of

their claims on a class-wide basis using the same evidence as would be used to prove those

elements in an individual action alleging the same claims.

41.      **Numerosity:** All requirements of Fed. R. Civ. P. 23(a)(l) are satisfied.   The

members of the Class are so numerous and geographically dispersed that individual joinder of all

Class members is impracticable.  While Plaintiffs are informed and believe that there are thousands

of members of the Class, the precise number of Class members is unknown to Plaintiffs.  Plaintiffs

believe that the identity of Class members is known or knowable by Hain or can be discerned through reasonable means.  Class members may be identified through objective means.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

42.    **Commonality and Predominance:** All requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) are satisfied.  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a.    whether Defendant engaged in the deceptive and misleading business practices alleged herein;

b.    whether Defendant knew or should have known that the Tainted Baby Foods contained dangerous levels of Heavy Metals;

c.    whether Defendant represented and continues to represent that the Tainted Baby Foods are healthy, nutritious, made from the best ingredients, and safe for consumption;

d.    whether Defendant represented and continues to represent that the manufacturing of its Tainted Baby Foods is subjected to rigorous quality standards;

e.    whether Defendant failed to disclose that the Tainted Baby Foods contained dangerous levels of Heavy Metals;

f.    whether Defendant had knowledge that those representations were false, deceptive, and misleading and were unjustly enriched by their actions;

g.  whether Defendant continues to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

h.  whether the misrepresented and/or omitted facts are material to a reasonable consumer;

i.  whether Defendant violated N.Y. Gen. Bus. Law § § 349 and 350;

j.  whether Defendant violated Florida's Deceptive and Unfair Trade Practices Act;

k.  whether Plaintiffs and members of the Class were injured and suffered damages;

l.  whether Defendant's misconduct proximately caused Plaintiffs' and the Class members' injuries; and

m.  whether Plaintiffs and members of the Class are entitled to damages and, if so, the measure of such damages.

43.     **Typicality:** All requirements of Fed. R. Civ. P. 23(a)(3) are satisfied.  Plaintiffs are members of the Nationwide Class and New York or Florida Subclasses, having purchased for personal/household use Tainted Baby Food products that were manufactured by Defendant. Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendant's conduct.

44.     **Adequacy of Representation:** All requirements of Fed. R. Civ. P. 23(a)(4) are satisfied.   Plaintiffs are adequate Class representatives because they are members of the Nationwide Class and New York or Florida Subclasses and their interests do not conflict with the interests of the other members of the Class that they seek to represent.  Plaintiffs are committed to pursuing this matter for the Class with the Class's collective best interests in mind.  Plaintiffs have

retained counsel competent and experienced in complex class action litigation of this type and Plaintiffs intend to prosecute this action vigorously.  Plaintiffs, and their counsel, will fairly and adequately protect the Class's interests.

45.     **Predominance and Superiority:** All requirements of Fed. R. Civ. P. 23(b)(3) are satisfied.  As described above, common issues of law or fact predominate over individual issues.  Resolution of those common issues in Plaintiffs' individual cases will also resolve them for the Class's claims.  In addition, a class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct.  Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

46.     **Cohesiveness:** All requirements of Fed. R. Civ. P. 23(b)(2) are satisfied.  Defendant has acted, or refused to act, on grounds generally applicable to the Class making final declaratory or injunctive relief appropriate.

## IV.    CAUSES OF ACTION

### COUNT I
**Violations of New York Consumer Law for Deceptive Acts and Practices**
**N.Y. Gen. Bus. Law § 349**
**(On Behalf of Plaintiffs Stewart and Apicella and the New York Subclass)**

47.    Plaintiffs Stewart and Apicella, individually and on behalf of the New York Subclass, repeat and re-allege the allegations contained in paragraphs 1 through 46 as though fully set forth herein.

48.    New York General Business Law ("NYGBL") § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in the state of New York.

49.    By reason of the conduct alleged herein, Defendant engaged in unlawful practices within the meaning of the NYGBL § 349.  The conduct alleged herein is a "business practice" within the meaning of the NYGBL § 349, and the deception occurred in part within New York State.

50.    Defendant's baby food contains unhealthy and dangerous levels of Heavy Metals.  Defendant knew or should have known that its baby food should not contain these levels of Heavy Metals and/or at the amounts found therein and that by manufacturing and providing for commercial sale baby food with toxic levels of Heavy Metals Plaintiffs Stewart and Apicella and the New York Subclass members were not getting healthy and/or nutritious food to help their children grow strong.

51.    Plaintiffs Stewart and Apicella and the New York Subclass members would not have purchased the baby food at issue for their children had they known the truth about the presence of dangerous levels of toxic Heavy Metals.  There is no other use for Defendant's tainted products.

52.     Defendant violated the NYGBL § 349 by using dangerous levels of toxic Heavy Metals and failing to properly represent, both by affirmative conduct and by omission, the nutritional value of Defendant's baby foods.

53.     If Defendant had not sold baby food tainted with Heavy Metals, Plaintiffs Stewart and Apicella and the other New York Subclass members would not have suffered the extent of damages caused by Defendant's sales.

54.     Defendant's practices, acts, policies and course of conduct violate NYGBL § 349 in that, among other things, Defendant actively and knowingly misrepresented or omitted disclosure of material information to Plaintiffs Stewart and Apicella and the New York Subclass members at the time they purchased the Tainted Baby Foods, including the fact that Defendant's products contained dangerous levels of toxic Heavy Metals; and Defendant failed to disclose and give timely warnings or notices regarding the presence of dangerous levels of toxic Heavy Metals in its baby food products that were purchased by Plaintiffs and the New York Subclass members.

55.     The aforementioned conduct constitutes an unconscionable commercial practice in that Defendant has, by the use of false statements and/or material omissions, failed to properly represent and/or concealed the presence of unacceptable dangerous levels of Heavy Metals in its baby foods.

56.     Members of the public, including Plaintiffs Stewart and Apicella and the members of the New York Subclass, were deceived by and relied upon Defendant's affirmative misrepresentations and failures to disclose.

57.     Such acts and practices by Defendant are and were likely to mislead a reasonable consumer purchasing baby food from Defendant.  Said acts and practices are material.  The sales of Defendant's Tainted Baby Foods in New York through such means occurring in New York were

consumer-oriented acts and thereby fall under the New York consumer protection statute, NYGBL § 349.

58.      As a direct and proximate cause of Defendant's conduct, Plaintiffs Stewart and Apicella and New York Subclass members suffered damages as alleged above.  Plaintiffs Stewart and Apicella also seek injunctive relief as described herein.

59.      In addition to or in lieu of actual damages, because of the injury, Plaintiffs Stewart and Apicella and the New York Subclass members seek statutory damages for each injury and violation which has occurred.

**COUNT II**
**Violations of New York Consumer Law for Deceptive Acts and Practices**
**N.Y. Gen. Bus. Law § 350**
**(On Behalf of Plaintiffs Stewart and Apicella and the New York Subclass)**

60.      Plaintiffs Stewart and Apicella, individually and on behalf of the New York Subclass, repeat and re-allege the allegations contained in paragraphs 1 through 46 as though fully set forth herein.

61.      NYGBL § 350 prohibits false advertising in the conduct of any business, trade, or commerce, or in the furnishing of any service in the state of New York.

62.      By reason of the conduct alleged herein, Defendant engaged in unlawful practices within the meaning of the NYGBL § 350.  The conduct alleged herein is a "business practice" within the meaning of the NYGBL § 350, and the false advertising occurred in part within New York State.

63.      Defendant's baby food contains unhealthy and dangerous levels of Heavy Metals.  Defendant knew or should have known that its baby food should not contain these Heavy Metals and/or at the amounts found therein and that by manufacturing and providing for commercial sale baby food with toxic levels of Heavy Metals Plaintiffs Stewart and Apicella and

the New York Subclass members were not getting healthy and/or nutritious food to help their children grow strong.

64.     Plaintiffs Stewart and Apicella and the New York Subclass members would not have purchased the baby food at issue for their children had they known the truth about the presence of dangerous levels of toxic Heavy Metals.  There is no other use for Defendant's tainted products.

65.     Defendant violated the NYGBL § 350 by failing to properly represent, both by affirmative conduct and by omission, the nutritional value and safety of Defendant's Tainted Baby Foods.

66.     If Defendant had not sold baby food tainted with dangerous levels of Heavy Metals, Plaintiffs Stewart and Apicella and the other New York Subclass members would not have suffered the extent of damages caused by Defendant's sales.

67.     Defendant's practices, acts, policies and course of conduct violate NYGBL § 350 in that, among other things, Defendant actively and knowingly misrepresented or omitted disclosure of material information to Plaintiffs Stewart and Apicella and the New York Subclass members at the time they purchased the Tainted Baby Foods, including the fact that Defendant's products contained dangerous levels of toxic Heavy Metals; and Defendant failed to disclose and give timely warnings or notices regarding the presence of dangerous levels of toxic Heavy Metals in its baby food products that were purchased by Plaintiffs and the New York Subclass members.

68.     The aforementioned conduct constitutes an unconscionable commercial practice in that Defendant has, by the use of false statements and/or material omissions, failed to properly represent and/or concealed the presence of unacceptable dangerous levels of Heavy Metals in its baby foods.

69.     Members of the public, including Plaintiffs Stewart and Apicella and the members of the New York Subclass, were deceived by and relied upon Defendant's affirmative misrepresentations and failures to disclose.

70.     Such acts by Defendant are and were likely to mislead a reasonable consumer purchasing baby food from Defendant.  Said acts and practices are material.  The sales of Defendant's Tainted Baby Foods in New York through such means occurring in New York were consumer-oriented acts and thereby fall under the New York consumer protection statute, NYGBL § 350.

71.     As a direct and proximate cause of Defendant's conduct, Plaintiffs Stewart and Apicella and New York Subclass members suffered damages as alleged above.  Plaintiffs Stewart and Apicella also seek injunctive relief as described herein.

72.     In addition to or in lieu of actual damages, because of the injury, Plaintiffs Stewart and Apicella and the New York Subclass members seek statutory damages for each injury and violation which has occurred.

## COUNT III
**Violations of Florida's Deceptive and Unfair Trade Practices Act § 501.211(2)**
**(On Behalf of Plaintiff Agramonte and the Florida Subclass)**

73.     Plaintiff Agramonte, individually and on behalf of the Florida Subclass, repeats and re-alleges the allegations contained in paragraphs 1 through 46 as though fully set forth herein.

74.     In Florida, unconscionable acts or practices, and unfair or deceptive practices in the conduct of any trade or commerce are unlawful.

75.     Plaintiff Agramonte, individually, and the members of the Florida Subclass are "consumers" within the meaning of Florida Statute Section 501.203.

76.     Defendant's baby food contains unhealthy and dangerous levels of Heavy Metals.  Defendant knew or should have known that its baby food should not contain these dangerous levels of Heavy Metals and that by manufacturing and providing for commercial sale baby food with toxic levels of Heavy Metals, Plaintiff Agramonte and the Florida Subclass members were not getting healthy and/or nutritious food to help their children grow strong.

77.     Plaintiff Agramonte and the Florida Subclass members would not have purchased the baby food at issue for their children had they known the truth about the presence of toxic Heavy Metals.  There is no other use for Defendant's tainted products.

78.     Defendant violated the FDUPTA by, among other things, using dangerous levels of toxic Heavy Metals and failing to properly represent, both by affirmative conduct and by omission, the nutritional value and safety of Defendant's baby foods.

79.     If Defendant had not sold baby food tainted with dangerous levels of Heavy Metals, Plaintiff Agramonte and the other Florida Subclass members would not have suffered the extent of damages caused by Defendant's sales.

80.     Defendant's practices, acts, policies and course of conduct violate FDUPTA in that Defendant actively and knowingly misrepresented or omitted disclosure of material information to Plaintiff Agramonte and the Florida Subclass members at the time they purchased the Tainted Baby Foods, including the fact that Defendant's products contained dangerous levels of toxic Heavy Metals. Defendant also failed to disclose and give timely warnings or notices regarding the presence of dangerous levels of toxic Heavy Metals in its baby food products that were purchased by Plaintiff Agramonte and the Florida Subclass members.

81.     The aforementioned conduct constitutes an unconscionable commercial practice in that Defendant has, by the use of false statements and/or material omissions, failed to properly

represent and/or concealed the presence of unacceptable dangerous levels of Heavy Metals in its baby foods.

82.     Members of the public, including Plaintiff Agramonte and the members of the Florida Subclass, were deceived by and relied upon Defendant's affirmative misrepresentations and failures to disclose.

83.     Such acts and practices by Defendant are and were likely to mislead a reasonable consumer purchasing baby food from Defendant.   Said acts and practices are material.  The sales of Defendant's Tainted Baby Foods in Florida through such means occurring in Florida were consumer-oriented acts and thereby fall under the FDUPTA.

84.     As a direct and proximate cause of Defendant's conduct, Plaintiff Agramonte and the Florida Subclass members suffered damages as alleged above.

85.     Defendant's conduct described above also amounts to unfair business practices, which are immoral, unethical, oppressive and unscrupulous.

86.     As a result of Defendant's conduct alleged herein, Plaintiff Agramonte individually and the members of the Florida Subclass have suffered actual damages in that they have paid excessive and artificially prices for Defendant's Tainted Baby Food as a result of Defendant's unlawful, unfair, and deceptive practices and are entitled to damages.

87.     As a result of the aforementioned conduct, Plaintiff Agramonte individually, and the members of the Florida Subclass, are entitled to permanent injunctive relief to prevent Defendant from continuing to engage in these unfair and deceptive trade practices.

88.     Pursuant to Florida Statute Section 501.2105, Plaintiff Agramonte, individually, and as a member of the Florida Subclass, is entitled to recover costs and reasonable attorneys' fees in this action.

<u>COUNT IV</u>
**Unjust Enrichment**
**(On Behalf of All Plaintiffs and the Nationwide Class)**

89.     Plaintiffs, individually and on behalf of the Class, repeat and re-allege the allegations contained in paragraphs 1 through 46 as though fully set forth herein.

90.     Plaintiffs and Class members conferred a monetary benefit on Defendant. Specifically, they purchased baby food from Defendant and provided Defendant with their monetary payment.  In exchange, Plaintiffs and Class members should have received from Defendant goods and services that were healthy and nutritious and not tainted with dangerous levels of Heavy Metals.

91.     Defendant knew that Plaintiffs and Class members conferred a benefit on them and accepted or retained that benefit.  Defendant profited from Plaintiffs' purchases and used Plaintiffs and Class members' monetary payments for business purposes.

92.     Defendant failed to disclose to Plaintiffs and Class members that its baby food was unhealthy and tainted with dangerous levels of Heavy Metals and did not provide product that Plaintiffs and Class members were promised.

93.     If Plaintiffs and Class members knew that Defendant's food was unhealthy and toxic as alleged herein, they would not have purchased Defendant's Tainted Baby Foods.

94.     Plaintiffs and Class members have no adequate remedy at law.

95.     Under the circumstances, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiffs and Class members conferred on them.

96.     Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class members, proceeds that they unjustly received from them.  In the alternative, Defendant should be compelled to refund the amounts that Plaintiffs and

Class members overpaid.

## VI.    REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, respectfully request that the Court:

a)    Certify the Nationwide Class, including the New York and Florida Subclasses, and appoint Plaintiffs and their counsel to represent the Nationwide Class and New York and Florida Subclasses;

b)    Find that Defendant engaged in the unlawful conduct as alleged herein and enjoin Defendant from engaging in such conduct.

c)    Enter a monetary judgment in favor of Plaintiffs and the Class, including the New York and Florida Subclasses, to compensate them for the injuries suffered, together with pre-judgment and post-judgment interest, punitive damages, and penalties where appropriate.

d)    Require Defendant to rectify all damages caused by its misconduct;

e)    Award Plaintiffs and the Class, including the New York and Florida Subclasses, reasonable attorneys' fees and costs of suit, as allowed by law; and

f)    Award such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated:  February 8, 2020                    Respectfully submitted,


                                            */s/ Janine L. Pollack*_____
                                            Janine L. Pollack, Esq.
                                            **CALCATERRA POLLACK LLP**
                                            1140 Avenue of the Americas
                                            9th Floor
                                            New York, New York 10036
                                            Phone: (917) 899-1765
                                            Fax:  (332) 206-2073
                                            Email:  jpollack@calcaterrapollack.com

                                            Lori G. Feldman, Esq. (LF-3478)
                                            **GEORGE GESTEN MCDONALD, PLLC**
                                            102 Half Moon Bay Drive
                                            Croton-on-Hudson, New York 10520
                                            Phone: (917) 983-9321
                                            Fax: (888) 421-4173
                                            Email: LFeldman@4-justice.com
                                            E-Service: eService@4-Justice.com

                                            David J. George, Esq.
                                            Brittany L. Brown, Esq.
                                            **GEORGE GESTEN MCDONALD, PLLC**
                                            9897 Lake Worth Road, Suite #302
                                            Lake Worth, FL 33467
                                            Phone: (561) 232-6002
                                            Fax: (888) 421-4173
                                            Email: DGeorge@4-Justice.com
                                            E-Service: eService@4-Justice.com