**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re HAIN CELESTIAL HEAVY METALS BABY FOOD LITIGATION, <br><br> This document relates to: <br><br> All Actions | Case No. 2:21-cv-0678-JS-AYS <br><br> **MEMORANDUM OF LAW IN SUPPORT OF THE STEWART MOVANTS' MOTION FOR APPOINTMENT OF LORI G. FELDMAN AND REBECCA A. PETERSON FOR INTERIM CO-LEAD COUNSEL** <br><br> **ORAL ARGUMENT REQUESTED** |

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................... 1

II.     FACTUAL BACKGROUND .................................................................................. 3

III.    PROCEDURAL BACKGROUND.......................................................................... 5

IV.     THE STEWART MOVANTS' COUNSEL ARE EMINENTLY QUALIFIED
        TO BE APPOINTED AS INTERIM CO-LEAD COUNSEL AND WILL
        PROTECT THE INTERESTS OF THE CLASS................................................... 6

        A.      The Factors for Appointment of Interim Lead Counsel........................... 6

        B.      Proposed Interim Class Counsel Satisfy All Factors Supporting
                Their Appointment.................................................................................... 8

                1.      Proposed Interim Class Counsel Have Done Extensive Work
                        in Identifying and Investigating Potential Claims, Including
                        Being the First to File and Moving the Case Forward. ............... 8

                2.      Proposed Interim Class Counsel Have Substantial Experience
                        Leading Complex Class Actions, Including Actions
                        Asserting Similar Factual And Legal Claims............................... 9

                        a.      Proposed Interim Co-lead Counsel are Well Qualified to
                                Lead This Litigation............................................................ 9

                        b.      The Executive Committee Would Allow for Efficient
                                and Effective Representation of The Class...................... 12

                3.      Proposed Interim Class Counsel Have Experience in a Diverse
                        Group of States and Vast Knowledge of the Subject Matter
                        and Applicable Law at Issue. .................................................... 18

                4.      The Stewart Movants Have Substantial Resources They Are
                        Committing to Representing the Class. ...................................... 21

                5.      The Stewart Movants Bring Important Diversity to Their
                        Representation of the Class. ...................................................... 21

V.      CONCLUSION..................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Classick v. Schell & Kampeter, Inc. d/b/a Diamond Pet Foods*,
 No. 2:18-CV-02344-JAM-AC, 2021 WL 2003118 (E.D. Cal. May 19, 2021).......................20

*Colangelo v. Champion Petfoods USA, Inc.*,
 No. 618CV1228LEKML, 2020 WL 777462 (N.D.N.Y. Feb. 18, 2020)................................20

*Gamboa v. Ford Motor Co.*,
 381 F. Supp. 3d 853 (E.D. Mich. 2019)..................................................................................17

*In re Bystolic Antitrust Litig.*,
 No. 20-CV-5735 (LJL), 2020 WL 6700830 (S.D.N.Y. Nov. 12, 2020)..................................7

*In re: Canon U.S.A. Data Breach Litig.*,
 Master File No. 1:20-cv-06239-AMD-SJB, Slip Op. (E.D.N.Y. Mar. 9, 2021).....................18

*In re GSE Bonds Antitrust Litig.*,
 377 F. Supp. 3d 437 (S.D.N.Y. 2019)......................................................................................7

*In re: Int. Rate Swaps Antitrust Litig.*,
 No. 16-MC-2704 (PAE), 2016 WL 4131846 (S.D.N.Y. Aug. 3, 2016).................................17

*In re J.P. Morgan Chase Cash Balance Litig.*,
 242 F.R.D. 265 (S.D.N.Y. 2007) .......................................................................................7, 21

*In re Linerboard Antitrust Litig.*,
 292 F. Supp. 2d 644 (E.D. Pa. 2003) .....................................................................................18

*In re Merck & Co., Inc. Sec. Litig.*,
 432 F.3d 261 (3d Cir. 2005)...............................................................................................9, 15

*In re Mun. Derivatives Antitrust Litig.*,
 252 F.R.D. 184 (S.D.N.Y. 2008) .........................................................................................7, 9

*In re Oxford Health Plans, Inc. Sec. Litig.*,
 182 F.R.D. 42 (S.D.N.Y. 1998) ..............................................................................................17

*In re Robinhood Outage Litig.*,
 No. 20-CV-01626-JD, 2020 WL 7330596 (N.D. Cal. July 14, 2020).........................7, 21, 22

*Michelle v. Arctic Zero, Inc.*,
 No. 12CV2063-GPC NLS, 2013 WL 791145 (S.D. Cal. Mar. 1, 2013) .................................7

*Pearlman v. Cablevision Sys. Corp.*,
 No. 10-CV-4992 JS, 2011 WL 477815 (E.D.N.Y. Feb. 1, 2011).............................................6

*Richey v. Ells*,
    No. 12-CV-02635-WJM-MEH, 2013 WL 179234 (D. Colo. Jan. 17, 2013) ...........................7

*Steele v. United States*,
    No. CV 14-1523, 2015 WL 4121607 (D.D.C. June 30, 2015) .................................................7

*Szymczak v. Nissan N. Am., Inc.*,
    No. 10 CV 7493 VB, 2012 WL 1877306 (S.D.N.Y. May 15, 2012) .......................................6

*Tillman et al. v. Morgan Stanley Smith Barney, LLC*,
    Case No. 1:20-cv-5914, Slip Op. (S.D.N.Y. Sept. 17, 2020) .................................................18

*Zeiger, v. WELLPET LLC*,
    No. 3:17-CV-04056-WHO, 2021 WL 756109 (N.D. Cal. Feb. 26, 2021) .............................19

RULES

Federal Rule of Civil Procedure 23 ....................................................................... *passim*

STATUTES

Consumers Legal Remedies Act, California Civil Code §§ 1750-1784 ..........................................8

Freedom of Information Act .........................................................................................................8

Racketeering Influenced Corrupt Organization Act ...................................................................15

Texas Deceptive Trade Practices Act, Tex. Bus & Com. Code § 17.41 *et seq.* .............................8

OTHER AUTHORITIES

*Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and
    Mercury*.....................................................................................................................................3, 4

U.S. House of Representatives' Subcommittee on Economic
    and Consumer Policy, Committee on Oversight and Reform Report.......................................5

Plaintiffs Nicole Stewart, Elizabeth Agramonte and Summer Apicella ("the Stewart Plaintiffs"), and additional plaintiffs Charlotte Willoughby, Lee Boyd, Kelly McKeon, Renee Bryan, Marilyn Cason, Najah Henry, Chanel Jackson, Alexis Dias, and Holly Buffinton (collectively, the "Stewart Movants"), by and through their undersigned counsel, respectfully submit this memorandum of law in support of their motion for appointment of their counsel as interim lead counsel of this consolidated class action (the "Consolidated Action") against Hain Celestial Group, Inc. ("Defendant" or "Hain"), as well as any later filed actions subsequently consolidated with the Consolidated Action, pursuant to Federal Rule of Civil Procedure 23(g).

## I.    INTRODUCTION

The Stewart Plaintiffs filed the first case against Hain in this District. They are now joined and supported by three other groups of plaintiffs in the Consolidated Action and together they are seeking to lead this Consolidated Action. The Stewart Movants propose an efficient, cohesive, and diverse structure consisting of two interim lead counsel and three supporting counsel to assist lead counsel. Based on this lean leadership structure and this group's collective experience and commitment, their appointment will allow for streamlined litigation and skillful legal work with no duplication of effort.

Pursuant to Rule 23(g)(3), the Stewart Movants respectfully seek the appointment of Lori G. Feldman (George Gesten McDonald, PLLC) and Rebecca A. Peterson (Lockridge Grindal Nauen P.L.L.P.) as "Interim Co-Lead Counsel," both of whom the Stewart Movants submit are eminently qualified to serve in that role.  The Stewart Movants further request the designation of Catherine Sun-Yung Smith (Gustafson Gluek PLLC), Stephen R. Basser (Barrack, Rodos & Bacine), and Susana Cruz Hodge (Lite DePalma Greenberg & Afanador, LLC) as "Executive Committee" members to work with the Interim Co-Lead Counsel. As more fully explained below, the Interim Co-Lead Counsel and Proposed Executive Committee members (collectively,

"Proposed Interim Class Counsel") easily satisfy all Rule 23(g)(3) requirements because of their vast experience (including in consumer class actions and heavy metal related litigation), demonstrated skill set, and litigation resources.

Collectively, the Proposed Interim Class Counsel are a strong and highly-experienced litigation team and will represent the Class at the highest level in this complex case.[1] These attorneys and their respective law firms bring decades of experience in and knowledge of this type of consumer class action, as well as collective expertise and successful class action litigation involving heavy metals in food products. Proposed Interim Class Counsel also add diversity in terms of gender, race, age, and geographic location, in addition to their significant trial experience and substantial resources. These law firms, and the other undersigned counsel supporting this Motion, have been the driving force here and in similar litigation with respect to both initial filings and advancing all cases in the respective courts.[2]  Proposed Interim Class Counsel have aligned with skillful candidates and formed a team dedicated to effectively and efficiently litigating this matter on behalf of the Class.

Proposed Interim Co-Lead Counsel will oversee and supervise all activities to ensure the most efficient and effective work product. Proposed Interim Co-Lead Counsel intend to be inclusive of any plaintiffs who want to remain as class representatives in the Consolidated Action following a thorough vetting process that will involve all counsel of record. Then as the litigation

---

[1] "Class" refers to all Classes or subclasses that are included in the Consolidated Action.

[2] For example, counsel for the Stewart Movants were first to file anywhere in the country against Nurture, Inc. (S.D.N.Y); the first to file anywhere in the country against Beech-Nut Nutrition Company (N.D.N.Y.); and the first to file anywhere in the country against Plum, PBC (N.D. Cal.). All of these cases are consumer class actions alleging economic damage claims concerning undisclosed heavy metals in baby food. In each of those cases, members of the Stewart Movants have taken significant steps to advance them.

proceeds, Proposed Interim Co-Lead Counsel will make specific streamlined pre-trial work assignments in the areas of, among other things, motion practice, discovery, and experts, utilizing the skills of the Executive Committee members and their firms, as well as any other counsel with pertinent experience as appropriate and needed to advance the interests of all Plaintiffs and the Class.  Given the likely complexity of the issues in this case, the structure proposed by the Stewart Movants strikes the proper balance to ensure strong representation while avoiding duplication of effort. Monthly time and expense reporting, a strict timekeeping protocol, and detailed instructions for specific assignments will result in a streamlined and focused litigation.

## II.    FACTUAL BACKGROUND

These consolidated actions all arise out of the inclusion of heavy metals and perchlorates in Defendant's baby food, as exposed in a recent report dated February 4, 2021, *Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury* ("the Congressional Report"), issued by the Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform, U.S. House of Representatives ("the House Subcommittee"), as well as the October 2019 Healthy Babies Bright Futures, What's In My Baby's Food? Report.[3] The Congressional Report and Healthy Babies Bright Futures Report issued detailed findings that at least arsenic, cadmium, lead, and mercury ("Heavy Metals") and perchlorate, were present in "significant levels" in commercial baby food products, including Hain's products.  (*See* ECF No.

---

[3] *Available at* https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf  and
https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf (last accessed May 26, 2021).

1, ¶1 ("Stewart Complaint"); *Willoughby v. Hain Celestial Group, d/b/a Earth's Best Organics*, No. 2:21-cv-00970 (E.D.N.Y), ECF No. 1, ¶5.)

The Congressional Report revealed that Hain's internal company standards permit dangerously high levels of toxic Heavy Metals. Hain has often sold baby foods that exceeded even its own inadequate internal standards. (*See id.* at ¶26.) For example, Hain's internal standard is 200 ppb for arsenic, lead, and cadmium in some of its ingredients, but Hain exceeded this standard, using ingredients containing 353 ppb lead and 309 ppb arsenic. (*See id*.) Hain attempted to justify deviations above its internal ingredient testing standards based on "theoretical calculations," even after admitting to the FDA that its internal testing underestimated the toxic Heavy Metal levels contained in its final product. (*Id*.)

The Congressional Report (Congressional Report at Findings, ¶4) stated that a secret industry presentation was made to federal regulators revealing increased risks of dangerous levels of toxic Heavy Metals in baby foods. On August 1, 2019, Hain provided the FDA with a slide that disclosed:

> Corporate policies to test only ingredients, not final products, underrepresent the levels of toxic heavy metals in baby foods.  In 100% of the Hain baby foods tested, inorganic arsenic levels were higher in the finished baby food than the company estimated they would be based on individual ingredient testing. Inorganic arsenic was between 28% and 93% higher in the finished products.

> Many of Hain's baby foods were tainted with high levels of inorganic arsenic – half of its brown rice baby foods contained over 100 ppb inorganic arsenic; its average brown rice baby food contained 97.62 ppb inorganic arsenic; and

> Naturally occurring toxic heavy metals may not be the only problem causing the unsafe levels of toxic heavy metals in baby foods; rather, baby food producers like Hain may be adding ingredients that have high levels of toxic heavy metals into their products, such as vitamin/mineral pre-mix.

(Stewart Complaint ¶27.) To this day, baby foods still fail to disclose the inclusion of Heavy Metals (including Hain's "Organic" products) on their packaging or in their marketing and advertising

materials. But the Congressional Report makes clear that this is unacceptable and deceptive.  (*See id.* at ¶28.)   As a result of its studies of toxic Heavy Metal levels in baby food, the House Subcommittee has recommended that parents should avoid baby foods that contain ingredients testing high in toxic Heavy Metals, such as rice products. (*See id.* at ¶29 (citing Congressional Report Findings, Paragraph 5).)

Despite the conclusions in the Congressional Report and Healthy Babies Bright Futures Report regarding the presence of dangerous levels of Heavy Metals and perchlorate in Hain's baby foods, Defendant Hain describes on its website that its "Earth's Best Organic" line of products are "time-trusted and safe" and claims said products "are produced without the use of potentially harmful pesticides." (*Id.* at ¶33; *see also id.* at 11-12.)  Based on Defendant's decision to advertise, label, and market its baby foods as healthy, nutritious, and safe for consumption, it had a duty to ensure that these and other statements were true and not misleading and to disclose material omissions, which it failed to do. (*See id.* at ¶34.) Hain misleads reasonable consumers into purchasing its baby foods by omitting the inclusion of Heavy Metals and/or perchlorate while promising a healthy and high-quality product for babies.

## III.    PROCEDURAL BACKGROUND

On February 8, 2021, the Stewart Plaintiffs filed the first complaint against Hain in this Court. (ECF No. 1.) Numerous other cases against Hain followed, alleging essentially the same claims.  On February 22, 2021, the Stewart Plaintiffs' counsel organized a conference call with all plaintiffs' counsel on record in cases pending in this District to discuss consolidation and working cooperatively to advance the cases. Joint Declaration of Lori G. Feldman and Rebecca A. Peterson in Support of the Stewarts Movant's Motion for Appointment of Interim Co-Lead Counsel ("Joint Declaration") at ¶4. Thereafter, on February 28, 2021, the Stewart Plaintiffs filed their motion seeking consolidation. *Id.* By Orders dated May 13, 2021 and May 18, 2021, this Court issued

orders consolidating fourteen (14) actions asserting consumer protection claims seeking economic damages against Hain into the Stewart docket to form this Consolidated Action. (ECF Nos. 47 and 50.) This motion for appointment of interim lead counsel followed.

**IV.    THE STEWART MOVANTS' COUNSEL ARE EMINENTLY QUALIFIED TO BE APPOINTED AS INTERIM CO-LEAD COUNSEL AND WILL PROTECT THE INTERESTS OF THE CLASS.**

### A.    THE FACTORS FOR APPOINTMENT OF INTERIM LEAD COUNSEL.

Rule 23(g)(3) allows appointment of interim class counsel "to act on behalf of a putative class before determining whether to certify the action as a class action." Rule 23(g)(3). "The appointment of interim lead counsel, among other things, clarifies responsibility for the protection of the interests of the putative class during pre-certification motions, discovery, and settlement activity." *Pearlman v. Cablevision Sys. Corp.*, No. 10-CV-4992 JS, 2011 WL 477815, at *2 (E.D.N.Y. Feb. 1, 2011) (citing Manual for Complex Litig. § 21.11 (4th ed. 2004)); *see also Szymczak v. Nissan N. Am., Inc.*, No. 10 CV 7493 VB, 2012 WL 1877306, at *1 (S.D.N.Y. May 15, 2012) ("Designation of lead counsel now ensures the protection of the interests of the class in making and responding to motions, conducting discovery, and negotiating possible settlements." (citing Manual for Complex Litig. § 21.11 (4th ed. 2004)).

Numerous factors are considered by courts in appointing interim lead counsel, including the same factors relevant in appointing lead counsel for a certified class.  *See Pearlman*, WL 477815, at *2. These factors include: (1) the work counsel has done in identifying or investigating potential claims; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; (4) the resources that counsel will commit to representing the putative class; and any other matters relevant to counsel's ability to fairly and adequately represent the interest of the putative class.  *See id.*; Rule 23(g)(1)(A)(i)-(iv). The Court may also consider any other matter pertinent to counsel's

ability to fairly represent the putative class. *See* Fed. R. Civ. P. 23(g)(1)(B). Finally, deference may be given to counsel who are the first to file and began advancing the case where, as is likely here, most of the other applicants are highly qualified to represent the class. *See In re GSE Bonds Antitrust Litig.,* 377 F. Supp. 3d 437, 438 (S.D.N.Y. 2019) (appointing as lead counsel the firms representing "the plaintiffs who filed the first of these consolidated actions"); *In re Bystolic Antitrust Litig.,* No. 20-CV-5735 (LJL), 2020 WL 6700830, at *1 (S.D.N.Y. Nov. 12, 2020) (same). *See also In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008); *Steele v. United States*, No. CV 14-1523, 2015 WL 4121607, at *4 (D.D.C. June 30, 2015); *Michelle v. Arctic Zero, Inc.*, No. 12CV2063-GPC NLS, 2013 WL 791145, at *2 n.3 (S.D. Cal. Mar. 1, 2013); *Richey v. Ells*, No. 12-CV-02635-WJM-MEH, 2013 WL 179234, at *2 (D. Colo. Jan. 17, 2013).

As discussed more fully below, the issue of diversity has become an important consideration in the appointment of lead counsel in class actions. *See, e.g.*, *In re J.P. Morgan Chase Cash Balance Litig.*, 242 F.R.D. 265, 277 (S.D.N.Y. 2007) ("Co-Lead counsel has met this Court's diversity requirement – *i.e.*, that at least one minority lawyer and one woman lawyer with requisite experience at the firm be assigned to this matter."); *In re Robinhood Outage Litig.,* No. 20-CV-01626-JD, 2020 WL 7330596, at *2 (N.D. Cal. July 14, 2020) (court denied proposed leadership structure for lack of diversity in class counsel appointments). A diverse lead counsel group, particularly one that will reflect the diversity of the proposed class, will enhance the legal representation for the class. *In re Robinhood Outage Litig.,* 2020 WL 7330596 at *2.

B.    **PROPOSED INTERIM CLASS COUNSEL SATISFY ALL FACTORS SUPPORTING THEIR APPOINTMENT.**

1.    **Proposed Interim Class Counsel Have Done Extensive Work in Identifying and Investigating Potential Claims, Including Being the First to File and Moving the Case Forward.**

As noted above, the Stewart Plaintiffs were the first to file their case against Hain in this District and as additional cases were filed, they promptly began taking steps to organize the cases into a consolidated action. After reaching out to the other plaintiffs and arranging a call to discuss possible consolidation, they filed their motion to consolidate, which was largely granted by this Court, leading to the instant Motion. *See* Joint Declaration at ¶4. As such, the Stewart Movants have been at the forefront of this litigation and have shown initiative and leadership by advancing it in a coordinated manner.

In addition, the Stewart Movants have taken other steps to advance this litigation. For example, they served a Freedom of Information Act (FOIA) request on the U.S. Food and Drug Administration (FDA) on March 4, 2021, regarding Hain's use of Heavy Metals and its presentation to the FDA in 2019. *Id.* at ¶5. The FDA responded on May 13, 2021, with a single redacted document and, as a result, the Stewart Movants appealed that response on May 20, 2021. *Id.* Moreover, in anticipation of an amended complaint, the Stewart Movants sent pre-suit notice to Hain as to Plaintiffs' warranty claims under California, New York, Florida, and Illinois law as well as pre-suit notice under the Consumers Legal Remedies Act (CLRA), California Civil Code Sections 1750-1784, and the Texas Deceptive Trade Practices Act, Tex. Bus & Com. Code Section 17.41 *et seq*. *Id.* Proposed Interim Class Counsel have also begun contacting potential experts and have drafted discovery requests for service on Hain. Moreover, following the filing of the consolidated complaint, counsel for the parties will be conferring with counsel for Hain with respect to case management issues. Proposed Interim Class Counsel have previously and

collegially worked with defense counsel. When it is time to enter into a confidentiality order and an electronic discovery protocol and discovery plan, the Stewart Movants stand prepared and ready to promptly address these projects and advance the case quickly and efficiently.

>    **2.    Proposed Interim Class Counsel Have Substantial Experience Leading Complex Class Actions, Including Actions Asserting Similar Factual And Legal Claims.**

>    **a.    Proposed Interim Co-lead Counsel are Well Qualified to Lead This Litigation.**

Lead plaintiffs may retain multiple firms as co-lead counsel. *See In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 267-68 (3d Cir. 2005). Particularly, when multiple counsel expended significant time and resources investigating, organizing, and advancing the case for the benefit of the Class, as the Proposed Interim Co-lead Counsel has done here, and the Class would benefit from their collective resources, appointment of multiple counsel as co-lead counsel is appropriate. *See In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. at 186–87. Also, appointment of co-lead counsel accords with Rule 23(g) and the Manual for Complex Litigation (Fourth) (the "Manual"), facilitates the orderly advancement of the litigation, and results in a substantial time savings for the parties and the Court.[4] The Manual recommends that the Court select and authorize one or more attorneys or firms to act on behalf of other counsel and their clients early in complex litigation.[5]

Submitted as Exhibits 1-2 to the Joint Declaration are the firm and individual attorney resumes for the two co-lead attorneys seeking to lead this litigation. Ms. Feldman and Ms. Peterson

---

[4] *See Manual* for Complex Civil Litigation §§ 10.22, 10.221(4th ed. 2009).

[5] *Id.*

have extensive experience in class actions, including class actions involving heavy metals and other contaminants in food products, as well as other complex litigation.

● **<u>Lori Feldman of George Gesten McDonald</u>** Ms. Feldman is the Chair of the Class Action Practice Group and Managing Partner of the New York office of her firm.  She was admitted to the E.D.N.Y. in 1991 and is bicoastally licensed in New York and Washington State. Joint Declaration at ¶9. Ms. Feldman was recently recognized by The National Law Journal as a 2021 Plaintiffs' Lawyers Trailblazer, as one of several plaintiffs' lawyers in the country who continue to make their mark in various aspects of work on the plaintiffs' side. *Id.* at ¶11. She has served in a leadership role in numerous class action cases, including consumer protection and data breach cases, and has successfully litigated against some of the most well-funded and largest defendants in class actions, including but not limited to:

- *South Ferry v. Killinger*, C04-1599-JCC (W.D. Wash.) ($41.5 million securities fraud settlement involving Washington Mutual)

- *Cavalieri v. General Electric Co.*, 06-CV-315 (N.D.N.Y) ($40 million pension fraud class action settlement)

- *In re Amazon.com Securities Litigation*, C-01-358-L (W.D. Wash.) ($27.5 million securities fraud class action settlement)

- *In re CenturyLink Sales Practices and Securities Litigation*, MDL No. 17-2795 (MJD/KMM) (D. Minn.) ($15.5 million consumer fraud settlement)

- *Podowitz v. Swisher International, Inc*., 16-CV-27621 (Multnomah Cty, OR) ($2.5 million consumer fraud class action settlement)

- *Hochstadt v. Boston Scientific Corp. ERISA Litigation*, C-08-CV-12139-DPW (D. Mass.) ($8.2 million pension fraud class action settlement)

- *Gebhardt v. ConAgra Foods, Inc.*, 4:01-CV-427 (D. Neb.) ($14 million securities fraud class action settlement)

- *In re Macy's Inc. ERISA Litigation*, 1:01-CV-02150-ML-KWR (S.D. Ohio) ($8.5 million pension fraud class action settlement)

- *In re Gilead Sciences Securities Litigation*, C-03-4999-SI (N.D. Cal.) ($8.75 million securities fraud class action settlement)

- *In re Rhythms Securities Litigation*, 02-CV-35-JLK-CBS (D. Colo.) ($17.5 million securities fraud class action settlement).

*Id.* at ¶9.

Ms. Feldman was recently appointed to serve as Plaintiffs' Co-Lead Counsel in *In re EyeMed Vision Care, LLC Data Sec., Litig.*, 1:20-cv-00036 (S.D. Ohio); to serve on the Plaintiffs' Executive Committee in *In re Canon U.S.A. Data Breach Litig.*, 1:20-cv-06239 (E.D.N.Y.); and on the Plaintiffs' Executive Committee in *In re Morgan Stanley Data Sec. Litig.*, 1:20-cv-05914 (S.D.N.Y.). She also works in a leadership capacity in the data breach case *In re WaWa, Inc. Data Breach Litig.*, No. 19-cv-6019-GEKP. (E.D. Pa.), and worked on the *In re Equifax Consumer Data Sec. Breach Litig.*, 1:17-md-2800 (N.D. Ga.). *Id.* at ¶10. She is also currently litigating a data breach cases against *In re Warner Music Grp. Data Breach*, No. 1:20-cv-07473 (S.D.N.Y.). *Id.*

As an additional benefit to the class, Ms. Feldman is a New York attorney (born and raised) admitted in the E.D.N.Y., eliminating the need for separate liaison counsel.

● **Rebecca A. Peterson of Lockridge Grindal Nauen**

Ms. Peterson is a partner at Lockridge Grindal Nauen ("LGN") and licensed to practice in California and Minnesota. Joint Declaration at ¶12. Ms. Peterson practices in the firm's class action group with a focus on consumer protection. *Id.* She has been part of successful prosecution of actions on behalf of consumers in both state and federal courts. *Id.* Ms. Peterson has been appointed lead counsel and also, alongside a group of attorneys, was recognized as Attorney of the Year by Minnesota Lawyer for her work on behalf of U.S. farmers. *Id.*

Notably, Ms. Peterson has spent the last three years extensively litigating consumer mislabeling cases involving heavy metals and other contaminants. *Id.* at ¶13. In these actions, she acted as lead counsel and conducted and defended dozens of depositions, including expert depositions. *Id.* She has also vetted and worked extensively with experts that have the specific

expertise required for opining on heavy metals testing and related quality control practices that are available for food manufacturers. *Id.* Ms. Peterson also argued class certification motions and dispositive motions such as summary judgment. *Id.* As a result of her experience, Ms. Peterson has significant knowledge of the legal, discovery, expert, and factual issues that are critical in litigating consumer class cases concerning heavy metals and other contaminants.  This includes intimate knowledge of the lack of regulatory guidance, quality control, manufacturing practices, and testing that will be at the forefront of this litigation.

Ms. Peterson is supported by a robust, successful firm based in Minneapolis, Minnesota. Joint Declaration Ex. B. The LGN attorneys are experienced counsel in numerous areas, including consumer, antitrust, product liability, securities, environmental, employment, health care, commercial, intellectual property, and telecommunications law. These attorneys have successfully led—and are presently leading—complex class actions throughout the country. Currently, Ms. Peterson is co-lead counsel in *In re Big Heart Pet Brands Litigation*, Civil No. 4:18-cv-00861-JSW (N.D. Cal.), a case involving consumer protection claims based on an undisclosed contaminant in dog food.[6] *Id.* at ¶14.

> **b.** **The Executive Committee Would Allow for Efficient and Effective Representation of The Class.**

In addition to appointing Interim Co-Lead Counsel, the Stewart Movants also respectfully request that the Court establish an Executive Committee to facilitate the most efficient and effective representation of the proposed class, and appoint Catherine Sung-Yun Smith, Stephen R. Basser, and Susana Cruz Hodge to that Committee. The proposed Executive Committee attorneys possess substantial experience in consumer fraud and complex class action litigation and present

---

[6] *See* Joint Declaration at Ex. 2 for additional representative cases.

an opportunity for the Court to award leadership positions to attorneys who are diverse in experience, gender, and race. Finally, they bring a diverse set of professional and personal experiences, including experience with class actions involving heavy metals.

- **Catherine Sung-Yun Smith of Gustafson Gluek**

Catherine Sung-Yun Smith is a partner with Gustafson Gluek, PLLC and a long-time member of the firm's consumer protection and antitrust group. *See* Declaration of Catherine Sung-Yun Smith in Support of the Stewart Movants' Motion for Appointment of Lori G. Feldman and Rebecca A. Peterson as Interim Co-Lead Counsel, attached as Exhibit 3 to the Joint Declaration ("Smith Dec.") at ¶1. Gustafson Gluek is a Minneapolis-based law firm with an office in California and a national and international practice focused on consumer protection, anti-trust, and class action litigation representing consumers. *Id*. at ¶3. Since its founding in May 2003, Gustafson Gluek has worked with and opposed some of the nation's largest companies and law firms obtaining multi-million-dollar victories and critical injunctive relief for millions of class members. *Id*. The firm's eighteen attorneys have extensive experience in cases of the type at issue here, and the firm and its attorneys have served in leadership roles in numerous complex class actions over the years. *Id*. at Ex. A.

In several of these cases, Ms. Smith has played a significant role herself or as a part of Gustafson Gluek serving as a member of plaintiffs' steering committees. *Id*. Ms. Smith has managed important aspects of complex cases such as *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 07-1827 (N.D. Cal.); *In re Lithium Ion Batteries Antitrust Litig.*, 4:13-md-02420 (N.D. Cal); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 07-cv-05944 (N.D. Cal). *Id*. She was also a member of the trial team in both the LCD and CRT cases, both of which ultimately settled for significant recoveries. *Id*. Particularly, the LCD case settled for $1.1 billion for the end-user

consumer plaintiffs, mere days before the start of the trial which was an unprecedented amount for a consumer component case. *Id*. Ms. Smith was also personally appointed to the plaintiffs' steering committee in *Greater Chautauqua Federal Credit Union v. KMart Corp.*, 15-cv-02228, (N.D. Ill.). *Id*. For her work in the plaintiff's bar, Ms. Smith was designated by Law & Politics magazine as a Minnesota "Super Lawyer Rising Star," from 2013-2016, a designation selected for no more than 2.5% of lawyers in Minnesota. *Id*.

●  **Stephen R. Basser of Barrack Rodos & Bacine**

Stephen R. Basser is a partner with Barrack, Rodos & Bacine ("Barrack") *See* Declaration of Stephen R. Basser in Support of the Stewart Movants' Motion for Appointment of Lori G. Feldman and Rebecca A. Peterson as Interim Co-Lead Counsel, attached as Exhibit 4 to the Joint Declaration ("Basser Dec.") at ¶1. As described further below, Mr. Basser is a senior litigator with exceptional experience successfully handling complex class actions, including jury and trial experience. *Id*. at ¶7. Barrack is a 20-attorney firm that has significant depth, experience, and resources in litigating complex class actions, including consumer class actions. *Id*. at ¶3. The Barrack firm has been extensively involved in hundreds of class actions with a number of recoveries in excess of $1 billion. *Id*. Mr. Basser has been involved as a lead counsel or executive committee member in a variety of significant class actions against corporations alleging negligent and/or fraudulent misrepresentation and/or concealment, and/or alleging deceptive sales and marketing practices, harming investors, consumers, and/or business entities. *Id*. at ¶7. For example, among others, Mr. Basser, as either a co-lead or de-facto executive committee counsel, worked collegially in a consortium of four law firms in the so-called "Senior Annuity Sales and Marketing" cases litigated in the Central District of California before the Honorable Christina A. Snyder, from 2005 through 2015, achieving settlements valued in the aggregate between $552 million and

14

$1.273 billion, on behalf of senior citizen consumers. *Id*. The Senior Annuity cases asserted claims against insurance companies for violations of consumer protection and elder abuse statutes, and the Racketeering Influenced Corrupt Organization Act. Basser Dec. at Ex. A. In 2017, The Attorney General of the State of New Mexico appointed Mr. Basser to serve as a Special Assistant Attorney General for the purpose of prosecuting an action on behalf of New Mexico consumers against solar panel company Vivint Solar, Inc., for violations of New Mexico's consumer protection law and statutes. *Id*. at ¶¶4, 7.

Mr. Basser served as a co-lead counsel in *In re McKesson HBOC, Inc. Sec. Litig.*, representing the New York State Common Retirement Fund on behalf of consumer investors against the corporate defendant, its management and others, alleging violations of the federal securities laws, ultimately securing settlements totaling $1.052 billion; it is among the largest class action recoveries ever achieved in the Northern District of California, or within the Ninth Circuit. *Id*. at ¶7. Mr. Basser has extensive experience working with experts in a variety of disciplines, including product defects and with respect to econometric and damages analysis. *Id*. at ¶9. He has extensive experience taking depositions of C-Suite level corporate executives, including depositions of several high ranking officers and/or employees related to allegations of corporate misrepresentation. Importantly, Mr. Basser was the lead counsel and lead trial attorney in the *In re Apollo Group, Inc. Sec. Litig.*, resulting in a $145 million recovery in 2012 for class members following a unanimous jury verdict rendered in the District of Arizona, respecting which the court commented that trial counsel "brought to this courtroom just extraordinary talent and preparation," adding that "[What I have seen has been truly exemplary." *Id*. at ¶7.

● **Susana Cruz Hodge of Lite DePalma**

Susana Cruz Hodge is a partner with Lite DePalma Greenberg & Afanador, LLC ("LDGA"). *See* Declaration of Susana Cruz Hodge in Support of the Stewart Movants' Motion for Appointment of Lori G. Feldman and Rebecca A. Peterson as Interim Co-Lead Counsel, attached as Exhibit 5 to the Joint Declaration ("Hodge Dec.") at ¶1. LDGA is a 14-attorney firm with offices in Newark, New Jersey and Philadelphia, Pennsylvania. *Id*. at ¶3. More than half of its attorneys (including Ms. Hodge) work primarily in class action litigation and collectively have participated and held leadership positions in numerous successful class action cases. *Id*.

Ms. Hodge focuses her practice on product liability and consumer fraud class actions. *Id*. at ¶5. She has participated in several successful consumer cases, including *Cole v. NIBCO, Inc.*, No. 13-cv-07871 (D.N.J.), a case involving defective plumbing piping, tubing and fixtures that resulted in a nationwide consumer settlement worth $44 million; *Schwartz v. Avis Rent a Car System, LLC*, No. 11-4052 (D.N.J.), a case involving fraudulent fee charges that resulted in a nationwide consumer settlement worth up to $13 million; and *In re Shop-Vac Mktg. and Sales Practices Litig.*, No. 4:12-MD-2380 (M.D. Pa.), a case involving misrepresentation of the peak horsepower of wet/dry vacuums that resulted in a nationwide settlement fund valued at $174 million. *Id.* at 5. Notably, along with Ms. Peterson, Ms. Hodge has spent the last three years litigating cases across the country involving heavy metals, BPA, and other toxins in pet food. *Id.* at 6. In July 2020, she received her first personal leadership appointment (as a member of the Executive Committee) in *In re Robinhood Outage Litig.*, No. 20-01626-JD (N.D.C.A.), a putative class action filed on behalf of users of Robinhood's trading platform who were unable to access their brokerage accounts on March 2, 2020, a day that saw the biggest ever point gain in a single day with Dow Jones Industrial Average rising over 1,294 points, the S&P 500 rising 136 points,

and the Nasdaq rising 384 points. *Id.* at 7. Ms. Hodge also plays a lead role for LDGA in *In re Big Heart Pet Brands Litig.,* Civil No. 4:18-cv-00861-JSW (N.D. CA), a case involving poisonous toxins in pet food where LDGA was appointed to the Executive Committee. *Id.* at ¶6. Ms. Hodge is also co-author of the chapter entitled "Class Action Litigation" in New Jersey Federal Civil Procedure. *Id.* at Ex. A. She was named as a "Rising Star" in *New Jersey Monthly* magazine from 2014 to 2019 and has since been named to the "New Jersey Super Lawyers" list every year. *Id.*

The appointment of this Executive Committee to "support the efforts" of Interim Co-Lead Counsel is both efficient and reasonable and in the best interests of the Class here. *See In re: Int. Rate Swaps Antitrust Litig.*, No. 16-MC-2704 (PAE), 2016 WL 4131846, at *4 (S.D.N.Y. Aug. 3, 2016).[7] This case will undoubtedly be complex as it involves at least four different Heavy Metals and perchlorates in a wide array of Hain's baby food.  It will likely entail the evaluation of tens of thousands of documents from Hain, including (1) supplier information; (2) formulation documents and related communications; (3) internal and third-party audits of Defendant; (4) quality control manuals and documents; (5) internal and third-party testing of both ingredients and finished products; (6) consumer inquires and complaints; and (7) documents related to governmental investigation.  There will also be various experts, including ones for testing, liability, and damages. There will also likely be class representatives from across the country and a significant number of party depositions and possibly third parties, including but not limited to Consumer Reports and Happy Baby Bright Futures. Proposed Interim Co-Lead Counsel will oversee and direct all

---

[7] Other courts have established executive committees in order to "assist with the complexities" of cases involving multi-state classes. *Gamboa v. Ford Motor Co.*, 381 F. Supp. 3d 853, 868 (E.D. Mich. 2019); *see also In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998) (establishing executive committee).

litigation activities and ensure there will be proper allocation of work to avoid duplication of effort. *See* Proposed Order, submitted herewith.

Accordingly, an Executive Committee to support the work of Interim Co-Lead Counsel is warranted and appropriate here. *See, e.g., Tillman et al. v. Morgan Stanley Smith Barney, LLC*, Case No. 1:20-cv-5914, Slip Op. at 3 (S.D.N.Y. Sept. 17, 2020) (appointing interim co-lead counsel along with an executive committee of six attorneys in a data breach consumer case) (attached to Joint Declaration as Ex. 6); *see also In re: Canon U.S.A. Data Breach Litig.*, Master File No. 1:20-cv-06239-AMD-SJB, Slip Op. at 3 (E.D.N.Y. Mar. 9, 2021) (appointing interim co-lead counsel and one firm on an executive committee in a data breach consumer case) (attached to Joint Declaration as Ex. 7); *see also In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 644, 653 (E.D. Pa. 2003) ("[t]he multiplicity of suits requires that the district court be allowed to combine procedures, appoint lead counsel, recognize steering committees of lawyers, limit and manage discovery, etc. to minimize expense to all litigants and to provide judicial efficiency.") (quotation omitted).

### 3.     Proposed Interim Class Counsel Have Experience in a Diverse Group of States and Vast Knowledge of the Subject Matter and Applicable Law at Issue.

The Stewart Movants include twelve (12) plaintiffs who reside in eight (8) states (California, Texas, Florida, New York, Pennsylvania, Illinois, Minnesota and Rhode Island), the first six of which are the biggest by population in the country.[8] It is anticipated that the upcoming

---

[8] The Stewart Movants purchased a wide array of the products at issue, including Earth's Best Organic Sweet Potato Cinnamon Flax & Oat Wholesome Breakfast; Earth's Best Organic Whole Grain Oatmeal Cereal; Earth's Best Organic Whole Grain Multi-Grain Cereal; Earth's Best Organic Banana Raspberry & Brown Rice Fruit & Grain Puree; Earth's Best Organic Rice Cereal; Earth's Best Organic Sweet Potatoes Organic Baby Food; Earth's Best Organic Corn & Butternut Squash Organic Baby Food; Earth's Best Organic Carrots Organic Baby Food; Earth's Best Organic Butternut Squash Pear Baby Food Puree; Earth's Best Organic Squash & Sweet Peas Baby

consolidated complaint will include plaintiffs from a majority of all states. Proposed Interim Class Counsel are licensed or admitted to practice in courts within the following states: California, Florida, New York, New Jersey, Pennsylvania, Washington, Illinois, Colorado, Wisconsin, and Minnesota. Moreover, these attorneys and others in their respective firms practice nationwide and have litigated cases involving a majority of applicable states' laws in the country. This is especially true of consumer protection statutes and related common law. As such, the Stewart Movants' attorneys have vast knowledge of the applicable laws in this case.

The Court will no doubt receive multiple applications with highly qualified class action attorneys. While knowledge of the complexities of class action litigation is a must, the Proposed Interim Class Counsel collectively bring more on-point experience because they have litigated class actions involving heavy metals in consumer products. As discussed *supra,* Ms. Peterson and Ms. Hodge have been litigating consumer class actions involving the presence of heavy metals in dog foods for the past three years. In one of those cases, Judge Orrick recently certified a Rule 23(b)(2) class of California consumers who purchased dog food alleged to include undisclosed heavy metals. *See Zeiger, v. WELLPET LLC,* No. 3:17-CV-04056-WHO, 2021 WL 756109 (N.D. Cal. Feb. 26, 2021) (Rule 23(f) petition denied). This same order also denied summary judgment as to the plaintiff's consumer protection claims related to the presence of heavy metals and largely denied defendant's *Daubert* motion to exclude the plaintiff's liability expert's opinion on the

---

Food Puree; Earth's Best Organic Strawberry Organic Sunny Days Snack Bars; Earth's Best Organic Sweet Potato Carrot Organic Sunny Days Snack Bars; Earth's Best Organic Vegetable Turkey Dinner Organic Baby Food; Earth's Best Organic Apple Apricot Organic Baby Food; Earth's Best Organic Blueberry Banana Flax & Oat Wholesome Breakfast Puree; Earth's Best Organic Sweet Potato and Apple Baby Food Puree; Earth's Best Organic Banana Apricot Pumpkin with Yogurt, Oat & Quinoa Wholesome Breakfast Puree; Earth's Best Organic Broccoli Red Lentil Oat Veggie & Protein Puree; Earth's Best Organic Peach Oatmeal Banana Organic Baby Food; and Earth's Best Organic Apples Organic Baby Food.

potential risks of heavy metal ingestion and the ability to control levels in dog food. *Id.* Ms. Peterson and Ms. Hodge also have a case pending in the Northern District of New York concerning Champion PetFoods, USA, Inc.'s false advertising of its dog food based on the inclusion of heavy metals and other contaminants and toxins. This case has survived a motion to dismiss (*Colangelo v. Champion Petfoods USA, Inc.*, No. 618CV1228LEKML, 2020 WL 777462 (N.D.N.Y. Feb. 18, 2020)) and the parties have briefed class certification, completed expert discovery, and are in the midst of summary judgment briefing. And most recently, the court in *Classick v. Schell & Kampeter, Inc. d/b/a Diamond Pet Foods* denied a motion to dismiss in its entirety noting, "[i]t is reasonable to believe that consumers would decline to purchase the dog food if they knew it contained any level of contaminants and that those contaminants may be harmful to dogs." *Classick v. Schell & Kampeter, Inc. d/b/a Diamond Pet Foods,* No. 2:18-CV-02344-JAM-AC, 2021 WL 2003118, at \*4 (E.D. Cal. May 19, 2021).

These cases, many of which have progressed through fact and expert discovery, have provided Ms. Peterson and Ms. Hodge specific knowledge and expertise for cases involving Heavy Metals, including the anticipated defenses of naturally occurring heavy metals and quasi-regulatory arguments. Ms. Peterson has taken and defended the liability and testing experts' depositions in these cases, giving her intimate understanding of the FDA, EPA, EU, and other governmental bodies' rules, regulations, guidance and lack thereof, as well as familiarity with the theories that will likely drive the lability expert opinions here, such as bioaccumulation and ability to control the inclusion of Heavy Metals in a finished product. Moreover, all of these cases are consumer cases seeking economic damages and alleging that the nondisclosure of the heavy metals to consumers made the packaging misleading– the same theory of this case. Thus, Proposed

Interim Class Counsel's knowledge regarding Heavy Metals will be invaluable to the Class given that Heavy Metals are at the center of this case.

####     4.     The Stewart Movants Have Substantial Resources They Are Committing to Representing the Class.

The proposed Interim Co-Lead Class Counsel and Executive Committee have substantial resources that they committed and will continue to commit to representing the Class. George Gesten McDonald has seven attorneys and four staff in three offices located in New York, New York, Lake Worth, Florida, and Richmond, Virginia; LGN has 55 attorneys and 18 staff in three offices in Minneapolis, Minnesota, Washington D.C., and Bismarck, North Dakota; Gustafson Gluek has 18 attorneys and nine staff in two offices located Minneapolis, Minnesota and San Diego, California; Barrack has 20 attorneys and seven staff in four offices located in Philadelphia, Pennsylvania; New York, New York; Newark, New Jersey; and San Diego, California; and LDGA has 14 attorneys and three staff in two offices located in Newark, New Jersey and Philadelphia, Pennsylvania. All are prominent national class action firms that have the funds and manpower to effectively and efficiently litigate this case. And each member of the Proposed Interim Class Counsel is personally committed to prosecuting this case efficiently and expeditiously. Joint Declaration at ¶¶16-18; Smith Dec. at ¶¶7-9; Basser Dec. at ¶¶13-15; Hodge Dec. at ¶¶8-10.

####     5.     The Stewart Movants Bring Important Diversity to Their Representation of the Class.

Diversity has become an important issue not only in the legal profession as a whole but in class action leadership. *See, e.g.*, *In re J.P. Morgan Chase Cash Balance Litigation*, 242 F.R.D. at 277; *Robinhood*, WL 7330596, at *2. The recent guidelines entitled, "Inclusivity and Excellence: Guidelines and Best Practices for Judges Appointing Lawyers to Leadership Positions in MDL and Class-Action Litigation," issued by the James F. Humphreys Complex Litigation Center,

George Washington Law School (March 15, 2021) ("Guidelines and Best Practices"),[9] "address the judiciary's responsibility for, and role in, giving lawyers across the profession an equal opportunity to be appointed to MDL and class-action leadership positions," (Guidelines and Best Practices at 1), particularly women, minorities, disabled attorneys and LGBTQ lawyers. *Id.* at iii. The Guidelines and Best Practices further stress that "[t]he judge should recognize that diversity enhances the quality of the decision-making process and results and should make appointments consistent with the diversity of our society and justice system." *Id.* at 14 (Guideline 1).

With respect to Rule 23(g), the Guidelines and Best Practices state that "appointing diverse counsel to leadership roles can be important to fulfilling" the court's obligation to selecting counsel who will fairly and adequately represent the interests of the class. *Id.* at 6. Moreover, the Guidelines and Best Practices point out that appointing non-repeat yet able attorneys to leadership positions "provides the opportunity to train future leaders, permitting the system to work well in the years to come." *Id.* at 11.

The Stewart Movants' proposed leadership structure is fully consistent with the foregoing Guidelines and Best Practices as well as recent cases supporting diversity in such appointments. First, women account for "93% of consumer purchases of food and … 80% of women say they are the primary grocery shoppers for their households."[10] As such, a leadership structure composed of four female attorneys and one male attorney aptly reflects the likely constitution of the proposed Class members here. In addition, the Proposed Interim Class Counsel have a vast range of age and

---

[9] https://www.law.gwu.edu/humphreys-complex-litigation-center-publications (last accessed May 26, 2021).

[10] https://girlpowermarketing.com/statistics-purchasing-power-women/ (last accessed May 26, 2021). *See also* *https://m2w.biz/fast-facts/* ("Women Account for 85% of overall consumer spending…" and 93% Food") (last accessed May 26, 2021).

years practicing law, including amply experienced but younger attorneys who have few leadership appointments. This structure will ensure that younger qualified attorneys will be given an opportunity to hold important leadership positions and be afforded significant roles in the litigation. Moreover, as bi-lingual Korean-American and Portuguese-American attorneys, Ms. Smith and Ms. Hodge, respectively, bring racial and cultural diversity to the proposed leadership structure.

All the Proposed Interim Class Counsel firms fully support diversity and intend on staffing this case accordingly. For example, Ms. Feldman leads her firm's Class Action Practice Group and will be supported by other women lawyers with respect to this case. More than 40% of George Gesten McDonald's attorneys are women and, as reflected in its website, www.4-Justice.com, it "embraces and encourages diversity among its lawyers and staff and respects the differences among its employees and its communities."

Ms. Peterson's firm, LGN, is committed to developing and fostering a diverse and an inclusive practice environment to reflect the diversity of its clients and the greater community.[11] LGN recognizes that its firm is stronger when it includes all individuals regardless of gender, race, ethnicity, national origin, sexual orientation, gender identity or expression, or physical ability. *Id.* In fact, "[w]omen make up half of LGN's attorneys and almost 40% of [LGN's] partners – a figure well ahead of the national average." *Id.* LGN is also an active member of Twin Cities Diversity in Practice, a local association of more than sixty law firms and corporate legal departments, including those of Fortune 500 companies, committed to creating a vibrant and inclusive legal community.

---

[11] *See* https://www.locklaw.com/?s=diversity.

Ms. Smith's firm is also a proponent of diversity. Smith Dec. at ¶5. Forty-five percent of its attorneys are women, and eighteen attorneys of the firm represent diverse background in terms of race, religion, sexual orientation, and national origin. Ms. Smith herself is a Korean American attorney, born and raised in Seoul, South Korea, and is one of the four female equity partners among eight total equity partners, which shows Gustafson Gluek's commitment to diversity where women of color account for only 3% of all equity partners in the United States. *Id*. at ¶6. Not only is diversity within the firm important to Gustafson Gluek, but so too is being an advocate for the underrepresented. Gustafson Gluek was one of four firms to create the Minnesota *Pro Se* Project, pairing indigent federal litigants with attorneys for which Ms. Smith has worked extensively from laying the foundation to its current growth. *Id*. at ¶3. Ms. Smith has represented many pro se litigants through the Federal Bar Association's Pro Se Project in addition to those referred to Gustafson Gluek by other sources and received the "Distinguished Pro Bono Service Award" in 2010 for her efforts. *Id*. at Ex. A.

Ms. Hodge's firm also has a long-standing tradition of recruitment, retention, and advancement of women and minority attorneys. Hodge Dec. at Ex. A. The firm currently boasts a team comprised of 50% women and/or minority attorneys, including at the partnership level. *Id.* LDGA actively recruits women and minority attorneys and regularly staffs its summer associate positions with law students participating in the Rutgers Minority Student Program. *Id.* LDGA is also committed to supporting and representing the minority and socioeconomically disadvantaged population in Newark, New Jersey. *Id.* To that end, it has regularly participated in a summer hiring program that employs minority students from University High School in order to provide inner city students with valuable exposure to a law practice. *Id.* Additionally, Ms. Hodge was one of the first attorneys to handle pro bono appeals in the New Jersey Appellate Division's Pro Bono Civil

Pilot Program and has represented *pro se* Newark residents in eviction and domestic violence matters as part of that program. *Id.* at 13.

## V. CONCLUSION

For all of the foregoing reasons, the Stewart Movants respectfully submit that the Court appoint Lori G. Feldman (George Gesten McDonald, PLLC) and Rebecca A. Peterson (Lockridge Grindal Nauen P.L.L.P.) as Interim Co-Lead Counsel, and Catherine Sun-Yung Smith (Gustafson Gluek PLLC), Stephen R. Basser (Barrack, Rodos & Bacine), and Susana Cruz Hodge (Lite DePalma Greenberg & Afanador, LLC) as Executive Committee members.

Dated:  May 27, 2021                        Respectfully submitted,

LOCKRIDGE GRINDAL NAUEN P.L.L.P.

By:  s/  Rebecca A. Peterson
Rebecca A. Peterson (*Pro Hac Vice*)
Robert K. Shelquist (*Pro Hac Vice*)
Krista K. Freier (*Pro Hac Vice*)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rapeterson@locklaw.com
          rkshelquist@locklaw.com
          kkfreier@locklaw.com

GEORGE GESTEN MCDONALD, PLLC

By:  s/  Lori G. Feldman
Lori G. Feldman
102 Half Moon Bay Drive
Croton-on-Hudson, NY 10520
Telephone: (917) 983-9321
Facsimile: (888) 421-4173
E-mail: LFeldman@4-justice.com
E-service: eService@4-justice.com

**Plaintiffs' Proposed Co-Lead Interim Counsel**

Catherine Sung-Yun K. Smith  (*Pro Hac Vice*)
Daniel E. Gustafson  (*Pro Hac Vice*)
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
E-Mail: csmith@gustafsongluek.com
         dgustafson@gustafsongluek.com

Stephen R. Basser (*Pro Hac Vice forthcoming*)
BARRACK RODOS & BACINE
One America Plaza
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile:  (619) 230-1874
E-mail: sbasser@barrack.com

Susana Cruz Hodge (*Pro Hac Vice*)
Joseph DePalma (*Pro Hac Vice*)
LITE DEPALMA GREENBERG & AFANADOR
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
E-mail: scruzhodge@litedepalma.com
         jdepalma@litedepalma.com

**Plaintiffs' Proposed Executive Committee**

David J. George
GEORGE GESTEN MCDONALD, PLLC
9897 Lake Worth Road, Suite 302
Lake Worth, FL 33463
Telephone:  (561) 232-6002
Facsimile:  (888) 421-4173
E-mail:  dgeorge@4-Justice.com

Janine L. Pollack
CALCATERRA POLLACK LLP
1140 Avenue of the Americas, 9th Floor
New York, NY  10036
Telephone: (917) 899-1765
Facsimile:  (332) 206-2073
E-Mail:  jpollack@calcaterrapollack.com

Kevin Landau
Miles Greaves
TAUS, CEBULASH & LANDAU, LLP
80 Maiden Lane, Suite 1204
New York, NY 10038
Telephone: (212) 931-0704
E-Mail: klandau@tcllaw.com
       mgreaves@tcllaw.com


Kenneth A. Wexler
Kara A. Elgersma
WEXLER WALLACE, LLP
55 West Monroe, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
E-Mail:  kaw@wexlerwallace.com
       kae@wexlerwallace.com


Simon B. Paris
Patrick Howard
SALTZ, MONGELUZZI & BENDESKY, P.C.
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Telephone: (215) 575-3895
E-Mail:  sparis@smbb.com
       phoward@smbb.com


Matthew D. Schelkopf
Lori G. Kier
Davina C. Okonkwo
SAUDER SCHELKOPF
1109 Lancaster Avenue
Berwyn, PA 19312
Telephone: (610) 200-0581
E-Mail:  mds@sstriallawyers.com
       lgk@sstriallawyers.com
       dco@sstriallawyers.com


Marc H. Edelson
EDELSON LECHTZIN LLP
3 Terry Drive, Suite 205
Newtown, PA 18940
Telephone: (215) 867-2399
E-Mail:  Medelson@edelson-law.com

Joshua H. Grabar
GRABAR LAW OFFICE
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (267) 507-6085
Facsimile:  (267) 507-6048
E-Mail: Jgrabar@grabarlaw.com

**Attorneys for Plaintiffs**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 27, 2021, the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Rebecca A. Peterson*
Rebecca A. Peterson
