UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE HAIN CELESTIAL HEAVY METALS BABY FOOD LITIGATION**<br><br>This Document Relates To: All Actions | Case No. 2:21-cv-678-JS-AYS |

**RESPONSE IN FURTHER SUPPORT OF THE MOTION TO APPOINT LABATON SUCHAROW AS INTERIM LEAD COUNSEL**

Michael P. Canty
Carol C. Villegas
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
mcanty@labaton.com
cvillegas@labaton.com

Dated: June 10, 2021

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

ARGUMENT ............................................................................................................................ 1

I.      Labaton Sucharow is Conducting a Thorough Investigation into Hain Celestial and Other Manufacturers' Conduct ........................................................................................... 1

II.      Labaton Sucharow's Proposed Organizational Structure Best Serves the Needs of the Class ................................................................................................................................ 4

         A.      Appointing a Committee of Firms is Unnecessary When One Firm Amply Satisfies the Rule 23(g) Requirements ................................................................. 5

                 (i)      The Class Does Not Have Divergent Interests Requiring a Committee ..... 5

                 (ii)     A Committee is Inefficient and Not in the Best Interest of the Class ......... 6

         B.      Additional Counsel or Liaison Counsel is Unnecessary ........................................ 8

CONCLUSION ........................................................................................................................ 9

## INTRODUCTION

Plaintiff Asyia Andrews (the "Andrews Plaintiff" or "Plaintiff"), by and through her undersigned counsel respectfully submits this response in further support of the motion for appointment of her counsel, Michael Canty and Carol Villegas of Labaton Sucharow LLP ("Labaton Sucharow" or "Proposed Interim Lead Counsel") as Interim Lead Counsel pursuant to Fed. R. Civ. P. 23(g).[1]  This response specifically addresses two points:

- Why the work Proposed Interim Lead Counsel has done identifying and investigating the claims in this action demonstrates that they best satisfy the relevant criteria for appointment in this litigation; and

- Why Plaintiff's proposed organizational structure best serves the needs of the Class in this litigation.

## ARGUMENT

**I.   Labaton Sucharow is Conducting a Thorough Investigation into Hain Celestial and Other Manufacturers' Conduct**

What is striking about many of the leadership applications filed in this litigation is that they fail to describe any investigation into Defendants' conduct or the Congressional Report underlying the allegations that served as the impetus to this action.  Indeed, only the Andrews Plaintiff and Proposed Interim Lead Counsel contacted and spoke with former employees of Defendant and those responsible for drafting the Congressional Report.  *See* ECF No. 61-1 at 1.  This is what separates Labaton Sucharow's leadership application from the field of other submissions.

---

[1] Earlier today, Plaintiff in *Andrews v. Beech-Nut Nutrition Company et. al.*, 2:2021-cv-01704-GRB-AKT (the "Andrews Action") filed a request for consolidation with this Court.  As detailed in that letter, Plaintiff is in the process of severing claims against Defendants in the Andrews Action and filing an amended complaint against only Hain Celestial.

1

As the Court is undoubtedly aware, the allegations underlying this litigation came to light four months ago when the Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform, U.S. House of Representatives ("the House Subcommittee") issued its February 4, 2021 report, *Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury* ("the Congressional Report"). This litigation is not a "proprietary" case conceived by one firm, with all others riding its coattails. To that end, no proposed Lead Counsel can claim to have independently identified the claims at issue in this litigation. There is no question that there are times when being the "first" firm to do something should be a leadership consideration, however, this is not one of those times. Presumably, all proposed Lead Counsel learned of the Congressional Report at approximately the same time. The fact that one firm was able to draft a complaint based on the same publicly available facts in the Congressional Report slightly faster than other firms, rather than conducting a thorough investigation is not an appropriate measure of the value provided to the Class or the "work counsel has done…investigating potential claims." Fed. R. Civ. P. 23(g)(1)(A)(i). Indeed, being the first to file after the Congressional Report shows a distinct lack of an investigation into potential claims. Being first simply for the sake of being first is not something to be encouraged, let alone rewarded. Rather, the Court should evaluate the work counsel has done by considering the quality of the investigative work.

Additionally, while some movants highlight interviews with consumers injured by Defendant's baby food products as a mark of a substantial investigation, this too is of little importance to an investigation into claims related to *Defendant's* conduct. *See* ECF No. 66-1 at 6. Counsel's interviews with absent class members—consumers injured by Defendant's conduct—does not distinguish one firm from another. Indeed, interviews with individual

consumers are more relevant to Defendant's defenses than to the potential claims at issue. Fed. R. Civ. P. 23(g)(1)(A)(i)("… the work counsel has done in identifying or investigating ***potential claims*** in the action").

Of course, information beyond potential claims is valuable for counsel to be aware of, however, gathering information from hundreds of absent class members is inefficient and inconsistent with class action litigation. *See e.g.*, *Haynes v. Planet Automall, Inc.*, 276 F.R.D. 65, 73 (E.D.N.Y. 2011) ("The underlying purpose of the class action mechanism is to foster 'judicial economy and efficiency by adjudicating, to the extent possible, issues that affect many similarly situated persons.'"). Here, interviews with an exorbitant amount of absent class members are redundant because class-wide issues predominate over questions affecting individual class members. *See* Fed. R. Civ. P. 23(b)(3). To the extent they are not redundant, such interviews are less probative of the potential claims than interviews with Defendant's former employees who have first-hand experience with the manufacturing processes at issue. Accordingly, when this Court weighs the work performed by Counsel investigating potential claims, investigating Defendant's conduct, and interviewing those responsible for drafting the Congressional Report should weigh more heavily than speaking with absent class members who likely lack unique information.

Here, unlike many of the leadership applications, Labaton Sucharow leveraged its in-house investigative team to design and implement an investigation that targets the very source of the allegations underlying this litigation. Either (i) no other firm seeking appointment thought to contact those responsible for drafting the Congressional Report, or (ii) no other firm was successful in doing so. In either instance, this demonstrates that the work Proposed Interim Lead

3

Counsel has done demonstrates that they best satisfy the relevant criteria for appointment in this litigation pursuant to Rule 23(g).

## II. Labaton Sucharow's Proposed Organizational Structure Best Serves the Needs of the Class

The Andrews Plaintiff and Proposed Interim Lead Counsel propose a lean and efficient organizational structure that best serves the interest of the Class without increasing costs to the Class or inserting unnecessary bureaucracy. Indeed, Labaton Sucharow is the only movant seeking appointment as Interim Lead Counsel alone—without an Executive Committee, Steering Committee, Liaison Counsel, or Co-Counsel. Michael Canty and Carol Villegas of Labaton Sucharow, both have extensive experience in class action consumer protection litigation and exceed the Rule 23(g) requirements for appointment as Interim Lead Counsel. Specifically, Mr. Canty served as both a state and federal prosecutor, has tried complex high-profile cases, and has extensive experience prosecuting consumer class actions. Ms. Villegas also has significant experience handling class actions, experience at trial, and has been recognized by the *National Law Journal* as a "Plaintiffs' Trailblazer" and the *New York Law Journal* as a "Top Woman in Law." Additionally, Ms. Villegas serves on the Board of Directors of the City Bar Justice Center and is frequently involved in programming and speaking on diversity issues in connection with the Women in Law Section of the New York State Bar Association. Labaton Sucharow, led by Partners Michael Canty and Carol Villegas, amply satisfies the Rule 23(g) factors for appointment as Interim Lead Counsel, thus, a more complex leadership structure is unnecessary, inefficient, and not in the best interest of the Class.[2]

---

[2] To the extent the Court wants to appoint multiple law firms as co-lead counsel, the Court should appoint as few law firms as necessary for this stage of the case and if Interim Lead Counsel requires additional resources, they should seek approval from the Court to involve additional law firms. *See e.g., In re: Int. Rate Swaps Antitrust Litig.*, 2016 WL 4131846 (S.D.N.Y. Aug. 3, 2016)("[I]n designating these three firms, the Court does not preclude interim co-lead counsel from seeking the Court's approval for the involvement of other firms not here designated for specific tasks or projects upon a showing why it is necessary…").

### A. Appointing a Committee of Firms is Unnecessary When One Firm Amply Satisfies the Rule 23(g) Requirements

"Committees are most commonly needed when group members' interests and positions are sufficiently dissimilar to justify giving them representation in decision making." Manual for Complex Lit. § 10.221. "Committees of counsel can sometimes lead to substantially increased costs, and they should try to avoid unnecessary duplication of efforts and control fees and expenses." *Id.* Here, the appointment of a Committee is not warranted because (i) the interests of the Class do not diverge; and (ii) no movant has demonstrated that the interests of efficiency and economy are best served by appointing a Committee.

#### (i) The Class Does Not Have Divergent Interests Requiring a Committee

Each movant fails to articulate ***why*** establishing a Committee is in the best interest of the Class. Several movants assert that their appointment to a Committee is in the best interest of the class, however, these assertions fail to address the threshold question of whether a Committee is necessary. *See* ECF Nos. 59-1, 65, 66-6, 67-1. Critically, nearly every leadership application in support of installing a multi-firm Committee fails to describe how their clients' interest are dissimilar to those of the Class, nor could they, as all class members' interests are aligned.[3]

Tellingly, the Stewart Movants fail to explain why an Executive Committee is necessary in this litigation. Indeed, their submission lists twenty-two attorneys from twelve different law firms as proposed counsel. *See* ECF No. 59-1 at 25-28. Yet, the underlying divergent interests that purportedly require the appointment of so many law firms are not even mentioned. In the absence of divergent interests, a large leadership structure such as this results in redundancies that do not benefit the Class. *See In re Parking Heaters Mem. Antitrust Litig.*, 310 F.R.D. 54, 58

---

[3] The Wolf Haldenstein submission (ECF No. 65) arguably raises an independent interest, however, it "does not seek overall leadership" in this litigation and acknowledges that a "separate track within the broader consolidated action" is an appropriate way to litigate their claims. *Id.* at 6.

(E.D.N.Y. 2015) (noting "the inevitable redundancies and inefficiencies attendant to a four-firm leadership structure"); *In re: Interest Rate Swaps Antitrust Litig*., No., 2016 WL 4131846, at *4 (S.D.N.Y. Aug. 3, 2016) ("[H]aving more than two interim co-lead counsel will likely yield needless duplication of effort and inefficient decision making."); *see also* Manual Complex Lit. § 10.224 ("Deferring to proposals by counsel without independent examination, even those that seem to have the concurrence of a majority of those affected, invites problems down the road…").

Similarly, the Erin Green Comite submission requests the Court to appoint three different law firms to leadership roles: one firm as Interim Class Counsel and two firms as members of an Executive Committee of an unknown size. *See* ECF No. 67-1. The submission adds that including two additional law firms as co-counsel is appropriate because the firms have a "prior history of working together." *Id*. at 11-12. This is plainly insufficient. The submission fails to explain what interests of its clients are more efficiently resolved by a leadership structure consisting of multiple law firms.

Accordingly, appointing a Committee in the absence of any dissimilar interests will inevitably drive-up costs and result in the inefficient prosecution of this action.

### (ii)    A Committee is Inefficient and Not in the Best Interest of the Class

Each movant also fails to articulate ***how*** establishing a Committee with multiple firms as Lead Counsel will result in increased efficiencies and an increased ability to litigate this case in an effective, cost-efficient, and non-duplicative manner.

For example, the Mays Group proposes a leadership structure with eight different law firms and the option to add more firms as the case progresses. *See* ECF No. 66-1. While the submission generally explains what work is allocated to the Committee versus what work is allocated to Lead Counsel, it does explain what, if any, efficiencies are gained through its

proposed allocation. Mere conclusory statements that an Executive Committee will efficiently litigate this action do not justify the creation of a Committee. Moreover, the submission does not explain how a multi-faceted decision-making process with *eight* moving parts provides value to the Class. *Id.*

Similarly, the Stewart Movants' submission requests this Court to appoint a leadership structure with both Co-Lead Counsel and an Executive Committee. *See* ECF No. 59-1. Much like, the Mays Group, there is no justification provided for why the Class needs an expansive group of law firms. Although this litigation will likely involve complex legal issues, the Stewart Movants offer no explanation as to why "[r]esearching legal issues" requires multiple law firms. ECF No. 59-10 at 3.

And, while the Erin Green Comite submission recognizes that a leadership structure of ten law firms is "too unwieldy to effectively and efficiently litigate this action", it fails to explain how this problem is cured by its own submission which consists of a leadership structure consisting of five law firms. *See* ECF No. 67-1 at 11. Indeed, a leadership structure consisting of five law firms is equally as susceptible to the inefficiencies and redundancies that arise in a leadership structure consisting of ten law firms.

These proposed leadership structures will substantially increase costs by decentralizing leadership and ensuring that numerous different firms weigh in on every decision, no matter how small. *See e.g.,* ECF No. 66-10 at 3 ("The Executive Committee *shall* … consult with and assist Lead Counsel in *all aspects of the case*."). This results in unnecessary bureaucracy and leads to confusion and duplication. *See e.g.*, *In re Deva Concepts Prod. Liab. Litig*, 2020 WL 4368362, at *4 (S.D.N.Y. July 30, 2020) (commending counsel for eliminating a formal Executive Committee).

Accordingly, establishing a formal and rigid decision-making leadership structure is inappropriate at this time. The more judicious way to proceed is for the Court to appoint Lead Counsel and if as this case progresses towards class certification and trial, Lead Counsel believes there is need for a more extensive leadership structure, Lead Counsel should bring that matter to the Court's attention at that time.

Proposed Interim Lead Counsel is amply capable of litigating this case without consulting a Committee in "all aspects of the case." While there are cases where such consultation is important because of divergent interests, this is not one of those cases. As described above, there are no divergent interests to consider. And, there are no efficiencies to be gained from appointing five, eight, or twelve firms when one firm will suffice.

**B.       Additional Counsel or Liaison Counsel is Unnecessary**

Proposed Interim Lead Counsel's submission is also leaner and more efficient because it does not require Liaison Counsel. Liaison Counsel is typically "[c]harged with essentially administrative matters, such as communications between the court and other counsel . . . Liaison counsel will usually have offices in the same locality as the court." Manual for Complex Litigation § 10.221. Here, Liaison Counsel is unnecessary because Proposed Interim Lead Counsel is close in physical proximity to the Courthouse and has extensive experience litigating class actions in this District.

The "CLLB Team" submission requests that the Court appoint Judge John G. Marks (Ret.) as Liaison Counsel. *See* ECF No. 64-1. However, the CLLB Team already has an office in the same locality as the court. Accordingly, while Judge John Marks is undoubtedly a qualified jurist, few efficiencies are gained when a firm with offices in the same locality of the court involves additional local counsel for essentially administrative matters.

Relatedly, no efficiencies are gained from including additional counsel that is not local. The Kohn Swift submission includes two other law firms, located in Arkansas and Michigan, as proposed co-counsel, yet the submission dedicates only one line to describing these firms' qualifications and what their roles consist of. *See* ECF No. 63.

Here, Proposed Interim Lead Counsel is based in New York City—in close physical proximity to the Courthouse. Labaton Sucharow also has extensive experience litigating class actions in the Eastern District of New York. *See, e.g., In re The Hain Celestial Group Inc. Securities Litigation*, 16-cv-04581-ADS-SIL (E.D.N.Y.); *In re Cronos Group Inc. Securities Litigation*, No. 2:20-CV-01310-ENV-SIL (E.D.N.Y.); *ODS Capital LLC v. Changyou.com Limited et al.*, No. 1:20-cv-05973-KAM-RLM (E.D.N.Y.). As such, Mr. Canty and Ms. Villegas of Labaton Sucharow have no need for Liaison Counsel or additional out-of-state counsel thus providing the Class with a more streamlined and efficient prosecution of this litigation.

As described above, Proposed Interim Lead Counsel moved this Court for appointment as sole Lead Counsel, however, if the Court believes appointing multiple firms as co-counsel will best serve the interest of the Class, Labaton will work cooperatively with any co-counsel the Court deems appropriate and has experience working with Cohen Milstein and Gibbs Law Group.

## **CONCLUSION**

For the foregoing reasons and for the reasons stated in our May 27, 2021 filing, we respectfully request that the Court appoint Labaton Sucharow LLP as Interim Lead Counsel.

9

Dated: June 10, 2021

/s/_____*Michael P. Canty*_____
Michael P. Canty
Carol C. Villegas
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
mcanty@labaton.com
cvillegas@labaton.com