## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF NEW YORK

In re HAIN CELESTIAL HEAVY
METALS BABY FOOD LITIGATION

Case No.: 2:21-CV-0678-JS-AYS

This Document Relates To:
*Lawrence, et al. v. Hain Celestial Group, Inc.,*
1:21-CV-01287-JS-AYS (E.D.N.Y.)

## AMENDED CLASS ACTION COMPLAINT

Plaintiff, on behalf of himself and all others similarly situated, brings this class action suit for damages and injunctive relief for purchasers of Baby Food Products (as defined herein) that Defendant Hain Celestial Group ("Hain") marketed and sold without disclosing that they were tainted with arsenic, lead, cadmium, and mercury ("Toxic Heavy Metals") at levels above what is considered safe for babies. Plaintiff alleges the following based upon personal information as to allegations regarding himself, on the investigation of his counsel, and on information and belief as to all other allegations.

## BACKGROUND

1.      On February 4, 2021, the Subcommittee on Economic and Consumer Policy of the U.S. House of Representatives (the "Subcommittee") released a Report[1] concluding that baby

---

[1] Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury, Staff Report ("Report"), Subcommittee on Economic and Consumer Policy of the Committee on Oversight and Reform, U.S. House of Representatives, at 11, February 4, 2021, available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.

food manufacturers, including Hain, sold Baby Food Products containing concentrations of inorganic arsenic, lead, cadmium, and mercury at levels above what is considered safe for babies.

2.  Hain does not disclose the Toxic Heavy Metal content of its foods on its labels or in its marketing materials, nor does it warn consumers that its Baby Food Products may contain potentially dangerous levels of Toxic Heavy Metals.

3.  Plaintiff and the Class members purchased Baby Food Products manufactured and sold by Hain, unaware that Hain's products potentially contain Toxic Heavy Metals at levels well above what is considered safe for babies. Had Hain disclosed the Toxic Heavy Metal content on its product labels, or otherwise warned that its products could contain levels of Toxic Heavy Metals considered unsafe, neither Plaintiff nor any other reasonable consumer would have purchased Hain's products.

4.  Plaintiff brings this class action on his own behalf and on behalf of other purchasers of Hain's' Baby Food Products,[2] to seek refunds and all other economic losses suffered as a result of their purchases of Hain's Baby Food Products, as well as injunctive relief.

## JURISDICTION AND VENUE

5.  This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(d). The amount in controversy in this class action exceeds $5,000,000, exclusive of interest and costs, and there are numerous Class members who are citizens of states other than Hain's state of citizenship, and more than two-thirds of the Class members reside in states other than the

---

[2] The term "Baby Food Products" refers to Baby Food Products that contain Toxic Heavy Metals, including Baby Food Products purchased by Plaintiff. Plaintiff reserves the right to amend this definition as his investigation continues and he has had an opportunity to conduct discovery.

state in which this case is filed, and therefore any exemptions to jurisdiction under 28 U.S.C. §1332(d)(2) do not apply.

6.      This Court has personal jurisdiction over Hain in this matter. Hain is headquartered in the State of New York. Moreover, Hain has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers and/or representatives, operated, conducted, engaged in and carried on a business venture in this state, and/or marketed, advertised, distributed and/or sold products, and caused injuries to Plaintiff and Class Members.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Hain transacts substantial business and/or has agents within this District and have intentionally availed itself of the laws and markets within this district.

## PARTIES

8.      Plaintiff Erik Lawrence is a resident of the State of Georgia.  Mr. Lawrence purchased Baby Food Products made by Defendant Hain Celestial Group.[3]

9.      Defendant Hain Celestial Group is a Delaware corporation with corporate headquarters in Lake Success, New York. Hain sells Baby Food Products under the Earth's Best brand. Hain's Baby Food Products are sold and purchased throughout the United States.

---

[3] Mr. Lawrence purchased Earth's Best organic infant rice cereal and several Earth's Best pouches: sweet potato cinnamon flax oatmeal; sweet potato and apple puree; and apple peach oatmeal.
.

## **FACTS**

A.    Hain Touts the Quality and Safety of Its Baby Food Products.

10.    Few things are as precious as babies are to their parents and other caretakers. Consumer research from The Nielsen Company shows that the "big three" attributes buyers look for in a baby food product are a trusted brand, good infant nutrition, and the safety of the products for consumption by children.[4]

11.    Consumers expect that baby food manufacturers will regard their children's health and safety as paramount concerns when it comes to formulating their products, sourcing their ingredients, and testing for safety, and that manufacturers will be transparent in their labelling and marketing about what goes into their Baby Food Products.[5]

12.    Unsurprisingly, Hain touts its Baby Food Products as being tested as safe for babies, in compliance with government regulations, and as containing only safe ingredients. For example, Hain's website section on its "Commitment to food safety" claims that, "Nothing is more important to Earth's Best than the trust and confidence of parents that our organic products provide safe nutrition for healthy babies. Our rigorous internal standards and testing procedures ensure Earth's Best products meet or exceed the current federal guidelines."[6]

13.    However, Hain's statements and marketing are incomplete, misleading and deceptive with respect to the existence and concentrations of Toxic Heavy Metals in its products.

---

[4]  OH, BABY! Trends in the Baby Food and Diaper Markets Around the World, at 17 (The Nielsen Company, August 2015) https://www.nielsen.com/wp-content/uploads/sites/3/2019/04/Global20Baby20Care20Report20Revised20FINAL-2.pdf (accessed March 1, 2021).
[5] *Id.*
[6] https://www.earthsbest.com/parents/faq/.

14.     Hain knows that Plaintiff and the other Class members lack the scientific knowledge and resources necessary to test or assess whether the Baby Food Products they purchase contain levels of Toxic Heavy Metals exceeding levels that are safe for babies.

B.     <u>Hain Sold Baby Food Products Tainted by Toxic Heavy Metals</u>.

15.     Scientists and child development experts have long known that childhood exposure to Toxic Heavy Metals can cause a number of adverse neurological, cognitive, and other developmental consequences. Many of these changes are irreversible, including permanent losses in IQ, memory, and comprehension, as well as ADHD and behavioral problems that persist into adulthood and result in reduced earning capacity.

16.     The FDA cautions that Toxic Heavy metals have "no established health benefit" and "even low levels of harmful metals from individual food sources, can sometimes add up to a level of concern."[7]

17.     There is no level of Toxic Heavy Metal exposure that is considered acceptable for babies. Child advocacy organizations such as Healthy Babies Bright Futures recommends a goal of "no measurable amount" of Toxic Heavy Metals in Baby Food Products.[8]

18.     In November 2019, the Subcommittee sought internal testing records and other documents from several baby food manufacturers, including Hain, to investigate concerns about heavy metals in baby foods.

---

[7] Report, pp. 9-10 (quoting "Food and Drug Administration, Metals and Your Food" (online at www.fda.gov/food/chemicals-metals- pesticides-food/metals-and-your-food) (accessed Jan. 26, 2021)).

[8] Report, pp. 13, 21, 29, &32) (citing Healthy Babies Bright Futures, *What's in My Baby's Food? A National Investigation Finds 95 Percent of Baby Foods Tested Contain Toxic Chemicals That Lower Babies' IQ, Including Arsenic and Lead* (Oct. 2019) (online at www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf).

19.     Based on this investigation, the Subcommittee concluded that "commercial baby foods contain dangerous levels of arsenic, lead, mercury, and cadmium."[9]

20.     The Subcommittee further found that baby food manufacturers "knowingly sell these products to unsuspecting parents, in spite of internal company standards and test results, and without any warning labeling whatsoever."[10]

21.     The Subcommittee added that, "naturally occurring toxic heavy metal may not be the only problem causing dangerous levels of toxic heavy metals in baby foods; rather, baby food producers like Hain" are compounding the problem by "adding ingredients that have high levels of toxic heavy metals into their products, such as vitamin/mineral pre-mix."[11]

22.     The Subcommittee also criticized the industry's testing practices.[12]

23.     Hain typically only tested ingredients, which likely underrepresents the levels of Toxic Heavy Metals in their finished Baby Food Products.[13]  According to the Subcommittee, "[o]n August 1, 2019, FDA received a secret slide presentation from Hain, the maker of Earth's Best Organic baby food, which revealed that finished Baby Food Products contain even higher levels of toxic heavy metals than estimates based on individual ingredient test results. One heavy metal in particular, inorganic arsenic, was repeatedly found to be present at 28-93% higher levels than estimated."[14]

---

[9] Report, p. 59.
[10] *Id.*
[11] Report, p. 56.
[12] Report, p. 13.
[13] Report, pp. 56-57.
[14] Report, p. 59.

24.     The Subcommittee observed that in many cases, Hain released products for sale even after its test results showed concentrations of Toxic Heavy Metals in finished products or ingredients exceeding its own internal goal thresholds.[15]

25.     **Inorganic Arsenic.** Regulation of inorganic arsenic in baby food is limited. According to the Subcommittee Report, the FDA has set a maximum allowable level of 10 parts per billion (ppb) for both bottled and tap water; however, there "is no established safe level for consumption inorganic arsenic for babies."[16]

26.     The Subcommittee found that while Hain typically only tests ingredients, a secret Hain presentation to the FDA showed inorganic arsenic levels averaging 129 ppb in product samples.[17] The Subcommittee also reported that Hain used vitamin premixes and at least 24 other ingredients after testing showed they contained levels of inorganic arsenic over 100 ppb.[18]

27.     **Lead.**  While there are no Federal standards for lead in baby foods, the Subcommittee found "a growing consensus among health experts that lead levels in baby foods should not exceed 1 ppb."[19]

28.     Hain reportedly "used six ingredients that tested above 200 ppb lead … 88 ingredients with lead levels at or over 20 ppb—the EU's standard for lead in infant formula … … 115 ingredients that registered at or over 15 ppb—EPA's action level for drinking water. And at least 27% of Hain ingredients tested at or over 5 ppb lead, FDA's standard for lead in bottled

---

[15] Report, p.  41.
[16] Report, p. 13.
[17] Report, p. 16.
[18] Report, p. 16.
[19] Report, p. 21.

water.[20]  Hain also "used a vitamin pre-mix in its baby food that contained as much as 352 ppb lead."[21]

29.  **Cadmium.**  While there are no federal standards for cadmium in baby foods, the Subcommittee identified proposed and existing cadmium standards including 5 ppb for drinking water (FDA and EPA). [22]

30.  Hain reportedly "used 14 ingredients that contained more than 100 ppb cadmium … and used 102 ingredients that registered at or above 20 ppb cadmium—the EU's lax upper limit."[23]

31.  **Mercury.**  There are also no federal standards for Mercury in baby foods. The EPA limits mercury in drinking water to 2 ppb."[24]

32.  According to the Subcommittee, Hain did not even test for mercury.[25]

33.  The concentrations of Toxic Heavy Metals reflected in Hain's own test results and as reported by the Subcommittee showed Hain is knowingly selling Baby Food Products and using ingredients that contain potentially dangerous levels of Toxic Heavy Metals.

C.    Plaintiff and other Class Members Were Harmed.

34.  Prior to the release of the Subcommittee Report, Plaintiff and each member of the proposed Classes purchased one of more Baby Food Products manufactured and sold by Hain, intending for them to be fed to children and believing that they were of high quality and safe for

---

[20] Report, p. 27.
[21] Report, p. 26.
[22] Report, p. 21.
[23] Report, p. 30.
[24] Report, p. 32.
[25] Report, p. 33.

children to consume. Plaintiff was unaware that Hain would sell Baby Food Products that contained undisclosed dangerous levels of Toxic Heavy Metals.

35.     Based on Hain's product labelling and marketing materials, Plaintiff did not expect, and no reasonable consumer would have expected, that any of Hain's Baby Food Products contained Toxic Heavy Metals at unsafe levels.

36.     Had Plaintiff and the other Class members known that Hain was selling Baby Food Products containing Toxic Heavy Metals above levels considered safe for their infants as revealed in the Subcommittee Report, they never would have purchased Hain's Baby Food Products.

37.     Upon learning that Hain's Baby Food Products potentially contain Toxic Heavy Metals at levels considered unsafe for children, Plaintiff no longer believed the Hain's Baby Food Products were quality products or safe for consumption by babies and children.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and as a representative of all those similarly situated, on behalf of a proposed nationwide class defined as: All persons in the United States who purchased Hain's Baby Food Products (the "National Class"). Excluded from the Class are Hain, its present and former parent companies, subsidiaries and affiliates, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies, and instrumentalities, and purchasers for resale.

39.     Plaintiff also brings this action pursuant to Federal Rule of Civil Procedure 23, individually and as representative of all those similarly situated, on behalf of a proposed Georgia class defined as: All persons who purchased Hain's Baby Food Products in the State of Georgia

(the "Georgia Class"). Excluded from the Class are Hain, its present and former parent companies, subsidiaries and affiliates, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies, and instrumentalities, and purchasers for resale.

40.     The members of each of the Classes are so numerous that their individual joinder is impracticable. On information and belief, members of each of the Classes number in the tens or hundreds of thousands. The precise number of members of each of the Classes and their addresses are presently unknown to Plaintiff but may be ascertained from grocery and other records. Class members may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

41.     Common questions of law and fact exist as to all members of each Class and predominate over questions affecting only individual Class members. Such common questions of law or fact include:

     a.     Whether Hain's Baby Food Products contain Toxic Heavy Metals at levels higher than what is considered safe for babies;

     b.     Whether Hain misrepresented to Plaintiff and the Class members that its Baby Food Products were safe for consumption by babies and did not contain potentially unsafe levels of Toxic Heavy Metals;

     c.     Whether Hain omitted and concealed the fact that its Baby Food Products contained Toxic Heavy Metals higher than levels considered safe for babies;

     d.     Whether the presence of Toxic Heavy Metals in Hain's Baby Food Products was a material fact to Plaintiff and Class members;

     e.     Whether Hain's conduct violated Georgia's Fair Business Practices Act or Uniform Deceptive Trade Practices Act;

     f.     Whether Hain breached express or implied warranties to Plaintiff and the Class members; and

g.    Whether Hain's conduct resulted in Hain unjustly retaining a benefit to the detriment of Plaintiff and Class members, and violated the fundamental principles of justice, equity, and good conscience.

42.    Plaintiff's claims are typical of the claims of the other members of the Classes, because, among other things, Plaintiff and all Class members suffered the same type of injury, namely, paying for a product that they otherwise would not have purchased had Hain disclosed the presence of Toxic Heavy Metals in its Baby Food Products. Further, there are no defenses available to Hain that are unique to Plaintiff.

43.    Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other Class members he seeks to represent, he has retained counsel competent and experienced in class action litigation, and he and his counsel will prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

44.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Classes individually are relatively small compared to the burden and expense that would be required to separately litigate their claims against Hain, so it would be uneconomical and impracticable for Class members to individually seek redress for Hain's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the Class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT I
## BREACH OF EXPRESS WARRANTY
### (On Behalf of the National Class and the Georgia State Class)

45.     Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth herein.

46.     This cause of action is brought on behalf of the each of the Classes against Hain.

47.     In connection with its sale of Baby Food Products, by and through statements in labels, publications, package inserts, and other written materials intended for consumers and the general public, Hain made certain express affirmations of fact and/or promises relating to its Baby Food Products to Plaintiff and the Classes, as alleged herein, including that such Baby Food Products were safe for consumption by infants and fit to be used for their intended purpose. These express affirmations of fact and/or promises include incomplete warnings and instructions that purport, but fail, to include the risks associated with use of Baby Food Products containing Toxic Heavy Metals.

48.     Hain advertised, labeled, marketed, and promoted Baby Food Products with such express affirmations of fact and/or promises in such a way as to induce their purchase or use by Plaintiff and the Classes, thereby making an express warranty that Baby Food Products would conform to the representations.

49.     Hain's affirmations of fact and/or promises about Baby Food Products, as set forth herein, constituted affirmations of fact or promises made by the seller to the buyer, which related to the goods and became part of the basis of the bargain.

50.     Despite the express warranties Hain created with respect to Baby Food Products, Hain delivered Baby Food Products to Plaintiff and the Classes that did not conform to Hain's express warranties in that such Baby Food Products were defective, dangerous, and unfit for use,

did not contain labels adequately representing the nature of the risks associated with their use, and were not merchantable or safe for their intended, ordinary, and foreseeable use and purpose. Specifically, Hain breached the express warranties by representing through its labeling, advertising, and marketing materials that its Baby Food Products were safe, and intentionally withheld information about the contents and risks associated with use of the Baby Food Products.

51.     Hain had sole access to material facts concerning the nature of the risks associated with its Baby Food Products, as expressly stated on their labels, and knew that consumers and purchasers such as Plaintiff could not have reasonably discovered that the risks expressly included in Baby Food Products' labels or other statements about their Baby Food Products were inadequate and inaccurate. Plaintiff and each member of the Classes have had sufficient direct dealings with either Hain or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Hain, on the one hand, and Plaintiff and each member of the Classes, on the other hand.

52.     As a direct and proximate result of Hain's breaches of express warranties, as alleged herein, Plaintiff and the Classes sustained an economic loss in an amount to be proven at trial.

53.     As a result of Hain's breaches of express warranties, as alleged herein, Plaintiff and the Classes seek an order awarding compensatory damages and any other just and proper relief available under the law.

## COUNT II
## BREACH OF IMPLIED WARRANTY
### (On Behalf of the National Class and the Georgia State Class)

54. Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth herein.

55. This cause of action is brought on behalf of the each of the Classes against Hain.

56. At all relevant times, Hain was a merchant with respect to Baby Food Products that were sold to Plaintiff and members of the Classes and was in the business of selling such products.

57. Each Baby Food Product sold by Hain comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used.

58. Hain breached its implied warranty of merchantability because its products were not in merchantable condition when sold.

59. Hain's Baby Food Products are not fit for the ordinary purpose for which they were sold because they contain Toxic Heavy Metals.

60. Plaintiff and members of the Classes were injured as a direct and proximate result of Hain's breaches of implied warranties of merchantability. Plaintiff and members of the Classes were damaged as a result of Hain's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of the Baby Food Products, they would not have purchased such products.

61. As a result of Hain's breaches of implied warranties of merchantability, as alleged herein, Plaintiffs and the Classes seek an order awarding compensatory damages and any other just and proper relief available under the law.

## COUNT III
## UNJUST ENRICHMENT
### (On Behalf of the National Class and the Georgia State Class)

62.     Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth herein.

63.     This cause of action is brought on behalf of each of the Classes against Hain.

64.     Hain intended and expected that, as a result of its knowing wrongful acts as alleged above, Hain would profit and benefit from sales of Baby Food Products that would otherwise have not occurred.

65.     Hain voluntarily accepted and retained these profits and benefits, knowing full well that Plaintiff and the other Class members received Baby Food Products that were not of a quality level that reasonable purchasers expect of foods intended for babies.

66.     Hain has been unjustly enriched by its wrongful and deceptive withholding of benefits to its customers at the expense of Plaintiff and the Class members.

67.     Principles of equity and good conscience preclude Hain from retaining these profits and benefits.

68.     As a direct and proximate result of Hain's unjust enrichment, Plaintiff and the Class members suffered injury and seek an order compelling Hain to disgorge and return to Plaintiff and the Class members the amounts that each Class member paid to the Hain.

## COUNT IV
## VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT
### (GA. CODE ANN. §10-1-390, ET SEQ.)
### (On Behalf of the Georgia Class Against Hain)

69.     Plaintiff Lawrence incorporates the allegations in the preceding paragraphs as though fully set forth herein.

70.     This cause of action is brought on behalf of the Georgia Class against Hain.

71.     Hain, Plaintiff, and the Georgia Class members are "[p]erson[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(24).

72.     Plaintiff and the Georgia Class members are "[c]onsumer[s]" within the meaning of Ga. Code Ann. §10-1-392(a)(6).

73.     Hain was and is engaged in "[t]rade" and "commerce" within the meaning of Ga. Code Ann. §10-1-392(a)(28).

74.     The Georgia Fair Business Practices Act ("Georgia FBPA") prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce." Ga. Code Ann. §10-1-393(a).

75.     The Georgia FBPA makes unlawful specific acts, including:

    a.      "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Ga. Code Ann. §10-1-393(b)(5));

    b.      "[r]epresenting that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another" (Ga. Code Ann. §10-1-393(b)(7)); and

    c.      "[a]dvertising goods or services with intent not to sell them as advertised" (Ga. Code Ann. §10-1-393(b)(9)).

76.     In the course of its business Hain, through its agents, employees, and/or subsidiaries, violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts that its Baby Food Products contained Toxic Heavy Metals at unsafe levels that rendered them unfit to be used for their intended purpose, as detailed above.

77.     Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts regarding Baby Food Products, as detailed above,

Hain engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Georgia FBPA, including:

    a.      representing that the Baby Food Products have characteristics, uses, benefits, and qualities which they do not have;

    b.      representing that the Baby Food Products are of a particular standard, quality, and grade when they are not;

    c.      advertising the Baby Food Products with the intent not to sell them as advertised; and

    d.      engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

78.    Hain's misrepresentations and omissions regarding its Baby Food Products were disseminated to Plaintiff and the Georgia Class members in a uniform manner.

79.    Specifically, Hain's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, or suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Georgia Class members, that the Baby Food Products are considered safe for consumption by babies.

80.    The facts regarding Baby Food Products that Hain knowingly and intentionally misrepresented, omitted, concealed, or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Georgia Class members, who consider such facts to be important to their purchase decisions with respect to Baby Food Products.

81.    Plaintiff and the Georgia Class members had no way of discerning that Hain's representations were false and misleading, or otherwise learning the facts that Hain had

concealed or failed to disclose. Plaintiff and the Georgia Class members did not, and could not, overcome Hain's deception on their own.

82. Hain had an ongoing duty to Plaintiff and the Georgia Class members to refrain from unfair or deceptive practices under the Georgia FBPA in the course of its business. Specifically, Hain owed Plaintiff and Georgia Class members a duty to disclose all the material facts concerning Toxic Heavy Metals in Baby Food Products because it possessed exclusive knowledge, it intentionally failed to disclose the Toxic Heavy Metal content of Baby Food Products to Plaintiff and the Georgia Class members, and/or it made representations that were rendered misleading because they were contradicted by known but withheld facts.

83. Plaintiff and the Georgia Class members were aggrieved by Hain's violations of the Georgia FBPA because they suffered ascertainable loss and actual damages as a direct and proximate result of Hain's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding Baby Food Products, including that such Baby Food Products contained Toxic Heavy Metals at levels above those considered safe for consumption by babies and not fit to be used for their intended purpose. Specifically, Plaintiff and the Georgia Class members purchased Baby Food Products in reliance on Hain's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Baby Food Products. Had Hain not engaged in the deceptive acts and practices alleged herein, Plaintiff and other Georgia Class members would not have purchased the Baby Food Products, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

84. Hain's violations present a continuing risk to Plaintiff and the Georgia Class members, as well as to the general public. Hain's unlawful acts and practices complained of herein affect the public interest.

85.     Hain was provided notice of the issues raised in this count and this Complaint by the Subcommittee Report and other lawsuits filed against it.

86.     Because Hain failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiff seeks all damages and relief to which Plaintiff and the Georgia Class members are entitled.

87.     As a result of Hain's violations of the Georgia FBPA, as alleged herein, Plaintiff and the Georgia Class members seek an order enjoining Hain's unfair or deceptive acts or practices and awarding actual damages and any other just and proper relief available under the Georgia FBPA.

## COUNT V
## VIOLATION OF THE GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (GA. CODE ANN. §10-1-370, *ET SEQ.*)
### (On Behalf of the Georgia Class Against Hain)

88.     Plaintiff Lawrence incorporates the allegations in the preceding paragraphs as though fully set forth herein.

89.     This cause of action is brought on behalf of the Georgia Class against Hain.

90.     Hain, Plaintiff, and the Georgia Class members are "[p]erson[s]" within the meaning of Ga. Code Ann. §10-1-371(5).

91.     The Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA") prohibits "deceptive trade practices . . . in the course of [a] business, vocation, or occupation." Ga. Code Ann. §10-1-372(a).

92.     The Georgia UDTPA makes unlawful specific acts, including:

   a.      "[r]epresent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (Ga. Code Ann. §10-1-372(a)(5));

b.  "[r]epresent[ing] that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another" (Ga. Code Ann. §10-1-372(a)(7));

c.  "[a]dvertis[ing] goods or services with intent not to sell them as advertised" (Ga. Code Ann. §10-1-372(a)(9)); and

d.  "[e]ngag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding" (Ga. Code Ann. §10-1-372(a)(12)).

93.  In the course of its business Hain, through its agents, employees, and/or subsidiaries, violated the Georgia UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts regarding Baby Food Products, as detailed above.

94.  Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts regarding Baby Food Products, as detailed above, Hain engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Georgia UDTPA, including:

a.  representing that the Baby Food Products have characteristics, uses, benefits, and qualities which they do not have;

b.  representing that the Baby Food Products are of a particular standard, quality, and grade when they are not;

c.  advertising the Baby Food Products with the intent not to sell them as advertised; and

d.  engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

95.  Hain's misrepresentations and omissions regarding Baby Food Products were disseminated to Plaintiff and the Georgia Class members in a uniform manner.

96.  Hain's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, or suppressions of material facts, as alleged herein, had a tendency or

capacity to mislead and create a false impression in consumers' minds, and were likely to and, in

fact, did deceive reasonable consumers, including Plaintiff and the Georgia Class members,

about the true nature of Baby Food Products.

97.     The facts regarding Baby Food Products that Hain knowingly and intentionally

misrepresented, omitted, concealed, or failed to disclose would be considered material by a

reasonable consumer, and they were, in fact, material to Plaintiff and the Georgia Class

members, who consider such facts to be important to their purchase decisions with respect to

Baby Food Products.

98.     Plaintiff and the Georgia Class had no way of discerning that Hain's

representations were false and misleading, or otherwise learning the facts that Hain had

concealed or failed to disclose. Plaintiff and the Georgia Class did not, and could not, learn of

Hain's deception on their own.

99.     Hain had an ongoing duty to Plaintiff and the Georgia Class to refrain from unfair

or deceptive practices under the Georgia UDTPA in the course of its business. Specifically, Hain

owed Plaintiff and the Georgia Class a duty to disclose all the material facts concerning Toxic

Heavy Metals in Baby Food Products because it possessed exclusive knowledge, it intentionally

concealed or failed to disclose the facts regarding its Baby Food Products from Plaintiff and the

Georgia Class, and/or it made misrepresentations that were rendered misleading because they

were contradicted by withheld facts.

100.    Plaintiff and the Georgia Class were aggrieved by Hain's violations of the

Georgia UDTPA because they suffered ascertainable loss and actual damages as a direct and

proximate result of Hain's knowing and intentional misrepresentations, omissions, concealments,

or failures to disclose material facts regarding Baby Food Products, including that such Baby

Food Products contained unsafe levels of Toxic Heavy Metals. Specifically, Plaintiff and the Georgia Class purchased Baby Food Products in reliance on Hain's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Baby Food Products. Had Hain not engaged in the deceptive acts and practices alleged herein, Plaintiff and the Georgia Class would not have purchased the Baby Food Products, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

101.    Hain's violations present a continuing risk to Plaintiff and the Georgia Class, as well as to the general public. Hain's unlawful acts and practices complained of herein affect the public interest.

102.    Hain was provided notice of the issues raised in this count and this Complaint by the Subcommittee Report and other lawsuits filed against them.

103.    As a result of Hain's violations of the Georgia UDTPA, as alleged herein, Plaintiff and the Georgia Class seek an order enjoining Hain's unfair or deceptive acts or practices, awarding damages, and awarding any other just and proper relief available under the Georgia UDTPA.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek a judgment against Hain, as follows:

a.    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Classes as set forth above and appointing Plaintiff's attorneys as Class Counsel;

b.    For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

c.    For an order enjoining Hain from selling Baby Food Products until the higher and/or unsafe levels of Toxic Heavy Metals are removed or full disclosure of the presence of Toxic Heavy Metals appears on all labels,

packaging, and advertising;

d. For an order enjoining Hain from selling Baby Food Products while in any manner suggesting or implying that they are healthy, nutritious, and safe for consumption;

e. For an order requiring Hain to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing products;

f. For damages in amounts to be determined by the Court and/or jury;

g. For prejudgment interest on all amounts awarded;

h. For an order of restitution and all other forms of equitable monetary relief; and

i. For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

Dated: June 17, 2021                    Respectfully submitted,


/s/ *Zahra R. Dean*
Zahra R. Dean (5554191)
Joseph C. Kohn*
Douglas A. Abrahams*
William E. Hoese
Craig W. Hillwig*
Barbara Gibson
Aarthi Manohar*
**KOHN, SWIFT & GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 238-1700
zdean@kohnswift.com
dabrahams@kohnswift.com
whoese@kohnswift.com
chillwig@kohnswift.com
bgibson@kohnswift.com
amanohar@kohnswift.com
*(*pro hac vice* motions forthcoming)

David H. Fink*
Nathan J. Fink*
**FINK BRESSACK**
38500 Woodward Ave; Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
*(*pro hac vice* motions forthcoming)

Michael L. Roberts*
Karen Halbert*
**ROBERTS LAW FIRM, P.A.**
20 Rahling Circle
Little Rock, Arkansas 72223
Telephone: (501) 821-5575
mikeroberts@robertslawfirm.us
karenhalbert@robertslawfirm.us
*(*pro hac vice* motions forthcoming)

*Attorneys for Plaintiff*