# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NIKEITA BOULWARE, individually and on behalf of all others similarly situated, | ) ) |
| Plaintiff, | ) ) ) ) |
| v. | ) ) |
| THE HAIN CELESTIAL GROUP, INC., | ) ) |
| Defendant. | ) ) ) ) |

Civil Action No. 2:21-cv-3511

**CLASS ACTION COMPLAINT**
**(JURY TRIAL DEMANDED)**

Plaintiff Nikeita Boulware ("Plaintiff"), by and through her undersigned counsel, brings this action against The Hain Celestial Group, Inc. ("Hain" or "Hain Celestial" or "Defendant") on behalf of herself and all others similarly situated, and makes the following allegations based upon information, attorney investigation and belief, and upon Plaintiff's own knowledge:

## PRELIMINARY STATEMENT

1.      Plaintiff brings this action against Defendant Hain Celestial for deceptive business practices, including misrepresentations and omissions, regarding the presence of dangerous levels of toxic heavy metals and other contaminants contained within its Earth's Best Organic baby foods that Plaintiff purchased.

2.      Hain Celestial is one of the nation's leading purveyors of what is considered to be premium quality, healthy baby food. While consumers already expect the baby food they purchase to be safe and healthy, this is especially true for Hain Celestial's baby food products (the "Baby Foods"), which are marketed as high quality baby food with a focus on wholesome ingredients.

3.      Unfortunately for Plaintiff and similarly-situated consumers, the Baby Foods contain levels of toxic heavy metals which exceed FDA guidance and Hain Celestial's own

standards. The U.S. House of Representatives' Subcommittee on Economic and Consumer Policy ("Subcommittee"), Committee on Oversight and Reform issued a staff report[1] on February 4, 2021 confirming that commercial baby foods, including those sold by Hain Celestial, contain significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury (the "Staff Report"). The Staff Report follows a national investigation by Healthy Babies Bright Futures which also confirms the presence of elevated levels of toxic heavy metals in an October 2019 report (the "HBBF Report").[2]

4.      As the Staff Report explains, "[e]xposure to toxic heavy metals causes permanent decreases in IQ, diminished future economic productivity, and increased risk of future criminal and antisocial behavior in children." Staff Report at 2.

5.      Nothing on the Baby Foods' labels warns consumers of these elevated levels of toxic heavy metals.

6.      Hain Celestial's failure to disclose the elevated presence of toxic metals is injurious to consumers, as consumers purchase the Baby Foods reasonably believing that the Baby Foods would not contain dangerous contaminants, including, but not limited to, toxic heavy metals. These omitted facts are material to consumers as they pertain to the Baby Foods' safety and the quality of the Baby Foods' ingredients, including whether they are contaminated with any toxic substances.

---

[1] U.S. House of Representatives, Subcommittee on Economic and Consumer Policy Committee on Oversight and Reform, (available online at *Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*), (February 4, 2021) https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (last visited June 18, 2021).

[2] Healthy Babies Bright Futures, *What's In My Baby's Food?*, (October 2019) (available online at http://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf) (last visited June 18, 2021).

7.      Consumers do not know, and have no reason to know, that the Baby Foods contain toxic heavy metals at elevated levels. Consumers expect the food they purchase to be safe for consumption, particularly in the context of baby food, where the consumer is particularly sensitive to toxic materials.

8.      Plaintiff purchased Baby Foods manufactured and sold by Hain, unaware that Hain's products potentially contain Toxic Heavy Metals at levels well above what is considered safe for babies. Had Hain disclosed the Toxic Heavy Metal content on its product labels, or otherwise warned that its products could contain levels of Toxic Heavy Metals considered unsafe, neither Plaintiff nor any other reasonable consumer would have purchased Hain's products.

9.      Plaintiff brings this action on her own behalf and on behalf of other purchasers of Hain's' Baby Foods, to seek refunds and all other economic losses suffered as a result of their purchases of Hain's Baby Foods, as well as injunctive relief.

## PARTIES

10.     Plaintiff is a citizen and resident of South Carolina, residing in New Zion, South Carolina. Plaintiff purchased Baby Foods made by Defendant Hain Celestial.

11.     Defendant is a Delaware corporation with its corporate headquarters in Lake Success, New York.  Hain Celestial sells Baby Foods under the Earth's Best brand.  Hain Celestial's Baby Foods are sold and purchased throughout the United States.

12.     Defendant's products for infants include three (3) categories of food items: Organic Infant Cereal, Organic Baby Food Puree Pouches, and Organic Baby Food in Glass Jars. The Organic Infant Cereal line of products includes Earth's Best Whole Grain Organic Oatmeal Cereal, Organic Rice Cereal, and Whole Grain Organic Multi-Grain Cereal. Earth's Best makes numerous

baby food products with ingredients that are tainted and contain dangerous levels of toxic heavy metals.

## JURISDICTION AND VENUE

13.    This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

14.    This Court has personal jurisdiction over Defendant because Defendant is headquartered in and conducts business in New York and has sufficient minimum contacts with New York.

15.    Venue is proper in this District under 28 U.S.C. §1391 because Defendant conducts business in this District, is subject to jurisdiction in this District, and has sold, marketed, and or distributed tainted Baby Foods within this District at all times relevant to this suit, and because a substantial part of the acts or occurrences giving rise to this suit occurred within this District.

## FACTUAL ALLEGATIONS

16.    Defendant is one of the nation's largest purveyors of food specialized for babies and toddlers under the "Earth's Best" brand.

17.    Defendant portrays its "Earth's Best" brand to the public as a safe, premium, healthy line of products which goes above and beyond in sourcing healthy, nutritious, and safe food for babies and toddlers. For example, on its website, Defendant describes its line of products as "time trusted and safe" and claims said products "are made from pure ingredients to help

children grow up strong and healthy."[3] Defendant warrants that "you can trust Earth's Best®
products to be safe for your baby."[4]

18.     Defendant further claims that for "Earth's Best® products, we ensure a high
degree of attention to both ingredient and product quality and safety – from procuring, handling,
storing, blending, and packaging through distributing Earth's Best® products to our consumer.[5]

19.     Defendant maintains these promises not only generally as its standard business
practices, but repeats these warranties for its specific products.

20.     On February 4, 2021, the Subcommittee issued its Congressional Report detailing
its findings that heavy metals, including arsenic, cadmium, lead, and mercury ("Heavy Metals"),
were present in dangerously "significant levels" in numerous commercial baby food products.

21.     The Food and Drug Administration (the "FDA") and the World Health
Organization ("WHO") have declared Heavy Metals dangerous to human health, particularly to
babies and children, who are most vulnerable to their neurotoxic effects. Even low levels of
exposure can cause serious and often irreversible damage to brain development. *See*
Congressional Report at 2. In fact, children's exposure to toxic heavy metals causes, among other
things, permanent decreases in IQ, diminished future economic productivity, and increased risk
of future criminal and antisocial behavior. *Id*. The FDA cautions that infants and children are at
the greatest risk of harm from toxic heavy metal exposure.[6]

---

[3] http://www.hain.com/brands/#c5 (last accessed June 18, 2021).

[4] Earth's Best, *Our History*, (https://www.earthsbest.com/why-earths-best/our-history/) (last visited June 18, 2021).

[5] Earth's Best, *Our Promise*, (https://www.earthsbest.com/why-earths-best/our-promise/) (last visited June 18, 2021).

[6] Food and Drug Administration, *Metals and Your Food* – www.fda.gov/food/chemicals-metals- pesticides-food/metals-and-your-food) (last accessed June 18, 2021).

22.     In November 2019, the Subcommittee sought internal testing records and other documents from several baby food manufacturers, including Hain, to investigate concerns about heavy metals in baby foods.

23.     Hain responded to the Subcommittee's requests and produced its internal testing policies, test results for ingredients and/or finished products, and documentation about what it did with ingredients and/or finished products that exceeded its internal testing limits.

24.     Based on this investigation, the Subcommittee concluded that "commercial baby foods contain dangerous levels of arsenic, lead, mercury, and cadmium." *Id*. at 59.

25.     The Subcommittee further found that baby food manufacturers "knowingly sell these products to unsuspecting parents, in spite of internal company standards and test results, and without any warning labeling whatsoever." *Id*.

26.     The Subcommittee added that, "naturally occurring toxic heavy metal may not be the only problem causing dangerous levels of toxic heavy metals in baby foods; rather, baby food producers like Hain" are compounding the problem by "adding ingredients that have high levels of toxic heavy metals into their products, such as vitamin/mineral pre-mix." *Id*. at 56. The Subcommittee also criticized the industry's testing practices. *Id*. at 13.

27.     Hain typically only tested ingredients, which likely underrepresents the levels of toxic Heavy Metals in their finished Baby Foods. *Id*. at 56-57. According to the Subcommittee, "[o]n August 1, 2019, FDA received a secret slide presentation from Hain, the maker of Earth's Best Organic baby food, which revealed that finished Baby Foods contain even higher levels of toxic heavy metals than estimates based on individual ingredient test results. One heavy metal in particular, inorganic arsenic, was repeatedly found to be present at 28-93% higher levels than estimated." *Id*. at 59.

28.    Hain Celestial sold finished baby food products containing as much as 129 ppb inorganic arsenic. Documents show that Hain used ingredients testing as high as 309 ppb arsenic.

29.    Hain Celestial used ingredients containing as much as 352 ppb lead. Hain Celestial used many ingredients with high lead content, including 88 that tested over 20 ppb lead and six that tested over 200 ppb lead.

30.    Hain Celestial used 102 ingredients in its baby food that tested over 20 ppb cadmium. Some tested much higher, up to 260 ppb cadmium.

31.    Hain Celestial does not even test for mercury in its baby food.

32.    The concentrations of toxic Heavy Metals reflected in Hain's own test results and as reported by the Subcommittee showed Hain is knowingly selling Baby Foods and using ingredients that contain potentially dangerous levels of toxic Heavy Metals.

33.    To this day, baby foods containing dangerous levels of toxic Heavy Metals sold by Defendant bear no label or warning to parents. But the Congressional Report makes clear that this is unacceptable and deceptive.

34.    As a result of its studies of toxic Heavy Metal levels in baby food, the Subcommittee has recommended that parents should avoid baby foods that contain ingredients testing high in toxic Heavy Metals, such as rice products. *See id*. at Findings, Paragraph 5.

35.    Defendant, as a baby food manufacturer, holds a special position of public trust. Consumers believe that it would not sell products that are unsafe. Consumers also believe that the federal government would not knowingly permit the sale of unsafe baby food. As the Subcommittee's Report reveals, baby food manufacturers (including Hain (Earth's Best Organic)) have violated the public trust. *See id*. at Findings, Paragraph 6.

36.     Prior to the release of the Staff Report, Plaintiff and each member of the proposed Classes purchased one of more Baby Foods manufactured and sold by Hain, intending for them to be fed to children and believing that they were of high quality and safe for children to consume. Plaintiff was unaware that Hain would sell Baby Foods that contained undisclosed dangerous levels of toxic Heavy Metals.

37.     Based on Defendant's decision to advertise, label, and market its tainted Baby Foods as healthy, nutritious, and safe for consumption, it had a duty to ensure that these statements were true and not misleading. As such, Defendant knew or should have known the tainted Baby Foods included undisclosed dangerous levels of Heavy Metals, and that these toxins can accumulate over time.

38.     Had Plaintiff known that Hain was selling Baby Foods containing toxic Heavy Metals above levels considered safe for their infants as revealed in the Staff Report, she never would have purchased Hain's Baby Foods.

39.     Upon learning that Hain's Baby Foods potentially contain toxic Heavy Metals at levels considered unsafe for children, Plaintiff no longer believed that Hain's Baby Foods were quality products or safe for consumption by babies and children.

## CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and as a representative of all those similarly situated, on behalf of a proposed nationwide Class defined as:

**All persons who, during the applicable statute of limitations period to the present, purchased Defendant's tainted Baby Foods in the United States for personal/household use, and not for resale (the "Class").**

41.     Excluded from the Class are Hain Celestial, its present and former parent companies, subsidiaries and affiliates, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies, and instrumentalities, and purchasers for resale.

42.     Certification of Plaintiff's claims for class-wide treatment is appropriate because all elements of Fed. R. Civ. P. 23(a), (b)(2)-(3) are satisfied. Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in an individual action alleging the same claims.

43.     This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

44.     **Numerosity.** The members of the Class are so numerous that their individual joinder is impracticable. On information and belief, members of the Class number in the tens or hundreds of thousands. The precise number of members of the Class and their addresses are presently unknown to Plaintiff but may be ascertained from grocery and other records. Class members may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

45.     **Commonality and Predominance.** Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members. Such common questions of law or fact include:

   a.   Whether Hain's Baby Foods contain toxic Heavy Metals at levels higher than what is considered safe for babies;

b. Whether Hain misrepresented to Plaintiff and the Class members that its Baby Foods were safe for consumption by babies and did not contain potentially unsafe levels of toxic Heavy Metals;

c. Whether Hain omitted and concealed the fact that its Baby Foods contained toxic Heavy Metals higher than levels considered safe for babies;

d. Whether the presence of toxic Heavy Metals in Hain's Baby Foods was a material fact to Plaintiff and Class members;

e. Whether Hain breached express or implied warranties to Plaintiff and the Class members; and

f. Whether Hain's conduct resulted in Hain unjustly retaining a benefit to the detriment of Plaintiff and Class members, and violated the fundamental principles of justice, equity, and good conscience.

46. **Typicality.** Plaintiff's claims are typical of the claims of the other members of the Class, because, among other things, Plaintiff and all Class members suffered the same type of injury, namely, paying for a product that they otherwise would not have purchased had Hain disclosed the presence of toxic Heavy Metals in its Baby Foods. Further, there are no defenses available to Hain that are unique to Plaintiff.

47. **Adequacy of Representation.** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other Class members she seeks to represent, she has retained counsel competent and experienced in class action litigation, and her counsel will prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

48.     **Predominance and Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Class individually are relatively small compared to the burden and expense that would be required to separately litigate their claims against Hain, so it would be uneconomical and impracticable for Class members to individually seek redress for Hain's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the Class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### FOR A FIRST COLLECTIVE CAUSE OF ACTION
### Breach of Express Warranty
### (Plaintiff and Other Members the Class)

49.     Plaintiff realleges all preceding paragraphs as if fully set forth herein.

50.     Plaintiff brings this count on behalf of herself and other members of the Class.

51.     Defendant marketed and sold the Baby Foods into the stream of commerce with the intent that the Baby Foods would be purchased by Plaintiff and the Class.

52.     Defendant expressly warranted, advertised and represented to Plaintiff and the Class that its Baby Foods are:

- Natural

- "Made from pure ingredients to help children grow up strong and healthy"; and

- "[S]afe for your baby."

53.     Defendant made these express warranties regarding the Baby Foods' quality, ingredients and fitness for consumption in writing on the Baby Foods' packaging and labels through its website, advertisements and marketing materials.  These express warranties became part of the basis of the bargain that Plaintiff and the Class entered into upon purchasing the Baby Foods.

54.     Defendant's advertisements, warranties and representations were made in connection with the sale of the Baby Food to Plaintiff and the Class.  Plaintiff and the Class relied on Defendant's advertisements, warranties and representations regarding the Baby Foods in deciding whether to purchase Defendant's products.

55.     Defendant's Baby Foods do not conform to Defendant's advertisements, warranties and representations in that they:

    a.   Are not natural or suitable for consumption by human babies; and

    b.   Contain or may contain levels of various heavy metals and toxins.

56.     Defendant was on notice of this breach as they were aware of the included heavy metals and toxins in the Baby Foods and based on the Staff Report that showed its baby food products as unhealthy and containing dangerous levels of heavy metals.

57.     Privity exists because Defendant expressly warranted to Plaintiff and the Class through the warranting, packaging, marketing and labeling that the Baby Foods were healthy, natural and suitable for consumption and by failing to make any mention of heavy metals or other unnatural ingredients.

58.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they purchased Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals, toxins and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising and statements.

59.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their express warranties and resulting breach.

### FOR A SECOND COLLECTIVE CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability
### (Plaintiff and Other Members the Class)

60.     Plaintiff realleges all preceding paragraphs as if fully set forth herein.

61.     Plaintiff brings this count on behalf of herself and other members of the Class.

62.     There was a sale of goods from Defendant to Plaintiff and the Class.

63.     At all times mentioned herein, Defendant manufactured or supplied the Baby Foods, and prior to the time the Baby Foods were purchased by Plaintiff and the Class, Defendant impliedly warranted to them that the Baby Foods were of merchantable quality, fit for their ordinary use (consumption by babies), and conformed to the promises and affirmations of fact made on the Baby Foods' containers and labels, including that the food was natural, safe and appropriate for consumption by human infants.  Plaintiff and the Class relied on Defendant's promises and affirmations of fact when they purchased the Baby Foods.

64.     The Baby Foods were not fit for their ordinary use (consumption by babies) and did not conform to Defendant's affirmations of fact and promises as they contained or were at risk

of containing heavy metals and/or other ingredients or contaminants that do not conform to the packaging.

65.     Defendant breached its implied warranties by selling Baby Foods that failed to conform to the promises or affirmations of fact made on the container or label as each product contained heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

66.     Defendant was on notice of this breach, as it was aware of the heavy metals included or at risk of being included in the Baby Foods and based on the Staff Report that showed Defendant's baby foods were unhealthy, contaminated and potentially dangerous, as well as the extensive press coverage of the investigation.

67.     Privity exists because Defendant impliedly warranted to Plaintiff and the Class through the warranting, packaging, advertising, marketing and labeling that the Baby Foods were natural and suitable for consumption by babies, and by failing to make any mention of heavy metals or other unnatural ingredients.

68.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Baby Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals, perchlorate and/or other ingredients.

69.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their implied warranties and resulting breach.

**FOR A THIRD COLLECTIVE CAUSE OF ACTION**
**Fraudulent Misrepresentation**
**(Plaintiff and Other Members the Class)**

70.     Plaintiff realleges all preceding paragraphs as if fully set forth herein.

71.     Plaintiff brings this count on behalf of herself and other members of the Class.

72.     Defendant falsely represented to Plaintiff and the Class that the Baby Foods are:

- Natural;

- "Made from pure ingredients to help children grow up strong and healthy"; and

- "[S]afe for your baby."

73.     Defendant intentionally, knowingly and recklessly made these misrepresentations to induce Plaintiff and the Class to purchase its Baby Foods.

74.     Defendant knew that its representations about the Baby Foods were false in that the Baby Foods contained or were at risk of containing levels of heavy metals or other unnatural ingredients that do not conform to the products' labels, packaging, advertising and statements. Defendant allowed its packaging, labels, advertisements, promotional materials and websites to intentionally mislead consumers such as Plaintiff and the Class.

75.     Plaintiff and the Class did in fact rely on these misrepresentations and purchased the Baby Foods to their detriment.  Given the deceptive manner in which Defendant advertised, represented and otherwise promoted the Baby Foods, Plaintiff's and the Class's reliance on Defendant's misrepresentations was justifiable.

76.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Baby Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence or

risk of heavy metals or other unnatural ingredients that do not conform to the products' labels, packaging, advertising and statements.

77.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs and any other just and proper relief available.

**FOR A FOURTH COLLECTIVE CAUSE OF ACTION**
**Fraud by Omission**
**(Plaintiff and Other Members the Class)**

78.     Plaintiff realleges all preceding paragraphs as if fully set forth herein.

79.     Plaintiff brings this count on behalf of herself and other members of the Class.

80.     Defendant concealed from and failed to disclose to Plaintiff and the Class that their Baby Foods contained, or were at risk of containing, heavy metals, perchlorate and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising and statements.

81.     Defendant had a duty to disclose to Plaintiff and the Class the true quality, characteristics, ingredients, suitability and risks of the Baby Foods because: (1) Defendant was in a superior position to know the true state of facts about its products; (2) Defendant was in a superior position to know the actual ingredients, characteristics and suitability of the Baby Foods for consumption by babies; and (3) Defendant knew that Plaintiff and the Class could not have reasonably been expected to learn or discover that the Baby Foods were misrepresented in the packaging, labels, advertising and websites prior to purchasing the Baby Foods.

82.     The facts concealed or not disclosed by Defendant to Plaintiff and the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase Baby Foods.

16

83.     Plaintiff and the Class justifiably relied on Defendant's omissions to their detriment.  The detriment is evident from the true quality, characteristics and ingredients of the Baby Foods, which is inferior in comparison to Defendant's advertisements and representations of the Baby Foods.

84.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Baby Foods that are worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of dangerous levels of heavy metals and toxins.

85.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs and any other just and proper relief available.

### FOR A FIFTH COLLECTIVE CAUSE OF ACTION
### Negligent Misrepresentation
### (Plaintiff and Other Members the Class)

86.     Plaintiff realleges all preceding paragraphs as if fully set forth herein.

87.     Plaintiff brings this count on behalf of herself and other members of the Class.

88.     Defendant had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the formulation, testing, manufacturing, marketing, distribution and sale of the Baby Foods.

89.     Defendant breached its duty to Plaintiff and the Class by formulating, testing, manufacturing, advertising, marketing, distributing and selling products to Plaintiff and the Class that do not have the ingredients, qualities, characteristics and suitability for consumption as advertised by Defendant and by failing to promptly remove the Baby Foods from the marketplace or to take another appropriate remedial action.

90.     Defendant knew or should have known that the ingredients, qualities and characteristics of the Baby Foods were not as advertised or suitable for their intended use

(consumption by babies) and were otherwise not as warranted and represented by Defendant. Specifically, Defendant knew or should have known that: (1) certain Baby Foods were not natural because they contained, or were at risk of containing, levels or heavy metals and/or toxins; (2) the Baby Foods were not nutritious, of superior quality, pure, natural, healthy and safe for consumption because they contained or had a risk of containing levels of heavy metals and/or other unnatural ingredients or contaminants that do not conform to the packaging; (3) the Baby Foods were adulterated or at risk of being adulterated by heavy metals; and (4) the Baby Foods were otherwise not as warranted and represented by Defendant.

91.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Baby Foods that are worth less than the price they would have paid and that they would not have purchased at all had they known of the presence or risk of heavy metals or other unnatural ingredients that do not conform to the products' labels, packaging, advertising and statements.

92.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs and any other just and proper relief available

**FOR A SIXTH COLLECTIVE CAUSE OF ACTION**
**Unjust Enrichment**
**(Plaintiff and Other Members the Class)**

93.     Plaintiff realleges all preceding paragraphs as if fully set forth herein.

94.     Plaintiff brings this count on behalf of herself and other members of the Class.

95.     Substantial benefits have been conferred on Defendant by Plaintiff and the Class through their purchase of the Baby Foods.  Defendant knowingly and willingly accepted and enjoyed these benefits.

96.     Defendant either knew or should have known that the payments rendered by Plaintiff and the Class were given and made with the expectation that the Baby foods would have the qualities, characteristics, ingredients and suitability for consumption represented and warranted by Defendant.  As such, equity and good conscience require Defendant to return the value of the payments under the circumstances.

97.     Defendant's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendant to retain the benefits and not return the value of payments made by Plaintiff and the Class.

98.     Plaintiff and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

99.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs and any other just and proper relief available.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, prays for a judgment against the Defendant as to each and every count including:

A.     An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Class, and requiring Defendant to bear the costs of class notice;

B.     An order enjoining Defendant from selling the Baby Foods until the levels of heavy metals and/or perchlorate are removed or full disclosure of the presence of such appears on all labels, packing and advertising;

C.     An order enjoining Defendant from selling the Baby Foods in any manner suggesting or implying that they are healthy, natural and safe for consumption;

D.      An order requiring Defendant to engage in a corrective advertising campaign and engage in further necessary affirmative injunctive relief, such as recalling existing products;

E.      An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein and injunctive relief to remedy Defendant's past conduct;

F.      An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair or fraudulent business act or practice, untrue or misleading advertising or a violation of law, plus pre- and post-judgment interest thereon;

G.      An order requiring Defendant to disgorge or return all monies, revenues and profits obtained by means of any wrongful or unlawful act or practice;

H.      An order requiring Defendant to pay punitive damages on any count so allowable;

I.      An order awarding attorney's fees and costs, including the costs of pre-suit investigation, to Plaintiff and the Class; and

J.      An order providing for all other such equitable relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: June 22, 2021                                    Respectfully submitted,


                                                        **MOREA SCHWARTZ BRADHAM
                                                        FRIEDMAN & BROWN LLP**

                                                        By: /s/ Peter B. Katzman
                                                        Peter B. Katzman
                                                        John M. Bradham
                                                        444 Madison Avenue, 4th Floor

New York, New York 10022
Tel: (212) 695-8050
Email: pkatzman@msbllp.com
        jbradham@msbllp.com

-AND-

**ANASTOPOULO LAW FIRM, LLC**
Eric M. Poulin*
Roy T. Willey, IV*
Blake G. Abbott*
Jarrett W. Withrow*
32 Ann Street
Charleston, SC 29403
P: (843) 614-8888
Email: eric@akimlawfirm.com
        roy@akimlawfirm.com
        blake@akimlawfirm.com
        jarrett@akimlawfirm.com


*Pro Hac Vice Forthcoming*