# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

|  |  |
|---|---|
| KATESHA SMITH and MIRANDA FOGLE on behalf of themselves and all others similarly situated, | Case No.: |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| THE HAIN CELESTIAL GROUP, INC., | |
| Defendant. | |

## CLASS ACTION COMPLAINT

**COME NOW**, Plaintiffs Katesha Smith and Miranda Fogle ("Plaintiffs"), by and through their counsel, bring this Class Action Complaint against The Hain Celestial Group, Inc. ("Hain Celestial" or "Defendant") and allege upon personal knowledge as to their own actions, and upon information and belief as to counsel's investigations and all other matters, as follows:

## NATURE OF THE ACTION

1.      Plaintiffs bring this consumer protection and false advertising class action lawsuit against Hain Celestial based on its misleading and unfair business practices with respect to the marketing and sale of certain Earth's Best baby food products which contain elevated levels of toxic heavy metals, including cadmium, lead, arsenic, and mercury (the "Products").

2.      Hain Celestial is one of the nation's leading purveyors of what is considered to be premium quality, healthy baby food. While consumers already expect the baby food they purchase to be safe and healthy, this is especially true for Hain Celestial's Products, which are marketed as high quality baby food with a focus on wholesome ingredients.

3.      Unfortunately for Plaintiffs and consumers, the Products contain levels of toxic

heavy metals which exceed FDA guidance and Hain Celestial's own standards. The U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform issued a staff report[1] on February 4, 2021 confirming that commercial baby foods, including those sold by Hain Celestial, contain significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury (the "Staff Report"). The Staff Report follows a national investigation by Healthy Babies Bright Futures which also confirms the presence of elevated levels of toxic heavy metals in an October 2019 report (the "HBBF Report").[2]

4.    As the Staff Report explains, "[e]xposure to toxic heavy metals causes permanent decreases in IQ, diminished future economic productivity, and increased risk of future criminal and antisocial behavior in children." Staff Report at 2.

5.    Nothing on the Products' labels warns consumers of these elevated levels of toxic heavy metals.

6.    Hain Celestial's failure to disclose the elevated presence of toxic metals is injurious to consumers, as consumers purchase the Products reasonably believing that the Products would not contain dangerous contaminants, including but not limited to toxic heavy metals. These omitted facts are material to consumers as they pertain to the Products' safety and the quality of the Products' ingredients, including whether they are contaminated with any toxic substances.

7.    Consumers do not know, and have no reason to know, that the Products contain toxic heavy metals at elevated levels. Consumers expect the food they purchase to be safe for consumption, particularly in the context of baby food, where the consumer is particularly sensitive to toxic materials.

8.    As a result of Defendant's failure to disclose the presence of these toxic heavy

---

[1] U.S. House of Representatives, Subcommittee on Economic and Consumer Policy Committee on Oversight and Reform, (available online at *Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*), (February 4, 2021) https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (last visited March 1, 2021).

[2] Healthy Babies Bright Futures, *What's In My Baby's Food?*, (October 2019) (available online at http://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf) (last visited March 1, 2021).

metals, consumers purchased the Products when, had they known of the presence of these contaminants, they would not have purchased the Products at all. Therefore, Plaintiffs and consumers have suffered injury in fact as a result of Defendant's deceptive practices.

9.      Defendant's conduct as alleged violates, *inter alia*, the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§ 407.010 *et seq*., which prohibits "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Rev. Stat. §407.020.1.

10.     Plaintiffs bring this class action lawsuit on behalf of themselves and all others similarly situated. Plaintiffs seek to represent a Missouri Subclass, California Subclass, a California Consumer Subclass, and a Nationwide Class (defined *infra* in paragraphs 50-55) (collectively referred to as "Classes").

11.     Plaintiffs, on behalf of themselves and other consumers, are seeking damages, restitution, declaratory and injunctive relief, and all other remedies the court deems appropriate.

**PARTIES**

**Plaintiffs**

12.     Plaintiff Katesha Smith is a citizen of California residing in Fontana, California. In approximately August 2019, Ms. Smith purchased Hain Celestial's Earth's Best Organic Whole Grain Rice Cereal from a Sprouts market in Fontana, California. When Ms. Smith purchased the Product, she believed it would not contain elevated levels of toxic elements. Had she known that the Product contains elevated levels of any of these toxic elements, she would not have purchased the Product.

13.     Plaintiff Miranda Fogle is a citizen of Missouri residing in Jackson County, Missouri. In late 2019, Ms. Fogle purchased Defendant's Organic Banana Blueberry Baby Food Puree at the Walmart store in Blue Springs, Missouri. Throughout 2016 to 2020, Ms. Fogle also

purchased the following of Defendant's Products at the Walmart store in Independence (located at 4000 S. Bolger Rd.) and the Walmart in Blue Springs (located at 600 NE Coronado Dr): Organic Garden Veggie Straws; Organic Breakfast Biscuits (Blueberry); Organic Crunchin' Crackers (Original); Organic Crunchin' Crackers (Veggie); Organic Banana Kiwi Puree, Organic Apple Strawberry Puree; Organic Blueberry Banana Flax & Oat Wholesome Breakfast Puree; Organic Sweet Potato Cinnamon Flax & Oat Wholesome Breakfast Puree; Organic Apple Raisin Flax & Oat Wholesome Breakfast Puree; Organic Banana Raspberry & Brown Rice Fruit & Grain Puree; and Organic Spinach Lentil Brown Rice Veggie & Protein Puree. When Ms. Fogle purchased the Products, she believed it would not contain elevated levels of toxic elements. Had she known that the Product contains elevated levels of any of these toxic elements, she would not have purchased the Product.

14. Despite being deceived, Plaintiffs wish to and are likely to continue purchasing and using Defendant's Products, but only if Defendant's deceptive acts and practices were ceased. Although Plaintiffs regularly visit stores and online retailers that carry the Products and continue to purchase food for their children, absent an injunction, they are unable to rely with confidence on whether the Products contain elevated levels of contaminants such as heavy metals. Therefore, Plaintiffs will abstain from purchasing the Products even though they would like to do so in the future. In addition, members of the proposed classes run the risk of continuing to purchase the Products under the faulty assumption that the Products do not contain elevated levels of contaminants such as toxic heavy metals. Until Defendant is enjoined from its deceptive marketing practices and failure to adequately test its products for elevated levels of toxic heavy metals, Plaintiffs and other consumers will continue to bear this ongoing injury.

**Defendant**

15. Defendant The Hain Celestial Group, Inc. is a Delaware corporation with its principal place of business and headquarters located at 111 Marcus Avenue, Lake Success, NY 11042. Defendant, directly and/or through its agents, marketed, advertised, and sold the Products nationwide, including in Missouri, throughout the class period.

## JURISDICTION AND VENUE

16.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed Classes are in excess of $5,000,000, exclusive of interests and costs, and Plaintiff, as well as most members of the proposed Classes, which total more than 100 class members, are citizens of states different from the state of Defendants.

17.      This Court has personal jurisdiction over Defendant because, at all relevant times, Defendant maintained sufficient minimum contacts in Missouri or otherwise intentionally did avail themselves of the markets within Missouri, through their marketing and sale of the Products in Missouri and to Missouri consumers, including Plaintiff Fogle.

18.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to this action occurred in this District, specifically, Plaintiffs purchased the Products in this District..

19.      Venue is proper in this District pursuant Mo. Rev. Stat. § 407.025.1 because Plaintiff Fogle purchased the Product in Jackson County, Missouri. Venue is also proper in this District pursuant to Mo. Rev. Stat. § 508.010.4 because Jackson County, Missouri is the place where Plaintiff Fogle was injured by Defendant's Product.

## FACTUAL ALLEGATIONS

**Defendant's "Earth's Best" Brand:**

20.      Defendant is one of the nation's largest purveyors of food specialized for babies and toddlers under the "Earth's Best" brand.

21.      Defendant portrays its Earth's Best brand to the public as a safe, premium, healthy line of products which goes above and beyond in sourcing healthy, nutritious, and safe food for

babies and toddlers. For example, on its website, Defendant warrants that "you can trust Earth's Best® products to be safe for your baby" as Defendant "recognize[s] the importance of wholesome, pure nourishment for babies."[3]

22.    Under the header "Our Promise", Defendant also promises that it implements "[r]igorous product testing to *guarantee* quality and *safety*."[4] Defendant ensures consumers that it "strive[s] to provide better-for-baby products that are pure, safe and sustainable."[5]

23.    Defendant further claims that for "Earth's Best® products, we ensure a high degree of attention to both ingredient and product quality and safety – from procuring, handling, storing, blending, and packaging through distributing Earth's Best® products to our consumer."[6]

24.    Defendant maintains these promises not only generally as its standard business practices, but repeats these warranties for its specific products. In an article regarding their infant cereal products, including the one purchased by Plaintiff Smith, Defendant purports that it is "[a]lways exceeding the highest standards of safety and purity," "reject ingredients annually because they do not meet our specification," and "work towards minimizing exposure to environmental contaminants associated with common baby food commodities."[7]

25.    Putting these explicit representations aside, "Baby food manufacturers hold a special position of public trust. Consumers believe that they would not sell products that are unsafe." Staff Report at 6.

26.    Contrary to the public image Defendant sets forth, and the general public's expectation that baby food is free from contaminants, the Products are contaminated with elevated levels of toxic heavy metals, including cadmium, lead, arsenic, and mercury.

---

[3] Earth's Best, *Our History*, (available online at https://www.earthsbest.com/why-earths-best/our-history/) (last visited March 1, 2021).

[4] Earth's Best, *Our Promise*, (available online at https://www.earthsbest.com/why-earths-best/our-promise/) (last visited March 1, 2021).

[5] *Id.*

[6] Earth's Best, *Why Earth's Best* , (available online at https://www.earthsbest.com/why-earths-best/) (last visited March 1, 2021).

[7] Earth's Best, *All You Need to Know About Earth's Best Organic Infant Cereal Ingredients* (June 30 2020), (available online at https://www.earthsbest.com/resource/about-iron-fortified-organic-infant-cereal-ingredients/) (last visited March 1, 2021).

**The HBBF Report and Congressional Staff Reports:**

27.     As the HBBF Report revealed in October 2019, many of Defendant's Earth's Best line of Products were contaminated with elevated levels of these toxic heavy metals. HBBF Report at pp. 19-27, 34.

28.     The HBBF report details the current scientific consensus on the dangers of these contaminants, in particular how they are linked to "at least 23 peer-reviewed studies published in the past seven years revealing IQ loss, attention deficits, and other learning and behavioral impacts among children who are exposed through food and other sources." HBBF Report at p. 13.

29.     Following the HBBF Report, and  November 6, 2019 investigation of "seven of the largest manufacturers of baby food in the United States" involving these companies' internal testing policies and test results for their products, the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform, issued its Staff Report on February 4, 2021.

30.     The Staff Report confirms what the HBBF Report sets forth, Defendant's Products are drastically contaminated with cadmium, lead, arsenic, and mercury. Staff Report at pp. 2-4.

31.     Based on internal company documents and test results obtained by the Subcommittee on Economic and Consumer Policy, Defendant "sold finished baby food products containing as much as 129 ppb inorganic arsenic;" "used ingredients containing as much 352 ppb lead;" "used 102 ingredients in its baby food that tested over 20 ppb cadmium […] including barley flour that registered at 260 ppb cadmium;" and, surprisingly, does "not even test for mercury in [its] baby food." Staff Report at pp. 2-4.

32.     Specifically, "Hain used brown rice flour that had tested at 309 ppb arsenic. Hain likewise used a vitamin pre-mix containing 223 ppb arsenic, and raisin and wheat flour containing 200 ppb arsenic. The testing data shows that Hain used at least 24 ingredients after testing found that they contained more than 100 ppb arsenic, its already dangerously-high internal standard for

most ingredients." Staff Report at 16.[8] Due to Defendant's "high internal standard" of "200 ppb arsenic" for various ingredients, Defendant "justified accepting wheat flour and rice that contained 200 and 150 ppb arsenic." Staff Report at 39.

33.     Regarding Defendant's raw material reshipment test data, "[n]one of the test results showed an ingredient below 1 ppb lead, which should be the upper limit for lead content according to the health experts at Consumer Reports, the Environmental Defense Fund, and the American Academy of Pediatrics." Staff Report at p. 27.

34.     Notably, according to the Staff Report, Defendant "typically only tested its ingredients, not finished products." Staff Report at p. 3.

35.     These contaminants are present at levels which are "higher than allowed under existing regulations for other products." Staff Report at p. 4.

36.     In fact, while Defendant maintains "an internal standard of 200 ppb for arsenic, lead, and cadmium", Defendant "exceeded its internal policies" by "using ingredients containing 353 ppb lead and 309 ppb arsenic." Staff Report at p. 4.

37.     Defendant attempted to justify using ingredients with ppb values that exceed its internal policies by blaming it on its reliance on its own "theoretical calculations" despite Defendant even "admitt[ing] to FDA that its testing underestimated final product toxic heavy metal levels." Staff Report at p.5.

38.     Further, a "secret slide presentation from Hain (Earth's Best Organic)" to the FDA on August 1, 2019, revealed, *inter alia*, the following: (1) because of Defendant's "corporate polic[y] to test only ingredients, not final products," Defendant "underrepresent[s] the level of toxic heavy metals in baby food"; (2) "in 100% of the Hain baby foods tested, inorganic arsenic levels were higher in the finished baby food than the company estimated they would be based on individual ingredient testing"; and (3) "[m]any of Hain's baby foods were tainted with high levels of inorganic arsenic". Staff Report at pp. 5-6.

---

[8] Hain, Raw Material Pre-Shipment Test Data History (Dec. 11, 2019) (available online at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/3_0.pdf) (last visited March 1, 2021).

39.     Therefore, despite having presented this information to the FDA in August of 2019, being aware of their Products containing elevated levels of toxic heavy metals through the October 2019 HBBF Report, and the publication of the Congressional Staff Report, Defendant has repeatedly been put on notice of these issues but has chosen not to resolve them.

40.     To safeguard against future injury from Defendant's practices, Plaintiffs demand the following injunctive relief: (1) mandatory testing for toxic heavy metals in finished products; and (2) report labels of toxic heavy metals on food labels.

**The Dangers of Toxic Heavy Metals in Baby Food:**

41.     Rife with scientific support, the Staff Report details the dangers of toxic heavy metals in baby food.

42.     As the Staff Report details: "Babies' developing brains are 'exceptionally sensitive to injury caused by toxic chemicals, and several developmental processes have been shown to be highly vulnerable to chemical toxicity.'[9] The fact that babies are small, have other developing organ systems, and absorb more of the heavy metals than adults, exacerbates their risk from exposure to heavy metals."[10]

43.     Specifically, "[e]xposure to heavy metals at this developmental stage can lead to 'untreatable and frequently permanent' brain damage, which may result in 'reduced intelligence, as expressed in terms of lost IQ points, or disruption in behavior.'"[11] Staff Report at 9.

**Defendant's Misleading and Unfair Practices**

44.     Despite its knowledge that the ingredients it was sourcing for the Products were tainted by toxic heavy metals, Defendant continued to use these ingredients in its Products and did not disclose the presence of these contaminants to consumers at the time of purchase. This purposeful omission and concealment from its customers resulted in increased sales, as customers

---

[9] Philippe Grandjean and Philip J. Landrigan, Neurobehavioural Effects of Developmental Toxicity (Mar. 13, 2014) (available online at www.ncbi.nlm.nih.gov/pmc/articles/PMC4418502/) (last visited March 1, 2021).

[10] Consumer Reports, Heavy Metals in Baby Food: What You Need to Know (Aug. 16, 2018) (available online at www.consumerreports.org/food-safety/heavy-metals-in-baby-food/) (last visited March 1, 2021).

[11] Philippe Grandjean and Philip J. Landrigan, Neurobehavioural Effects of Developmental Toxicity (Mar. 13, 2014) (available online at www.ncbi.nlm.nih.gov/pmc/articles/PMC4418502/) (last visited March 1, 2021).

like Plaintiffs would not have purchased the Products had they known the truth of their content. Therefore, Plaintiffs and consumers have suffered injury in fact as a result of Defendant's deceptive practices.

45.     Given that Defendant sources and tests the ingredients for the Products, and the difficulty for consumers to discover whether the Products are contaminated with toxic heavy metals prior to purchase, Defendant has exclusive knowledge of its deceptive acts and practices. At the point of sale, Defendant fails to disclose to consumers these foregoing deceptive and fraudulent acts. Based on the foregoing facts, reasonable consumers do not know and would have no reason to know that the Products are contaminated with elevated levels of toxic heavy metals.

46.     Each class member has been exposed to the same or substantially similar deceptive practices, as at all relevant times Defendant uniformly fails to disclose at the point of sale that its Products are contaminated with elevated levels of toxic heavy metals.

47.     As a result of its misleading business practice, and the harm caused to Plaintiffs and other consumers, Defendant should be required to pay for all damages caused to consumers, including Plaintiffs.  To protect Plaintiffs and consumers from such harm, Defendant should be enjoined to mandatory test its Products for toxic heavy metals and to report levels of toxic heavy metals on food labels.

**Defendant's Knowledge and Intent**

48.     As the entity responsible for creating the Products and sourcing its ingredients, Defendant knew or reasonably should have known that the Products contained elevated levels of toxic heavy metals. Indeed, Defendant's internal company documents, aforementioned admissions to the FDA, usage of "theoretical calculations", the HBBF Report, and the Congressional Staff Report demonstrates that Defendant knew of the presence of these elevated levels of toxic heavy metals but decided to sell their Products to consumers.   Defendant also failed to disclose these facts to consumers at the point of sale.

49.     Furthermore, Defendant knew or reasonably should have known that consumers are deceived and harmed by Defendant's failure to conspicuously disclose the presence of these

elevated levels of toxic heavy metals.

50.     Defendant knew that the lack of disclosures misleads consumers into believing the Products do not contain elevated of contaminants, including but not limited to heavy metals.

## CLASS ACTION ALLEGATIONS

51.     The MMPA authorizes Plaintiffs to bring this suit as a class action because Defendant's unlawful conduct has "caused similar injury to numerous other persons." Mo. Rev. Stat. § 407.025.2.

52.     Plaintiff Fogle brings this class action for violation of the MMPA pursuant to the Fed. R. Civ. P. Rule 23 on behalf of all consumers who, within the relevant statute of limitations period, purchased any of the Products in the State of Missouri for personal, family or household purposes (the "Missouri Subclass").

53.     Plaintiff Smith seeks to represent a subclass defined as all California citizens who, within the relevant statute of limitations periods, purchased any of the Products ("California Subclass").

54.     Plaintiff Smith also seeks to represent a subclass defined as all California citizens who, within the relevant statute of limitations periods, purchased for personal, family, or household purposes any of the Products ("California Consumer Subclass").

55.     Plaintiffs also seek to represent a class of persons in the United States who, within the relevant statute of limitations periods, purchased the Products for personal, family, or household purposes ("Nationwide Class") (together with the Missouri Subclass, California Subclass, and California Consumer Subclass, the "Classes").

56.     Excluded from the Classes are (1) Defendant, its subsidiaries and affiliates, and its directors and officers and members of their immediate families; (2) federal, state, and local governmental entities; and (3) any judicial officers presiding over this action, their judicial staff, and members of their immediate families

57.     **Numerosity**: Members of the Classes are so numerous that their individual joinder herein is impracticable. Defendant has sold at least hundreds of thousands of units of the Products.

The Products are sold in a variety of online and brick-and-mortar retail locations. While the precise number of class members and their identities are unknown to Plaintiffs at this time, the number may be determined through discovery.

58. **Common Questions Predominate**: Common questions of law and fact exist for all members of the Classes. Plaintiffs' and the members of the Classes' claims arise from a common nucleus of operative facts including questions regarding: (1) Defendant's omissions regarding the presence of elevated levels of toxic heavy metals on the Products' label; (2) whether Defendant's omissions and represents mislead reasonable consumers; and (3) whether consumers have suffered uniform economic harm from the purchase of deceptively and misleadingly labeled Products. The claims of Plaintiffs and the Classes involve common questions of law regarding the legality of Defendant's conduct under the MMPA and other causes of action and the entitlement of class members to damages under that statute. These common questions of law and fact are amenable to class-wide resolution based on common evidence.

59. **Typicality**: Plaintiffs' claims are typical of the claims of the members of the Classes as all members of the Classes are similarly affected by Defendant's unlawful conduct. Plaintiffs have no interests that are antagonistic to the interests of other class members. Plaintiffs and all members of the Classes have sustained similar economic injury arising out of the alleged unlawful conduct for which Defendant is liable.

60. **Adequacy:** Plaintiffs are fair and adequate representatives of the Classes because their interests do not conflict with the interests of the members of the Classes they seek to represent. Plaintiffs have retained competent and experienced counsel, who are fair and adequate representatives of the proposed Classes because they will vigorously prosecute this action and do not have any conflicts of interest with the Classes. The interests of members of the Classes will be fairly and adequately protected in this lawsuit by Plaintiffs and their counsel.

61. **Superiority:** Common issues predominate over individual issues in this case because the overriding issues of liability and damages under the MMPA and other causes of action can be determined on a class-wide basis from common evidence regarding Defendant's uniform

misconduct and the uniform economic harm to class members who purchased the Products.

62.     Class treatment is the superior method of adjudicating the class members' claims because it avoids the inefficiencies and inconsistencies of piecemeal litigation and ensures that all class members are given their day in Court that would not otherwise be possible for such small value claims. Class treatment also is expressly authorized by the MMPA. See Mo. Rev. Stat. §407.025.2.

63.     This lawsuit is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted or refused to act on grounds that are generally applicable to the Class members, thereby making final injunctive relief appropriate with respect to all Classes.

64.     This lawsuit is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3) because the questions of law and fact common to the members of the Classes predominate over any questions that affect only individual members, and because the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy.

### COUNT I
### Violation of the Missouri Merchandising Practices Act ("MMPA") and Other State Consumer Protection Statutes,
**Mo. Rev. Stat. §§ 407.010 *et seq*.,**
***(for the Nationwide Class; and in the alternative, for the Missouri Subclass)***

65.     Plaintiff Fogle repeats the allegations contained in paragraphs 1-64 above as if fully set forth herein.

66.     Plaintiff Fogle brings this claim individually and on behalf of the Nationwide Class, or in the alternative, for the Missouri Subclass, all of whom purchased the Products for personal, family, or household purposes, against Defendant.

67.     The Products are "merchandise" under the MMPA, which is defined to include "any objects, wares, goods, [or] commodities." Mo Rev. Stat. § 407.010(4).

68.     The MMPA prohibits the act, use, or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact about the sale or advertisement of any merchandise

in trade or commerce. Mo. Ann. Stat. § 407.020

69.     At all times during the class period, Defendant has omitted material information on the labels of its Products' regarding the presence of elevated levels of toxic heavy metals in the Products. Defendant has also made false, deceptive and misleading representations regarding the safety and testing of its ingredients, deceiving consumers into believing the Products are free from contaminants such as elevated levels of toxic heavy metals in the Products. These omissions are uniform for all the Products during the relevant statute of limitations period, as none of them contain a disclosure regarding the elevated levels of toxic heavy metals in the Products.

70.     Defendant's representations on its website are unlawful under the MMPA because they are false and have the capacity to mislead consumers about the existence of elevated levels of toxic heavy metals in the Products and the extent to which Defendant tests for these contaminants, if at all. *See* Mo. Code Regs. Ann. tit. 15, § 60-7.020(1).

71.     Defendant's representations on its website are unlawful under the MMPA because Defendant does not have a reasonable basis for making its claims with respect to the extent to which Defendant tests its Products for contaminants, if at all. *See* Mo. Code Regs. Ann. tit. 15, § 60-7.040(1).

72.     Defendant's omissions regarding the elevated levels of toxic heavy metals on the Products' labels are unlawful under the MMPA because they have the capacity to mislead prospective purchasers about the Products, which consumers find material as they relate to the quality of the Products' ingredients, including whether they are contaminated with any toxic substances. *See* Mo. Code Regs. Ann. fit. 15, § 60-7.030(1).

73.     Defendant's representations on its website are unlawful under the MMPA because they have the tendency of capacity to mislead and deceive consumers about the existence of elevated levels of toxic heavy metals in the Products and the extent to which Defendant tests for these contaminants, if at all. *See* Mo. Code Regs. Ann. tit. 15, § 60-7.020(1).

74.     Defendant's representations on its website are deceptive under the MMPA because they tend to create a false impression about the existence of elevated levels of toxic heavy metals

in the Products and the extent to which Defendant tests for these contaminants, if at all. *See* Mo. Code Regs. Ann. tit. 15, § 60-9.020(1).

75. Defendant's representations on its website constitute unlawful misrepresentations under the MMPA because they make assertions that are not in accord with the facts about the existence of elevated levels of toxic heavy metals in the Products and the extent to which Defendant tests for these contaminants, if at all. *See* Mo. Code Regs. Ann. tit. 15, § 60-9.070(1).

76. Defendant's representations on its website constitute unlawful misrepresentations under the MMPA because they contain material untruths about the existence of elevated levels of toxic heavy metals in the Products and the extent to which Defendant tests for these contaminants, if at all. *See* Mo. Code Regs. Ann. tit. 15, § 60-9.080(1).

77. Defendant's representations on the Products are unlawful under the MMPA because they conceal, suppress and omit material facts from consumers regarding the existence of elevated levels of toxic heavy metals in the Products. *See* Mo. Code Regs. Ann. tit. 15, § 60-9.100(1)-(3).

78. Similar prohibitions against unfair or deceptive conduct exist in the following states' consumer protection statutes: Alabama: Ala. Code § 8-19-1 *et seq.*; Alaska: Alaska Stat. § 45.50.471 *et seq.*; Arizona: Ariz. Rev. Stat. § 44-1521 *et seq.*; Arkansas: Ark. Code Ann. § 4-88-107 *et seq.*; California: Cal. Civ. Code § 17500 *et seq.*; Colorado: Colo. Rev. Stat. § 6-1-101 *et seq.*; Connecticut: Conn. Gen. Stat. § 42-110a *et seq.*; Delaware: Del. Code Ann. tit. 6, § 2531 *et seq.*; District of Columbia: D.C. Code Ann. § 28-3901 *et seq.*; Florida: Fla. Stat. Ann. § 501.201 *et seq.*; Georgia: Ga. Code Ann. § 10-1-370 *et seq.*; Hawaii: Haw. Rev. Stat. § 481A-1 to 481A-5; Idaho: Idaho Code § 48-601 *et seq.*; Illinois: 815 Ill. Comp. Stat. 510/1 *et seq.*; Indiana: Ind. Code § 24-5-0.5-1 *et seq.*; Iowa: Iowa Code Ann. § 714.16 *et seq.*; Kansas: Kan. Stat. Ann. § 50-623 *et seq.*; Kentucky: Ky. Rev. Stat. Ann. § 367.110 *et seq.*; Louisiana: La. Rev. Stat. Ann. § 51:1401 *et seq.*; Maine: Me. Rev. Stat. Ann. tit. 5, § 206 *et seq.*; tit. 10, § 1211 *et seq.*; Maryland: Md. Code Ann., Com. Law § 13-101 *et seq.*; Mass. Gen. Laws. ch. 93A, § 1 *et seq.*; Michigan: Mich. Comp. Laws Ann. § 445.901 *et seq.*;  Minnesota: Minn. Stat. Ann. § 325D.43 *et seq.*; Mississippi: Miss.

Code Ann. § 75-24-1 *et seq.*; Missouri: Mo. Rev. Stat. § 407.010 *et seq.*; Montana: Mont. Code Ann. § 30-14-101 *et seq.*; Nebraska: Neb. Rev. Stat. § 87-301 *et seq.*; Nevada: Nev. Rev. Stat. ch. 598 *et seq.*; New Hampshire: N.H. Rev. Stat. Ann. § 358-A *et seq.*; New Jersey: N.J. Rev. Stat. § 56:8-1 *et seq.*; New Mexico: N.M. Stat. Ann. § 57-12-1 *et seq.*; New York: N.Y. Gen. Bus. Law § 349 *et seq.*; North Carolina: N.C. Gen. Stat. § 75-1 *et seq.*; North Dakota: N.D. Cent. Code § 51-10-01 *et seq.*; Ohio: Ohio Rev. Code Ann. § 1345.01 *et seq.*; Oklahoma: Okla. Stat. Ann. tit. 78, § 51 *et seq.*; Oregon: Or. Rev. Stat. § 646.605 *et seq.*; Pennsylvania: 73 P.S. § 201-1 *et seq.*; Rhode Island: R.I. Gen. Laws §§ 6-13.1-1 to -13.1-11 *et seq.*; South Carolina: S.C. Code Ann. § 39-5-10 *et seq.*; South Dakota: S.D. Codified Laws § 37-24-1 *et seq.*; Tennessee: Tenn. Code Ann. § 47-18-101 *et seq.*; Texas: Tex. Bus. & Com. Code Ann. § 17.41 *et seq.*; Utah: Utah Code Ann. § 13-11-1 *et seq.*; Vermont: Vt. Stat. Ann. tit. 9, § 2451 *et seq.*; Virginia: Va. Code Ann. § 59.1-196 *et seq.*; Washington: Wash. Rev. Code § 19.86.010 *et seq.*; West Virginia: W. Va. Code Ann. § 46A-6-101 *et seq.*; Wisconsin: Wis. Stat. Ann. § 421 to 427 *et seq.*; and Wyoming: Wyo. Stat. Ann. § 40-12-101 *et seq.*

79.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff Fogle and the members of the Missouri Subclass have suffered uniform, objective and ascertainable loss of money under the benefit of the bargain rule by purchasing the Products when they would not have given the material omissions on the Products, as we as Defendant's deceptive and misleading representations on its website, regarding the existence of elevated levels of toxic heavy metals in the Products and the extent to which Defendant tests for these contaminants, if at all.

80.     Plaintiff Fogle and members of the Nationwide Class and Missouri Subclass seek damages, restitution, declaratory and injunctive relief, and all other remedies the Court deems appropriate for Defendant's violations of the MMPA.

## COUNT II
## Violation of California's Consumers Legal Remedies Act ("CLRA"),
### California Civil Code §§ 1750, *et seq.*
### *(for the California Consumer Subclass)*

81.     Plaintiff Smith repeats the allegations contained in paragraphs 1-64 above as if fully set forth herein.

82.     Plaintiff Smith brings this claim individually and on behalf of the California Consumer Subclass against Defendant.

83.     The Products are "goods" pursuant to California Civil Code § 1761(a), and the purchases of the goods by Plaintiff Smith and members of the California Consumer Subclass constitute "transactions" pursuant to Cal. Civ. Code § 1761(e). Further, Plaintiff Smith and members of the proposed California Consumer Subclass are consumers within the meaning of Cal. Civ. Code § 1761(d).

84.     Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . ." By omitting that the Products contain elevated levels of toxic heavy metals, Defendant failed to disclose material facts regarding the Products' characteristics. A reasonable consumer would believe that the Products are not contaminated with elevated levels of toxic heavy metals and would be fit for consumption. Therefore, Defendant has violated section 1770(a)(5) of the CLRA.

85.     Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By omitting that the Products contain elevated levels of toxic heavy metals, Defendant failed to disclose material facts regarding the Products' quality, standard, and grade. A reasonable consumer would believe that the Products are not contaminated with elevated levels of toxic heavy metals and would be fit for consumption. Therefore, Defendant has violated section 1770(a)(7) of the CLRA.

86.     Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By omitting that the Products contain elevated levels of toxic heavy metals, Defendant advertised the Products as rigorously tested, safe, and fit for human consumption.

However, because the Products contain elevated levels of toxic heavy metals, they are not. Therefore, Defendant has violated section 1770(a)(9) of the CLRA.

87.     Defendant's omissions regarding the Products' elevated levels of toxic heavy metals are material as they relate to the quality of the Products' ingredients, including whether they are contaminated with any toxic substances (i.e., safety). Therefore, Defendant was obligated to disclose these material facts to Plaintiff Smith and other consumers. Because Defendant failed to disclose these material facts, consumers were misled.   At all relevant times, Defendant knew or reasonably should have known that there was no disclosure at the point of sale that the Products contain elevated levels of toxic heavy metals.

88.     At all relevant times, Defendant knew or reasonably should have known that Plaintiff Smith and other members of the California Consumer Subclass relied on the foregoing representations and omissions and continue to be deceived and harmed by Defendant's foregoing unfair practices.

89.     Plaintiff Smith and members of the California Consumer Subclass reasonably and justifiably relied on Defendant's misleading representations and fraudulent omissions regarding the Products. Plaintiff Smith and other consumers did not know, and had no reason to know, at the point of sale that the Products contain elevated levels of toxic heavy metals.

90.     Plaintiff Smith and members of the California Consumer Subclass suffered injuries caused by Defendant because they would not have purchased the Products had they known that the Products contain elevated levels of toxic heavy metals.

91.     Under Cal. Civ. Code § 1780(a), Plaintiff Smith and members of the California Consumer Subclass seek damages, restitution, declaratory and injunctive relief, and all other remedies the Court deems appropriate for Defendant's violations of the CLRA.

92.     Pursuant to Cal. Civ. Code § 1782, on April 7, 2020 counsel for Plaintiff Smith mailed a notice and demand letter by certified mail, with return receipt requested, to Defendant. Defendant received the notice and demand letter on April 22, 2020.  Because Defendant has failed to fully rectify or remedy the damages caused within 30 days after receipt of the notice and demand

letter, Plaintiff Smith filed the Class Action Complaint for a claim for damages under the CLRA.

**COUNT III**
**Violation of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code §§ 17200, *et seq.***
**(*for the California Subclass*)**

93.     Plaintiff Smith repeats the allegations contained in paragraphs 1-64 above as if fully set forth herein.

94.     Plaintiff Smith brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

95.     UCL § 17200 provides, in pertinent part, that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ."  California Business and Professional Code ("Cal. Bus. & Prof. Code") § 17200.

96.     Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law.

97.     Defendant's misrepresentations and omissions regarding the presence of elevated levels of toxic heavy metals in the Products were and continue to be "unlawful" because they violate the CLRA and other applicable laws as described herein.

98.     As a result of Defendant's unlawful business acts and practices, Defendant has and continues to unlawfully obtain money from Plaintiff Smith and members of the California Subclass.

99.     Under the UCL, a business act or practice is "unfair" if the defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

100.     Defendant's conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers who purchased the

Products and were deceived by Defendant's fraudulent omissions and misrepresentations. Deceiving consumers about the presence of elevated levels of toxic heavy metals in the Products is of no benefit to the consumers. Therefore, Defendant's conduct was and continues to be "unfair."

101.    As a result of Defendant's unfair business acts and practices, Defendant has and continues to unfairly obtain money from Plaintiff Smith and members of the California Subclass.

102.    Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public.

103.    Defendant's conduct here was and continues to be fraudulent because it has and will continue to likely deceive consumers by failing to disclose that the Products contain elevated levels of toxic heavy metals. Because Defendant misled and will likely continue to mislead Plaintiff Smith and members of the California Subclass, Defendant's conduct was "fraudulent."

104.    As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiff Smith and members of the California Subclass.

105.    Plaintiff Smith requests that this Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to Plaintiff Smith, and members of the California Subclass, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff Smith, and members of the California Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

106.    Monetary damages are an inadequate remedy at law because injunctive relief is necessary to deter Defendant from continuing its false and deceptive conduct regarding the Products.

**COUNT IV**
**Fraudulent Concealment**
(*for the Missouri Subclass*)

107.     Plaintiff Fogle repeats the allegations contained in paragraphs 1-64 above as if fully set forth herein.

108.     Plaintiff Fogle brings this claim individually and on behalf of the members of the proposed Missouri Class.

109.      As the entity responsible for manufacturing and testing the Products, and for the reasons asserted throughout this Complaint, including but not limited to the Staff Report and Defendant's interactions with the FDA, Defendant knew or reasonably should have known that the Products contained elevated levels of toxic heavy metal.

110.     Defendant's omissions regarding the Products' elevated levels of toxic heavy metals are material as they relate to the quality of the Products' ingredients, including whether they are contaminated with any toxic substances (i.e., safety). Therefore, Defendant was obligated to disclose these material facts to Plaintiff Fogle and other consumers.

111.     Despite Defendant's duty to disclose these material facts to Plaintiff Fogle and class members, Defendant concealed these material facts from Plaintiff Fogle at the point of sale.

112.     Given that Defendant manufactured and purportedly tested the Products and/or their ingredients, and that these omissions pertain to facts that, if revealed to consumers, would affect their purchasing decisions in that they would not have purchased the Products, Defendant's concealment of these material facts was intentional and with the intent to defraud Plaintiff Fogle and class members.

113.     Defendant intended that Plaintiff Fogle and other consumers rely on these omissions, as they are pertaining to facts that, if revealed to consumers, would affect their purchasing decisions in that they would not have purchased the Products, leading to increased pecuniary gain for Defendant.

114.     Plaintiff Fogle and Missouri Subclass members did not know, and had no reason to know, that the Products contain toxic heavy metals at elevated levels. Consumers expect the food they purchase to be safe for consumption, particularly in the context of baby food, where the consumer is particularly sensitive to toxic materials. Instead, Plaintiff Fogle and Missouri Subclass members relied on Defendant to produce baby food that is free from elevated levels of contaminants, including but not limited to toxic heavy metals.

115.     Plaintiff Fogle and members of the Missouri Subclass suffered injuries caused by Defendant given that, had they known that the Products contained elevated levels of toxic heavy metals, they would not have purchased the Products.

### COUNT V
### Breach of Implied Warranty
### (*for the Missouri Subclass*)

116.     Plaintiff Fogle repeats the allegations contained in paragraphs 1-64 above as if fully set forth herein.

117.     Plaintiff Fogle brings this claim individually and on behalf of the members of the proposed Missouri Subclass.

118.     Mo. Ann. Stat. § 400.2-314(1) provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Mo. Ann. Stat. § 400.2-314(1).

119.     Furthermore, Mo. Ann. Stat. § 400.2-314(2) provides that "[g]oods to be merchantable must be at least such as . . . [a]re fit for the ordinary purposes for which such goods are used[.]" Cal. Comm. Code § 2314(2)(c).

120.     Defendant is a merchant with respect to the sale of baby food, such as the Products in this action.  Therefore, a warranty of merchantability is implied in every purchase of the Products by consumers.

121.     In its sale of the Products, Defendant has provided an implied warranty that the Products are fit for consumption by babies and toddlers.  However, this warranty has been breached

because the Products contain elevated levels of toxic heavy metals, rendering the Products not fit for consumption by babies and toddlers.

122.    Therefore, Defendant has breached its implied warranty of merchantability regarding the Product.

123.    If Plaintiff Fogle and members of the Missouri Subclass had known that the Products contained elevated levels of toxic heavy metals, they would not have purchased the Products.  Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiff Fogle and members of the Missouri Subclass have suffered injury and deserve to recover all damages afforded under the law.

**COUNT VI**
**Unjust Enrichment**
**(*for the Missouri Subclass*)**

124.    Plaintiffs Fogle repeats the allegations contained in paragraphs 1-64 above as if fully set forth herein.

125.    Plaintiff Fogle bring this claim individually and on behalf of the members of the Classes against Defendant.

126.    As alleged herein, Defendant intentionally, recklessly, and/or negligently omitted material information about the Products to Plaintiff Fogle and members of the Classes to induce them to purchase the Products.  Plaintiff Fogle and members of the Classes have reasonably relied on the misleading omissions. Plaintiff Fogle and members of the Classes therefore have been induced by Defendant's misleading and false omissions about the Products, and paid for them when they otherwise would not have had Defendant disclosed this information.

127.    Plaintiff Fogle and members of the Classes have conferred a benefit upon Defendant, as Defendant has retained monies paid to them by Plaintiff Fogle and members of the Classes.

128.    The monies received were obtained under circumstances that were at the expense of Plaintiff Fogle and members of the Classes – *i.e.*, Plaintiff Fogle and members of the Classes

did not receive the full value of the benefit conferred upon Defendant because Defendant did not provide the Products free of contamination of elevated levels of toxic heavy metals.

129.    Therefore, it is inequitable and unjust for Defendant to retain the profit, benefit, or compensation conferred upon them without paying Plaintiff Fogle and the members of the Classes back for the difference of the full value of the benefit compared to the value actually received.

130.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiff Fogle and members of the Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant from its deceptive, misleading, and unlawful conduct as alleged herein.

131.    Monetary damages are an inadequate remedy at law because injunctive relief is necessary to deter Defendant from continuing its false and deceptive conduct regarding the Products.

### Prayer for Relief

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendants, as follows:

A.    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiffs as representatives of all Classes; and naming Plaintiffs' attorneys as Class Counsel to represent all Classes.

B.    For an order declaring that Defendants' conduct violates the statutes and laws referenced herein;

C.    For an order finding in favor of Plaintiffs, and all Classes, on all counts asserted herein;

D.    For an order awarding all monetary damages in amounts to be determined by the Court and/or jury;

E.    For prejudgment interest on all amounts awarded;

F.     For interest on the amount of any and all economic losses, at the prevailing legal rate;

G.     For an order of restitution and all other forms of equitable monetary relief;

H.     For injunctive relief as pleaded or as the Court may deem proper;

I.     For an order awarding Plaintiff and all Classes their reasonable attorneys' fees, expenses and costs of suit, including as provided by statute such as under Mo. Rev. Stat. § 407.025.1; and

J.     For any other such relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.


Respectfully Submitted,


Dated: March 2, 2021


**DOLLAR, BURNS, BECKER & HERSHEWE, L.C.**

By: */s/ Tim Dollar*
Tim Dollar
MO Bar #33123
1100 Main Street, Suite 2600
Kansas City, MO 64105-5194
(816) 876-2600
(816) 221-8763 (Fax)
timd@dollar-law.com
ATTORNEY FOR PLAINTIFFS

JS 44 (Rev 09/10)

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI

## CIVIL COVER SHEET

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Western District of Missouri.

**The completed cover sheet must be saved as a pdf document and filed as an attachment to the Complaint or Notice of Removal.**

### Plaintiff(s):

First Listed Plaintiff:
Katesha Smith ;
2 Citizen of Another State; California
**County of Residence:** Outside This District

Additional Plaintiff(s):
Miranda Fogle ;
1 Citizen of This State;

### Defendant(s):

First Listed Defendant:
The Hain Celestial Group, Inc. ;
NA;
**County of Residence:** Outside This District

### County Where Claim For Relief Arose: Jackson County

### Plaintiff's Attorney(s):

Tim Dollar (Katesha Smith)
DOLLAR, BURNS, BECKER & HERSHEWE, L.C.
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
**Phone:** 8168762600
**Fax:** 816-221-8763
**Email:** timd@dollar-law.com

### Defendant's Attorney(s):

**Basis of Jurisdiction:** 4. Diversity of Citizenship

**Citizenship of Principal Parties** (Diversity Cases Only)

**Plaintiff:** 2 Citizen of Another State

**Defendant:** NA

**Origin:** 1. Original Proceeding

**Nature of Suit:** 370 Fraud Actions

**Cause of Action:** 28 U.S.C. § 1332(d)(2)(A) misleading and unfair business practices; consumer protection and false advertising

**Requested in Complaint**

**Class Action:** Class Action Under FRCP23

**Monetary Demand (in Thousands):** 5,000,000

**Jury Demand:** Yes

**Related Cases:** Is NOT a refiling of a previously dismissed action

---

**Signature:** Tim Dollar

**Date:** 3-2-21

If any of this information is incorrect, please close this window and go back to the Civil Cover Sheet Input form to make the correction and generate the updated JS44. Once corrected, print this form, sign and date it, and submit it with your new civil action.