# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| REBECCA ABBOTT, KRYSTAL LEIGH ANDERSON, ANGELA ARROWSMITH, MEGAN ASHLEY, ELIZABETH AUSTIN, KIMBERLY AZENETH AVILA, JENNIFER BAINBRIDGE, LINDSAY BARR, GRISEL BARRETO, COURTNEY BARRON, ASHLEY BAXTER, BRITTANY BENNETT, KELSEY BLANKENSHIP, MELISSA BLOOMQUIST-SMITH, CRISTEN BOLES, OLIVIA BOYER, CRYSTAL BRINIG, AUGUSTINA BRIONES, CAMARIE BROOMFIELD, ANA BUTKUS, JORDAN CANTAFIO, MAYELIN CARRANZA, ANNA CHASE, SHERAL SHAH CHHEDA, MELANIE COLE, JEN COMEAU, MICHELLE CORBETT, ANGELA COX, BRANDY DAVIS, CHELZY DESVIGNE, BRITTANY DISTASO, SUDIPTA DUTTA, NATALYA DZYUBA, SAMANTHA EDWARDS, THERESA MARIE FINTONIS, AYAME TATIANA GALASSINI, MARCELA GARCÍA, SHELBY GERACI, KRISTIAN GERMAIN, AUSTIN GUNDERSEN, SHANNON HERRINGTON, AMANDA HOBBS-ROGERS, SAMMI HOBDY, YUHWA JANG, OLIVIA JOHNSON, HEATHER KEY, SARA KILBURN, SARAH KNAAPEN, RACHEL KNUDSON, SARAH KOHN, KARLEEN KOZACZKA, RACHAEL KRUUP, DEANA LINEGAR, APRIL LOCKHART, LORI ANN LOUIS, TRACI MARIE LUSSIER, MARQUETTA MATTHEWS, ELIZABETH A. MCDOWELL, KALI MCGLINCH, LORI-ANN MCKENZIE-HENRY, LYRIK MERLIN, RENEE MILLINE, LOUKEVIA MOORE, AMANDA GAMBRELL MORENCY, LEAH M. OSTAPCHENKO, CORINTHEA PANGELINAN, JO-ELLEN PATERNO, MIA PELLETIER, KARINA PENA, HOLLY PLOTTS, JANINNE PRICE, DEBBIE REED, SARAH RIDINGS, KASSANDRA ROMERO, MAGGIE ROUSE, TIFFANY SALAZAR, BRIDGET SALOPEK, LEA SANTOS, AMANDA SCHRAM, BRENDA SCHROEDER, | Case No. 21-3915<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

KINDER SMITH, RACHEL STRATTON, ASHLEY
SWENNINGSON, MARGO TEZENO, SHILOH
THOMAS, KATRINA THOMAS, CASEY
TISDALE, RACHAEL TREETOP, SONJA RENÉE
TWIGGS, MONIQUE WARREN, BEVERLY
WATKINS, NATALIE WILLIAMS, RETRENA
YOUNGE, CHARISSE ZAPATA, AND
CHRISTEN ZULLI, individually and on behalf of all
other similarly situated persons,

*Plaintiffs*,

   v.

THE HAIN CELESTIAL GROUP, INC.,

*Defendant*.

---

## COMPLAINT

COME NOW Plaintiffs, individually and on behalf of all other similarly situated persons, by and through its undersigned attorneys, and for its Complaint against The Hain Celestial Group, Inc., state as follows:

### NATURE OF CASE

1.    Toxic heavy metals such as arsenic, lead, cadmium, and mercury have no health benefit. These toxic heavy metals are unfit for consumption. Both the Food and Drug Administration and the World Health Organization have declared these toxic heavy metals dangerous to human health, particularly to babies and children, who are most vulnerable to its neurotoxic effects.

2.    Babies' developing brains are exceptionally sensitive to injury caused by these toxic heavy metals, and several developmental processes have been shown to be highly vulnerable to chemical toxicity.

3.      Even low levels of exposure to toxic heavy metals can cause serious and often irreversible damage to brain development leading to permanent decreases in IQ, diminished future economic productivity, and increased risk of future criminal and antisocial behavior.  As a result, there is no established safe level of toxic heavy metals for babies.  Any amount is too much.

4.      On February 4, 2021, the Subcommittee on Economic and Consumer Policy Committee on Oversight and Reform of the U.S. House of Representatives released a staff report which detailed an investigation that revealed that Defendant's baby foods were contaminated with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury.

5.      The presence of toxic heavy metals in food, especially in baby food, is material to consumers. No consumer would knowingly purchase baby foods for its child from a manufacturer that allowed its baby foods to contain measurable amounts of arsenic, lead, cadmium, or mercury. Yet, Defendant, knowingly sold baby foods containing high levels of arsenic and lead and despite having actual knowledge of this fact, did not disclose the presence of toxic heavy metals in its baby foods to consumers.

**PARTIES**

6.      Defendant The Hain Celestial Group, Inc. ("Hain") is a Delaware corporation that manufactures, markets, and sells baby food with its principal place of business in Lake Success, New York.

7.      When reference in this Complaint is made to any act or omission of a defendant, it should be read to mean that the officers, directors, agents, employees, or representatives of the Defendant committed or authorized such act or omission or failed to adequately supervise or properly control or direct its employees while engaged in the management, direction, operation, or

control of the affairs of the defendant, and did so while acting within the scope of its employment or agency.

8.     Hain markets its baby food under the brand name Earth's Best.  To the public, Hain claims it is the earth's best because "[f]rom the beginning of our farming process to the moment when your little one tastes Earth's Best products, we ensure a high degree of attention to both ingredient quality and safety . . . ."  In promotional materials, Hain holds itself out to be an expert in what and how babies should eat, and one area of their website is branded: "The Experts."  Hain sells the superiority of its organic ingredients: "While the FDA has strict regulations on all infant formula to meet standard nutritional guidelines, put simply, choosing organic formula can limit your baby's exposure to potentially harmful chemicals and pesticides."

9.     Hain's marketing campaign has long been full of representations that its baby food is safe and healthy for infants to eat at all stages of development.  Often, these representations insist Hain's baby food is completely safe because they do not add bad stuff, boasting that all Hain's foods are "produced without the use of potentially harmful chemicals, pesticides, genetically engineered ingredients, or growth hormones from animal-derived products."  On April 1, 2016 Hain told parents on Facebook that Hain "understand[s] that food safety is your greatest priority for your little one, as it is at Earth's Best Organic."  The next week, on April 10, 2016, Hain again took to Facebook and offered parents an unqualified guarantee: "Our Organic Dairy Formula contains only the good stuff like iron and prebiotic fiber."

10.     The Plaintiffs in this action consist of consumers who purchased Defendant's baby food in each of the U.S. States and the District of Columbia without knowledge that Defendant was knowingly manufacturing and selling baby foods with ingredients that contained high levels of toxic heavy metals.

11.     Plaintiffs Rebecca Abbott is a natural person and a citizen and resident of Mena, Arkansas.  In 2020-2021, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, oatmeal, fruits and vegetables, in the state of Arkansas, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

12.     Plaintiffs Krystal Leigh Anderson is a natural person and is a citizen and resident of Sanford, North Carolina.  In 2020-2021, Plaintiffs purchased Hain baby foods, including but not limited to oatmeal, fruits, and vegetables, in the state of North Carolina, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

13.     Plaintiffs Angela Arrowsmith is a natural person and is a citizen and resident of Taunton, Massachusetts.  In 2017-2018 and 2020-2021, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, in the states of Maine and Massachusetts, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

14.     Plaintiffs Megan Ashley is a natural person and is a citizen and resident of New Castle, Indiana.  Plaintiffs purchased Hain baby foods, including but not limited to fruits, vegetables, Hawaiian delight, and meat, in the states of Indiana and Tennessee, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in

Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

15.     Plaintiffs Elizabeth Austin is a natural person and is a citizen and resident of Mount Pleasant, South Carolina.  In 2007-2018, Plaintiffs purchased Hain baby foods, including but not limited to fruits and vegetables, in the states of South Carolina and Virginia, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

16.     Plaintiffs Kimberly Azeneth Avila is a natural person and is a citizen and resident Kona, Hawaii.  In 2019-2020, Plaintiffs purchased Hain baby foods, including but not limited to fruits and vegetables, in the state of Hawaii, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

17.     Plaintiffs Jennifer Bainbridge is a natural person and is a citizen and resident of Mars, Pennsylvania.  In 2017-2019, Plaintiffs purchased Hain baby foods, including but not limited to puffs, lil' crunchies, and yogurt melts, in the state of Pennsylvania, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

18.     Plaintiffs Lindsay Barr is a natural person and is a citizen and resident of Broken Arrow, Oklahoma.  In 2015-2016 and 2019-2020, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, yogurt melts, and good start soothe, in

the state of Oklahoma, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

19.     Plaintiffs Grisel Barreto is a natural person and is a citizen and resident of Henderson, Nevada.  In 2015-2018, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, oatmeal, vegetables, and meats, in the states of Massachusetts and Nevada, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

20.     Plaintiffs Courtney Barron is a natural person and is a citizen and resident of Renton, Washington.   In 2019-2021, Plaintiffs purchased Hain baby foods, including but not limited to oatmeal cereal, fruits, and vegetables in the states of Washington and Utah, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

21.     Plaintiffs Ashley Baxter is a natural person and is a citizen and resident of Camden, North Carolina.  In 2020, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, in the state of Virginia, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

22. Plaintiffs Brittany Bennett is a natural person and is a citizen and resident of Battle Creek, Michigan. In 2006-2007 and 2019-2020, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, snacks, to go foods, and lunch time meals, in the state of Michigan, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

23. Plaintiffs Kelsey Blankenship is a natural person and is a citizen and resident of Union City, Tennessee. In 2020-2021, Plaintiffs purchased Hain baby foods, including but not limited to oatmeal, fruits, and vegetables, in the states of Tennessee and Nevada, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

24. Plaintiffs Melissa Bloomquist-Smith is a natural person and is a citizen and resident of Camillus, New York. In 2016-2020, Plaintiffs purchased Hain baby foods, including but not limited to fruits and vegetables, in the state of New York, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

25. Plaintiffs Cristen Boles is a natural person and is a citizen and resident of Birmingham, Alabama. In 2013-2018, Plaintiffs purchased Hain baby foods, including but not limited to fruits and vegetables, in the state of Alabama, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.

Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

26.     Plaintiffs Olivia Boyer is a natural person and is a citizen and resident of Odenville, Alabama. In 2017, 2018, 2020 and 2021, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, oatmeal, fruits and vegetables, in the states of Alabama and Florida, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

27.     Plaintiffs Crystal Brining is a natural person and is a citizen and resident of Greenfield, Minnesota.  In 2015-2018, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, fruits, and vegetables, in the state of Minnesota, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

28.     Plaintiffs Augustina Briones is a natural person and is a citizen and resident of Crosby, Tennessee.  In 2018-2020, Plaintiffs purchased Hain baby foods, in the states of Tennessee and Texas, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

29.     Plaintiffs Camarie Broomfield is a natural person and is a citizen and resident of Mobile, Alabama.  In 2017-2019, Plaintiffs purchased Hain baby foods, in the states of Arizona and Colorado, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the

presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

30.     Plaintiffs Ana Butkus is a natural person and is a citizen and resident of Louisville, Kentucky. In 2020-2021, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, oatmeal, puffs, fruits, and vegetables, in the state of Kentucky, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

31.     Plaintiffs Jordan Cantafio is a natural person and is a citizen and resident of Sault Sainte Marie, Michigan. In 2019-2021, Plaintiffs purchased Hain baby foods in the state of Michigan, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

32.     Plaintiffs Mayelin Carranza is a natural person and is a citizen and resident of Crete, Nebraska. In 2014-2021, Plaintiffs purchased Hain baby foods, in the state of Nebraska, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

33.     Plaintiffs Anna Chase is a natural person and is a citizen and resident of Tacoma, Washington. In 2004, 2010, 2012, 2014, and 2018, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, and meats, in the state of Washington, to feed her child(ren). Plaintiffs made those purchases without knowledge of the

presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

34. Plaintiffs Sheral Shah Chheda is a natural person and is a citizen and resident of Gering, Nebraska. Plaintiffs purchased Hain baby foods, in the states of Colorado, Florida, Louisiana, and Nebraska, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

35. Plaintiffs Melanie Cole is a natural person and is a citizen and resident of St. Louis, Missouri. In 2013-2019, Plaintiffs purchased Hain baby foods, including but not limited to fruits and vegetables, in the state of Missouri, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

36. Plaintiffs Jen Comeau is a natural person and is a citizen and resident of Lagrange, Maine. In 2020-2021, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, chicken, lil' mixtures, Hawaiian delight, and custard, in the state of Maine, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

37. Plaintiffs Michelle Corbett is a natural person and is a citizen and resident of Paragon, Indiana. In 2019 Plaintiffs purchased Hain baby foods, including but not limited to cereals, fruits and vegetables, in the state of Indiana, to feed her child(ren). Plaintiffs made those

purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

38.     Plaintiffs Angela Cox is a natural person and is a citizen and resident of Pueblo, Colorado. In 2015-2017 and 2020-2021, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, fruits and vegetables, in the states of Colorado and Oregon, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

39.     Plaintiffs Brandy Davis is a natural person and is a citizen and resident of Thompsonville, Illinois. In 2015-2016, Plaintiffs purchased Hain baby foods, including but not limited to fruits, vegetables, puffs, yogurt melts, teethers, and lil' crunchies, in the state of Illinois, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

40.     Plaintiffs Chelzy Desvigne is a natural person and is a citizen and resident of Biloxi, Mississippi. In 2017-2021, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, oatmeal, fruits, and vegetables in the states of Mississippi, California, Georgia, and Washington to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

41.     Plaintiffs Brittany Distaso is a natural person and is a citizen and resident of Macomb, Michigan. In 2019-2020, Plaintiffs purchased Hain baby foods, including but not limited

to oatmeal, puffs, fruits, and vegetables, in the states of New Jersey and Maryland, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

42. Plaintiffs Sudipta Dutta is a natural person and is a citizen and resident of Lagrangeville, New York. In 2016 and 2020-2021, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, oatmeal, puffs, and vegetables, in the state of New York, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

43. Plaintiffs Natalya Dzyuba is a natural person and is a citizen and resident of Blaine, Minnesota. In 2005-2008, 2012-2013, 2017, and 2019-2021, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, oatmeal, whole grain cereal, fruits, vegetables, snacks and yogurt, in the states of Minnesota, Florida, and Nebraska, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

44. Plaintiffs Samantha Edwards is a natural person and is a citizen and resident of Oak Creek, Wisconsin. In 2017-2019, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, oatmeal, and fruits, in the state of Wisconsin, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

45.    Plaintiffs Ayame Tatiana Galassini is a natural person and is a citizen and resident of Roswell, New Mexico.  In 2018-2021, Plaintiffs purchased Hain baby foods, including but not limited to fruits, vegetables, and teethers, in the state of New Mexico, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

46.    Plaintiffs Marcela Garcia is a natural person and is a citizen and resident of Henderson, Colorado.  In 2019-2021, Plaintiffs purchased Hain baby foods, including but not limited to oatmeal, fruits, vegetables, snack puffs, pasta pick-ups, lil' entrees, arrowroot cookies, and turkey sausage, in the state of Colorado, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

47.    Plaintiffs Shelby Geraci is a natural person and is a citizen and resident of Mechanicville, New York.  In 2018-2020, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal and 2nd stage foods, in the state of New York, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

48.    Plaintiffs Kristian Germain is a natural person and is a citizen and resident of Bluffton, South Carolina.  In 2009-2013 and 2016-2021, Plaintiffs purchased Hain baby foods in the states of South Carolina, Florida, and Louisiana, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had

Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

49.    Plaintiffs Austin Gundersen is a natural person and is a citizen and resident of Riverton, Utah.  In 2018-2021, Plaintiffs purchased Hain baby foods, in the state of Utah, to feed his child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods he purchased contained heavy metals, he would not have purchased them.

50.    Plaintiffs Shannon Herrington is a natural person and is a citizen and resident of Fort Scott, Kansas.  In 2011-2012, 2015, and 2018, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, fruits, and vegetables, in the states of California and Kansas, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

51.    Plaintiffs Amanda Hobbs-Rogers is a natural person and is a citizen and resident of Stanwood, Washington.  In 2015-2020, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, fruits, and vegetables, in the states of Oklahoma, Texas, Washington, and Wisconsin, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

52.    Plaintiffs Sammi Hobdy is a natural person and is a citizen and resident of Florala, Alabama.  In 2007-2008 and 2019-2020, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, fruits, and vegetables, in the states of Alabama, Florida, and Georgia to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals

in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

53. Plaintiffs Yuhwa Jang is a natural person and is a citizen and resident of Henderson, Nevada. In 2019-2021, Plaintiffs purchased Hain baby foods, including but not limited to cereals, in the states of Georgia and Nevada, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

54. Plaintiffs Olivia Johnson is a natural person and is a citizen and resident of Marietta, Ohio. In 2010, 2012-2013, and 2019-2020, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, oatmeal, barley cereal, puffs, teething biscuits, yogurt melts, and stage 1-3 foods, in the states of Ohio, West Virginia, and Florida, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

55. Plaintiffs Heather Key is a natural person and is a citizen and resident of Granite Falls, North Carolina. In 2015-2021, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, fruits, and vegetables, in the state of North Carolina, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

56. Plaintiffs Sara Kilburn is a natural person and is a citizen and resident of Muscatine, Iowa. In 2020-2021, Plaintiffs purchased Hain baby foods, including but not limited to oatmeal,

puffs, fruits, and vegetables, in the states of Iowa and Pennsylvania, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

57. Plaintiffs Sarah Knaapen is a natural person and is a citizen and resident of Sturgeon Bay, Wisconsin. In 2017-2018 and 2020-2021, Plaintiffs purchased Hain baby foods, including but not limited to puffs, fruits, and vegetables, in the state of Wisconsin, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

58. Plaintiffs Rachel Knudson is a natural person and is a citizen and resident of College Station, Texas. In 2014-2017, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, whole wheat cereal, oatmeal, fruits, vegetables, lil' crunchies, yogurts, arrowroot cookies, lil' meals, and meats, in the states of Texas and Pennsylvania, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

59. Plaintiffs Sarah Kohn is a natural person and is a citizen and resident of Bonduel, Wisconsin. In 2012-2013, Plaintiffs purchased Hain baby foods, including but not limited to fruits and vegetables, in the state of Florida, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

60.     Plaintiffs Karleen Kozaczka is a natural person and is a citizen and resident of Pawtucket, Rhode Island.  In 2018-2021, Plaintiffs purchased Hain baby foods, including but not limited to oatmeal and fruits, in the states of Massachusetts, New Hampshire, and Rhode Island to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

61.     Plaintiffs Rachael Kruup is a natural person and is a citizen and resident of Bryant, South Dakota.  In 2019-2020, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, meats, rice snacks, and yogurt, in the states of North Dakota, Pennsylvania, and South Dakota, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

62.     Plaintiffs Deana Linegar is a natural person and is a citizen and resident of Dearborn, Michigan.  In 2013-2015 and 2018-2020, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, oatmeal, fruits, and vegetables, in the state of Michigan, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

63.     Plaintiffs April Lockhart is a natural person and is a citizen and resident of Albuquerque, New Mexico.  In 2012-2018, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, in the state of California, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had

Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

64.     Plaintiffs Lori Ann Louis is a natural person and is a citizen and resident of Fall River, Massachusetts.  In 2006-2007, 2010-2011, and 2020-2021, Plaintiffs purchased Hain baby foods, including but not limited to oatmeal, fruits and vegetables, in the states of Connecticut, Massachusetts, New York and Rhode Island, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

65.     Plaintiffs Traci Marie Lussier is a natural person and is a citizen and resident of Middlebury, Vermont.  In 2002-2003, 2008-2009, and 2017-2018, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, oatmeal, fruits, and vegetables, in the state of Vermont, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

66.     Plaintiffs Marquetta Matthews is a natural person and is a citizen and resident of Durham, North Carolina.  In 2009-2010 and 2013-2020, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, oatmeal, fruits, and vegetables, in the state of North Carolina, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

67.     Plaintiffs Elizabeth McDowell is a natural person and is a citizen and resident of Cullman, Alabama.  In 2007-2019, Plaintiffs purchased Hain baby foods, including but not limited

to fruits, in the states of Alabama and Tennessee, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

68.  Plaintiffs Kali McGlinch is a natural person and is a citizen and resident of Fillmore, Utah.  In 2020-2021, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, oatmeal, puffs, fruits, vegetables, meats, mac and cheese, teething snacks, and cookies, in the states of Ohio and Utah, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

69.  Plaintiffs Lori-Ann Mckenzie-Henry is a natural person and is a citizen and resident of Upper Marlboro, Maryland.  In 2020-2021, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, fruits, vegetables, and yogurt, in the district of Washington, D.C., to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

70.  Plaintiffs Lyrik Merlin is a natural person and is a citizen and resident of Grantham, New Hampshire.  In 2014-2020, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, fruits, and meats, in the states of New Hampshire, Vermont, and Massachusetts, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

71.     Plaintiffs Renee Milline is a natural person and is a citizen and resident of Houston, Alaska.  In 2014-2015 and 2015-2018, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, puffs, fruits, vegetables, step meals and snacks, in the state of Alaska, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

72.     Plaintiffs Loukevia Moore is a natural person and is a citizen and resident of Westwego, Louisiana.  In 1999-2021, Plaintiffs purchased Hain baby foods, including but not limited to fruits, in the states of Alabama and Florida, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

73.     Plaintiffs Amanda Morency is a natural person and is a citizen and resident of Clinton Township, Michigan.  In 2006, 2012, 2015, and 2018, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, oatmeal, fruits, and vegetables, in the state of Michigan, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

74.     Plaintiffs Leah Ostapchenko is a natural person and is a citizen and resident of Leesburg, Georgia.  In 2019-2021, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, meats, and lil' meals, in the state of Georgia, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in

Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

75.     Plaintiffs Corinthea Pangelinan is a natural person and is a citizen and resident of Bisbee, Arizona. In 2010-2013, Plaintiffs purchased Hain baby foods, including but not limited to fruits and vegetables, in the states of California, Oregon, Washington, and Arizona, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

76.     Plaintiffs Jo-Ellen Paterno is a natural person and is a citizen and resident of Warwick, Rhode Island. In 2012-2021, Plaintiffs purchased Hain baby foods, including but not limited to fruits and vegetables, in the states of Rhode Island, New Hampshire, and Massachusetts, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

77.     Plaintiffs Mia Pelletier is a natural person and is a citizen and resident of Limestone, Maine. In 2016-2020, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, fruits, and vegetables, in the state of Maine, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

78.     Plaintiffs Karina Pena is a natural person and is a citizen and resident of Newberg, Oregon. In 2009-2012 and 2019-2021, Plaintiffs purchased Hain baby foods, including but not limited to solid foods, yogurts, and cookies, in the state of Oregon, to feed her child(ren). Plaintiffs

made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

79. Plaintiffs Holly Plotts is a natural person and is a citizen and resident of Baltimore, Maryland. In 2001-2002, 2012-2013, and 2016-2017, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, turkey, chicken, and yogurt, in the state of Maryland, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

80. Plaintiffs Janinne Price is a natural person and is a citizen and resident of Ninilchik, Alaska. In 2009-2021, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, oatmeal, puffs, cereal bars, all varieties of pouch and jarred foods, and rice teethers, in the state of Alaska, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

81. Plaintiffs Debbie Reed is a natural person and is a citizen and resident of Franklin, New Hampshire. In 2016-2021, Plaintiffs purchased Hain baby foods, including but not limited to fruits and vegetables, in the state of New Hampshire, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

82.    Plaintiffs Sarah Ridings is a natural person and is a citizen and resident of Villa Ridge, Missouri.  In 2003, 2005-2008, 2016, and 2021, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, oatmeal, fruits, and vegetables, in the state of Missouri, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

83.    Plaintiffs Kassandra Romero is a natural person and is a citizen and resident of Rock Springs, Wyoming.  In 2020 and 2021 Plaintiffs purchased Hain baby foods, including but not limited to cereal, oatmeal, fruits, and vegetables, in the state of Wyoming to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

84.    Plaintiffs Maggie Rouse is a natural person and is a citizen and resident of Cheyenne, Wyoming.  In 2012-2015, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, fruits, and vegetables, in the states of California and Wyoming, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

85.    Plaintiffs Tiffany Salazar is a natural person and is a citizen and resident of Bullhead City, Arizona.  In 2017 and 2020, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal and turkey, in the states of Arizona and California, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's

baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

86.     Plaintiffs Bridget Salopek is a natural person and is a citizen and resident of Las Cruces, New Mexico.  In 2018-2021, Plaintiffs purchased Hain baby foods, including but not limited to fruits, vegetables, and meats, in the states of New Mexico, California, Texas, and Arizona, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

87.     Plaintiffs Lea Santos is a natural person and is a citizen and resident of Stroudsburg, Pennsylvania.  In 2020-2021, Plaintiffs purchased Hain baby foods, including but not limited to fruits, vegetables, teethers, and meats, in the state of Pennsylvania, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

88.     Plaintiffs Amanda Schram is a natural person and is a citizen and resident of Rock Hill, South Carolina.  In 2019-2020, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, oatmeal, fruits, and vegetables, in the states of South Carolina and North Carolina, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

89.     Plaintiffs Brenda Schroeder is a natural person and is a citizen and resident of Browns Mills, New Jersey.  In 2020-2021, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, oatmeal, multigrain cereal, fruits, and vegetables, in the state of New Jersey,

to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

90.     Plaintiffs Kinder Smith is a natural person and is a citizen and resident of Gallatin, Tennessee.  In 2008-2011 and 2014-2017, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, meats, and juices in the state of Tennessee, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

91.     Plaintiffs Rachel Stratton is a natural person and is a citizen and resident of Tinmouth, Vermont.  In 2018-2021, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal and fruits, in the state of Vermont, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

92.     Plaintiffs Ashley Swenningson is a natural person and is a citizen and resident of Hazen, North Dakota.  In 2009-2021, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, meats, rice snacks, and yogurt, in the state of North Dakota, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

93.     Plaintiffs Margo Tezeno is a natural person and is a citizen and resident of Opelousas, Louisiana.  In 2010-2021, Plaintiffs purchased Hain baby foods, including but not

limited to rice cereal, barley cereal, fruits, vegetables, Hawaiian delight, chicken, turkey, and entrees, in the states of Louisiana and Florida, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

94. Plaintiffs Shiloh Thomas is a natural person and is a citizen and resident of Gatesville, Texas. In 2021, Plaintiffs purchased Hain baby foods, including but not limited to oatmeal, fruits, vegetables, and pick-ups, in the state of Texas, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

95. Plaintiffs Katrina Thomas is a natural person and is a citizen and resident of Dover, Delaware. In 2013-2018, Plaintiffs purchased Hain baby foods, including but not limited to fruits and vegetables, in the states of Delaware, Maryland and Virginia, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

96. Plaintiffs Rhianna Thorton is a natural person and is a citizen and resident of Waycross, Georgia. In 2020-2021, Plaintiffs purchased Hain baby foods, including but not limited to fruits rice puffs, fruits, and vegetables, in the states of Georgia and Florida, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

97.     Plaintiffs Casey Tisdale is a natural person and is a citizen and resident of Beaverton, Alabama.  In 2009-2011 and 2014-2018, Plaintiffs purchased Hain baby foods, including but not limited to fruits cereal, fruits, and vegetables, in the states of Alabama, Mississippi, Florida, and Tennessee, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

98.     Plaintiffs Rachael Treetop is a natural person and is a citizen and resident of Bismarck, North Dakota.  In 2015-2019, Plaintiffs purchased Hain baby foods in the states of Minnesota and North Dakota, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

99.     Plaintiffs Sonja Renee Twiggs is a natural person and is a citizen and resident of Sandpoint, Idaho.  In 2008-2021, Plaintiffs purchased Hain baby foods, in the states of Idaho, Montana, and Washington, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

100.     Plaintiffs Monique Warren is a natural person and is a citizen and resident of Norwich, Connecticut.  In 2017-2019, Plaintiffs purchased Hain baby foods, including but not limited to cereals, vegetables and meals, in the states of Connecticut and Oklahoma, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in

Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

101.    Plaintiffs Beverly Watkins is a natural person and is a citizen and resident of Burlington, North Carolina.  In 2011, 2013, and 2020-2021, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, meats, Hawaiian delight, mac n cheese, barley bowls, lil' crunchies, grain bars, teether wheels, toddler snacks, lil' biscuits, yogurt melts, and arrowroot cookies, in the state of North Carolina, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

102.    Plaintiffs Natalie Williams is a natural person and is a citizen and resident of Kansas City, Missouri.  In 2020-2021, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, fruits, and vegetables, in the state of Missouri, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

103.    Plaintiffs Retrena Younge is a natural person and is a citizen and resident of Little Rock, Arkansas.  In 1998, 2014-2016, 2018, and 2020-2021, Plaintiffs purchased Hain baby foods, including but not limited to rice cereal, ham, beef and chicken, in the state of Arkansas, to feed her child(ren).  Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

104. Plaintiffs Charisse Zapata is a natural person and is a citizen and resident of Branchville, New Jersey. In 2021, Plaintiffs purchased Hain baby foods, including but not limited to fruits and vegetables, in the state of New Jersey, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

105. Plaintiffs Christen Zulli is a natural person and is a citizen and resident of Hilo, Hawaii. In 2016-2021, Plaintiffs purchased Hain baby foods, including but not limited to fruits and vegetables, in the states of Hawaii and California, to feed her child(ren). Plaintiffs made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiffs known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

## JURISDICTION AND VENUE

106. This Court has original subject-matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d). Plaintiffs bring this civil action seeking to represent a class of more than 100 plaintiffs ("Class", "Classes", or "Subclass"), pursuant to Fed. R. Civ. P. 23. The amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs. At all times relevant herein, at least one member of the proposed Class of plaintiffs is a citizen of a state different from the defendant.

107. As its principal place of business, Hain is at home in the State of New York, giving the Court general personal jurisdiction over it.

108. Moreover, Hain has intentionally availed itself of the New York market, by regularly marketing and advertising its products there and purposefully selling to distributors with

the intent those products be sold in New York giving sufficient connection between Hain's contacts with the state and this litigation to provide the Court specific personal jurisdiction over Hain.

109.    Venue is proper in this district under 28 U.S.C. §1391(b). A substantial part of the events giving rise to plaintiffs' claims, namely the sale and purchase of baby food contaminated with toxic heavy metals, occurred in this District.

## FACTS RELEVANT TO ALL COUNTS

110.    Toxic heavy metals generally refer to naturally occurring metals and semi-metallic compounds and elements that negatively affect human health. Toxic heavy metals include arsenic, beryllium, cadmium, lead, and mercury.

111.    There is no established health benefit for the consumption of mercury, cadmium, lead or arsenic and foods containing them are unfit for consumption. The poisonous effects of toxic heavy metals have been known for thousands of years.

112.    Some of the well-known effects of exposure to arsenic, beryllium, cadmium, lead, and mercury include: cancer, encephalopathy (brain disfunction), osteomalacia (softening of bones), pulmonary fibrosis, diabetes, autism, and attention deficit/hyperactivity disorder.

113.    Babies' developing brains are exceptionally sensitive to injury caused by these toxic heavy metals, and several developmental processes have been shown to be highly vulnerable to chemical toxicity.

114.    Even low levels of exposure to toxic heavy metals can cause serious and often irreversible damage to brain development leading to permanent decreases in IQ, diminished future economic productivity, and increased risk of future criminal and antisocial behavior. As a result, there is no established safe level of toxic heavy metals for babies. Any amount is too much.

115.    Although not generally known by the general public, toxic heavy metals can contaminate foods in the growing process when the food is grown in contaminated soil or watered with contaminated water.

116.    Therefore, it is important that food ingredients are grown in soil and watered with water that are free of these contaminants.

117.    However, even when a grower fails to take the necessary steps to prevent contamination of food ingredients with heavy metals through soil or water exposures, various techniques can be used to remediate the contamination. For example, studies have shown that simply washing rice before it is cooked can reduce the arsenic concentration by 57%. Boiling vegetables in distilled water can reduce the arsenic concentration by 60%. Peeling beets, carrots, and potatoes also reduces arsenic levels. Chelating agents can also be used for the removal of heavy metals from foods.

118.    On February 4, 2021, the Subcommittee on Economic and Consumer Policy Committee on Oversight and Reform of the U.S. House of Representatives released a staff report ("House Staff Report") which detailed an investigation that revealed that Defendant's baby foods were contaminated with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury. The House Staff Report is attached as Exhibit 1 and incorporated herein.

119.    Hain sold finished baby food products containing as much as 129 ppb inorganic arsenic. Hain used ingredients testing as high as 309 ppb arsenic.

120.    In 100% of Hain baby products tested, inorganic arsenic levels were higher in the finished baby food than the company estimated they would be based on individual ingredient testing. Inorganic arsenic was between 28% and 93% higher in finished products.

121. Hain used ingredients containing as much as 352 ppb lead. Hain used many ingredients with high lead content, including 88 that tested over 20 ppb lead and 6 that tested over 200 ppb lead. Hain accepted 115 ingredients that registered at or over 15 ppb—EPA's action level for drinking water. And at least 27% of Hain ingredients tested at or over 5 ppb lead, FDA's standard for lead in bottled water. None of the test results showed an ingredient below 1 ppb lead, which should be the upper limit for lead content according to the health experts at Consumer Reports, the Environmental Defense Fund, and the American Academy of Pediatrics.

122. Hain used 102 ingredients in its baby food that tested over 20 ppb cadmium—the EU's lax upper limit. Hain used 14 ingredients that contained more than 100 ppb cadmium, including barley flour that registered at 260 ppb cadmium, which is 13 times the EU's lax upper limit on cadmium in baby food. Some tested much higher, up to 260 ppb cadmium.

123. Hain does not even test for mercury in its baby food.

124. Hain regularly tests the ingredients it uses to manufacture its baby foods, but Hain rarely tests its finished products.

125. Hain set an internal standard of 200 ppb arsenic for 12 ingredients, most of which were different kinds of flours. By setting this high internal standard, Hain justified accepting wheat flour and rice that contained 200 and 150 ppb arsenic.

126. Similarly, Hain set an internal limit of 200 ppb for lead in five ingredients—forty times higher than FDA's guidance for bottled water. By doing so, Hain justified accepting lentil flour with 110 ppb lead and quinoa flour with 120 ppb lead. These surpass every existing regulatory standard for lead.

127.   Hain used four products that surpassed its internal toxic heavy metal limits.  For example, it accepted cinnamon that contained 102 ppb cadmium, vitamin pre-mix that had 223 ppb arsenic and 353 ppb lead, and two rice flours that had 134 and 309 ppb arsenic.  Despite having dangerously high levels of toxic heavy metals, Hain approved the use of this vitamin pre-mix based on a "theoretical" calculation of toxic heavy metals in the final good.

128.   However, it is not clear that Hain ever tested the finished good.  Hain appears to have used this vitamin pre-mix with dangerously high levels of toxic heavy metals without ever confirming the finished good was actually safe to consume.

129.   Despite knowingly manufacturing and selling baby foods that contain toxic heavy metals, Defendant did not disclose these facts to consumers through any of its branding, advertising, or labeling.

130.   Defendant did not disclose the presence of toxic heavy metals in its baby foods with the intent that Plaintiffs and Class members would purchase its baby foods as they knew the presence of toxic heavy metals was material to purchasers of baby foods, including Plaintiffs and Class members, and that Plaintiffs and Class members would not purchase its baby foods if they knew that Defendant knowingly sold baby foods containing toxic heavy metals.

131.   Plaintiffs and Class members purchased the baby foods at issue herein for its use or that of members of its households.

132.   At all times material hereto, Defendant was a merchant of baby food and engaged in the advertising, offering for sale, sale, and/or distribution of goods, namely baby food.

133.   Defendant's acts or practices were likely to cause, and did cause, substantial injury to consumers.

134. Defendant's acts or practices were likely to mislead a reasonable consumer, and did mislead Plaintiffs and Class members.

135. Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's baby foods or would have paid less for those products.

136. Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

137. The injuries caused by Defendant's acts or practices, namely consumers' monetary losses, are not outweighed by any countervailing benefit to consumers or competition. Defendant's unfair acts served no purpose other than to increase its own profits.

138. Plaintiffs and Class members' injuries were not reasonably avoidable. Because Defendant was the sole source of material information and did not disclose such information to its customers, consumers could not have had reason to anticipate the impending harm and thus avoided their injuries.

## CLASS ACTION ALLEGATIONS

139. Plaintiffs bring this action individually and on behalf of the following Class pursuant to Fed. R. Civ. P. 23(b)(3): All retail purchasers of Defendant's Baby Food sold in the United States from within the applicable statute of limitations until February 4, 2021.

140. Plaintiffs also bring this action on behalf of state Subclasses consisting of all retail purchasers of Defendant's Baby Food sold in that state from within the applicable statute of limitations until February 4, 2021.

141.    Specifically excluded from each Class are: Defendant's employees and agents; any Judge conducting proceedings in this action and its parents, spouses and children as well as any other member of its family residing in the judge's household; counsel of record in this action and its parents, spouses and children as well as any other member of its family residing in Counsel's household; and the legal representatives, heirs, successors and assigns of any excluded person.

142.    The exact number of the members of the Class (or Subclasses) is not presently known, but is so numerous that joinder of individual members is this action is impracticable. Based on the nature of the activities alleged, Plaintiffs believe that the members of the Class number in the millions and are geographically dispersed throughout the United States.

143.    Plaintiffs are members of the Class, and Plaintiffs' claims are typical of the claims of the other Class members. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs understand and appreciate its duties to the Class and Subclass and are committed to vigorously protecting the rights of absent members of the Class and Subclass.

144.    Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Class. The claims of all members of the Class, including Plaintiffs, depend upon a showing that Defendant sold baby food contaminated with toxic heavy metals.

145.    Plaintiffs are represented by counsel who are competent and experienced in the prosecution of class action litigation.

146.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendant.

147.    The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members.

148.    Common issues of law and fact include, but are not limited to, the following:

    a.  Did Defendant sell baby food contaminated with toxic heavy metals?

    b.  Did Defendant's testing reveal the presence of toxic heavy metals in its baby food ingredients?

    c.  Does the presence of toxic heavy metals make baby food unfit for consumption?

    d.  Is the presence of toxic heavy metals material to reasonable consumers of baby foods?

    e.  Did Defendant disclose the presence of toxic heavy metals in its baby foods?

149.    A class action is superior to the other available methods for the fair and efficient adjudication of this controversy.  The prosecution of separate actions by individual members of the Class would impose heavy burdens on the courts and Defendant and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class.  A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.  Absent a class action, it would not be feasible for the vast majority of the members of the Class to seek redress for the violations of law alleged herein.

150.    This class action presents no difficulties in management that would preclude its maintenance as a class action.

### COUNT 1
### Breach of Implied Warranty of Merchantability
### on Behalf of Plaintiffs and the Nationwide Class

151.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

152.     Plaintiffs bring this Count individually and on behalf of the members of the Nationwide Class against Defendant.

153.     The Magnuson-Moss Warranty Act creates a private right of action for any consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under the Act or under a written warranty, implied warranty, or service contract. 15 U.S.C. §2310(d)(1).

154.     At all times relevant hereto, Defendant was engaged in the sale of toxic baby food, as described herein, throughout the United States, including Virginia, for use by members of the general public, including Plaintiffs and the members of the Class with the intent that it be used as food for babies.

155.     At all times relevant hereto, Defendant manufactured its toxic baby food and placed it in sealed packaging to be opened by the ultimate consumer and fed to human babies.

156.     In so doing, Defendant impliedly warranted that the toxic baby food sold to Plaintiffs and the Class was wholesome, uncontaminated and fit for the ordinary purpose for which such goods are used, i.e., feeding babies.

157.     When sold by Defendant, the package was expected to reach the ultimate consumer without substantial change in the condition in which it was sold, and it did, in fact, reach its ultimate consumer without substantial change.

158.     Plaintiffs used Defendant's toxic baby foods to feed their children as intended by Defendant.

159.     The toxic baby food sold by Defendant was not wholesome, uncontaminated or fit for human consumption at the time of sale due to the presence of toxic heavy metals.

160. Defendant had actual knowledge of its breaches of warranty set forth above as they routinely measure the amount of heavy metals in the ingredients of its toxic baby foods.

161. Plaintiffs provided Defendant with pre-suit notice of its breaches of warranty by sending a certified letter to Defendant containing the basis of Plaintiffs' claims. Notice was received by Defendant on or about March 24, 2021.

162. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and the other members of the Class have suffered damages in the amount of the sales price of the toxic baby food.

163. As a result of Defendant's breach of warranty, Plaintiffs and Class members suffered actual damages in that (1) the actual value of the merchandise they received was less than the value of the merchandise they bargained for denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b. Designating Plaintiffs as Class representative and counsel as Class counsel;

c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d. Awarding Plaintiffs and Class members damages; and

e. Granting such further relief as the Court deems just.

## COUNT 2
### Magnuson-Moss Warranty Act (25 U.S.C. §§2301, *et seq*.), on Behalf of Plaintiffs and the Nationwide Class

164.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

165.    Plaintiffs bring this Count individually and on behalf of the members of the nationwide Class against Defendant.

166.    At all times relevant hereto, Defendant was engaged in the sale of toxic baby food, as described herein, throughout the United States, including Virginia, for use by members of the general public, including Plaintiffs and the members of the Class with the intent that it be used as food for babies.

167.    At all times relevant hereto, Defendant manufactured its toxic baby food and placed it in sealed packaging to be opened by the ultimate consumer and fed to human babies.

168.    Defendant's toxic baby foods are goods that are normally purchased for personal, family or household purposes.

169.    Plaintiffs and Class members purchased Defendant's toxic baby food for consumption by babies in its care. Plaintiffs have each purchased more than $5 of Defendant's toxic baby food and their individual claims exceed $25.

170.    In connection with the sale of its toxic baby foods, Defendant made written affirmations of fact directed to Plaintiffs and Class members relating to the nature of the material and affirming that such material is defect free or will meet a specified level of performance over a specified period of time.

171.    Defendant represented through its marketing and labeling that its toxic baby foods were fit for consumption.

172.   However, due to the presence of toxic heavy metals, Defendant's toxic baby foods were not fit for consumption.

173.   Plaintiffs relied on Defendant's representations that its toxic baby foods were fit for consumption and these representations were part of the basis of the bargain.

174.   Plaintiffs and Class members were injured as a direct and proximate cause of Defendant's breach of warranty.  Plaintiffs and members of the Class have been harmed because they would not have purchased the toxic baby food had they known it was unfit for consumption.

175.   Defendant had actual knowledge of its breaches of warranty set forth above as they routinely measure the amount of heavy metals in the ingredients of its toxic baby foods.

176.   Plaintiffs provided Defendant with pre-suit notice of its breaches of warranty by sending a certified letter to Defendant containing the basis of Plaintiffs' claims.  Notice was received by Defendant on or about March 24, 2021.

177.   As a direct and proximate result of Defendant's breach of warranty, Plaintiffs and the other members of the Class have suffered damages in the amount of the sales price of the toxic baby food.

178.   As a result of Defendant's breach of warranty, Plaintiffs and Class members suffered actual damages in that (1) the actual value of the merchandise they received was less than the value of the merchandise they bargained for denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b. Designating Plaintiffs as Class representative and counsel as Class counsel;

c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d. Awarding Plaintiffs and Class members damages; and

e. Granting such further relief as the Court deems just.

## COUNT 3
### Breach of Express Warranty
### on Behalf of Plaintiffs and the Nationwide Class

179.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

180.    Plaintiffs bring this Count individually and on behalf of the members of the nationwide Class against Defendant.

181.    At all times relevant hereto, Defendant was engaged in the sale of toxic baby food, as described herein, throughout the United States, including Illinois, for use by members of the general public, including Plaintiffs and the members of the Class with the intent that it be used as food for babies.

182.    At all times relevant hereto, Defendant manufactured its toxic baby food and placed it in sealed packaging to be opened by the ultimate consumer and fed to human babies.

183.    When sold by Defendant, the package was expected to reach the ultimate consumer without substantial change in the condition in which it was sold, and it did, in fact, reach its ultimate consumer without substantial change.

184.   The toxic baby food sold by Defendant did not conform to Defendant's representations and warranties in that it was not wholesome, uncontaminated or fit for human consumption due to the presence of toxic heavy metals.

185.   Defendant had actual knowledge of its breaches of warranty set forth above as they routinely measure the amount of heavy metals in the ingredients of its toxic baby foods.

186.   Plaintiffs provided Defendant with pre-suit notice of its breaches of warranty by sending a certified letter to Defendant containing the basis of Plaintiffs' claims.  Notice was received by Defendant on or about March 24, 2021.

187.   As a direct and proximate result of Defendant's breach of warranty, Plaintiffs and the other members of the Class have suffered damages in the amount of the sales price of the toxic baby food.

188.   As a result of Defendant's breach of warranty, Plaintiffs and Class members suffered actual damages in that (1) the actual value of the merchandise they received was less than the value of the merchandise they bargained for denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

    a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

    b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

    c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

    d.   Awarding Plaintiffs and Class members damages; and

    e.   Granting such further relief as the Court deems just.

## COUNT 4
### Violation of the Alabama Deceptive Trade Practices Act—Deception (Ala. Code §§8-19-1, *et seq.*), on Behalf of Plaintiffs Cristen Boles, Olivia Boyer, Sammi Hobdy, Elizabeth McDowell, Loukevia Moore, Casey Tisdale, and the Alabama Subclass

189.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

212.    Plaintiffs Cristen Boles, Olivia Boyer, Sammi Hobdy, Elizabeth McDowell, Loukevia Moore, and Casey Tisdale bring this Count individually and on behalf of the members of the Alabama Subclass.

213.    This claim is brought in the alternative to any common law claim for fraud, misrepresentation, deceit, suppression of material facts or fraudulent concealment arising out of any act, occurrence or transaction actionable under the Alabama Deceptive Trade Practices Act.

214.    At all relevant times, members of the Alabama Subclass were natural people who purchased Defendant's toxic baby food products detailed above for personal, family or household use.

215.    At all relevant times, Defendant was either natural persons or corporations, trusts, partnerships, incorporated or unincorporated associations or some other legal entity.

216.    The Alabama Deceptive Trade Practices Act declares that (1) passing off goods or services as those of another; (2) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (3) causing confusion or misunderstanding as to the affiliation, connection, or association with, or certification by another, provided that this section shall not prohibit the private labeling of goods or services; (4) using deceptive representations or designations of geographic origin in connection with goods or

services; (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have; (6) representing that goods are original or new if they are deteriorated, reconditioned, reclaimed, used, secondhand, or altered to the point of decreasing their value or rendering the goods unfit for the ordinary purpose for which they were purchased; (7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; (8) disparaging the goods, services, or business of another by false or misleading representation of fact; (9) advertising goods or services with intent not to sell them as advertised; (10) advertising goods or services with intent not to supply reasonably expectable public demand unless the advertisement discloses a limitation of quantity; (11) making a false or misleading statement of fact concerning the reasons for, existence of, or amounts of, price reductions; and (12) engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce; is unlawful. *See* Ala. Code §8-19-5.

217. The Alabama Deceptive Trade Practices Act further states that any person who commits one or more of the acts or practices declared unlawful under this chapter and thereby causes monetary damage to a consumer, shall be liable to each consumer for (1) any actual damages sustained by such consumer or person, or the sum of $100, whichever is greater; or (2) up to three times any actual damages. *See* Ala. Code §8-19-10.

218. Defendant, by and through its employees, agents, and/or servants, and in connection with its advertising and sale of its toxic baby food products detailed above, knowingly engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations above.

219.    Defendant knew that its statements were false or that its conduct was deceptive because, on information and belief, it routinely tested the raw ingredients used in its toxic baby foods as well as its finished toxic baby foods for the presence of toxic heavy metals.

220.    The facts that Defendant misrepresented, concealed, suppressed or omitted as alleged above were material, in that such facts are the type of information upon which a reasonable consumer is expected to rely in making a decision of whether to purchase Defendant's products.

221.    Defendant's misrepresentation, concealment, suppression and omission of material facts as alleged above creates a likelihood of deception and has the capacity to deceive a reasonable consumer.

222.    Defendant engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations above with the intent that Plaintiffs and Class members would rely on those deceptive and unfair acts and practices and induce Plaintiffs and Class members to purchase Defendant's products.

223.    Because the characteristics of Defendant's merchandise were not as represented, and those characteristics are material to a reasonable consumer of the type of merchandise, the value of that merchandise was less than the value of the merchandise would have had the merchandise actually possessed the characteristics that were represented.

224.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

225.    Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2)

Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

226.   Plaintiffs and Class members could not have avoided these injuries.   Because Defendant were the sole source of material information that Defendant failed to disclose, Plaintiffs and Class members could not have had reason to anticipate the impending harm and thus avoided their injuries.

227.   Plaintiffs provided Defendant pre-suit notice pursuant to Ala. Code §8-19-10(e) by sending a certified letter containing the basis of Plaintiffs' claims on April 13, 2021.  Notice was received by Defendant on or about April 19, 2021.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.   Entering injunctive relief against Defendant requiring that it cease its deceptive and unfair acts and practices and make corrective disclosures;

e.   Awarding Plaintiffs and Class their actual damages, or the sum of $100, whichever is greater; or up to three times their actual damages; and

f.   Granting such further relief as the Court deems proper.

## COUNT 5
**Violation of the Alabama Deceptive Trade Practices Act—Unconscionability (Ala. Code §§8-19-1, *et seq.*), on Behalf of Plaintiffs Cristen Boles, Olivia Boyer, Sammi Hobdy, Elizabeth McDowell, Loukevia Moore, Casey Tisdale, and the Alabama Subclass**

228.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

229.     Plaintiffs Cristen Boles, Olivia Boyer, Sammi Hobdy, Elizabeth McDowell, Loukevia Moore, and Casey Tisdale bring this Count individually and on behalf of the members of the Alabama Subclass.

230.     This claim is brought in the alternative to any common law claim for fraud, misrepresentation, deceit, suppression of material facts or fraudulent concealment arising out of any act, occurrence or transaction actionable under the Alabama Deceptive Trade Practices Act.

231.     At all relevant times, members of the Alabama Subclass were natural people who purchased Defendant's toxic baby food products detailed above for personal, family or household use.

232.     At all relevant times, Defendant was either a natural person or corporation, trust, partnership, incorporated or unincorporated association or some other legal entity.

233.     The Alabama Deceptive Trade Practices Act declares that engaging in unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce is unlawful.  *See* Ala. Code §8-19-5.

234.     The Alabama Deceptive Trade Practices Act further that any person who commits an unlawful practice under this chapter and thereby causes monetary damage to a consumer, shall be liable to each consumer for (1) Any actual damages sustained by such consumer or person, or the sum of $100, whichever is greater; or (2) Up to three times any actual damages. *See* Ala. Code §8-19-10.

235. Defendant, by and through its employees, agents, and/or servants, and in connection with its advertising and sale of toxic baby food products detailed above, knowingly engaged in deceptive and unconscionable acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations above.

236. Defendant knew that its statements were false or that its conduct was unconscionable because there was an absence of meaningful choice on Plaintiffs' part.

237. Defendant engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations above with the intent that Plaintiffs and Class members would rely on those deceptive and unfair acts and practices and induce Plaintiffs and Class members to purchase Defendant's products.

238. Because the characteristics of Defendant's merchandise were not as represented, and those characteristics are material to a reasonable consumer of the type of merchandise, the value of that merchandise was less than the value of the merchandise would have had the merchandise actually possessed the characteristics that were represented.

239. Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

240. Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

241.     Plaintiffs and Class members could not have avoided these injuries.   Because Defendant were the sole source of material information that Defendant failed to disclose, Plaintiffs and Class members could not have had reason to anticipate the impending harm and thus avoided their injuries.

242.     Plaintiffs provided Defendant pre-suit notice pursuant to Ala. Code §8-19-10(e) by sending a certified letter containing the basis of Plaintiffs' claims on April 13, 2021.  Notice was received by Defendant on or about April 19, 2021.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.   Entering injunctive relief against Defendant requiring that it cease its deceptive and unfair acts and practices and make corrective disclosures;

e.   Awarding Plaintiffs and Class their actual damages, or the sum of $100, whichever is greater; or up to three times their actual damages; and

f.   Granting such further relief as the Court deems proper.

### COUNT 6
**Violation of the Alaska Unfair Trade Practices and Consumer Protection Act**
**(Alaska Stat. §§45.50.471, *et seq.*), on Behalf of Plaintiffs Renee Milline, Janinne Price, and the Alaska Subclass**

244.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

245. Plaintiffs Renee Milline and Janinne Price bring this Count individually and on behalf of the members of the Alaska Subclass against all Defendant.

246. The Alaska Unfair Trade Practices and Consumer Protection Act ("Alaska UTPCPA") provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce are declared to be unlawful."

247. The Alaska UTPCPA further provides that (1) fraudulently conveying or transferring goods or services by representing them to be those of another; (2) falsely representing or designating the geographic origin of goods or services; (3) causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval, or another person's affiliation, connection, or association with or certification of goods or services; (4) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; (5) representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, secondhand, or seconds; (6) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; (7) disparaging the goods, services, or business of another by false or misleading representation of fact; (8) advertising goods or services with intent not to sell them as advertised; (9) advertising goods or services with intent not to supply reasonable expectable public demand, unless the advertisement prominently discloses a limitation of quantity; (10) making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; (11) engaging in any other conduct creating a likelihood of confusion or of misunderstanding and that misleads, deceives, or damages a buyer or a competitor in connection with the sale or advertisement of goods or services; and (12) using or employing deception, fraud,

false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived, or damaged; are unfair or deceptive acts or practices. *See* Alaska Stat. Ann. §45.50.471.

248.    The Alaska UTPCPA further provides that a person who suffers an ascertainable loss of money or property as a result of another person's act or practice may bring a civil action to recover for each unlawful act or practice three times the actual damages or $500, whichever is greater. *See* Alaska Stat. Ann. §45.50.531.  Any person who was the victim of the unlawful act, whether or not the person suffered actual damages, may bring an action to obtain an injunction prohibiting a seller or lessor from continuing to engage in an act or practice.

249.    Defendant, by and through its employees, agents, and/or servants, and in connection with its advertising, offering for sale, sale, and/or distribution of services in Alaska, engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations above.

250.    The facts that Defendant misrepresented, concealed, suppressed or omitted as alleged above were material, in that such facts are the type of information upon which a reasonable consumer is expected to rely in making a decision of whether to purchase Defendant's products.

251.    Defendant's misrepresentation, concealment, suppression and omission of material facts as alleged above creates a likelihood of deception and has the capacity to deceive a reasonable consumer.

252.    Defendant engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations

above with the intent that Plaintiffs and Class members would rely on those deceptive and unfair acts and practices and induce Plaintiffs and Class members to purchase Defendant's products.

253.   Because the characteristics of Defendant's merchandise were not as represented, and those characteristics are material to a reasonable consumer of the type of merchandise, the value of that merchandise was less than the value of the merchandise would have had the merchandise actually possessed the characteristics that were represented.

254.   Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

255.   Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise they bargained for denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

256.   Plaintiffs and Class members could not have avoided these injuries.  Because Defendant was the sole source of material information that Defendant failed to disclose, Plaintiffs and Class members could not have had reason to anticipate the impending harm and thus avoided their injuries.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

     a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

c.  Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.  Entering injunctive relief against Defendant requiring that it cease its deceptive and unfair acts and practices and make corrective disclosures;

e.  Awarding Plaintiffs and Class three times their actual damages, or the sum of $500, whichever is greater; reasonable attorneys' fees and costs; and

f.  Granting such further relief as the Court deems proper.

**COUNT 7**
**Violation of the Arizona Consumer Fraud Act (Ariz. Rev. Stat. Ann. §44-1521), on Behalf of Plaintiffs Camarie Broomfield, Corinthea Pangelinan, Tiffany Salazar, Bridget Salopek, and the Arizona Subclass**

257.  Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

258.  Plaintiffs Camarie Broomfield, Corinthea Pangelinan, Tiffany Salazar, and Bridget Salopek bring this Count individually and on behalf of the Arizona Subclass.

259.  Arizona's Consumer Fraud Act prohibits the "act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."

260.  At all relevant times, members of the Arizona Subclass and Defendant were either natural people or the person's legal representative, a partnership or domestic or foreign corporation, a company, trust, business entity or association or an agent, employee, salesman, partner, officer, director, member, stockholder, associate or trustee.

261.     Defendant willfully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with the sale and advertisement of "merchandise" in violation of Ariz. Rev. Stat. Ann. §44-1522(A) as described in the allegations above.

262.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Arizona Subclass.

263.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Arizona Subclass has little alternative but to submit and causes consumers substantial injury.

264.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

265.     The Arizona Subclass has suffered economic injury as a direct and proximate result of the Arizona Defendant's conduct.

266.     Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

267.     Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2)

Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

268.    As a direct and proximate result of the foregoing acts and practices, the Arizona Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

    a.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

    b.    Designating Plaintiffs as Class representative and counsel as Class counsel;

    c.    Entering judgment in favor of Plaintiffs and the Class and against Defendant;

    d.    Awarding Plaintiffs and Class members damages; and

    e.    Granting such further relief as the Court deems just.

## COUNT 8
**Violation of the Arkansas Deceptive Trade Practices Act (Ark. Code Ann. §§4-88-101, *et seq.*), on Behalf of Plaintiffs Rebecca Abbott, Retrena Younge, and the Arkansas Subclass**

269.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

270.    Plaintiffs Rebecca Abbott and Retrena Younge bring this Court individually and on behalf of the Arkansas Subclass.

271.    The Arkansas Deceptive Trade Practices Act prohibits, among other things: (a) deceptive and unconscionable trade practices including, but not limited to, (1) knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or

new or of a particular standard, quality, grade, style, or model; (2) advertising the goods or services with the intent not to sell them as advertised; (3) engaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade; and (b) in connection with the sale or advertisement of any goods or services, (1) the act, use, or employment by a person of any deception, fraud, or false pretense; or (2) the concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission. *See* Ark. Code Ann. §§4-88-101(1-3).

272.     Under the Arkansas Deceptive Trade Practices Act, a person who suffers an actual financial loss as a result of his or her reliance on the use of an unlawful practice may bring an action to recover his or her actual financial loss proximately caused by the offense or violation and reasonable attorney's fees.

273.     At all relevant times, members of the Arkansas Subclass and Defendant were individuals, organizations, groups, associations, partnerships, or corporations.

274.     Defendant willfully engaged in deceptive and unconscionable acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts it intended others to rely upon in connection with the sale and advertisement of its toxic baby foods.

275.     Because the characteristics of Defendant's toxic baby foods were not as represented, and those characteristics are material to a reasonable consumer of the type of merchandise, the value of that merchandise was less than the value of the merchandise would have had the merchandise actually possessed the characteristics that were represented.  Because the product defect has actually manifested, Plaintiffs have suffered actual damages as a result of Defendant's conduct.

276.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unconscionable because it offends public policy, and is so oppressive that the Arkansas Subclass has little alternative but to submit and causes consumers substantial injury.

277.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unconscionable in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

278.     Plaintiffs relied on Defendant's representations when purchasing Defendant's toxic baby foods.

279.     Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products.

280.     Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered actual damages in that (1) the actual value of the merchandise they received was less than the value of the merchandise they bargained for denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.     Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.     Designating Plaintiffs as Class representative and counsel as Class counsel;

c.  Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.  Awarding Plaintiffs and Class members damages; and reasonable attorney's fees; and

e.  Granting such further relief as the Court deems just.

## COUNT 9
**Violation of the California Consumers Legal Remedies Act (Cal. Civ. Code §§1750, *et seq*.), on Behalf of Plaintiffs Chelzy Desvigne, Shannon Herrington, April Lockhart, Corinthea Pangelinan, Maggie Rouse, Tiffany Salazar, Bridget Salopek, Christen Zulli, and the California Subclass**

281.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

282.    Plaintiffs Chelzy Desvigne, Shannon Herrington, April Lockhart, Corinthea Pangelinan, Maggie Rouse, Tiffany Salazar, Bridget Salopek, and Christen Zulli bring this Count individually and on behalf of the California Subclass.

283.    The California Consumers Legal Remedies Act ("California CLRA") prohibits any unfair, deceptive, and/or unlawful practices, as well as unconscionable commercial practices in connection with the sale of any goods or services to consumers. *See* Cal. Civ. Code §1770.

284.    The California CLRA specifically prohibits, among other things: (1) passing off goods or services as those of another; (2) misrepresenting the source, sponsorship, approval, or certification of goods or services; (3) misrepresenting the affiliation, connection, or association with, or certification by, another; (4) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; (5) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and (6) advertising goods or services with intent not to sell them as advertised.

285. The CLRA allows any consumer who suffers any damage as a result of the use or employment by any person of a prohibited practice to bring a private action against that person to recover actual damages, an order enjoining the methods, acts, or practices; restitution of property; punitive damages; and any other relief that the court deems proper.

286. Defendant is either an individual, partnership, corporation, limited liability company, association, or other group, however organized.

287. Defendant's products are tangible chattels bought or leased for use primarily for personal, family, or household purposes.

288. Members of the California Subclass are individuals who acquired, by purchase or lease, Defendant's goods or services for personal, family, or household purposes.

289. Defendant willfully engaged in unfair, deceptive, and/or unlawful practices, as well as unconscionable commercial practices as described in the allegations above.

290. As a result, Defendant's conduct violates several provisions of the California CLRA, including but not limited to:

    a. Section 1770(a)(5): Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have—here, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins; and

    b. Section 1770(a)(7): Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another—as above, Defendant's toxic baby food carried with it the impression that

it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins.

291.    In addition, under California law, a duty to disclose arises in any of the following four circumstances: (1) when the defendant is in a fiduciary relationship with the Plaintiffs; (2) when the defendant has exclusive knowledge of material facts not known to the Plaintiffs; (3) when the defendant actively conceals a material fact from the Plaintiffs; and (4) when the defendant makes partial representations but also suppresses some material facts.

292.    Defendant had a duty to disclose to Plaintiffs and the California Subclass that the toxic baby food was of substandard quality and contained excessive levels of toxins for the following two independent reasons: (1) Defendant had exclusive knowledge of the information at the time of sale; and (2) Defendant actively concealed from Plaintiffs and the California Subclass the excessive amount of toxins contained in the toxic baby food.

293.    Defendant's omissions in violation of the California CLRA were likely to mislead an ordinary consumer. Plaintiffs and the California Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiffs and the California Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality. If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the California Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the California Subclass would not have purchased Defendant's toxic baby food.

294. Defendant's omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

295. Plaintiffs and the California Subclass relied to their detriment on Defendant's omissions in purchasing toxic baby food.

296. Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

297. Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

298. Plaintiffs provided Defendant pre-suit notice pursuant to Cal. Civ. Code §1782(a) by sending a certified letter containing the basis of Plaintiffs' claims on March 12, 2021. Notice was received by Defendant on or about March 23, 2021.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b. Designating Plaintiffs as Class representative and counsel as Class counsel;

c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

  d. Awarding Plaintiffs and Class members damages; and reasonable attorney's fees; and

  e. Granting such further relief as the Court deems just.

## COUNT 10
**Violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code §§17200, *et seq*.), on Behalf of Plaintiffs Chelzy Desvigne, Shannon Herrington, April Lockhart, Corinthea Pangelinan, Maggie Rouse, Tiffany Salazar, Bridget Salopek, Christen Zulli, and the California Subclass**

299. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

300. Plaintiffs Chelzy Desvigne, Shannon Herrington, April Lockhart, Corinthea Pangelinan, Maggie Rouse, Tiffany Salazar, Bridget Salopek, and Christen Zulli bring this Count individually and on behalf of the California Subclass.

301. The California Unfair Competition Law ("California UCL") prohibits any "unconscionable, false, or deceptive act or practice in business, commerce, or trade unlawful, unfair or fraudulent business act or practice[.]"

302. The California UCL further provides that any person who has engaged in unfair competition may be enjoined in any court of competent jurisdiction.  The court may make such orders or judgments as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

303. The California UCL allows for an action for relief to be brought by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition.

304.  At all relevant times, members of the California Subclass and Defendant were either natural persons, corporations, firms, partnerships, joint stock companies, associations or other organizations of persons.

305.  Defendant willfully engaged in unlawful, fraudulent and unfair acts and practices in violation of Cal. Bus. & Prof. Code §17200 as described in the allegations above.

306.  Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

307.  Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

308.  Defendant's conduct was illegal in that it violated Proposition 65, Cal. Health & Safety Code §25249.5, *et seq*. by failing to warn that Defendant's toxic baby food contained potential carcinogens.

309.  Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is fraudulent in that concealing and failing to disclose the presence of toxic heavy metals in its baby food was likely to deceive consumers.

310.  Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the California Subclass.

311.  Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the California Subclass has little alternative but to submit and causes consumers substantial injury.

312.  Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children

from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

313. The California Subclass has suffered economic injury as a direct and proximate result of the Defendant's conduct.

314. Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

315. Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

316. As a direct and proximate result of the foregoing acts and practices, the California Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

317. WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

    a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

    b. Designating Plaintiffs as Class representative and counsel as Class counsel;

    c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

    d.   Awarding Plaintiffs and Class members restitution of Defendant's wrongfully obtained revenue; and

    e.   Granting such further relief as the Court deems just.

## COUNT 11
### Violation of the California False Advertising Law (Cal. Bus. & Prof. Code §§17500, *et seq.*), on Behalf of Plaintiffs Chelzy Desvigne, Shannon Herrington, April Lockhart, Corinthea Pangelinan, Maggie Rouse, Tiffany Salazar, Bridget Salopek, Christen Zulli, and the California Subclass

318.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

319.    Plaintiffs Chelzy Desvigne, Shannon Herrington, April Lockhart, Corinthea Pangelinan, Maggie Rouse, Tiffany Salazar, Bridget Salopek, and Christen Zulli bring this Count individually and on behalf of the California Subclass.

320.    Defendant engaged in advertising and marketing to the public and offered for sale toxic baby food that contained toxins in amounts that are unsafe for babies.

321.    The California False Advertising Law ("California FAL") states:

> It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised. *See* Cal. Bus. & Prof. Code §§17500, *et seq.*

322.     Defendant's business practices as alleged herein constitute unfair, deceptive, untrue and misleading advertising pursuant to California's FAL because Defendant advertised toxic baby food in a manner that is untrue and misleading, and that is known or reasonably should have been known to Defendant to be untrue or misleading, as Defendant created the impression that the product was safe for babies to consume when, in fact, it was not. Defendant concealed the material information from consumers that toxic baby food contained excessive amounts of toxins and was of substandard quality.

323.     Defendant's omissions alleged herein deceived or had the tendency to deceive the general public regarding the quality and composition of toxic baby food.

324.     Defendant's omissions alleged herein were the type of omissions that are material, i.e., a reasonable person would attach importance to them and would be induced to act on the information in making purchase decisions.

325.     Defendant's omissions alleged herein are objectively material to a reasonable consumer, and therefore reliance upon such omissions may be presumed as a matter of law.

326.     At the time Defendant made the omissions alleged herein, Defendant knew or should have known that they were untrue or misleading, and Defendant acted in violation of Cal. Bus. & Prof. Code §§17500, *et seq*.

327.     Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

328.     Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2)

Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

329.   As a result, Plaintiffs and each member of the California Subclass have been injured, lost money or property, and are entitled to relief.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.   Awarding Plaintiffs and Class members restitution of Defendant's wrongfully obtained revenue; and

e.   Granting such further relief as the Court deems just.

## COUNT 12
**Violation of the Colorado Consumer Protection Act (Colo. Rev. Stat. §§6-1-105(1), *et seq.*), on Behalf of Plaintiffs Camarie Broomfield, Sheral Shah Chheda, Angela Cox, Marcela García, and the Colorado Subclass**

330.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

331.   Plaintiffs Camarie Broomfield, Sheral Shah Chheda, Angela Cox, and Marcela García bring this Count individually and on behalf of the Colorado Subclass.

332.   The Colorado Consumer Protection Act defines deceptive trade practices to include, among other things, when, in the course of the person's business, vocation, or occupation, the person: (a) either knowingly or recklessly makes a false representation as to the characteristics,

ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith; (b) represents that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another; (c) advertises goods, services, or property with intent not to sell them as advertised; (d) fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction; and (e) either knowingly or recklessly engages in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice. *See* Colo. Rev. Stat. §§6-1-105(1), *et seq*.

333.     The Colorado Consumer Protection Act further provides for a civil action against any person who has engaged in or caused another to engage in any deceptive trade practice listed in this article by any person who is an actual or potential consumer of the defendant's goods, services, or property and is injured as a result of such deceptive trade practice.

334.     At all relevant times, members of the Colorado Subclass and Defendant were either individuals, corporations, business trusts, estates, trusts, partnerships, unincorporated associations, or any other legal or commercial entity.

335.     In marketing and selling its toxic baby food, Defendant either knowingly or recklessly made a false representation as to the characteristics of its toxic baby foods.

336.     In marketing and selling its toxic baby food, Defendant either knowingly or recklessly represented that its toxic baby food was of a particular standard, quality, or grade, when it knew or should know that they are of another.

337.    In marketing and selling its toxic baby food, Defendant either knowingly or recklessly failed to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction.

338.    In marketing and selling its toxic baby food, Defendant either knowingly or recklessly engaged in an unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice.

339.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of Defendant's business.

340.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above significantly impact the public as they are actual or potential consumers of Defendant's goods.

341.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Colorado Subclass.

342.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

343.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Colorado Subclass has little alternative but to submit and causes consumers substantial injury.

344.     Defendant's knowing misrepresentations and omissions in the sale of its toxic baby food detailed above had the capacity to mislead consumers.

345.     Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

346.     Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

347.     The Colorado Subclass has suffered economic injury as a direct and proximate result of the Defendant's conduct.

348.     As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.   Awarding Plaintiffs and Class members damages; and

e.   Granting such further relief as the Court deems just.

### COUNT 13
### Violation of the Connecticut Unfair Trade Practices Act (Conn. Gen. Stat. §§42-110A, *et seq.*), on Behalf of Plaintiffs Lori Ann Louis, Monique Warren, and the Connecticut Subclass

349.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

350.    Plaintiffs Lori Ann Louis, and Monique Warren bring this Count individually and on behalf of the Connecticut Subclass.

351.    Connecticut's Unfair Trade Practices Act ("Connecticut UTPA") prohibits any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

352.    The Connecticut UTPA further provides that any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by Conn. Gen. Stat. §42-110(b), may bring an action to recover actual damages.

353.    At all relevant times, members of the Connecticut Subclass and Defendant were either a natural person, corporation, limited liability company, trust, partnership, incorporated or unincorporated association.

354.    Defendant willfully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with its advertising and sale of its toxic baby food in violation of Conn. Gen. Stat. §42-110b(a), as described in the allegations above.

355.    Defendant's misrepresentations and omissions as alleged above occurred in connection with its advertising, sale, offering for sale or the distribution of property in Connecticut.

356.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

357.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Connecticut Subclass.

358.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Connecticut Subclass has little alternative but to submit and causes consumers substantial injury.

359.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

360.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

361.    Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered ascertainable losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

362.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b. Designating Plaintiffs as Class representative and counsel as Class counsel;

c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d. Awarding Plaintiffs and Class members damages; costs of suit and reasonable attorneys' fees, and

e. Granting such further relief as the Court deems just.

## COUNT 14
### Violation of the Delaware Consumer Fraud Act (Del. Code Ann. tit. 6, §§2511, *et seq.*), on Behalf of Plaintiffs Katrina Thomas and the Delaware Subclass

363. Plaintiffs incorporates by reference and reallege each and every allegation contained above, as though fully set forth herein.

364. Plaintiffs Katrina Thomas brings this Count individually and on behalf of the Delaware Subclass.

365. Delaware's Consumer Fraud Act prohibits any "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice."

366.    At all relevant times, members of the Delaware Subclass and Defendant were either an individual, corporation, government, or governmental subdivision or agency, statutory trust, business trust, estate, trust, partnership, unincorporated association or other legal or commercial entity.

367.    Defendant willfully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with the sale and advertisement of "merchandise" (as defined in the Delaware Consumer Fraud Act, Del. Code Ann. tit. 6, §2511(6)) in violation of Del. Code Ann. tit. 6, §2513(a), as described in the allegations above.

368.    The Delaware Subclass relied on Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above.

369.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

370.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

371.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Delaware Subclass.

372.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Delaware Subclass has little alternative but to submit and causes consumers substantial injury.

373.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children

from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

374.    The Delaware Subclass has suffered economic injury as a direct and proximate result of the Defendant's conduct.

375.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

376.    Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

377.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, prays for an Order as follows:

a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.   Awarding Plaintiffs and Class members damages; and

e.   Granting such further relief as the Court deems just.

## COUNT 15
### Violation of the District of Columbia Consumer Protection Procedures Act (D.C. Code §§28-3904, *et seq.*), on Behalf of Plaintiffs Lori-Ann McKenzie-Henry and the District of Columbia Subclass

378.   Plaintiffs incorporates by reference and reallege each and every allegation contained above, as though fully set forth herein.

379.   Plaintiffs Lori-Ann McKenzie-Henry brings this Count individually and on behalf of the District of Columbia Subclass.

380.   The District of Columbia's Consumer Protection Procedures Act ("District of Columbia CPPA") prohibits any person from engaging "in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby."

381.   The District of Columbia CPPA specifically forbids, among other things, (1) representing that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have; (2) representing that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another; (3) misrepresenting a material fact which has a tendency to mislead; (4) failing to state a material fact if such failure tends to mislead; (5) Using innuendo or ambiguity as to a material fact, which has a tendency to mislead; and (6) advertising or offering goods or services without the intent to sell them or without the intent to sell them as advertised or offered.

382.   The District of Columbia CPPA provides that a consumer may bring an action seeking relief from the use of an unfair or deceptive act and may, on behalf of that individual, or on behalf of both the individual and the general public, bring an action seeking relief from the use of unfair or deceptive act when it involves consumer goods or services that the individual purchased for personal, household, or family purposes.

383.    At all relevant times, members of the District of Columbia Subclass and Defendant were individuals, firms, corporations, partnerships, cooperatives, associations, or another organization, legal entity, or group of individuals.

384.    At all relevant times, members of the District of Columbia Subclass were persons who purchased Defendant's products for personal, household or family purposes and not for resale.

385.    At all relevant times, Defendant in the ordinary course of business sells, directly or indirectly, consumer goods or services.

386.    Defendant willfully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with the sale and advertisement of its baby foods in violation of D.C. Code §28-3904 as described in the allegations above.

387.    Specifically, Defendant's acts described above violate the prohibition of (1) representing that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have in that Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins; (2) representing that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another in that Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins; (3) misrepresenting a material fact which has a tendency to mislead in that Defendant's marketing of its baby food represented that its safety and quality; and (4) failing to state a material fact if such failure tends

to mislead in that Defendant failed to disclose the material fact that it knowingly sold baby food containing toxic heavy metals.

388.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

389.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

390.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

391.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriches Defendant at the expense of the District of Columbia Subclass.

392.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the District of Columbia Subclass has little alternative but to submit and causes consumers substantial injury.

393.    The District of Columbia Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

394.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

395.    Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than

the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

396. As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, prays for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b. Designating Plaintiffs as Class representative and counsel as Class counsel;

c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d. Awarding Plaintiffs and Class members treble damages or $1,500 per violation, whichever is greater; reasonable attorneys' fees; punitive damages; and costs;

e. Entering an injunction against the use of the unlawful trade practice; and entering any order as may be necessary to restore to the consumer money which may have been acquired by means of the unlawful trade practice; and

f. Granting such further relief as the Court deems just.

## COUNT 16
**Violation of the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. §§501.201, *et seq.*), on Behalf of Plaintiffs Olivia Boyer, Sheral Shah Chheda, Natalya Dzyuba, Kristian Germain, Sammi Hobdy, Olivia Johnson, Sarah Kohn, Loukevia Moore, Margo Tezeno, Rhianna Thorton, Casey Tisdale, and the Florida Subclass**

397. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

398.    Plaintiffs Olivia Boyer, Sheral Shah Chheda, Natalya Dzyuba, Kristian Germain, Sammi Hobdy, Olivia Johnson, Sarah Kohn, Loukevia Moore, Margo Tezeno, Rhianna Thorton, and Casey Tisdale bring this Count individually and on behalf of the Florida Subclass.

399.    Florida's Deceptive and Unfair Trade Practices Act prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

400.    Florida's Deceptive and Unfair Trade Practices Act further provides anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part and in any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs.

401.    Plaintiffs and Class members purchased the product or services at issue in this matter for their own use or for that of members of their households.

402.    At all times material hereto, Defendants engaged in the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of goods or services, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, in or from Florida.

403.    The facts that Defendant misrepresented, concealed, suppressed or omitted as alleged above were material, in that such facts are the type of information upon which a reasonable consumer is expected to rely in making a decision of whether to purchase Defendant's products.

404.     Defendant's misrepresentation, concealment, suppression and omission of material facts as alleged above creates a likelihood of deception and was likely to deceive a consumer acting reasonably in the same circumstances.

405.     Defendant engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations above with the intent that Plaintiffs and Class members would rely on those deceptive and unfair acts and practices and induce Plaintiffs and Class members to purchase Defendant's products.

406.     Because the characteristics of Defendant's merchandise were not as represented, and those characteristics are material to a reasonable consumer of the type of merchandise, the value of that merchandise was less than the value of the merchandise would have had the merchandise actually possessed the characteristics that were represented.

407.     Plaintiffs and Class members purchased Defendant's products or services at issue in this action in Florida without knowledge of the material facts that were concealed, suppressed or omitted and without knowledge that Defendants affirmative representations were false.

408.     Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

409.     Instead, as a result of Defendant's misrepresentations, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

410.    Plaintiffs and Class members could not have avoided these injuries.  Because Defendant was the sole source of material information that Defendant failed to disclose, Plaintiffs and Class members could not have had reason to anticipate the impending harm and thus avoided their injuries.

411.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Florida Subclass has little alternative but to submit and causes consumers substantial injury.

412.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

413.    The Florida Subclass has suffered economic injury as a direct and proximate result of the Defendant's conduct.

414.    As a direct and proximate result of the foregoing acts and practices, the Florida Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.    Designating Plaintiffs as Class representative and counsel as Class counsel;

c.    Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.   Awarding Plaintiffs and Class members actual damages; attorney's fees and court

costs; and

e.   Granting such further relief as the Court deems just.

**COUNT 17**
**Violation of the Georgia Fair Business Practices Act (Ga. Code Ann. §§10-1-390, *et seq.*), on Behalf of Plaintiffs Chelzy Desvigne, Sammi Hobdy, Yuhwa Jang, Leah Ostapchenko, and the Georgia Subclass**

415.   Plaintiffs incorporate by reference and reallege each and every allegation contained

above, as though fully set forth herein.

416.   Plaintiffs Chelzy Desvigne, Sammi Hobdy, Yuhwa Jang, and Leah Ostapchenko

bring this Count individually and on behalf of the Georgia Subclass.

417.   Georgia's Fair Business Practices Act prohibits the "[u]nfair or deceptive acts or

practices in the conduct of consumer transactions and consumer acts or practices in trade or

commerce."

418.   Georgia's Fair Business Practices Act specifically declares unlawful, among other

things: (1) representing that goods or services have sponsorship, approval, characteristics,

ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship,

approval, status, affiliation, or connection that he or she does not have; (2) representing that goods

or services are of a particular standard, quality, or grade or that goods are of a particular style or

model, if they are of another; and (3) advertising goods or services with intent not to sell them as

advertised.

419.   Georgia's Fair Business Practice Act further provides that any person who suffers

injury or damages as a result of a violation of the Act, as a result of consumer acts or practices in

violation of this part may bring an action against the person or persons engaged in such violations

to seek equitable injunctive relief and to recover his or her general and exemplary damages sustained as a consequence thereof.

420.    At all relevant times, members of the Georgia Subclass and Defendant were either a natural person, corporation, trust, partnership, incorporated or unincorporated association, or other legal entity.

421.    Defendant willfully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with trade or commerce in violation of Ga. Code Ann. §10-1-393(a) as described in the allegations above.

422.    Specifically, Defendant's acts and practices described above violated the Georgia Fair Business Practice Act's prohibitions on (1) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have in that Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins; (2) representing that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another in that Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins; and (3) advertising goods or services with intent not to sell them as advertised in that Defendant advertised its toxic baby food as a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins when Defendant knew it was not.

423.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

424.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

425.     Defendant's misrepresentations and omissions discussed above had the capacity to deceive and did deceive Plaintiffs and Class members.

426.     Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

427.     Instead, as a result of Defendant's misrepresentations, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

428.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Georgia Subclass.

429.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Georgia Subclass has little alternative but to submit and causes consumers substantial injury.

430.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children

from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

431. The Georgia Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

432. As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

433. Plaintiffs provided Defendant pre-suit notice pursuant to Ga. Code Ann. §10-1-399(b) by sending a certified letter containing the basis of Plaintiffs' claims on April 12, 2021. Said notice was received by Defendant on or about April 16, 2021.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b. Designating Plaintiffs as Class representative and counsel as Class counsel;

c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d. Awarding Plaintiffs and Class members damages and reasonable attorneys' fees and expenses of litigation incurred with the action; and

e. Granting such further relief as the Court deems just.

## COUNT 18
## Violation of the Hawaii Uniform Deceptive Trade Practices Act (Haw. Rev. Stat. §§480-1, *et seq.*), on Behalf of Plaintiffs Kimberly Azeneth Avila, Christen Zulli, and the Hawaii Subclass

434.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

435.     Plaintiffs Kimberly Azeneth Avila, and Christen Zulli bring this Count individually and on behalf of the Hawaii Subclass.

436.     Hawaii's Uniform Deceptive Trade Practices Act ("Hawaii UDTPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

437.     Hawaii's UDTPA further provides that any person who is injured in the person's business or property by reason of anything forbidden or declared unlawful by this chapter may sue for damages sustained by the person.

438.     At all relevant times, members of the Hawaii Subclass were natural persons who, primarily for personal, family, or household purposes, purchased Defendant's goods or services.

439.     At all relevant times, Defendant and the members of the Hawaii Subclass were either individuals, corporations, firms, trusts, partnerships, limited partnerships, limited liability partnerships, limited liability limited partnerships, limited liability companies, and incorporated or unincorporated associations.

440.     Defendant willfully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce in violation of Haw. Rev. Stat. §480-2 as described in the allegations above.

441. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

442. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

443. Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

444. Instead, as a result of Defendant's misrepresentations, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

445. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Hawaii Subclass.

446. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Hawaii Subclass has little alternative but to submit and causes consumers substantial injury.

447. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

448. The Hawaii Subclass has suffered economic injury as a direct and proximate result of the Defendant's conduct.

449. As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

    a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

    b. Designating Plaintiffs as Class representative and counsel as Class counsel;

    c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

    d. Awarding Plaintiffs and Class members treble damages, reasonable attorneys' fees and costs; and

    e. Granting such further relief as the Court deems just.

## COUNT 19
**Violation of the Idaho Consumer Protection Act (Idaho Code Ann. §§48-601, *et seq*.), on Behalf of Plaintiffs Sonja Renee Twiggs and the Idaho Subclass**

450. Plaintiffs incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

451. Plaintiffs Sonja Renee Twiggs brings this Count individually and on behalf of the Idaho Subclass.

452. Idaho's Consumer Protection Act ("Idaho CPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade of commerce," as

well as "any unconscionable method, act or practice in the conduct of trade or commerce." *See* Idaho Code Ann. §48-603.

453.    Specifically, the Idaho's CPA forbids: (1) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, connection, qualifications or license that he does not have; (2) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; (3) advertising goods or services with intent not to sell them as advertised; (4) engaging in any act or practice that is otherwise misleading, false, or deceptive to the consumer; and (5) engaging in any unconscionable method, act or practice in the conduct of trade or commerce.

454.    The CPA provides that any person who purchases or leases goods or services and suffers any ascertainable loss of money or property as a result of the use by another person of an unfair or deceptive practice bay bring an action to recover actual damages.

455.    At all relevant times, members of the Idaho Subclass and Defendant were either natural people, corporations, trusts, partnerships, incorporated or unincorporated associations, companies, trusts, business entities or any other legal entity.

456.    Defendant willfully engaged in unfair, deceptive, and unconscionable practices in the conduct of trade or commerce as described in the allegations above.

457.    As a result, Defendant's conduct violates several provisions of the Idaho CPA, including but not limited to:

    a.  Section 48-603(5):   Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have—here, Defendant's branding of its toxic baby food carried with it the

impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins; and

b.  Section 48-603(7): Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another—as above, Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins.

c.  Section 48-603(17): Engaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer—as above, Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins.

d.  Section 48-603(18):  Engaging in any unconscionable method, act or practice in the conduct of trade or commerce.  Here, Defendant knew that its toxic baby food contained amounts of toxins that are unsafe for babies, knew or reasonably should have known that consumers would want to buy baby food that is free of toxins that are harmful to babies, and knew or reasonable should have known that consumers would not buy baby food that contains such toxins.  Nevertheless, Defendant continually marketed its toxic baby food as safe for babies to consume and unconscionably withheld information from the public about the amounts of toxins in the toxic baby food.  These actions violate the well-established public policies of

protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

458.    Defendant's omissions in violation of the Idaho CPA were likely to mislead an ordinary consumer.   Plaintiffs and the Idaho Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health.   Plaintiffs and the Idaho Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.   If Defendant had disclosed that its baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the Idaho Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Idaho Subclass would not have purchased Defendant's toxic baby food.

459.    Defendant's omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

460.    Plaintiffs and the Idaho Subclass relied to their detriment on Defendant's omissions in purchasing toxic baby food.

461.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

462.    Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2)

Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

463. As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

  a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

  b. Designating Plaintiffs as Class representative and counsel as Class counsel;

  c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

  d. Awarding Plaintiffs and Class members damages, reasonable attorneys' fees and costs; and

  e. Granting such further relief as the Court deems just.

**COUNT 20**
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. Ann. §§505/1, *et seq.*), on Behalf of Plaintiffs Brandy Davis, and the Illinois Subclass**

464. Plaintiffs incorporates by reference and reallege each and every allegation contained above, as though fully set forth herein.

465. Plaintiffs Brandy Davis brings this Count individually and on behalf of the Illinois Subclass.

466. Illinois's Consumer Fraud and Deceptive Business Practices Act prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the

use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice… in the conduct of any trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby."

467.    At all times material hereto, Defendants engaged in the advertising, offering for sale, sale, and/or distribution of services in Illinois.

468.    Defendants, by and through their employees, agents, and/or servants, and in connection with their advertising, offering for sale, sale, and/or distribution of services, engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations above.

469.    The facts that Defendants misrepresented, concealed, suppressed, or omitted as alleged above were material, in that such facts are the type of information upon which a reasonable consumer is expected to rely in making a decision of whether to purchase Defendant's products.

470.    At all relevant times, members of the Illinois Subclass and Defendants were either natural persons or their legal representatives, partnerships, corporations, companies, trusts, business entities, or associations.

471.    Plaintiffs and Class members purchased the product or services at issue in this matter for their own use or for that of members of their households.

472.    Defendant's misrepresentation, concealment, suppression and omission of material facts as alleged above creates a likelihood of deception and has the capacity to deceive a reasonable consumer.

473.    Defendants engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations above with the intent that Plaintiffs and Class members would rely on those deceptive and unfair acts and practices and induce Plaintiffs and Class members to purchase Defendant's products.

474.    Because the characteristics of Defendant's merchandise were not as represented, and those characteristics are material to a reasonable consumer of the type of merchandise, the value of that merchandise was less than the value of the merchandise would have had the merchandise actually possessed the characteristics that were represented.

475.    Plaintiffs and Class members purchased Defendant's products or services at issue in this action in Illinois without knowledge of the material facts that were concealed, suppressed or omitted and without knowledge that Defendants affirmative representations were false.

476.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

477.    Instead, as a result of Defendant's misrepresentations, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

478.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Illinois Subclass has little alternative but to submit and causes consumers substantial injury.

479.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

480.     Plaintiffs and Class members could not have avoided these injuries. Because Defendants were the sole source of material information that Defendants failed to disclose, Plaintiffs and Class members could not have had reason to anticipate the impending harm and thus avoided their injuries.

481.     As a direct and proximate result of the foregoing acts and practices, the Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, prays for an Order as follows:

   a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

   b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

   c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

   d.   Awarding Plaintiffs and Class members damages, attorneys' fees and costs of suit; and

   e.   Granting such further relief as the Court deems just.

**COUNT 21**
**Violation of the Indiana Deceptive Consumer Sales Act (Ind. Code §§24-5-0.5, *et seq.*), on Behalf of Plaintiffs Megan Ashley, Michelle Corbett, and the Indiana Subclass**

482. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

483. Plaintiffs Megan Ashley and Michelle Corbett bring this Count individually and on behalf of the Idaho Subclass.

484. The Indiana Deceptive Consumer Sales Act ("Indiana DCSA") prohibits suppliers from committing acts or omissions that are unfair, abusive, or deceptive in connection with a consumer transaction; further, acts and omissions prohibited by the Indiana DCSA include both implicit and explicit misrepresentations. *See* Ind. Code §24-5-0.5-3(a).

485. Among other things, the Indiana DCSA specifically defines the following acts and representations about the subject matter of the consumer transaction as deceptive acts: (1) that such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have; and (2) that such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.

486. At all relevant times, Plaintiffs, members of the Indiana Subclass, and Defendant were either individuals, corporations, business trusts, estates, trusts, partnerships, associations, nonprofit corporations or organizations, or cooperatives or some other legal entity.

487. Defendant willfully engaged in unfair, deceptive, and/or unlawful practices, as well as unconscionable commercial practices as described in the allegations above.

488. As a result, Defendant's conduct violates several provisions of the Indiana DCSA, including but not limited to:

a. Section 24-5-0.5-3(b)(1): Representing that the subject of a consumer transaction has sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that it does not have—here, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins; and

b. Section 24-5-0.5-3(b)(2): Representing that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not—as above, Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins.

489. Defendant's omissions in violation of the Indiana DCSA were likely to mislead an ordinary consumer. Plaintiffs and the Indiana Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxic heavy metals. Plaintiffs and the Indiana Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality. If Defendant had disclosed that its toxic baby food contained toxic heavy metals and was of substandard quality, Plaintiffs and the Indiana Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Indiana Subclass would not have purchased Defendant's toxic baby food.

490.    Defendant's omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

491.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

492.    Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

493.    Plaintiffs provided Defendant pre-suit notice pursuant to Ind. Code §24-5-0.5-5(a) by sending a certified letter containing the basis of Plaintiffs' claims on April 13, 2021.  Said notice was received by Defendant on or about April 19, 2021.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

    a.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

    b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

    c.  Entering judgment in favor of Plaintiffs and the Class and against Defendant;

    d.  Awarding Plaintiffs and Class members their damages or $500, whichever is greater, reasonable attorneys' fees and costs; and

e.   Granting such further relief as the Court deems just.

### COUNT 22
### Violation of the Iowa Private Right of Action for Consumer Frauds Act (Iowa Code Ann. §§714H.1, *et seq.*), on Behalf of Plaintiffs Sara Kilburn and the Iowa Subclass

494.   Plaintiffs incorporates by reference and reallege each and every allegation contained above, as though fully set forth herein.

495.   Plaintiffs Sara Kilburn brings this Count individually and on behalf of the Iowa Subclass.

496.   Iowa's Private Right of Action for Consumer Frauds Act ("Iowa PRACFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise, or the solicitation of contributions for charitable purposes."

497.   The Iowa PRACFA further provides that a consumer who suffers an ascertainable loss of money or property as the result of an unfair or deceptive practice may bring an action to recover actual damages.

498.   At all relevant times, members of the Iowa Subclass were natural persons.

499.   Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with trade or commerce in violation of Iowa Code Ann. §714A.3(1) as described in the allegations above.

500.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

501.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

502.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

503.    Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

504.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Iowa Subclass.

505.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Iowa Subclass has little alternative but to submit and causes consumers substantial injury.

506.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

507.    The Iowa Subclass has suffered economic injury as a direct and proximate result of the Defendant's conduct.

508.     As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, prays for an Order as follows:

   a.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

   b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

   c.  Entering judgment in favor of Plaintiffs and the Class and against Defendant;

   d.  Awarding Plaintiffs and Class members damages, reasonable attorneys' fees and costs; and

   e.  Granting such further relief as the Court deems just.

## COUNT 23
**Violation of the Kansas Consumer Protection Act (Kan. Stat. Ann. §§50-623, *et seq.*), on Behalf of Plaintiffs Shannon Herrington and the Kansas Subclass**

509.     Plaintiffs incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

510.     Plaintiffs Shannon Herrington brings this Count individually and on behalf of the Kansas Subclass.

511.     The Kansas Consumer Protection Act ("Kansas CPA") prohibits suppliers from engaging in any deceptive act or practice in connection with a consumer transaction. *See* Kan. Stat. Ann. §50-626.

512.     Specifically, the Kansas CPA prohibits (1) representations made knowingly or with reason to know that: (a) property or services have sponsorship, approval, accessories,

characteristics, ingredients, uses, benefits or quantities that they do not have; (b) property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation; (c) property or services has uses, benefits or characteristics unless the supplier relied upon and possesses a reasonable basis for making such representation; or (d) use, benefit or characteristic of property or services has been proven or otherwise substantiated unless the supplier relied upon and possesses the type and amount of proof or substantiation represented to exist; (2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact; and (3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact.

513.    The Kansas CPA also provides that no supplier shall engage in any unconscionable act or practice in connection with a consumer transaction.

514.    The Kansas CPA allows a consumer who is aggrieved by a violation of the act to bring a private action for actual damages or a civil penalty not to exceed $10,000 per violation.

515.    At all relevant times, Plaintiffs and the Kansas Subclass were individuals who purchased Defendant's baby foods for personal, family or household purposes.

516.    At all relevant times, Defendant was a manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business, solicits, engages in or enforces consumer transactions, whether or not dealing directly with the consumer.

517.    Defendant willfully engaged in deceptive acts and practices in connection with consumer transactions as described in the allegations above.

518.    As a result, Defendant's conduct violates several provisions of the Kansas CPA, including but not limited to:

a. Section 50-626(b)(1)(A): Representing, knowingly or with a reason to know, that property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have—here, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins;

b. Section 50-626(b)(1)(D): Representing, knowingly or with a reason to know, that property or services of are a particular standard, quality, grade, style, or model, if they are of another which differs materially from the representation—as above, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins; and

c. Section 50-626(b)(3): The willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact—here, Defendant willfully failed to state and concealed its knowledge about the levels of toxins in its toxic baby food, a material fact concerning the ingredients and health effects of its toxic baby food.

519. Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

520. Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2)

Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

521. Defendant's conduct as alleged above was unfair, including but not limited to:

a. Section 50-627(b)(1): The supplier took advantage of the inability of the consumer to reasonably protect the consumer's interests because of the consumer's ignorance or similar factor—here, the Defendant had knowledge about the amounts of toxins in its toxic baby food, which information:

   i. Defendant measures and analyzes in the regular operation of its business;

   ii. Is directly related to consumers' interest; and

   iii. Is not within the ability of the consumer to reasonably measure and analyze.

b. Section 50-627(b)(6): The supplier made a misleading statement of opinion on which the consumer was likely to the consumer's detriment—Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins.

522. Defendant's omissions in violation of the Kansas CPA were likely to mislead an ordinary consumer. Plaintiffs and the Kansas Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiffs and the Kansas Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality. If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the Kansas Subclass would have been aware that the

toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Kansas Subclass would not have purchased Defendant's toxic baby food.

523. Defendant's omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

524. Plaintiffs and the Kansas Subclass relied to their detriment on Defendant's omissions in purchasing toxic baby food.

525. As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b. Designating Plaintiffs as Class representative and counsel as Class counsel;

c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d. Awarding Plaintiffs and Class members damages or a civil penalty not to exceed $10,000 for each violation, whichever is greater, and

e. Granting such further relief as the Court deems just.

**COUNT 24**
**Violation of the Kentucky Consumer Protection Act (Ky. Rev. Stat. Ann. §§367.110, *et seq.*), on Behalf of Plaintiffs Ana Butkus and the Kentucky Subclass**

526. Plaintiffs incorporates by reference and reallege each and every allegation contained above, as though fully set forth herein.

527. Plaintiffs Ana Butkus brings this Count individually and on behalf of the Kentucky Subclass.

528. Kentucky's Consumer Protection Act ("Kentucky CPA") prohibits any "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

529. The Kentucky CPA further provides that any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair, false, misleading or deceptive act or practice may bring an action to recover actual damages.

530. At all relevant times, members of the Kentucky Subclass and Defendant were either natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, or another legal entity.

531. Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce in violation of Ky. Rev. Stat. Ann. §367.170(1) as described in the allegations above.

532. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

533. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

534. Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

535.    Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

536.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Kentucky Subclass.

537.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Kentucky Subclass has little alternative but to submit and causes consumers substantial injury.

538.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

539.    The Kentucky Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

540.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, prays for an Order as follows:

a.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

c.  Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.  Awarding Plaintiffs and Class members damages, reasonable attorneys' fees and costs; and

e.  Granting such further relief as the Court deems just.

### COUNT 25
**Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law (La. Rev. Stat. Ann. §§51:1401, *et seq.*), on Behalf of Plaintiffs Sheral Shah Chheda, Kristian Germain, Loukevia Moore, Margo Tezeno, and the Louisiana Subclass**

541.  Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

542.  Plaintiffs Sheral Shah Chheda, Kristian Germain, Loukevia Moore, and Margo Tezeno bring this Count individually and on behalf of the Louisiana Subclass.

543.  Louisiana's Unfair Trade Practices and Consumer Protection Law prohibits any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

544.  Louisiana's Unfair Trade Practices and Consumer Protection Law further provides that any person who suffers any ascertainable loss of money as a result of the use or employment by another person of an unfair or deceptive method, act, or practice may bring an action to recover actual damages.

545. At all relevant times, members of the Louisiana Subclass and Defendant were either natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, or another legal entity.

546. Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection its advertising, offering for sale, sale, or distribution of property, in violation of La. Rev. Stat. Ann. §51:1405(A) as described in the allegations above.

547. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

548. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

549. Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

550. Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

551. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Louisiana Subclass.

552.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Louisiana Subclass has little alternative but to submit and causes consumers substantial injury.

553.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

554.    The Louisiana Subclass has suffered economic injury as a direct and proximate result of the Louisiana Defendant's conduct.

555.    As a direct and proximate result of the foregoing acts and practices, the Louisiana Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

c.  Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.  Awarding Plaintiffs and Class members actual damages, reasonable attorneys' fees and costs of suit; and

e.  Granting such further relief as the Court deems just.

## COUNT 26
### Violation of the Maine Unfair Trade Practices Act (Me. Rev. Stat. Ann. tit. 5, §§205-A, *et seq.*), on Behalf of Plaintiffs Angela Arrowsmith, Jen Comeau, Mia Pelletier, and the Maine Subclass

556.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

557.    Plaintiffs Angela Arrowsmith, Jen Comeau, and Mia Pelletier bring this Count individually and on behalf of the Maine Subclass.

558.    Maine's Unfair Trade Practices Act prohibits any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

559.    Maine's Unfair Trade Practices Act further provides that any person who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes and thereby suffers any loss of money or property, real or personal, as a result of the use or employment by another person of a unfair or deceptive acts or practices may bring an action for actual damages, restitution and for such other equitable relief, including an injunction, as the court determines to be necessary and proper.

560.    At all relevant times, members of the Maine Subclass and Defendant were either natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations or another legal entity.

561.    Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce in violation of Me. Rev. Stat. Ann. tit. 5, §207 as described in the allegations above.

562. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above occurred in connection with its advertising, offering for sale, sale or distribution of services or property.

563. Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

564. Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

565. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

566. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Maine Subclass.

567. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Maine Subclass has little alternative but to submit and causes consumers substantial injury.

568. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

569. The Maine Subclass has suffered economic injury as a direct and proximate result of the Maine Defendant's conduct.

570. As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

571. Plaintiffs provided Defendant pre-suit settlement offer pursuant to Me. Rev. Stat. Ann. tit. 5, §213(1-A), by sending a certified letter containing the basis of Plaintiffs' claims on April 13, 2021. Said notice was received by Defendant on or about April 19, 2021.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

    a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

    b. Designating Plaintiffs as Class representative and counsel as Class counsel;

    c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

    d. Awarding Plaintiffs and Class members damages, reasonable attorneys' fees and costs; and

    e. Granting such further relief as the Court deems just.

**COUNT 27**
**Violation of the Maryland Consumer Protection Act (Md. Code Ann., Com. Law §§13-101,**
***et seq.*), on Behalf of Plaintiffs Lori-Ann McKenzie-Henry, Holly Plotts, Katrina Thomas,**
**and the Maryland Subclass**

572. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

573.     Plaintiffs Lori-Ann McKenzie-Henry, Holly Plotts, and Katrina Thomas brings this Count individually and on behalf of the Maryland Subclass.

574.     The Maryland Consumer Protection Act ("Maryland CPA") provides a person may not engage in any unfair, abusive or deceptive trade practice in the sale or lease or consumer goods or services.

575.     The Maryland CPA also provides that unfair, abusive, or deceptive trade practices include, among other things, any: (1) false, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers; (2) representation that: (i) consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have; or (ii) consumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not; (3) failure to state a material fact if the failure deceives or tends to deceive; and (4) deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with (i) the promotion or sale of any consumer goods, consumer realty, or consumer service.

576.     The Maryland CPA further provides that any person may bring an action to recover for injury or loss sustained by him as the result of an unfair, abusive or deceptive practice.

577.     At all relevant times, Plaintiffs, members of the Maryland Subclass, and Defendant were either individuals, corporations, business trusts, statutory trusts, estates, trusts, partnerships, associations, two or more persons having a joint or common interest, or another legal or commercial entity.

578. Defendant willfully engaged in unfair, abusive, and deceptive trade practices as described in the allegations above.

579. As a result, Defendant's conduct violates several provisions of the Maryland CPA, including but not limited to:

    a.  Section 13-301(1):  Making false or misleading oral or written statements, visual descriptions, or other representations of any kind which have the capacity, tendency, or effect of deceiving or misleading consumers—here, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins;

    b.  Section 13-301(2)(b)(i):  Representing that consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not—Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins;

    c.  Section 13-301(2)(b)(ii):  Representing that consumer good, consumer realty, or consumer services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another—Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins;

d.   Section 13-301(3):  Failing to state a material fact if the failure deceives or tends to deceive—Defendants failed to state the material fact that toxic baby food contains excessive levels of toxins, which both tends to deceive and did deceive Plaintiffs and the Maryland Subclass; and

e.   Section 13-301(9)(I):  Committing deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that the consumer rely on the same in connection with the promotion or sale of any consumer goods—Defendant deceived Plaintiffs and the Maryland Subclass by misrepresenting toxic baby food as a safe baby food by knowingly concealing, suppressing, and omitting from all marketing the material fact that toxic baby food contains harmful amounts of toxins.

580.   Defendant's omissions in violation of the Maryland CPA were likely to mislead an ordinary consumer.  Plaintiffs and the Maryland Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health.  Plaintiffs and the Maryland Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

581.   If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the Maryland Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Maryland Subclass would not have purchased Defendant's toxic baby food.

582. Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

583. Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

584. Plaintiffs and the Maryland Subclass relied to their detriment on Defendant's omissions in purchasing toxic baby food.

585. As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

    a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

    b. Designating Plaintiffs as Class representative and counsel as Class counsel;

    c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

    d. Awarding Plaintiffs and Class members damages, reasonable attorneys' fees and costs; and

    e. Granting such further relief as the Court deems just.

## COUNT 28
**Violation of the Massachusetts Regulation of Business Practice and Consumer Protection Act (Mass. Gen. Laws Ann. ch. 93A, §§1, *et seq.*), on Behalf of Plaintiffs Angela Arrowsmith, Grisel Barreto, Brittany Distaso, Karleen Kozaczka, Lori Ann Louis, Lyrik Merlin, Jo-Ellen Paterno, and the Massachusetts Subclass**

586.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

587.    Plaintiffs Angela Arrowsmith, Grisel Barreto, Brittany Distaso, Karleen Kozaczka, Lori Ann Louis, Lyrik Merlin, and Jo-Ellen Paterno bring this Count individually and on behalf of the Massachusetts Subclass.

588.    Massachusetts's Regulation of Business Practice and Consumer Protection Act prohibits any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

589.    At all relevant times, members of the Massachusetts Subclass and Defendant were either natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and another legal entity.

590.    Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce in violation of Mass. Gen. Laws Ann. ch. 93A, §2(a) as described in the allegations above.

591.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

592.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

593.     Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

594.     Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

595.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Massachusetts Subclass.

596.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Massachusetts Subclass has little alternative but to submit and causes consumers substantial injury.

597.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

598.     The Massachusetts Subclass has suffered economic injury as a direct and proximate result of the Massachusetts Defendant's conduct.

599.     As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

600.     Plaintiffs provided Defendant pre-suit notice pursuant to Mass. Gen. Laws Ann. ch. 93A, §9(3) by sending a certified letter containing the basis of Plaintiffs' claims on April 12, 2021. Said notice was received by Defendant on or about April 19, 2021.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.   Awarding Plaintiffs and Class members treble damages, attorneys' fees, costs; and

e.   Granting such further relief as the Court deems just.

## COUNT 29
**Violation of the Michigan Consumer Protection Act (Mich. Comp. Laws §§445.901, *et seq.*), on Behalf of Plaintiffs Brittany Bennett, Jordan Cantafio, Deana Linegar, Amanda Morency, and the Michigan Subclass**

601.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

602.     Plaintiffs Brittany Bennett, Jordan Cantafio, Deana Linegar, and Amanda Morency bring this Count individually and on behalf of the Michigan Subclass.

603.     Michigan's Consumer Protection Act makes unlawful "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer."

604. At all relevant times, members of the Michigan Subclass and Defendant were "persons" within the meaning of the Consumer Protection Act. *See* Mich. Comp. Laws §445.902(d).

605. Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with trade or commerce in violation of Mich. Comp. Laws §445.903(1)(s) as described in the allegations above.

606. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

607. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

608. Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

609. Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

610. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching the Defendant at the expense of the Michigan Subclass.

611.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Michigan Subclass has little alternative but to submit and causes consumers substantial injury.

612.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

613.    The Michigan Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

614.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.    Designating Plaintiffs as Class representative and counsel as Class counsel;

c.    Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.    Awarding Plaintiffs and Class members damages their damages or $250, whichever is greater, together with reasonable attorneys' fees and costs; and

e.    Granting such further relief as the Court deems just.

## COUNT 30
**Violation of the Minnesota Prevention of Consumer Fraud Act (Minn. Stat. Ann. §§325F.68, *et seq.*), on Behalf of Plaintiffs Crystal Brinig, Natalyz Dzyuba, Rachael TreeTop, and the Minnesota Subclass**

615.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

616.     Plaintiffs Crystal Brinig, Natalyz Dzyuba, and Rachael TreeTop bring this Count individually and on behalf of the Minnesota Subclass.

617.     Minnesota's Prevention of Consumer Fraud Act ("Minnesota PCFA") prohibits any "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby."

618.     At all relevant times, members of the Minnesota Subclass and Defendant were "persons" within the meaning of the Minnesota PCFA. *See* Minn. Stat. Ann. §325F.68(3).

619.     Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with the sale of merchandise (as defined by Minn. Stat. Ann. §325F.68(2)) in violation of Minn. Stat. Ann. §325F.69 as described in the allegations above.

620.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

621.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

622.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Minnesota Subclass.

623.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Minnesota Subclass has little alternative but to submit and causes consumers substantial injury.

624.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

625.     At all relevant times, special circumstances have existed and required Defendant to disclose rather than omit information about the levels of toxins in its toxic baby food.  These special circumstances include but are not limited to the following:

   a.  Defendant had a fiduciary relationship with Plaintiffs and members of the Minnesota Subclass in that (1) the Defendant knew or had reason to know that Plaintiffs and the Minnesota Subclass were placing trust and confidence in it and relying on it to counsel and inform them about the safety and nutrition of baby food; (2) Plaintiffs and the Minnesota Subclass placed their confidence in Defendant, resulting in superiority and influence over Plaintiffs and the Minnesota Subclass; (3) there was an asymmetry of information between the parties in favor of the Defendant, in combination with the status of the relationship; and (4) the parties had disparate levels of business experience, and Defendant invited Plaintiffs and the Minnesota Subclass to place their confidence in Defendant.

b. Defendant had special knowledge of material facts to which Plaintiffs and the Minnesota Subclass did not have access.

c. Defendant speaks widely and loudly through its branding about the safety and nutrition of its toxic baby food, e.g., misleading statements about complying with government safety standards when Defendant knows such standards do not directly regulate the amounts of toxins in its toxic baby food, and therefore Defendant must be required at the same time to say enough about the amounts of toxins in its toxic baby food to prevent its words from misleading consumers.

626. The Minnesota Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

627. As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b. Designating Plaintiffs as Class representative and counsel as Class counsel;

c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d. Awarding Plaintiffs and Class members damages, reasonable attorneys' fees, and costs; and

e. Granting such further relief as the Court deems just.

## COUNT 31

**Violation of the Minnesota Unlawful Trade Practices Act (Minn. Stat. Ann. §§325D.09, *et seq.*), on Behalf of Plaintiffs Crystal Brinig, Natalyz Dzyuba, Rachael TreeTop, and the Minnesota Subclass**

628. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

629. Plaintiffs Crystal Brinig, Natalyz Dzyuba, and Rachael TreeTop bring this Count individually and on behalf of the Minnesota Subclass.

630. At all relevant times, members of the Minnesota Subclass and Defendant were "persons" within the meaning of the Minnesota Unlawful Trade Practices Act ("Minnesota UTPA"). *See* Minn. Stat. Ann. §325D.10.

631. Minnesota's UTPA prohibits misrepresentations about the quality of goods: "No personal shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise." *See* Minn. Stat. Ann. §325D.13.

632. Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with the sale of merchandise as described in the allegations above.

633. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act in connection with the sale of merchandise.

634. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest and is the type of harm that Minn. Stat. Ann. §325D.09 expresses must be suppressed.

635. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Minnesota Subclass.

636. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Minnesota Subclass has little alternative but to submit and causes consumers substantial injury.

637. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

638. At all relevant times, special circumstances have existed and required Defendant to disclose rather than omit information about the levels of toxins in its toxic baby food. These special circumstances include but are not limited to the following:

   a. Defendant had a fiduciary relationship with Plaintiffs and members of the Minnesota Subclass in that (1) the Defendant knew or had reason to know that Plaintiffs and the Minnesota Subclass were placing trust and confidence in it and relying on it to counsel and inform them about the safety and nutrition of baby food; (2) Plaintiffs and the Minnesota Subclass placed their confidence in Defendant, resulting in superiority and influence over Plaintiffs and the Minnesota Subclass; (3) there was an asymmetry of information between the parties in favor of the Defendant, in combination with the status of the relationship; and (4) the parties had disparate levels of business experience, and Defendant invited Plaintiffs and the Minnesota Subclass to place their confidence in Defendant.

    b.   Defendant had special knowledge of material facts to which Plaintiffs and the Minnesota Subclass did not have access.

    c.   Defendant speaks widely and loudly through its branding about the safety and nutrition of its toxic baby food, e.g., misleading statements about complying with government safety standards when Defendant knows such standards do not directly regulate the amounts of toxins in its toxic baby food, and therefore Defendant must be required at the same time to say enough about the amounts of toxins in its toxic baby food to prevent its words from misleading consumers.

639.    The Minnesota Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

640.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

    a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

    b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

    c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

    d.   Awarding Plaintiffs and Class members their damages; and

    e.   Granting such further relief as the Court deems just.

## COUNT 32
### Violation of the Minnesota Uniform Deceptive Trade Practices Act (Minn. Stat. Ann. §§325D.43, *et seq.*), on Behalf of Plaintiffs Crystal Brinig, Natalyz Dzyuba, Rachael TreeTop, and the Minnesota Subclass

641.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

642.    Plaintiffs Crystal Brinig, Natalyz Dzyuba, and Rachael TreeTop bring this Count individually and on behalf of the Minnesota Subclass.

643.    The Minnesota Uniform Deceptive Trade Practices Act ("Minnesota UDTPA") prohibits persons from committing deceptive acts in the course of business.  *See* Minn. Stat. Ann. §325D.44.

644.    Among other things, the Minnesota UDTPA specifically defines the following acts and representations about the subject matter of the consumer transaction as deceptive acts: (1) causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods; (2) that such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have; and (3) that such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.

645.    At all relevant times, Plaintiffs, members of the Minnesota Subclass, and Defendant were either individuals, corporations, business trusts, estates, trusts, partnerships, associations, nonprofit corporations or organizations, or cooperatives or some other legal entity.

646.    Defendant willfully engaged in unfair, deceptive, and/or unlawful practices, as well as unconscionable commercial practices as described in the allegations above.

647.   As a result, Defendant's conduct violates several provisions of the Minnesota UDTPA, including but not limited to:

a.   Section 325D.44(2):  Causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods—here, Defendant's willful failure to disclose to consumers the excessive amounts of toxins in toxic baby food while at the same time asserting that the toxic baby food irrelevant safety standards causes the likelihood of confusion or misunderstanding about the sources and certifications of its ingredients in that it causes a likelihood that consumers will believe the toxic baby food does not contain excessive amounts of toxins and is regarded as safe for babies to eat.  This provision does not require proof of actual confusion or misunderstanding.

b.   Section 325D.44(5):  Representing that the subject of a consumer transaction has sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that it do not have—here, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins; and

c.   Section 325D.44(7):  Representing that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not—as above, Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins.

648.    At all relevant times, special circumstances have existed and required Defendant to disclose rather than omit information about the levels of toxins in its toxic baby food. These special circumstances include but are not limited to the following:

    a.  Defendant had a fiduciary relationship with Plaintiffs and members of the Minnesota Subclass in that (1) the Defendant knew or had reason to know that Plaintiffs and the Minnesota Subclass were placing trust and confidence in it and relying on it to counsel and inform them about the safety and nutrition of baby food; (2) Plaintiffs and the Minnesota Subclass placed their confidence in Defendant, resulting in superiority and influence over Plaintiffs and the Minnesota Subclass; (3) there was an asymmetry of information between the parties in favor of the Defendant, in combination with the status of the relationship; and (4) the parties had disparate levels of business experience, and Defendant invited Plaintiffs and the Minnesota Subclass to place their confidence in Defendant.

    b.  Defendant had special knowledge of material facts to which Plaintiffs and the Minnesota Subclass did not have access.

    c.  Defendant speaks widely and loudly through its branding about the safety and nutrition of its toxic baby food, e.g., misleading statements about complying with government safety standards when Defendant knows such standards do not directly regulate the amounts of toxins in its toxic baby food, and therefore Defendant must be required at the same time to say enough about the amounts of toxins in its toxic baby food to prevent its words from misleading consumers.

649.    Defendant's omissions in violation of the Minnesota UDTPA were likely to mislead an ordinary consumer. Plaintiffs and the Minnesota Subclass reasonably understood

Defendant's omissions to mean that the toxic baby food did not contain toxic heavy metals. Plaintiffs and the Minnesota Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality. If Defendant had disclosed that its toxic baby food contained toxic heavy metals and was of substandard quality, Plaintiffs and the Minnesota Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Minnesota Subclass would not have purchased Defendant's toxic baby food.

650. Defendant's omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

651. Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

652. Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

c.  Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.  Awarding Plaintiffs and Class members damages, reasonable attorneys' fees, and costs; and

e.  Granting such further relief as the Court deems just.

## COUNT 33
**Violation of the Mississippi Consumer Protection Act (Miss. Code Ann. §§75-24-1, *et seq.*), on Behalf of Plaintiffs Chelzy Desvigne, Casey Tisdale, and the Mississippi Subclass**

653.  Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

654.  Plaintiffs Chelzy Desvigne and Casey Tisdale bring this Count individually and on behalf of the Mississippi Subclass.

655.  At all relevant times, Plaintiffs, members of the Mississippi Subclass, and Defendant were "persons" within the meaning of Miss. Code Ann. §75-24-3(a).

656.  The Mississippi Consumer Protection Act ("Mississippi CPA") prohibits unfair or deceptive trade practices in or affecting commerce. *See* Miss. Code Ann. §75-24-5.

657.  Defendant willfully engaged in unfair or deceptive trade practices in or affecting commerce as described in the allegations above.

658.  As a result, Defendant's conduct violates several provisions of the Mississippi CPA, including but not limited to:

a.  Section 75-24-5(2)(e):  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have—here, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which

consumers could use without unduly exposing their babies to the risk of exposure to toxins; and

b. Section 75-24-5(2)(g): Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another—as above, Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins.

659. Defendant's omissions in violation of the Mississippi CPA were likely to mislead an ordinary consumer. Plaintiffs and the Mississippi Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiffs and the Mississippi Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality. If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the Mississippi Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Mississippi Subclass would not have purchased Defendant's toxic baby food.

660. Plaintiffs and the Mississippi Subclass relied to their detriment on Defendant's omissions in purchasing toxic baby food.

661. Pursuant to Miss. Code Ann. §75-24-15(2), Plaintiffs made a reasonable attempt to resolve their claims through an informal dispute settlement program approved by the Attorney General by delivering a letter by to consumer@ago.ms.gov on July 9, 2021, in addition to sending written notice by mail to Defendant on April 12, 2021, which Defendant received on or about April 16, 2021.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

   a.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

   b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

   c.  Entering judgment in favor of Plaintiffs and the Class and against Defendant;

   d.  Awarding Plaintiffs and Class members their damages; and

   e.  Granting such further relief as the Court deems just.

**COUNT 34**
**Violation of the Missouri Merchandising Practices Act (Mo. Rev. Stat. Ann. §§407.010, *et seq.*), on Behalf of Plaintiffs Melanie Cole, Sarah Ridings, Natalie Williams, and the Missouri Subclass**

662.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

663.   Plaintiffs Melanie Cole, Sarah Ridings, and Natalie Williams bring this Count individually and on behalf of the Missouri Subclass.

664.   Missouri's Merchandising Practices Act  ("Missouri MPA") prohibits any "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose."

665.   At all relevant times, members of the Missouri Subclass and Missouri Defendant were "persons" within the meaning of the Missouri MPA.  *See* Mo. Rev. Stat. Ann. §407.010(5).

666.    Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce in violation of Mo. Rev. Stat. Ann. §407.020 as described in the allegations above.

667.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

668.    At all relevant times, Plaintiffs and members of the Missouri Subclass acted as a reasonable consumer would in light of all circumstances.

669.    Defendant's unlawful method, acts, and practices as alleged would cause a reasonable person to enter into the transactions that resulted in damages.

670.    At trial, Plaintiffs will present, both individually and on behalf of the Missouri Subclass, evidence that is sufficiently definitive and objective to allow the loss of individual damages to be calculated with a reasonable degree of certainty.

671.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

672.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it inequitably enriches Defendant at the expense of the Missouri Subclass.

673.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Missouri Subclass has little alternative but to submit and causes consumers substantial injury.

674.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children

from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

675.    The Missouri Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

676.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b. Designating Plaintiffs as Class representative and counsel as Class counsel;

c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d. Awarding Plaintiffs and Class members their individual damages, punitive damages, attorneys' fees based on the amount of time reasonably expended, and costs; and

e. Granting such further relief as the Court deems just.

## COUNT 35
**Violation of the Montana Unfair Trade Practices and Consumer Protection Act (Mont. Code Ann. §§30-14-101, *et seq.*), on Behalf of Plaintiffs Lea Santos, Sonja Renee Twiggs, and the Montana Subclass**

677.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

678.    Plaintiffs Plaintiffs Lea Santos and Sonja Renee Twiggs brings this Count individually and on behalf of the Montana Subclass.

679.    At all relevant times, Plaintiffs, the Montana Subclass, and Defendant were "persons" within the meaning of Mont. Code Ann. §30-14-102(6).

680.    The Montana Unfair Trade Practices and Consumer Protection Act prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. *See* Mont. Code Ann. §30-14-103.

681.    Defendant willfully engaged in unfair, deceptive, and/or unlawful practices as described in the allegations above.

682.    Defendant's misrepresentations, omissions, and suppression of material information in the sale of its toxic baby food are acts or practices in the conduct or trade or commerce.

683.    Plaintiffs and the Montana Subclass suffered loss of money as a direct and proximate result of Defendant's unfair, deceptive practices.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.   Awarding Plaintiffs and Class members the greater of their actual damages or $500, treble damages, attorneys' fees, and costs; and

e. Granting such further relief as the Court deems just.

## COUNT 36
### Violation of the Nebraska Consumer Protection Act (Neb. Rev. Stat. §§59-1601, *et seq.*), on Behalf of Plaintiffs Mayelin Carranza, Sheral Shah Chheda, Natalya Dzyuba, and the Nebraska Subclass

684. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

685. Plaintiffs Mayelin Carranza, Sheral Shah Chheda, and Natalya Dzyuba bring this Count individually and on behalf of the Nebraska Subclass.

686. Nebraska's Consumer Protection Act prohibits any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

687. At all relevant times, members of the Nebraska Subclass and Defendant were "persons" within the meaning of the Consumer Protection Act. *See* Neb. Rev. Stat. §59-1601(1).

688. Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce in violation of Neb. Rev. Stat. §59-1602 as described in the allegations above.

689. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

690. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

691. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Nebraska Subclass.

692.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Nebraska Subclass has little alternative but to submit and causes consumers substantial injury.

693.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

694.     The Nebraska Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

695.     As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.   Awarding Plaintiffs and Class members their damages or $1,000, whichever is greater; reasonable attorneys' fees; costs; and

e.   Granting such further relief as the Court deems just.

**COUNT 37**

**Violation of the Nebraska Uniform Deceptive Trade Practices Act (Neb. Rev. Stat. §§87-301, *et seq.*), on Behalf of Plaintiffs Mayelin Carranza, Sheral Shah Chheda, Natalya Dzyuba, and the Nebraska Subclass**

696. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

697. Plaintiffs Mayelin Carranza, Sheral Shah Chheda, and Natalya Dzyuba bring this Count individually and on behalf of the Nebraska Subclass.

698. The Nebraska Uniform Deceptive Trade Practices Act ("Nebraska UDTPA") prohibits persons from committing deceptive acts in the course of business. *See* Neb. Rev. Stat. §87-301.

699. Among other things, the Nebraska UDTPA specifically defines the following acts and representations about the subject matter of the consumer transaction as deceptive acts: (1) causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods; (2) causing likelihood of confusion or misunderstanding as to affiliation, connection, or associations with, or certification by, another; (3) that such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have; and (4) that such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.

700. At all relevant times, Plaintiffs, members of the Nebraska Subclass, and Defendant were either individuals, corporations, business trusts, estates, trusts, partnerships, associations, nonprofit corporations or organizations, or cooperatives or some other legal entity.

701. Defendant willfully engaged in unfair, deceptive, and/or unlawful practices, as well as unconscionable commercial practices as described in the allegations above.

702.     As a result, Defendant's conduct violates several provisions of the Nebraska UDTPA, including but not limited to:

a.   Section 87-302(a)(2):  Causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods—here, Defendant's willful failure to disclose to consumers the excessive amounts of toxins in toxic baby food while at the same time asserting that the toxic baby food irrelevant safety standards causes the likelihood of confusion or misunderstanding about the sources and certifications of its ingredients in that it causes a likelihood that consumers will believe the toxic baby food does not contain excessive amounts of toxins as approved by the authorities who issue certain safety regulations.  This provision does not require proof of actual confusion or misunderstanding.

b.   Section 87-302(a)(3):  Causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another—here, Defendant's willful failure to disclose to consumers the excessive amounts of toxins in toxic baby food while at the same time asserting that the toxic baby food irrelevant safety standards causes the likelihood of confusion or misunderstanding about the sources and certifications of its ingredients in that it causes a likelihood that consumers will believe the toxic baby food does not contain excessive amounts of toxins as approved by the authorities who issue certain safety regulations.  This provision does not require proof of actual confusion or misunderstanding.

c.   Section 87-302(a)(4):  Representing that the subject of a consumer transaction has sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that it do not have—here, Defendant's branding of its toxic baby food carried with it

the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins; and

d. Section 87-302(a)(6): Representing that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not—as above, Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins.

703. Defendant's omissions in violation of the Nebraska UDTPA were likely to mislead an ordinary consumer. Plaintiffs and the Nebraska Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxic heavy metals. Plaintiffs and the Nebraska Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality. If Defendant had disclosed that its toxic baby food contained toxic heavy metals and was of substandard quality, Plaintiffs and the Nebraska Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Nebraska Subclass would not have purchased Defendant's toxic baby food.

704. Defendant's omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

705.     Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

706.     Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.   Awarding Plaintiffs and Class members damages, attorneys' fees, and costs; and

e.   Granting such further relief as the Court deems just.

**COUNT 38**
**Violation of the Nevada Deceptive Trade Practices Act (Nev. Rev. Stat. §§598.0903, *et seq.*), on Behalf of Plaintiffs Grisel Barreto, Kelsey Blankenship, Yuhwa Jang, and the Nevada Subclass**

707.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

708.     Plaintiffs Grisel Barreto, Kelsey Blankenship and Yuhwa Jang bring this Count individually and on behalf of the Nevada Subclass.

709.    Nevada's Private Right of Action for Consumer Frauds Act prohibits any "false representation in a transaction" in the course of a business or operation.

710.    Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in the course of the Defendant's business in violation of Nev. Rev. Stat. §598.0915 as described in the allegations above.

711.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

712.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

713.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Nevada Subclass.

714.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Nevada Subclass has little alternative but to submit and causes consumers substantial injury.

715.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

716.    The Nevada Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

717.     As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.   Awarding Plaintiffs and Class members damages; and

e.   Granting such further relief as the Court deems just.

### COUNT 39
**Violation of the New Hampshire Regulation of Business Practices for Consumer Protection Act (N.H. Rev. Stat. Ann. §§358-A, *et seq.*), on Behalf of Plaintiffs Karleen Kozaczka, Lyrik Merlin, Jo-Ellen Paterno, Debbie Reed, and the New Hampshire Subclass**

718.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

719.     Plaintiffs Karleen Kozaczka, Lyrik Merlin, Jo-Ellen Paterno, and Debbie Reed brings this Count individually and on behalf of the New Hampshire Subclass.

720.     New Hampshire's Regulation of Business Practices for Consumer Protection Act ("New Hampshire CPA") prohibits any "unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state."  *See* N.H. Rev. Stat. Ann. §358-A:2.

721.    Among other things, the New Hampshire CPA specifically defines the following acts and representations about the subject matter of the consumer transaction as deceptive acts: (1) causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods; (2) causing likelihood of confusion or misunderstanding as to affiliation, connection, or associations with, or certification by, another; (3) that such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have; and (4) that such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not. *See* N.H. Rev. Stat. Ann. §358-A:2.

722.    At all relevant times, Plaintiffs, members of the New Hampshire Subclass, and Defendant were "persons" within the meaning of the New Hampshire CPA. *See* N.H. Rev. Stat. Ann. §358-A:1, I.

723.    Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce in violation of N.H. Rev. Stat. Ann. §358-A:2 as described in the allegations above.

724.    As a result, Defendant's conduct violates several provisions of the New Hampshire CPA, including but not limited to:

    a.  Section 358-A:2, II:  Causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods—here, Defendant's willful failure to disclose to consumers the excessive amounts of toxins in toxic baby food while at the same time asserting that the toxic baby food irrelevant safety standards causes the likelihood of confusion or misunderstanding about the sources and

certifications of its ingredients in that it causes a likelihood that consumers will believe the toxic baby food does not contain excessive amounts of toxins as approved by the authorities who issue certain safety regulations.  This provision does not require proof of actual confusion or misunderstanding;

b. Section 358-A:2, III:  Causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another—here, Defendant's willful failure to disclose to consumers the excessive amounts of toxins in toxic baby food while at the same time asserting that the toxic baby food irrelevant safety standards causes the likelihood of confusion or misunderstanding about the sources and certifications of its ingredients in that it causes a likelihood that consumers will believe the toxic baby food does not contain excessive amounts of toxins as approved by the authorities who issue certain safety regulations.  This provision does not require proof of actual confusion or misunderstanding;

c. Section 358-A:2, V: Representing that the subject of a consumer transaction has sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that it do not have—here, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins; and

d. Section 358-A:2, VII:  Representing that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not—as above, Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product

which consumers could use without unduly exposing their babies to health risks from exposure to toxins.

725.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

726.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

727.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the New Hampshire Subclass.

728.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the New Hampshire Subclass has little alternative but to submit and causes consumers substantial injury.

729.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

730.    The New Hampshire Subclass has suffered economic injury as a direct and proximate result of the Defendant's conduct.

731.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b. Designating Plaintiffs as Class representative and counsel as Class counsel;

c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d. Awarding Plaintiffs and Class members their damages or $1,000, whichever is greater; three times the amount of their damages or $1,000, as the case may be; reasonable attorneys' fees; costs; and

e. Granting such further relief as the Court deems just.

**COUNT 40**
**Violation of the New Jersey Consumer Fraud Act (N.J. Stat. Ann. §§56:8-1, *et seq.*), on Behalf of Plaintiffs Brittany Distaso, Brenda Schroeder, Charisse Zapata, and the New Jersey Subclass**

732. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

733. Plaintiffs Brittany Distaso, Brenda Schroeder, and Charisse Zapata bring this Count individually and on behalf of the New Jersey Subclass.

734. New Jersey's Consumer Fraud Act ("New Jersey CFA") prohibits any "act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise."

735. At all relevant times, members of the New Jersey Subclass and Defendant were "persons" within the meaning of the New Jersey CFA. *See* N.J. Stat. Ann. §56:8-1(d).

736. Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with the sale of merchandise (as defined by N.J. Stat. Ann. §56:8-1(c)) in violation of N.J. Stat. Ann. §56:8-2 as described in the allegations above.

737. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

738. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

739. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the New Jersey Subclass.

740. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the New Jersey Subclass has little alternative but to submit and causes consumers substantial injury.

741. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

742. The New Jersey Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

743. As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

    a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

    b. Designating Plaintiffs as Class representative and counsel as Class counsel;

    c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

    d. Awarding Plaintiffs and Class members their damages; threefold their damages; reasonable attorneys' fees; filing fees; and costs; and

    e. Granting such further relief as the Court deems just.

## COUNT 41
### Violation of the New Mexico Unfair Practices Act (N.M. Stat. Ann. §§57-12-1, *et seq.*), on Behalf of Plaintiffs Ayame Tatiana Galassini, Bridget Salopek, and the New Mexico Subclass

744. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

745. Plaintiffs Ayame Tatiana Galassini, and Bridget Salopek bring this Count individually and on behalf of the New Mexico Subclass.

746. New Mexico's Unfair Practices Act ("New Mexico UPA") prohibits any "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce."

747. At all relevant times, members of the New Mexico Subclass and Defendant were "persons" within the meaning of the New Mexico UPA. *See* N.M. Stat. Ann. §57-12-1(A).

748. Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in

connection with trade or commerce in violation of N.M. Stat. Ann. §57-12-3 as described in the allegations above.

749.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce that Defendant intended to induce consumers to buy toxic baby food.

750.    Defendant's misrepresentations and omissions were likely to mislead an ordinary consumer.  Plaintiffs and the New Mexico Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health.  Plaintiffs and the New Mexico Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

751.    If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the New Mexico Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the New Mexico Subclass would not have purchased Defendant's toxic baby food.

752.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

753.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

754.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the New Mexico Subclass.

755.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the New Mexico Subclass has little alternative but to submit and causes consumers substantial injury.

756.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

757.     The New Mexico Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

758.     As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.    Designating Plaintiffs as Class representative and counsel as Class counsel;

c.    Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.    Awarding Plaintiffs and Class members treble damages or $300, whichever is greater; attorneys' fees, and costs; and

e.    Granting such further relief as the Court deems just.

## COUNT 42
**Violation of the New York Deceptive Acts and Practices (N.Y. Gen. Bus. Law §§349, *et seq.*), on Behalf of Plaintiffs Melissa Bloomquist-Smith, Sudipta Dutta, Shelby Geraci, Lori Ann Louis, and the New York Subclass**

759.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

760.    Plaintiffs Melissa Bloomquist-Smith, Sudipta Dutta, Shelby Geraci, and Lori Ann Louis bring this Count individually and on behalf of the New York Subclass.

761.    New York's Deceptive Acts and Practices prohibits any "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."

762.    Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce in violation of N.Y. Gen. Bus. Law §349 as described in the allegations above.

763.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce that Defendant intended to induce consumers to buy toxic baby food.

764.    Defendant's misrepresentations and omissions were likely to mislead an ordinary consumer.  Plaintiffs and the New York Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health.  Plaintiffs and the New York Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

765.    If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the New York Subclass would have been aware that the toxic baby food contained excessive amounts of toxins

and was of substandard quality, and Plaintiffs and the New York Subclass would not have purchased Defendant's toxic baby food.

766.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

767.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

768.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the New York Subclass.

769.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the New York Subclass has little alternative but to submit and causes consumers substantial injury.

770.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

771.    The New York Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

772.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b. Designating Plaintiffs as Class representative and counsel as Class counsel;

c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d. Awarding Plaintiffs and Class members three times their actual damages or $1,000, whichever is greater; reasonable attorneys' fees; and costs; and

e. Granting such further relief as the Court deems just.

## COUNT 43
**Violation of the North Carolina Unfair Trade Practices Act (N.C. Gen. Stat. §§ 75-1.1, *et seq.*), on Behalf of Plaintiffs Krystal Leigh Anderson, Theresa Fintonis, Heather Key, Marquetta Matthews, Amanda Schram, Beverly Watkins, and the North Carolina Subclass**

773. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

774. Plaintiffs Krystal Leigh Anderson, Theresa Fintonis, Heather Key, Marquetta Matthews, Amanda Schram, and Beverly Watkins bring this Count individually and on behalf of the North Carolina Subclass.

775. North Carolina Unfair Trade Practices Act prohibits any "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."

776. Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they

intended others to reasonably rely upon in connection with trade or commerce in violation of N.C. Gen. Stat. §75-1.1(a) as described in the allegations above.

777.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce that Defendant intended to induce consumers to buy toxic baby food.

778.   Defendant's misrepresentations and omissions were likely to mislead an ordinary consumer.  Plaintiffs and the North Carolina Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health.  Plaintiffs and the North Carolina Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

779.   If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the North Carolina Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the North Carolina Subclass would not have purchased Defendant's toxic baby food.

780.   Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

781.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

782.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the North Carolina Subclass.

783.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the North Carolina Subclass has little alternative but to submit and causes consumers substantial injury.

784.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

785.    The North Carolina Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

786.    As a direct and proximate result of the foregoing acts and practices Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.    Designating Plaintiffs as Class representative and counsel as Class counsel;

c.    Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.    Awarding Plaintiffs and Class members treble damages, attorneys' fees, and costs; and

e.    Granting such further relief as the Court deems just.

## COUNT 44
**Violation of the North Dakota Unlawful Sales or Advertising Practices Act (N.D. Cent. Code §§51-15-01, *et seq.*), on Behalf of Plaintiffs Rachael Kruup, Ashley Swenningson, Rachael TreeTop, and the North Dakota Subclass**

787.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

788.    Plaintiffs Rachael Kruup, Ashley Swenningson, and Rachael TreeTop bring this Count individually and on behalf of the North Dakota Subclass.

789.    North Dakota's Unlawful Sales or Advertising Practices Act ("North Dakota USAPA") prohibits any "act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby."

790.    At all relevant times, members of the North Dakota Subclass and Defendant were "persons" within the meaning of the North Dakota USAPA.  *See* N.D. Cent. Code §51-15-01(4).

791.    Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with the sale or advertisement of "merchandise" (as defined by N.D. Cent. Code §51-15-01(3)) in violation of N.D. Cent. Code §51-15-02 as described in the allegations above.

792.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce that Defendant intended to induce consumers to buy toxic baby food.

793.    Defendant's misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs and the North Dakota Subclass reasonably understood Defendant's omissions

to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiffs and the North Dakota Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

794.    If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the North Dakota Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the North Dakota Subclass would not have purchased Defendant's toxic baby food.

795.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

796.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

797.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the North Dakota Subclass.

798.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the North Dakota Subclass has little alternative but to submit and causes consumers substantial injury.

799.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

800.    The North Dakota Subclass has suffered economic injury as a direct and proximate result of the Defendant's conduct.

801.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

c.  Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.  Awarding Plaintiffs and Class members three times the actual damages, costs, disbursements, and actual reasonable attorneys' fees; and

e.  Granting such further relief as the Court deems just.

## COUNT 45
**Violation of the Ohio Consumer Sales Protection Act (Ohio Rev. Code Ann. §§1345, *et seq.*), on Behalf of Plaintiffs Olivia Johnson Kali McGlinch, and the Ohio Subclass**

802.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

803.    Plaintiffs Olivia Johnson and Kali McGlinch bring this Count individually and on behalf of the Ohio Subclass.

804.    Ohio's Consumer Sales Protection Act ("Ohio CSPA") prohibits any "unfair or deceptive act or practice in connection with a consumer transaction."

805.    At all relevant times, members of the Ohio Subclass and Defendant were "persons" within the meaning of the Ohio CSPA.  *See* Ohio Rev. Code Ann. §1345.01(B).

806.    Specifically, the Ohio CSPA forbids: (1) representing that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have; (2) representing hat the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not; and (3) knowingly providing a disclosure that includes a material misrepresentation.  *See* Ohio Rev. Code Ann. §1345.02.

807.    Further, the Ohio CSPA unconscionable acts or practices in connection with a consumer transaction, including but not limited to: (1) knowingly taking advantage of the inability of the consumer reasonably to protect the consumer's interest because of the consumer's ignorance, and (2) knowingly making a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment.

808.    Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with a consumer transaction (as defined by Ohio Rev. Code Ann. §1345.01(A)) in violation of Ohio Rev. Code Ann. §1345.02(A) as described in the allegations above.

809.    As a result, Defendant's conduct violates several provisions of the Ohio CSPA, including but not limited to:

a.  Section 1345.02(B)(1):  Representing that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have —here, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product

which consumers could use without unduly exposing their babies to the risk of exposure to toxins;

b.  Section 1345.02(B)(7):  Representing hat the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not—as above, Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins;

c.  Section 1345.02(F)(2):  Knowingly providing a disclosure that includes a material misrepresentation—as one example, Defendant willfully failed to disclose to consumers the excessive amounts of toxins in toxic baby food and instead disclosing that the toxic baby food met government safety standards, which standards were irrelevant to the toxins that are the subject of this action;

d.  Section 1345.03(B)(1):  Knowingly taking advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's ignorance—the Defendant had knowledge about the amounts of toxins in its toxic baby food, which information:

i.  Defendant measures and analyzes in the regular operation of its business;

ii.  Is directly related to consumers' interest; and

iii.  Is not within the ability of the consumer to reasonably measure and analyze.

e.  Section 1345.03(B)(6):  Knowingly making a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment—Defendant's branding of its toxic baby food, including but not limited to opinions and other descriptive language, carried with it the impression that the toxic baby food was a

safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins, which branding the Defendant knew consumers would rely upon when purchasing baby food.

810.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce that Defendant intended to induce consumers to buy toxic baby food.

811.    Defendant's misrepresentations and omissions were likely to mislead an ordinary consumer.  Plaintiffs and the Ohio Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiffs and the Ohio Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

812.    If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the Ohio Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Ohio Subclass would not have purchased Defendant's toxic baby food.

813.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

814.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

815.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Ohio Subclass.

816.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Ohio Subclass has little alternative but to submit and causes consumers substantial injury.

817.     The Ohio Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

818.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

819.     As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

    a.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

    b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

    c.  Entering judgment in favor of Plaintiffs and the Class and against Defendant;

    d.    Awarding Plaintiffs and Class members three times the amount of their actual damages or $200, whichever is greater, plus $5,000 in noneconomic or recover damages; reasonable attorneys' fees; and costs; and

    e.    Granting such further relief as the Court deems just.

### COUNT 46
### Violation of the Oklahoma Consumer Protection Act (Okla. Stat. tit. 15, §§751, *et seq.*), on Behalf of Plaintiffs Lindsay Barr, Amanda Hobbs-Rogers, Monique Warren, and the Oklahoma Subclass

820.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

821.    Plaintiffs Lindsay Barr, Amanda Hobbs-Rogers, and Monique Warren bring this Count individually and on behalf of the Oklahoma Subclass.

822.    At all relevant times, members of the Oklahoma Subclass and Defendant were "persons" within the meaning of the Oklahoma Consumer Protection Act ("Oklahoma CPA"). *See* Okla. Stat. tit. 15, §752(1).

823.    Oklahoma's CPA" prohibits "any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and any "misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person." *See* Okla. Stat. tit. 15, §752(14).

824.    Specifically, the Oklahoma CPA forbids: (1) making a false or misleading representation, knowingly or with reason to know, as to the source, sponsorship, approval, or certification of the subject of a consumer transaction; (2) making a false representation, knowingly or with reason to know, as to the characteristics, ingredients, uses, benefits, alterations, or quantities of the subject of a consumer transaction or a false representation as to the sponsorship,

approval, status, affiliation or connection of a person therewith; (3) representing, knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another; and (4) committing an unfair or deceptive trade practice as defined in Okla. Stat. tit. 15, §752.

825.   Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material reasonably expected to deceive or mislead consumers in violation of Okla. Stat. tit. 15, §753(20) as described in the allegations above.

826.   As a result, Defendant's conduct violates several provisions of the Oklahoma CPA, including but not limited to:

    a.   Section 15-753(2):  Making a false or misleading representation, knowingly or with reason to know, as to the source, sponsorship, approval, or certification of the subject of a consumer transaction—here, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins;

    b.   Section 15-753(5):  Making a false representation, knowingly or with reason to know, as to the characteristics, ingredients, uses, benefits, alterations, or quantities of the subject of a consumer transaction or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith—as above, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins;

c. Section 15-753(7): Representing, knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another—as one example, Defendant willfully failed to disclose to consumers the excessive amounts of toxins in toxic baby food and instead disclosing that the toxic baby food met government safety standards, which standards were irrelevant to the toxins that are the subject of this action; and

d. Section 15-753(20): Committing an unfair or deceptive trade practice as defined in Okla. Stat. tit. 15, §752—Defendant's induced consumers to buy toxic baby food by, among other acts, making calculated references to irrelevant government safety standards to deceive consumers that they should trust Defendant and not have concerns about the amounts of heavy metals and other toxins in the baby food, which trade practices are deceptive, unfair, immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

827. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce that Defendant intended to induce consumers to buy toxic baby food.

828. Defendant's misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs and the Oklahoma Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiffs and the Oklahoma Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

829. If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the Oklahoma

Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Oklahoma Subclass would not have purchased Defendant's toxic baby food.

830.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

831.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

832.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Oklahoma Subclass.

833.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Oklahoma Subclass has little alternative but to submit and causes consumers substantial injury.

834.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

835.    The Oklahoma Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

836.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

    a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

    b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

    c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

    d.   Awarding Plaintiffs and Class members damages and $10,000 each for their reasonable attorneys' fees and costs; and

    e.   Granting such further relief as the Court deems just.

**COUNT 47**
**Violation of the Oregon Unlawful Trade Practices Act (Ore. Rev. Stat. §§646.605, *et seq.*), on Behalf of Plaintiffs Angela Cox, Corinthea Pangelinan, Karina Pena, and the Oregon Subclass**

837.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

838.    Plaintiffs Angela Cox, Corinthea Pangelinan, and Karina Pena bring this Count individually and on behalf of the Oregon Subclass.

839.    At all relevant times, Plaintiffs, the Oregon Subclass, and Defendant were "persons" within the meaning of Ore. Rev. Stat. §646.605(4).

840.    The Oregon Unlawful Trade Practices Act ("Oregon UTPA") prohibits unconscionable tactics in connection with selling goods and further prohibits misleading representations in connection with selling goods. *See* Ore. Rev. Stat. §§646.607(1) and 646.608. Such a misleading representation "may be a manifestation of any assertion by words or conduct, including, but not limited to, a failure to disclose a fact." *See* Ore. Rev. Stat. §646.607(2).

841.    Defendant unlawfully engaged in unconscionable tactics and made misleading representations in connection with the sale of toxic baby food as described in the allegations above.

842.    As a result, Defendant's conduct violates several provisions of the Oregon UTPA, including but not limited to:

   a.   Section 646.607(1):  Employing any unconscionable tactic in connection with selling goods—here, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins;

   b.   Section 646.608(c):  Causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods—here, Defendant's willful failure to disclose to consumers the excessive amounts of toxins in toxic baby food causes the likelihood of confusion or misunderstanding about the sources and certifications of its ingredients in that it causes a likelihood that consumers will believe the toxic baby food does not contain excessive amounts of toxins and is regarded as safe for babies to eat.  This provision does not require proof of actual confusion or misunderstanding.  Ore. Rev. Stat. §646.608(3); and

   c.   Section 646.608(g): that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another—as above, Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins.

843. Defendant's omissions in violation of the Oregon UTPA were likely to mislead an ordinary consumer. Plaintiffs and the Oregon Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiffs and the Oregon Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

844. If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the Oregon Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Oregon Subclass would not have purchased Defendant's toxic baby food.

845. Defendant's omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

846. Plaintiffs and the Oregon Subclass relied to their detriment on Defendant's omissions in purchasing toxic baby food.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b. Designating Plaintiffs as Class representative and counsel as Class counsel;

c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

    d.   Awarding Plaintiffs and Class members their actual damages or $200, whichever is

greater; punitive damages; attorneys' fees; and costs; and

    e.   Granting such further relief as the Court deems just.

## COUNT 48
### Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 Pa. Cons. Stat. §§201-1, *et seq.*), on Behalf of Plaintiffs Jennifer Bainbridge, Sara Kilburn Rachel Knudson, Rachael Kruup, Lea Santos, and the Pennsylvania Subclass

847.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

848.    Plaintiffs Jennifer Bainbridge, Sara Kilburn Rachel Knudson, Rachael Kruup, and Lea Santos bring this Count individually and on behalf of the Pennsylvania Subclass.

849.    At all relevant times, members of the Pennsylvania Subclass and Defendant were "persons" within the meaning of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania UTPCPL"). *See* 73 Pa. Cons. Stat. §201-2(2).

850.    Pennsylvania's UTPCPL prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

851.    Among other things, the Pennsylvania UTPCPL specifically defines the following acts and representations about the subject matter of the consumer transaction as deceptive acts: (1) causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods; (2) causing likelihood of confusion or misunderstanding as to affiliation, connection, or associations with, or certification by, another; (3) representing that such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have; (4) representing that such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is

not; and (5) engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

852. Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with trade or commerce in violation of 73 Pa. Cons. Stat. §201-3 as described in the allegations above.

853. As a result, Defendant's conduct violates several provisions of the Pennsylvania UTPCPL, including but not limited to:

    a.  Section 201-2(4)(i): Causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods—here, Defendant's willful failure to disclose to consumers the excessive amounts of toxins in toxic baby food while at the same time asserting that the toxic baby food irrelevant safety standards causes the likelihood of confusion or misunderstanding about the sources and certifications of its ingredients in that it causes a likelihood that consumers will believe the toxic baby food does not contain excessive amounts of toxins as approved by the authorities who issue certain safety regulations. This provision does not require proof of actual confusion or misunderstanding;

    b.  Section 201-2(4)(iii): Causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another—here, Defendant's willful failure to disclose to consumers the excessive amounts of toxins in toxic baby food while at the same time asserting that the toxic baby food irrelevant safety standards causes the likelihood of confusion or misunderstanding about the sources and certifications of its ingredients in that it causes a likelihood

that consumers will believe the toxic baby food does not contain excessive amounts of toxins as approved by the authorities who issue certain safety regulations. This provision does not require proof of actual confusion or misunderstanding;

c.  Section 201-2(4)(v):  Representing that the subject of a consumer transaction has sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that it do not have—here, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins;

d.  Section 201-2(4)(vii):  Representing that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not—as above, Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins; and

e.  Section 201-2(4)(xxi):  Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding—Defendant's willful failure to disclose to consumers the excessive amounts of toxins in toxic baby food while at the same time asserting that the toxic baby food irrelevant safety standards causes the likelihood of confusion or misunderstanding about the sources and certifications of its ingredients in that it causes a likelihood that consumers will believe the toxic baby food does not contain excessive amounts of toxins as approved by the authorities who issue certain safety regulations.

854. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce that Defendant intended to induce consumers to buy toxic baby food.

855. Defendant's misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs and the Pennsylvania Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiffs and the Pennsylvania Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

856. If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the Pennsylvania Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Pennsylvania Subclass would not have purchased Defendant's toxic baby food.

857. Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

858. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

859. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Pennsylvania Subclass.

860.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Pennsylvania Subclass has little alternative but to submit and causes consumers substantial injury.

861.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

862.   The Pennsylvania Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

863.   As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

   a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

   b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

   c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

   d.   Awarding Plaintiffs and Class members three times their actual damages but not less than $100; reasonable attorneys' fees; and costs; and

   e.   Granting such further relief as the Court deems just.

## COUNT 49

### Violation of the Rhode Island Deceptive Trade Practices Act (R.I. Gen. Laws §§6-13.1, *et seq.*), on Behalf of Plaintiffs Karleen Kozaczka, Lori Ann Louis, Jo-Ellen Paterno, and the Rhode Island Subclass

864.　Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

865.　Plaintiffs Karleen Kozaczka, Lori Ann Louis, and Jo-Ellen Paterno bring this Count individually and on behalf of the Rhode Island Subclass.

866.　At all relevant times, Plaintiffs, the Rhode Island Subclass, and Defendant were "persons" within the meaning of R.I. Gen. Laws §6-13.1-1(3).

867.　The Rhode Island Deceptive Trade Practices Act prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. R.I. Gen. Laws §6-13.1-2.

868.　Defendant willfully engaged in unfair, deceptive, and/or unlawful practices as described in the allegations above.

869.　Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce that Defendant intended to induce consumers to buy toxic baby food.

870.　Defendant's misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs and the Rhode Island Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health.　Plaintiffs and the Rhode Island Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

871.　If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the Rhode Island

Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Rhode Island Subclass would not have purchased Defendant's toxic baby food.

872.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

873.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

874.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Rhode Island Subclass.

875.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Rhode Island Subclass has little alternative but to submit and causes consumers substantial injury.

876.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

877.    The Rhode Island Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

878.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

879.    Plaintiffs and the Rhode Island Subclass suffered loss of money as a direct and proximate result of Defendant's unfair, deceptive practices.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

c.  Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.  Awarding Plaintiffs and Class members their damages or $200, whichever is greater; punitive damages; reasonable attorneys' fees; and costs; and

e.  Granting such further relief as the Court deems just.

**COUNT 50**
**Violation of the South Carolina Unfair Trade Practices Act (S.C. Code Ann. §§39-5-10, *et seq.*), on Behalf of Plaintiffs Elizabeth Austin, Kristian Germain, Amanda Schram, and the South Carolina Subclass**

880.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

881.    Plaintiffs Elizabeth Austin, Kristian Germain, and Amanda Schram bring this Count individually and on behalf of the South Carolina Subclass.

882.    At all relevant times, Plaintiffs, the South Carolina Subclass, and Defendant were "persons" within the meaning of S.C. Code Ann. §39-5-10(a).

883.    The South Carolina Unfair Trade Practices Act prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. *See* S.C. Code Ann. §39-5-20.

884. Defendant willfully engaged in unfair, deceptive, and/or unlawful practices as described in the allegations above.

885. Defendant's misrepresentations, omissions, and suppression of material information in the sale of its toxic baby food are acts or practices in the conduct or trade or commerce.

886. Plaintiffs and the South Carolina Subclass suffered loss of money as a direct and proximate result of Defendant's unfair, deceptive practices.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

    a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

    b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

    c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

    d.   Awarding Plaintiffs and Class members three times their damages; reasonable attorneys' fees; and costs; and

    e.   Granting such further relief as the Court deems just.

### COUNT 51
### Violation of the South Dakota Deceptive Trade Practices and Consumer Protection Act (S.D. Codified Laws §§37-24-1, *et seq.*), on Behalf of Plaintiffs Rachael Kruup and the South Dakota Subclass

887. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

888. Plaintiffs Rachael Kruup brings this Count individually and on behalf of the South Dakota Subclass.

889.    It is a deceptive act or practice under South Dakota's Deceptive Trade Practices and Consumer Protection Act for any person to "knowingly act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby." *See* S.D. Codified Laws §37-24-6(1).

890.    At all relevant times, members of the South Dakota Subclass and Defendant were "persons" within the meaning of the Deceptive Trade Practices and Consumer Protection Act. *See* S.D. Codified Laws §37-24-1(8).

891.    Defendant willfully and knowingly engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with the sale or advertisement of merchandise (as defined by S.D. Codified Laws §37-24-1(7)) in violation of S.D. Codified Laws §37-24-6(1) as described in the allegations above.

892.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

893.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

894.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching the Defendant at the expense of the South Dakota Subclass.

895.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the South Dakota Subclass has little alternative but to submit and causes consumers substantial injury.

896.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

897.     The South Dakota Subclass has suffered economic injury as a direct and proximate result of the Defendant's conduct.

898.     As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, prays for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b. Designating Plaintiffs as Class representative and counsel as Class counsel;

c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d. Awarding Plaintiffs and Class members damages; and

e. Granting such further relief as the Court deems just.

## COUNT 52

**Violation of the Tennessee Consumer Protection Act (Tenn. Code Ann. §§47-18-102, *et seq.*), on Behalf of Plaintiffs Megan Ashley, Kelsey Blankenship, Augustina Briones, Elizabeth McDowell, Kinder Smith, Casey Tisdale, and the Tennessee Subclass**

899. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

900. Plaintiffs Megan Ashley, Kelsey Blankenship, Augustina Briones, Elizabeth McDowell, Kinder Smith, and Casey Tisdale bring this Count individually and on behalf of the Tennessee Subclass.

901. At all relevant times, Plaintiffs, the Tennessee Subclass, and Defendant were "persons" within the meaning of Tenn. Code Ann. §47-18-103(14).

902. The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits unfair or deceptive actions or practices affecting the conduct of any trade or commerce.

903. Defendants willfully engaged in unfair or deceptive actions or practices affecting the conduct of trade or commerce as described in the allegations above.

904. As a result, Defendant's conduct violates several provisions of the Tennessee CPA, including but not limited to:

   a. Section 47-18-104(b)(2): causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services—here, Defendant's willful failure to disclose to consumers the excessive amounts of toxins in toxic baby food causes the likelihood of confusion or misunderstanding about the sources and certifications of its ingredients in that it causes a likelihood that consumers will believe the toxic baby food does not contain excessive amounts of toxins and is regarded as safe for babies to eat;

b. Section 47-18-104(b)(5): Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have—Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins; and

c. Section 47-18-104(b)(7): Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another—as above, Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins.

905. Defendant's omissions in violation of the Tennessee CPA were likely to mislead an ordinary consumer. Plaintiffs and the Tennessee Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiffs and the Tennessee Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

906. If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the Tennessee Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Tennessee Subclass would not have purchased Defendant's toxic baby food.

907. Defendant's omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

908. Plaintiffs and the Tennessee Subclass relied to their detriment on Defendant's omissions in purchasing toxic baby food.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

    a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

    b. Designating Plaintiffs as Class representative and counsel as Class counsel;

    c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

    d. Awarding Plaintiffs and Class members three times their damages; reasonable attorneys' fees; costs; and

    e. Granting such further relief as the Court deems just.

## COUNT 53
**Violation of the Texas Deceptive Trade Practices-Consumer Protection Act (Tex. Bus. & Com. Code Ann. §§17.41, *et seq.*), on Behalf of Plaintiffs Augustina Briones, Amanda Hobbs-Rogers, Rachel Knudson, Bridget Salopek, Shiloh Thomas, and the Texas Subclass**

909. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

910. Plaintiffs Augustina Briones, Amanda Hobbs-Rogers, Rachel Knudson, Bridget Salopek, and Shiloh Thomas bring this Count individually and on behalf of the Texas Subclass.

911.    At all relevant times, members of the Texas Subclass and Defendant were "persons" within the meaning of the Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPCPA"). *See* Tex. Bus. & Com. Code Ann. §17.45(3).

912.    Texas' DTPCPA prohibits any "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce" or any "act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree."

913.    Among other things, the Texas DTPCPA prohibits: (1) causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods; (2) causing likelihood of confusion or misunderstanding as to affiliation, connection, or associations with, or certification by, another; (3) representing such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have; and (4) representing that such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not.

914.    Defendant willfully and purposefully engaged in deceptive, unconscionable, and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with trade or commerce in violation of Tex. Bus. & Com. Code Ann. §§17.50(a)(1)(B) and (3) as described in the allegations above.

915.    As a result, Defendant's conduct violates several provisions of the Texas UDTPA, including but not limited to:

a.    Section 17.46(b)(2):  Causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods—here, Defendant's willful

failure to disclose to consumers the excessive amounts of toxins in toxic baby food while at the same time asserting that the toxic baby food irrelevant safety standards causes the likelihood of confusion or misunderstanding about the sources and certifications of its ingredients in that it causes a likelihood that consumers will believe the toxic baby food does not contain excessive amounts of toxins as approved by the authorities who issue certain safety regulations. This provision does not require proof of actual confusion or misunderstanding;

b. Section 17.46(b)(3): Causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another—here, Defendant's willful failure to disclose to consumers the excessive amounts of toxins in toxic baby food while at the same time asserting that the toxic baby food irrelevant safety standards causes the likelihood of confusion or misunderstanding about the sources and certifications of its ingredients in that it causes a likelihood that consumers will believe the toxic baby food does not contain excessive amounts of toxins as approved by the authorities who issue certain safety regulations. This provision does not require proof of actual confusion or misunderstanding;

c. Section 17.46(b)(5): Representing that the subject of a consumer transaction has sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that it do not have—here, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins; and

d. Section 17.46(b)(7): Representing that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not—as above, Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins.

916. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce that Defendant intended to induce consumers to buy toxic baby food.

917. Defendant's misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs and the Texas Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiffs and the Texas Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

918. If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the Texas Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Texas Subclass would not have purchased Defendant's toxic baby food.

919. Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

920. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

921.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Texas Subclass.

922.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Texas Subclass has little alternative but to submit and causes consumers substantial injury.

923.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

924.    The Texas Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

925.    Plaintiffs have complied with the statute's pre-suit notice requirement.  Plaintiffs provided Defendant pre-suit notice pursuant to Tex. Bus. & Com. Code Ann. §17.505 by sending a certified letter containing the basis of Plaintiffs' claims on March 12, 2021.  Said notice was received by Defendant on March 24, 2021.

926.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b. Designating Plaintiffs as Class representative and counsel as Class counsel;

c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d. Awarding Plaintiffs and Class members three times their damages; reasonable and necessary attorneys' fees; costs; and

e. Granting such further relief as the Court deems just.

**COUNT 54**
**Violation of the Utah Consumer Sales Practices Act (Utah Code Ann. §§13-11-1, *et seq.*), on Behalf of Plaintiffs Courtney Barron, Austin Gunderson, Kali McGlinch, and the Utah Subclass**

927.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

928.     Plaintiffs Courtney Barron, Austin Gunderson, and Kali McGlinch bring this Count individually and on behalf of the Utah Subclass.

929.     At all relevant times, members of the Utah Subclass and Defendant were "persons" within the meaning of Utah Code Ann. §13-11-1(5).

930.     At all relevant times, Defendant were "suppliers" within the meaning of Utah Code Ann. §13-11-1(6).

931.     Utah's Consumer Sales Practices Act ("Utah CSPA") prohibits any "deceptive act or practice by a supplier in connection with a consumer transaction" or any "unconscionable act or practice by a supplier in connection with a consumer transaction."

932.     Among other things, the Utah CSPA prohibits: (1) representing such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses,

or benefits it does not have which the supplier knows or should reasonably know it does not have; and (2) representing that such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not.

933. Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection consumer transactions (as defined in Utah Code Ann. §13-11-1(2)) in violation Utah Code Ann. §§13-11-4(1) and 13-11-5(1) as described in the allegations above.

934. As a result, Defendant's conduct violates several provisions of the Utah CSPA, including but not limited to:

    a. Section 13-11-4(2)(a): Representing that the subject of a consumer transaction has sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that it do not have—here, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins; and

    b. 13-11-4(2)(b): Representing that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not—as above, Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins.

935.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce that Defendant intended to induce consumers to buy toxic baby food.

936.    Defendant's misrepresentations and omissions were likely to mislead an ordinary consumer.  Plaintiffs and the Utah Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiffs and the Utah Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

937.    If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the Utah Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Utah Subclass would not have purchased Defendant's toxic baby food.

938.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

939.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

940.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriches Defendant at the expense of the Utah Subclass.

941.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Utah Subclass has little alternative but to submit and causes consumers substantial injury.

942.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

943.     The Utah Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct

944.     As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

 a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

 b. Designating Plaintiffs as Class representative and counsel as Class counsel;

 c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

 d. Awarding Plaintiffs and Class members their damages or $2,000, whichever is greater; reasonable attorneys' fees; costs; and

 e. Granting such further relief as the Court deems just.

## COUNT 55
**Violation of the Utah Truth in Advertising Act (Utah Code Ann. §§13-11a-1, *et seq.*), on Behalf of Plaintiffs Courtney Barron, Austin Gunderson, Kali McGlinch, and the Utah Subclass**

945.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

946.     Plaintiffs Courtney Barron, Austin Gunderson and Kali McGlinch bring this Count individually and on behalf of the Utah Subclass.

947.     At all relevant times, members of the Utah Subclass and Defendant were "persons" within the meaning of Utah Code Ann. §13-11a-2(7).

948.     Utah's Truth in Advertising Act ("Utah TIAA") prohibits any "deceptive, misleading, and false advertising practices and forms in Utah." *See* Utah Code Ann. §13-11a-1.

949.     Among other things, Utah TIAA forbids:  (1) causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods; (2) causing likelihood of confusion or misunderstanding as to affiliation, connection, or associations with, or certification by, another; (3) representing such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have; and (4) representing that such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not.

950.     Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as alleged above when advertising their toxic baby food in Utah.

951.     As a result, Defendant's conduct violates several provisions of the Utah TIAA, including but not limited to:

a. Section 13-11a-3(b):  Causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods—here, Defendant's willful failure to disclose to consumers the excessive amounts of toxins in toxic baby food while at the same time asserting that the toxic baby food irrelevant safety standards causes the likelihood of confusion or misunderstanding about the sources and certifications of its ingredients in that it causes a likelihood that consumers will believe the toxic baby food does not contain excessive amounts of toxins as approved by the authorities who issue certain safety regulations.  This provision does not require proof of actual confusion or misunderstanding, Utah Code Ann. §13-11a-3(6);

b. Section 13-11a-3(c): Causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another—here, Defendant's willful failure to disclose to consumers the excessive amounts of toxins in toxic baby food while at the same time asserting that the toxic baby food irrelevant safety standards causes the likelihood of confusion or misunderstanding about the sources and certifications of its ingredients in that it causes a likelihood that consumers will believe the toxic baby food does not contain excessive amounts of toxins as approved by the authorities who issue certain safety regulations.  This provision does not require proof of actual confusion or misunderstanding, Utah Code Ann. §13-11a-3(6);

c. Section 13-11a-3(e):  Representing that the subject of a consumer transaction has sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that it do not have—here, Defendant's branding of its toxic baby food carried with it

the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins; and

d. Section 13-11a-3(g): Representing that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not—as above, Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins.

952. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above are deceptive, misleading, and false advertising practices and forms in Utah that Defendant intended to induce consumers to buy toxic baby food.

953. Defendant's misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs and the Utah Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiffs and the Utah Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

954. If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the Utah Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Utah Subclass would not have purchased Defendant's toxic baby food.

955.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

956.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

957.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriches Defendant at the expense of the Utah Subclass.

958.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Utah Subclass has little alternative but to submit and causes consumers substantial injury.

959.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

960.    The Utah Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

961.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

c.  Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.  Awarding Plaintiffs and Class members their damages or $2,000, whichever is greater; reasonable attorneys' fees; costs; and

e.  Granting such further relief as the Court deems just.

## COUNT 56
**Violation of the Vermont Consumer Protection Act (Vt. Stat. Ann. tit. 9, §§2451, *et seq.*), on Behalf of Plaintiffs Traci Marie Lussier, Lyrik Merlin, Rachel Stratton, and the Vermont Subclass**

962.  Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

963.  Plaintiffs Traci Marie Lussier, Lyrik Merlin, and Rachel Stratton bring this Count individually and on behalf of the Vermont Subclass.

964.  Vermont's Consumer Protection Act prohibits any "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce."

965.  Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce leading to damages and/or injury in violation of Vt. Stat. Ann. tit. 9, §2453(a) as described in the allegations above.

966.  Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce that Defendant intended to induce consumers to buy toxic baby food.

967. Defendant's misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs and the Vermont Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiffs and the Vermont Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

968. If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the Vermont Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Vermont Subclass would not have purchased Defendant's toxic baby food.

969. Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

970. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

971. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it inequitably enriches Defendant at the expense of the Vermont Subclass.

972. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Vermont Subclass has little alternative but to submit and causes consumers substantial injury.

973. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children

from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

974.    The Vermont Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

975.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

   a.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

   b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

   c.  Entering judgment in favor of Plaintiffs and the Class and against Defendant;

   d.  Awarding Plaintiffs and Class members their damages; exemplary damages of three times their damages; reasonable attorneys' fees; and costs; and

   e.  Granting such further relief as the Court deems just.

**COUNT 57**
**Violation of the Virginia Consumer Protection Act (Va. Code Ann. §§59.1-196, *et seq.*), on Behalf of Plaintiffs Elizabeth Austin, Ashley Baxter, Katrina Thomas, and the Virginia Subclass**

976.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

977.    Plaintiffs Elizabeth Austin, Ashley Baxter, and Katrina Thomas bring this Count individually and on behalf of the Virginia Subclass.

978. At all relevant times, Plaintiffs, the Virginia Subclass, and Defendant were "persons" within the meaning of Va. Code Ann. §59.1-198.

979. The Virginia Consumer Protection Act ("Virginia CPA") prohibits fraudulent acts or practices committed by a supplier in connection with a consumer transaction.

980. Among other things, the Virginia CPA prohibits: (1) misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits; (2) misrepresenting that good or services are of a particular standard, quality, grade, style, or model; and (3) using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction. *See* Va. Code Ann. §59.1-200.

981. Defendant willfully engaged in fraudulent acts or practices in connection with consumer transactions as described by the allegations above.

982. As a result, Defendant's conduct violates several provisions of the Virginia CPA, including but not limited to:

a. Section 59.1-200(A)(5): Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits—here, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins;

b. Section 59.1-200(A)(6): Misrepresenting that good or services are of a particular standard, quality, grade, style, or model—as above, Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins; and

    c.   Section 59.1-200(A)(14): Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction—Defendant's induced consumers to buy toxic baby food by, among other acts, making calculated references to irrelevant government safety standards to deceive consumers that they should trust Defendant and not have concerns about the amounts of heavy metals and other toxins in the baby food, which trade practices are deceptive, unfair, immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

983.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce that Defendant intended to induce consumers to buy toxic baby food.

984.    Defendant's omissions in violation of the Virginia CPA were likely to mislead an ordinary consumer. Plaintiffs and the Virginia Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiffs and the Virginia Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

985.    If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the Virginia Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Virginia Subclass would not have purchased Defendant's toxic baby food.

986. Defendant's omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

987. Plaintiffs and the Virginia Subclass relied to their detriment on Defendant's omissions in purchasing toxic baby food.

988. As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b. Designating Plaintiffs as Class representative and counsel as Class counsel;

c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d. Awarding Plaintiffs and Class members three times their damages or $1,000, whichever is greater; reasonable attorneys' fees; and costs; and

e. Granting such further relief as the Court deems just.

**COUNT 58**
**Violation of the Washington Consumer Protection Act (Wash. Rev. Code §§19.86.010, *et seq.*), on Behalf of Plaintiffs Courtney Barron, Anna Chase, Chelzy Desvigne, Amanda Hobbs-Rogers, Corinthea Pangelinan, Sonja Renee Twiggs, and the Washington Subclass**

989. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

990. Plaintiffs Courtney Barron, Anna Chase, Chelzy Desvigne, Amanda Hobbs-Rogers, Corinthea Pangelinan, and Sonja Renee Twiggs bring this Count individually and on behalf of the Washington Subclass.

991. Washington's Consumer Protection Act ("Washington CPA") prohibits any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

992. At all relevant times, members of the Washington Subclass and Defendant were "persons" within the meaning of the Washington CPA. *See* Wash. Rev. Code §19.86.010(1).

993. Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce in violation of Wash. Rev. Code §19.86.020 as described in the allegations above.

994. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

995. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest in that Defendant's acts: (1) violated the specific legislative declaration of public interest impact described by Wash. Rev. Code §19.86.920; (2) injured other persons as alleged above; (3) had the capacity to injure other persons; and (4) continues to have the capacity to injure other persons.

996. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriches Defendant at the expense of the Washington Subclass.

997.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Washington Subclass has little alternative but to submit and causes consumers substantial injury.

998.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

999.    The Washington Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

1000.   As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

c.  Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.  Awarding Plaintiffs and Class members three times their damages; reasonable attorneys' fees; and costs; and

e.  Granting such further relief as the Court deems just.

## COUNT 59

**Violation of the West Virginia Consumer Protection Act, (W. Va. Code §§46A-6-101, *et seq.*), on Behalf of Plaintiffs Olivia Johnson and the West Virginia Subclass**

1001. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

1002. Plaintiffs Olivia Johnson bring this Count individually and on behalf of the West Virginia Subclass.

1003. West Virginia's Consumer Protection Act prohibits any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

1004. Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with trade or commerce in violation of W.Va. Code §46A-6-104 as described in the allegations above.

1005. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

1006. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

1007. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriches Defendant at the expense of the West Virginia Subclass.

1008. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the West Virginia Subclass has little alternative but to submit and causes consumers substantial injury.

1009. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children

from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

1010. The West Virginia Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

1011. As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

1012. Plaintiffs provided notice to Defendant pursuant to W.Va. Code §46-6-106(b) by sending a certified letter containing the basis of Plaintiffs' claims on April 13, 2021. Said notice was received by Defendant on or about April 19, 2021.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b. Designating Plaintiffs as Class representative and counsel as Class counsel;

c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d. Awarding Plaintiffs and Class members their damages or $200, whichever is greater; and

e. Granting such further relief as the Court deems just.

**COUNT 60**
**Violation of the Wisconsin Deceptive Trade Practices Act (Wis. Stat. §§100.18, *et seq.*), on Behalf of Plaintiffs Samantha Edwards, Amanda Hobbs-Rogers, Sarah Knaapen, and the Wisconsin Subclass**

1013.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

1014.   Plaintiffs Samantha Edwards, Amanda Hobbs-Rogers, and Sarah Knaapen bring this Count individually and on behalf of the Wisconsin Subclass.

1015.   At all relevant times, Plaintiffs, the Wisconsin Subclass, and Defendant were "persons" within the meaning of Wisconsin Statutes.  *See* Wis. Stat. §990.01.

1016.   Wis. Stat. §100.18 prohibits the use of fraudulent representations by a person with the intent to sell, distribute, or increase the consumption of merchandise or anything offered by such person, directly or indirectly, to the public—the prohibition includes but is not limited to any advertisement, statement, representation of any kind to the public relating to the purchase, sale, or use of the merchandise which advertisement, statement, or representation is untrue, deceptive, or misleading.

1017.   Wis. Stat. §100.183 specifically prohibits untrue, deceptive, or misleading practices with respect to the sale of food:

> No person, firm, corporation or association shall, with intent to sell, or increase the consumption thereof, or create an interest therein, make, publish, disseminate, circulate, or place before the public in this state, or cause, directly or indirectly to be made, published, disseminated, or placed before the public in this state, in a newspaper or other publication, or in the form of a book notice, handbill, poster, bill, circular or pamphlet, or in any other manner, an advertisement of any sort regarding articles of food, which advertisement contains any assertion, representation or statement which is untrue, deceptive or misleading.

1018.   Defendant willfully engaged in fraudulent, untrue, deceptive, and/or misleading acts as described in the allegations above.

1019.   As a result, Defendant's conduct violates Wis. Stat. §§100.18 and 100.183—Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food

was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins.

1020.  Defendant's omissions in violation of Wis. Stat. §§100.18 and 100.183 were likely to mislead an ordinary consumer.  Plaintiffs and the Wisconsin Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health.  Plaintiffs and the Wisconsin Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

1021.  If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the Wisconsin Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Wisconsin Subclass would not have purchased Defendant's toxic baby food.

1022.  Defendant's omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

1023.  Plaintiffs and the Wisconsin Subclass relied to their detriment on Defendant's omissions in purchasing toxic baby food.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

    a.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

    b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d. Awarding Plaintiffs and Class members two times their damages; reasonable attorneys' fees; costs; and

e. Granting such further relief as the Court deems just.

## COUNT 61
### Violation of the Wyoming Consumer Protection Act (Wyo. Stat. Ann. §§40-12-101, *et seq.*), on Behalf of Kassandra Romero, Maggie Rouse, and the Wyoming Subclass

1024. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

1025. Plaintiffs Kassandra Romero and Maggie Rouse bring this Count individually and on behalf of the Wyoming Subclass.

1026. At all relevant times, members of the Wyoming Subclass and Defendant were "persons" within the meaning of Wyoming's Consumer Protection Act ("Wyoming CPA"). *See* Wyo. Stat. Ann. §40-12-102(a)(i).

1027. Wyoming's CPA prohibits any "unfair or deceptive acts or practices."

1028. Among other things, Wyoming's CPA forbids: (1) representing that merchandise has a source, origin, sponsorship, approval, accessories or uses it does not have; (2) representing that merchandise is of a particular standard, grade, style or model, if it is not; and (3) engaging in unfair or deceptive acts or practices.

1029. Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with the sale or advertisement of merchandise (as defined by Wyo. Stat. Ann. §40-12-102(a)(vi)) in violation of Wyo. Stat. Ann. §40-12-105(a)(xv) as described in the allegations above.

1030.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

1031.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

1032.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriches Defendant at the expense of the Wyoming Subclass.

1033.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Wyoming Subclass has little alternative but to submit and causes consumers substantial injury.

1034.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

1035.   The Wyoming Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

1036.   As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

1037.   Plaintiffs provided notice to Defendant pursuant to Wyo. Stat. Ann. §40-12-109 by sending a certified letter containing the basis of Plaintiffs' claims on April 13, 2021.  Said notice was received by Defendant on or about April 19, 2021.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b. Designating Plaintiffs as Class representative and counsel as Class counsel;

c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d. Awarding Plaintiffs and Class members damages; reasonable attorneys' fees; and costs; and

e. Granting such further relief as the Court deems just.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: July 12, 2021

Respectfully submitted,

By: */s/ Joseph P. Guglielmo*
Joseph P. Guglielmo
Erin Green Comite
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Tel.: (212) 223-4478
Fax: (212) 233-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com

Aaron M. Zigler
ZIGLER LAW GROUP, LLC
308 S. Jefferson Street | Suite 333
Chicago, IL 60661
Tel: 312-673-8427
aaron@ziglerlawgroup.com

Troy E. Walton*
Steve Telken*
WALTON TELKEN, LLC
241 N. Main Street
Edwardsville, IL 62025
Tel: (618) 307-9880
twalton@waltontelken.com
stelken@waltonteklen.com

*Pro Hac Vice admission to be sought

Counsel for Plaintiffs and the Putative Class