# EXHIBIT A

Thiago Coelho (SBN 324715)
thiago@wilshirelawfirm.com
Cinela Aziz (SBN 318192)
cinela@wilshirelawfirm.com
Jessica Behmanesh (SBN 336128)
jbehmanesh@wilshirelawfirm.com
**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

*Attorneys for Plaintiffs*
*and the Putative Class*

# UNITED STATED DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIDGET HALCON and NAMIA HOSSAIN, individually, and on behalf of all others similarly situated, | CASE NO.: |
| Plaintiffs, | |
| v. | **CLASS ACTION** |
| | **COMPLAINT** |
| HAIN CELESTIAL GROUP, INC., a Delaware corporation, and DOES 1 through 100, inclusive, | |
| | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

*"Baby food manufacturers hold a special position of public trust. Consumers believe that they would not sell products that are unsafe."* [1]

- **Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform, U.S. House of Representatives**

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

---

[1] S. COMM. ON ECONOMIC AND CONSUMER POLICY, COMM. ON OVERSIGHT AND REFORM, 117TH CONG., BABY FOODS ARE TAINTED WITH DANGEROUS LEVELS OF ARSENIC, LEAD, CADMIUM, AND MERCURY, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.

COMPLAINT AND DEMAND FOR JURY TRIAL

1

### TABLE OF CONTENTS

2      I.        SUBSTANTIVE ALLEGATIONS..........................................................................1

3      II.       THE PARTIES....................................................................................................10

4      III.      JURISDICTION AND VENUE...........................................................................11

5      IV.      FACTUAL ALLEGATIONS...............................................................................12

6      V.        CLASS ACTION ALLEGATIONS.....................................................................21

7      VI.      CAUSES OF ACTION

8                 A.       FIRST CAUSE OF ACTION – NEGLIGENT MISREPRESENTATION....25

9                 B.       SECOND CAUSE OF ACTION – FRAUDULENT MISREPRESENTATION

10                               ...............................................................................................25

11                 C.       THIRD CAUSE OF ACTION – VIOLATION OF THE CONSUMER LEGAL

12                               REMEDIES ACT……………………………………...............…………28

13                 D.       FOURTH CAUSE OF ACTION – VIOLATION OF CALIFORNIA'S FALSE

14                               ADVERTISING LAW.................................................................. 30

15                 E.       FIFTH CAUSE OF ACTION – VIOLATION OF THE CALIFORNIA UNFAIR

16                               COMPETITION LAW ...............................................................31

17                 F.        SIXTH CAUSE OF ACTION – FRAUD .......................................................35

18                 G.       SEVENTH CAUSE OF ACTION – CONSTRUCTIVE FRAUD ................36

19                 H.       EIGHTH CAUSE OF ACTION – BREACH OF EXPRESS WARRANTY

20                               ...............................................................................................38

21                 I.         NINTH CAUSE OF ACTION – BREACH OF IMPLIED WARRANTY

22                               ...............................................................................................39

23                 J.         TENTH CAUSE OF ACTION – QUASI-CONTRACT / UNJUST

24                               ENRICHMENT ...............................................................................40

25      VII.     PRAYER FOR RELIEF......................................................................................41

26      VIII.    DEMAND FOR A JURY TRIAL.........................................................................41

27

28

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

0

COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs GIDGET HALCON and NAMIA HOSSAIN ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned attorneys, bring this Class Action Complaint based upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigation of their attorneys.

## I.   SUBSTANTIVE ALLEGATIONS

1.   Defendant HAIN CELESTIAL GROUP, INC. ("Defendant"), a Delaware corporation headquartered in Lake Success, New York, formulates, develops, manufactures, labels, distributes, markets, advertises, and sells baby foods under the name "Earth's Best Organic" throughout the State of California, as well as the United States more broadly.

2.   Plaintiffs are reasonable consumers who purchased Defendant's baby foods reasonably believing that such baby foods are safe, nutritious, and free from harmful toxins, contaminants, and chemicals.

3.   As a result of Defendant's negligent, reckless, and/or intentional practice of misrepresenting and failing to fully disclose the presence of dangerous substances in its baby foods, Plaintiffs and the Class Members were induced to purchase Defendant's baby foods, which are not healthy for consumption by babies as advertised.  Plaintiffs and the Class Members were induced to feed their babies dangerous foods containing toxic heavy metals, such a lead, arsenic, cadmium, and mercury, and the full extent of the harm caused to their babies is not yet known.

4.   Consumers of baby foods, including Plaintiffs, place their trust in manufacturers like Defendant, believing they sell baby foods that are safe, nutritious, and free from harmful toxins, contaminants, and chemicals.  Consumers expect that the food they feed to infants and toddlers is free of toxic heavy metals such as lead, arsenic, cadmium, and mercury – substances known to have significant and dangerous health consequences.

5.   Reasonable consumers lack the scientific knowledge necessary to determine whether Defendant's products contain toxic heavy metals or to ascertain the true nature of the ingredients and quality of the products Defendant sells.  Reasonable consumers therefore must – and do – rely on Defendant to honestly report what its various products contain.

1

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

6. On February 4, 2021, the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform ("Subcommittee"), released a report entitled "Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury."[2]

7. On November 6, 2019, the Subcommittee made requests for internal documents and test results from some of the biggest baby food manufacturers in the nation, including Defendant.[3]

8. Of the seven companies contacted, four responded to the Subcommittee's requests – Defendant was one of them.[4] After reviewing the internal documents and test results it received, the Subcommittee made the disturbing discovery that "commercial baby foods are tainted with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury."[5]

9. Exposure to toxic heavy metals in large amounts has been shown to cause cognitive decline and thwart cognitive development, especially in children.[6] The report further claimed that exposure can lead to "diminished future economic productivity, and increased risk of future criminal and antisocial behavior in children."[7]

10. Arsenic is a naturally occurring element found in food, water, air, and soil.[8] In recent years, healthcare professionals have grown "increasingly concerned about the more subtle and long-range health effects of low-level exposures to humans, especially for infants and children exposed to arsenic in water and some foods, such as rice-based products, during sensitive windows of development."[9] Arsenic, in general, can negatively impact one's skin, nervous system, respiratory system, cardiovascular system, liver, kidney, bladder and prostate, immune

---

[2] S. COMM. ON ECONOMIC AND CONSUMER POLICY, COMM. ON OVERSIGHT AND REFORM, 117TH CONG., BABY FOODS ARE TAINTED WITH DANGEROUS LEVELS OF ARSENIC, LEAD, CADMIUM, AND MERCURY, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.

[3] Id.

[4] Id.

[5] Id.

[6] Id.

[7] Id.

[8] Arsenic, NATIONAL INSTITUTE OF ENVIRONMENTAL HEALTH SCIENCES, https://www.niehs.nih.gov/health/topics/agents/arsenic/index.cfm.

[9] Id.

2

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

system, endocrine system, and developmental processes.[10]

11. Lead is also a naturally occurring element.[11] Lead has been used as an ingredient in paint, gasoline, ceramics, plumbing pipes, and batteries.[12] Lead is dangerous – so much so that the federal government has phased out its use in gasoline and house paint.[13] Today, lead is primarily found in contaminated soil, old paint, dust, and contaminated drinking water.[14] With respect to lead exposure to children, the National Institute of Environmental Health Sciences ("NIEHS") warns that exposure to lead can have a wide range of effects on a child's development and behavior, and that many effects are permanent.[15] According to the NIEHS, blood lead levels at or less than 10 micrograms of lead per deciliter of blood ("µg/dL") are associated with "increased behavioral effects, delayed puberty, and decreased hearing, cognitive performance, and postnatal growth or height."[16] Health effects are found even at low blood lead levels of less than 5 µg/dL.[17] "Such effects may include diminished IQ scores and academic achievement, and increased behavioral problems and attention-related behaviors such as attention deficit hyperactivity disorder."[18] According to the Centers for Disease Control ("CDC"), any child with more than 5 µg/dL of lead in their blood may be considered at risk of these negative health effects and public health actions should be initiated.[19]

12. According to a study published by the United Nations Children's Fund ("UNICEF") in 2020, lead poisoning is a serious problem affecting children globally.[20] The study

---

[10] *Id.*

[11] Lead, NATIONAL INSTITUTE OF ENVIRONMENTAL HEALTH SCIENCES, https://www.niehs.nih.gov/health/topics/agents/lead/index.cfm.

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.* citing Jianghong Liu et al., *Blood Lead Levels and Children's Behavioral and Emotional Problems: A Cohort Study*, JAMA PEDIATRICS, 168 (8) at 737-745 (Aug. 1, 2014), https://jamanetwork.com/journals/jamapediatrics/fullarticle/1884486.

[17] *Id.*

[18] *Id.*

[19] *Id. See also Blood Levels in Children*, CDC (Feb. 9, 2021), https://www.cdc.gov/nceh/lead/prevention/blood-lead-levels.htm.

[20] Nicholas Rees, Richard Fuller, *The Toxic Truth: Children's Exposure to Lead Pollution Undermines a Generation of Future Potential*, UNICEF and PURE EARTH (Jul. 2020), https://www.unicef.org/sites/default/files/2020-07/The-toxic-truth-children%E2%80%99s-exposure-to-lead-pollution-2020.pdf.

3

found that up to 800 million children have blood lead levels at or above 5 µg/dL.[21]

13. Mercury is a naturally occurring metal, and it is toxic for humans.[22] Metallic mercury can frequently be found in fluorescent light bulbs, thermometers, and barometers.[23] The NIEHS, Food and Drug Administration ("FDA") and Environmental Protection Agency ("EPA") have also been studying the psychological effects of methylmercury, a type of organic mercury, on humans through consumption of fish.[24] It has been found that consuming large quantities of mercury through foods like fish increases a person's exposure to mercury, and pregnant women who regularly eat fish high in mercury risk permanently damaging their developing fetuses.[25] Their children may exhibit motor difficulties, sensory problems, and cognitive deficits.[26] In 2004, and again in 2019, the EPA and FDA released a consumer advisory notice, advising that children avoid fish with high traces of methylmercury.[27]

14. Cadmium is a metal typically obtained from zinc byproducts and "recovered from spent nickel-cadmium batteries."[28] The Agency for Toxic Substances and Disease Registry has listed cadmium as the seventh most significant potential threat to human health.[29] Research has associated cadmium exposure with diminished IQ and attention deficit hyperactivity disorder ("ADHD").[30]

15. Defendant knew or should have known that their baby foods contain significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury. Defendant knew or should have known that such toxic metals are not fit for consumption. Defendant knew or should

---

[21] *Id.*
[22] *Mercury*, NATIONAL INSTITUTE OF ENVIRONMENTAL HEALTH SCIENCES, https://www.niehs.nih.gov/health/topics/agents/mercury/index.cfm.
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Advice about Eating Fish – For Women Who Are or Might Become Pregnant, Breastfeeding Mothers, and Young Children*, FDA and EPA (Dec. 29, 2020), https://www.fda.gov/food/metals-and-your-food/fdaepa-2004-advice-what-you-need-know-about-mercury-fish-and-shellfish; https://www.fda.gov/food/consumers/advice-about-eating-fish.
[28] *Cadmium*, OSHA, https://www.osha.gov/cadmium.
[29] S. COMM. ON ECONOMIC AND CONSUMER POLICY, COMM. ON OVERSIGHT AND REFORM, 117TH CONG., BABY FOODS ARE TAINTED WITH DANGEROUS LEVELS OF ARSENIC, LEAD, CADMIUM, AND MERCURY at 12, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.
[30] *Id.*

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

4

COMPLAINT AND DEMAND FOR JURY TRIAL

have known that its baby foods are detrimental to the health of babies. Defendants had no reasonable ground for believing that their baby foods were free from toxic heavy metals, or that such toxic metals were appropriate for sale in baby foods.

16. Defendant intended to induce reasonable consumers to rely on its marketing, all of which explicitly and implicitly convey that Defendant's baby foods are healthy for consumption by babies. Such marketing includes words written on the containers of Defendant's baby foods, including, but not limited to, the following phrases:

- o "Earth's Best Organic";

- o "The Best From the Earth[]";

- o "At Earth's Best Organic[] brand, we take great care in every step of the baby food process to bring you THE BEST FROM THE EARTH.[]";

- o "Made with wholesome ingredients from our family of certified organic farmers";

- o "No GMO ingredients in compliance with the National Organic Program";

- o "No artificial flavors or colors";

- o "Non-BPA Packaging";

- o "Producing pure, quality products you can trust";

- o "Organic foods are produced without the use of potentially harmful chemicals, pesticides, genetically engineered ingredients, or growth hormones from animal-derived products";

- o "Rigorous product testing to guarantee quality and safety";

- o "From day one, [we] recognized the importance of wholesome, pure nourishment for babies. ... 30 years later, The Hain Celestial Group, Inc maintains this principle. Now offering a wide range of safe and gentle baby care products as well as nourishing foods, Earth's Best[] products are created with care, using pure, simple ingredients found in nature. Made with love from the ground up, you can trust Earth's Best[] products to be safe for your baby..."

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

5

COMPLAINT AND DEMAND FOR JURY TRIAL

17. The imagery used on Defendant's products also implicitly conveys that Defendant's baby foods are healthy for consumption by babies by depicting happy, healthy babies. Below are two examples:

 

18. Plaintiffs justifiably relied on Defendant's marketing. Plaintiffs suffered damages when they unknowingly purchased baby foods that contain toxic heavy metals and other undesirable toxins and contaminants. Plaintiffs' babies were harmed or placed at risk of harm by consuming foods containing toxic heavy metals and other undesirable toxins and contaminants.

19. Defendant's false and misleading advertising deceives consumers into believing that they are purchasing and feeding their babies safe and nutritious baby foods and, through this deception, Defendants seek to induce consumers to purchase Defendant's baby foods when they would otherwise have purchased other baby foods that do not contain toxic heavy metals or other undesirable toxins and contaminants.

20. Defendants were aware that they were not providing their customers with healthy baby foods, yet they proceeded to advertise their baby foods as safe for consumption by babies. Defendant created the clear impression to their customers that they are purchasing and feeding their babies baby food that does not contain any toxic heavy metals or other undesirable toxins and contaminants. This behavior is therefore materially misleading, in that reasonable consumers

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

would not understand that Earths' Best Organic baby foods contain any toxic heavy metals or other undesirable toxins and contaminants. Thousands of consumers have purchased Defendant's baby foods under the false belief that the baby foods are safe and nutritious for their babies and do not contain any toxic heavy metals or other undesirable toxins and contaminants. They have been misled. They have been deceived into purchasing dangerous baby food. They have inadvertently fed their babies dangerous baby food containing toxic heavy metals and other undesirable toxins and contaminants. Their babies were harmed or placed at risk of harm by consuming foods containing toxic heavy metals and other undesirable toxins and contaminants.

21. Defendant knew that its customers trust the quality of its products and that customers expect Defendant's products to be free of toxic heavy metals and other undesirable toxins and contaminants. Defendant also knew that certain consumers seek out and wish to purchase premium baby foods that possess high quality ingredients free of toxins, contaminants, or chemicals and that these consumers will pay more for baby foods that they believe possess these qualities.

22. Defendant's knowledge that its customers trust the quality of its products, their expectations that Defendant's products will be free of toxic heavy metals and other undesirable toxins and contaminants, and their willingness to pay more for premium baby foods that are free from toxins, contaminants, or chemicals is evident in Defendant's business practices.

23. Defendant's promises, warranties, pricing, statements, claims, packaging, labeling, marketing, and advertising center on representations and pictures that are intended to, and do, convey to consumers that their baby foods possess certain qualities and characteristics that justify a premium price.

24. Defendant's website contains the following webpages, making countless claims that Defendant's baby foods are not only healthy and safe for babies, but also implying that Defendant's organic baby foods are superior to other baby foods:[31]

---

[31] EARTH'S BEST, https://www.earthsbest.com/.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

7

COMPLAINT AND DEMAND FOR JURY TRIAL

## 30 years of Organic

Earth's Best® brand was founded by Ron Koss and Arnie Koss in 1985. From day one, they recognized the importance of wholesome, pure nourishment for babies. Embracing fruits handpicked from organic orchards and vegetables cultivated from the earth, Ron Koss and Arnie Koss believed in creating delicious, organic baby food while promoting environmental responsibility.

30 years later, The Hain Celestial Group, Inc. maintains this principle. Now offering a wide range of safe and gentle baby care products as well as nourishing foods, Earth's Best® products are created with care, using pure, simple ingredients found in nature. Made with love from the ground up, you can trust Earth's Best® products to be safe for your baby and safe for the environment.

## The Earth's Best Organic® Difference

 

- Organic ingredients grown without potentially harmful pesticides
- Unsweetened, unsalted, and no added modified starches
- Kosher certified products (excluding meat varieties)

- No genetically modified ingredients
- No artificial flavors, colors, or preservatives
- Rigorous product testing to guarantee quality and safety

Producing pure, quality products you can trust.

# Our Organic Ingredients

We ensure that the ingredients we procure for our products do not use potentially harmful pesticides or fertilizers. This rigorous quality assurance process allows us to meet the strict standards for organic certification.

- Earth's Best Organic® infant formulas are produced with milk from cows that are humanely raised and not treated with antibiotics or growth hormones.
- Earth's Best Organic® infant purees in both jars and pouches are produced from high quality, great tasting organic fruits and vegetables.

The Earth's Best Organic® brand is the first complete line of organic infant nutrition and care products. We strive to provide better-for-baby products that are pure, safe and sustainable.

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

25. Reasonable consumers seeing Defendant's marketed products would not expect the baby foods to contain toxic heavy metals or other undesirable toxins or contaminants.

26. Furthermore, reasonable consumers, including Plaintiffs, would consider the mere inclusion of heavy metals or other undesirable toxins or contaminants a material misrepresentation when considering which baby food to purchase.

27. Defendant intended for consumers to rely on its marketing, and reasonable consumers, including Plaintiffs, did in fact so rely. Defendant's marketing and advertising is deceptive, misleading, unfair, false, and/or fraudulent because, among other things, the baby foods include undisclosed toxic heavy metals or other undesirable toxins or contaminants.

28. Defendant's baby foods do not have a disclaimer regarding the presence of toxic heavy metals or other undesirable toxins or contaminants that would inform consumers that the foods contain toxic heavy metals and/or that toxic heavy metals can accumulate overtime in a child's body to the point where poisoning, injury, and/or disease can occur.

29. Instead, Defendant's baby foods create the impression, by the content and images on their labels, that they are healthy for consumption, and preferable over other brands of baby foods.

30. Defendant's wrongful marketing and advertising, which includes misleading, deceptive, unfair, and false claims and omissions, allowed it to capitalize on, and reap enormous profits from, consumers who paid the purchase price or a price premium for baby foods that were not sold as advertised.

31. Defendant created, allowed, negligently oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and advertising for its baby foods. The marketing for the baby foods, relied upon by Plaintiffs, was prepared, reviewed, and/or approved by Defendant and its agents and was disseminated by Defendant and its agents through marketing, advertising, packaging, and labeling that contained the misrepresentations alleged herein. The marketing for the baby foods was designed to encourage consumers to purchase the baby foods and reasonably misled the reasonable consumer into purchasing the baby foods.

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd., 12ᵗʰ Floor
Los Angeles, CA 90010-1137

9

COMPLAINT AND DEMAND FOR JURY TRIAL

32. Defendant continues to wrongfully induce consumers to purchase its baby foods that are not as advertised. Plaintiffs would like to purchase healthy, wholesome food for their children in the future from manufacturers such as Defendant, but cannot do so with any degree of certainty that these foods will not contain toxic heavy metals or other undesirable toxins or contaminants.

33. Plaintiffs brings this proposed consumer class action individually and on behalf of all other members of the Class, who, from the applicable limitations period up to and including the present, purchased for use and not resale any of Defendant's tainted baby foods.

34. As a result of Defendant's negligent, reckless, and/or knowingly deceptive conduct as alleged herein, Plaintiffs were injured when they paid the purchase price or a price premium for baby foods that did not deliver what they promised. They paid the purchase price on the assumption that the labeling of the baby foods was accurate and that it was free of toxic heavy metals and safe to ingest. Plaintiffs would not have paid this money or fed their babies food containing toxic heavy metals had they known the truth that Defendant's baby foods contain excessive degrees of toxic heavy metals. Damages can be calculated through expert testimony at trial.

## II.  THE PARTIES

35. Plaintiffs are, and at all times relevant hereto have been, citizens of the state of California.

36. Plaintiff Gidget Halcon ("Plaintiff Halcon") is a California resident residing in Concord, California. Plaintiff Halcon purchased Earth's Best Organic baby foods repeatedly from Target stores located in Pleasant Hill, California and Walnut Creek, California from 2019 through 2020. Plaintiff Halcon believed she was feeding her baby healthy, nutritious food. Due to Defendant's false and misleading claims and omissions, Plaintiff Halcon was unaware that the baby food she fed her baby contained any level of toxic heavy metals. Plaintiff Halcon would not have purchased Defendant's baby food if she knew that Earth's Best Organic baby food contains toxic heavy metals and other undesired toxins and contaminants. Plaintiff Halcon inadvertently fed her baby foods that contain toxic heavy metals and other undesired toxins and

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

10

contaminants.  Plaintiff Halcon's baby was harmed or was placed at risk of harm by consuming foods containing toxic heavy metals and other undesirable toxins and contaminants.

37. Plaintiff Namia Hossain ("Plaintiff Hossain") is a California resident residing in San Jose, California.  Plaintiff Hossain purchased Earth's Best Organic baby foods repeatedly from numerous stores, including Walmart.com.  Plaintiff Hossain last purchased said baby food in or around March 2021.  Plaintiff Hossain believed she was feeding her baby healthy, nutritious food.  Due to Defendant's false and misleading claims and omissions, Plaintiff Hossain was unaware that the baby food she fed her baby contained any level of toxic heavy metals.  Plaintiff Hossain would not have purchased Defendant's baby food if she knew that Earth's Best Organic baby food contains toxic heavy metals and other undesired toxins and contaminants.  Plaintiff Hossain inadvertently fed her baby foods that contain toxic heavy metals and other undesired toxins and contaminants.  Plaintiff Hossain's baby was harmed or was placed at risk of harm by consuming foods containing toxic heavy metals and other undesirable toxins and contaminants.

38. Defendant is incorporated in Delaware.  Its headquarters are located at 1111 Marcus Avenue, Lake Success, NY 11042.

39. Plaintiffs are unaware of the true names, identities, and capacities of the defendants sued herein as DOES 1 to 100.  Plaintiffs will seek leave to amend this complaint to allege the true names and capacities of DOES 1 to 100 if and when ascertained.  Plaintiffs are informed and believe, and thereupon allege, that each of the defendants sued herein as a DOE is legally responsible in some manner for the events alleged herein and that each of the Defendants sued herein as a DOE proximately caused injuries and damages to Plaintiffs, their babies, and Class Members as set forth below.

### III.  JURISDICTION AND VENUE

40.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453. The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and there is diversity of citizenship between Plaintiffs and Defendant.

41.     The Court has personal jurisdiction over Defendants because Plaintiffs' and the

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

11

COMPLAINT AND DEMAND FOR JURY TRIAL

Class Members' claims arise out Defendants' business activities conducted in the State of California.

42. Venue is appropriate in the Northern District of California under 28 U.S.C. § 1391(b)(2) because Plaintiffs reside within it, a substantial part of the events or omissions giving rise to the claim occurred within this district, and Defendants caused harm to Class Members residing in this district.

## IV. FACTUAL ALLEGATIONS

43. Baby food manufacturers are free to set their own internal standards for toxic heavy metal content of their products. They have set those standards at dangerously high levels and have often sold foods that exceed even those levels.

44. On February 4, 2021, the Subcommittee published a report detailing its findings that toxic heavy metals—including arsenic, cadmium, lead, and mercury—were present in significant levels in numerous commercial baby food products.

45. Defendant was one of seven baby food manufacturers from whom the Subcommittee requested internal documents and test results. Defendant agreed to participate by providing the requested materials to the Subcommittee.

**Findings from the Subcommittee's Report:**

46. The February 2021 Subcommittee report stated that:
"[o]n August 1, 2019, [the] FDA received a secret slide presentation from Hain (Earth's Best Organic), which revealed that: [1] [c]orporate policies to test only ingredients, not final products, underrepresent the levels of toxic heavy metals in baby foods. In 100% of the Hain baby foods tested, inorganic arsenic levels were higher in the finished baby food than the company estimated they would be based on individual ingredient testing; 2) [m]any of Hain's baby foods were tainted with high levels of inorganic arsenic—half of its brown rice baby foods contained over 100 ppb inorganic arsenic; its average brown rice baby food contained 97.62 ppb inorganic arsenic. Inorganic arsenic was between 28% and 93% higher in the finished products; and 3) [n]aturally occurring toxic heavy metals may not be the only problem causing the unsafe levels of toxic heavy metals in baby foods; rather, baby food producers like Hain may be adding ingredients that have high levels of toxic heavy metals into their products, such as vitamin/mineral pre-mix."[32]

---

[32] *Id.* at 5.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

12

**COMPLAINT AND DEMAND FOR JURY TRIAL**

47. As of now, there is no established safe level of inorganic arsenic consumption for babies. However, organizations like Healthy Babies Bright Futures advocate for no measurable amount of inorganic arsenic in baby food.[33] Consumer Reports suggests setting inorganic arsenic levels as low as 3 parts per billion ("ppb").[34] The FDA has already set maximum inorganic arsenic levels at 10 ppb for bottled water.[35] The EPA has similarly set a 10 ppb inorganic arsenic cap on drinking water,[36] as have the European Union ("EU")[37] and the World Health Organization ("WHO")[38].

48. While Defendant does not routinely test finished baby food products for inorganic arsenic content, when Defendant did test a small sample of finished product, it found 129 ppb inorganic arsenic.[39] The following table shows the results of testing for arsenic in a small sample of finished products:[40]

*Hain Celestial, FDA Testing Result Investigation, August 1, 2019 (Excerpted Entries)*[38]

| FDA Data | | | | | Estimate % Avg FG Increase from Avg Raw | Track & Trace Data | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| FDA Sample Number | Best By Date | Lot number | FDA FG Inorganic Arsenic (ppb) | Avg FG Result | | Packaging Date | WIP Batch | Rice Flour Lot #s | Type of Arsenic Test | Raw Material Results (ppb) | Avg Raw Result |
| 1024309 | 4/27/19 | BN I 2216 | 129 | 129.0 | 93% | 11/3/17 | 204146 | B160005305 | Total Arsenic | 69 | 67.0 |
| | | | | | | | | B160005306 | Total Arsenic | 76 | |
| | | | | | | | | B160005512 | Total Arsenic | 62 | |
| | | | | | | | | B160005152 | Total Arsenic | 61 | |

---

[33] *Id.* at 13. *See also What's in My Baby's Food? A National Investigation Finds 95 Percent of Baby Foods Tested Contain Toxic Chemicals That Lower Babies' IQ, Including Arsenic and Lead*, HEALTHY BABIES BRIGHT FUTURES (Oct. 2019), www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019 10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf.

[34] *Id.* at 13. *See also Arsenic in Some Bottled Water Brands at Unsafe Levels, Consumer Reports Says*, CONSUMER REPORTS, (June 28, 2019), www.consumerreports.org/water-quality/arsenic-in-some-bottled-water-brands-at-unsafe-levels/); *Arsenic and Lead Are in Your Fruit Juice: What You Need to Know*, CONSUMER REPORTS (Jan. 30, 2019), www.consumerreports.org/food-safety/arsenic-and-lead-are-in-your-fruit-juice-what-you-need-to-know/.

[35] *Arsenic in Food and Dietary Supplements*, FDA, www.fda.gov/food/metals-and-your-food/arsenic-food-and-dietary-supplements.

[36] *Drinking Water Requirements for States and Public Water* Systems, EPA, www.epa.gov/dwreginfo/chemical-contaminant-rules.

[37] *Arsenic (Q&A)*, EUROPEAN FOOD INFORMATION COUNCIL, www.eufic.org/en/food-safety/article/arsenic-qa.

[38] *Arsenic*, WHO (Feb. 15, 2018), www.who.int/news-room/fact-sheets/detail/arsenic.

[39] S. COMM. ON ECONOMIC AND CONSUMER POLICY, COMM. ON OVERSIGHT AND REFORM, 117TH CONG., BABY FOODS ARE TAINTED WITH DANGEROUS LEVELS OF ARSENIC, LEAD, CADMIUM, AND MERCURY at 16, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.

[40] *Id.* at 54.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

13

COMPLAINT AND DEMAND FOR JURY TRIAL

49. Defendant routinely used ingredients with high levels of arsenic.[41] Defendant used brown rice flour that had tested at 309 ppb arsenic.[42] Defendant likewise used a vitamin pre-mix containing 223 ppb arsenic, and raisin and wheat flour containing 200 ppb arsenic.[43] The testing data shows that Defendant used at least 24 ingredients after testing found that they contained more than 100 ppb arsenic, its already-dangerously-high internal standard for most ingredients.[44] The following tables demonstrate the arsenic content in various ingredients used to make Defendant's baby foods:[45]

*Hain, Raw Material Pre-Shipment Test Data History (Excerpted Entries)*[42]

| Lab Results Date | Product Description | Status | Arsenic Spec Limit (ppb) | Arsenic Result (ppb) |
|---|---|---|---|---|
| Jun/19/2019 | Org Brown Rice Flour | Deviation Approved | 100 | 309 |
| Nov/26/2019 | Vitamin Pre-Mix | Deviation Approved | 100 | 223 |
| Jul/10/2018 | Org Whole Raisins | Accepted | 100 | 200 |
| Sep/29/2017 | Org Soft White Wheat Flour | Accepted | 200 | 200 |
| Dec/14/2017 | Org Spelt Flour | Accepted | 100 | 190 |
| Jan/8/2018 | Organic Barley Malt Extract | Accepted | 100 | 180 |
| Dec/5/2017 | Org Yellow Split Pea Powder | Accepted | 100 | 160 |
| Jul/13/2017 | Medium Grain Whole Rice | Accepted | 200 | 150 |
| Oct/3/2017 | Org Brown Rice Flour | Accepted | 100 | 140 |
| Sep/4/2019 | Org Brown Rice Flour | Deviation Approved | 100 | 134 |
| Dec/5/2017 | Org Butternut Squash Puree | Accepted | 100 | 130 |
| Oct/31/2017 | Org Brown Rice Flour | Accepted | 100 | 130 |
| Oct/31/2017 | Org Brown Rice Flour | Accepted | 100 | 130 |
| Oct/31/2017 | Org Brown Rice Flour | Accepted | 100 | 129 |
| Oct/31/2017 | Org Brown Rice Flour | Accepted | 100 | 129 |
| Oct/31/2017 | Org Brown Rice Flour | Accepted | 100 | 129 |
| Oct/31/2017 | Org Brown Rice Flour | Accepted | 100 | 127 |
| Oct/31/2017 | Org Brown Rice Flour | Accepted | 100 | 126 |
| Dec/13/2017 | Org Blueberry Puree | Accepted | 100 | 120 |
| Dec/27/2017 | Org Barley Flour | Accepted | 100 | 120 |
| Oct/31/2017 | Org Brown Rice Flour | Accepted | 100 | 119 |
| Nov/29/2017 | Org Blueberry Puree | Accepted | 100 | 110 |
| Nov/3/2017 | Org Cinnamon Powder | Accepted | 100 | 110 |
| Jul/11/2019 | Org Brown Rice Flour | Accepted | 100 | 101 |

---

[41] *Id.* at 16.
[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Id.* at 16-17.

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

50. Defendant also uses ingredients containing as much as 352 ppb lead.[46] Eighty-eight ingredients tested over 20 ppb lead and six ingredients tested over 200 ppb lead.[47] Defendant also uses an ingredient called vitamin pre-mix in its baby foods that contained as much as 352 ppb lead.[48]

51. There is no federal standard for lead in baby food, but the FDA has set a 5 ppb lead standard for bottled water,[49] the WHO has set 10 ppb lead as a provisional guideline for drinking water,[50] and the EPA has set an action level of 15 ppb for lead in drinking water.[51] The FDA has also set standards for lead in juice (50 ppb) and candy (100 ppb).[52] The European Union has set the maximum lead level in infant formula to 20 ppb.[53]

52. Defendant used six ingredients that tested above 200 ppb lead.[54] Defendant used 88 ingredients with lead levels at or over 20 ppb—the EU's standard for lead in infant formula.[55] Defendant accepted 115 ingredients that registered at or over 15 ppb—EPA's action level for drinking water.[56] And at least 27% of Defendant's ingredients tested at or over 5 ppb lead, FDA's standard for lead in bottled water.[57] None of the test results showed an ingredient below 1 ppb lead, which should be the upper limit for lead content according to the health experts at Consumer Reports, the Environmental Defense Fund, and the American Academy of Pediatrics.[58]

---

[46] *Id.* at 26.
[47] *Id.*
[48] *Id.*
[49] Lead in Food, Foodwares, and Dietary Supplements, FDA (Feb. 27, 2020), https://www.fda.gov/food/metals-and-your-food/lead-food-foodwares-and-dietary-supplements#:~:text=The%20FDA%2C%20through%20its%20regulatory,is%20set%20at%205%20ppb.
[50] *Lead in Drinking-Water* at 14, WHO (2011), www.who.int/water_sanitation_health/dwq/chemicals/lead.pdf.
[51] *Drinking Water Requirements for States and Public Water Systems*, EPA, www.epa.gov/dwreginfo/lead-and-copper-rule.
[52] https://www.fda.gov/food/metals-and-your-food/lead-food-foodwares-and-dietary-supplements
[53] S. COMM. ON ECONOMIC AND CONSUMER POLICY, COMM. ON OVERSIGHT AND REFORM, 117TH CONG., BABY FOODS ARE TAINTED WITH DANGEROUS LEVELS OF ARSENIC, LEAD, CADMIUM, AND MERCURY at 21, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.
[54] *Id.* at 27.
[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] *Id.*

COMPLAINT AND DEMAND FOR JURY TRIAL

53. Outside the context of baby food, some regulations have taken action against cadmium.[59]  The EPA has a limit of 5 ppb in drinking water,[60] the FDA has set a limit of 5 ppb in bottled water,[61] and the WHO set a 3 ppb limit for cadmium in drinking water.[62]  Groups like Healthy Babies Bright Futures have set a goal of no measurable amount of cadmium in baby food.[63]  Consumer Reports has called for a limit of 1 ppb cadmium in fruit juices.[64]  The EU has set a limit ranging from 5–20 ppb cadmium for infant formula.[65]

54. Defendant uses 14 ingredients that contain more than 100 ppb cadmium, including barley flour that registers at 260 ppb cadmium.[66]  That is thirteen times the EU's lax upper limit on cadmium in baby food.[67]  Defendant tested and used 102 ingredients that registered at or above 20 ppb cadmium—the EU's lax upper limit.[68]  The following table summarizes the presence of cadmium in various Defendant's baby food ingredients:[69]

[59] *Id.* at 29.

[60] *Ground Water and Drinking Water*, EPA, www.epa.gov/ground-water-and-drinking-water/national-primary-drinking-water-regulations.

[61] 21 C.F.R. § 165 (2019), www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfcfr/cfrsearch.cfm?fr=165.110.

[62] *Cadmium in Drinking-Water* at 6, WHO (2011) (online at www.who.int/water_sanitation_health/water-quality/guidelines/chemicals/cadmium.pdf?ua=1)

[63] Healthy Babies Bright Futures, *What's in My Baby's Food? A National Investigation Finds 95 Percent of Baby Foods Tested Contain Toxic Chemicals That Lower Babies' IQ, Including Arsenic and Lead* at 9 (Oct. 2019) (online at www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf).

[64] *Consumer Reports Letter to FDA On Reducing Heavy Elements Like Arsenic, Lead, and Cadmium in Fruit Juices*, CONSUMER REPORTS (Jan. 30, 2019), https://advocacy.consumerreports.org/research/consumer-reports-letter-to-fda-on-reducing-heavy-elements-like-arsenic-lead-and-cadmium-in-fruit-juices/.

[65] *Setting Maximum Levels for Certain Contaminants in Foodstuffs* at 28-9, EUROPEAN UNION (Dec. 19, 2006), https://eur-lex.europa.eu/legal-content/EN/TXT/?uri=CELEX:02006R1881-20150521.

[66] S. COMM. ON ECONOMIC AND CONSUMER POLICY, COMM. ON OVERSIGHT AND REFORM, 117TH CONG., BABY FOODS ARE TAINTED WITH DANGEROUS LEVELS OF ARSENIC, LEAD, CADMIUM, AND MERCURY at 30, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.

[67] *Id.*

[68] *Id.*

[69] *Id.*

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

16

COMPLAINT AND DEMAND FOR JURY TRIAL

| Lab Results Date | Products Description | Status | Cadmium Spec. limit (ppb) | Cadmium Result (ppb) |
|---|---|---|---|---|
| Jan/19/2018 | Org Barley Flour | Accepted | 100 | 260 |
| Jan/22/2018 | IQF Org Chopped Broccoli | Accepted | 100 | 250 |
| Jan/23/2018 | Org Date Paste | Accepted | 100 | 220 |
| Nov/3/2017 | Org Cinnamon Powder | Accepted | 100 | 200 |
| Aug/21/2017 | Org Brown Flax Milled | Accepted | 100 | 190 |
| Jan/22/2018 | Org Date Paste | Accepted | 100 | 190 |
| Jan/18/2018 | Org Yellow Papaya Puree | Accepted | 100 | 170 |
| Jan/19/2018 | Org Whole Wheat Fine Flour | Accepted | 100 | 160 |
| Aug/17/2017 | Org Red Lentils | Accepted | 100 | 130 |
| Jan/15/2018 | Org Oat Flakes | Accepted | 100 | 130 |
| Jun/13/2018 | Org Brown Flax Milled | Accepted | 100 | 121 |
| Jan/12/2018 | Org Barley Flour | Accepted | 100 | 110 |
| Jun/25/2018 | Org Oat Flour | Accepted | 100 | 102 |
| Feb/19/2019 | Org Cinnamon Powder | Deviation Approved | 100 | 102 |

55. Outside the context of baby food, some regulatory bodies have taken action against industries using excessive mercury in commonly used products.[70] For example, the EPA set a maximum for mercury content in drinking water at 2 ppb,[71] and consumer advocates urge even stricter standards for baby food. Indeed, Health Babies Bright Futures has called for a goal of no measurable amount of mercury in baby food.[72]

56. It appears that Defendant does not test its ingredients or its finished products for mercury.

57. As mentioned, baby food manufacturers are currently free to set their own internal standards for toxic heavy metal contents. Defendant has set an internal standard of 200 ppb arsenic for 12 ingredients, most of which are simply different kinds of flours.[73] Under this high standard, Defendant may justify accepting wheat flour and rice that contains 200 and 150 ppb arsenic. The following table shows the dangerously high amounts of arsenic present in various

---

[70] *Id.* at 32.

[71] *Ground Water and Drinking Water*, EPA, www.epa.gov/ground-water-and-drinking-water/national-primary-drinking-water-regulations.

[72] *What's in My Baby's Food? A National Investigation Finds 95 Percent of Baby Foods Tested Contain Toxic Chemicals That Lower Babies' IQ, Including Arsenic and Lead*, HEALTHY BABIES BRIGHT FUTURES (Oct. 2019), www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf.

[73] S. COMM. ON ECONOMIC AND CONSUMER POLICY, COMM. ON OVERSIGHT AND REFORM, 117TH CONG., BABY FOODS ARE TAINTED WITH DANGEROUS LEVELS OF ARSENIC, LEAD, CADMIUM, AND MERCURY at 39, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

ingredients used to make Defendant's baby foods:[74]

| Lab Results Date | Product Description | Status | Arsenic Spec Limit (ppb) | Arsenic Result (ppb) |
|---|---|---|---|---|
| Aug/3/2017 | Org Kamut Flour | Accepted | 200 | <100 |
| Aug/3/2017 | Org Spelt Flour | Accepted | 200 | <100 |
| Jul/6/2017 | Org Yellow Split Pea Powder | Accepted | 200 | <100 |
| Jul/5/2017 | Org Quinoa Flour | Accepted | 200 | <100 |
| May/26/2017 | Org Soft White Wheat Flour | Accepted | 200 | <100 |
| Aug/1/2017 | Org Fiber Oat | Accepted | 200 | <100 |
| Sep/25/2017 | Org Quinoa Flour | Accepted | 200 | <100 |
| Sep/12/2017 | Org Spelt Flour | Accepted | 200 | <100 |
| Aug/4/2017 | Org Spelt Flour | Accepted | 200 | <100 |
| Jul/19/2017 | Org Green Lentil Flour | Accepted | 200 | <100 |
| Sep/29/2017 | Org Soft White Wheat Flour | Accepted | 200 | 200 |
| Jul/13/2017 | Medium Grain Whole Rice | Accepted | 200 | 150 |

58. Defendant also set an internal limit of 200 ppb for lead in five ingredients.[75] That is forty times higher than the FDA's guidance for bottled water.[76] Defendant's high internal standard allowed for it to justify accepting lentil flour with 110 ppb lead and quinoa flour with 120 ppb lead.[77] These surpass every existing regulatory standard for lead.[78]

59. Defendant used four products that *transgressed even its own internal toxic heavy metal standards*.[79] It accepted cinnamon that contained 102 ppb cadmium, vitamin pre-mix that had 223 ppb arsenic and 353 ppb lead, and two rice flours that had 134 and 309 ppb arsenic.[80]

60. In response to the February 2021 report, Defendant stated on its website that it was "disappointed that the report examined outdated data and [that the report] does not reflect our current practices."[81] Defendant further claimed that "we took several steps to reduce the levels of heavy metals in our finished products – including no longer using brown rice in our products

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

---

[74] *Id.*
[75] *Id.* at 40.
[76] *Id.*
[77] *Id.*
[78] *Id.*
[79] *Id.* at 41.
[80] *Id.*
[81] *Parents FAQ*, EARTH'S BEST, https://www.earthsbest.com/parents/faq/.

that are primarily rice based, changing other ingredients and conducting additional testing of finished product before shipping."[82]  However, Defendant has failed to include the results of any testing reflecting a drop in the contents of toxic heavy metals in its baby foods.

**Defendant's False Advertising Constitutes a Breach of its Duty of Care.**

61. Defendant's advertised mission is to nourish children with top quality, safe foods.

62. Defendant says it "ensure[s] a high degree of attention to both ingredient and product quality and safety – from procuring, handling, storing, blending, and packaging through distributing Earth's Best products to our consumer."[83]  It further claims that its organic foods "are produced without the use of potentially harmful chemicals, pesticides, genetically engineered ingredients, or growth hormones from animal-derived products."[84]

63. Based on Defendant's decisions to advertise, label, and market its baby foods as healthy, nutritious, safe for consumption, and including only natural foods, it had a duty to ensure that these statements and the message portrayed by its labels' imagery were true and not misleading.  As such, Defendant knew or should have known the baby foods included nondisclosed, dangerous levels of heavy metals, and that these toxins can accumulate over time.

64. As demonstrated in the charts provided by the Subcommittee, various foods from Defendant's line of baby food products were tested and found to contain dangerously varying levels of heavy toxic metals.

65. Defendant had a duty to ensure the baby foods were as they were represented and not deceptively, misleadingly, unfairly, and falsely marketed.

66. Defendant acted negligently, recklessly, unfairly, and/or intentionally with its deceptive, misleading, unfair, and false marketing tactics and omissions.

67. Defendant knew or should have known that it owed consumers a duty of care to prevent, or at the very least, minimize the presence of toxic heavy metals in its baby foods to the extent reasonably possible.

68. Defendant knew or should have known it owed consumers a duty of care to

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

---

[82] *Id.*
[83] *Why Earth's Best*, EARTH'S BEST, https://www.earthsbest.com/why-earths-best/.
[84] *Why Earth's Best – Our Promise*, EARTH'S BEST, https://www.earthsbest.com/why-earths-best/our-promise/.

adequately test for toxic heavy metals in its baby foods.

69. Defendant knew that properly and sufficiently monitoring for toxic heavy metals in its ingredients was not only important but critical.

70. Defendant also knew that monitoring toxic heavy metals was likewise important to its health-conscious consumers.

71. Finally, Defendant knew or should have known it could control the levels of toxic heavy metals in its baby foods by properly monitoring ingredients for toxic heavy metals and adjusting any formulation or diet to reduce ingredients that contained higher levels of toxic heavy metals.

72. Defendant also knew it was not properly and sufficiently testing for toxic heavy metals in its baby foods. Defendant knew its failure to properly and sufficiently test for toxic heavy metals in its baby foods continued throughout the Class Period.

73. Defendant's marketing tactics were misleading due to their failure to properly and sufficiently monitor for and to disclose the risk of the presence of toxic heavy metals in Defendant's baby foods.

74. Defendant knew or should have known consumers paid premium prices and expected Defendant to regularly test for toxic heavy metals and sufficiently monitor the presence of toxic heavy metals in finished baby food products and ingredients.

75. At all times during the Class Period, Defendant did not consistently monitor or test for toxic heavy metals in its baby foods and ingredients.

76. Defendant knew or should have known that consumers reasonably expected it to test for and monitor the presence of toxic heavy metals in its baby foods and ingredients.

77. Defendant knew or should have known its baby foods contained unmonitored levels of toxic heavy metals that were inconsistent with its marketing practices and representations to consumers.

78. Defendant knew or should have known that consumers expected it to ensure its baby foods were monitored and tested for toxic heavy metals to ensure compliance with its marketing practices and representations to consumers.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

20

79. Defendant knew but failed to disclose its lack of regular testing and knowledge of the risk or presence of toxic heavy metals in its baby foods and ingredients.

80. Defendant's above-referenced statements, representations, partial disclosures, and omissions are false, misleading, and crafted to deceive the public as they create an image that the relevant baby foods are healthy, nutritious, and made from the best ingredients, are subject to stringent quality control, and are free of toxic heavy metals.

81. Reasonable consumers, such as Plaintiffs and the Class Members, would have no reason to doubt Defendant's statements regarding the quality of its baby foods.

82. As a result of Defendant's wrongful misrepresentations, which include misleading, deceptive, unfair, and false statements and omissions, Defendant has generated substantial sales of its baby foods.

83. Defendant's wrongful misrepresentations, which include misleading, deceptive, unfair, and false representations and omissions, allowed it to capitalize on and reap enormous profits from consumers who paid the purchase price or premium for products that were not as advertised.  This is not surprising given that organic baby food was valued at $1.9 billion in the U.S. in 2018 and is expected to reach $3.32 billion by 2024. [85]

84. The incredible rise in consumer demand for organic baby food is "driven by the growing awareness among consumers to limit that baby's exposure to the harmful chemicals used in conventional food production and the awareness of the benefits of organic products." [86]

## V.     CLASS ACTION ALLEGATIONS

85. Plaintiffs bring this action individually and on behalf of the following Class:
All consumers residing in California who purchased Earth's Best Organic baby foods from four years prior to the filing of this Complaint through entry of final judgment. (the "Class").

---

[85] *Laura Wood, North America Organic Baby Food Market Expected to Reach a Value of $3.32 Billion by 2024 with a CAGR of 9.6%*, BUSINESS WIRE (Jan. 20, 2020, 12:10 PM), https://www.businesswire.com/news/home/20200120005436/en/North-America-Organic-Baby-Food-Market-Expected-to-Reach-a-Value-of-3.32-Billion-by-2024-with-a-CAGR-of-9.6---ResearchAndMarkets.com#:~:text=The%20publisher%20expects%20the%20market,using%20any%20chemicals%20or%20preservatives.

[86] *Organic Baby Food Market – Growth, Trends, COVID-19 Impact, and Forecasts (2021-2016)*, MORDOR INTELLIGENCE (2020), https://www.mordorintelligence.com/industry-reports/organic-baby-food-market.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

86. Excluded from the Class are (a) Defendants, including any entity in which any of the Defendants have a controlling interest, is a parent or a subsidiary of, or which is controlled by any of the Defendant; (b) the officers, directors, and legal representatives of Defendants; and (c) the judge and the court personnel in this case as well as any members of their immediate families. Plaintiffs reserve the right to amend the definition of the Class if discovery, further investigation and/or rulings by the Court dictate that it should be modified.

87. *Numerosity*. The members of the Class are so numerous that joinder of all Class Members is impractical.  While the exact number of Class Members is unknown to Plaintiffs at this time, given the number of consumers of Defendant's baby food products in California, it stands to reason that the number of Class Members is at least in the thousands.  Class Members are readily identifiable from information and records in Defendant's possession, custody, or control, such as sales records.

88. *Commonality and Predominance*. There are questions of law and fact common to Class Members, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. Whether Defendants own, manufacture, distribute, and create the marketing and advertising for Earth's Best Organic baby foods;

b. The level of toxic heavy metals and other undesirable toxins and contaminants contained in Defendant's baby foods;

c. Whether Defendant represented and continues to represent that its baby foods are healthy, nutritious, and safe for consumption;

d. Whether Defendant represented and continues to represent that the manufacturing of its products is subjected to rigorous quality standards;

e. Whether Defendant owed a duty of care to its customers to ensure that its baby foods do not contain any toxic heavy metals or other undesirable toxins or contaminants;

f. Whether Defendant owed a duty to investigate that its baby foods do not contain any toxic heavy metals or other undesirable toxins or contaminants;

g. Whether Defendant had a policy of ensuring that its baby foods do not contain any

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

toxic heavy metals or other undesirable toxins or contaminants;

h. Whether Defendant had a practice of ensuring that its baby foods do not contain any toxic heavy metals or other undesirable toxins or contaminants;

i. Whether Defendant had a procedure for ensuring that its baby foods do not contain any toxic heavy metals or other undesirable toxins or contaminants;

j. Whether Defendant knew or should have known that its baby foods contained toxic heavy metals and other undesirable toxins and contaminants;

k. Whether Defendant owed a duty of care to its customers to ensure that its baby foods do not contain any toxic heavy metals or other undesirable toxins and contaminants;

l. Whether Defendant owed a duty of care to ensure that its advertising, warranties, packaging, and labeling do not contain any false representations that Defendant's baby foods are healthy, nutritious, and safe for consumption;

m. Whether Defendant's representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and misleading;

n. Whether Defendant's representations in advertising, warranties, packaging, and/or labeling are likely to deceive a reasonable consumer;

o. Whether Defendant had knowledge that its representations regarding the in advertising, warranties, packaging, and/or labeling were false, deceptive and misleading;

p. Whether Defendant continues to disseminate representations that its baby foods are healthy, nutritious, and safe for consumption despite knowledge that the representations are false, deceptive and misleading;

q. Whether a representation that baby food is healthy, nutritious and safe for consumption and does not contain toxic heavy metals is material to a reasonable consumer;

r. Whether Defendant's marketing tactics and representations of its baby foods are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

s. The nature of the relief, including equitable relief, to which Plaintiffs and Class

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

23

Members are entitled; and

t.   Whether Plaintiffs and Class Members are entitled to damages, civil penalties and/or injunctive relief.

89. *Typicality*. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs, like the other Class Members, purchased Defendant's baby foods based on the reasonable belief that they were healthy, nutritious, and safe for consumption by babies. Plaintiffs, as with other Class Members, were deceived by Defendant's misrepresentations and omissions of fact.

90. *Adequacy of Representation*. Plaintiffs will fairly and adequately represent and protect the interests of the Class Members. Plaintiffs have retained competent counsel experienced in litigation of class actions, including consumer class actions. Plaintiffs intend to prosecute this action vigorously. Plaintiffs and Class Members have a unified and non-conflicting interest in pursuing the same claims and obtaining the same relief. Therefore, all Class Members will be fairly and adequately represented by Plaintiffs and their counsel.

91. *Superiority of Class Action*. A class action is superior to other available methods for the fair and efficient adjudication of the claims alleged in this action. The adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudications of the asserted claims. There will be no difficulty in the management of this action as a class action, and the disposition of the claims of the Class Members in a single action will provide substantial benefits to all parties and to the Court. Damages for any individual Class Member are likely insufficient to justify the cost of individual litigation so that, in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go un-remedied.

92. Class certification is also appropriate because Defendant has acted or refused to act on grounds generally applicable to the Class Members, such that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

24

COMPLAINT AND DEMAND FOR JURY TRIAL

## A. **FIRST CAUSE OF ACTION**

### NEGLIGENT MISREPRESENTATION

93. Plaintiffs, individually and on behalf of the Class, repeat and allege Paragraphs 1-94, as if fully alleged herein. In the alternative, Plaintiffs bring this claim on behalf of any potential Subclasses.

94. Plaintiffs reasonably placed their trust and reliance in Defendant's representations that its baby foods were as advertised to them and the Class, and were healthy, nutritious, safe for consumption, and did not contain toxic heavy metals.

95. Because of the relationship between the parties, Defendant owed a duty to use reasonable care to impart correct and reliable disclosures concerning the presence of toxic heavy metals in its baby foods or to, based upon its superior knowledge, say enough to not be misleading.

96. Defendant breached its duty to Plaintiffs and the Class by providing false, misleading, and/or deceptive information regarding the nature of its baby foods.

97. Plaintiffs and the Class reasonably and justifiably relied upon the information supplied to them by Defendant. A reasonable consumer would have relied on Defendant's warranties, statements, representations, advertising, packaging, labeling, and other marketing as to the quality, make-up, and included ingredients of the relevant baby foods.

98. As a result of these misrepresentations, Plaintiffs and the Class purchased the baby foods containing toxic heavy metals at a premium.

99. Defendant failed to use reasonable care in its communications and representations to Plaintiffs and the Class, especially in light of its knowledge of the risks and importance of considering ingredients to consumers when purchasing baby food.

100. By virtue of Defendant's negligent misrepresentations, Plaintiffs and the Class have been damaged in an amount to be proven at trial or alternatively, seek rescission and disgorgement under this Count.

## B. **SECOND CAUSE OF ACTION**

### FRAUDULENT MISREPRESENTATION

101. Plaintiffs, individually and on behalf of the Class, repeat and allege

25

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

Paragraphs 1-102, as if fully alleged herein. In the alternative, Plaintiffs bring this claim on behalf of any potential Subclasses.

102. At all relevant times, Defendant was engaged in the business of designing, manufacturing, distributing, and selling various types of baby food.

103. Defendant, acting through its representatives or agents, delivered baby foods to retail stores, distributors, and various other distribution channels.

104. Defendant willfully, falsely, and knowingly misrepresented various material facts regarding the quality and contents of its baby foods.

105. Rather than inform consumers of the truth regarding the existence of toxic heavy metals in its baby foods, Defendant engaged in misrepresentation. Defendant misrepresented its baby foods as healthy and safe for consumption for developing babies. Defendant assured consumers that by buying its products, consumers were investing in the best quality products for their growing children.

106. Defendant made these material misrepresentations to boost or maintain sales of its baby foods, and to falsely assure purchasers that by buying its products, consumers were purchasing foods superior to those made by competitors. Defendant made false representations with knowledge of their falsity, as it was in the unique position to know exactly how its products were made and to what degree did those products contain toxic heavy metals. The false representations were material to consumers because the representations played a significant role in consumers' decision to invest in certain baby foods.

107. Plaintiffs and the Class Members reasonably relied on Defendant's claims pertaining to its baby foods' healthfulness, quality and safety, as all consumers who purchase baby foods reasonably rely on the manufacturer's representations with regards to the manufacturer's products.

108. Plaintiffs and Class Members had no way of knowing that Defendant was misrepresenting its baby foods' actual contents.

109. Plaintiffs and Class Members could not have discovered the misleading nature of Defendant's misrepresentations on their own, because Defendant was in exclusive

26

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

possession of such information.

110.     Plaintiffs and the Class Members had no reason to suspect Defendant of misrepresenting material information in its advertisements.

111.     Plaintiffs and the Class Members did not have an independent duty to investigate Defendant's representations.

112.     Although Defendant, as the manufacturer and distributor of its baby foods, had a duty to ensure the accuracy of the representations it disseminated regarding its products' contents, Defendant did not fulfill these duties.

113.     Defendant was in a superior position to know the falsity and/or misleading nature of its representations.  As the manufacturer, Defendant is in sole possession of rigorous testing of its products and knew or should have known that its products contained dangerously high amounts of toxic heavy metals.

114.     Defendant misrepresented material facts partly to pad and protect its profits.  The benefits of falsely touting its baby foods as healthy and safe to eat came at the expense of Plaintiffs and Class Members.

115.     Plaintiffs and Class Members were unaware of these material misrepresentations, and they would not have acted as they did had they known the truth. Plaintiffs' and Class Members' actions were justified given Defendant's misrepresentations. Defendant was in exclusive control of material facts, and such facts were not known to the public.

116.     Plaintiffs and Class Members sustained injury due to the purchase of baby foods that did not live up to representations.

117.     Plaintiffs and Class Members are entitled to recover full or partial refunds due to Defendant's misrepresentations, amounts to be proven at trial.  Plaintiffs and Class Members are also entitled to recover the costs and expenses they incurred in purchasing alternative baby foods due to Defendant's misrepresentations, also amounts to be determined at trial.

118.     Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of Plaintiffs' and Class Members' rights and well-being,

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

27

and in part to enrich itself in California at the expense of consumers. Defendant's acts were done to gain commercial advantage over competitors, and to drive consumers away from consideration of competitor baby foods. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

## C. **THIRD CAUSE OF ACTION**

VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT

*Cal. Civ. Code § 1750, et seq.*

119. Plaintiffs, individually and on behalf of the Class, repeat and allege Paragraphs 1-120, as if fully alleged herein. In the alternative, Plaintiffs bring this claim on behalf of any potential Subclasses.

120. The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq. ("CLRA"), is a comprehensive statutory scheme that is to be liberally construed to protect consumers against unfair and deceptive business practices in connection with the conduct of businesses providing goods, property, or services to consumers primarily for personal, family, or household use.

121. In accordance with the liberal application and construction of the CLRA, application of the CLRA to all class members is appropriate, given that Defendant's conduct as described herein originated from California, and consumers purchased or used the involved baby foods in California.

122. Defendant is a "person" as defined by Civil Code §§ 1761(c) and 1770 and has provided "goods" as defined by Civil Code §§ 1761(a) and 1770.

123. Plaintiffs and the Class Members are "consumers" as defined by Civil Code §§ 1761(d) and 1770 and have engaged in a "transaction" as defined by Civil Code §§ 1761(e) and 1770.

124. Defendant's acts and practices were intended to and did result in the sales of products to Plaintiffs and the Class Members in violation of Civil Code § 1770, including:

     i.     Representing that goods or services have characteristics and uses that they do not have;

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

28

COMPLAINT AND DEMAND FOR JURY TRIAL

ii.   Representing that goods or services are of a particular standard, quality, or grade when they are not;

iii.  Advertising goods or services with intent not to sell them as advertised; and

iv.   Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

125.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

126.   Had Defendant disclosed to Plaintiffs and Class Members that its baby foods contained toxic heavy metals, often times in amounts surpassing those recommended or deemed safe by multiple regulatory bodies, Plaintiffs and the Class Members would have made different purchasing decisions.

127.   Had Defendant disclosed the truth, it would have been unable to continue in the same course of business. So, Defendant represented that its baby foods were healthy, nutritious and safe for consumption by babies, who have been shown to be extremely susceptible to the harsh effects of exposure to toxic heavy metals. Plaintiffs and the Class Members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

128.   As a direct and proximate result of Defendant's violations of California Civil Code § 1770, Plaintiffs and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages. Such monetary and non-monetary damages have arisen from not receiving the benefit of the bargain in purchasing Defendant's baby foods, and increased time and expense in having to purchase safer alternatives and to determine whether their children have been negatively affected by consuming Defendant's baby foods.

129.   In satisfaction of the requirements of California Civil Code § 1782(a), Plaintiffs will send written notice to Defendant via certified or registered mail contemporaneously with the filing of this Complaint. Plaintiffs will seek to amend the Complaint to seek relief under

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

29

COMPLAINT AND DEMAND FOR JURY TRIAL

this cause of action once the requisite 30-day notice period has expired and to state that Plaintiffs gave Defendant proper notice.

### D. **FOURTH CAUSE OF ACTION**

VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW

*Cal. Bus. & Prof. Code § 17500 et. seq.*

130. Plaintiffs, individually and on behalf of the Class, repeat and allege Paragraphs 1-131, as if fully alleged herein. In the alternative, Plaintiffs bring this claim on behalf of any potential Subclasses.

131. Defendant's acts and practices, as described herein, have deceived and/or are likely to continue to deceive class members and the public. As discussed, Defendant misrepresented its baby foods and the fact that they are healthy, nutritious and safe for babies to consume. It concealed the fact that its baby foods contain high traces of toxic heavy metals such as arsenic, lead, cadmium and/or mercury.

132. Defendant disseminated uniform advertising regarding the contents of its baby foods in California. The advertising was inherently unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code § 17500, et seq. Such advertisements were intended to and likely did deceive the public for the reasons detailed herein.

133. The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive in that Defendant continues to conceal the true nature of its baby foods. Defendant has failed to let consumers know precisely what reforms it has been making to its standards to ensure that its baby foods will contain less to no toxic heavy metals. Defendant has further failed to disclose the results of most recent testing of its products since the release of the February 2021 Subcommittee report. Finally, Defendant failed to instigate a public information campaign to alert consumers of the fact that its baby foods contain toxic heavy metals. Placing a terse notice regarding the February 2021 Subcommittee report on its website is insufficient. As such, Defendant continues to misrepresent the true nature of its products and continues to deceive consumers.

134. In making and disseminating the statements alleged herein, Defendant

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

knew or should have known that its advertisements were untrue and misleading in violation of California law. Plaintiffs and other Class Members based their purchasing decisions on Defendant's omitted and misrepresented material facts. The revenues for Defendant attributable to products sold in those false and misleading advertisements amount to millions of dollars. Plaintiffs and Class Members were injured in fact and lost money and property as a result.

135. The misrepresentations and non-disclosures by Defendant of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute violations of Cal. Bus. & Prof Code § 17500, *et seq.*

136. As a result of Defendant's wrongful conduct, Plaintiffs and the Class Members were induced to purchase Defendant's baby foods. Plaintiffs and the Class Members are therefore entitled to restitution as appropriate for this cause of action.

137. Plaintiffs and Class Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices, declaratory relief, reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5, injunctive relief, and other appropriate equitable relief.

## E. **FIFTH CAUSE OF ACTION**

### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW

#### *Cal. Bus. & Prof. Code § 17200, et seq.*

138. Plaintiffs, individually and on behalf of the Class, repeat and allege Paragraphs 1-139, as if fully alleged herein. In the alternative, Plaintiffs bring this claim on behalf of any potential Subclasses.

139. In accordance with the liberal application and construction of the Unfair Competition Law ("UCL"), application of the UCL to all Class Members is appropriate, given that Defendant's conduct as described originated in California and Class Members purchased, used, and/or sustained damage to the baby foods involved in California.

140. Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

141. Defendant violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") by

31

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

engaging in unlawful, unfair, or fraudulent business acts or practices and unfair, deceptive, untrue, or misleading advertising, including:

       i.      Knowingly formulating, manufacturing, advertising, and selling baby foods touted as healthy, nutritious and safe for consumption when, in reality, the baby foods contain toxic heavy metals;

      ii.     Misrepresenting material information to consumers regarding Defendant's baby food products and their purported ability to offer a dose of nutrition to a baby's diet;

     iii.    Concealing material information from consumers regarding the fact that the baby foods contain high levels of toxic heavy metals, so that consumers would not know that the baby foods pose a health risk to babies; and

     iv.    Using uniform, deceptive business practices, such as telling consumers via their websites that the baby foods involved are safe to consume and have undergone thorough testing, without transparently disclosing Defendant's testing standards and ultimate results.

142.      Defendant has engaged in "unlawful" business practices by violating multiple laws, including the CLRA, Cal. Civ. Code §§ 1750, *et seq.*, which include:

       i.      Knowingly formulating, manufacturing, advertising, and selling baby foods that provide nutrition to babies as advertised;

      ii.     Misrepresenting material information to consumers regarding the healthfulness and safety of their baby foods so that consumers were unable to make informed choices when purchasing baby food;

     iii.    Concealing material information from consumers regarding the fact that the baby foods contain toxic heavy metals in dangerously high amounts; and

     iv.    Using uniform, deceptive business practices, such as telling consumers such as telling consumers via Defendant's website that the baby foods involved are safe to consume and have undergone thorough testing,

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

32

COMPLAINT AND DEMAND FOR JURY TRIAL

without transparently disclosing Defendant's testing standards and ultimate results.

143. Defendant violated § 17200's prohibition against engaging in unlawful acts and practices by engaging in false and misleading advertising and by omitting material facts from purchasers of its baby foods. As alleged more fully herein, Defendant's marketing and sale of baby foods, and more specifically its failure to inform customers of the presence of toxic heavy metals in said baby foods, violated Cal. Civ. Code § 1750, *et seq.*, common law, and other statutory violations as alleged herein. Plaintiffs reserve the right to allege other violations of the law, which constitute other unlawful business acts and practices. Defendant's conduct is ongoing and continues to this date.

144. Defendant violated § 17200's prohibition against unfair conduct by failing to inform its customers about the true nature of its baby foods, and engaging in a pattern or practice of concealing those facts and urging its customers to purchase more of its baby foods based on the false belief that the foods remain safe to consume for babies, thereby depriving consumers of sufficient information to make an informed decision when purchasing baby food. This conduct is substantially injurious to consumers, offends public policy, is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct – selling baby foods that, in many instances, put children at risk for severe developmental and health problems. The impact of the practice against Plaintiffs and the Class Members far outweighs any possible justification or motive on the part of Defendant. The impact on Plaintiffs and Class Members has been described. Defendant can have no possible justification for including a false inducement to purchase its products. Plaintiffs and Class Members could not reasonably have avoided this injury because they relied on Defendant's advertising as to the quality and characteristics of the products being sold, as all consumers who rely on the verity of product advertising must do. Defendant's false advertising is also violative of public policy, as expressed in the CLRA.

145. Specifically, Class Members paid hefty prices overtime for Defendant's baby food products, believing that they were the most optimal options for growing children. Defendant has refused to admit that its products are indeed dangerous, and it continues to market

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

33

and sell its products in California. Defendant has engaged in this conduct at the expense of its customers' rights – Defendant could have provided customers with full information about its baby foods' actual contents, but it did not.

146. Defendant engaged in this conduct to gain an unfair commercial advantage over its competitors. It misrepresented critical and material information to, and omitted critical and material information from, Plaintiffs and Class Members, its competitors, and the marketplace – all to its unfair competitive advantage.

147. Defendant's business practices also constitute fraudulent conduct because they were likely to deceive, and did deceive, Class Members into purchasing certain baby foods with ingredients that could not allow for the baby foods to benefit children as advertised.

148. Defendant's business practices, as alleged herein, also constitute fraudulent conduct because Defendant did not deliver the product it advertised.

149. Defendant's representations and omissions in California were material because they were likely to deceive reasonable consumers.

150. Plaintiffs and Class Members did not know that the baby foods contained toxic heavy metals. Accordingly, Defendant should not have omitted and/or misrepresented the facts surrounding the baby food's true contents.

151. Defendant omitted and misrepresented material information pertaining to its baby foods' true contents to defraud the Class Members' by, among other things, maintaining market share, convincing Plaintiffs and Class Members to purchase more of its products, and to otherwise ensure that Plaintiffs and Class Members would not discover Defendant's underlying fraud regarding its omissions and misrepresentations regarding the baby food products. As a result, Defendant violated Cal. Penal Code § 502.

152. Defendant's fraud led to consumers paying for products that did not live up to reasonable expectations. Consumers likely paid more for baby foods than they otherwise should have, and/or purchased baby foods manufactured by Defendant instead of one of Defendant's competitors. None of this would have been necessary had consumers known the truth.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

153.     As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiffs and Class Members were injured and lost money or property.  They did not receive the benefit of the bargain in purchasing the baby foods, and they spent their own time and money dealing with purchasing safer baby food alternatives. Additionally, Plaintiffs' babies were harmed or placed at risk of imminent harm by consuming foods containing toxic heavy metals and other undesirable toxins and contaminants.

154.     Defendant acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law.  It recklessly disregarded Plaintiffs' and Class Members' rights.  Defendant's knowledge of its baby foods containing toxic heavy metals put it on notice that its foods were not being sold as advertised.

155.     Plaintiffs and Class Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices, declaratory relief, reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5, injunctive relief, and other appropriate equitable relief.

### F.   SIXTH CAUSE OF ACTION

FRAUD

156.     Plaintiffs, individually and on behalf of the Class, repeat and allege Paragraphs 1-157, as if fully alleged herein.  In the alternative, Plaintiffs bring this claim on behalf of any potential Subclasses.

157.     At the time Plaintiffs and Class Members purchased Defendant's baby foods, Defendant did not disclose, but instead concealed and misrepresented, the true contents of its baby foods as discussed herein.

158.     Defendant affirmatively misrepresented its baby foods' contents by telling Plaintiffs and the Class Members that the baby foods were healthy, nutritious, and safe for babies and children to eat, all of which are not true.

159.     Defendant omitted and concealed the fact that testing showed that its foods contained toxic heavy metals such as arsenic, lead, cadmium, and/or mercury.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

35

COMPLAINT AND DEMAND FOR JURY TRIAL

160.     Defendant knew, or should have known, that its advertisements falsely portrayed to the consuming public that its baby foods were safe for consumption.

161.     Defendant knew that its omissions and misrepresentations regarding the contents of its baby foods were material since it dedicated advertising to create such advertisements.  Further, a reasonable consumer would rely upon Defendant's representations in making purchasing decisions.

162.     Defendant, through its advertisements, has proven that it in fact intended to deceive Plaintiffs and Class Members.

163.     Plaintiffs and Class Members did not know, nor could they have known through reasonable diligence, about Defendant's fraud.  They also could not have known that companies as large as Defendant would repeatedly lie to the consuming public about its products' true nature without facing consequences.  Only after purchasing Defendant's products and the release of the February 2021 Subcommittee report did Plaintiffs and the Class Members become aware of Defendant's fraud.

164.     Plaintiffs and Class Members are reasonable in relying on Defendant's misrepresentations in making their purchasing decisions.

165.     Plaintiffs and Class Members had a right to rely upon Defendant's representations because Defendant maintained monopolistic control over the true circumstances of its products' contents.  Defendant selected the information available to the public regarding the contents of its products.

166.     Plaintiffs and Class Members sustained damages in relying on Defendant's omissions and misrepresentations.  Plaintiffs and Class Members have sustained actual losses and damages in a sum to be determined at trial, including punitive damages.

## G. **SEVENTH CAUSE OF ACTION**

### CONSTRUCTIVE FRAUD

167.     Plaintiffs, individually and on behalf of the Class, repeat and allege Paragraphs 1-168, as if fully alleged herein.  In the alternative, Plaintiffs bring this claim on behalf of any potential Subclasses.

36

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

168.     At the time Plaintiffs and Class Members purchased Defendant's baby foods, Defendant did not disclose the true contents of its baby foods – namely, the presence of toxic heavy metals.

169.     Further, Defendant affirmatively represented that its baby foods were healthy, nutritious and safe for consumption.

170.     Defendant knew, or should have known, that the contents and safety of its baby foods were falsely portrayed to the consumer public.

171.     Defendant also knew that its omissions and misrepresentations regarding its baby foods were material, and that a reasonable consumer would rely upon Defendant's representations in making purchasing decisions.

172.     Defendant had an obligation not to omit or misrepresent its baby foods' true contents because: (a) it had sole possession of information regarding the true contents of its baby foods; (b) it made affirmative misrepresentations regarding its baby foods' safety that misled consumers; (c) Plaintiffs and Class Members reasonably relied upon Defendant to make full disclosures based upon the relationship between Plaintiffs and Class Members; (d) Defendant had a duty to ensure the accuracy of the representations it disseminated regarding the baby foods' true contents; (e) Plaintiffs and the Class Members had no way of knowing about Defendant's fraud until after purchasing the baby foods and the release of the February 2021 Subcommittee report; and (f) Defendant was put on notice of its baby food's toxicity when the House Subcommittee released reports indicating the presence of toxic heavy metals in its baby foods.

173.     Plaintiffs and Class Members did not know—nor could they have known through reasonable diligence—about the presence of toxic heavy metals, nor could they have known about this fact when Defendant repeatedly advertised that its foods were healthy, natural and safe for consumption.

174.     Plaintiffs and Class Members would have been reasonable in relying on Defendant's misrepresentations (and corresponding omissions) in making their purchasing decisions and inadvertently or intentionally exposing babies and children to toxic heavy metals.

175.     Plaintiffs and Class Members had a right to rely upon Defendant's

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

37

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

1  representations (and corresponding omissions) because Defendant maintained monopolistic

2  control over what information regarding its baby foods was made known to the public.

3      176.    Defendant breached its duty to Plaintiffs and Class Members to make full

4  disclosures of the fact that its baby foods do, in fact, contain dangerous, heavy toxic metals in

5  varying quantities.

6      177.    Plaintiffs and Class Members sustained damages as a result of their

7  reliance on Defendant's omissions, misrepresentations, and breach of its duty.  Plaintiffs and

8  Class Members have sustained actual losses and damages in a sum to be determined at trial.

9  ### H. <u>EIGHTH CAUSE OF ACTION</u>

10  BREACH OF EXPRESS WARRANTY

11  *Cal. Comm. Code § 2313, et seq.*

12      178.    Plaintiffs, individually and on behalf of the Class, repeat and allege

13  Paragraphs 1-179, as if fully alleged herein.  In the alternative, Plaintiffs bring this claim on behalf

14  of any potential Subclasses.

15      179.    As set forth herein, Defendant made express representations to Plaintiffs

16  and the Class that its baby foods were healthy, nutritious, and safe for consumption.

17      180.    These promises became part of the basis of the bargain between the parties

18  and thus constituted express warranties.

19      181.    There was a sale of goods from Defendant to Plaintiffs and the Class

20  members.

21      182.    On the basis of these express warranties, Defendant sold to Plaintiffs and

22  the Class members baby foods.

23      183.    Defendant knowingly breached the express warranties by including toxic

24  heavy metals in its baby foods.

25      184.    Defendant was on notice of this breach as it was aware of the included

26  toxic heavy metals in its baby foods.

27      185.    Privity exists because Defendant expressly warranted to Plaintiffs and the

28  Class that its baby foods were healthy, nutritious, and safe for consumption.

COMPLAINT AND DEMAND FOR JURY TRIAL

186.     Plaintiffs and the Class members reasonably relied on the express warranties by Defendant.

187.     As a result of Defendant's breaches of its express warranties, Plaintiffs and the Class sustained damages as they paid money for the baby foods that were not what Defendant represented.

188.     Plaintiffs, on behalf of herself and the Class, seek actual damages for Defendant's breach of warranty.

## I.     NINTH CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY

*Cal. Comm. Code § 2314, et seq.*

189.     Plaintiffs, individually and on behalf of the Class, repeat and allege Paragraphs 1-190 as if fully alleged herein.  In the alternative, Plaintiffs bring this claim on behalf of any potential Subclasses.

190.     Defendant is a merchant engaging in the sale of goods to Plaintiffs and the Class members.

191.     There was a sale of goods from Defendant to Plaintiffs and the Class members.

192.     As set forth herein, Defendant marketed its baby foods to Plaintiffs and the Class as healthy, nutritious and safe options for babies that did not contain toxic heavy metals. But the baby foods did not conform to these affirmations and promises because they contained toxic heavy metals at undisclosed but, according to the February 2021 Subcommittee report, alarming levels.  These very promises became part of the basis of the bargain between the parties and thereby constituted a series of implied warranties.

193.     Defendant breached the implied warranties by selling the baby foods that failed to conform to the promises or affirmations of fact made on containers or in advertisements because each product contained toxic heavy metals.

194.     Defendant was on notice of this breach as it was aware of the inclusion of toxic heavy metals in its baby foods.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

COMPLAINT AND DEMAND FOR JURY TRIAL

195.     Privity exists because Defendant impliedly warranted to Plaintiffs and the Class members through the warranting, packaging, advertising, marketing, and labeling that its baby foods were healthy, nutritious, and safe for consumption and by failing to make any mention of toxic heavy metals. Plaintiffs and the Class then relied on these implied warranties in making their purchases.

196.     As a result of Defendant's breach of its implied warranties of merchantability, Plaintiffs and the Class sustained damages as they paid money for the baby foods that were not what Defendant represented.

197.     Plaintiffs, on behalf of herself and the Class, seek actual damages for Defendant's breach of warranty.

## J.  TENTH CAUSE OF ACTION

### QUASI-CONTRACT / UNJUST ENRICHMENT

198.     Plaintiffs, individually and on behalf of the Class, repeat and allege Paragraphs 1-199 as if fully alleged herein. In the alternative, Plaintiffs bring this claim on behalf of any potential Subclasses.

199.     Plaintiffs and Class Members purchased Defendant's baby foods, and those baby foods were not as Defendant represented them to be, enticing Plaintiffs and the Class to purchase the baby foods.   Had Plaintiffs and the Class known of the fact that the baby foods contained toxic heavy metals such as arsenic, lead, cadmium, and/or mercury, they would not have purchased Defendant's baby food, but would rather purchase baby foods manufactured by one of Defendant's competitors.  Furthermore, Plaintiffs would not have had to pay for safer alternatives after learning of the true contents of Defendant's baby foods.

200.     Accordingly, Plaintiffs and Class Members were damaged, and Defendant was unjustly enriched, due to fraud, by the purchase price of those baby foods containing toxic heavy metals.

201.     Plaintiffs and Class Members are entitled to damages in the amount Defendant was unjustly enriched, to be determined at trial.

202.     Furthermore, Defendant's conduct was willful, intentionally deceptive,

40

COMPLAINT AND DEMAND FOR JURY TRIAL

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

and intended to cause economic injury to Plaintiffs and the Class. Defendant is therefore liable to pay punitive damages under California law.

## VI. PRAYER FOR RELIEF

203. WHEREFORE, Plaintiffs, individually and on behalf of all other class Members, respectfully request that the Court enter an Order:

    i. Declaring that this action is a proper class action, certifying the Classes and/or Subclasses as requested herein, designating Plaintiffs as Class Representatives, and appointing Plaintiffs' attorneys as Class Counsel;

    ii. Enjoining Defendant from continuing the unfair business practices alleged in this Complaint;

    iii. Ordering Defendant to pay actual and statutory damages (including punitive damages) and restitution to Plaintiffs and the other Class Members, as allowable by law;

    iv. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

    v. Ordering Defendant to pay attorneys' fees and costs of suit; and

    vi. Ordering such other and further relief as may be just and proper.

## VII. DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a jury trial for all claims so triable.

Dated: March 26, 2021         **WILSHIRE LAW FIRM**

By */s/ Cinela Aziz*
   Cinela Aziz
   *Attorney for Plaintiffs and the Putative Class*

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137