UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In re HAIN CELESTIAL HEAVY METALS BABY
FOOD LITIGATION,

**MEMORANDUM AND OPINION**
CV 21-0678 (JS)(AYS)

------------------------------------------------------------------X

**ANNE Y. SHIELDS, United States Magistrate Judge:**

Before the Court are competing motions for the appointment of interim lead counsel in this consumer class action brought pursuant to New York General Business Law ("NYGBL") §§ 349 and 350 and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") § 501.211(2). The movants are as follows: (1) Plaintiffs Nicole Stewart, Elizabeth Agramonte, Summer Apicella, Charlotte Willoughby, Lee Boyd, Kelly McKeon, Renee Bryan, Marilyn Carson, Najah Henry, Chanel Jackson, Alexis Dias, Holly Buffinton (collectively, the "Stewart Movants"); (2) Attorneys Melissa Weiner, Annick Persinger, and Rachel Soffin, who represent Plaintiff Matthew Hanson (the "WPS Slate"); (3) Labaton Sucharow, who represents Plaintiff Asyia Andrews ("Labaton"); (4) Plaintiffs Lori-Anne Albano, Myjorie Philippe, Rebecca Telaro, and Alyssa Rose (collectively, the "Albano Movants"); (5) Kohn Swift & Graf, P.C., who represent Plaintiffs Erik Lawrence, Rachel Frantz, and Marie Mezile ("Kohn Swift"); (6) Plaintiffs Lisa Gray and Heather Age, who are represented by Carlson Lynch, LLP and Leeds Brown (the "CLLB Team"); (7) Wolf Haldenstein Adler Freeman & Hertz, LLP, who represent Plaintiffs Sally Bredberg and Rebecca Bromberg ("Wolf Haldenstein"); (8) Plaintiffs Alyssa Mays, Shanely Zorrilla, Leiba Baumgarten, and Lynda Galloway (collectively, the "Mays Group"); and, (9) Scott+Scott Attorneys at Law LLP, who represent Plaintiffs Emily Baccari, Dominick Grossi, Heather Hyden, Haley Sams, and Vito Scarola ("Scott+Scott"). For the

1

following reasons, Labaton Sucharow's motion to be appointed interim class counsel is granted and the motions by the Stewart Movants, the WPS Slate, the Albano Movants, Kohn Swift, the CLLB Team, Wolf Haldenstein, the Mays Group, and Scott+Scott for such appointment are denied.

## BACKGROUND

Plaintiffs Nicole Stewart, Elizabeth Agramonte, and Summer Apicella ("Plaintiffs") commenced this consumer class action on February 8, 2021, alleging violations by Defendant, Hain Celestial Group, Inc. ("Defendant" or "Hain"), of NYGBL §§ 349 and 350 and FDUTPA § 501.211(2). Plaintiffs allege that Defendant engaged in deceptive business practices by failing to accurately represent the levels of heavy toxic metals present in the baby foods Plaintiffs purchased from them. (Compl. ¶ 2.)

Defendant sells baby food products under the brand name "Earth's Best Organic" throughout the United States. (Compl. ¶¶ 10, 12.) Defendant holds itself out to be "the leading marketer, manufacturer, and seller of organic and natural better-for-you products." (Compl. ¶ 11.) Defendant touts its commitment to and use of organic and non-GMO ingredients in its products and emphasizes its ability to create and inspire "A Healthy Way of Life" for children through its products. (Id.) For instance, on its website, Defendant describes its Earth's Best Organic line as "made from pure ingredients to help children grow up strong and healthy." (Compl. ¶ 12.) Plaintiffs, residents of New York and Florida, are purchasers of Defendant's Earth's Best Organic baby food, including Earth's Best Organic Sweet Potato Cinnamon Flax & Oat Baby Meal, Whole Grain Oatmeal Cereal, and Banana Raspberry & Brown Rice Pouch, which have been found to contain dangerous levels of toxic heavy metals. (Compl. ¶¶ 6-8.)

On November 6, 2019, the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform ("House Subcommittee") requested internal documents and test results from seven of the largest manufacturers of baby food in the United States, which included makers of both organic and conventional products. (Compl. ¶ 19.) One of those companies was Defendant. (Id.) In response to the House Subcommittee's requests, Defendant produced its internal testing policies, test results for ingredients and finished products, and documents detailing its use of the ingredients and finished products that exceeded its internal testing limits. (Compl. ¶ 20.)

On February 4, 2021, the House Subcommittee issued a report entitled Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury (the "Congressional Report"). (Compl. ¶ 1.) The Congressional Report provided detailed findings that arsenic, cadmium, lead, mercury (collectively, the "Heavy Metals") were present in "significant levels" in numerous commercial baby food products, such as Defendant's Earth's Best Organic baby food. (Compl. ¶ 17.) In particular, the House Subcommittee found that test results of the Earth's Best Organic baby food products, and their ingredients, exceeded the maximum advisable and safe levels of inorganic arsenic, lead, and cadmium determined by the Food and Drug Administration ("FDA"). (Compl. ¶ 21.)

Plaintiffs allege that Defendant's own internal company standards permit dangerously high levels of toxic Heavy Metals and that, even with these standards in place, Defendant often sold baby foods that exceeded its own internal standards. (Compl. ¶ 26.) For instance, Defendant's internal standard for arsenic, lead, and cadmium is 200 ppb in certain ingredients. (Id.) Plaintiffs allege, however, that Defendant exceeded its internal policies by using ingredients containing 353 ppb lead and 309 ppb arsenic. (Id.) According to Plaintiffs, Defendant attempted

3

to justify deviations above its internal ingredient testing standards based on "theoretical calculations," even after Defendant admitted to the FDA that its internal testing underestimated final product toxic Heavy Metal levels. (Id.)

The Congressional Report also provided that a secret industry presentation was made to federal regulators that revealed increased risks of dangerous levels of toxic Heavy Metals in baby foods. (Compl. ¶ 27.) On August 1, 2019, the FDA received a secret slide presentation from Defendant, which revealed that:

> Corporate policies to test only ingredients, not final products, underrepresent the levels of toxic heavy metals in baby foods. In 100% of the Hain baby foods tested, inorganic arsenic levels were higher in the finished baby food than the company estimated they would be based on individual ingredient testing. Inorganic arsenic was between 28% and 93% higher in the finished products.
>
> Many of Hain's baby foods were tainted with high levels of inorganic arsenic – half of its brown rice baby foods contained over 100 ppb inorganic arsenic; its average brown rice baby food contained 97.62 ppb inorganic arsenic; and
>
> Naturally occurring toxic heavy metals may not be the only problem causing the unsafe levels of toxic heavy metals in baby foods; rather, baby food producers like Hain may be adding ingredients that have high levels of toxic heavy metals into their products, such as vitamin/mineral pre-mix.

(Compl. ¶ 27.) To this day, baby foods containing dangerous levels of toxic Heavy Metals bear no label or warning to parents. (Compl. ¶ 28.) As a result of its studies of toxic Heavy Metal levels in baby food, the House Subcommittee has recommended that parents should avoid baby foods that contain ingredients testing high in toxic Heavy Metals, such as rice products. (Compl. ¶ 29.)

Despite the warnings and conclusions in the Congressional Report regarding the presence of dangerous levels of Heavy Metals in Defendant's baby foods, Defendant's website describes its Earth's Best Organic line of products as "time-trusted and safe" and claims such products "are produced without the use of potentially harmful pesticides." (Compl. ¶ 33.) Plaintiffs herein

4

allege that although the Earth's Best Organic line is widely advertised and sold at numerous retail and online outlets, the marketing of the line fails to disclose that the products contain or are at risk of containing dangerous levels of Heavy Metals or other undesirable toxins or contaminants. (Compl. ¶¶ 35-36.)

On May 13, 2021, the District Court issued an order consolidating thirteen cases in this District wherein Plaintiffs have asserted claims against Defendant for violations of various state consumer protection laws based on the allegations that Defendant engaged in deceptive business practices with regard to its baby food products by failing to disclose that the products contain levels of toxic Heavy Metals. (Docket Entry ("DE") [47].) On May 18, 2021, the District Court granted Defendant's motion to consolidate two additional cases into the instant action. (DE [50].) Additional motions to consolidate cases have subsequently been granted. (DE [74], [90], [102], [113], [114], [119], [128], [136].)

The within motions to be appointed interim lead counsel were all filed on May 27, 2021. (DE [59], [60], [61], [62], [63], [64], [65], [66], [67].) On September 20, 2021, Judge Seybert – the District Judge assigned to this action – referred all nine motions to this Court for decision. (Elec. Order of Seybert, J., dated Sept. 20, 2021.) The Court now turns to the merits of the motions.

## DISCUSSION

I.   Legal Standard

Rule 23(g)(3) of the Federal Rules of Civil Procedure provides that the Court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). "The appointment of interim lead counsel, among other things, clarifies responsibility for the protection of the interests of the

5

putative class during pre-certification motions, discovery, and settlement activity." Pearlman v. Cablevision Sys. Corp., No. 10-CV-4992, 2011 WL 477815, at *2 (E.D.N.Y. Feb. 1, 2011) (citing Manual For Complex Litigation (Fourth) § 21.11 (4th ed. 2004)). In selecting interim class counsel, courts look to the criteria set forth in Rule 23(g)(1)(A) to determine the adequacy of class counsel: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and, (iv) the resources counsel will commit to representing the class. See In re HSBC Bank USA, N.A., Debit Card Overdraft Fee Litig., No. 12-cv-6224, 2013 WL 3816597, at *10 (E.D.N.Y. July 22, 2013). This determination is based on "an analysis of class counsel's qualifications and experience in general (including in representing classes and in similar lawsuits)[,] as well as a fact-specific analysis of the conduct of counsel in the lawsuit in which a class is to be certified and the resources counsel will commit to representing the class." Huer Huang v. Shanghai City Corp., 459 F. Supp. 3d 580, 596 (S.D.N.Y. 2020).

In addition to the four factors set forth in Rule 23(g)(1)(A), a court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). These include: "(1) the quality of the pleadings; (2) the vigorousness of the prosecution of the lawsuits; and (3) the capabilities of counsel, . . . as well as whether counsel are qualified and responsible, . . . [whether] they will fairly and adequately represent all of the parties on their side, and . . . [whether] their charges will be reasonable." In re Bank of Am. Corp. Securities, Derivative and ERISA Litig., 258 F.R.D. 260, 272 (S.D.N.Y. 2009) (citation and internal quotation marks omitted) (alterations in original). Furthermore, courts may consider whether the proposed counsel is sufficiently diverse to reflect the

6

composition of the class. See, e.g., In re J.P. Morgan Chase Cash Balance Litig., 242 F.R.D. 265, 277 (S.D.N.Y. 2007) (stating that "it is important to all concerned that there is evidence of diversity, in terms of race and gender, of any class counsel [the court] appoint[s]"); but see Martin v. Blessing, 571 U.S. 1040, 403 (2013) (stating that it "seems quite farfetched to argue that class counsel cannot fairly and adequately represent a class unless the race and gender of counsel mirror the demographics of the class"). Although diversity is not a factor that is outcome-determinative, "the intuition underlying the diversity criterion is soundly grounded in the Court's obligation to select counsel who will best represent the interests of the class." City of Providence v. AbbVie Inc., 20-cv-5538, 2020 WL 6049139, at *6-7 (S.D.N.Y. Oct. 13, 2020).

II.     Appointment of an Executive Committee

Several movants herein – the Stewart Movants, the Mays Group, and Scott+Scott – advocate for the appointment of an executive committee to support interim lead counsel. Executive Committees "are most commonly needed when group members' interests and positions are sufficiently dissimilar to justify giving them representation in decision making." Manual, § 10.221. Under such circumstances, "[t]he court or lead counsel may task committees with preparing briefs or conducting portions of the discovery program if one lawyer cannot do so adequately." Id. However, "[c]ommittees of counsel can sometimes lead to substantially increased costs, and they should try to avoid unnecessary duplication of efforts and control fees and expenses." Id.; see also Duke Guidelines at 33 (noting that a court should consider establishing an executive committee "if the litigation involves numerous complex issues, if there is a substantial amount of work to be done, or if the plaintiffs have different interests that require separate representation").

7

At this stage of the litigation, this Court finds that appointing an executive committee is neither necessary nor beneficial to the interests of the class in this case. The Stewart Movants, the Mays Group and Scott+Scott have not demonstrated that the interests of the class diverge or are dissimilar. The consolidated action is comprised of lawsuits with substantively identical common law and state consumer law claims for unjust enrichment and deceptive advertising. Although the factual circumstances of this consolidated action involve a high profile investigation into the baby food industry dealing with four types of Heavy Metals, the legal theories and claims "are not so complex as to warrant a multi-firm counsel structure." Haynie v. Cornell Univ., 3:20-CV-467, 2020 WL 6043947, at *3 (N.D.N.Y. Oct. 13, 2010). In addition, this Court has already held that the Consolidated Action shall consist solely of all consumer protection claims against Defendant and that any personal injury and product liability claims for non-economic damages asserted against Defendant shall not be incorporated in the instant action. (DE [47].)

The Stewart Movants, the Mays Group and Scott+Scott have also failed to demonstrate that the interests of efficiency and judicial economy are best served by appointing an executive committee. The Mays Group states that their proposed executive committee has been structured so that "each attorney serving the Committee will focus their efforts on one or more of the following areas: (i) law and motion briefing[;] (ii) class certification; (iii) defendants and third party discovery; (iv) plaintiff discovery; and ([v]) expert discovery." (DE [66-1] at 12.) Although counsel contends that this structure "will eliminate duplication of effort," counsel does not demonstrate how an interim class counsel without such a committee would be incapable of conducting these tasks. The movants have not cited to any caselaw from this District or other circuits in which the court has granted a request to appoint an executive committee in a case

8

involving the amount of parties and nature of claims similar to those in the instant action. Nor has the Court's independent research produced any.

      Moreover, parties cannot establish an executive committee for the sake of enhancing the adequacy of their representation of a class under the Rule 23(g)(1)(A) factors. The Stewart Movants, the Mays Group, and Scott+Scott each incorporate all counsel members in their respective proposed executive committees to demonstrate that they possess the requisite amount of resources to support this litigation under Rule 23(g)(1)(A)(iv). The Stewart Movants state that "proposed Interim Co-Lead Class Counsel and Executive Committee have substantial resources that they committed and will continue to commit to representing the Class." (DE [59-1] at 25.) The Mays Group states that it "can, as needed, draw upon the skills and talents of experienced attorneys and staff members located across the country, from San Diego to Pennsylvania to Washington, D.C. and New York" since "all have committed the resources required to ensure the effective and efficient representation of the Class members." (DE [66-1] at 28.) Similarly, Scott+Scott asserts that "combined Scott+Scott, SGT, and Faruqi have more than 100 attorneys that specialize in class action litigation and have advanced millions of dollars on behalf of the classes they have represented. Each firm is prepared to advance similar substantial sums in the prosecution of this case." (DE [67-1] at 13.) While the amount of resources counsel is willing to commit to representing the class is a factor the Court considers, Rule 23(g)(1)(A)(iv) "seems to refer to the resources that counsel has that it will commit to the case, and not to resources that it can gather by teaming with others." In re Byostolic Antitrust Litig., 20-cv-8756, 2020 WL 6700830, at *1 (S.D.N.Y. Nov. 1, 2020). Although the creation of an executive committee may expand the resource base of a group of firms, this does not justify the necessity to implement one. See In re SSA Bonds Antitrust Litig., 16 Civ. 3711, 2016 WL 7439365, at *3 (S.D.N.Y.

9

Dec. 22, 2016) (rejecting the request to appoint an executive committee since "those supporting the establishment of a committee seem to do so solely out of a desire to assist lead counsel with resources").

Taking into consideration that committees can lead to substantially increased costs and the duplication of work, the Court finds that appointing only a single lead counsel will be "sufficient to address the various complexities that arise, while keeping unnecessary costs to a minimum." In re Crude Oil Commodity Futures Litig., No. 11 Civ. 3600, 2012 WL 569195, at *2 (S.D.N.Y. Feb. 14, 2012). Thus, the Court excludes from consideration counsel for the Stewart Movants, the Mays Group, and Scott+Scott in the application of factors enumerated in Rule 23(g)(1)(A) to determine interim lead counsel for the class since all such movants seek to be considered in conjunction with the appointment of an executive committee.[1]

III. Wolf Haldenstein's Request to be Appointed Interim Lead Counsel

Wolf Haldenstein, on behalf of Plaintiffs Sally Bredberg and Rebecca Bromberg (the "Bredberg Plaintiffs"), moves herein to be appointed as interim lead counsel on behalf of only those purchasers of Defendant's product, Earth's Best Rice Cereal. Counsel asserts that such placement within the consolidated action is warranted because Defendant may raise "separate claims and defenses . . . as well as different discovery requests and class certification requirements" concerning inorganic arsenic in rice cereal since it is "the only issue in the consolidated action that is specifically regulated by the FDA. " (DE [65] at 3.) In addition, Wolf

---

[1] The Court's determination on this issue should not detract from the abilities or qualifications of the proposed executive committee attorneys. Rather, the Court simply does not "believe it is appropriate to establish a formal and potentially inflexible leadership structure without good cause." In re 5-Hour Energy Mktg. & Sales Practices Litig. Bruce Pettway v. Innovation Ventures, LLC, No. MDL 13-2438, 2013 WL 12134144, at *3 (C.D. Cal. Nov. 8, 2013). Plaintiffs should bring this matter back to the Court's attention at a later time if they find it necessary to establish a more extensive leadership structure as this case progresses.

Haldenstein asserts that unlike the other movants' Complaints, the Bredberg Plaintiffs "focus specifically on the issue of why inorganic arsenic levels in particular are actionable and how those levels violate FDA regulations and thus state consumer protection law." (Id.)

The Court's primary goal in determining the appropriate leadership structure for class counsel is "to ensure that the litigation will be managed efficiently and effectively without jeopardizing fairness to the parties." Manual for Complex Litig. § 10.224, 25 (2004). Although the Earth's Best Rice Cereal product may be the only product of Defendant that is regulated by the FDA, the appointment of Wolf Haldenstein as interim lead counsel exclusively concentrated on this product would not comport with the Court's objective to ensure efficiency in the representation of the class. Wolf Haldenstein has not specified how the inclusion of the Earth's Best Rice Cereal product would require a distinct procedure for discovery and class certification, especially considering that the claims of the class all center on Defendant. The claims in the Bredberg action and the consolidated instant action both derive from state consumer laws for deceptive acts and practices. Moreover, the consolidated action already incorporates Defendant's Organic Rice Cereal products. The appointment of an interim class counsel overseeing all claims in the consolidated action would better serve the interests of the class at large since such appointment would avoid the potential for duplication of resources and effort. Thus, Wolf Haldenstein's request to be appointed as the designated class counsel for purchasers of the Earth's Best Rice Cereal product is denied.

IV.     Application of the Rule 23(g)(1)(A) Factors to Each of the Movants

As set forth above, the factors the Court considers are: (1) the work performed by counsel in identifying or investigating potential claims; (2) counsel's experience handling class actions and other complex litigation; (3) counsel's knowledge of the applicable law; and (4) counsel's

11

resources. See In re HSBC Bank, 2013 WL 3816597, at *10. As outlined in their motions, all of the movants have completed various tasks to advance the interests and litigation strategies of the class, such as conducting investigations into the claims of this action, which includes researching the legal and factual claims, reviewing the analysis of laboratory testing of the food products at issue, analyzing the Subcommittee Report, and consulting and interviewing various experts, former employees of Defendant, and consumers of the products at issue. The Court, however, assesses each firm equally under this factor since the instant action arose after the House Subcommittee issued its report on the presence of Heavy Metals and other toxins in baby food products produced by Defendant. While certain movants have expended additional resources in an effort to develop Plaintiffs' claims, the claims asserted in the consolidated action derive from the Congressional Report and internal testing conducted by Defendant, which the House Subcommittee subpoenaed. See In re Baby Food Mktg., Sales Practices and Prods. Liab. Litig., MDL No. 2997, 2021 WL 2369296, at *2 (J.P.M.L. June 7, 2021) (noting that "the actions were prompted by a common Congressional investigation, [and] that investigation relied primarily on internal testing conducted by defendants and subpoenaed by the House Committee"). Since none of the Plaintiffs filed a claim prior to the Congressional Report, this Court places little weight on the sequence of filings in this action. The Court also places equal weight on the tasks completed by the firms to identify and investigate the claims.

      The Court is satisfied that each of the movants seeking appointment as interim lead counsel possesses the necessary experience handling class actions, complex litigation, and the types of claims alleged in this action. Likewise, the Court finds that the movants all possess the requisite knowledge of consumer class actions to serve effectively as interim lead counsel. As outlined in their motions, each movant has demonstrated varying levels of success and leadership

roles in consumer protection class actions. However, the Court finds that greater weight should be given to those movants with experience litigating matters concerning food labeling and deceptive advertising. The Court also places greater weight on the movants that have experience litigating against the particular defendant herein in separate actions.

Lastly, with respect to the resources that the movants will likely commit to representing the Plaintiffs, the Court finds that each movant can adequately serve as interim class counsel. The movants have assured the Court that they are able to devote the necessary resources to this action by establishing litigation funds and are comprised of a sufficient number of attorneys, staff members, and offices. The Court places equal weight on its assessment of the resources the movants may expend to represent the class.

With respect to the additional factors the Court may consider, including whether the movants are sufficiently diverse to reflect the composition of the class, see In re J.P. Morgan Chase, 242 F.R.D. at 277, the Court is persuaded that the movants each consist of a diverse group of attorneys and are committed to the promotion of diversity through leadership positions in various minority lawyer associations and outreach efforts.

V.     Appointment of Interim Class Counsel

"Where there are multiple lead counsel applicants, and each are 'adequate' as evaluated under the criteria enumerated in Rule 23(g)(1)(A), 'the court must appoint the applicant best able to represent the interests of the class.'" Deangelis v. Corzine, 286 F.R.D. 220, 223 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 23(g)(2)). Having considered the nine movants' respective applications, supporting briefs, and exhibits, as well as the Rule 23(g) factors, this Court selects Labaton Sucharow as interim class counsel for the instant action.

All movants demonstrate impressive records of experience and success in prosecuting class claims, including serving in leadership positions in consumer class actions. The Court, however, must consider both the credentials and structure of counsel when determining the appointment of interim class counsel. As previously noted, there is one defendant in this action and Plaintiffs do not assert any particularly novel or dissimilar claims. Thus, the appointment of a single lead counsel is most appropriate, which "best serves the interests of judicial economy while protecting the interests of the putative class." Haynie, 2020 WL 6043947 at *3; see also Youngblood v. Family Dollar Stores, Inc., No. 09 Civ. 3176, 2011 WL 4597555, at *6 (S.D.N.Y. Oct. 4, 2011) (holding that the appointment of one lead counsel was sufficient to represent the class at issue); Duke Guidelines at 30 (stating that "sometimes a fairly simple structure, consisting of a lead counsel and a liaison counsel, is all that is required. Consumer . . . class actions in which the plaintiffs generally assert the same or similar claims often fall into this category"). Labaton proposes a simple structure of two attorneys without a liaison counsel or an executive committee to represent the class. This structure will facilitate efficient and effective representation given counsel's experience and success litigating similar consumer class actions.

Labaton also possesses the requisite knowledge and experience of consumer class actions to represent Plaintiffs. While other movants have similar accomplishments litigating class matters like this case, Labaton has successfully served in a number of pertinent class actions, including an action against a product manufacturer alleging misleading and deceptive advertising, and has served as lead counsel in a securities action against Defendant herein. See Fishbein v. All Market Inc. d/b/a/ Vita Coco, No. 11-CV-05580 (S.D.N.Y. Aug. 22, 2012); In re The Hain Celetial Group Inc. Securities Litig., 2:16-cv-04581, 2020 WL 1676762 (E.D.N.Y.

Apr. 6, 2020). Thus, the Court finds that Labaton is best able to represent the interests of the class and hereby appoints Labaton Sucharow as Interim Lead Counsel in this action.

## CONCLUSION

For the foregoing reasons, Labaton Sucharow's motion to be appointed interim class counsel is granted and the motions by the Stewart Movants, WPS Slate, the Albano Movants, Kohn Swift, the CLLB Team, Wolf Haldenstein, the Mays Group, and Scott+Scott for such appointment are denied.

**SO ORDERED.**

Dated: Central Islip, New York
December 28, 2021

                                                /s/ Anne Y. Shields
                                                Anne Y. Shields
                                                United States Magistrate Judge