# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE HAIN CELESTIAL HEAVY METALS BABY FOOD LITIGATION, | CONSOLIDATED AMENDED CLASS ACTION COMPLAINT<br><br>Case No.: 2:21-cv-0678-JS-AYS<br><br>**JURY TRIAL DEMANDED** |

## CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Plaintiffs Asyia Andrews, Lisa Gans, Shahalis Wilson, Myjorie Philippe, Zeynep Senturk Mannix, Monica Hazelwood, Carolyn Leary, Bethany Nickerson, Lizette Romero Ortiz, Elena Thormahlen, Amanda Roman, Cassie Caldwell, Simone Craig, Cassie Isza, Helen Howard, Jade Huguenot, Stephanie Weimer, Jessie McNaughton, and Tanya Motsay on behalf of themselves and all others similarly situated, by and through their undersigned attorneys, bring this Consolidated Amended Class Action Complaint against Defendant Hain Celestial, Inc. ("Defendant" or "Hain"), for its negligent, reckless, and/or intentional practice of failing to fully disclose the presence of lead, arsenic, cadmium, mercury, perchlorate, and/or other undesirable toxins or contaminants (collectively "Toxic Heavy Metals and/or other toxins") in its baby food.[1] Defendant's baby food is sold throughout the United States and does not conform to its packaging.

Plaintiffs seek both injunctive and monetary relief on behalf of the proposed Nationwide Class, or in the alternative, Classes (as defined herein), including requiring full disclosure of all

---

[1] Plaintiffs have provided sufficient notice to Defendant of the claims herein.

such substances in its packaging, mandatory testing protocols, and restoring monies to the members of the proposed Classes. Plaintiffs allege the following based upon personal knowledge, as well as investigation by their counsel as to themselves, and as to all other matters, upon information and belief. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      As a manufacturer of baby food products, Hain Celestial, Inc. ("Hain") is directly responsible to the health and safety of infants and children – a task of the utmost importance. Any products manufactured for ingestion by infants and children, one of society's most vulnerable groups, must have honest and forthcoming labeling regarding its contents. Despite this, Defendant abandoned its responsibility to keep infants and children safe by knowingly manufacturing and selling baby food products containing dangerous amounts of Toxic Heavy Metals and/or other toxins. Hain repeatedly fails to conduct adequate testing of the levels of Toxic Heavy Metals and/or other toxins in its products. As a result, Hain's Earth's Best Baby Food products contain unreasonably high levels of Toxic Heavy Metals and/or other toxins which are sold and fed to infants nationally.

2.      In fact, the levels of Toxic Heavy Metals and/or other toxins in Defendant's ingredients far exceed the levels accepted as safe for ingestion in other food products and in drinking water.

3.      Plaintiffs trusted Hain when it constantly and consistently assured consumers that its baby food is healthy, nutritious, and free from harmful toxins, contaminants, and chemicals. Hain, in fact, calls its products "Earth's Best." Most importantly, reasonable parents, like Plaintiffs, believed Hain would never sell products that contained unsafe levels of Toxic Heavy Metals and/or

2

other toxins known to pose significant dangers to children with potentially life-altering consequences.

4.     Defendant's marketing materials and packaging state that its Baby Foods[2] are USDA Organic, Non-GMO, free of Preservatives, free of GMOs, free of pesticides or herbicides, Nurturing Baby the Purest Way, and made with superior ingredients.

5.     Hain charges a premium price for these alleged benefits. All the while, Defendant induces reasonable consumers to believe in the quality and safety of its products for consumption by infants and children. Nowhere on the packaging or advertisements does Defendant disclose that its Baby Foods include Toxic Heavy Metals and/or other toxins. Based on the packaging and advertisements, no reasonable consumer would expect or understand that the Baby Foods contain Toxic Heavy Metals and/or other toxins or that the Baby Foods might contain Toxic Heavy Metals and/or other toxins in dangerous amounts. Further, reasonable consumers would also not expect that Defendant does not conduct adequate testing of its Baby Foods for Toxic Heavy Metals and/or other toxins in dangerous amounts.

6.     Industry insiders, such as baby food manufacturers and ingredient suppliers, were aware of reports of Toxic Heavy Metals and/or other toxins in Hain's Earth's Best Baby Food products for several years.

7.     Instead of taking steps to remove the Toxic Heavy Metals and/or other toxins from its products, Hain established unacceptable internal specifications by capping allowable amounts of some Toxic Heavy Metals and/or other toxins in each ingredient, which are well-above Food and Drug Administration ("FDA") standards for other substances, such as drinking water and rice. Specifically, Hain's specifications do not require testing for inorganic arsenic, mercury, or

_____

[2] "Baby Foods" collectively refers to the Earth's Best products listed on **Exhibit A**. Plaintiffs reserve their rights to modify this list after opportunity for discovery.

perchlorate, three toxins known to be present in Hain products. The internal specifications that were set for other Toxic Heavy Metals and/or other toxins are too high and deviate from any legal or scientific reasoning.

8.     Not only does Hain rely on unsafe internal specifications, Hain **_exceeded and ignored its own internal specifications_**. When Defendant exceeded its own specifications, it deceptively manipulated its testing results, and the related calculations, to create a false reality – that the Baby Foods were safe. Hain continued to rely on its flawed internal specifications and deceptive records in order to justify the statements on its label, including "Organic," "All Natural," and "Earth's Best."

9.     Hain concealed these specifications by creating the specifications behind closed doors without reliable science, regulatory guidance, or even public comment. Even now, the public, unaware of these internal specifications, cannot adequately assess the safety of these specifications.

10.     Worse, Hain only tests raw materials. Hain does not test any of its finished products. As set forth below, there is a remarkable difference between levels of Toxic Heavy Metals and/or other toxins in raw ingredients versus finished products. Finished products test at higher levels of Toxic Heavy Metals and/or other toxins than raw ingredients.

11.     Worse yet, upon information and belief, Hain did not test all ingredients. Hain arbitrarily chose to test only certain ingredients based on its unscientific reasoning that only certain ingredients come with an increased risk of containing Toxic Heavy Metals and/or other toxins.

12.     100% of the Hain's Earth's Best Baby Foods that were tested by the FDA contained inorganic arsenic levels that were higher in the finished baby food than the Company had

estimated based on Hain's testing of the raw ingredients. For example, arsenic was between 28% and 93% higher in the finished products.

13.     These statements are not mere allegations. In a detailed report, the Congressional Subcommittee on Economic and Consumer Policy ("Congressional Subcommittee") affirmatively found that Hain's products contain Toxic Heavy Metals and/or other toxins and that its internal specifications permit dangerously high levels.

14.     The Subcommittee further found that Defendant utilized insufficient testing procedures resulting in the sale of products containing Toxic Heavy Metals and/or other toxins multiples higher than the levels legally allowed in other products.

15.     Plaintiffs and consumers had no reason to know or expect that Hain's Earth's Best Baby Foods contained Toxic Heavy Metals and/or other toxins, that Hain's Earth's Best Baby Food products might contain Toxic Heavy Metals and/or other toxins in dangerous amounts, or that Hain did not adequately test its Earth's Best Baby Food products for the Toxic Heavy Metals and/or other toxins.

16.     Plaintiffs relied on, and were deceived by, the limited information that Hain made available about its products. As a result, infants and children ingested these toxic foods, often multiple times a day, to their detriment, as exposure to Toxic Heavy Metals and/or other toxins are dangerous at any level.

17.     Reasonable parents, like Plaintiffs, who were routinely feeding Earth's Best Baby Foods to their babies would consider the mere risk of exposure to Toxic Heavy Metals and/or other toxins or contaminants a material fact when considering whether to purchase the Baby Foods.

18.     Here, Defendant knowingly conceals from the public all material information about the presence of Toxic Heavy Metals and/or other toxins, its internal specifications, internal and

external testing results, and its products' hazards. For years, Hain has prioritized profits over people when it sacrificed and continues to sacrifice the health and safety of infants and children, just to increase corporate revenue.

19. Plaintiffs bring this proposed class action on behalf of themselves and all other members of the Class (as defined herein), who, from the applicable statute of limitations period up to and including the present, purchased for personal, family, or household use and not resale any of Defendant's toxic Baby Foods.

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 (hereinafter referred to as "CAFA") codified as 28 U.S.C. § 1332(d)(2), because the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; the number of members of the proposed Class exceeds 100; and a majority of the Plaintiffs and members of the proposed Class and Subclasses are citizens of a state different than Defendant.

21. This Court has personal jurisdiction over Defendant Hain Celestial Group, Inc. because its headquarters and principal place of business are in this District and because the advertising, labeling, packing, manufacturing, sale, and distribution of Hain Baby Foods and the misrepresentations, misleading remarks, and/or deceptive acts in connection with Hain Baby Foods, occurred, developed, or were initiated in this District.

22. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because Plaintiffs suffered injury as a result of Defendant's acts in this District, many of the acts and transactions giving rise to this action occurred in this District, and Defendant conducts substantial business in this District and is headquartered in this District. Defendant intentionally availed itself to this District's laws and markets of this district, and Defendant is subject to personal jurisdiction in this District.

## THE PARTIES

23.     Plaintiff Lizette Romero Ortiz ("Plaintiff Ortiz") was at all times relevant hereto, a resident of California when she purchased the Baby Foods for her children. She generally purchased the Baby Foods for her children from Mother's Market & Kitchen and Stater Bros. Market, including Whole Grain Organic Oatmeal Cereal, First Carrots Organic Baby Food, Sweet Potatoes Organic Baby Food, Winter Squash Organic Baby Food, Apples Organic Baby Food, and First Pears Organic Baby Food. Plaintiff Ortiz made these purchases from May 2016 until December 2016 and again from July 2017 to December 2017 when her children no longer ate the Baby Foods. Plaintiff Ortiz believed she was feeding her children healthy, nutritious baby food.

24.     Plaintiff Lisa Gans ("Plaintiff Gans") was at all times relevant hereto, a resident of the District of Columbia when she purchased the Baby Foods for her child. She generally purchased the Baby Foods for her child from Amazon, including Earth's Best Organic Stage 2 Banana, Raspberry, and Brown Rice Pouches. Plaintiff Gans made these purchases from May 2016 until September 2016. Plaintiff Gans believed she was feeding her child healthy, nutritious baby food.

25.     Plaintiff Zeynep Senturk Mannix ("Plaintiff Mannix") was at all times relevant hereto a resident of Washington D.C. when she purchased the Baby Foods for her child. She purchased the Baby Foods for her child from Whole Foods, including Whole Grain Organic Oatmeal Cereal. Plaintiff Mannix generally purchased these foods from approximately March 2020 until November 2020, when her child no longer ate the Baby Foods. Plaintiff Mannix believed she was feeding her child healthy, nutritious baby food.

26.     Plaintiff Jade Huguenot ("Plaintiff Huguenot") is, and at all times relevant hereto has been, a resident of Idaho. She generally purchased the Baby Foods for her child from Target and Safeway, including: Sesame Street Organic Peanut Butter Baked Corn Puffs, Sesame Street

Organic Fruit Yogurt Smoothie - Apple Blueberry, Winter Squash Organic Baby Food, and First Peas Organic Baby Food. Plaintiff Huguenot made these purchases prior to February 2021 until approximately March 2022 when she learned about the presence of Toxic Heavy Metals and/or other toxins in the Baby Foods. Plaintiff Huguenot believed she was feeding her child healthy, nutritious baby food.

27. Plaintiff Cassie Isza ("Plaintiff Isza") is, and at all times relevant hereto has been, a resident of Indiana. She generally purchased the Baby Foods for her child from Meijer, including Whole Grain Organic Oatmeal Cereal, Organic Rice Cereal, Whole Grain Organic Multi-Grain Cereal, and Sesame Street Organic Fruit Yogurt Smoothie - Apple Blueberry. Plaintiff Isza made these purchases prior to and until approximately August 2020 when she learned about the presence of Toxic Heavy Metals and/or other toxins in the Baby Foods. Plaintiff Isza believed she was feeding her child healthy, nutritious baby food.

28. Plaintiff Shahalis Wilson ("Plaintiff Wilson") is, and at all times relevant hereto has been, a resident of Kentucky. She generally purchased the Baby Foods for her children from Krogers and Walmart, including Whole Grain Organic Oatmeal Cereal, Organic Rice Cereal, and Organic Sweet Potato Cinnamon Flax & Oat – Wholesome Breakfast Puree. Plaintiff Wilson made these purchases in 2011, between 2017 and 2019, and between 2021 and 2022. She stopped making these purchases when she learned about the presence of Toxic Heavy Metals and/or other toxins in the Baby Foods. Plaintiff Wilson believed she was feeding her children healthy, nutritious baby food.

29. Plaintiff Bethany Nickerson ("Plaintiff Nickerson") is, and at all times relevant hereto has been, a resident of Maine. She generally purchased the Baby Foods for her children from Walmart, including Whole Grain Organic Oatmeal Cereal, Organic Rice Cereal, Whole Grain

Organic Multi-Grain Cereal, Organic Sensitivity – DHR/ARA Infant Formula with Iron Organic Milk-Based Powder, Sesame Street Organic Peanut Butter Baked Corn Puffs, First Carrots Organic Baby Food, Sweet Potatoes Organic Baby Food, Winter Squash Organic Baby Food, and Chicken and Brown Rice Organic Baby Food. Plaintiff Nickerson made these purchases between August 2017 and December 2021. She stopped making these purchases when she learned about the presence of Toxic Heavy Metals and/or other toxins in the Baby Foods. Plaintiff Nickerson believed she was feeding her children healthy, nutritious baby food.

30.     Plaintiff Myjorie Philippe ("Plaintiff Philippe") is, and at all times relevant hereto has been, a resident of Massachusetts.  She generally purchased the Baby Foods for her children from Target, Wegmans, Babies R Us, and Whole Foods, including Whole Grain Organic Oatmeal Cereal, Organic Rice Cereal, Organic Sensitivity – DHR/ARA Infant Formula with Iron Organic Milk-Based Powder, Sweet Potatoes Organic Baby Food. Plaintiff Philippe made these purchases from 2017 until approximately February 2021 when she learned about the presence of Heavy Metals in the Toxic Baby Foods. Plaintiff Philippe believed she was feeding her children healthy, nutritious baby food.

31.     Plaintiff Cassie Caldwell ("Plaintiff Caldwell") is, and at all relevant times hereto has been, a resident of Missouri. She generally purchased the Baby Foods for her child from Walmart including Sesame Street Organic Peanut Butter Baked Corn Puffs and Sesame Street Organic Fruit Yogurt Smoothies. Plaintiff Caldwell made these purchases between September 2019 and August 2021 when she learned about the presence of Heavy Metals in the Toxic Baby Foods. Plaintiff Caldwell believed she was feeding her child healthy, nutritious baby food.

32.     Plaintiff Elena Thormahlen ("Plaintiff Thormahlen") is, and at all times relevant hereto has been, a resident of Nevada. She generally purchased the Baby Foods for her children

from Amazon and Publix including Whole Grain Organic Oatmeal Cereal and Organic Sweet Potato Cinnamon Flax & Oat – Wholesome Breakfast Puree. Plaintiff Thormahlen made these purchases between September 2017 and September 2020 when her children no longer ate the Baby Foods. Plaintiff Thormahlen believed she was feeding her children healthy, nutritious baby food.

33.     Plaintiff Carolyn Leary ("Plaintiff Leary") is, and at all times relevant hereto has been, a resident of New Hampshire. She generally purchased the Baby Foods for her children from Target and Whole Foods including Sesame Street Organic Peanut Butter Baked Corn Puffs, Sunny Days Snack Bars – Sweet Potato Carrot, Sweet Potatoes Organic Baby Food, First Pears Organic Baby, Sesame Street Organic Fruit Yogurt Smoothie, and Sesame Street Alphabet Cookies. Plaintiff Leary made these purchases between 2019 and 2022. She made less of these purchases when she learned about the presence of Toxic Heavy Metals and/or other toxins in the Baby Foods. Plaintiff Leary believed she was feeding her children healthy, nutritious baby food.

34.     Plaintiff Asyia Andrews ("Plaintiff Andrews") is, and at all times relevant hereto, has been a resident of the state of New Jersey.  She purchased the Baby Foods for her child, including Whole Grain Organic Oatmeal Cereal, Sunny Days Snack Bars, Carrots Organic Baby Foods, Sweet Potato Organic Baby Foods, Chicken & Brown Rice Organic Baby Food, Organic Turkey Quinoa Apple Sweet Potato, Homestyle Meal Puree, Organic Sweet Potato Cinnamon Flax & Oat – Wholesome Breakfast. Plaintiff Andrews generally purchased these foods from Target, Shoprite, and Amazon Fresh in various locations around her home in Union County, New Jersey from approximately April 2020 until December 2020, when her child no longer ate the Baby Foods. Plaintiff Andrews believed she was feeding her child healthy, nutritious baby food.

35.     Plaintiff Jessie McNaughton ("Plaintiff McNaughton") is, and at all times relevant hereto has been, a resident of New York. She generally purchased the Baby Foods for her children

from Wegmans, including Whole Grain Organic Oatmeal Cereal, Organic Rice Cereal, Whole Grain Organic Multi-Grain Cereal, Sesame Street Organic Peanut Butter Baked Corn Puffs, Sunny Days Snack Bars – Sweet Potato Carrot, Carrots Organic Baby Food, First Carrots Organic Baby Food, Sweet Potatoes Organic Baby Food, First Peas Organic Baby Food, Apples Organic Baby Food, First Pears Organic Baby, Spinach and Potato Organic Baby Food, Chicken and Brown Rice Organic Baby Food, Organic Turkey Quinoa Apple Sweet Potato Homestyle Meal Puree, and Organic Chicken Pot Pie Homestyle Meal Puree. Plaintiff McNaughton made these purchases prior to and until approximately November 2020 when her children no longer ate the Baby Foods. Plaintiff McNaughton believed she was feeding her children healthy, nutritious baby food.

36.    Plaintiff Helen Howard ("Plaintiff Howard") is, and at all times relevant hereto has been, a resident of North Carolina. She generally purchased the Baby Foods for her children from Harris Teeter, including Whole Grain Organic Oatmeal Cereal, Sweet Potatoes Organic Baby Food, Apples Organic Baby Food, First Pears Organic Baby Food, and Organic Sweet Potato Cinnamon Flax & Oat – Wholesome Breakfast Puree. Plaintiff Howard made these purchases prior to and until approximately February 2021 when she learned about the presence of Toxic Heavy Metals and/or other toxins in the Baby Foods. Plaintiff Howard believed she was feeding her children healthy, nutritious baby food.

37.    Plaintiff Tanya Motsay ("Plaintiff Motsay") is, and at all times relevant hereto has been, a resident of Pennsylvania. She generally purchased the Baby Foods for her children from Amazon, including Sesame Street Organic Fruit Yogurt Smoothie – Apple Blueberry, Chicken and Brown Rice Organic Baby Food, and Earth's Best Variety Packs. Plaintiff Motsay made these purchases from 2016 until approximately January 2022 when she learned about the presence of

Toxic Heavy Metals and/or other toxins in the Baby Foods. Plaintiff Motsay believed she was feeding her children healthy, nutritious baby food.

38.     Plaintiff Amanda Roman ("Plaintiff Roman") is, and at all times relevant hereto has been, a resident of Rhode Island. She generally purchased the Baby Foods for her child from Amazon, Target, and CVS Pharmacy, including Earth's Best Organic Sensitivity—DHR/ARA Infant Formula with Iron Milk-Based Powder. Plaintiff Roman made these purchases from January 2020 until approximately February 2021 when she learned about the presence of Toxic Heavy Metals and/or other toxins in the Baby Foods. Plaintiff Roman believed she was feeding her child healthy, nutritious baby food.

39.     Plaintiff Stephanie Weimer ("Plaintiff Weimer") is, and at all times relevant hereto has been, a resident of Virginia. She generally purchased the Baby Foods for her children from Target, Krogers, and Amazon, including Earth's Best Organic Toddler Milk Drink Powder, Earth's Best Organic Sensitivity—DHR/ARA Infant Formula with Iron Milk-Based Powder, Whole Grain Organic Oatmeal Cereal, Organic Rice Cereal, Organic Turkey Quinoa Apple Sweet Potato Homestyle Meal Puree, Sweet Potatoes Organic Baby Food, First Pears Organic Baby Food, and Apples Organic Baby Food. Plaintiff Weimer made these purchases from April 2018 until approximately June 2021 when she learned about the presence of Toxic Heavy Metals and/or other toxins in the Baby Foods. Plaintiff Weimer believed she was feeding her children healthy, nutritious baby food.

40.     Plaintiff Simone Craig ("Plaintiff Craig") is, and at all times relevant hereto has been, a resident of Virginia. She generally purchased the Baby foods for her children from Target, Walmart, Wegmans, and Food Lion, including, Sweet Potatoes Organic Baby Food, Organic Turkey Quinoa Apple Sweet Potato Homestyle Meal Puree, and Organic Sweet Potato Cinnamon

Flax & Oat – Wholesome Breakfast Puree. Plaintiff Craig made these purchases prior to February 2021 until approximately April 2021 when she learned about the presence of Toxic Heavy Metals and/or other toxins in the Baby Foods. Plaintiff Craig believed she was feeding her children healthy, nutritious baby food.

41.     Plaintiff Monica Hazelwood ("Plaintiff Hazelwood") is, and at all times relevant hereto has been, a resident of Washington.  She generally purchased the Baby Foods for her children from Albertson's, Krogers, and Walmart, including Organic Sensitivity – DHR/ARA Infant Formula with Iron Organic Milk-Based Powder, Carrots Organic Baby Food, First Carrots Organic Baby Food, Sweet Potatoes Organic Baby Food, Winter Squash Organic Baby Food, First Peas Organic Baby Food, Apples Organic Baby Food, First Pears Organic Baby Food, Organic Dairy Infant Formula with Iron, Organic Corn and Butternut Squash. Plaintiff Hazelwood made these purchases from September 2018 until approximately January 2022 when she learned about the presence of Toxic Heavy Metals and/or other toxins in the Baby Foods. Plaintiff Hazelwood believed she was feeding her children healthy, nutritious baby food.

42.     Prior to purchasing the Baby Foods, Plaintiffs saw and relied upon the packaging of the Baby Foods. During the time they purchased and fed their children the Baby Foods, and due to the Omissions by Defendant, they were unaware Hain's Baby Foods contained (or had a material risk of containing) any level of Toxic Heavy Metals and/or other toxins or contaminants, and would not have purchased the products, would have bought less of the products, or would have paid less for the products.

43.     the Baby Foods if that information had been fully disclosed. Plaintiffs would be willing to purchase Hain's Baby Food products in the future if she could be certain that they do not contain (or have a material risk of containing) Toxic Heavy Metals and/or other toxins.

44.     Defendant Hain is a Delaware corporation with its headquarters and principal place of business at 111 Marcus Avenue, Lake Success, New York. Defendant does business throughout the United States.

## FACTUAL ALLEGATIONS

### I.     THERE IS NO SAFE LEVEL FOR CONSUMPTION OF TOXIC HEAVY METALS AND/OR OTHER TOXINS

#### A.     There Is No Safe Level of Lead Consumption for Babies

45.     The Environmental Protection Agency ("EPA"), World Health Organization ("WHO"), the Centers for Disease Control and Prevention ("CDC"), The European Union ("EU"), and the American Academy of Pediatrics ("AAP") unanimously agree that there is no established "safe level of lead (Pb) in a child's blood." [3]

46.     Lead ingestion by humans has long been subject to regulatory scrutiny. Indeed, the FDA has set a 5 ppb lead standard for bottled water, the WHO has set 10 ppb lead as a provisional guideline for drinking water, and the EPA has set an action level of 15 ppb for lead in drinking water. FDA has also issued guidance for lead in certain juices (50 ppb) and candy (100 ppb). [4] The EU has set the maximum lead level in infant formula to 20 ppb. [5]

47.     These repeated calls for lower levels are based upon uncontroverted public knowledge of the dangers of lead exposure and potentially fatal lead ingestion. In fact, some

---

[3] Congressional Subcommittee on Economic and Consumer Policy Report (*hereinafter* "**Exhibit B**") at p. 10; *see also*, Valerie Zartarian, et al., *Children's Lead Exposure: A Multimedia Modeling Analysis to Guide Public Health Decision-Making* (Sept. 12, 2017) (https://ehp.niehs.nih.gov/doi/10.1289/ehp1605) (last visited Mar. 5, 2021); https://www.epa.gov/lead/learn-about-lead; *see also*, Philippe Grandjean, *Even Low-Dose Lead Exposure Is Hazardous* (Sept. 11, 2010) (https://pubmed.ncbi.nlm.nih.gov/20833288/).

[4] **Exhibit B** at p. 21.

[5] *Id.* at p. 22.

studies list lead as the second most harmful substance that poses a significant threat to human health.[6] Lead is also recognized by the WHO as a major public health concern.[7]

48.     Numerous governmental agencies, including the FDA, recognize the significant health effects that lead can have on children and infants. High levels of lead exposure can seriously harm children's development and health, specifically the brain and nervous system. Additionally, because lead can accumulate in the body, even low-level chronic exposure can be hazardous over time.[8]

**B.     There Is No Safe Level of Arsenic Consumption for Babies**

49.     Arsenic can be detected in two dangerous forms: organic arsenic and inorganic arsenic. Organic arsenic is found in plant and animal tissues. Inorganic arsenic is found in soil and groundwater.[9]

50.     Arsenic is recognized as one of the top ten chemicals of major public concern by the WHO.[10] The Agency for Toxic Substances and Disease Registry ("ATSDR") recognizes arsenic as the number one substance to pose the most significant threat to human health.[11]

1.     *Inorganic Arsenic*

51.     According to the FDA, children are likely to be "particularly susceptible to neurotoxic effects of inorganic arsenic."[12]

---

[6] *ATSDR's Substance Priority List* https://www.atsdr.cdc.gov/spl/index.html (last visited on Mar. 21, 2021).

[7] https://apps.who.int/iris/bitstream/handle/10665/329480/WHO-CED-PHE-EPE-19.4.3-eng.pdf?ua=1 (last visited on Mar. 21, 2021).

[8] FDA, *Lead in Food, Foodwares, and Dietary Supplements* (www.fda.gov/food/metals-and-your-food/lead-food-foodwares-and-dietary-supplements) (last visited on Mar. 19, 2021).

[9] CDC, Arsenic Factsheet (Nov. 2009), https://www.cdc.gov/biomonitoring/pdf/arsenic_factsheet.pdf (last visited Mar. 10, 2022).

[10] https://monographs.iarc.who.int/list-of-classifications (last visited on Mar. 19, 2021).

[11] *ATSDR's Substance Priority List* https://www.atsdr.cdc.gov/spl/index.html (last visited on Mar. 21, 2021).

[12] FDA, Guidance for Industry: Action Level for Inorganic Arsenic in Rice Cereals for Infants (Aug. 2020), https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-action-level-inorganic-arsenic-rice-cereals-infants  (last accessed Mar. 20, 2021).

52.     The FDA has set maximum inorganic arsenic levels at 10 ppb for bottled water. The Environmental Protection Agency (EPA) has similarly set a 10 ppb inorganic arsenic cap on drinking water, as have the European Union (EU) and the World Health Organization (WHO).[13]

53.     While there is no established safe level for inorganic arsenic consumption by babies, the FDA, EPA, WHO, and EU have all set a maximum level of inorganic arsenic at 10 ppb.[14]

54.     In 2020, the FDA issued "Guidance for Industry: Action Level for Inorganic Arsenic in Rice Cereals for Infants" stating that baby food products should not exceed inorganic arsenic levels of 100 ppb.[15] Additionally, other reputable organizations call for even lower regulatory levels for inorganic arsenic in reports concerning levels related to cancer risk. Consumer Reports advocating levels as low as 3 ppb and Healthy Babies Bright Futures ("HBBF") seeking a goal of no measurable amount of inorganic arsenic in baby food.

### 2.     Organic Arsenic

55.     The FDA requires bottled water manufacturers to monitor the levels of arsenic in both their source and their finished goods annually. "The allowable level established by FDA for arsenic in bottled water is 10 micrograms (0.010 milligrams) per liter of water."[16]

---

[13] FDA, *Draft Guidance for Industry: Inorganic Arsenic in Rice Cereals for Infants: Action Level* (Apr. 2016) (https://www.govinfo.gov/content/pkg/FR-2016-04-06/pdf/2016-07840.pdf (last visited on Mar. 21, 2021).

[14] Health experts, including the AAP and Consumer Reports, advocated for a maximum level of 1 ppb instead of 10 ppb. Consumer Reports is a nonprofit organization that advocates for consumers.

[15] FDA, Guidance for Industry: Action Level for Inorganic Arsenic in Rice Cereals for Infants (Aug. 2020), https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-action-level-inorganic-arsenic-rice-cereals-infants  (last accessed Mar. 20, 2021).

[16] FDA, Small Entity Compliance Guide: Bottled Water and Arsenic, https://www.fda.gov/regulatory-information/search-fda-guidance-documents/small-entity-compliance-guide-bottled-water-and-arsenic

56.     Scientific studies determining the long-term health effects of exposure to organic arsenic are ongoing. Currently, there are scientific studies that demonstrate potential health concerns associated with the organic arsenic found in foods.[17]

**C.     There Is No Safe Level of Cadmium Consumption for Babies**

57.     "[C]admium . . . can be toxic for everyone and pose particular risks for young children."[18]

58.     There is no federal standard for cadmium in baby food. Standards for cadmium levels in drinking water have been imposed by both the FDA and EPA. Both agencies impose a limit of 5 ppb.[19] Additionally, the WHO imposes a limit of 3 ppb.

59.     The EPA has established a limit of 5 ppb in drinking water, and the FDA has set a limit of 5 ppb in bottled water. The WHO has issued a limit of 3 ppb for cadmium in drinking water and the EU has set a limit ranging from 5–20 ppb of cadmium for infant formula.

60.     HBBF advocates for a goal of no measurable amount of cadmium in baby food and Consumer Reports has called for a limit of 1 ppb of cadmium in fruit juices. Consumer Reports recommends a limit of 1 ppb for cadmium in fruit and juices, while HBBF suggests 0 ppb.[20] Consumer Reports advocates for levels of less than 1 ppb.[21]

---

[17] FDA, Arsenic in Food and Dietary Supplements: Health Effects from Arsenic Exposure, https://www.fda.gov/food/metals-and-your-food/arsenic-food-and-dietary-supplements.

[18] Jesse Hirsch, *Heavy Metals in Baby Food: What You Need to Know*, Consumer Reports (Aug. 16, 2018), https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food-a6772370847/; *see also* David C. Bellinger, *A Strategy for Comparing the Contributions of Environmental Chemicals and Other Risk Factors to Neurodevelopment of Children*, Environ. Health Perspect. (Apr. 2012), https://doi.org/10.1289/ehp.1104170; Miguel Rodriguez-Barranco, *et al. Association of Arsenic, Cadmium and Manganese Exposure with Neurodevelopment and Behavioral Disorders in Children: A Systematic Review and Met-Analysis* (June 1, 2013) (https://pubmed.ncbi.nlm.nih.gov/23570911) (last visited March 17, 2022); Min-Jing Lee, et al., *Heavy Metals' Effects on Susceptibility to Attention-Deficit/Hyperactivity Disorder: Implication of Lead, Cadmium, and Antimony* (June 10, 2018) (https://pubmed.ncbi.nlm.nih.gov/29890770/) (last visited last visited March 17, 2022).

[19] *Id*. at p. 29.

[20] *Id.*

[21] *Id.*

61. The International Agency for Research on Cancer ("IARC") classifies cadmium as a Group 1 carcinogen.[22] Additionally, the ATSDR lists cadmium as the seventh most substance to pose a significant threat to human health.[23] Further, the WHO recognizes cadmium as a major public health concern.[24]

62. Cadmium has no physiological function in the human body and is a known neurotoxin. Consumption of cadmium is associated with decrease in IQ and development of ADHD.[25]

**D.    There Is No Safe Level of Mercury Consumption for Babies**

63. "Infants, children, and pregnant women are most vulnerable to the negative health effects of mercury."[26]

64. Mercury, like inorganic arsenic, arsenic, lead, and cadmium, has long been recognized as a hazardous substance when ingested. For example, the EPA has capped mercury in drinking water at 2 ppb and nationwide, regulators have implemented advisories concerning the consumption of fish contaminated with mercury. The FDA has set a limit of 2 ppb of mercury in bottled water.

65. There is no federal standard for the level of mercury in baby food. The EPA imposes a standard requiring that levels of mercury in drinking water not exceed 2 ppb.[27]

---

[22] https://monographs.iarc.who.int/list-of-classifications (last visited on Mar. 20, 2021).

[23] *ATSDR's Substance Priority List* https://www.atsdr.cdc.gov/spl/index.html (last visited on Mar. 21, 2021).

[24] https://apps.who.int/iris/bitstream/handle/10665/329480/WHO-CED-PHE-EPE-19.4.3-eng.pdf?ua=1 (last visited on Mar. 21, 2021).

[25] *Id.* at p. 12.

[26] https://cehn.org/our-work/eco-healthy-child-care/ehcc-faqs/mercury/

[27] **Exhibit B** at p. 48.

66. The WHO warns that mercury "may have toxic effects on the nervous, digestive and immune systems, and on lungs, kidneys, skin and eyes"[28] and considers mercury "one of the top ten chemicals or groups of chemicals of major public health concern."[29] Mercury is the number three substance on the ATSDR's list of dangerous substances in the environment, potentially posing a significant threat to human health.

67. HBBF advocates for a goal of zero levels of mercury in baby food. This recommendation is based, in part, on the fact that epidemiological research shows "mercury . . . has been consistently associated with adverse subsequent neuro-development."[30]

**E.      There Is No Safe Level of Perchlorate Consumption for Babies**

68. Perchlorate is a neurotoxic chemical compound linked to critical growth and development functions in infants and young children.[31]

69. While a guideline has not explicitly been set, the dangers of perchlorate in human food are recognized by the FDA.[32] The EPA has also recognized the dangers of perchlorate in drinking water and as of July 2020, has set the maximum contaminant level goal for perchlorate in drinking water to 56 μg/L. 85 F.R. 43990.

---

[28] WHO, *Mercury and health* (https://www.who.int/news-room/fact-sheets/detail/mercury-and-health#:~:text=Health%20effects%20of%20mercury%20exposure&text=The%20inhalation%20of%20mercury%20vapour,induce%20kidney%20toxicity%20if%20ingested) (last visited on Mar. 19, 2021).

[29] WHO, *Lead Poisoning and Health* https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health (last visited on Mar. 18, 2021).

[30] Margaret R. Karagas, et al., E*vidence on the Human Health Effects of Low-Level Methylmercury Exposure* (June 1, 2012) (https://pubmed.ncbi.nlm.nih.gov/22275730/) (last visited on Mar. 18, 2021).

[31] https://www.fda.gov/food/chemicals/perchlorate-questions-and-answers (last accessed Feb. 22, 2022).

[32] FDA, Exploratory Survey Data on Perchlorate in Food 2004-2005, https://www.fda.gov/food/chemicals/exploratory-survey-data-perchlorate-food-2004-2005 (last accessed Feb. 22, 2022) ("Human exposure to sufficient doses of perchlorate can interfere with iodide uptake into the thyroid gland, disrupting its functions and potentially leading to a reduction in the production of thyroid hormones.").

70.    Perchlorate has also been "linked to IQ loss among children born to mothers with thyroid dysfunction[.]"[33]

## II.    DEFENDANT'S BABY FOOD PRODUCTS CONTAIN DANGEROUS LEVELS OF TOXIC HEAVY METALS AND/OR OTHER TOXINS.

### A.    Lead

71.    The Congressional Report determined that Defendant manufactured and sold Baby Foods with lead levels exceeding all existing standards, including those set for juice and candy, which allow a maximum measurement of 50 ppb and 100 ppb respectively.

72.    Defendant's raw material testing revealed: (a) 6 ingredients contained more than 200 ppb lead; (b) 88 ingredients contained more than 20 ppb lead; (c) 115 ingredients contained more than 15 ppb lead; and (d) 27% of ingredients contained more than 5 ppb lead.[34]

### B.    Arsenic

73.    Based on Hain's internal documents provided to the Congressional Subcommittee, Hain, indeed, routinely used ingredients with high levels of arsenic. Hain used brown rice flour that had tested at 309 ppb arsenic, a vitamin pre-mix containing 223 ppb arsenic, and raisin and wheat flour containing 200 ppb arsenic. The data provided further shows that Hain used at least 24 ingredients after testing found that they contained more than 100 ppb arsenic.[35]

74.    The Congressional Report determined Defendant manufactured and sold its Baby Foods with levels exceeding all existing standard limits, including those set for juice and candy, which allow a maximum measurement of 50 ppb and 100 ppb, respectively.[36]

---

[33] *See* Healthy Babies Bright Futures' Report: *What's in My Baby's Food?* ("HBBF Report"), available at https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf (last accessed Feb. 22, 2022).

[34] *Id.* at pp. 26-27.

[35] *Id.* at 16.

[36] *Id.* at pp. 13-21.

75.     Hain's testing differentiates between Total Arsenic and Inorganic Arsenic, with total arsenic levels exceeding 75 ppb and inorganic arsenic levels exceeding 90 ppb.

**C.     Cadmium**

76.     The Congressional Report determined Defendant manufactured and sold Baby Foods with levels exceeding all existing recommended limits.

77.     Defendant does not test its finished products and instead only tests the ingredients used.  Nevertheless, testing of Defendant's ingredients proves that the company sold products with levels of cadmium that exceed the existing standards. Specifically, the results revealed: (a) 14 ingredients contained more than 100 ppb cadmium, (b) barley flour contained 260 ppb cadmium and (c) 102 ingredients contained more than 20 ppb cadmium.[37]

**D.     Mercury**

78.     The Congressional Report found that Defendant does not test its ingredients or finished products for mercury.[38] Thus, while Hain products are suspected to contain mercury, there is no way for consumers to know at what level the dangerous toxin is present.

**E.     Perchlorate**

79.     The Congressional Report found that Defendant does not test its ingredients or finished products for perchlorate.[39]

80.     However, in 2019, HBBF tested some of Defendant's finished products and found perchlorate present.[40]

---

[37] **Exhibit B** at pp. 30-31; *see also*, Hain, *Raw Material Pre-Shipment Test Data History* (Dec. 11, 2019), attached hereto as **Exhibit C**.
[38] **Exhibit B** at p. 32.
[39] *Id*. at p. 32.
[40] HBBF Report at 34-35.

**F.      Defendant's Own Documents Reveal That Its Baby Food Products Contain Toxic Heavy Metals and/or other Toxins**

81.      Defendant disclosed documents to the Congressional Subcommittee to inform their review.[41] One of the documents disclosed was Defendant's secret 2019 PowerPoint presentation to the FDA. Included within was results from testing the FDA conducted on finished product compared to the insufficient testing Defendant conducted raw materials alone. The results are glaring. The levels of Toxic Heavy Metal Inorganic Arsenic far exceeded the level in the raw materials 100% of the time.

---

[41] The Congressional Subcommittee took the FDA, EPA, WHO, and European Union ("EU") standards, discussed above, into account when making its determinations.

| | FDA Standard for Arsenic in Drinking Water (ppb) | Hain Test Results for Arsenic in Raw Materials (ppb) | | FDA Test Results for Inorganic Arsenic in Finished Goods (ppb) | | Increase of Toxic Heavy Metal from Raw Materials to Finished Goods |
|---|---|---|---|---|---|---|
| | | Packaging Date | Avg. Result | Best By Date | Avg. Result | |
| Total Arsenic[42] | - | 9/8/17 | 56.3 | 3/2/19 | 80.3 | 43% |
| | | 9/14/17 | 57.3 | 3/8/19 | 74.0 | 29% |
| | | 9/2617 – 9/27-17 | 61.3 | 3/20/19 – 3/21/19 | 96.0 | 57% |
| | | 10/18/17 | 59.0 | 4/11/19 | 100.0 | 69% |
| | | 11/3/17 | 67.0 | 4/27/19 | 129.0 | 93% |
| | | 12/13/17 – 12/20/17 | 62.7 | 6/6/19 – 6/13/19 | 101.0 | 61% |
| Inorganic Arsenic | 10 ppb | 1/3/2018 | 64.0 | 6/27/19 | 100.0 | 56% |
| | | 1/25/2018 | 80.5 | 7/19/19 | 115.0 | 43% |
| | | 2/24/2018 | 75.7 | 8/8/19 | 97.0 | 28% |
| | | 6/1/2018 | 82.5 | 11/23/19 | 108.0 | 31% |

*This data is derived from the chart provided in Hain's Presentation to the FDA.* [43]

---

[42] The FDA provides guidance for organic arsenic and inorganic arsenic separately as stated herein.

[43] *See* **Exhibit D,** Hain Celestial PowerPoint "FDA Testing Result Investigation August 1, 2019"

**III.    DEFENDANT REPEATEDLY FAILS TO REDUCE THE TOXIC HEAVY METALS AND/OR OTHER TOXINS IN ITS PRODUCTS**

**A.    Hain Ignored Reports Highlighting the Presence of Toxic Heavy Metals and/or other toxins for the Past Ten Years**

82.    For nearly a decade, Defendant has possessed medical and scientific data linking childhood exposure from Toxic Heavy Metals and/or other toxins to long-term and irreversible health and cognitive issues.

83.    On December 6, 2017, Happy Babies Bright Futures issued a report finding rice-based infant cereals, including Defendant's cereals, contained 84% more arsenic than non-rice multigrain products ("Arsenic Report").[44] Notably, the HBBF Report found Toxic Heavy Metals and/or other toxins in the same Baby Foods at issue in this case, among others. For example, as listed below, Defendant's "Earth's Best" Whole Grain Rice Cereal contained significant levels of arsenic, lead, and cadmium.[45]

84.    Hain joined The Baby Food Council in 2019. This coalition joined major baby food manufacturers with U.S. Department of Agriculture ("USDA"), the FDA, and leading health and environmental experts in the field to increase the safety of baby food products in the U.S.[46]

85.    In part, The Baby Food Council formally focused on reducing dangerous Toxic Heavy Metals and/or other toxins in baby food products.[47]

86.    Expressing its commitment to reducing Toxic Heavy Metals and/or other toxins in its products, thereby acknowledging a problem and promising to fix the issue, Hain executive,

---

[44] Healthy Babies Bright Futures, *Arsenic in 9 Brands of Infant Cereal* (Dec. 2017) (https://www.healthybabycereals.org/sites/healthybabycereals.org/files/2017-12/HBBF_ArsenicInInfantCerealReport.pdf) (last visited on Mar. 19, 2021).

[45] HBBF Report at 19.

[46] https://www.foodsafetynews.com/2019/10/coalition-called-the-baby-food-council-says-it-will-take-on-heavy-metals/

[47] *Id.*

Raul Fajardo, Senior Vice President Technical Services, publicly stated: "Although heavy metals are naturally occurring in the environment, we are always looking to reduce their presence in food. Earth's Best is excited to partner with the members of the Baby Food Council to support this important initiative."[48]

87.     However, Hain's subsequent actions fall far short of this statement. Moreover, this statement fails to reveal the full truth of Hain's production processes. Hain is not working to reduce the dangerous levels of Toxic Heavy Metals and/or other toxins in its products. In fact, it does not even have adequate data to rely on due to its arbitrary acceptable limits and inadequate testing procedures.

**B.     Hain Routinely Fails to Test Finished Products for Toxins**

88.     Defendant's internal policies only require testing *some* raw materials and ingredients for *some* Toxic Heavy Metals and/or other toxins. Further, it does not even test its finished products.

89.     Defendant does not conduct inorganic arsenic, mercury or perchlorate testing on its ingredients or finished products. The levels of these toxins are unknown.

90.     As a result of never testing its finished products, Defendant has no record of the level of Toxic Heavy Metals and/or other toxins present in its products being sold in stores every day.

**C.     Hain Set Arbitrary and Inadequate Internal Specifications**

91.     The presence of Toxic Heavy Metals and/or other toxins, as indicated in ¶ 80, did not come as a shock to Hain. To the contrary, Defendant knew and set arbitrary internal specifications on allowable levels of Toxic Heavy Metals and/or other toxins in its products.

---

[48] *Id.*

92.     Hain's specifications are wholly unmoored from any scientific basis. Worse yet, its capricious specifications remain as is and, thus, are still unsafe, exceeding well-known FDA, EPA, WHO, and EU standards in other contexts.

93.     Not only are Defendant's internal specifications insufficient, but Defendant **fails to abide by its own inadequate internal specifications**. Ignoring its own limits, Hain sells products with concentrations above 200 ppb of arsenic, lead, or cadmium.

**D.     Hain Significantly Exceeded its Own Standards**

94.     Documents provided by Hain to the FDA in 2019 show Hain violated its own internal specifications by using ingredients containing as much as 353 ppb of lead and 309 ppb of arsenic. This testing further confirmed lead concentrations of up to 352 ppb in vitamin pre-mix. Hain also used at least six ingredients containing more than 200 ppb of lead, at least 88 ingredients containing 20 ppb of lead or more, and at least 115 ingredients containing 15 ppb of lead or more. Additionally, the testing demonstrated that at least 27% of its ingredients contained 5 ppb of lead or more. None of Defendant's test results showed an ingredient with lead concentrations at or below 1 ppb.

95.     Additionally, Hain's limited ingredient testing showed concentrations of as much as 129 ppb of inorganic arsenic. Its ingredient testing also showed that Hain routinely used ingredients with high arsenic levels, including brown rice flour containing 309 ppb of arsenic, a vitamin pre-mix containing 223 ppb of arsenic, and raisin and wheat flour containing 200 ppb of arsenic. Hain used at least 24 ingredients known to contain more than 100 ppb of arsenic, such as flours, powders, extracts, and purees of various vegetables and grains.

96.     Hain's testing further revealed that it used many ingredients with dangerous cadmium concentrations, including 14 ingredients with over 100 ppb of cadmium (and up to 260 ppb of cadmium), and at least 102 ingredients containing 20 ppb of cadmium or more.

97. According to Hain's internal raw material pre-shipment test data history, although the arsenic spec limit was 100 ppb and the lead spec limit was 100 ppb, it had a "deviation approved" for its vitamin premix after November 2019 lab results demonstrated 223 ppb arsenic and 352 ppb lead in this product.[49]

98. In fact, according to Hain's internal documents, Hain ***approved*** a "deviation" for "Org Cinnamon Powder" where the cadmium spec limit was 100 ppb. The February 2019 lab result indicated 102 ppb cadmium in this product.

99. At times, Hain also arbitrarily changed its specifications to a "calculat[ion] [of] heavy metals on consumed basis," meaning the Company tested for Toxic Heavy Metals and/or other toxins based on serving size, rather than the total for the product. For example, based on this changed specification, Hain accepted the following ingredients even though they ***exceeded*** the Company's own internal allowable caps for Toxic Heavy Metals and/or other toxins: (i) June 2018 lab results finding 102 ppb cadmium in "org[anic] oat flour" to a spec of 100 ppb cadmium; (ii) January 2018 thirteen lab results finding as much as 260 ppb cadmium and 250 ppb lead (to a spec of 100 ppb lead) in various products; and (iii) 2017 lab results finding levels of arsenic, cadmium, and lead exceeding the spec limits.

100. Internal documents show that Hain circumvents its own specifications by approving deviations or reinventing on what basis to analyze the results, often noting that instead levels were "calculated [] on consumed basis" where a particular Toxic Heavy Metal exceeded the arbitrary and unreasonably high pre-set standard.

---

[49] *See* **Exhibit C**.

## IV. DEFENDANT'S ADVERTISEMENTS FALSELY CLAIM THAT ITS BABY FOODS ARE SAFE, AND FRAUDULENTLY OMIT ALL MATERIAL INFORMATION ABOUT TOXIC HEAVY METALS AND/OR OTHER TOXINS

101.   Defendant's marketing wrongfully represents that its Baby Food products are of a particular quality, grade or standard and contain certain characteristics that the products do not actually possess.

102.   Additionally, Hain omits key information from its product labels regarding contaminants such as Toxic Heavy Metals and/or other toxins to parents' detriment. By way of example, the following label for Whole Grain Rice Cereal demonstrates one of Hain's many material omissions and misrepresentations:



103.   Defendant's label contains "Grown without Potentially Harmful Pesticides or Herbicides," "No Genetically Engineered Ingredients," "Organic," and "Pure." All of these statements build consumer trust in the safety of Hain products.

104.     Defendant also touts its production of "pure, quality products." This representation, among others, misleads consumers into believing that Hain's Baby Food products do not contain Toxic Heavy Metals and/or other toxins.

105.     Defendant further markets, advertises, represents, and warrants its products as safe and suitable for babies' consumption and in compliance with FDA guidelines.

106.     Defendant's private August 2019 presentation to the FDA reveals Hain's corporate policies to test only ingredients, not final products and admits that its testing results do not provide accurate data regarding the levels of arsenic in Defendant's Baby Foods.[50]  The Congressional Report stated in response:

> That policy ***recklessly endangers babies and children*** and ***prevents the companies from even knowing the full extent of the danger presented by their products***. As the Hain presentation lays bare, ingredient testing does not work. Hain's finished baby foods had more arsenic than their ingredients 100% of the time—28-93% more inorganic arsenic***. That means that only testing ingredients gives the false appearance of lower-than-actual toxic heavy metal levels***.[51]

107.     Despite repeated testing that confirms the presence of Toxic Heavy Metals and/or other toxins in Defendant's Baby Foods and Defendant's own admission that its products contain levels that far exceed safe levels, ***Defendant has failed to disclose any information to consumers or update its warning label***.  Instead, Defendant continues to falsely reassure its customers that its Baby Foods are safe.

108.     For example, on its website Defendant touts:

> ***Always exceeding the highest standards of safety and purity.*** Since our very first jar of organic baby food was hand crafted nearly 35 years ago, we hold strong to our commitment to keep all Earth's Best foods safe – we reject ingredients annually because they do not

---

[50] Hain, *PowerPoint Presentation to Food and Drug Administration: FDA Testing Result Investigation* (Aug. 1, 2019) (https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2.pdf), attached hereto as **Exhibit D**.
[51] **Exhibit B** at pp. 56-57.

meet our specifications. Along with our participation with the Baby Food Council*, the Hain Celestial Group is committed to the goals of continuing to work toward minimizing exposure to environmental contaminants associated with common baby food commodities.*[52]

109. Hain intended that Plaintiffs and Class Members rely on these representations when purchasing its products.

110. Because Defendant's internal records, internal testing requirements, and internal specifications were not known to the public, and further because Defendant's product labels and advertisements omitted this material information, Plaintiffs and Class Members had no reason to know of the presence of Toxic Heavy Metals and/or other toxins in the Baby Food products.

111. Based on the prior reports Hain was aware of, Defendant's internal testing protocols and internal specifications, Defendant knew or should have known of the presence of Toxic Heavy Metals and/or other toxins in its Baby Food products.

112. Yet, Defendant omitted this material information from its product labels, marketing materials, and advertisements.

113. Hain failed in its duty to ensure the truth of its product labels and advertisements.

114. Consumers reasonably rely upon Defendant's statements, representations, and advertisements regarding the safety of its products. They would have no reason to suspect the presence of Toxic Heavy Metals and/or other toxins in Defendant's Baby Foods or take necessary precautions.

115. Consumers reasonably rely upon Defendant's statements, representations, and advertisements regarding the safety of its products. Consumers have no reason to suspect the

---

[52] All You Need to Know About Earth's Best Organic® Infant Cereal Ingredients, https://www.earthsbest.com/resource/about-iron-fortified-organic-infant-cereal-ingredients/

presence of Toxic Heavy Metals and/or other toxins in Defendant's Baby Foods or take necessary precautions to protect themselves from consuming Toxic Heavy Metals and/or other toxins.

## V. BABY FOODS CAN BE MANUFACTURED WITHOUT MEASURABLE LEVELS OF TOXIC HEAVY METALS AND/OR OTHER TOXINS

### A. Other Baby Food Manufacturers Offer Safer Alternatives

116.     In contrast to Hain, other baby food manufacturers have produced products free from Toxic Heavy Metals and/or other toxins or contaminants or with levels that are not measurable.

117.     The Clean Label Project tests products for more than 400 contaminants, including heavy metals, chemicals, and plastics, and presents its Purity Award to companies with products with the lowest levels of the contaminants when compared to other products in a given category.[53]

118.     Cerebelly, manufacturer of shelf-stable pureed baby food pouches and Once Upon a Farm, a manufacturer of cold-pressed, refrigerated blends for infants and children, were both recipients of the Clean Label Project's Purity Award.[54]

119.     Nature's One is another baby food manufacturer of organic pediatric nutritional products, including infant and toddler formulas, who received the Clean Label Project's Purity Award.[55] According to independent laboratory tests, *its products regularly test at zero for harmful contaminants*.[56]

---

[53] https://cleanlabelproject.org/purity-award/ (last accessed Feb. 22, 2022);
https://cleanlabelproject.org/Once%20Upon%20A%20Farm/ (last accessed Feb. 22, 2022).
[54] https://www.foodnavigator-usa.com/Article/2021/02/08/Cerebelly-receives-The-Clean-Label-Project-Purity-Award-confirming-its-products-are-free-from-heavy-metals# (last accessed Feb. 22, 2022).
[55] https://cleanlabelproject.org/Natures-one/ (last accessed Feb. 22, 2022).
[56] Exclusive: As baby food industry is slow to reduce toxic metals, blueprint already exists | WJLA (last accessed on Feb. 22, 2022)

120.    Manufacturer, Yumi, also takes numerous proactive steps to ensure its products are safe for infants and children.[57] Yumi does not use ingredients such as rice and fruit juice, both known to contain high levels of arsenic.[58] Yumi also regularly tests both the ingredients and finished products for Toxic Heavy Metals and/or other toxins.[59]

## B.    There Are Methods to Reduce Toxic Heavy Metals and/or other toxins to Non-Worrisome Levels

121.    "[T]here are ways for [baby food] manufacturers to significantly reduce or eliminate these [heavy] metals from their products."[60] Consumer Reports identified baby food products with heavy metal levels low enough to not cause concern, as well as some products with heavy metal levels that were not measurable, and none were manufactured by Defendant.[61]

122.    In testing conducted by Consumer Reports, approximately one-third of tested products had levels of heavy metals that were below levels of concern and other products had immeasurable levels of heavy metals.[62] As stated by Dr. James E. Rogers, the Consumer Reports Director of Food Safety Research and Testing, "'Every category of food we tested was represented in that lower-risk group. That indicates that there are ways for manufacturers to significantly reduce or eliminate these [heavy] metals from their products.'"[63]

123.    In addition, as a result of public health efforts, exposure to lead has consistently and notably decreased over the past 40 years.[64] These efforts include increasing awareness of the

---

[57] https://helloyumi.com/heavy-metals/ (last accessed Feb. 22, 2022).

[58] *Id.*

[59] *Id.*

[60] *Id.*

[61] https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (last accessed Feb. 22, 2022)

[62] *Id.*

[63] *Id.*

[64] Dignam, T., Kaufmann, R. B., LeStourgeon, L., & Brown, M. J. (2019). Control of Lead Sources in the United States, 1970-2017: Public Health Progress and Current Challenges to Eliminating Lead Exposure. Journal of public health management and practice: JPHMP, 25 Suppl 1, Lead Poisoning Prevention (Suppl 1 LEAD

Footnote continued on next page

dangers of even low levels of lead exposure to young children.[65] The progress towards decreasing childhood exposure to lead was so impressive that the CDC identified "childhood lead poisoning prevention as 1 of 10 great US public health achievements during 2001 to 2010." [66]

124.    There are simple, inexpensive methods to reduce Toxic Heavy Metals and/or other toxins in food products. For example, the inorganic forms of arsenic, referred to as arsenite and arsenate, are water-soluble and found in rice.

## **CLASS ACTION ALLEGATIONS**

125.    Plaintiffs Asyia Andrews, Jessie McNaughton, and Lisa Gans bring this action individually and on behalf of the following Class pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> **Class**: All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of the United States (the "Class").[67]

126.    Plaintiff Lizette Romero Ortiz brings this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of California (the "California Subclass").

---

POISONING PREVENTION), S13–S22. Available at
https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6522252/#R6 (last accessed Feb. 22, 2022).

[65] *Id.*

[66] *Id.*

[67] Plaintiffs reserve the right to re-define the Class definition prior to class certification and after having the opportunity to conduct discovery.

127. Plaintiffs Lisa Gans and Zeynep Senturk Mannix bring this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of Washington D.C. (the "D.C. Subclass").

128. Plaintiff Jade Huguenot brings this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of Indiana (the "Idaho Subclass").

129. Plaintiff Cassie Isza brings this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of Indiana (the "Indiana Subclass").

130. Plaintiff Shahalis Wilson brings this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of Kentucky (the "Kentucky Subclass").

131. Plaintiff Bethany Nickerson brings this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of Maine (the "Maine Subclass").

132.    Plaintiff Myjorie Philippe brings this action individually and on behalf of the

following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil

Procedure:

All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of Massachusetts (the "Massachusetts Subclass").

133.    Plaintiff Cassie Caldwell brings this action individually and on behalf of the

following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil

Procedure:

All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of Missouri (the "Missouri Subclass").

134.    Plaintiff Elena Thormahlen brings this action individually and on behalf of the

following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil

Procedure:

All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of Nevada (the "Nevada Subclass").

135.    Plaintiff Carolyn Leary brings this action individually and on behalf of the

following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil

Procedure:

All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5,

2015 to the present (the "Class Period"), while being residents of New Hampshire (the "New Hampshire Subclass").

136.    Plaintiff Asyia Andrews brings this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of New Jersey (the "New Jersey Subclass").

137.    Plaintiff Helen Howard brings this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of North Carolina (the "North Carolina Subclass").

138.    Plaintiff Tanya Motsay brings this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of Pennsylvania (the "Pennsylvania Subclass").

139.    Plaintiff Amanda Roman brings this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of Rhode Island (the "Rhode Island Subclass").

140.    Plaintiffs Stephanie Weimer and Simone Craig bring this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of Virginia (the "Virginia Subclass").

141.    Plaintiff Monica Hazelwood brings this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of the state of Washington (the "Washington Subclass").

142.    **Excluded from the Class and each Subclass are**: (1) any Judge or Magistrate presiding over this action, any members of their immediate families, and any of their staff; (2) the Defendant, Defendant's subsidiaries, affiliates, parents, successors, predecessors, any entities in which the Defendant has a controlling interest, and their current or former employees, officers, and directors from February 5, 2015 to present; and (3) Plaintiffs' counsel and Defendant's counsel.

143.    **Numerosity (Rule 23(a)(1))**:   The exact number of members of the Class is unknown and currently unavailable to Plaintiffs, but joinder of individual members herein is impractical. The Class is likely comprised of hundreds of thousands of consumers. Sales figures indicate that millions of individuals purchased Defendant's Baby Foods. The precise number of Class members, and their addresses, is unknown to Plaintiffs at this time, but can be ascertained from Defendant's records and/or retailer records. The members of the Class may be notified of the

pendency of this action by mail or email, internet postings and/or publications, and supplemented (if deemed necessary or appropriate by the Court) by published notice.

144. **Predominant Common Questions (Rule 23(a)(2))**: The Classes claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members. The common and legal questions include, without limitation:

a. Whether Defendant knew or should have known that its Baby Foods contained Toxic Heavy Metals and/or other toxins that rendered Defendant's Baby Foods unsafe for babies;

b. Whether Defendant wrongfully represented and continues to represent that its Baby Foods are safe for babies' consumption;

c. Whether Defendant's representations, advertisements, warranties, labeling, packaging, and logos are false, deceptive, and misleading;

d. Whether Defendant had knowledge that those representations were likely to deceive a reasonable consumer;

e. Whether Defendant had knowledge that those representations were false, deceptive, or misleading;

f. Whether Defendant continued to disseminate those false, misleading, and deceptive representations;

g. Whether Defendant failed to warn and disclose material facts regarding its Baby Foods and concealed internal testing results revealing dangerous levels of arsenic, lead, cadmium, mercury, and other heavy metals that are unsafe for babies;

h. Whether Defendant's testing showed that Defendant's products contained Toxic Heavy Metals and/or other toxins;

i. Whether Defendant violated the state consumer protection statutes alleged herein;

j. Whether Defendant was unjustly enriched; and

k. The nature of relief, including damages and equitable relief, to which Plaintiffs and members of the Classes are entitled.

145. **Typicality of Claims (Rule 23(a)(3))**: Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like all other Class members, purchased Defendant's Baby Foods, suffered damages as a result of that purchase, and seeks the same relief as the proposed Class members.

146. **Adequacy of Representation (Rule 23(a)(4))**: Plaintiffs adequately represent the Class because their interests do not conflict with the interests of the members of the Class, and they have retained counsel competent and experienced in complex class action and consumer litigation.

147. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the Classes.

148. **Superiority (Rule 23(b)(3))**: A class action is superior to other available means of adjudication for this controversy. It would be impracticable for members of the Class to individually litigate their own claims against Defendant because the damages suffered by Plaintiffs and the members of the Classes are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments and delay

and expenses to the court system. A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

**Declaratory Relief
(Fed. R. Civ. P. 23(b)(1) and (2))**

149.     In the alternative, this action may properly be maintained as a class action because:

    a.     the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendant; or

    b.     the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

    c.     Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

**Issue Certification (Fed. R. Civ. P. 23(c)(4))**

150.     In the alternative, the common questions of fact and law, set forth in Paragraph 74 are appropriate for issue certification on behalf of the proposed Class.

# CAUSES OF ACTION

## COUNT I
## BREACH OF EXPRESS WARRANTY
*(On behalf of Plaintiffs Asyia Andrews, Jessie McNaughton, Lisa Gans, and the Class against Defendant)*

151.    Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

152.    Plaintiffs bring this claim on behalf of themselves and members of the Class.

153.    Express warranties by sellers of consumer goods are created when an affirmation of fact or promise is made by the seller to the buyer, which relates to the goods and becomes the basis of the bargain. Such warranties can also be created based upon descriptions of the goods which are made as part of the basis of the bargain that the goods shall conform to the description.

154.    Plaintiffs and members of the Class formed a contract with the Defendant at the time they purchased Defendant's Baby Foods. The terms of that contract included the promises and affirmations of fact that Defendant made through its product labels, through other forms of uniform, nationwide marketing, its website, and on social media. Among other affirmations of fact and promises described herein, Defendant represented that its Baby Foods were and are safe, healthy, and appropriate for infant or child consumption.

155.    These affirmations of facts and promises, which are part of Defendant's uniform marketing, advertising, and product labeling, constitute express warranties and became part of the basis of the bargain, and they are part of the standardized contracts between Plaintiffs and members of the Class on the one hand, and the Defendant, on the other.

156.    Contrary to these affirmations of fact and promises, Defendant's Baby Foods did not and do not contain food or beverages that are safe, healthy, and appropriate for infant or child

consumption as described on the product labels or in Defendant's marketing and advertising campaign.

157. Defendant breached the express warranties and/or contract obligations by placing these Baby Foods into the stream of commerce and selling them to consumers, when they have dangerous levels of Toxic Heavy Metals and/or other toxins, and can cause toxicity or adverse health implications, rendering these products unfit for their intended use and purpose, and unsafe and unsuitable for consumer use as marketed by Defendant. The high levels of Toxic Heavy Metals and/or other toxins substantially impair the use, value, and safety of Defendant's Baby Foods.

158. At all times relevant herein, Defendant was aware, or should have been aware, of Toxic Heavy Metals and/or other toxins in Defendant's Baby Foods. Defendant was on notice of these concerns with its products, but nowhere on the package labeling or on Defendant's website or other marketing materials did Defendant warn Plaintiffs and members of the Class that they were at risk of feeding their children food with levels of Toxic Heavy Metals and/or other toxins that exceed the standards set by federal agencies or recommended by other organizations.

159. Instead, Defendant concealed the high levels of Toxic Heavy Metals and/or other toxins contained in its Baby Foods and deceptively represented that these products were safe, healthy, and appropriate for infant or child consumption. Defendant, thus, utterly failed to ensure that the material representations it was making to consumers were true.

160. The toxic and/or dangerous levels of Toxic Heavy Metals and/or other at issue in Defendant's Baby Foods existed when they left Defendant's possession or control and were sold to Plaintiffs and members of the Class. The levels of Toxic Heavy Metals and/or other toxins contained in the Defendant's Baby Foods were undiscoverable by Plaintiffs and members of the Class at the time of purchase of Defendant's Baby Foods.

161.     As a manufacturer, marketer, advertiser, distributor, and seller of Defendant's Baby Foods, Defendant has exclusive knowledge and notice of the fact that these products did not conform to the affirmations of fact and promises.

162.     In addition, or in the alternative, to the formation of an express contract, Defendant made each of the above-described representations to induce Plaintiffs and members of the Class to rely on such representations.

163.     Defendant's affirmations of fact and promises were material, and Plaintiffs and members of the Class reasonably relied upon such representations in purchasing the Defendant's Baby Foods.

164.     Defendant was provided with notice by the numerous consumer class action complaints filed against it. Affording Defendant an opportunity to cure its breaches of written warranties would be unnecessary and futile here. Defendant was placed on reasonable notice of the levels of Toxic Heavy Metals and/or other toxins in Defendant's Baby Foods and breach of the warranties based on its scientific research and expertise in the food production industry. Defendant has had ample opportunity to cure the high levels of Toxic Heavy Metals and/or other toxins in its Baby Foods to render them safe and healthy for consumption by Plaintiffs and members of the putative classes and their children but has failed to do so.

165.     Defendant has also had notice of its breach as set forth herein by virtue of the recent Congressional investigation into this matter and the prior 2019 report issued by Healthy Babies Bright Future.

166.     As a direct and proximate result of Defendant's breaches of express warranty, Plaintiffs and members of the Class have been damaged because they did not receive the products as specifically warranted by Defendant. Plaintiffs and members of the Class did not receive the

benefit of the bargain and suffered damages at the point of sale stemming from their overpayment of Defendant's Baby Foods.

**COUNT II**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
***(On behalf of Plaintiffs Asyia Andrews, Jessie McNaughton, Lisa Gans, and the Class against Defendant)***

167.    Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

168.    Plaintiffs bring this claim on behalf of themselves and members of the Class.

169.    Defendant is a merchant engaging in the sale of goods to Plaintiffs and members of the Class.

170.    There was a sale of goods from Defendant to Plaintiffs and members of the Class.

171.    Defendant's Baby Foods were sold to Plaintiffs and members of the Class purchased Defendant's Baby Foods from authorized resellers of Defendant's Baby Foods.

172.    By placing Defendant's Baby Foods into the stream of commerce, Defendant impliedly warranted to Plaintiffs and members of the Class that Defendant's Baby Foods were of merchantable quality (i.e., a product of high-enough quality to make it fit for sale, usable for the purpose it was made, of average worth in the marketplace, or not contaminated or flawed or containing a defect affecting the safety of the product), would pass without objection in the trade or business, and were free from material defects, and reasonably fit for the use for which they were intended.

173.    Defendant's products when sold, and at all times thereafter, were not merchantable or reasonably fit for either the use they were intended or the uses reasonably foreseeable by Defendant.

174. Defendant breached the implied warranty of merchantability because Defendant's Baby Foods suffer from the presence of Toxic Heavy Metals and/or other toxins, such as arsenic, lead, cadmium, and mercury, which have the propensity to cause health complications, rendering them unfit for their intended use and purpose as baby and/or children's food and beverages. The level of Toxic Heavy Metals and/or other toxins substantially impairs the use, value, and safety of these products.

175. The toxic and/or dangerous levels of heavy metals existed when the Defendant's Baby Foods left Defendant's possession or control and were sold to Plaintiffs and members of the putative classes. The amounts of Toxic Heavy Metals and/or other toxins contained in Defendant's Baby Foods were undiscoverable by Plaintiffs and members of the putative classes at the time of their purchase.

176. As described herein, Defendant advertised on its Baby Foods labels, on its website, and through a national advertising campaign, among other means, that Defendant's Baby Foods were and are safe and appropriate for infant and child consumption.

177. Contrary to these representations, Defendant's Baby Foods possessed dangerous levels of Toxic Heavy Metals and/or other toxins which were not revealed on Defendant's Baby Foods, product labels, or in Defendant's marketing and advertising campaigns. Rather, Defendant's Baby Foods are unsafe because they have dangerous levels of Toxic Heavy Metals and/or other toxins. The Baby Foods are unsafe and unsuitable for consumer use as marketed by Defendant. Defendant has exclusive knowledge of material facts concerning the defective nature of Defendant's Baby Foods.

178. Plaintiffs and members of the Class, at all relevant times, were intended third-party beneficiaries of Defendant and its agents in the distribution and sale of Defendant's Baby Foods.

Moreover, Defendant exercises substantial control over which outlets can carry and sell Defendant's Baby Foods, which are the same places that Plaintiffs and members of the Class purchased them. In addition, Defendant's warranties are in no way designed to apply to the distributors that purchase these products in bulk and then sell them on an individual basis to each consumer. Individual consumers are the ones who ultimately review the labels prior to making their purchasing decisions. As a result, these warranties are specifically designed to benefit the individual consumers who purchase Defendant's Baby Foods.

179. Plaintiffs and members of the Class sustained damages as a direct and proximate result of Defendant's breaches insofar as they paid a premium for Defendant's Baby Foods that they would not have otherwise paid had they known that Defendant's Baby Foods contained dangerous levels of Toxic Heavy Metals and/or other toxins.

180. Plaintiffs and members of the Class did not receive the value of the product they paid for. The products are worthless or worth far less than Defendant represents due to the presence of Toxic Heavy Metals and/or other toxins contained therein which have the propensity to cause adverse health implications.

181. Plaintiffs and members of the Class have sustained, are sustaining, and will sustain damages if Defendant continues to engage in such deceptive, unfair, and unreasonable practices.

182. Defendant was provided with notice by the numerous consumer class action complaints filed against it. Affording Defendant an opportunity to cure its breaches of written warranties would be unnecessary and futile here.

183. Defendant was also placed on reasonable notice of the high levels of Toxic Heavy Metals and/or other toxins contained in Defendant's Baby Foods and its breach of the warranties based on its own research into food processing and sourcing, as well as a recent Congressional

investigation on the matter. Defendant has had ample opportunity to cure the dangerous levels of Toxic Heavy Metals and/or other toxins for Plaintiffs and members of the Class but have failed to do so. Instead, Defendant doubled down on efforts to convince consumers that its Baby Foods are safe to consume and healthy for babies and children, including public statements denying that there are any issues with its Baby Foods.

184.    As a result of the breach of the implied warranty of merchantability, Plaintiffs and members of the Class are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

## COUNT III
## NEGLIGENT MISREPRESENTATION
### *(On behalf of Plaintiffs Asyia Andrews, Jessie McNaughton, Lisa Gans, and the Class against Defendant)*

185.    Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

186.    Plaintiffs bring this claim on behalf of themselves and the Class.

187.    Defendant directly, or through its agents and employees, made false representations, concealments, and non-disclosures to Plaintiffs and members of the Class about its products' safety and testing.

188.    Defendant intentionally, knowingly, and/or recklessly made these misrepresentations to induce Plaintiffs and members of the Class to purchase Defendant's Baby Foods.

189.    In making these false, misleading, and deceptive representations and omissions, Defendant knew that consumers would purchase its products. Defendant intended for these statements to induce consumers to purchase its Baby Foods. Consumers who purchased

Defendant's Baby Foods paid a premium for these products over what consumers would have paid had Defendant disclosed that its Baby Foods contained dangerous levels of Toxic Heavy Metals and/or other toxins.

190. Defendant created a special relationship with Plaintiffs and members of the Class through representations regarding its products' safety and the Defendant's rigorous, scientific testing and research.

191. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive statements, representations, and omissions, Defendant injured Plaintiffs and members of the Class in that they purchased, paid a premium price for, and fed their children the Baby Foods, which were not as represented.

192. In making the misrepresentations of fact and omissions to Plaintiffs and members of the Class, Defendant has failed to fulfill its duty to disclose material facts about its Baby Foods.

193. The failure to disclose the true nature of the products' safety, testing, and compliance with internal safety thresholds was caused by Defendant's negligence and carelessness.

194. Defendant, in making these misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the misrepresentations were not true.

195. Defendant made and intended the misrepresentations to induce the reliance of Plaintiffs and Class members.

196. Defendant allowed its packaging, labels, advertisements, promotional materials, and website to intentionally mislead consumers, such as Plaintiffs and members of the Class.

197. Plaintiffs and members of the Class did in fact rely on these misrepresentations and purchased Defendant's Baby Food to their detriment. Given the deceptive manner in which

Defendant advertised, represented, and otherwise promoted the Baby Foods, Plaintiffs and members of the Class's reliance on Defendant's misrepresentations was justifiable.

198.     As a direct and proximate result of Defendant's conduct, Plaintiffs and members of the Class have suffered actual damages. Plaintiffs and members of the Class purchased products that are worth less than the price they paid, and they would not have purchased Defendant's Baby Foods, would have bought less of the Baby Foods, or would have paid less for the Baby Foods had they known of the presence, or risk of the presence of Toxic Heavy Metals and/or other toxins in the Baby Foods that do not conform to the products' labels, packaging, advertising, and statements.

199.     Plaintiffs and members of the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

**COUNT IV**
**VIOLATIONS OF THE NEW YORK GENERAL BUSINESS LAW § 349**
*(On behalf of Plaintiffs Asyia Andrews, Jessie McNaughton, Lisa Gans, and the Class against Defendant)*

200.     Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

201.     New York General Business Law Section 349(a) ("Gen. Bus. Law § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

202.     Plaintiffs and the Class members are "person[s]" within the meaning of N.Y. Gen. Bus. Law § 349(h).

203.     Defendant is a "person, firm, corporation or association" within the meaning of N.Y. Gen. Bus. Law § 349(b).

204.     The conduct alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of Gen. Bus. Law § 349, and as such, Plaintiff and the Class seek monetary

damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining it from inaccurately describing, labeling, marketing, and promoting its Baby Foods. There is no adequate remedy at law. Defendant misleadingly, inaccurately, and deceptively marketed its Baby Foods to consumers as safe and concealed information about the presence of Toxic Heavy Metals and/or other toxins, including levels that exceed FDA and EPA guidance.

205. Defendant made affirmative misrepresentations to Plaintiff and members of the Class that Defendant's Baby Foods were safe and suitable for consumption. Defendant, however, concealed, and suppressed material facts concerning Defendant's Baby Foods, including that Defendant's Baby Foods were unsafe and unsuitable for babies; that they contained Toxic Heavy Metals and/or other toxins; the level of the Toxic Heavy Metals and/or other toxins; that internal testing showed that Defendant's Baby Foods contained Toxic Heavy Metals and/or other toxins; and that Defendant's policies permitted the sale of products with harmful levels of Toxic Heavy Metals and/or other toxins.

206. Defendant had an ongoing duty to Plaintiffs and members of the Class to refrain from unfair and deceptive practices. Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts regarding Defendant's Baby Foods, including that such products contained unsafe levels of Toxic Heavy Metals and/or other toxins because Defendant possessed exclusive knowledge, intentionally concealed the facts regarding Baby Foods, including that such products contained unsafe levels of Toxic Heavy Metals and/or other toxins and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

207. Plaintiffs and members of the Class had no way of discerning that Defendant's representations were false and misleading because members of the Class did not have access to

Defendant's internal testing, internal policies, or any internal documents showing the presence of harmful heavy metals.

208.     Defendant thus violated Gen. Bus. Law § 349 by making statements that when considered from the perspective of the reasonable consumer conveyed that Defendant's Baby Foods were safe and suitable for babies. Defendant failed to disclose or warn that Defendant's Baby Foods were unsafe and unsuitable for children, that they contained Toxic Heavy Metals and/or other toxins, the levels of the Toxic Heavy Metals and/or other toxins, that internal testing showed that the products contained harmful Toxic Heavy Metals and/or other toxins, and that Defendant's policies permitted the sale of products with harmful levels of Toxic Heavy Metals and/or other toxins. Defendant intentionally and knowingly made affirmative misrepresentations and failed to disclose material facts regarding the Defendant's Baby Foods with intent to mislead Class members. Defendant knows or should have known that its conduct violated Gen. Bus. Law § 349.

209.     Defendant owed Plaintiffs and the Class a duty to disclose the true and unsafe nature of the Defendant's Baby Foods.

210.     Defendant's concealment of the true characteristics of the Defendant's Baby Foods was material to Plaintiff and members of the Class.

211.     Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs and members of the Class, about the true nature of Defendant's Baby Foods.

212.     Plaintiffs and members of the Class would not have purchased Defendant's Baby Foods, would have bought less of the Baby Foods, or would have paid less for the Baby Foods, had they known that the products were unsafe and unsuitable for babies, that they contained Toxic

Heavy Metals and/or other toxins, the levels of Toxic Heavy Metals and/or other toxins, that Defendant's testing showed that Defendant's Baby Foods contained Toxic Heavy Metals and/or other toxins, or that Defendant's policies permitted the sales of products with harmful levels of Toxic Heavy Metals and/or other toxins.

213. Defendant's violations present a continuing risk to Plaintiff and the Class as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

214. Plaintiffs and members of the Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and concealment of and failure to disclose material information. Defendant had an ongoing duty to all customers and the public to refrain from unfair and deceptive practices.

215. Defendant's advertising and products' packaging and labeling induced Plaintiffs and members of the Class to buy Defendant's products and to pay a premium price for them.

216. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law § 349(a), and Plaintiffs and the Class have been damaged thereby.

217. As a result of Defendant's recurring, unlawful deceptive acts and practices, Plaintiffs and members of the Class are entitled to monetary, compensatory, treble, and punitive damages, injunctive relief, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, attorneys' fees and costs, and an order enjoining Defendant's deceptive and unfair conduct, and all other just and appropriate relief available under the statute.

**COUNT V**
**VIOLATIONS OF THE NEW YORK DECEPTIVE SALES PRACTICE ACT**
**New York Gen. Bus. Law § 350,** *et seq.*
*(On behalf of Plaintiffs Asyia Andrews, Jessie McNaughton, Lisa Gans, and the Class against*
*Defendant)*

218.    Plaintiff incorporates by reference all allegations in this Complaint and restate them as if fully set forth herein.

219.    N.Y. Gen. Bus. Law § 350 provides, in part, that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

220.    N.Y. Gen. Bus. Law § 350(a)(1) provides, in part, as follows:

> The term "false advertising" means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual.

221.    Defendant made statements and omissions that were untrue or misleading. Defendant disseminated such statements through New York. Defendant disseminated such statements and omissions through advertising, marketing, and other publications. Defendant knew or through the exercise of reasonable care should have known that such statements and omissions were untrue and misleading.

222.    Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions regarding the safety of Defendant's Baby Foods.

223.    Defendant made numerous material and affirmative misrepresentations and omissions of fact with intent to mislead and deceive concerning Defendant's Baby Foods,

particularly concerning their unsafe nature. Specifically, Defendant intentionally concealed and suppressed material facts concerning Defendant's Baby Foods, namely, that they were unsafe and unsuitable for babies, that they contained Toxic Heavy Metals and/or other toxins, that Defendant's testing showed that its products contained Toxic Heavy Metals and/or other toxins, and that Defendant's policies permitted the sale of products with Toxic Heavy Metals and/or other toxins. Defendant intentionally and grossly defrauded and misled Class members concerning the true and unsafe nature of Defendant's Baby Foods.

224.     Defendant made untrue and misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

225.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350 as stated in ¶ 224.

226.     Defendant made the material misrepresentations described in this Complaint in Defendant's advertising, and on the products' packaging and labeling.

227.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the products for purposes of consumption were and continue to be exposed to Defendant's material misrepresentations and omissions.

228.     Plaintiff and members of the Class would not have purchased Defendant's Baby Foods, would have bought less of the Baby Foods, or would have paid less for the Baby Foods, had they known that the products were unsafe and unsuitable for babies, that they contained Toxic Heavy Metals and/or other toxins, the levels of Toxic Heavy Metals and/or other toxins they contained, that Defendant's testing showed that its products contained Toxic Heavy Metals and/or

other toxins, or that Defendant's policies permitted the sales of products with harmful levels of Toxic Heavy Metals and/or other toxins.

229.    Defendant's violation presents a continuing risk to Plaintiff and members of the Class. Defendant's deceptive acts and practices affect the public interest.

230.    Plaintiff and members of the Class have suffered injury-in-fact and/or actual damages and ascertainable loss as a direct and proximate result of the Defendant's violation.

231.    The Class members seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial, and (b) statutory damages in the amount of $500 for each Class member, and because Defendant's conduct was committed willingly and knowingly, Class members are entitled to recover three times actual damages, up to $10,000. The Class also seeks an order enjoining Defendant's false advertising, attorneys' fees, and any other just and proper relief under N.Y. Gen. Bus. Law § 350.

## COUNT VI
## UNJUST ENRICHMENT
### *(On behalf of the Plaintiffs Asyia Andrews, Jessie McNaughton, Lisa Gans, and the Class against Defendant)*

232.    Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

233.    Plaintiffs bring this claim on behalf of themselves and the Class.

234.    Plaintiffs and the other members of the Class conferred benefits on Defendant by purchasing the Defendant's Baby Foods.

235.    Defendant received the benefits to the detriment of Plaintiffs and the other members of the Class because Plaintiffs and the other members of the Class purchased a mislabeled product that is not what they bargained for and did not provide the advertised benefit.

236.    Defendant has been unjustly enriched in retaining the revenues derived from the purchases of Defendant's Baby Foods by Plaintiffs and the other members of the Class. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Baby Foods was misleading to consumers, which caused injuries to Plaintiffs and the other members of the Class, because they would not have purchased Defendant's Baby Foods, would have bought less of the products, or would have paid less for the products had they known that they contained dangerous levels of Toxic Heavy Metals and/or other toxins.

237.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and the other members of the putative classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and all members of the putative classes for unjust enrichment, as ordered by the Court.

## COUNT VII
## FRAUDULENT CONCEALMENT
### *(On behalf of the Plaintiffs Asyia Andrews, Jessie McNaughton, Lisa Gans, and the Class against Defendant)*

238.    Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

239.    Defendant concealed and failed to disclose the material fact that its Baby Foods contained, or were at risk of containing, elevated levels of Toxic Heavy Metals and/or other toxins, that Defendant was not testing the amount of Toxic Heavy Metals and/or other toxins in the finished products, and that the products were not safe or healthy for consumption.

240.    Defendant had knowledge that the Baby Foods contained, or were at risk of containing, elevated levels of Toxic Heavy Metals and/or other toxins, that Defendant was not testing the amount of Toxic Heavy Metals and/or other toxins in its finished products, and that the products were not safe or healthy for consumption.

241. Defendant had a duty to disclose that the Baby Foods contained, or were at risk of containing, elevated levels of Toxic Heavy Metals and/or other toxins, that Defendant was not testing the amount of Toxic Heavy Metals and/or other toxins in its finished Baby Foods, and that the Baby Foods were not safe or healthy for consumption. Defendant had superior knowledge or means of knowledge available to them and knew that Plaintiffs and the Class would rely upon the representations and omissions of Defendant regarding the quality of its products. Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains elevated levels of Toxic Heavy Metals and/or other toxins, especially at the point of sale.

242. Defendant's concealment was material and intentional because caregivers are concerned with what they are feeding to the children in their care. Caregivers are influenced by the ingredients listed, as well as any warnings (or lack thereof) on the products they buy and feed to the children in their care. Defendant knows that if it had not omitted that the Baby Foods contained, or were at risk of containing, elevated levels of Toxic Heavy Metals and/or other toxins, that Defendant was not testing the amount of Toxic Heavy Metals and/or other toxins in the finished products, and that the products were not safe or healthy for consumption then Plaintiffs and the Class would not have paid a premium for the Baby Foods or purchased them at all.

243. Defendant's concealment misled Plaintiffs and the Class as to the true nature of what they were buying and feeding to children.

244. Defendant fraudulently concealed that the Baby Foods contained, or were at risk of containing, elevated levels of Toxic Heavy Metals and/or other toxins, that they were not testing the amount of Toxic Heavy Metals and/or other toxins in the finished products, and that the products were not safe or healthy for consumption. Consequently, Plaintiffs and the other members of the Class have suffered injury and are entitled to damages.

245. Plaintiffs and Class members seek all monetary and non-monetary relief allowed by law, including injunctive relief, other equitable relief, compensatory, actual, punitive, and treble damages, restitution, and attorneys' fees, filing fees, and costs.

**COUNT VIII**
**VIOLATIONS OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT**
**Cal. Civ. Code §§ 1750,** *et seq.***, Against Defendant**
***(On Behalf of Plaintiff Lizette Romero Ortiz and the California Subclass)***

246. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

247. The California Consumers Legal Remedies Act ("CLRA") prohibits any unfair or deceptive practices, as well as unconscionable commercial practices in connection with the sale of goods or services to consumers including, (i) "[m]isrepresenting the source, sponsorship, approval, or certification of goods or services" (ii) "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which he or she does not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have;" (iii) "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" or (iv) "[a]dvertising goods or services with intent not to sell them as advertised."

248. Plaintiffs and each proposed Class member are a "consumer," as defined by the CLRA. *See* Cal. Civ. Code § 1761(d).

249. Defendant's products, Earth's Best Baby Foods, are "goods," as defined by the CLRA. *See* § 1761(a).

250. Defendant is a "person," as defined by the CLRA. *See* § 1761(c).

251. Plaintiffs and each proposed Class Member's purchases of Earth's Best Baby Food products from Defendant constitutes a "transaction," as defined by the CLRA. *See* § 1761(e).

252. Defendant violates this statute and commits unfair or deceptive acts or practices in the conduct of trade or commerce as alleged herein.

253. Defendant omitted material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxic materials in its Earth's Best Baby Foods.

254. Defendant intentionally misrepresented the standard, quality, or grade of the Earth's Best Baby Food products and testing procedures for the products through mislabeling and false advertising in violation of CLRA § 1770 (7).

255. The omitted information regarding the grade, quality, testing procedures, presence of Toxic Heavy Metals and/or other toxins, and safety of baby food products is material information consumers relied on when deciding to purchase Defendant's products.

256. Defendant's omissions increased the risk of harm children faced by consuming the Earth's Best Baby Foods.

257. Defendant had a duty to disclose to Plaintiffs and the Class Members that Earth's Best Baby Foods contained excessive levels of Toxic Heavy Metals and/or other toxins and were of substandard quality for at least three reasons: (1) Defendant had exclusive knowledge of the information at the time of sale; and (2) Defendant actively concealed from Plaintiffs and the Class Members the excessive levels of Toxic Heavy Metals and/or other toxins contained in the Baby Foods (3) Defendant made material misrepresentations about the Baby Foods and their toxic components.

258. Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

259.     Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

260.     Plaintiffs and the Class have been directly and proximately harmed by Defendant's material misrepresentations and omissions.

261.     Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

262.     Plaintiff will comply with the provisions of Cal. Civ. Code § 1782(a) and notify Defendant in writing of the CLRA violation alleged herein.

263.     Pursuant to California Civil Code § 1780, Plaintiff seeks all available injunctive relief, including an order enjoining Defendant from the unlawful practices described above.  If Defendant does not exercise its opportunity to provide corrective action pursuant to Section 1782(b) within the time provided, Plaintiff will amend this complaint to seek damages and all other available relief.

## COUNT IX
### VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW
### Cal. Bus. & Prof. Code §§ 17500, *et seq.*
### *(On Behalf of Plaintiff Lizette Romero Ortiz and the California Subclass)*

264.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

265.     The California False Advertising Law ("FAL") prohibits "untrue or misleading" statements or omissions in connection with the sale of goods.

266.     Defendant omitted material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxic materials in its Earth's Best Baby Food products in a manner likely to deceive consumers.

267. Defendant knew the Baby Foods contained Toxic Heavy Metals and/or other toxins. Defendant had a duty to disclose the presence of Toxic Heavy Metals and/or other toxins and failed to disclose to consumers' detriment.

268. Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

269. Defendant knew or should have known that its material omissions concerning the levels of Toxic Heavy Metals and/or other toxins in its Baby Foods were misleading.

270. Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

271. As a result of Defendant's practices, Plaintiffs and Class Members have lost money.

272. Plaintiffs and the California Subclass seek restitution under the statute including injunctive and equitable relief, and any other relief the Court deems necessary and proper.

## COUNT X
### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
#### Cal. Bus. & Prof. Code §§ 17200, *et seq.*
#### *(On Behalf of Plaintiff Lizette Romero Ortiz and the California Subclass)*

273. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

274. The California Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice."

275. Defendant's material misstatements and omissions concerning the presence of Toxic Heavy Metals and/or other toxins in the Baby Foods is likely to deceive consumers and the public.

276. Defendant's conduct, as described in ¶ 277 and alleged herein, violates the CLRA and the FAL. *See* Cal. Civ. Code §§ 1750, *et seq*; Cal. Bus. & Prof. Code §§ 17500, *et seq*.

277. Defendant's manufacturing, packaging, distribution, and sale of Earth's Best Baby Foods are immoral, unethical, unscrupulous, or substantially injurious to consumers. The unavoidable risks and harms associated with Defendant's conduct outweigh any benefits.

278. Defendant's conduct is unfair because it violates public policy as stated in constitutional, statutory, and/or regulatory provisions, including, but not limited to, the FAL. *See* Cal. Bus. & Prof. Code §§ 17500, *et seq.*

279. Defendant had a duty to disclose the presence of Toxic Heavy Metals and/or other toxins in Earth's Best Baby Foods because Defendant had exclusive knowledge of the levels of Toxic Heavy Metals and/or other toxins, Defendant concealed the presence of Toxic Heavy Metals and/or other toxins in its Baby Foods, and Defendant concealed internal specifications measuring Toxic Heavy Metals and/or other toxins in its Baby Foods.

280. Plaintiffs relied on the Earth's Best Baby Foods labels and packaging when deciding whether to purchase Defendant's Baby Foods. Had Plaintiffs and Class Members known that the Baby Foods contained Toxic Heavy Metals and/or other toxins and were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

281. As a result of Defendant's practices, Plaintiffs and Class Members have lost money.

282. Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

283. Plaintiffs and the California Subclass seek restitution, injunctive, and equitable relief, and any other relief the Court deems necessary and proper under the statute.

## COUNT XI
## VIOLATION OF THE DISTRICT OF COLUMBIA
## CONSUMER PROTECTION PROCEDURES ACT
### D.C. Code §§ 28-3904, *et seq.*
**(On Behalf of Plaintiffs Lisa Gans, Zeynep Senturk Mannix, and the D.C. Subclass)**

284. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

285. The District of Columbia Consumer Protection Procedures Act ("DCCPPA") prohibits "an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby, including," (i) "represent[ing] that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;" (ii) "represent[ing] that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;" (iii) "misrepresent as to a material fact which has a tendency to mislead;" (iv) "fail[ing] to state a material fact if such failure tends to mislead;" (v) "advertis[ing] or offer[ing] goods or services without the intent to sell them or without the intent to sell them as advertised or offered;" or (vi) "advertis[ing] or offer[ing] goods or services without supplying reasonably expected public demand, unless the advertisement or offer discloses a limitation of quantity or other qualifying condition which has no tendency to mislead."

286. Plaintiffs and each proposed Class member are a "consumer," as defined by the DCCPPA that purchased Earth's Best Baby Food products for personal, family, or household use. *See* D.C. Code § 28-3901(a)(2).

287. Defendant violates this statute and commits unfair or deceptive acts or practices in the conduct of trade or commerce as alleged herein.

288. Defendant omitted material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxic materials in its Earth's Best Baby Foods.

289.     Defendant intentionally misrepresented the standard, quality, or grade of the Earth's Best Baby Foods and testing procedures for the products through mislabeling and false advertising.

290.     The omitted information regarding the grade, quality, testing procedures, presence of Toxic Heavy Metals and/or other toxins, and safety of baby food products is material information consumers relied on when deciding to purchase Defendant's products.

291.     Defendant's omissions increased the risk of harm children faced by consuming the Earth's Best Baby Foods.

292.     Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

293.     Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

294.     Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

295.     Plaintiffs and the D.C. Subclass seek relief under the statute including the greater of $1,500 per violation or treble damages, actual damages, punitive damages, attorney's fees and costs, an injunction, and any other relief the Court deems necessary and proper.

**COUNT XII**
**VIOLATION OF THE IDAHO CONSUMER PROTECTION ACT**
**Idaho Code Ann. §§ 48-601,** *et seq.*
***(On Behalf of Plaintiff Jade Huguenot and the Idaho Subclass)***

296.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

297. The Idaho Consumer Protect Act ("ICPA") prohibits "unfair or deceptive acts and practices in the conduct of trade or commerce," including: "(2) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;" "(4) Using deceptive representations or designations of geographic origin in connection with goods or services;" "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, connection, qualifications or license that he does not have;" "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and "(9) Advertising goods or services with intent not to sell them as advertised."

298. Defendant is a "person" as defined by the ICPA. *See* Idaho Code Ann. § 48-602(1).

299. Defendant commits these violations in the course of conducting "trade" or "commerce" as defined by the ICPA. *See* Idaho Code Ann. § 48-602(2)

300. Defendant violates this statute and commits unfair or deceptive acts or practices in the conduct of trade or commerce as alleged herein.

301. Defendant omitted material information regarding the levels of heavy metals and toxic materials in their Earth's Best Baby Food products.

302. Defendant intentionally misrepresented the standard, quality, or grade of the Earth's Best Baby Food products and testing procedures for the products through mislabeling and false advertising.

303. The omitted information regarding the grade, quality, testing procedures, presence of heavy metals, and safety of baby food products is material information consumers relied on when deciding to purchase Defendant's products.

304. Defendant's omissions increased the risk of harm children faced by consuming the Earth's Best Baby Food products.

305. Defendant's violations were and are, at least reckless or willful, deceptive, unfair, and unconscionable.

306. Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

307. Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

308. Plaintiffs and the Idaho Subclass seek relief under the statute including recovery of actual damages or damages in the amount of $1,000 per Class Member, restitution, injunctive relief, costs and attorney's fees, and any other relief the Court deems necessary and proper.

## COUNT XIII
### VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT
### Ind. Code Ann. §§ 24-5-0.5-0.1, *et seq.*
### *(On Behalf of Plaintiff Cassie Isza and the Indiana Subclass)*

309. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

310. The Indiana Deceptive Consumer Sales Act ("IDCSA") prohibits "an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction" whether it is an "implicit" or "explicit misrepresentation[]." Such deceptive acts include: "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have;" and "(2) That such subject of a consumer transaction is of a particular standard,

quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not."

311. Defendant is as a "supplier" as defined by the IDCSA. *See* Ind. Code Ann. § 24-5-0.5-2(3).

312. Defendant commits these violations in the course of a "consumer transaction" as defined by the IDCSA. *See* Ind. Code Ann. § 24-5-0.5-2(1).

313. Defendant violates this statute and commits unfair or deceptive acts or practices in the conduct of business, trade or commerce as alleged herein.

314. Defendant omitted material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxic materials in its Earth's Best Baby Food products.

315. Defendant intentionally misrepresented the standard, quality, or grade of the Earth's Best Baby Food products and testing procedures for the products through mislabeling and false advertising.

316. The omitted information regarding the grade, quality, testing procedures, presence of Toxic Heavy Metals and/or other toxins, and safety of baby food products is material information consumers relied on when deciding to purchase Defendant's products.

317. Defendant's omissions increased the risk of harm children faced by consuming the Earth's Best Baby Food products.

318. Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

319. Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

320. Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

321. Plaintiffs and the Indiana Subclass seek relief under the statute including the greater of actual damages or $500, the greater of actual damages or $1,000 in the case of a willful violation, costs and attorney's fees, and any other relief the Court deems necessary and proper.

## COUNT XIV
## VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT
### Ky. Rev. Stat. Ann. §§ 367.110, *et seq.*
### *(On Behalf of Plaintiff Shahalis Wilson and the Kentucky Subclass)*

322. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

323. The Kentucky Consumer Protection Act ("KCPA") states that "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

324. Defendant's acts are "unfair" as defined by the KCPA. *See* Ky. Rev. Stat. Ann. § 367.170(2).

325. Defendant violates this statute in the conduct of "trade" or "commerce" as defined by the KCPA. *See* Ky. Rev. Stat. Ann. § 367.110(2).

326. Defendant violates this statute and commits unfair or deceptive acts or practices in connection with the sale of merchandise and in the conduct of trade or commerce as alleged herein.

327. Defendant omitted material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxic materials in its Earth's Best Baby Food products.

328. Defendant intentionally misrepresented the standard, quality, or grade of its Earth's Best Baby Food products and testing procedures for the products through mislabeling and false advertising.

329.     The omitted information regarding the grade, quality, testing procedures, presence of Toxic Heavy Metals and/or other toxins, and safety of baby food products is material information consumers relied on when deciding to purchase Defendant's products.

330.     Defendant's omissions increased the risk of harm children faced by consuming its Earth's Best Baby Food products.

331.     Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

332.     Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

333.     Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

334.     Plaintiffs and the Kentucky Subclass seek relief under the statute including recovery of actual damages, injunctive relief, punitive damages, costs and attorney's fees, and any other relief the Court deems necessary and proper.

## COUNT XV
### VIOLATION OF THE MAINE UNFAIR TRADE PRACTICES ACT
#### Me. Rev. Stat. tit. 5, § 205-A, *et seq.*
#### *(On Behalf of Plaintiff Bethany Nickerson and the Maine Subclass)*

335.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

336.     The Maine Unfair Trade Practices Act ("MUTPA") states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful."

337. Defendant violates this statute in the conduct of "trade" or "commerce" as defined by the statute. *See* Me. Rev. Stat. tit. 5, § 206(3).

338. Defendant violates this statute and commits unfair or deceptive acts or practices in connection with the sale of merchandise and in the conduct of trade or commerce as alleged herein.

339. Defendant omitted material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxic materials in its Earth's Best Baby Food products.

340. Defendant intentionally misrepresented the standard, quality, or grade of the Earth's Best Baby Food products and testing procedures for the products through mislabeling and false advertising.

341. The omitted information regarding the grade, quality, testing procedures, presence of Toxic Heavy Metals and/or other toxins, and safety of baby food products is material information consumers relied on when deciding to purchase Defendant's products.

342. Defendant's omissions increased the risk of harm children faced by consuming the Earth's Best Baby Food products.

343. Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

344. Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

345. Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

346.    Plaintiffs and the Maine Subclass seek relief under the statute including recovery of actual damages, injunctive relief, costs and attorney's fees, and any other relief the Court deems necessary and proper.

**COUNT XVI**
**VIOLATION OF THE MASSACHUSETTS CONSUMER PROTECTION ACT**
**Mass. Gen. Laws Ann. ch. 93A, §§ 1, *et seq.***
***(On Behalf of Plaintiff Myjorie Philippe and the Massachusetts Subclass)***

347.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

348.    The Massachusetts Consumer Protection Act ("MCPA") states "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

349.    Defendant commits the violations alleged herein in the course of conducting "trade" or "commerce" as defined by the statute. *See* Mass. Gen. Laws Ann. ch. 93A, § 1(b).

350.    Defendant violates this statute and commits unfair or deceptive acts or practices in connection with the sale of merchandise and in the conduct of trade or commerce as alleged herein.

351.    Defendant omitted material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxic materials in its Earth's Best Baby Food products.

352.    Defendant intentionally misrepresented the standard, quality, or grade of the Earth's Best Baby Food products and testing procedures for the products through mislabeling and false advertising.

353.    The omitted information regarding the grade, quality, testing procedures, presence of Toxic Heavy Metals and/or other toxins, and safety of baby food products is material information consumers relied on when deciding to purchase Defendant's products.

354. Defendant's omissions increased the risk of harm children faced by consuming the Earth's Best Baby Food products.

355. Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

356. Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

357. Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

358. As a result of Defendant's practices, Plaintiffs and Class Members have lost money.

359. Pursuant to Section 9(3) of the MCPA, Mass. Gen. Laws Ann. ch. 93A, Plaintiff Philippe provided Defendant with a written demand for corrective action, identifying Defendant's unfair, deceptive acts and practices and injuries suffered and alleged herein.

360. Plaintiffs and the Massachusetts Subclass seek relief under the statute including recovery of actual damages or twenty-fix dollars, whichever is greater, or up to three but not less than two times such amount, equitable relief, costs and attorney's fees, and any other relief the Court deems necessary and proper.

**COUNT XVII**
**VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT**
**Mo. Ann. Stat. §§ 407.010, *et seq.***
***(On Behalf of Plaintiff Cassie Caldwell and the Missouri Subclass)***

361. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

362. The Missouri Merchandising Practices Act ("MMPA") prohibits "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise,

misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri."

363. Defendant is a "person" as defined by the MMPA. *See* Mo. Ann. Stat. § 407.010(5).

364. Defendant's conduct constitutes a "sale" or "advertisement" as defined by the MMPA. *See* Mo. Ann. Stat. § 407.010(1), (6).

365. Defendant commits the violations alleged herein in the course of conducting "trade" or "commerce" as defined by the statute. *See* Mo. Ann. Stat. § 407.010(7).

366. Defendant violates this statute and commits unfair or deceptive acts or practices in the conduct of trade or commerce in this state as alleged herein.

367. Defendant omitted material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxic materials in its Earth's Best Baby Food products.

368. Defendant intentionally misrepresented the standard, quality, or grade of the Earth's Best Baby Food products and testing procedures for the products through mislabeling and false advertising.

369. The omitted information regarding the grade, quality, testing procedures, presence of Toxic Heavy Metals and/or other toxins, and safety of baby food products is material information consumers relied on when deciding to purchase Defendant's products.

370. Defendant's omissions increased the risk of harm children faced by consuming the Earth's Best Baby Food products.

371. Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

372. Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

373. Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

374. Plaintiffs and the Missouri Subclass seek relief under the statute including the greater of actual damages, costs and attorney's fees, injunctive relief, and any other relief the Court deems necessary and proper.

**COUNT XVIII**
**VIOLATION OF THE NEVADA TRADE REGULATIONS AND PRACTICES ACT**
**Nev. Rev. Stat. Ann. §§ 598.0903, *et seq.***
***(On Behalf of Elena Thormahlen and the Nevada Subclass)***

375. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

376. The Nevada Trade Regulations and Practices Act ("NTRPA") prohibits deceptive trade practices in the course of conducting one's business or occupation which include when a person: (i) "[k]nowingly makes a false representation as to the source, sponsorship, approval or certification of goods or services for sale or lease"; (ii) "[k]nowingly makes a false representation as to affiliation, connection, association with or certification by another person"; (iii) "[u]ses deceptive representations or designations of geographic origin in connection with goods or services for sale or lease"; (iv) "[k]nowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith"; (v) "[r]epresents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should

know that they are of another standard, quality, grade, style or model"; or (vi) "[a]dvertises goods or services with intent not to sell or lease them as advertised."

377. Defendant violates this statute and commits unfair or deceptive acts or practices in the conduct of trade or commerce in this state as alleged herein.

378. Defendant omitted material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxic materials in its Earth's Best Baby Food products.

379. Defendant intentionally misrepresented the standard, quality, or grade of the Earth's Best Baby Food products and testing procedures for the products through mislabeling and false advertising.

380. The omitted information regarding the grade, quality, testing procedures, presence of Toxic Heavy Metals and/or other toxins, and safety of baby food products is material information consumers relied on when deciding to purchase Defendant's products.

381. Defendant's omissions increased the risk of harm children faced by consuming the Earth's Best Baby Food products.

382. Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

383. Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

384. Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

385.     Plaintiffs and the Nevada Subclass seek relief under the statute including actual damages, costs and attorney's fees, injunctive relief, and any other relief the Court deems necessary and proper.

## COUNT XIX
### VIOLATION OF THE NEW HAMPSHIRE CONSUMER PROTECTION ACT
### N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*
### *(On Behalf of Plaintiff Carolyn Leary and the New Hampshire Subclass)*

386.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

387.     Under the New Hampshire Consumer Protection Act ("NHCPA") "[i]t shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state" including, "V. [r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that such person does not have; "VII. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" [or] "IX. Advertising goods or services with intent not to sell them as advertised[.]"

388.     Defendant is a "person," as defined by the statute. *See* N.H. Rev. Stat. Ann. § 358-A:1(1).

389.     Defendant violates this statute and commits unfair or deceptive acts or practices in the conduct of trade or commerce in this state as alleged herein.

390.     Defendant omitted material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxic materials in its Earth's Best Baby Food products.

391.     Defendant intentionally misrepresented the standard, quality, or grade of the Earth's Best Baby Food products and testing procedures for the products through mislabeling and false advertising.

392.     The omitted information regarding the grade, quality, testing procedures, presence of Toxic Heavy Metals and/or other toxins, and safety of baby food products is material information consumers relied on when deciding to purchase Defendant's products.

393.     Defendant's omissions increased the risk of harm children faced by consuming the Earth's Best Baby Food products.

394.     Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

395.     Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

396.     Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

397.     Plaintiffs and the New Hampshire Subclass seek relief under the statute including the greater of actual damages or $1,000, up to three times the amount of damages for a willful violation, costs and attorney's fees, injunctive relief, and any other relief the Court deems necessary and proper.

**COUNT XX**
**VIOLATION OF THE TRADE NAMES, TRADE-MARKS,**
**AND UNFAIR PRACTICES ACT**
**N.J. Stat. Ann. §§ 56:8-1,** *et seq.*
*(On Behalf of Plaintiff Asyia Andrews and the New Jersey Subclass)*

398.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

399.     The New Jersey Trade Names, Trade-Marks, and Unfair Practices Act ("NJTTUPA") prohibits "The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise."

400.     Defendant commits the violations alleged herein in connection with the "sale" or "advertisement" of Earth's Best Baby Food products as defined by the statute. *See* N.J. Stat. Ann. § 56:8-1(a), (e).

401.     Defendant violates this statute and commits unfair or deceptive acts or practices in the conduct of trade or commerce in this state as alleged herein.

402.     Defendant omitted material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxic materials in its Earth's Best Baby Food products.

403.     Defendant intentionally misrepresented the standard, quality, or grade of the Earth's Best Baby Food products and testing procedures for the products through mislabeling and false advertising.

404.     The omitted information regarding the grade, quality, testing procedures, presence of Toxic Heavy Metals and/or other toxins, and safety of baby food products is material information consumers relied on when deciding to purchase Defendant's products.

405.     Defendant's omissions increased the risk of harm children faced by consuming the Earth's Best Baby Food products.

406.     Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

407.     Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

408.     Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

409.     Plaintiffs and the New Jersey Subclass seek relief under the statute including actual damages, costs and attorney's fees, injunctive relief, and any other relief the Court deems necessary and proper.

## COUNT XXI
### VIOLATION OF THE NORTH CAROLINA MONOPOLIES, TRUSTS AND CONSUMER PROTECTION ACT
### N.C. Gen. Stat. Ann. § 75-1.1, *et seq.*
*(On Behalf of Plaintiff Helen Howard and the North Carolina Subclass)*

410.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

411.     The North Carolina Monopolies, Trusts and Consumer Protection Act ("NCMTCPA") states "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."

412.     Defendant violates this statute while engaging in "commerce" as defined by the NCMTCPA. *See* N.C. Gen. Stat. Ann. § 75-1.1(b).

413.     Defendant violates this statute and commits unfair or deceptive acts or practices in the conduct of trade or commerce in this state as alleged herein.

414.     Defendant omitted material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxic materials in its Earth's Best Baby Food products.

415. Defendant intentionally misrepresented the standard, quality, or grade of the Earth's Best Baby Food products and testing procedures for the products through mislabeling and false advertising.

416. Defendant's omissions increased the risk of harm children faced by consuming the Earth's Best Baby Food products.

417. Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

418. Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

419. Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

420. Plaintiffs and the North Carolina Subclass seek relief under the statute including actual damages, treble damages, costs and attorney's fees, injunctive relief, and any other relief the Court deems necessary and proper.

**COUNT XXII**
**VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND**
**CONSUMER PROTECTION LAW**
**73 Pa. Cons. Stat. Ann. §§ 201-1 *et seq.***
**(On Behalf of Plaintiff Tanya Motsay and the Pennsylvania Subclass)**

421. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

422. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL") declares "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . unlawful."

423.     Under the PUTPCPL, "unfair methods of competition" and "unfair or deceptive acts or practices" include, (i) "[c]ausing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;" (ii) "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;" (iii) "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;" or (iv) "[a]dvertising goods or services with intent not to sell them as advertised[.]"

424.     Defendant violates this statute and commits unfair or deceptive acts or practices in the conduct of trade or commerce as alleged herein.

425.     Defendant omitted material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxic materials in its Earth's Best Baby Food products.

426.     Defendant intentionally misrepresented the standard, quality, or grade of the Earth's Best Baby Food products and testing procedures for the products through mislabeling and false advertising.

427.     The omitted information regarding the grade, quality, testing procedures, presence of Toxic Heavy Metals and/or other toxins, and safety of baby food products is material information consumers relied on when deciding to purchase Defendant's products.

428.     Defendant's omissions increased the risk of harm children faced by consuming the Earth's Best Baby Food products.

429.     Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

430.     Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

431.     Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

432.     Plaintiffs and the Pennsylvania Subclass seek relief under the statute including the greater of actual damages or $100, costs and attorney's fees, and any other relief the Court deems necessary and proper.

## COUNT XXIII
## VIOLATION OF THE RHODE ISLAND UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT
### R.I. GEN. LAWS ANN. §§ 6-13.1-1, *et seq.*
### *(On Behalf of Plaintiff Amanda Roman and the Rhode Island Subclass)*

433.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

434.     The Rhode Island Unfair Trade Practices and Consumer Protection Act ("RIUTPCPA") states "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful."

435.     Defendant engages in "unfair methods of competition and unfair or deceptive acts or practices" as defined by the RIUTPCPA. *See* R.I. Gen. Laws Ann. § 6-13.1-1(6) (ii), (iv), (v), (vii), (xii), (xiii).

436.     Defendant violates this statute in the conduct of "trade or commerce" as defined by the RIUTPCPA. *See* R.I. Gen. Laws Ann. § 6-13.1-1(5)

437.     Defendant violates this statute and commits unfair or deceptive acts or practices in the conduct of trade or commerce as alleged herein.

438.    Defendant omitted material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxic materials in its Earth's Best Baby Food products.

439.    Defendant intentionally misrepresented the standard, quality, or grade of the Earth's Best Baby Food products and testing procedures for the products through mislabeling and false advertising.

440.    The omitted information regarding the grade, quality, testing procedures, presence of Toxic Heavy Metals and/or other toxins, and safety of baby food products is material information consumers relied on when deciding to purchase Defendant's products.

441.    Defendant's omissions increased the risk of harm children faced by consuming the Earth's Best Baby Food products.

442.    Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

443.    Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

444.    Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

445.    Plaintiffs and the Rhode Island Subclass seek relief under the statute including the greater of actual damages or $500, treble damages, injunctive relief, costs and attorney's fees, and any other relief the Court deems necessary and proper.

## COUNT XXIV
## VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT
### Va. Code Ann. § 59.1-196, *et seq.*
#### *(On Behalf of Plaintiffs Stephanie Weimer, Simone Craig, and the Virginia Subclass)*

446. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

447. The Virginia Consumer Protection Act ("VCPA") declares several "fraudulent acts or practices committed by a supplier in connection with a consumer transaction . . . unlawful," including (i) "[m]isrepresenting the source, sponsorship, approval, or certification of goods or services;" (ii) "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits;" (iii) "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model;" (iv) "[a]dvertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised;" or (v) "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction."

448. Defendant is a "supplier," as defined by the VCPA. *See* Va. Code Ann. § 59.1-198.

449. Defendant engaged in a "consumer transaction" with Plaintiffs and the Class members, as defined by the VCPA. *See* § 59.1-198.

450. Defendant violates this statute and commits unfair or deceptive acts or practices in the conduct of trade or commerce, as alleged herein, including, by omitting material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxins in Hain Baby Food products.

451. Defendant intentionally misrepresented the standard, quality, or grade of the Earth's Best Baby Food products and testing procedures for the products through mislabeling and false advertising.

452.     The omitted information regarding the grade, quality, testing procedures, presence of Toxic Heavy Metals and/or other toxins, and safety of baby food products is material information consumers relied on when deciding to purchase Defendant's products.

453.     Defendant's omissions increased the risk of harm children faced by consuming the Earth's Best Baby food products.

454.     Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

455.     Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

456.     Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

457.     Plaintiffs and the Virginia Subclass seek relief under the statute including the greater of actual damages or $500, damages not exceeding three times actual damages or $1,000 for a willful violation, costs and attorney's fees, and any other relief the Court deems necessary and proper.

## COUNT XXV
### VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT
#### Wash. Rev. Code Ann. §§ 19.86.010, *et seq.*
#### *(On Behalf of Plaintiff Monica Hazelwood and the Washington Subclass)*

458.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

459.     The Washington Consumer Protection Act ("WCPA") states "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

460. Defendant engaged in "trade or commerce" as defined by the WCPA. *See* Wash. Rev. Code Ann. § 19.86.010(2).

461. Defendant violates this statute and commits unfair or deceptive acts or practices in the conduct of trade or commerce, as alleged herein, including, by omitting material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxins in Hain Baby Food products.

462. Defendant intentionally misrepresented the standard, quality, or grade of the Earth's Best Baby Food products and testing procedures for the products through mislabeling and false advertising.

463. The omitted information regarding the grade, quality, testing procedures, presence of Toxic Heavy Metals and/or other toxins, and safety of baby food products is material information consumers relied on when deciding to purchase Defendant's products.

464. Defendant's omissions increased the risk of harm children faced by consuming the Earth's Best Baby Food products.

465. Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

466. Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

467. Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

468.     Plaintiffs and the Washington Subclass seek relief under the statute including actual damages or treble damages, injunctive relief, costs and attorney's fees, and any other relief the Court deems necessary and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the proposed Class and Subclasses, pray for relief and judgment against Defendant as follows:

a.     An order declaring this action to be a proper class action, appointing Plaintiffs and their counsel to represent the Class, and requiring Defendant to bear the costs of class notice;

b.     An order enjoining Defendant from selling the Baby Foods until the levels of Toxic Heavy Metals and/or other toxins are removed or reduced and/or full disclosure of the presence of such prominently appears on all packaging;

c.     An order requiring Defendant to establish sourcing and control protocols, consult with an independent auditor, and conduct compliance testing.

d.     An order enjoining Defendant from selling its Baby Foods in any manner suggesting or implying that they are healthy, nutritious, and safe for consumption;

e.     An order requiring Defendant to engage in a corrective advertising campaign and to engage in any further necessary affirmative injunctive relief, such as recalling existing products;

f.     An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

g.      An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of law, plus pre- and post-judgment interest thereon;

h.      An order requiring Defendant to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

i.      Awarding Plaintiffs and the Class compensatory damages, in an amount exceeding $5,000,000, to be determined by proof;

j.      Awarding Plaintiffs and the Class appropriate relief, including actual and statutory damages;

k.      For punitive damages;

l.      Awarding Plaintiffs and the Class the costs of prosecuting this action, including expert witness fees;

m.      Awarding Plaintiffs and the Class reasonable attorneys' fees and costs as allowable by law;

n.      Awarding pre-judgment and post-judgment interest; and

o.      Granting any other relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues so triable.


DATED:  March 18, 2022           Respectfully submitted,

*/s/ Michael P. Canty*
**LABATON SUCHAROW LLP**
Michael P. Canty
Carol Villegas
Melissa H. Nafash

140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
mcanty@labaton.com
cvillegas@labaton.com
mnafash@labaton.com

*Appointed Interim Counsel for Plaintiffs and the Proposed Class*

[see next page for Additional Counsel]

| | |
|---|---|
| Rosemary M. Rivas (*pro hac vice*)<br>Mark Troutman (*pro hac vice*)<br>Rosanne L. Mah (*pro hac vice*)<br>**GIBBS LAW GROUP LLP**<br>505 14th Street, Suite 110<br>Oakland, California 94612<br>Telephone: (510) 350-9700<br>Facsimile: (510) 350-9701<br>rmr@classlawgroup.com<br>RLM@classlawgroup.com<br>mht@classlawgroup.com<br><br>*Additional Counsel for Plaintiff Myjorie Philippe* | Christopher K. Leung<br>Alison Borochoff-Porte<br>**POLLOCK COHEN LLP**<br>60 Broad Street, 24th Floor<br>New York, NY 10004<br>Telephone: (212) 337-5361<br>chris@pollockcohen.com<br>alison@pollockcohen.com<br><br>*Additional Counsel for Plaintiffs Jessie McNaughton, Helen Howard, and Cassie Isza* |
| Janine Pollack<br>**CALCATERRA POLLACK LLP**<br>1140 Avenue of the Americas, 9th Floor<br>New York, NY10036<br>Telephone: (212) 899-1765<br>Facsimile: (332) 206-2073<br>jpollack@calcaterrapollack.com<br><br>Lori G. Feldman<br>**GEORGE GESTEN MCDONALD, PLLC**<br>102 Half Moon Bay Drive<br>Croton-on-Hudson, NY 10520<br>Telephone: (833) 346-3587<br>lfeldman@4-justice.com<br><br>*Additional Counsel for Plaintiffs Lisa Gans and Zeynep Senturk Mannix* | Courtney E. Maccarone<br>Mark Reich<br>**LEVI & KORSINSKY LLP**<br>55 Broadway, 10th Floor<br>New York, NY 10006<br>Tel.: (212) 363-7500<br>Fax: (212) 363-7171<br>cmaccarone@zlk.com<br>mreich@zlk.com<br><br>*Additional Counsel for Plaintiffs Shahalis Wilson and Jade Huguenot* |