FILED
CLERK
6/30/2022 11:05 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
: 21-cv-00678(JS)(AYS)

IN RE:

HAIN CELESTIAL HEAVY METALS BABY FOOD LITIGATION

: U.S. Courthouse
: Central Islip, New York

: June 23, 2022
: 11:02 a.m.
------------------------------X

TRANSCRIPT OF CIVIL CAUSE FOR INITIAL CONFERENCE
BEFORE THE HONORABLE ANNE Y. SHIELDS
UNITED STATES MAGISTRATE JUDGE

**A P P E A R A N C E S:**
**(VIA VIDEO/AUDIO)**

**For the Plaintiff:**

**Michael P. Canty, Esq.**
**Melissa H. Nafash, Esq.**
Labaton Sucharow LLP
140 Broadway
New York, NY 10005

**For Defendants:**

**Dean N. Panos, Esq.**
**Alexander Smith, Esq.**
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654

**Transcription Service:**

**Transcriptions Plus II, Inc.**
61 Beatrice Avenue
West Islip, New York 11795
RL.Transcriptions2@gmail.com

Proceedings recorded by electronic sound-recording, transcript produced by transcription service

THE CLERK: CV-678, In re Hain Celestial Heavy Metals Baby Food Litigation. Please state your appearances for the record.

MR. CANTY: Good morning, your Honor. On behalf of the named plaintiffs and the proposed classes, Michael Canty from Labaton Sucharow. I'm joined on the call as well by my colleague Melissa Nafash. Good morning.

THE COURT: Good morning.

MS. NAFASH: Good morning.

MR. PANOS: Good morning, your Honor. On behalf of the defendant, Hain Celestial Group, this is Dean Panos and Alex Smith of Jenner & Block.

THE COURT: Good morning. So any other lawyers on the phone? Oh good. Okay.

So I know you've got two people on, so just one person speaks from each side. And just identify yourself because it's easy to forget you're on the phone and I can't see you. So just identify yourself before you speak.

So this is your initial conference. I do have your letter that was submitted on June 17th. It's helpful in some ways but not helpful in many others. You didn't submit my joint letter but we'll go through what you did submit and we'll try to move this forward.

I do know, before I say anything else, that you've got a letter request pending with Judge Seybert. Is that still pending? Has anybody heard from her chambers?

MR. PANOS: I believe that still pending, your Honor. This is Dean Panos on behalf of the defendant.

THE COURT: Okay. So we're going to move forward because our rules are that we move forward with discovery and we don't let that hold things up. So I know that the next sort of big step would be a motion for class certification, so we're going to move forward with that in mind.

But a general thing first. You talk in your letter about confidentiality and I think the defendants say they have asked for the ability to designate certain items as highly confidential. I think that makes sense in a case like this and I have no problem with it. What I would like the parties to do is to confer. You can use my confidentiality order as sort of a backdrop to what you draft and insert this other level and then come up with an agreed-upon confidentiality order to be used in this case. Talk about it to each other. It should be simple. Get that on the docket for me within a week. And if the only thing that's different is the addition of highly confidential designation (indiscernible) that, so

that won't stand in the way of moving forward. So that takes care of that.

You talked about tier 1 discovery and this is where I think the joint letter would have been helpful because it requires you to get a little bit more particular but let's move forward with that anyway. And we're going to talk about the types of documents that can be exchanged without formal requests that can move the case forward. I see in the letter that you have certain documents that Hain has agreed to produce and it talks about sales data, product labels, product formulations, ingredients sets, marking material, and things in other, depending on the repository. Have you talked about what the -- have the parties talked about what that means in particular? Whether there are any time frames. Do I need to get involved in that or do you all know what you're talking about when you talk about these types of general documents. I'll ask the plaintiff.

MR. CANTY: Your Honor, we have had discussions. I think the disagreement was on the timing of the disclosure of those documents. I don't suspect we're going to have an objection as to what constitutes what those documents are. Certainly I believe we've had productive meet and confers and the real hiccup here is the timing. Obviously all we know that they've agreed to

turn over is what's in the letter. But the concern that we have is the 60-day, they want to wait 60 days until they turn of any of those and obviously that was an outlier date. We'd like to get that sooner. We'd like to get that by the end of June.

THE COURT: Okay. So what I'd like to do is sort of add to that category of documents. The documents can be produced on a rolling basis. And I'm going to give you a little bit more time. I'll give you to August 17th to produce tier 1 documents. And again, we're not talking about experts yet. I'm going to talk about that separately. But I think you ought to also include in those tier 1 documents documents that relate to the communications with the house committee that's referred to in amended complaint.

Plaintiff, is that the kind of documents that you would normally ask for in this case?

MR. CANTY: Certainly. Yes, your Honor.

THE COURT: So let's get that going.

MR. CANTY: This is Michael Canty, by the way.

THE COURT: Right. So once you have a confidentiality order in place, I think that's something we should get going. And as I said, I'll give you more time. But I'm going to require the defendants to also produce documents relating to communications with the

house committee that's referred to in the complaint.

I also think it's fair for the plaintiff to have some responsibility with respect to tier 1 document production as well. And the first thing I see that the plaintiff should produce to the other side, again this will be by August 17th, are documents showing the named plaintiffs' purchases of the items that are at issue here. I think each plaintiff avers in the amended complaint that they're purchasers of these. The documents that these plaintiffs have showing that they are indeed purchasers. Produce that to the other side.

The other thing that I want the plaintiffs to produce to the other side are HIPAA authorizations for the children and also documents showing any early intervention required by the children. And I think that's relevant to the case because I believe that the plaintiffs are alleging that exposure to these metals would have an effect on the children. Plaintiff, is that your allegation?

MR. CANTY: Well certainly we're not alleging injuries here, your Honor. This is essentially a false advertising, misbranding, and deceptive practices allegation. I think the evidence is clear, the scientific evidence is clear, that no levels of mercury, for example, are healthy for children. They're dangerous

or children. Or levels of lead, cadmium, arsenic. But we are specifically not alleging injuries. And in fact, Judge Seybert was very clear on her original order that any claims for personal injury should not be consolidated under this case, under this docket.

THE COURT: So part of what's consolidated, there's no allegation of any injury to any --

MR. CANTY: Children.

THE COURT: -- any minors. Is that right?

MR. CANTY: There are no claims of personal injury.

THE COURT: Let me ask the defendants --

MR. PANOS: Your Honor, this --

THE COURT: Can I ask the defendants to weigh in on that?

MR. PANOS: Yes, your Honor. Dean Panos.

They do not make a claim for monetary damages associated with any injury to any of the plaintiffs. However, I think as your Honor gleaned from the complaint, they are essentially alleging that the consumption of products that contain some amounts of heavy metals, or any amounts of heavy metals, it's not clear yet, add risk of injury to them which is why they're claiming that the label claims are material to them.

So I do think it is logical and relevant to include those disclosures, as your Honor indicated. How far they go with that, whether they ultimately decide or concede that no one has been injured or risked any injury, that's up to the plaintiffs. But the way the case is positioned, it is clear that what they're saying is that these products are dangerous and they're seeking injunctive relief. And we have the right explore that I believe, your Honor.

THE COURT: That's what --

MR. CANTY: Your Honor, this is --

THE COURT: I mean is that, what the plaintiffs say, is that truly a matter for their experts and not a matter of individual injury?

MR. CANTY: Your Honor, this is Michael Canty for the plaintiffs. That's correct. We're alleging that generally these are not -- no levels are safe for children and we believe we can demonstrate that through expert testimony. But more importantly that the allegations here are that this information was material to the purchase price and whether or not the plaintiffs named in the complaint would have purchased the items at all. I don't believe that any allegation that we have in any of the counts requires us to prove an injury to a child and therefore wouldn't be relevant. We could

materiality through an expert.

THE COURT: You would argue that HIPAA authorizations for the children not necessary?

MR. CANTY: Not necessary, not relevant. That's right.

THE COURT: Okay. All right. I'm going to give that matter a little bit more thought and I won't order that now.

Let me ask the defendant what would you ask for the individual plaintiffs to produce as part of tier 1 discovery other than experts because it seems a little one-sided that you're producing things and they're not. Or is it just experts? I'll ask you that.

MR. PANOS: This is Dean Panos, your Honor. Yes, unfortunately for the defendant, the discovery is primarily one-sided in these cases and all the burden really is on the defendant.

You know, I do believe that your Honor's suggestion of producing information related to their allegation that they purchased this product would be relevant as well as information related to other baby food products that they may have purchased given that they're claiming that they would not have bought these but for some other marketing or labeling that they suggest. So I think initially for tier 1 I think what

your Honor was proposing with one amendment that maybe would also include the addition of any other food that they purchase for their children because that goes to the materiality of their argument and the relevancy of their argument as to what they would have otherwise done.

THE COURT: I think that's right because I think the argument is we're spending more, we're particularly buying this organic product and we would not buy something else.

MR. PANOS: Correct, your Honor.

THE COURT: Okay.

MR. CANTY: Your Honor, the concern the plaintiffs have with that production is, as you're aware, there are a number of other cases where baby food companies were not disclosing the presence of heavy metals. So we're going to be getting into a situation where if we propound the defendant's argument out, they're going to say well, their argument that they otherwise wouldn't have purchased this because if they had known, but they purchased all these other products, the allegations there that the consumers didn't know about it as well. They didn't know about --

THE COURT: Yes, but the advertising claim is that you're paying more because of the advertising of it as organic whereas the others are not advertised that

way. And I understand you're saying it's false advertising but I think what you're saying is your client is paying more and buying their products which advertises somehow organic and safer and better for the child. So a consumer would buy that and not by, you know, the Target brand if there's such a thing. So I'm going to order that the plaintiffs produce any documents that they have showing their purchase of the items in the complaint and other baby food items. And then you can figure that out when you depose people what the reasons are.

MR. CANTY: Your Honor, may I suggest we --

THE COURT: I'm sorry, you have to say who's talking,

MR. CANTY: I'm sorry. I apologize. Michael Canty for the plaintiffs.

THE COURT: Okay.

MR. CANTY: I understand the Court's order. May I suggest we have a meet and confer with the defendants to discuss the breadth of that? I mean when we talk about --

THE COURT: You know what? That's a great idea. And that's why I require the joint letter which you didn't do. So I'm trying to play catch up and holding that now but yes, with that on the table have a meet and confer and you can figure it out. Okay?

MR. CANTY: Thank you, your Honor.

THE COURT: Because you know the case better than I do. So yes, talk about that and talk about what makes sense.

Let's talk about -- in your letter you talked about expert discovery and class experts versus merits experts and I think it was defendants who said plaintiff can disclose their class experts when they make their motion for class certification. Is that what the defendants said?

MR. PANOS: Yes, your Honor. This is Dean Panos on behalf of the defendant. Our view is one that is traditionally done in these cases. We do a lot of these sorts of cases where the parties produce their expert reports and disclosures in connection with the contested class certification motion. So you know, it's certainly been our experience and the practice in federal courts all over the country that what plaintiffs do, and usually without any objection, is that when they file their motion for class certification, they produce expert reports of any of those experts they're using to support their motion. We take the expert discovery at that time because it's then it's in the context of the actual motion and not in isolation because there's a contested hearing and a contested motion. And then the defendants

produce their experts, if any, in their opposition to class certification. It doesn't make sense in our judgment to have expert reports just thrown out there without the context in which they're going to be used in the class certification motion. So that is typically in our experience the way courts have handled it and typically without -- usually by agreement, your Honor.

THE COURT: Let me ask you this. So they put in their motion for class cert and then you do discovery of the experts after they make a motion?

MR. PANOS: Yes, your Honor. In fact, many courts hold an evidentiary hearing with respect to those, the class certification motion and the expert support for those things. And so --

THE COURT: Yes. I agree that you're definitely going to want to depose the experts and get into that. I guess we don't have a lot of that but it just seems weird that you're doing the motion and then doing the discovery.

MR. PANOS: Well because, your Honor, you know, what you find out in these cases often times is that the allegations in the motion don't really necessarily match the evidence candidly. And so, you know, when they take a position in their motion, that is their support, their argument in support of class certification and it should

all be in one package. At that point in the proceeding you're not litigating the merits of the case.

THE COURT: No, I get that. I know you're not doing the merits, but there's class-based experts. So let me ask the plaintiff, how do you want to do it?

MR. CANTY: Your Honor, this is Michael Canty for the class. I would just -- first of all, I understand Mr. Panos's position that it's done the way he's describing it but it's certainly been done the way we requested. And in fact, in the *Plum* case Judge Gonzalez Rogers has set up that dual step for the plaintiff regarding class certification and then the defendant's expert disclosures regarding class certification. Then we have expert depositions on those classification experts and then motions for class certification are filed. Then there are other --

THE COURT: Right.

MR. CANTY: If there are other experts, that's handled after the class certification order. What the defendants --

THE COURT: Right. And the other experts are merits experts.

MR. CANTY: Correct. And what the defendants are suggesting is that we do it all after the fact.

THE COURT: No, I think the defendants are

saying that you make the motion and then you take the discovery.

MR. PANOS: Correct, your Honor, because --

THE COURT: Then what we're stuck with as the Court is a pending motion for class certification which can't be decided because you need discovery which I take your word there's some that just might do it that way. I think that the class cert stage of it should come before the merits phase of it. I agree with that. I think our only issue is do we do discovery before we make the motion? And what I think I will order is that it be done the plaintiff's way when the discovery comes first. So the plaintiffs -- and again, you talk to each other about dates because I don't want to -- I'll give you an outside date. But the plaintiffs will disclose to the defendants their class cert expert. And then do it like you do regular expert discovery in a case where you've got expert depositions and the defendants submit their expert reports and then they do expert depositions. And then when all the class expert discovery is over, then you can make the motion. That's how we'll do it here.

So I'm going to give you an outside date to finish class expert discovery. And we'll have that outside date of all of this by October 10th. And then on October 14th a letter to -- it'll go to Judge Seybert by

the way because class cert motions are for the district judge. A letter to her saying we've completed class expert discovery. Here is our proposed briefing schedule for class cert motions.

MR. PANOS: Your Honor, can I be heard on that schedule? This is Dean Panos.

THE COURT: On the outside date or the way in which we're doing it?

MR. PANOS: Well, you know, you've already made the decision --

THE COURT: Because I'm not talking about the way that we're doing it anymore. If you want to be heard on the dates --

MR. PANOS: Yeah. No, I wasn't going back. I wasn't going to retread, your Honor.

THE COURT: Okay, okay.

MR. PANOS: When you say the outside date, you're saying the complete -- I mean here's the concern is this is a huge critical piece of the litigation. Even if this case survives a motion to dismiss, and at least one federal Court New Jersey has dismissed the identical case --

THE COURT: Right.

MR. PANOS: -- and other courts have not, so this is I would say a horse race to be honest with you --

THE COURT: Right.

MR. PANOS: -- but we are probably, because it's such a substantive and difficult area, we are not likely I don't suspect to be completed with the briefing on the motion to dismiss for quite a while. This class cert discovery is unbelievably expensive because the experts are unbelievably expensive. When plaintiffs have to -- will probably have three to four different types of experts of which then we would have to determine what experts we would get in response because that's what this is about. This isn't the merits of the case. So we would only be, the defendants would only be retaining experts in response to whoever plaintiffs are using to support their class motion. Sometimes plaintiffs show up with four or five, six experts. Sometimes they show up with one. We won't know that --

THE COURT: That's why they go first.

MR. PANOS: That's why they go first. But your Honor, once they go first, then we are in the mode of having to retain experts to respond to those and prepare them and take depositions. So that is a very long process for both parties. So I'm looking at October 10th and I'm saying I'm not even sure we would be done with any of the factual basis discovery for the class certification at that point let alone be involved in

retaining, deposing Rule 26 huge expert reports. I mean this is a, candidly your Honor, this is a process that most courts set these things to just the class certification period to take six to nine months just in and of itself. So that's why I'm reacting to the October 10th date because I don't see how that's --

THE COURT: That's four months just to do the discovery. You want more time to do discovery?

MR. PANOS: Yeah. I mean first of all, your Honor, I mean we certainly -- given that, you know, a court very close by has already dismissed this case, this identical case, obviously there would be little bit of concern of spending unbelievable amounts of money, which this is, if the case doesn't survive. But we understand we're going to be proceeding with the tier 1 discovery in the next, you know, to meet your Honor's deadline and all the other things. But I suspect, and I assume plaintiffs will probably agree I would think if they've got experience in this field, that the class certification expert discovery is a pretty substantial and a piece of work in phase in the litigation and should take many many months. I don't see how we can get that done by October. I don't see how we can get it done in 2022, your Honor.

THE COURT: So plaintiff, what do you think? Because again --

MR. CANTY: Your Honor, yeah, this is --

THE COURT: -- again, I'm playing a little catch-up here because the letter just says here's what we're going to do and it talks about 30 days and it doesn't really get into the weeds of how many experts you're going to have and how long it's going to take because -- you know, I can't let this -- these cases aren't just going to sit and, you know, with you saying this is so complicated and so expensive. So it's expensive for the plaintiffs to start with. So you know, something's got to move along here.

And I get that you've got a motion to dismiss. If I could help you with that I would, but I can't. I'm required to move forward with discovery in a meaningful way.

MR. CANTY: Your Honor, this is Michael Canty for the plaintiff's. And I guess in an effort to be productive, I certainly hear and appreciate the defendant's concerns. And the concern that the plaintiffs have, and I think that this would provide some clarity, is where we are on fact discovery moving forward. You know, we've asked for fact discovery to move forward in earnest. And I certainly appreciate the defendant's position that the October 10th date is fairly aggressive. We're now at the end of June. So we have

July, August, and September essentially. But I also appreciate the Court's concern. We are anxious to move the case along as well. But I think that the October 10th date, in light of the fact that we will have just completed fact discovery hopefully, if we can agree on dates for fact discovery, I certainly wouldn't object to pushing that date out a little bit. But I'm mindful of the Court's position that we want to move the case along. We're anxious to move the case along as well.

THE COURT: What do you want to do -- and maybe this back and forth isn't really helpful. Let's do this. You know where I stand on the order of class experts, that the discovery goes forward before the motion. So that, we've ruled that. We've ruled on the confidentiality order. That's done. I need you I think to confer with a little more specificity on fact discovery and class cert motions. Right? Because maybe I'm getting it backwards and fact discovery is no big deal and you can finish that in three months. I don't know. But the reason I don't know is because your joint letter isn't really helpful to me.

MR. PANOS: Your Honor, Dean Panos on behalf of the defendants. I think that makes sense to have a meet and confer again and maybe propose to your Honor -- we did I think jointly agree that we thought that we could

complete fact discovery nine months following an answer being filed assuming the motion --

THE COURT: That's the problem, that's the problem. We can't do nothing until the answer. We cannot do that here

MR. PANOS: Well we are, well your Honor, we are --

THE COURT: No, you don't have to --

MR. PANOS: -- as your Honor's ordered.

THE COURT: -- until after the motion to dismiss. But I move discovery, and so does Judge Seybert, in any event. So I can't hold it up. Then it could be like a year and nothing happens. I can't have that.

MR. PANOS: Yes, your Honor. But the reason why I'm suggesting that is a couple of reasons. Number one is, you know, again because of all the -- the discovery is all one-sided, it's easy for one side to say oh let's move it along when they're the ones that are going to propound 70 document requests and only have one coming back at them.

THE COURT: So that's why I wanted you to talk about voluntary exchange without requests, and that's why to make it a little bit more even if you move forward with class, that's an expense and a burden on the

plaintiff.

MR. PANOS: Correct, your Honor.

THE COURT: (Indiscernible).

MR. PANOS: Yes. And your Honor, I would say that, you know, the reason why the motion to dismiss is -- and we are proceeding. We agree some of the very core documents in this case will be produced pursuant to your Honor's order on August 17th. And I suspect we won't have a ruling on the motion to dismiss by then. But the motion to dismiss ruling informs everything that goes forward including experts because certain label claims may come out, their omission theory may come out. So you know, what remains in the case informs the scope of the discovery, informs the scope of the experts. So that is why I think both parties have a mutual interest in at least staging it a little bit.

But your suggestion, your Honor, that the parties meet and confer, maybe we can present a more -- in light of your Honor's ruling of the tier 1 discovery, in light of your Honor's ruling on the scheduling of how we're going to do the class certification expert discovery, it may make sense for us to maybe sharpen our pencils, come back to your Honor with, if we can get to an agreed schedule that would allow for how long to complete fact discovery and maybe some proposed dates for

the class certification briefing.

THE COURT: And more than dates, right? So you know, a real discussion as to what it is we're talking about. What in particular are the documents? Because the whole point of voluntary exchange is to avoid 70 document requests and 80 interrogatories. Right? The whole point of that is to sit down and say this is what we are interested in and this is the time frame and let's get that done. So you know, I'm all for you conferring, talking about it, and getting back to me. But I really want it to be with specificity and no, you know, nine months after XYZ happens. Just we are going to produce these things in this form by this date and move forward. You know, I get that you need more time, but I need specificity as to what's going to happen. Because then what ultimately will happen is the case becomes four years old and somebody's looking at the magistrate saying how come nothing's happened?

MR. PANOS: Well your Honor, Dean Panos --

MR. CANTY: Your Honor --

THE COURT: (Indiscernible) if I was the district judge, but I'm not.

MR. PANOS: Your Honor, Dean Panos.

MR. CANTY: Your Honor --

MR. PANOS: So we agree with that. I guess I

think we can work that out. I will say that I think even plaintiffs understand that the tier 1 discovery that defendants are offering to produce right away really are the core types of documents in these cases. So I think we've been specific and we'll continue to try to be even more specific if your Honor needs that. But I do --

THE COURT: And would you agree to including documents with respect to the house report that's referred to in the complaint?

MR. PANOS: My understanding is your Honor has already ordered that, so the answer is yes.

THE COURT: Yes.

MR. CANTY: Your Honor, this is --

THE COURT: That's the kind of real document exchange --

MR. PANOS: Well I don't know that that actually is, your Honor, to be candid, but I mean it's no big deal. We're happy to do it.

THE COURT: Right. Right. Okay.

MR. CANTY: Your Honor, Michael Canty for the plaintiffs. Just to clarify a few things. I Mr. Panos misspoke when he said October. The rolling discovery be by August. Or maybe I misheard.

MR. PANOS: I didn't say October. I'm sorry, if I said October obviously I --

MR. CANTY: No, you might not have said that. I might have misheard you.

THE COURT: Hold on. I did say August 17th but I'm going to give you a chance to go back. I'm not going to do a date now because I think you have to talk and talk about what the scope of this exchange is and then come up with a reasonable date. Okay? So I'm not going to order dates right now. I'm only going to order that it's okay to come up with a confidentiality order. And we haven't even talked about ESI. So as far as ESI, get the search terms there because your letter has that Hain would provide a list of search terms 30 days after the answer. So that's a holdup I don't want to see as well. Okay?

MR. PANOS: We understand, your Honor.

THE COURT: Okay. So talk to each other. Is it fair to ask you to come back with something for me in a week? Or do you think you need more than that?

MR. PANOS: Can we suggest, your Honor, 14 days? This is defendant's position.

MR. CANTY: Your Honor, this is Michael Canty. I apologize. I was dropped from the call so I missed the last 30 seconds. I don't know --

THE COURT: Oh that's too bad because we settled it while you were gone.

MR. CANTY: (Laughing). Wishful thinking.

THE COURT: So what I said was I'm not ordering dates right now and I'm giving you two weeks to come forward with something real particular with not just dates but particular documents that are going to be exchanged. I would like your confidentiality stipulation in one week. I think that can be done. And you're also going to be moving forward with ESI search terms. Talk about that as well. That's not -- that, if nothing else, is going to -- nothing is going outweigh the filing of an answer.

MR. PANOS: Your Honor --

THE COURT: So the theme is moving forward as if that motion to dismiss doesn't exist, but I don't want to make it so that it is so onerous and expensive for anybody. Okay?

MR. CANTY: Yes, your Honor. Michael Canty for the plaintiffs. Just to be clear, we will work with defense counsel. I know that on fact discovery with respect to search terms, that was triggered off an answer and we're mindful of what the Court just said. We will not trigger that off of the answer. We'll make sure that that's done following tier 1, the disclosure of the rolling tier 1 discovery.

THE COURT: Do it at the same time. Think

about it at the same time.

MR. CANTY: Okay.

THE COURT: You don't have to wait. Don't wait.

MR. CANTY: Okay. Yes, your Honor.

THE COURT: You've got a lot of lawyers there. You can do more than one thing at one time.

MR. CANTY: Yes, your Honor.

THE COURT: Okay. All right. So I'm going to do my best to put a clear order on the docket after we hang up. And if you have any questions, let me know when I hear from you in two weeks. But I think you get what the general theme is here. Okay? So thank you for participating and I'll look forward to working together on this.

MR. PANOS: Thank you, your Honor.

MR. CANTY: Thank you, your Honor.

(Matter concluded)

-oOo-

**C E R T I F I C A T E**

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **30th** day of **June**, 2022.

Mary Greco

Transcriptions Plus II, Inc.