Labaton Sucharow

**Michael P. Canty**
Partner
212 907 0863 direct
212 907 0700 main
212 883 7063 fax
mcanty@labaton.com

New York Office
140 Broadway
New York, NY 10005

July 7, 2022

**VIA ECF FILING**
Magistrate Judge Anne Y. Shields
100 Federal Plaza
P.O. Box 840
Central Islip, New York 11722
Courtroom 840

Re: *In re Hain Celestial Heavy Metals Baby Food Litig.*, No. 2:21-cv-00678-JS-AYS (E.D.N.Y)
Joint Letter of the Parties

Dear Judge Shields,

We submit this joint letter pursuant to this Court's June 23, 2022 Order, ECF No. 172. The Parties met and conferred on June 30, 2022, and July 6, 2022 (the "Meet and Confers"), for the limited purpose of discussing the Court's four directives: documents that would be voluntarily exchanged, an ESI schedule, a class certification expert discovery schedule, and the start of discovery. The Parties' positions are as follows:

## I. Documents to be voluntarily exchanged

The Parties agree to the following:

1. Plaintiffs will voluntarily produce receipts from purchases of the Hain products at issue.

2. Defendant will voluntarily produce sales data, product labels, product formulations and ingredient specifications, marketing materials stored in marketing share drives or other central repositories, and all documents provided to the Congressional Investigation and Congressional Report.

3. The Parties agree to complete this voluntary exchange on a rolling basis by August 19, 2022.

The Parties disagree as to whether: (1) Plaintiffs should be required to produce receipts from purchases of baby food products sold by manufacturers other than Hain Celestial; and (2) whether

Plaintiffs should be required to produce HIPAA forms for their children. The Parties' positions are as follows:

Plaintiffs' Position.

Plaintiffs object to the production of receipts for purchases of baby food products sold by manufacturers other than Hain Celestial and HIPAA forms for their children.

**Receipts for Other Baby Foods**. First, as a matter of course, during the Meet and Confers, Defendant did not raise receipts for other baby foods and therefore this issue should be set aside until the parties meet and confer on it. However, should the Court prefer Plaintiffs to outline their position herein, Plaintiffs object to this request because it is irrelevant and unsupported by the case law. Indeed, courts in this District have found that proof of purchase of consumer goods ***that are actually at issue in a case*** are not required. *See Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 536, 539 (E.D.N.Y. 2017) ("[a] requirement that consumers retain receipts for or remember the exact amount paid for sundries in order to bring a cause of action would undermine the ability of consumers to bring small item actions.") ("plaintiff may rely on affidavits for those without a receipt."); *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 66-67 (E.D.N.Y. 2015) ("[b]ecause it is unlikely that consumers will retain receipts for low cost items such as wipes, plaintiff may rely on affidavits for those without receipt"). Although Plaintiffs intend to provide receipts for Hain's Earth's Best Baby Foods to the best of their ability, it is certainly not required. It would be even further inconsistent with the law to require receipts for all other types of baby food purchases. Further, proof of purchase of other baby foods is irrelevant. The "price premium" alleged in the Consolidated Amended Class Action Complaint (the "CAC"), ECF No. 160, is associated with Plaintiffs' perception of Hain Celestial's product, not a one-to-one comparison of Earth's Best Baby Foods against other baby foods. Notably, even if a comparison were helpful in some cases, it would not assist the trier of fact here because all of the major baby food manufacturers are simultaneously being sued under the same or similar allegations.[1]

**HIPAA Authorizations**. Notwithstanding the objections made by Defendant and its disingenuous efforts to have this Court believe HIPAA authorizations relate to Article III standing in this case, the Plaintiffs are parents who purchased Hain's baby food products and the injury in this case is the premium price they paid for Earth's Best Baby Foods given the misrepresentations and omissions made by Hain Celestial – harm to parents alone. *See* CAC ¶¶42, 179, 198, 212, 228, 236, 242, 259, 280, 293, 306, 319, 332, 344, 356, 372, 383, 395, 407, 418, 430, 443, 455, 466. Any discussion on the dangers of Toxic Heavy Metals and/or other toxins are asserted for the sole purpose of demonstrating the materiality of this information to consumers when deciding whether to purchase a product. Plaintiffs need not prove actual "potentially life-altering consequences" in this deceptive trade practices and false advertising action. *See Cooper v. Anheuser-Busch, LLC,* 553 F. Supp. 3d 83, 109

[1] *See In re Nurture Baby Food Litigation*, 1:2021-cv-01217; I*n Re Gerber Products Company Heavy Metals Baby Food Litigation*, 1:21-cv-0269 (E.D.V.A); *Kochar et al., v. Walmart, Inc.,* No. 21-cv-02343-JD (N.D. Cal. Apr. 25, 2022); *In re Plum Baby Food Litig.,* No. 21-CV-913-YGR, (N.D. Cal. Jan. 12, 2022).

(S.D.N.Y. 2021) ("An actual injury claim under [§§] 349 [and 350] typically requires a plaintiff to 'allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase.'"). Since this case does not concern any alleged physical or mental injury, it would be inappropriate for this Court to require HIPAA authorizations, especially from the children who are non-parties. Requiring HIPAA forms, and medical records as a result thereof, would be an invasion of Plaintiffs' children's privacy and would cause an unnecessary delay in this case.[2]

During the consolidation of these cases, it was made clear that this consolidation would focus on only false advertising and other state consumer protection claims. Judge Seybert confirmed this in her consolidation order following Hain's adamant objection that neither product liability or personal injury claims be consolidated in this action. *See* ECF No. 47 ("Hain objects to consolidation of actions asserting product liability claims or personal injury claims") and ("Any and all personal injury and product liability claims for non-economic damages . . . shall not be asserted in the Consolidated Action. Any and all such PI Claims against Hain which arise out of the same or similar facts as alleged in the Consolidated Actions shall be asserted in a separate action.").

Hain Celestial's Position

**Receipts for Other Baby Foods**. In addition to requiring Plaintiffs to produce receipts for their purchases of Hain Celestial's baby food products as part of Tier 1 discovery, this Court should also require Plaintiffs to produce proof of purchases of all baby foods from other manufacturers including receipts, online accounts and loyalty cards. As the Court noted during the initial conference, Plaintiffs' purchases of other baby food products are indisputably relevant to numerous issues in this case—including the materiality of Hain Celestial's alleged misrepresentations and the purported "price premium" associated with those statements. Plaintiffs do not—and cannot—articulate any meaningful burden associated with producing these documents, and this Court should require Plaintiffs to produce them.

**HIPAA Authorizations**. Hain Celestial agrees that this is a false advertising case, rather than a product liability or a personal injury action. Nonetheless, Plaintiffs' claims are premised on their allegation that Hain Celestial's products are mislabeled *because* they contain "Toxic Heavy Metals and/or other toxins known to pose significant dangers to children with potentially life-altering consequences." Consol. Am. Compl. ¶ 3. The medical records of the children who consumed Hain Celestial's baby foods will confirm whether those children actually suffered the "potentially life-altering consequences" allegedly associated with the consumption of those products.

[2] The cases cited by Defendant Hain are not addressed above because *Marshall v. Hyundai Motor Am.*, 334 F.R.D. 36 (S.D.N.Y. 2019) makes no mention of the need for health records or HIPAA authorizations and *Pelman v. McDonald's Corp.*, 272 F.R.D. 82, 93 (S.D.N.Y. 2010), is a case concerning an actual physical injury – childhood obesity – and, therefore, HIPAA forms for the *plaintiffs* were appropriate.

Those medical records are relevant to multiple issues in this case. They bear upon the central question of whether Plaintiffs have suffered an injury-in-fact sufficient to confer them with Article III standing—or, alternatively, whether they have suffered an "actual injury," as required to prevail on their claims under N.Y. G.B.L. §§ 349 and 350. *See generally Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000) ("[A] plaintiff must prove 'actual' injury to recover under the statute . . . ."). Moreover, Plaintiffs' theory of falsity hinges upon their allegation that Hain Celestial misrepresents its products as "healthy" and "nutritious" even though they contain substances "known to pose significant dangers to children." Consol. Am. Compl. ¶ 3. But the development of the health conditions allegedly associated with heavy metals depends on a host of other genetic and environmental factors that make it impossible to draw a causal connection between consumption of Hain Celestial's products and the risk of allegedly "life-altering consequences." *Id.* Indeed, faced with a nearly identical theory of deception (*i.e.*, that a defendant misrepresented its food as healthy), another New York district court denied class certification, holding that "the possibility of a causal link between the consumption of Defendant's products and the development of these medical conditions . . . depends heavily on a range of factors unique to each individual." *Pelman v. McDonald's Corp.*, 272 F.R.D. 82, 93 (S.D.N.Y. 2010). In other words, the health records bear directly on whether Plaintiffs' theory of injury and deception is "susceptible of classwide proof." *Marshall v. Hyundai Motor Am.*, 334 F.R.D. 36, 53 (S.D.N.Y. 2019).

Notably, Plaintiffs do not articulate any meaningful burden associated with providing HIPAA authorizations—particularly in comparison to the hundreds of thousands of dollars their proposed discovery schedule will force Hain Celestial to incur at this early stage in the case before it is even required to answer Plaintiffs' Consolidated Amended Class Action Complaint. And to the extent Plaintiffs are concerned about their personal privacy, the Court has entered a protective order—which, at Hain Celestial's urging, included a "Highly Confidential" designation that Plaintiffs or their children's health care providers are free to utilize. Given the relevance of this information and the minimal burden it would impose on Plaintiffs, this Court should direct Plaintiffs to provide HIPAA authorizations as part of Tier 1 discovery.

## II. Proposed ESI Schedule.

On June 1, 2022, the Parties entered into an ESI Protocol containing blank spaces for deadlines to be completed at a later date.[3] These deadlines remain undetermined.

Plaintiffs' Position

Below, Defendant continues to rehash objections related to its burning desire to have its motion to dismiss heard before any progress is made in this case, in complete disregard to this Court's stated mandate to "move forward with discovery in a meaningful way." *See* ECF No. 174 ("Transcript") at 19. Not only does Defendant ignore this Court, but it breaks its own promise to the Court. *See* Transcript at 22. "[I]t may make sense for us to maybe sharpen our pencils, come back to

[3] Plaintiffs can provide a copy of the ESI Protocol upon the Court's request.

Labaton Sucharow



your Honor with, if we can get to an agreed schedule that would allow for how long to complete fact discovery and maybe some proposed dates for class certification briefing." Instead and despite the Court specifically requesting actual dates[4], for at least eight events, Defendant's either refuse to provide dates or attempt to set the date a number of days after "XYZ" happens. Your Honor could not have been clearer during the hearing. "[W]e can't do nothing until the answer. We cannot do that here." *See* Transcript at 21.

Consistent with the Court's directives, Plaintiffs put forth the below ESI schedule during the meet and confer process, which corresponds to each undetermined deadline in the ESI Protocol:

i. Identification of Responsive Documents: August 1, 2022

ii. Sources: August 1, 2022

iii. Identification of Custodians: August 1, 2022

iv. Search Terms: August 1, 2022

1. Within 7 days of receipt of the proposed search terms

2. Within 7 days of receiving the additional search terms

3. Within 5 days of receipt of the search term hit list

4. Within 5 days of receipt of the originally proposed search terms

Below, despite this Court telling Defendant that the motion to dismiss will not delay Your Honor *or Judge Seybert's* process of moving along discovery, Defendant recites its arguments regarding preemption from its letter requesting a pre-motion conference for a motion to stay and/or dismiss this case, and again mischaracterizes the nature of this action by describing it as an organic misbranding case. *See* ECF No. 163. This Circuit has repeatedly recognized that labels, representing the health and purity of a product, may mislead a consumer into believing that products are free from harmful ingredients. *See, e.g.*, *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 559, 566 (S.D.N.Y. 2016) (denying motion to dismiss where complaint alleged that defendant "falsely, misleadingly, and deceptively labels its products as 'natural,' 'all natural,' 'naturally derived,' 'plant-based,' and/or containing 'no harsh chemicals ever!' when the products contain synthetic and toxic ingredients."). Likewise, Plaintiffs' allegations regarding the "organic" label are included to demonstrate the perception that these phrases lead consumers to believe, not for the truth of the statement asserted. *See* Consol. Am. Compl. ¶101-

[4] *See* Transcript at 23 "So, you know, I'm all for you conferring, talking about it, and getting back to me. But I really want it to be with specificity and no, you know, nine months after XYZ happens. Just we are going to produce these things in this form by this date and move forward. You know, I get that you need more time, but I need specificity as to what's going to happen."

103 ("Defendant's label contains 'Grown without Potentially Harmful Pesticides or Herbicides,' 'No Genetically Engineered Ingredients,' 'Organic,' and 'Pure.' All these statements build consumer trust in the safety of Hain products."). "The relevant inquiry is not whether the statement is literally false. Rather, [w]hat is important in determining whether a statement is misleading is the over-all impression it tends to create on the public." *Leonard v. Abbott Labs., Inc.*, 2012 WL 764199, at *20 (E.D.N.Y. Mar. 5, 2012) (internal quotations and citations omitted).

Defendant also continues to raise the motion to dismiss that was granted in *Kimca v. Sprout Foods, Inc.*, No. 21-12977 (SRC). With respect to the substance of the holding, *Kimca* is an out of circuit decision that is not binding on this Court. To the extent the Court considers it, Plaintiffs respectfully direct the Court to two (2) orders denying motions to dismiss in *In Re Plum Baby Food Litigation* and *Shipra Kochar, et al. v. Walmart, Inc.*, both pending before the United States District Court for the Northern District of California.

In *Plum*, the Court found that "plaintiffs have adequately alleged an injury in fact by alleging that they 'would have not paid [the purchase price or the price premium] had they known that the Baby Foods included levels of Heavy Metals, perchlorate, and/or undesirable toxins or contaminants.'" *See In re Plum Baby Food Litig.*, No. 21-CV-913-YGR, (N.D. Cal. Jan. 12, 2022). Likewise, in *Shipra Kochar* the Court found "[n]amed plaintiffs have Article III standing to sue because they plausibly alleged the economic injury of paying a premium for baby food advertised as healthy when it is said to have contained excessive levels of non-naturally occurring heavy metals." *Shipra Kochar et al., v. Walmart, Inc.*, No. 21-cv-02343-JD (N.D. Cal. Apr. 25, 2022). Moreover, there are several instances where courts in this Circuit have denied motions to dismiss in similar consumer protection and false advertising claims cases. *See e.g. Petrosino v. Stearn's Prod., Inc.*, 2018 WL 1614349 (S.D.N.Y. Mar. 30, 2018); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013); *Ault v. J.M. Smucker Co.*, 2014 WL 1998235 (S.D.N.Y. May 15, 2014).

Like the *Plum* and *Shipra Kochar* plaintiffs, Plaintiffs' here have alleged they would not have purchased the products, would have purchased less of the products, or would have paid less for the products if they had known Hain's products contained any level of toxic heavy metals and/or other toxins. Plaintiffs also alleged that they would be willing to purchase baby foods again in the future if they were certain the foods did not contain toxic heavy metals.

<u>Hain Celestial's Position</u>

Hain Celestial strongly objects to Plaintiffs' proposal that it provide ESI search terms and custodians by August 1. That proposal would effectively require Hain Celestial to complete its document collection and commence its substantive review of custodial documents over two weeks before "Tier 1" discovery concludes—and long before Hain Celestial's answer will be due.

As a practical matter, Hain Celestial cannot make an informed assessment about what custodians, non-custodial sources, and search terms to propose without first collecting documents

from all of those custodians and document sources, loading them into a database, and assessing the volume of documents responsive to those search terms. The up-front costs associated with this undertaking will clearly cost hundreds of thousands of dollars. And even without accounting for the costs of review and production (which are likely to exceed $1 million), simply *hosting* the documents on a database could easily cost Hain Celestial tens of thousands of dollars per month.

Hain Celestial respectfully submits that it is premature to require Hain Celestial to incur this burden and expense before Judge Seybert rules on its forthcoming motion to dismiss, which will determine both whether this case can move forward and which labeling claims (if any) will remain at issue. Notably, another judge in the District of New Jersey faced with a nearly identical lawsuit premised on the alleged presence of heavy metals in baby foods dismissed that case in its entirety, holding that the plaintiffs lacked Article III standing because they could not plausibly allege any physical or economic injury. *See Kimca v. Sprout Foods, Inc.*, No. 21-12977, 2022 WL 1213488 (D.N.J. Apr. 25, 2022). Thus, the question is not simply *when* Hain Celestial should be burdened with enormous discovery costs. Instead, it is *if* Hain Celestial will ever have to litigate this claim at all.

Moreover, even if Judge Seybert did not dismiss Plaintiffs' lawsuit in its entirety, it is entirely possible that she will significantly narrow the case by ruling that certain labeling claims are not actionable, regardless of the amount of heavy metals present in Hain Celestial's products. To take just one example, Hain Celestial intends to argue that the term "organic," which appears on many of the challenged products, is not actionable because the USDA has expressly authorized Hain Celestial to use that term on its products.[5] If Judge Seybert agrees with Hain Celestial and holds that the term "organic" is not actionable, there is no reason to require Hain Celestial to collect documents relating to the use of the term "organic" on the product labeling. It simply does not make sense to require Hain Celestial to begin its custodial document collection and review before knowing *which* labeling claims—if any—will remain at issue.

Despite their disagreement as to the timing of custodial document discovery, the Parties have reached agreement on the technical specifications for their production of ESI, as reflected in the attached ESI protocol. Moreover, Hain Celestial has no objection to Plaintiffs' proposal that Hain Celestial provide an initial list of search terms, that Plaintiffs respond with additional search terms within 7 days, that Hain Celestial provide a hit list within 7 days thereafter, that the Parties meet and confer within 5 days thereafter, and that the Parties make best efforts to reach an agreement on search terms (or agree to seek relief from the Court) within 5 days of their meet-and-confer. But Hain

[5] *See Marentette v. Abbott Labs., Inc.*, 201 F. Supp. 3d 374, 385 (E.D.N.Y. 2016) (holding that such claims are preempted because "[o]nce the federal government, through a USDA-accredited certifying agent, permits a manufacturer to label a product as 'Organic' because it has met that standard, any allegation that the product is not truthfully labeled as such is a challenge to the certifying agent's decision, not the manufacturer's representation"); *Birdsong v. Nurture, Inc.*, 275 F. Supp. 3d 384, 392–95 (E.D.N.Y. 2017) (applying same reasoning in another false advertising lawsuit involving another manufacturer's infant and baby food products labeled as "organic").

Celestial disagrees that it should be forced to identify custodians and responsive documents and provide its initial list of search terms by August 1, 2022.

## III. Proposed Class Certification Discovery Schedule.

The Parties met and conferred regarding dates for class expert discovery.

Plaintiffs' Position

Consistent with this Court's directive, Plaintiffs propose specific dates for the Court's consideration.

During the Meet and Confers, Defendant refused to discuss specific dates and maintained that class certification discovery should not commence until after a decision on the motion to dismiss,[6] even though this Court squarely rejected these arguments during the June 23 conference. *See* Transcript at "[y]ou know where I stand on the order of class experts, that the discovery goes forward before the motion [to dismiss]." Additionally, as the Court explained, "we can't do nothing until the answer. We cannot do that here." *See id.* Despite these clear instructions, Defendant has spent its time arguing for two-and-a-half pages why it should not be required to provide dates.

In accordance with this Court's directive to provide "a proposed schedule, with dates certain, for class expert discovery," Plaintiffs proposed schedule is as follows:

| Event | Proposed Deadline |
|---|---|
| Plaintiffs' expert disclosures regarding class certification | November 10, 2022 |
| Defendant's expert disclosures regarding class certification | January 6, 2023 |
| Expert depositions and Class Certification Expert Discovery Cutoff | February 17, 2023 |

Pursuant to this Court's order, Plaintiffs further provide the number of experts they expect to retain for class certification. Plaintiffs expect to retain up to three (3) experts for this purpose.

Hain Celestial's Position

[6] Plaintiffs provided Defendant with an opportunity to propose its preferred dates. In a July 1, 2022 correspondence, Plaintiffs provided Defendant with their proposed schedule for Tier I discovery, Tier II discovery, and expert discovery for class certification in advance of the July 6, 2022 Meet and Confer. During the Meet and Confer, Plaintiffs asked if Defendant would like to discuss the proposed dates or discuss different dates. In both instances, with the exception of Tier I discovery, Defendant refused to provide or agree to a schedule.

Hain Celestial strongly objects to Plaintiffs' proposal that the parties complete all class certification discovery—including custodial document production and expert discovery—before Judge Seybert has ruled on the motion to dismiss. Given the very real possibility that Judge Seybert will dismiss some or all of Plaintiffs' claims (as the District of New Jersey did in *Kimca*), as well as the severe and disproportionate burden that Plaintiffs' proposed schedule will impose, Hain Celestial respectfully submits that the Court should set a schedule to complete Tier 1 discovery by August 19 and defer setting deadlines for further class certification discovery until a later date.

To be clear, Hain Celestial remains committed to producing all "Tier 1" discovery—including sales data, label proofs, formulations, ingredient specifications, and marketing materials for the products at issue, documents it provided to the House Subcommittee on Economic and Consumer Policy, and other relevant documents available from readily accessible non-custodial sources such as marketing share drives—by August 19, 2022. Hain Celestial also acknowledges the Court's preference to complete class certification-related expert discovery prior to the filing of Plaintiffs' motion for class certification and has no objection to doing so at an appropriate time. But there is no urgency that requires Hain Celestial to engage in and complete expensive and burdensome class certification discovery before Judge Seybert determines that Plaintiffs have stated a plausible claim. (Nor can Plaintiffs claim any such urgency, given that they took until March 18, 2022 to file a consolidated amended complaint after being appointed as interim lead counsel on December 28, 2021.)

Importantly, the Tier 1 discovery Hain Celestial has agreed to provide will provide most (if not all) of the information Plaintiffs need to move for class certification. The Second Circuit has made clear that "[t]he primary evidence in a consumer-fraud case arising out of allegedly false advertising is, of course, the advertising itself." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013). Here, Hain Celestial will produce all of the challenged advertising—including the labeling proofs for the products Plaintiffs allegedly purchased, as well as print and multimedia advertising for those products—as part of Tier 1 discovery. Hain Celestial will also produce all of the documents—including product formulations, ingredient specifications, and the testing data it provided to the House Subcommittee—necessary for Plaintiffs to ascertain whether the products contained naturally-occurring heavy metals and the amount of naturally-occurring heavy metals they contained. Because Plaintiffs' lawsuit is premised on the theory that the presence of heavy metals rendered the labeling claims on Hain Celestial's products false and misleading, the documents Hain Celestial has offered to provide as part of Tier 1 discovery—including both the labels that include the challenged labeling claims and the documents reflecting the amount of naturally-occurring heavy metals those products contain. That production should be more than adequate for the time being.

Moreover, requiring Hain Celestial to conduct burdensome and expensive class certification discovery—including custodial document review and production, depositions, and expert discovery—is "not proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In false advertising class actions of this nature, the cost of expert discovery alone frequently exceeds a million dollars. This case is no exception, as Hain Celestial will need to retain—at a minimum—three subject-matter experts to address the three experts Plaintiffs intend to offer. Similarly, deposition discovery will force

Hain Celestial to spend hundreds of thousands of dollars preparing its employees and defending their depositions. And custodial document discovery (including the process of negotiating search terms and custodians, loading documents into a database, reviewing those documents, and producing them) will cost hundreds of thousands—if not millions—of dollars.

These burdens will not be borne equally by the parties. To the contrary, discovery in consumer class actions is highly "asymmetrical," as "class action plaintiffs typically possess no or very limited discoverable materials, while defendants may have reams of documents and terabytes of electronic data." *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 666 (9th Cir. 2020); *see also Boeynaems v. L.A. Fitness Int'l, LLC*, 285 F.R.D. 331, 334–35 (E.D. Pa. 2012) (discussing the "asymmetrical" nature of discovery in class actions where the plaintiffs have "very few documents" while the defendants have "millions of documents and millions of items of electronically stored information"). "Class action plaintiffs thus have an incentive to seek aggressive discovery . . . without fear of reciprocally burdensome discovery." *Chambers*, 980 F.3d at 666. The asymmetrical burdens that discovery will impose on Hain Celestial weigh heavily against forcing the parties to conduct all class certification discovery prior to Judge Seybert's ruling on the motion to dismiss.

Finally, even if the Court were inclined to require the Parties to commence expert discovery before Judge Seybert rules on Hain Celestial's forthcoming motion to dismiss, Plaintiffs' proposed deadlines are grossly unfair because they would have the effect of requiring Hain Celestial to depose Plaintiffs' three experts, identify at least three subject-matter experts of their own, and work with those experts to prepare rebuttal reports between November 10, 2022 and January 6, 2023—which includes the Thanksgiving, Christmas, and New Year's holidays. This would not only necessitate unnecessary work over the holidays, but would make it difficult to obtain experts—who, in addition to personal commitments around the holidays, will likely have academic commitments around the end of the fall semester. Hain Celestial respectfully submits that it is far more appropriate to require Plaintiffs to produce their experts no earlier than January 2023 and to give Hain Celestial approximately 75 days thereafter to produce its rebuttal experts.

## IV. Start of Discovery

The Parties have not reached an agreement to stay all discovery pending the outcome of the motion to dismiss Defendant seeks to make to the District Court. Plaintiffs' position is that discovery should move forward expeditiously, independent of Defendant's forthcoming motion to dismiss and potential Answer to the Complaint. As set forth above, Hain Celestial's position is that Tier 1 discovery should commence promptly, but that other class certification discovery—including identification of document custodians, negotiation of search terms, review and production of custodial data, and expert discovery—should not commence until Judge Seybert has ruled on Hain Celestial's forthcoming motion to dismiss.

Labaton Sucharow



For purposes of ease, below is a chart setting forth all of the above dates.

| Event | Plaintiffs' Proposed Deadline | Hain Celestial's Proposed Deadline |
|---|---|---|
| Tier 1 Discovery | Rolling basis to be completed by August 19, 2022 | Rolling basis to be completed by August 19, 2022 |
| ESI: Identification of Responsive Documents, sources, and custodians | August 1, 2022 | 30 days after answer is due |
| ESI: Search terms to be produced by Defendant | August 1, 2022 | TBD |
| ESI: Plaintiffs to provide additional search terms | August 8, 2022 | TBD |
| ESI: Defendant to produce a hit list | August 15, 2022 | TBD |
| ESI: Parties Meet and Confer Regarding Search Terms | August 22, 2022 | TBD |
| ESI: Parties to Agree on Search Terms | August 29, 2022 | TBD |
| Plaintiffs' expert disclosures regarding class certification | November 10, 2022 | 4 months after answer is due |
| Defendant's expert disclosures regarding class certification | January 6, 2023 | 6.5 months after answer is due |
| Expert depositions and Class Certification Expert Discovery Cutoff | February 17, 2023 | 8 months after answer is due |

Very truly yours,

Michael P. Canty