**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE HAIN CELESTIAL HEAVY METALS BABY FOOD LITIGATION | Case No. 2:21-cv-00678-NRM-AYS |
| | The Honorable Nina R. Morrison |

**ANSWER TO CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

**JENNER & BLOCK LLP**

Dean N. Panos (*pro hac vice*)
dpanos@jenner.com
353 North Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
Fax: (312) 527-0484

Kate T. Spelman (*pro hac vice*)
kspelman@jenner.com
Alexander M. Smith (*pro hac vice*)
asmith@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071
Tel: (213) 239-5100
Fax: (213) 239-5199

Attorneys for Defendant
The Hain Celestial Group, Inc.

Defendant The Hain Celestial Group, Inc. ("Hain Celestial"), by and through its attorneys Jenner & Block LLP, hereby answers Plaintiffs' Consolidated Amended Class Action Complaint ("Complaint") and state its defenses thereto as follows:

## CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Plaintiffs Asyia Andrews, Lisa Gans, Shahalis Wilson, Myjorie Philippe, Zeynep Senturk Mannix, Monica Hazelwood, Carolyn Leary, Bethany Nickerson, Lizette Romero Ortiz, Elena Thormahlen, Amanda Roman, Cassie Caldwell, Simone Craig, Cassie Isza, Helen Howard, Jade Huguenot, Stephanie Weimer, Jessie McNaughton, and Tanya Motsay on behalf of themselves and all others similarly situated, by and through their undersigned attorneys, bring this Consolidated Amended Class Action Complaint against Defendant Hain Celestial, Inc. ("Defendant" or "Hain"), for its negligent, reckless, and/or intentional practice of failing to fully disclose the presence of lead, arsenic, cadmium, mercury, perchlorate, and/or other undesirable toxins or contaminants (collectively "Toxic Heavy Metals and/or other toxins") in its baby food.[1] Defendant's baby food is sold throughout the United States and does not conform to its packaging.

Answer: This paragraph of the Complaint consists of a statement that Plaintiffs bring this lawsuit against Hain Celestial, to which no response is required.  To the extent a response is required, Hain Celestial admits that Plaintiffs bring this lawsuit against Hain Celestial and that Hain Celestial's baby food is sold throughout the United States.  Hain Celestial denies that it has engaged in a "negligent, reckless and/or intentional practice of failing to fully disclose the presence of lead, arsenic, cadmium, mercury, perchlorate, and/or other undesirable toxins or contaminants" in its baby food products and denies that its products do "not conform to [their] packaging."  Hain Celestial denies the remaining allegations, if any, of this paragraph of the Complaint.

Plaintiffs seek both injunctive and monetary relief on behalf of the proposed Nationwide Class, or in the alternative, Classes (as defined herein), including requiring full disclosure of all such substances in its packaging, mandatory testing protocols, and restoring monies to the members of the proposed Classes. Plaintiffs allege the following based upon personal knowledge, as well as investigation by their counsel as to themselves, and as to all other matters, upon information and belief. Plaintiffs believe that substantial

---

[1] Plaintiffs have provided sufficient notice to Defendant of the claims herein.

evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

Answer: This paragraph of the Complaint consists of a statement of the relief Plaintiffs seek and the purported basis of their claims, to which no response is required. To the extent a response is required, Hain Celestial admits that Plaintiffs purport to seek the relief described in the first sentence of this paragraph, but it denies that Plaintiffs are entitled to such relief. Hain Celestial denies the remaining allegations of this paragraph of the Complaint.

## **NATURE OF THE ACTION**

1.    As a manufacturer of baby food products, Hain Celestial, Inc. ("Hain") is directly responsible to the health and safety of infants and children – a task of the utmost importance. Any products manufactured for ingestion by infants and children, one of society's most vulnerable groups, must have honest and forthcoming labeling regarding its contents. Despite this, Defendant abandoned its responsibility to keep infants and children safe by knowingly manufacturing and selling baby food products containing dangerous amounts of Toxic Heavy Metals and/or other toxins. Hain repeatedly fails to conduct adequate testing of the levels of Toxic Heavy Metals and/or other toxins in its products. As a result, Hain's Earth's Best Baby Food products contain unreasonably high levels of Toxic Heavy Metals and/or other toxins which are sold and fed to infants nationally.

Answer: Denied.

2.    In fact, the levels of Toxic Heavy Metals and/or other toxins in Defendant's ingredients far exceed the levels accepted as safe for ingestion in other food products and in drinking water.

Answer: Denied.

3.    Plaintiffs trusted Hain when it constantly and consistently assured consumers that its baby food is healthy, nutritious, and free from harmful toxins, contaminants, and chemicals. Hain, in fact, calls its products "Earth's Best." Most importantly, reasonable parents, like Plaintiffs, believed Hain would never sell products that contained unsafe levels of Toxic Heavy Metals and/or other toxins known to pose significant dangers to children with potentially life-altering consequences.

Answer: Hain Celestial admits that it sells baby food under the Earth's Best brand. Hain Celestial denies the remaining allegations of Paragraph 3 of the Complaint.

4.      Defendant's marketing materials and packaging state that its Baby Foods[2] are USDA Organic, Non-GMO, free of Preservatives, free of GMOs, free of pesticides or herbicides, Nurturing Baby the Purest Way, and made with superior ingredients.

<u>Answer:</u> Hain Celestial admits that certain Earth's Best products are sold in labeling that includes the phrases "USDA Organic," "Non-GMO," "Free of Preservatives," "Free of GMOs," "Free of Pesticides or Herbicides," "Nurturing Baby the Purest Way," and "Made with Superior Ingredients."   Hain Celestial denies the remaining allegations, if any, of Paragraph 4 of the Complaint.

5.      Hain charges a premium price for these alleged benefits.  All the while, Defendant induces reasonable consumers to believe in the quality and safety of its products for consumption by infants and children.   Nowhere on the packaging or advertisements does Defendant disclose that its Baby Foods include Toxic Heavy Metals and/or other toxins.  Based on the packaging and advertisements, no reasonable consumer would expect or understand that the Baby Foods contain Toxic Heavy Metals and/or other toxins or that the Baby Foods might contain Toxic Heavy Metals and/or other toxins in dangerous amounts.  Further, reasonable consumers would also not expect that Defendant does not conduct adequate testing of its Baby Foods for Toxic Heavy Metals and/or other toxins in dangerous amounts.

<u>Answer:</u> Denied.

6.      Industry insiders, such as baby food manufacturers and ingredient suppliers, were aware of reports of Toxic Heavy Metals and/or other toxins in Hain's Earth's Best Baby Food products for several years.

<u>Answer:</u> Hain Celestial lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 6 of the Complaint and on that basis denies those allegations.

7.      Instead of taking steps to remove the Toxic Heavy Metals and/or other toxins from its products, Hain established unacceptable internal specifications by capping allowable amounts of some Toxic Heavy Metals and/or other toxins in each ingredient, which are well-above Food and Drug Administration ("FDA") standards for other substances, such as drinking water and rice.  Specifically, Hain's specifications do not require testing for inorganic arsenic, mercury, or perchlorate, three toxins known to be present in Hain products.  The internal specifications that

---

[2] "Baby Foods" collectively refers to the Earth's Best products listed on **<u>Exhibit A</u>**. Plaintiffs reserve their rights to modify this list after opportunity for discovery.

were set for other Toxic Heavy Metals and/or other toxins are too high and deviate from any legal or scientific reasoning.

Answer: Denied.

8.  Not only does Hain rely on unsafe internal specifications, Hain **exceeded and ignored its own internal specifications**. When Defendant exceeded its own specifications, it deceptively manipulated its testing results, and the related calculations, to create a false reality – that the Baby Foods were safe. Hain continued to rely on its flawed internal specifications and deceptive records in order to justify the statements on its label, including "Organic," "All Natural," and "Earth's Best."

Answer: Denied.

9.  Hain concealed these specifications by creating the specifications behind closed doors without reliable science, regulatory guidance, or even public comment. Even now, the public, unaware of these internal specifications, cannot adequately assess the safety of these specifications.

Answer: Denied.

10.  Worse, Hain only tests raw materials. Hain does not test any of its finished products. As set forth below, there is a remarkable difference between levels of Toxic Heavy Metals and/or other toxins in raw ingredients versus finished products. Finished products test at higher levels of Toxic Heavy Metals and/or other toxins than raw ingredients.

Answer: Denied.

11.  Worse yet, upon information and belief, Hain did not test all ingredients. Hain arbitrarily chose to test only certain ingredients based on its unscientific reasoning that only certain ingredients come with an increased risk of containing Toxic Heavy Metals and/or other toxins.

Answer: Denied.

12.  100% of the Hain's Earth's Best Baby Foods that were tested by the FDA contained inorganic arsenic levels that were higher in the finished baby food than the Company had estimated based on Hain's testing of the raw ingredients. For example, arsenic was between 28% and 93% higher in the finished products.

Answer: Denied.

13.     These statements are not mere allegations.  In a detailed report, the Congressional Subcommittee on Economic and Consumer Policy ("Congressional Subcommittee") affirmatively found that Hain's products contain Toxic Heavy Metals and/or other toxins and that its internal specifications permit dangerously high levels.

Answer: Hain Celestial admits that the staff of the Congressional Subcommittee on Economic and Consumer Policy issued a report (the "Staff Report") regarding the purported presence of heavy metals in several manufacturers' baby food products, including certain products sold by Hain Celestial, which speaks for itself.  Hain Celestial denies the claims set forth in the Staff Report, denies Plaintiffs' characterization of the Staff Report, and denies the remaining allegations, if any, of Paragraph 13 of the Complaint.

14.     The Subcommittee further found that Defendant utilized insufficient testing procedures resulting in the sale of products containing Toxic Heavy Metals and/or other toxins multiples higher than the levels legally allowed in other products.

Answer: Paragraph 14 purports to summarize the contents of the Staff Report, which speaks for itself.  Hain Celestial denies the claims set forth in the Staff Report, denies Plaintiffs' characterization of the Staff Report, and denies the remaining allegations, if any, of Paragraph 14 of the Complaint.

15.     Plaintiffs and consumers had no reason to know or expect that Hain's Earth's Best Baby Foods contained Toxic Heavy Metals and/or other toxins, that Hain's Earth's Best Baby Food products might contain Toxic Heavy Metals and/or other toxins in dangerous amounts, or that Hain did not adequately test its Earth's Best Baby Food products for the Toxic Heavy Metals and/or other toxins.

Answer: Denied.

16.     Plaintiffs relied on, and were deceived by, the limited information that Hain made available about its products.  As a result, infants and children ingested these toxic foods, often multiple times a day, to their detriment, as exposure to Toxic Heavy Metals and/or other toxins are dangerous at any level.

Answer: Denied.

17.     Reasonable parents, like Plaintiffs, who were routinely feeding Earth's Best Baby Foods to their babies would consider the mere risk of exposure to Toxic Heavy Metals and/or other toxins or contaminants a material fact when considering whether to purchase the Baby Foods.

Answer: Denied.

18.     Here, Defendant knowingly conceals from the public all material information about the presence of Toxic Heavy Metals and/or other toxins, its internal specifications, internal and external testing results, and its products' hazards.  For years, Hain has prioritized profits over people when it sacrificed and continues to sacrifice the health and safety of infants and children, just to increase corporate revenue.

Answer: Denied.

19.     Plaintiffs bring this proposed class action on behalf of themselves and all other members of the Class (as defined herein), who, from the applicable statute of limitations period up to and including the present, purchased for personal, family, or household use and not resale any of Defendant's toxic Baby Foods.

Answer: Hain Celestial admits that Plaintiffs have filed this lawsuit on behalf of a putative class of consumers who purchased Hain Celestial's baby foods for personal, family, or household use and not for resale during the statute of limitations period, but it denies that this lawsuit is amenable to class certification or that any class member has meritorious claims against Hain Celestial.  Hain Celestial denies that any of its products are "toxic" and denies the remaining allegations, if any, of Paragraph 19 of the Complaint.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 (hereinafter referred to as "CAFA") codified as 28 U.S.C. § 1332(d)(2), because the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; the number of members of the proposed Class exceeds 100; and a majority of the Plaintiffs and members of the proposed Class and Subclasses are citizens of a state different than Defendant.

Answer: Paragraph 20 of the Complaint consists of a legal conclusion to which no response is required.  To the extent a response is required, Hain Celestial admits that this Court has subject

matter jurisdiction under 28 U.S.C. § 1332(d). Hain Celestial denies the remaining allegations of Paragraph 20 of the Complaint.

21.     This Court has personal jurisdiction over Defendant Hain Celestial Group, Inc. because its headquarters and principal place of business are in this District and because the advertising, labeling, packing, manufacturing, sale, and distribution of Hain Baby Foods and the misrepresentations, misleading remarks, and/or deceptive acts in connection with Hain Baby Foods, occurred, developed, or were initiated in this District.

Answer: Paragraph 21 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial admits that it is subject to personal jurisdiction with respect to Plaintiffs' claims in this lawsuit. Hain Celestial denies the remaining allegations of Paragraph 21 of the Complaint. Answering further, Hain Celestial notes that it is no longer headquartered in the Eastern District of New York and that it has moved its headquarters to Hoboken, New Jersey.

22.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because Plaintiffs suffered injury as a result of Defendant's acts in this District, many of the acts and transactions giving rise to this action occurred in this District, and Defendant conducts substantial business in this District and is headquartered in this District. Defendant intentionally availed itself to this District's laws and markets of this district, and Defendant is subject to personal jurisdiction in this District.

Answer: Paragraph 22 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial admits that venue is proper in this District pursuant to 28 U.S.C. § 1391. Hain Celestial denies the remaining allegations of Paragraph 22 of the Complaint.

## THE PARTIES

23.     Plaintiff Lizette Romero Ortiz ("Plaintiff Ortiz") was at all times relevant hereto, a resident of California when she purchased the Baby Foods for her children. She generally purchased the Baby Foods for her children from Mother's Market & Kitchen and Stater Bros. Market, including Whole Grain Organic Oatmeal Cereal, First Carrots Organic Baby Food, Sweet Potatoes Organic Baby Food, Winter Squash Organic Baby Food, Apples Organic Baby Food, and First Pears Organic Baby Food. Plaintiff Ortiz made these purchases from May 2016 until December

2016 and again from July 2017 to December 2017 when her children no longer ate the Baby Foods. Plaintiff Ortiz believed she was feeding her children healthy, nutritious baby food.

Answer: Hain Celestial lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 23 of the Complaint and on that basis denies those allegations.

24.    Plaintiff Lisa Gans ("Plaintiff Gans") was at all times relevant hereto, a resident of the District of Columbia when she purchased the Baby Foods for her child. She generally purchased the Baby Foods for her child from Amazon, including Earth's Best Organic Stage 2 Banana, Raspberry, and Brown Rice Pouches. Plaintiff Gans made these purchases from May 2016 until September 2016. Plaintiff Gans believed she was feeding her child healthy, nutritious baby food.

Answer: Hain Celestial lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 24 of the Complaint and on that basis denies those allegations.

25.    Plaintiff Zeynep Senturk Mannix ("Plaintiff Mannix") was at all times relevant hereto a resident of Washington D.C. when she purchased the Baby Foods for her child. She purchased the Baby Foods for her child from Whole Foods, including Whole Grain Organic Oatmeal Cereal. Plaintiff Mannix generally purchased these foods from approximately March 2020 until November 2020, when her child no longer ate the Baby Foods. Plaintiff Mannix believed she was feeding her child healthy, nutritious baby food.

Answer: Hain Celestial lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 25 of the Complaint and on that basis denies those allegations.

26.    Plaintiff Jade Huguenot ("Plaintiff Huguenot") is, and at all times relevant hereto has been, a resident of Idaho. She generally purchased the Baby Foods for her child from Target and Safeway, including: Sesame Street Organic Peanut Butter Baked Corn Puffs, Sesame Street Organic Fruit Yogurt Smoothie - Apple Blueberry, Winter Squash Organic Baby Food, and First Peas Organic Baby Food. Plaintiff Huguenot made these purchases prior to February 2021 until approximately March 2022 when she learned about the presence of Toxic Heavy Metals and/or other toxins in the Baby Foods. Plaintiff Huguenot believed she was feeding her child healthy, nutritious baby food.

Answer: Hain Celestial lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 26 of the Complaint and on that basis denies those allegations.

27.  Plaintiff Cassie Isza ("Plaintiff Isza") is, and at all times relevant hereto has been, a resident of Indiana.  She generally purchased the Baby Foods for her child from Meijer, including Whole Grain Organic Oatmeal Cereal, Organic Rice Cereal, Whole Grain Organic Multi-Grain Cereal, and Sesame Street Organic Fruit Yogurt Smoothie - Apple Blueberry.  Plaintiff Isza made these purchases prior to and until approximately August 2020 when she learned about the presence of Toxic Heavy Metals and/or other toxins in the Baby Foods.  Plaintiff Isza believed she was feeding her child healthy, nutritious baby food.

Answer: Hain Celestial lacks knowledge or information sufficient to admit or deny the

allegations of Paragraph 27 of the Complaint and on that basis denies those allegations.

28.  Plaintiff Shahalis Wilson ("Plaintiff Wilson") is, and at all times relevant hereto has been, a resident of Kentucky.  She generally purchased the Baby Foods for her children from Krogers and Walmart, including Whole Grain Organic Oatmeal Cereal, Organic Rice Cereal, and Organic Sweet Potato Cinnamon Flax & Oat – Wholesome Breakfast Puree.  Plaintiff Wilson made these purchases in 2011, between 2017 and 2019, and between 2021 and 2022.  She stopped making these purchases when she learned about the presence of Toxic Heavy Metals and/or other toxins in the Baby Foods.  Plaintiff Wilson believed she was feeding her children healthy, nutritious baby food.

Answer: Hain Celestial lacks knowledge or information sufficient to admit or deny the

allegations of Paragraph 28 of the Complaint and on that basis denies those allegations.

29.  Plaintiff Bethany Nickerson ("Plaintiff Nickerson") is, and at all times relevant hereto has been, a resident of Maine.  She generally purchased the Baby Foods for her children from Walmart, including Whole Grain Organic Oatmeal Cereal, Organic Rice Cereal, Whole Grain Organic Multi-Grain Cereal, Organic Sensitivity – DHR/ARA Infant Formula with Iron Organic Milk-Based Powder, Sesame Street Organic Peanut Butter Baked Corn Puffs, First Carrots Organic Baby Food, Sweet Potatoes Organic Baby Food, Winter Squash Organic Baby Food, and Chicken and Brown Rice Organic Baby Food.  Plaintiff Nickerson made these purchases between August 2017 and December 2021.  She stopped making these purchases when she learned about the presence of Toxic Heavy Metals and/or other toxins in the Baby Foods.  Plaintiff Nickerson believed she was feeding her children healthy, nutritious baby food.

Answer: Hain Celestial lacks knowledge or information sufficient to admit or deny the

allegations of Paragraph 29 of the Complaint and on that basis denies those allegations.

30.    Plaintiff Myjorie Philippe ("Plaintiff Philippe") is, and at all times relevant hereto has been, a resident of Massachusetts. She generally purchased the Baby Foods for her children from Target, Wegmans, Babies R Us, and Whole Foods, including Whole Grain Organic Oatmeal Cereal, Organic Rice Cereal, Organic Sensitivity – DHR/ARA Infant Formula with Iron Organic Milk-Based Powder, Sweet Potatoes Organic Baby Food. Plaintiff Philippe made these purchases from 2017 until approximately February 2021 when she learned about the presence of Heavy Metals in the Toxic Baby Foods. Plaintiff Philippe believed she was feeding her children healthy, nutritious baby food.

Answer: Hain Celestial lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 30 of the Complaint and on that basis denies those allegations.

31.    Plaintiff Cassie Caldwell ("Plaintiff Caldwell") is, and at all relevant times hereto has been, a resident of Missouri. She generally purchased the Baby Foods for her child from Walmart including Sesame Street Organic Peanut Butter Baked Corn Puffs and Sesame Street Organic Fruit Yogurt Smoothies. Plaintiff Caldwell made these purchases between September 2019 and August 2021 when she learned about the presence of Heavy Metals in the Toxic Baby Foods. Plaintiff Caldwell believed she was feeding her child healthy, nutritious baby food.

Answer: Hain Celestial lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 31 of the Complaint and on that basis denies those allegations.

32.    Plaintiff Elena Thormahlen ("Plaintiff Thormahlen") is, and at all times relevant hereto has been, a resident of Nevada. She generally purchased the Baby Foods for her children from Amazon and Publix including Whole Grain Organic Oatmeal Cereal and Organic Sweet Potato Cinnamon Flax & Oat – Wholesome Breakfast Puree. Plaintiff Thormahlen made these purchases between September 2017 and September 2020 when her children no longer ate the Baby Foods. Plaintiff Thormahlen believed she was feeding her children healthy, nutritious baby food.

Answer: Hain Celestial lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 32 of the Complaint and on that basis denies those allegations.

33.    Plaintiff Carolyn Leary ("Plaintiff Leary") is, and at all times relevant hereto has been, a resident of New Hampshire. She generally purchased the Baby Foods for her children from Target and Whole Foods including Sesame Street Organic Peanut Butter Baked Corn Puffs, Sunny Days Snack Bars – Sweet Potato Carrot, Sweet Potatoes Organic Baby Food, First Pears Organic Baby, Sesame Street Organic Fruit Yogurt Smoothie, and Sesame Street Alphabet Cookies. Plaintiff Leary made these purchases between 2019 and 2022. She made less of these purchases when she learned about the presence of Toxic Heavy Metals and/or other toxins in the

Baby Foods.  Plaintiff Leary believed she was feeding her children healthy, nutritious baby food.

Answer: Hain Celestial lacks knowledge or information sufficient to admit or deny the

allegations of Paragraph 33 of the Complaint and on that basis denies those allegations.

34.     Plaintiff Asyia Andrews ("Plaintiff Andrews") is, and at all times relevant hereto, has been a resident of the state of New Jersey.  She purchased the Baby Foods for her child, including Whole Grain Organic Oatmeal Cereal, Sunny Days Snack Bars, Carrots Organic Baby Foods, Sweet Potato Organic Baby Foods, Chicken & Brown Rice Organic Baby Food, Organic Turkey Quinoa Apple Sweet Potato, Homestyle Meal Puree, Organic` Sweet Potato Cinnamon Flax & Oat – Wholesome Breakfast. Plaintiff Andrews generally purchased these foods from Target, Shoprite, and Amazon Fresh in various locations around her home in Union County, New Jersey from approximately April 2020 until December 2020, when her child no longer ate the Baby Foods.  Plaintiff Andrews believed she was feeding her child healthy, nutritious baby food.

Answer: Hain Celestial lacks knowledge or information sufficient to admit or deny the

allegations of Paragraph 34 of the Complaint and on that basis denies those allegations.

35.     Plaintiff Jessie McNaughton ("Plaintiff McNaughton") is, and at all times relevant hereto has been, a resident of New York.  She generally purchased the Baby Foods for her children from Wegmans, including Whole Grain Organic Oatmeal Cereal, Organic Rice Cereal, Whole Grain Organic Multi-Grain Cereal, Sesame Street Organic Peanut Butter Baked Corn Puffs, Sunny Days Snack Bars – Sweet Potato Carrot, Carrots Organic Baby Food, First Carrots Organic Baby Food, Sweet Potatoes Organic Baby Food, First Peas Organic Baby Food, Apples Organic Baby Food, First Pears Organic Baby, Spinach and Potato Organic Baby Food, Chicken and Brown Rice Organic Baby Food, Organic Turkey Quinoa Apple Sweet Potato Homestyle Meal Puree, and Organic Chicken Pot Pie Homestyle Meal Puree. Plaintiff McNaughton made these purchases prior to and until approximately November 2020 when her children no longer ate the Baby Foods.  Plaintiff McNaughton believed she was feeding her children healthy, nutritious baby food.

Answer: Hain Celestial lacks knowledge or information sufficient to admit or deny the

allegations of Paragraph 35 of the Complaint and on that basis denies those allegations.

36.     Plaintiff Helen Howard ("Plaintiff Howard") is, and at all times relevant hereto has been, a resident of North Carolina.  She generally purchased the Baby Foods for her children from Harris Teeter, including Whole Grain Organic Oatmeal Cereal, Sweet Potatoes Organic Baby Food, Apples Organic Baby Food, First Pears Organic Baby Food, and Organic Sweet Potato Cinnamon Flax & Oat – Wholesome Breakfast Puree.  Plaintiff Howard made these purchases prior to and until

approximately February 2021 when she learned about the presence of Toxic Heavy Metals and/or other toxins in the Baby Foods. Plaintiff Howard believed she was feeding her children healthy, nutritious baby food.

Answer: Hain Celestial lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 36 of the Complaint and on that basis denies those allegations.

37.    Plaintiff Tanya Motsay ("Plaintiff Motsay") is, and at all times relevant hereto has been, a resident of Pennsylvania. She generally purchased the Baby Foods for her children from Amazon, including Sesame Street Organic Fruit Yogurt Smoothie – Apple Blueberry, Chicken and Brown Rice Organic Baby Food, and Earth's Best Variety Packs. Plaintiff Motsay made these purchases from 2016 until approximately January 2022 when she learned about the presence of Toxic Heavy Metals and/or other toxins in the Baby Foods. Plaintiff Motsay believed she was feeding her children healthy, nutritious baby food.

Answer: Hain Celestial lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 37 of the Complaint and on that basis denies those allegations.

38.    Plaintiff Amanda Roman ("Plaintiff Roman") is, and at all times relevant hereto has been, a resident of Rhode Island. She generally purchased the Baby Foods for her child from Amazon, Target, and CVS Pharmacy, including Earth's Best Organic Sensitivity—DHR/ARA Infant Formula with Iron Milk-Based Powder. Plaintiff Roman made these purchases from January 2020 until approximately February 2021 when she learned about the presence of Toxic Heavy Metals and/or other toxins in the Baby Foods. Plaintiff Roman believed she was feeding her child healthy, nutritious baby food.

Answer: Hain Celestial lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 38 of the Complaint and on that basis denies those allegations.

39.    Plaintiff Stephanie Weimer ("Plaintiff Weimer") is, and at all times relevant hereto has been, a resident of Virginia. She generally purchased the Baby Foods for her children from Target, Krogers, and Amazon, including Earth's Best Organic Toddler Milk Drink Powder, Earth's Best Organic Sensitivity—DHR/ARA Infant Formula with Iron Milk-Based Powder, Whole Grain Organic Oatmeal Cereal, Organic Rice Cereal, Organic Turkey Quinoa Apple Sweet Potato Homestyle Meal Puree, Sweet Potatoes Organic Baby Food, First Pears Organic Baby Food, and Apples Organic Baby Food. Plaintiff Weimer made these purchases from April 2018 until approximately June 2021 when she learned about the presence of Toxic Heavy Metals and/or other toxins in the Baby Foods. Plaintiff Weimer believed she was feeding her children healthy, nutritious baby food.

Answer: Hain Celestial lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 39 of the Complaint and on that basis denies those allegations.

40.     Plaintiff Simone Craig ("Plaintiff Craig") is, and at all times relevant hereto has been, a resident of Virginia. She generally purchased the Baby foods for her children from Target, Walmart, Wegmans, and Food Lion, including, Sweet Potatoes Organic Baby Food, Organic Turkey Quinoa Apple Sweet Potato Homestyle Meal Puree, and Organic Sweet Potato Cinnamon Flax & Oat – Wholesome Breakfast Puree. Plaintiff Craig made these purchases prior to February 2021 until approximately April 2021 when she learned about the presence of Toxic Heavy Metals and/or other toxins in the Baby Foods. Plaintiff Craig believed she was feeding her children healthy, nutritious baby food.

Answer: Hain Celestial lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 40 of the Complaint and on that basis denies those allegations.

41.     Plaintiff Monica Hazelwood ("Plaintiff Hazelwood") is, and at all times relevant hereto has been, a resident of Washington. She generally purchased the Baby Foods for her children from Albertson's, Krogers, and Walmart, including Organic Sensitivity – DHR/ARA Infant Formula with Iron Organic Milk-Based Powder, Carrots Organic Baby Food, First Carrots Organic Baby Food, Sweet Potatoes Organic Baby Food, Winter Squash Organic Baby Food, First Peas Organic Baby Food, Apples Organic Baby Food, First Pears Organic Baby Food, Organic Dairy Infant Formula with Iron, Organic Corn and Butternut Squash. Plaintiff Hazelwood made these purchases from September 2018 until approximately January 2022 when she learned about the presence of Toxic Heavy Metals and/or other toxins in the Baby Foods. Plaintiff Hazelwood believed she was feeding her children healthy, nutritious baby food.

Answer: Hain Celestial lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 41 of the Complaint and on that basis denies those allegations.

42.     Prior to purchasing the Baby Foods, Plaintiffs saw and relied upon the packaging of the Baby Foods. During the time they purchased and fed their children the Baby Foods, and due to the Omissions by Defendant, they were unaware Hain's Baby Foods contained (or had a material risk of containing) any level of Toxic Heavy Metals and/or other toxins or contaminants, and would not have purchased the products, would have bought less of the products, or would have paid less for the products.

Answer: Hain Celestial denies that any of its products contain "toxic" levels of heavy metals or any other purported "contaminants." Hain Celestial denies that its labeling includes any

actionable "omissions."  Hain Celestial lacks knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 42 of the Complaint and on that basis denies those allegations.

43.    the Baby Foods if that information had been fully disclosed.  Plaintiffs would be willing to purchase Hain's Baby Food products in the future if she [sic] could be certain that they do not contain (or have a material risk of containing) Toxic Heavy Metals and/or other toxins.

Answer: The first eleven words of Paragraph 43 of the Complaint consist of a sentence fragment to which no response is required.  Hain Celestial denies that its products are "toxic" or that they contain "toxins."  Hain Celestial lacks information sufficient to deny the remaining allegations of Paragraph 43 of the Complaint and on that basis denies those allegations.

44.    Defendant Hain is a Delaware corporation with its headquarters and principal place of business at 111 Marcus Avenue, Lake Success, New York.  Defendant does business throughout the United States.

Answer: Hain Celestial admits that it is incorporated under Delaware law and that it does business throughout the United States.  Hain Celestial admits that its headquarters was formerly located at 111 Marcus Avenue, Lake Success, New York, but it denies that it is currently headquartered there and notes that it now headquartered in Hoboken, New Jersey.

# FACTUAL ALLEGATIONS

## I.   THERE IS NO SAFE LEVEL FOR CONSUMPTION OF TOXIC HEAVY METALS AND/OR OTHER TOXINS

### A.   There Is No Safe Level of Lead Consumption for Babies

45.   The Environmental Protection Agency ("EPA"), World Health Organization ("WHO"), the Centers for Disease Control and Prevention ("CDC"), The European Union ("EU"), and the American Academy of Pediatrics ("AAP") unanimously agree that there is no established "safe level of lead (Pb) in a child's blood."[3]

Answer: No response is required to Paragraph 45 of the Complaint because the Court has dismissed Plaintiffs' claims to the extent they are premised on the alleged presence of lead in Hain Celestial's products.  To the extent a response is required, Hain Celestial responds that Paragraph 45 of the Complaint consists of a summary of the sources cited in footnote 3 of the Complaint, which speak for themselves.  Hain Celestial denies that there is no established safe level of lead in a child's blood and denies the remaining allegation, if any, of Paragraph 45 of the Complaint.

46.   Lead ingestion by humans has long been subject to regulatory scrutiny.  Indeed, the FDA has set a 5 ppb lead standard for bottled water, the WHO has set 10 ppb lead as a provisional guideline for drinking water, and the EPA has set an action level of 15 ppb for lead in drinking water.  FDA has also issued guidance for lead in certain juices (50 ppb) and candy (100 ppb).[4]  The EU has set the maximum lead level in infant formula to 20 ppb.[5]

Answer: No response is required to Paragraph 46 of the Complaint because the Court has dismissed Plaintiffs' claims to the extent they are premised on the alleged presence of lead in Hain

---

[3] Congressional Subcommittee on Economic and Consumer Policy Report (*hereinafter* "**Exhibit B**") at p. 10; *see also*, Valerie Zartarian, et al., *Children's Lead Exposure: A Multimedia Modeling Analysis to Guide Public Health Decision-Making* (Sept. 12, 2017) (https://ehp.niehs.nih.gov/doi/10.1289/ehp1605) (last visited Mar. 5, 2021); https://www.epa.gov/lead/learn-about-lead; *see also*, Philippe Grandjean, *Even Low-Dose Lead Exposure Is Hazardous* (Sept. 11, 2010) (https://pubmed.ncbi.nlm.nih.gov/20833288/).

[4] **Exhibit B** at p. 21.

[5] *Id.* at p. 22.

Celestial's products.  To the extent a response is required, Hain Celestial lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 46 of the Complaint (including those set forth in the sources cited in footnotes 4 and 5) and on that basis denies those allegations.

47.    These repeated calls for lower levels are based upon uncontroverted public knowledge of the dangers of lead exposure and potentially fatal lead ingestion. In fact, some studies list lead as the second most harmful substance that poses a significant threat to human health.[6] Lead is also recognized by the WHO as a major public health concern.[7]

Answer: No response is required to Paragraph 47 of the Complaint because the Court has dismissed Plaintiffs' claims to the extent they are premised on the alleged presence of lead in Hain Celestial's products.  To the extent a response is required, Hain Celestial lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 47 of the Complaint (including those set forth in the sources cited in footnotes 6 and 7) and on that basis denies those allegations.

48.    Numerous government agencies, including the FDA, recognize the significant health effects that lead can have on children and infants.  High levels of lead exposure can seriously harm children's development and health, specifically the brain and nervous system.  Additionally, because lead can accumulate in the body, even low-level chronic exposure can be hazardous over time.[8]

Answer: No response is required to Paragraph 48 of the Complaint because the Court has dismissed Plaintiffs' claims to the extent they are premised on the alleged presence of lead in Hain Celestial's products.  To the extent a response is required, Hain Celestial lacks knowledge or

---

[6] *ATSDR's Substance Priority List* https://www.atsdr.cdc.gov/spl/index.html (last visited on Mar. 21, 2021).

[7] https://apps.who.int/iris/bitstream/handle/10665/329480/WHO-CED-PHE-EPE-19.4.3-eng.pdf?ua=1 (last visited on Mar. 21, 2021).

[8] FDA, *Lead in Food, Foodwares, and Dietary Supplements* (www.fda.gov/food/metals-and-your-food/lead-food-foodwares-and-dietary-supplements) (last visited on Mar. 19, 2021).

information sufficient to admit or deny the allegations of Paragraph 48 of the Complaint (including those in the source set forth in footnote 8) and on that basis denies those allegations.

**B.    There Is No Safe Level of Arsenic Consumption for Babies**

49.    Arsenic can be detected in two dangerous forms: organic arsenic and inorganic arsenic.  Organic arsenic is found in plant and animal tissues.  Inorganic arsenic is found in soil and groundwater.[9]

Answer: Hain Celestial admits that organic arsenic is found in plant and animal tissues and that inorganic arsenic is found in soil and groundwater.  Hain Celestial denies that the levels of arsenic purportedly present in its products render those products "dangerous."  Hain Celestial denies the remaining allegations, if any, of Paragraph 49 of the Complaint (including those in the source cited in footnote 9).

50.    Arsenic is recognized as one of the top ten chemicals of major public concern by the WHO.[10] The Agency for Toxic Substances and Disease Registry ("ATSDR") recognizes arsenic as the number one substance to pose the most significant threat to human health.[11]

Answer: Hain Celestial denies that any of its products pose a "significant threat to human health."  Hain Celestial lacks information sufficient to admit or deny the allegations of Paragraph 50 (including those in the sources cited in footnotes 10 and 11) and on that basis denies those allegations.

---

[9] CDC, Arsenic Factsheet (Nov. 2009), https://www.cdc.gov/biomonitoring/pdf/arsenic_factsheet.pdf (last visited Mar. 10, 2022).

[10] https://monographs.iarc.who.int/list-of-classifications (last visited on Mar. 19, 2021).

[11] *ATSDR's Substance Priority List* https://www.atsdr.cdc.gov/spl/index.html (last visited on Mar. 21, 2021).

### 1.    Inorganic Arsenic

51.    According to the FDA, children are likely to be "particularly susceptible to neurotoxic effects of inorganic arsenic."[12]

Answer: Paragraph 51 of the Complaint consists of a quotation of the website cited in footnote 12 of the Complaint, which speaks for itself.  Hain Celestial lacks information sufficient to admit or deny the substance of the facts set forth in the website cited in Paragraph 51 of the Complaint and on that basis denies the allegations of Paragraph 51 of the Complaint.

52.    The FDA has set maximum inorganic arsenic levels at 10 ppb for bottled water. The Environmental Protection Agency (EPA) has similarly set a 10 ppb inorganic arsenic cap on drinking water, as have the European Union (EU) and the World Health Organization (WHO).[13]

Answer: Hain Celestial lacks information sufficient to admit or deny the allegations of Paragraph 52 of the Complaint and on that basis denies those allegations.

53.    While there is no established safe level for inorganic arsenic consumption by babies, the FDA, EPA, WHO, and EU have all set a maximum level of inorganic arsenic at 10 ppb.[14]

Answer: Hain Celestial denies that "there is no established safe level for inorganic arsenic consumption by babies."  Hain Celestial lacks information or knowledge sufficient to admit or deny the remaining allegations of Paragraph 53 of the Complaint (including those set forth in footnote 14) and on that basis denies those allegations.

---

[12] FDA, Guidance for Industry: Action Level for Inorganic Arsenic in Rice Cereals for Infants (Aug. 2020), https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-action-level-inorganic-arsenic-rice-cereals-infants (last accessed Mar. 20, 2021).

[13] FDA, *Draft Guidance for Industry: Inorganic Arsenic in Rice Cereals for Infants: Action Level* (Apr. 2016) (https://www.govinfo.gov/content/pkg/FR-2016-04-06/pdf/2016-07840.pdf (last visited on Mar. 21, 2021).

[14] Health experts, including the AAP and Consumer Reports, advocated for a maximum level of 1 ppb instead of 10 ppb. Consumer Reports is a nonprofit organization that advocates for consumers.

54.     In 2020, the FDA issued "Guidance for Industry: Action Level for Inorganic Arsenic in Rice Cereals for Infants" stating that baby food products should not exceed inorganic arsenic levels of 100 ppb.[15] Additionally, other reputable organizations call for even lower regulatory levels for inorganic arsenic in reports concerning levels related to cancer risk. Consumer Reports advocating levels as low as 3 ppb and Healthy Babies Bright Futures ("HBBF") seeking a goal of no measurable amount of inorganic arsenic in baby food.

Answer: Hain Celestial admits that the FDA issued guidance in 2020 in which it announced an "action level for inorganic arsenic in infant rice cereals" of "100 microgram per kilogram (μg/kg), or 100 parts per billion (ppb)." Hain Celestial lacks knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 54 of the Complaint and on that basis denies those allegations.

### 2.     *Organic Arsenic*

55.     The FDA requires bottled water manufacturers to monitor the levels of arsenic in both their source and their finished goods annually. "The allowable level established by FDA for arsenic in bottled water is 10 micrograms (0.010 milligrams) per liter of water."[16]

Answer: Hain Celestial lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 55 of the Complaint and on that basis denies those allegations.

56.     Scientific studies determining the long-term health effects of exposure to organic arsenic are ongoing. Currently, there are scientific studies that demonstrate potential health concerns associated with the organic arsenic found in foods.[17]

---

[15] FDA, Guidance for Industry: Action Level for Inorganic Arsenic in Rice Cereals for Infants (Aug. 2020), https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-action-level-inorganic-arsenic-rice-cereals-infants (last accessed Mar. 20, 2021).

[16] FDA, Small Entity Compliance Guide: Bottled Water and Arsenic, https://www.fda.gov/regulatory-information/search-fda-guidance-documents/small-entity-compliance-guide-bottled-water-and-arsenic

[17] FDA, Arsenic in Food and Dietary Supplements: Health Effects from Arsenic Exposure, https://www.fda.gov/food/metals-and-your-food/arsenic-food-and-dietary-supplements.

Answer: Hain Celestial lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 56 of the Complaint and on that basis denies those allegations.

### C.    There Is No Safe Level of Cadmium Consumption for Babies

57.    "[C]admium . . . can be toxic for everyone and pose particular risks for young children."[18]

Answer: No response is required to Paragraph 57 of the Complaint because the Court has dismissed Plaintiffs' claims to the extent they are premised on the alleged presence of cadmium in Hain Celestial's products.  To the extent a response is required, Hain Celestial responds that Paragraph 57 of the Complaint consists of a quotation from the Consumer Reports article cited in footnote 18 of the Complaint, which speaks for itself.  Hain Celestial denies that the levels of cadmium allegedly present in its products are "toxic" or that they pose any risks to young children. Hain Celestial denies the remaining allegations, if any, of Paragraph 57 of the Complaint.

58.    There is no federal standard for cadmium in baby food.  Standards for cadmium levels in drinking water have been imposed by both the FDA and EPA. Both agencies impose a limit of 5 ppb.[19]  Additionally, the WHO imposes a limit of 3 ppb.

Answer: No response is required to Paragraph 58 of the Complaint because the Court has dismissed Plaintiffs' claims to the extent they are premised on the alleged presence of cadmium in

---

[18]  Jesse Hirsch, *Heavy Metals in Baby Food: What You Need to Know*, Consumer Reports (Aug. 16, 2018), https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food-a6772370847/; *see also* David C. Bellinger, *A Strategy for Comparing the Contributions of Environmental Chemicals and Other Risk Factors to Neurodevelopment of Children*, Environ. Health Perspect. (Apr. 2012), https://doi.org/10.1289/ehp.1104170; Miguel Rodriguez-Barranco, *et al*. *Association of Arsenic, Cadmium and Manganese Exposure with Neurodevelopment and Behavioral Disorders in Children: A Systematic Review and Met-Analysis* (June 1, 2013) (https://pubmed.ncbi.nlm.nih.gov/23570911) (last visited March 17, 2022); Min-Jing Lee, et al., *Heavy Metals' Effects on Susceptibility to Attention-Deficit/Hyperactivity Disorder: Implication of Lead, Cadmium, and Antimony* (June 10, 2018) (https://pubmed.ncbi.nlm.nih.gov/29890770/) (last visited last visited March 17, 2022).

[19]  *Id*. at p. 29.

Hain Celestial's products.  To the extent a response is required, Hain Celestial admits that there is presently no federal standard for cadmium in baby food.  Hain Celestial lacks knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 58 of the Complaint (including the source cited in footnote 19) and on that basis denies those allegations.

59.    The EPA has established a limit of 5 ppb in drinking water, and the FDA has set a limit of 5 ppb in bottled water.  The WHO has issued a limit of 3 ppb for cadmium in drinking water and the EU has set a limit ranging from 5–20 ppb of cadmium for infant formula.

Answer: No response is required to Paragraph 59 of the Complaint because the Court has dismissed Plaintiffs' claims to the extent they are premised on the alleged presence of cadmium in Hain Celestial's products.  To the extent a response is required, Hain Celestial lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 59 of the Complaint and on that basis denies those allegations.

60.    HBBF advocates for a goal of no measurable amount of cadmium in baby food and Consumer Reports has called for a limit of 1 ppb of cadmium in fruit juices. Consumer Reports recommends a limit of 1 ppb for cadmium in fruit and juices, while HBBF suggests 0 ppb.[20] Consumer Reports advocates for levels of less than 1 ppb.[21]

Answer: No response is required to Paragraph 60 of the Complaint because the Court has dismissed Plaintiffs' claims to the extent they are premised on the alleged presence of cadmium in Hain Celestial's products.  To the extent a response is required, Hain Celestial lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 60 of the Complaint (including the sources cited in footnotes 20 and 21) and on that basis denies those allegations.

---

[20] *Id.*

[21] *Id.*

61.     The International Agency for Research on Cancer ("IARC") classifies cadmium as a Group 1 carcinogen.[22]  Additionally, the ATSDR lists cadmium as the seventh most substance to pose a significant threat to human health.[23]  Further, the WHO recognizes cadmium as a major public health concern.[24]

Answer: No response is required to Paragraph 61 of the Complaint because the Court has dismissed Plaintiffs' claims to the extent they are premised on the alleged presence of cadmium in Hain Celestial's products.  To the extent a response is required, Hain Celestial lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 61 of the Complaint (including the sources cited in footnotes 22, 23, and 24) and on that basis denies those allegations.

62.     Cadmium has no physiological function in the human body and is a known neurotoxin.  Consumption of cadmium is associated with decrease in IQ and development of ADHD.[25]

Answer: No response is required to Paragraph 62 of the Complaint because the Court has dismissed Plaintiffs' claims to the extent they are premised on the alleged presence of cadmium in Hain Celestial's products.  To the extent a response is required, Hain Celestial lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 62 of the Complaint (including the sources cited in footnote 25) and on that basis denies those allegations.

**D.     There Is No Safe Level of Mercury Consumption for Babies**

63.     "Infants, children, and pregnant women are most vulnerable to the negative health effects of mercury."[26]

---

[22] https://monographs.iarc.who.int/list-of-classifications (last visited on Mar. 20, 2021).

[23] *ATSDR's Substance Priority List* https://www.atsdr.cdc.gov/spl/index.html (last visited on Mar. 21, 2021).

[24] https://apps.who.int/iris/bitstream/handle/10665/329480/WHO-CED-PHE-EPE-19.4.3-eng.pdf?ua=1 (last visited on Mar. 21, 2021).

[25] *Id.* at p. 12.

[26] https://cehn.org/our-work/eco-healthy-child-care/ehcc-faqs/mercury/

<u>Answer:</u> No response is required to Paragraph 63 of the Complaint because the Court has dismissed Plaintiffs' claims to the extent they are premised on the alleged presence of mercury in Hain Celestial's products.  To the extent a response is required, Hain Celestial responds that Paragraph 63 of the Complaint consists of a quotation from the source cited in footnote 26 of the Complaint, which speaks for itself.  Hain Celestial denies that there are any "negative health effects" associated with the levels of mercury allegedly present in its products.  Hain Celestial lacks knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 63 of the Complaint and on that basis denies those allegations.

64.    Mercury, like inorganic arsenic, arsenic, lead, and cadmium, has long been recognized as a hazardous substance when ingested.  For example, the EPA has capped mercury in drinking water at 2 ppb and nationwide, regulators have implemented advisories concerning the consumption of fish contaminated with mercury.  The FDA has set a limit of 2 ppb of mercury in bottled water.

<u>Answer:</u> No response is required to Paragraph 64 of the Complaint because the Court has dismissed Plaintiffs' claims to the extent they are premised on the alleged presence of mercury in Hain Celestial's products.  To the extent a response is required, Hain Celestial denies that any of its products are "hazardous."  Hain Celestial lacks knowledge or information sufficient to deny the remaining allegations of Paragraph 64 of the Complaint and on that basis denies those allegations.

65.    There is no federal standard for the level of mercury in baby food.  The EPA imposes a standard requiring that levels of mercury in drinking water not exceed 2 ppb.[27]

<u>Answer:</u> No response is required to Paragraph 65 of the Complaint because the Court has dismissed Plaintiffs' claims to the extent they are premised on the alleged presence of mercury in Hain Celestial's products.  To the extent a response is required, Hain Celestial admits that there is presently no federal standard governing the level of mercury in baby food.  Hain Celestial lacks

---

[27] **<u>Exhibit B</u>** at p. 48.

knowledge or information sufficient to deny the remaining allegations of Paragraph 65 of the Complaint and on that basis denies those allegations.

66.    The WHO warns that mercury "may have toxic effects on the nervous, digestive and immune systems, and on lungs, kidneys, skin and eyes"[28] and considers mercury "one of the top ten chemicals or groups of chemicals of major public health concern."[29] Mercury is the number three substance on the ATSDR's list of dangerous substances in the environment, potentially posing a significant threat to human health.

Answer: No response is required to Paragraph 66 of the Complaint because the Court has dismissed Plaintiffs' claims to the extent they are premised on the alleged presence of mercury in Hain Celestial's products. To the extent a response is required, Hain Celestial lacks knowledge or information sufficient to deny the allegations of Paragraph 66 of the Complaint and on that basis denies those allegations.

67.    HBBF advocates for a goal of zero levels of mercury in baby food. This recommendation is based, in part, on the fact that epidemiological research shows "mercury . . . has been consistently associated with adverse subsequent neuro-development."[30]

Answer: No response is required to Paragraph 67 of the Complaint because the Court has dismissed Plaintiffs' claims to the extent they are premised on the alleged presence of mercury in Hain Celestial's products. To the extent a response is required, Hain Celestial lacks knowledge or

---

[28] WHO, *Mercury and health* (https://www.who.int/news-room/fact-sheets/detail/mercury-and-health#:~:text=Health%20effects%20of%20mercury%20exposure&text=The%20inhalation%20 of%20mercury%20vapour,induce%20kidney%20toxicity%20if%20ingested) (last visited on Mar. 19, 2021).

[29] WHO, *Lead Poisoning and Health* https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health (last visited on Mar. 18, 2021).

[30] Margaret R. Karagas, et al., E*vidence on the Human Health Effects of Low-Level Methylmercury Exposure* (June 1, 2012) (https://pubmed.ncbi.nlm.nih.gov/22275730/) (last visited on Mar. 18, 2021).

information sufficient to deny the allegations of Paragraph 67 of the Complaint and on that basis denies those allegations.

### E.    There Is No Safe Level of Perchlorate Consumption for Babies

68.    Perchlorate is a neurotoxic chemical compound linked to critical growth and development functions in infants and young children.[31]

Answer: No response is required to Paragraph 68 of the Complaint because the Court has dismissed Plaintiffs' claims to the extent they are premised on the alleged presence of perchlorate in Hain Celestial's products.  To the extent a response is required, Hain Celestial lacks knowledge or information sufficient to deny the allegations of Paragraph 68 of the Complaint and on that basis denies those allegations.

69.    While a guideline has not explicitly been set, the dangers of perchlorate in human food are recognized by the FDA.[32]  The EPA has also recognized the dangers of perchlorate in drinking water and as of July 2020, has set the maximum contaminant level goal for perchlorate in drinking water to 56 μg/L.  85 F.R. 43990.

Answer: No response is required to Paragraph 69 of the Complaint because the Court has dismissed Plaintiffs' claims to the extent they are premised on the alleged presence of perchlorate in Hain Celestial's products.  To the extent a response is required, Hain Celestial lacks knowledge or information sufficient to deny the allegations of Paragraph 69 of the Complaint and on that basis denies those allegations.

---

[31]  https://www.fda.gov/food/chemicals/perchlorate-questions-and-answers (last accessed Feb. 22, 2022).

[32]  FDA, Exploratory Survey Data on Perchlorate in Food 2004-2005, https://www.fda.gov/food/chemicals/exploratory-survey-data-perchlorate-food-2004-2005 (last accessed Feb. 22, 2022) ("Human exposure to sufficient doses of perchlorate can interfere with iodide uptake into the thyroid gland, disrupting its functions and potentially leading to a reduction in the production of thyroid hormones.").

70.    Perchlorate has also been "linked to IQ loss among children born to mothers with thyroid dysfunction[.]"[33]

Answer: No response is required to Paragraph 70 of the Complaint because the Court has dismissed Plaintiffs' claims to the extent they are premised on the alleged presence of perchlorate in Hain Celestial's products. To the extent a response is required, Hain Celestial lacks knowledge or information sufficient to deny the allegations of Paragraph 70 of the Complaint and on that basis denies those allegations.

## II.    DEFENDANT'S BABY FOOD PRODUCTS CONTAIN DANGEROUS LEVELS OF TOXIC HEAVY METALS AND/OR OTHER TOXINS.

### A.    Lead

71.    The Congressional Report determined that Defendant manufactured and sold Baby Foods with lead levels exceeding all existing standards, including those set for juice and candy, which allow a maximum measurement of 50 ppb and 100 ppb respectively.

Answer: No response is required to Paragraph 71 of the Complaint because the Court has dismissed Plaintiffs' claims to the extent they are premised on the alleged presence of lead in Hain Celestial's products. To the extent a response is required, Hain Celestial denies the allegations of Paragraph 71 of the Complaint.

72.    Defendant's raw material testing revealed: (a) 6 ingredients contained more than 200 ppb lead; (b) 88 ingredients contained more than 20 ppb lead; (c) 115 ingredients contained more than 15 ppb lead; and (d) 27% of ingredients contained more than 5 ppb lead.[34]

Answer: No response is required to Paragraph 72 of the Complaint because the Court has dismissed Plaintiffs' claims to the extent they are premised on the alleged presence of lead in Hain

---

[33] *See* Healthy Babies Bright Futures' Report: *What's in My Baby's Food?* ("HBBF Report"), available at https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf (last accessed Feb. 22, 2022).

[34] *Id.* at pp. 26-27.

Celestial's products.  To the extent a response is required, Hain Celestial responds that Paragraph 72 of the Complaint purports to summarize the findings of the Staff Report, which speaks for itself. Hain Celestial denies that the findings of the Staff Report are accurate, denies that Plaintiffs have accurately characterized the findings of the Staff Report, and denies the allegations of Paragraph 72 of the Complaint.

### B.    Arsenic

73.    Based on Hain's internal documents provided to the Congressional Subcommittee, Hain, indeed, routinely used ingredients with high levels of arsenic.  Hain used brown rice flour that had tested at 309 ppb arsenic, a vitamin pre-mix containing 223 ppb arsenic, and raisin and wheat flour containing 200 ppb arsenic.  The data provided further shows that Hain used at least 24 ingredients after testing found that they contained more than 100 ppb arsenic.[35]

Answer: Paragraph 73 of the Complaint purports to summarize the findings of the Staff Report, which speaks for itself.  Hain Celestial denies that the findings of the Staff Report are accurate, denies that Plaintiffs have accurately characterized the findings of the Staff Report, and denies the allegations of Paragraph 73 of the Complaint.

74.    The Congressional Report determined Defendant manufactured and sold its Baby Foods with levels exceeding all existing standard limits, including those set for juice and candy, which allow a maximum measurement of 50 ppb and 100 ppb, respectively.[36]

Answer: Paragraph 74 of the Complaint purports to summarize the findings of the Staff Report, which speaks for itself.  Hain Celestial denies that the findings of the Staff Report are accurate, denies that Plaintiffs have accurately characterized the findings of the Staff Report, and denies the allegations of Paragraph 74 of the Complaint.

---

[35] *Id.* at 16.

[36] *Id.* at pp. 13-21.

75.     Hain's testing differentiates between Total Arsenic and Inorganic Arsenic, with total arsenic levels exceeding 75 ppb and inorganic arsenic levels exceeding 90 ppb.

Answer: Hain Celestial admits that some of its heavy metals testing differentiates between total arsenic and inorganic arsenic.  Hain Celestial denies the remaining allegations of Paragraph 75 of the Complaint.

**C.     Cadmium**

76.     The Congressional Report determined Defendant manufactured and sold Baby Foods with levels exceeding all existing recommended limits.

Answer: No response is required to Paragraph 76 of the Complaint because the Court has dismissed Plaintiffs' claims to the extent they are premised on the alleged presence of cadmium in Hain Celestial's products.  To the extent a response is required, Hain Celestial responds that Paragraph 76 of the Complaint purports to summarize the findings of the Staff Report, which speaks for itself.  Hain Celestial denies that the findings of the Staff Report are accurate, denies that Plaintiffs have accurately characterized the findings of the Staff Report, and denies the allegations of Paragraph 76 of the Complaint.

77.     Defendant does not test its finished products and instead only tests the ingredients used.  Nevertheless, testing of Defendant's ingredients proves that the company sold products with levels of cadmium that exceed the existing standards. Specifically, the results revealed: (a) 14 ingredients contained more than 100 ppb cadmium, (b) barley flour contained 260 ppb cadmium and (c) 102 ingredients contained more than 20 ppb cadmium.[37]

Answer: No response is required to Paragraph 77 of the Complaint because the Court has dismissed Plaintiffs' claims to the extent they are premised on the alleged presence of cadmium in Hain Celestial's products.  To the extent a response is required, Hain Celestial responds that Paragraph 77 of the Complaint purports to summarize the findings of the Staff Report, which

---

[37] **Exhibit B** at pp. 30-31; *see also*, Hain, *Raw Material Pre-Shipment Test Data History* (Dec. 11, 2019), attached hereto as **Exhibit C**.

speaks for itself.  Hain Celestial denies that the findings of the Staff Report are accurate, denies that Plaintiffs have accurately characterized the findings of the Staff Report, and denies the allegations of Paragraph 77 of the Complaint.

### D.    Mercury

78.    The Congressional Report found that Defendant does not test its ingredients or finished products for mercury.[38] Thus, while Hain products are suspected to contain mercury, there is no way for consumers to know at what level the dangerous toxin is present.

Answer: No response is required to Paragraph 78 of the Complaint because the Court has dismissed Plaintiffs' claims to the extent they are premised on the alleged presence of mercury in Hain Celestial's products.  To the extent a response is required, Hain Celestial responds that Paragraph 78 of the Complaint purports to summarize the findings of the Staff Report, which speaks for itself.  Hain Celestial denies that the findings of the Staff Report are accurate, denies that Plaintiffs have accurately characterized the findings of the Staff Report, and denies the allegations of Paragraph 77 of the Complaint.

### E.    Perchlorate

79.    The Congressional Report found that Defendant does not test its ingredients or finished products for perchlorate.[39]

Answer: No response is required to Paragraph 79 of the Complaint because the Court has dismissed Plaintiffs' claims to the extent they are premised on the alleged presence of perchlorate in Hain Celestial's products.  To the extent a response is required, Hain Celestial responds that Paragraph 79 of the Complaint purports to summarize the findings of the Staff Report, which speaks for itself.  Hain Celestial denies that the findings of the Staff Report are accurate, denies

---

[38] **Exhibit B** at p. 32.

[39] *Id*. at p. 32.

that Plaintiffs have accurately characterized the findings of the Staff Report, and denies the allegations of Paragraph 79 of the Complaint.

80.     However, in 2019, HBBF tested some of Defendant's finished products and found perchlorate present.[40]

Answer: No response is required to Paragraph 80 of the Complaint because the Court has dismissed Plaintiffs' claims to the extent they are premised on the alleged presence of perchlorate in Hain Celestial's products.  To the extent a response is required, Hain Celestial responds that Paragraph 80 of the Complaint purports to summarize the findings of a report by Happy Babies Bright Futures, which speaks for itself.  Hain Celestial denies that the findings of that report are accurate, denies that Plaintiffs have accurately characterized the findings of that report, and denies the allegations of Paragraph 80 of the Complaint.

**F.     Defendant's Own Documents Reveal That Its Baby Food Products Contain Toxic Heavy Metals and/or other Toxins**

81.     Defendant disclosed documents to the Congressional Subcommittee to inform their review.[41]  One of the documents disclosed was Defendant's secret 2019 PowerPoint presentation to the FDA.  Included within was results from testing the FDA conducted on finished product compared to the insufficient testing Defendant conducted raw materials alone.  The results are glaring.  The levels of Toxic Heavy Metal Inorganic Arsenic far exceeded the level in the raw materials 100% of the time.

---

[40] HBBF Report at 34-35.

[41] The Congressional Subcommittee took the FDA, EPA, WHO, and European Union ("EU") standards, discussed above, into account when making its determinations.

| | FDA Standard for Arsenic in Drinking Water (ppb) | Hair Test Results for Arsenic in Raw Materials (ppb) | | FDA Test Results for Inorganic Arsenic in Finished Goods (ppb) | | Increase of Toxic Heavy Metal from Raw Materials to Finished Goods |
|---|---|---|---|---|---|---|
| | | Packaging Date | Avg. Result | Best By Date | Avg. Result | |
| **Total Arsenic**[42] | | 9/8/17 | 56.3 | 3/2/19 | 80.3 | 43% |
| | | 9/14/17 | 57.3 | 3/8/19 | 74.0 | 29% |
| | | 9/26/17-9/27/17 | 61.3 | 3/20/19-3/21/19 | 96.0 | 57% |
| | | 10/18/17 | 59.0 | 4/11/19 | 100.0 | 69% |
| | | 11/3/17 | 67.0 | 4/27/19 | 129.0 | 93% |
| | | 12/13/17-12/20/17 | 62.7 | 6/6/19-6/13/19 | 101.0 | 61% |
| **Inorganic Arsenic** | 10 ppb | 1/3/2018 | 64.0 | 6/27/19 | 100.0 | 56% |
| | | 1/25/2018 | 80.5 | 7/19/19 | 115.5 | 43% |
| | | 2/24/2018 | 75.7 | 8/8/19 | 97.0 | 28% |
| | | 6/1/2018 | 82.5 | 11/23/19 | 108.0 | 31% |

*This data is derived from the chart provided in Hain's Presentation to the FDA.*[43]

 Answer: Hain Celestial admits that it produced documents to the Congressional Subcommittee on Consumer and Economic Policy, including a PowerPoint presentation that it delivered to the FDA in 2019. The remainder of Paragraph 81 of the Complaint purports to summarize the contents of that PowerPoint presentation, which speaks for itself. Hain Celestial denies that Plaintiffs' summary of the PowerPoint presentation is complete or accurate and denies the remaining allegations, if any, of Paragraph 81 of the Complaint.

---

[42] The FDA provides guidance for organic arsenic and inorganic arsenic separately as stated herein.

[43] *See* **Exhibit D,** Hain Celestial PowerPoint "FDA Testing Result Investigation August 1, 2019"

III.   **DEFENDANT REPEATEDLY FAILS TO REDUCE THE TOXIC HEAVY METALS AND/OR OTHER TOXINS IN ITS PRODUCTS**

A.   **Hain Ignored Reports Highlighting the Presence of Toxic Heavy Metals and/or other toxins for the Past Ten Years**

82.   For nearly a decade, Defendant has possessed medical and scientific data linking childhood exposure from Toxic Heavy Metals and/or other toxins to long-term and irreversible health and cognitive issues.

Answer: Denied.

83.   On December 6, 2017, Happy Babies Bright Futures issued a report finding rice-based infant cereals, including Defendant's cereals, contained 84% more arsenic than non-rice multigrain products ("Arsenic Report").[44]  Notably, the HBBF Report found Toxic Heavy Metals and/or other toxins in the same Baby Foods at issue in this case, among others.  For example, as listed below, Defendant's "Earth's Best" Whole Grain Rice Cereal contained significant levels of arsenic, lead, and cadmium.[45]

Answer: Paragraph 82 of the Complaint consists of a summary of the Happy Babies Bright Futures report cited in footnote 44, which speaks for itself.  Hain Celestial denies the findings of the Happy Babies Bright Futures report, denies that Plaintiffs have accurately characterized the findings of that report, and denies the remaining allegations, if any, of Paragraph 83 of the Complaint.

84.   Hain joined The Baby Food Council in 2019.  This coalition joined major baby food manufacturers with U.S. Department of Agriculture ("USDA"), the FDA, and leading health and environmental experts in the field to increase the safety of baby food products in the U.S.[46]

Answer: Admitted.

---

[44]   Healthy Babies Bright Futures, *Arsenic in 9 Brands of Infant Cereal* (Dec. 2017) (https://www.healthybabycereals.org/sites/healthybabycereals.org/files/2017-12/HBBF_ArsenicInInfantCerealReport.pdf) (last visited on Mar. 19, 2021).

[45]   HBBF Report at 19.

[46]   https://www.foodsafetynews.com/2019/10/coalition-called-the-baby-food-council-says-it-will-take-on-heavy-metals/

85.    In part, The Baby Food Council formally focused on reducing dangerous Toxic Heavy Metals and/or other toxins in baby food products.[47]

Answer: Admitted.

86.    Expressing its commitment to reducing Toxic Heavy Metals and/or other toxins in its products, thereby acknowledging a problem and promising to fix the issue, Hain executive, Raul Fajardo, Senior Vice President Technical Services, publicly stated: "Although heavy metals are naturally occurring in the environment, we are always looking to reduce their presence in food. Earth's Best is excited to partner with the members of the Baby Food Council to support this important initiative."[48]

Answer: Hain Celestial admits that Paragraph 86 of the Complaint accurately quotes a statement by Raul Fajardo, who formerly held the title of Senior Vice President, Technical Services at Hain Celestial. Hain Celestial denies the remaining allegations of Paragraph 86 of the Complaint.

87.    However, Hain's subsequent actions fall far short of this statement. Moreover, this statement fails to reveal the full truth of Hain's production processes. Hain is not working to reduce the dangerous levels of Toxic Heavy Metals and/or other toxins in its products. In fact, it does not even have adequate data to rely on due to its arbitrary acceptable limits and inadequate testing procedures.

Answer: Denied.

**B.    Hain Routinely Fails to Test Finished Products for Toxins**

88.    Defendant's internal policies only require testing *some* raw materials and ingredients for *some* Toxic Heavy Metals and/or other toxins. Further, it does not even test its finished products.

Answer: Denied.

89.    Defendant does not conduct inorganic arsenic, mercury or perchlorate testing on its ingredients or finished products. The levels of these toxins are unknown.

Answer: Denied.

---

[47] *Id.*

[48] *Id.*

90.    As a result of never testing its finished products, Defendant has no record of the level of Toxic Heavy Metals and/or other toxins present in its products being sold in stores every day.

Answer: Denied.

**C.    Hain Set Arbitrary and Inadequate Internal Specifications**

91.    The presence of Toxic Heavy Metals and/or other toxins, as indicated in ¶ 80, did not come as a shock to Hain.  To the contrary, Defendant knew and set arbitrary internal specifications on allowable levels of Toxic Heavy Metals and/or other toxins in its products.

Answer: Denied.

92.    Hain's specifications are wholly unmoored from any scientific basis.  Worse yet, its capricious specifications remain as is and, thus, are still unsafe, exceeding well-known FDA, EPA, WHO, and EU standards in other contexts.

Answer: Denied.

93.    Not only are Defendant's internal specifications insufficient, but Defendant *fails to abide by its own inadequate internal specifications*.  Ignoring its own limits, Hain sells products with concentrations above 200 ppb of arsenic, lead, or cadmium.

Answer: Denied.

**D.    Hain Significantly Exceeded its Own Standards**

94.    Documents provided by Hain to the FDA in 2019 show Hain violated its own internal specifications by using ingredients containing as much as 353 ppb of lead and 309 ppb of arsenic.  This testing further confirmed lead concentrations of up to 352 ppb in vitamin pre-mix. Hain also used at least six ingredients containing more than 200 ppb of lead, at least 88 ingredients containing 20 ppb of lead or more, and at least 115 ingredients containing 15 ppb of lead or more.  Additionally, the testing demonstrated that at least 27% of its ingredients contained 5 ppb of lead or more.  None of Defendant's test results showed an ingredient with lead concentrations at or below 1 ppb.

Answer: Paragraph 94 of the Complaint purports to summarize unspecified test results that Hain Celestial provided to the FDA in 2019, which speak for themselves.  Hain Celestial denies that Plaintiffs' characterization of those test results is accurate and denies the remaining allegations, if any, of Paragraph 94 of the Complaint.

95.     Additionally, Hain's limited ingredient testing showed concentrations of as much as 129 ppb of inorganic arsenic.  Its ingredient testing also showed that Hain routinely used ingredients with high arsenic levels, including brown rice flour containing 309 ppb of arsenic, a vitamin pre-mix containing 223 ppb of arsenic, and raisin and wheat flour containing 200 ppb of arsenic.  Hain used at least 24 ingredients known to contain more than 100 ppb of arsenic, such as flours, powders, extracts, and purees of various vegetables and grains.

Answer: Paragraph 95 of the Complaint purports to summarize unspecified test results that Hain Celestial provided to the FDA in 2019, which speak for themselves.  Hain Celestial denies that Plaintiffs' characterization of those test results is accurate and denies the remaining allegations, if any, of Paragraph 95 of the Complaint.

96.     Hain's testing further revealed that it used many ingredients with dangerous cadmium concentrations, including 14 ingredients with over 100 ppb of cadmium (and up to 260 ppb of cadmium), and at least 102 ingredients containing 20 ppb of cadmium or more.

Answer: Paragraph 96 of the Complaint purports to summarize unspecified test results that Hain Celestial provided to the FDA in 2019, which speak for themselves.  Hain Celestial denies that Plaintiffs' characterization of those test results is accurate and denies the remaining allegations, if any, of Paragraph 96 of the Complaint.

97.     According to Hain's internal raw material pre-shipment test data history, although the arsenic spec limit was 100 ppb and the lead spec limit was 100 ppb, it had a "deviation approved" for its vitamin premix after November 2019 lab results demonstrated 223 ppb arsenic and 352 ppb lead in this product.[49]

Answer: Paragraph 97 of the Complaint purports to summarize the raw material pre-shipment test data attached to the Complaint, which speaks for itself.  Hain Celestial denies that Plaintiffs' characterization of this data is accurate and denies the remaining allegations, if any, of Paragraph 97 of the Complaint.

---

[49] *See* **Exhibit C**.

98.     In fact, according to Hain's internal documents, Hain **approved** a "deviation" for "Org Cinnamon Powder" where the cadmium spec limit was 100 ppb.  The February 2019 lab result indicated 102 ppb cadmium in this product.

Answer: Paragraph 98 of the Complaint purports to summarize the raw material pre-shipment test data attached to the Complaint, which speaks for itself.  Hain Celestial denies that Plaintiffs' characterization of this data is accurate and denies the remaining allegations, if any, of Paragraph 98 of the Complaint.

99.     At times, Hain also arbitrarily changed its specifications to a "calculat[ion] [of] heavy metals on consumed basis," meaning the Company tested for Toxic Heavy Metals and/or other toxins based on serving size, rather than the total for the product.  For example, based on this changed specification, Hain accepted the following ingredients even though they **exceeded** the Company's own internal allowable caps for Toxic Heavy Metals and/or other toxins: (i) June 2018 lab results finding 102 ppb cadmium in "org[anic] oat flour" to a spec of 100 ppb cadmium; (ii) January 2018 thirteen lab results finding as much as 260 ppb cadmium and 250 ppb lead (to a spec of 100 ppb lead) in various products; and (iii) 2017 lab results finding levels of arsenic, cadmium, and lead exceeding the spec limits.

Answer: Denied.

100.    Internal documents show that Hain circumvents its own specifications by approving deviations or reinventing on what basis to analyze the results, often noting that instead levels were "calculated [] on consumed basis" where a particular Toxic Heavy Metal exceeded the arbitrary and unreasonably high pre-set standard.

Answer: Denied.

## IV.   DEFENDANT'S ADVERTISEMENTS FALSELY CLAIM THAT ITS BABY FOODS ARE SAFE, AND FRAUDULENTLY OMIT ALL MATERIAL INFORMATION ABOUT TOXIC HEAVY METALS AND/OR OTHER TOXINS

101.    Defendant's marketing wrongfully represents that its Baby Food products are of a particular quality, grade or standard and contain certain characteristics that the products do not actually possess.

Answer: Denied.

102.    Additionally, Hain omits key information from its product labels regarding contaminants such as Toxic Heavy Metals and/or other toxins to parents' detriment.  By way of example, the following label for Whole Grain Rice Cereal demonstrates one of Hain's many material omissions and misrepresentations:

 

Answer: Hain Celestial admits that the label depicted in Paragraph 102 of the Complaint appears to be one version of the labeling for its Whole Grain Rice Cereal. Hain Celestial denies that this label contains any "material omissions and representations" and denies the remaining allegations of Paragraph 102 of the Complaint.

103.    Defendant's label contains "Grown without Potentially Harmful Pesticides or Herbicides," "No Genetically Engineered Ingredients," "Organic," and "Pure." All of these statements build consumer trust in the safety of Hain products.

Answer: Hain Celestial admits that the label depicted in Paragraph 102 of the Complaint includes the phrases "Grown without Potentially Harmful Pesticides or Herbicides," "No Genetically Engineered Ingredients," "Organic," and "Pure." Hain Celestial lacks knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 103 of the Complaint and on that basis denies those allegations.

104.    Defendant also touts its production of "pure, quality products." This representation, among others, misleads consumers into believing that Hain's Baby Food products do not contain Toxic Heavy Metals and/or other toxins.

<u>Answer:</u> Hain Celestial admits that certain of its product labels include the phrase "pure, quality products." Hain Celestial denies that this statement "misleads" consumers and denies the remaining allegations of Paragraph 104 of the Complaint.

105.    Defendant further markets, advertises, represents, and warrants its products as safe and suitable for babies' consumption and in compliance with FDA guidelines.

<u>Answer:</u> Denied.

106.    Defendant's private August 2019 presentation to the FDA reveals Hain's corporate policies to test only ingredients, not final products and admits that its testing results do not provide accurate data regarding the levels of arsenic in Defendant's Baby Foods.[50] The Congressional Report stated in response:

> That policy ***recklessly endangers babies and children and prevents the companies from even knowing the full extent of the danger presented by their products***. As the Hain presentation lays bare, ingredient testing does not work. Hain's finished baby foods had more arsenic than their ingredients 100% of the time—28-93% more inorganic arsenic. ***That means that only testing ingredients gives the false appearance of lower-than-actual toxic heavy metal levels***.[51]

<u>Answer:</u> Paragraph 106 of the Complaint purports to summarize the contents of the PowerPoint presentation attached as Exhibit D to the Complaint and the contents of the Staff Report, which speak for themselves. Hain Celestial denies Plaintiffs' characterization of these documents, denies the claims set forth in the quoted paragraph of the Staff Report, and denies the remaining allegations, if any, of Paragraph 106 of the Complaint.

---

[50]  Hain, *PowerPoint Presentation to Food and Drug Administration: FDA Testing Result Investigation* (Aug. 1, 2019) (https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2.pdf), attached hereto as **<u>Exhibit D</u>**.

[51]  **<u>Exhibit B</u>** at pp. 56-57.

107.    Despite repeated testing that confirms the presence of Toxic Heavy Metals and/or other toxins in Defendant's Baby Foods and Defendant's own admission that its products contain levels that far exceed safe levels, ***Defendant has failed to disclose any information to consumers or update its warning label***.  Instead, Defendant continues to falsely reassure its customers that its Baby Foods are safe.

Answer: Denied.

108.    For example, on its website Defendant touts:

> ***Always exceeding the highest standards of safety and purity.***  Since our very first jar of organic baby food was hand crafted nearly 35 years ago, we hold strong to our commitment to keep all Earth's Best foods safe – we reject ingredients annually because they do not meet our specifications. Along with our participation with the Baby Food Council, ***the Hain Celestial Group is committed to the goals of continuing to work toward minimizing exposure to environmental contaminants associated with common baby food commodities***.[52]

Answer: Paragraph 108 of the Complaint consists of a quotation from Hain Celestial's website, which speaks for itself.  To the extent a response is required, Hain Celestial admits that its website includes the following text:



> ### Always exceeding the highest standards of safety and purity
>
> Since our very first jar of organic baby food was hand crafted nearly 35 years ago, we hold strong to our commitment to keep all Earth's Best® foods safe – we reject ingredients annually because they do not meet our specifications. Along with our participation with the Baby Food Council, The Hain Celestial Group is committed to the goals of continuing to work toward minimizing exposure to environmental contaminants associated with common baby food commodities.

Hain Celestial denies the remaining allegations, if any, of Paragraph 108 of the Complaint.

---

[52]    *All You Need to Know About Earth's Best Organic® Infant Cereal Ingredients*, https://www.earthsbest.com/resource/about-iron-fortified-organic-infant-cereal-ingredients/

109.    Hain intended that Plaintiffs and Class Members rely on these representations when purchasing its products.

Answer: Denied.

110.    Because Defendant's internal records, internal testing requirements, and internal specifications were not known to the public, and further because Defendant's product labels and advertisements omitted this material information, Plaintiffs and Class Members had no reason to know of the presence of Toxic Heavy Metals and/or other toxins in the Baby Food products.

Answer: Denied.

111.    Based on the prior reports Hain was aware of, Defendant's internal testing protocols and internal specifications, Defendant knew or should have known of the presence of Toxic Heavy Metals and/or other toxins in its Baby Food products.

Answer: Denied.

112.    Yet, Defendant omitted this material information from its product labels, marketing materials, and advertisements.

Answer: Denied.

113.    Hain failed in its duty to ensure the truth of its product labels and advertisements.

Answer: Denied.

114.    Consumers reasonably rely upon Defendant's statements, representations, and advertisements regarding the safety of its products. They would have no reason to suspect the presence of Toxic Heavy Metals and/or other toxins in Defendant's Baby Foods or take necessary precautions.

Answer: Denied.

115.    Consumers reasonably rely upon Defendant's statements, representations, and advertisements regarding the safety of its products. Consumers have no reason to suspect the presence of Toxic Heavy Metals and/or other toxins in Defendant's Baby Foods or take necessary precautions to protect themselves from consuming Toxic Heavy Metals and/or other toxins.

Answer: Denied.

## V.    BABY FOODS CAN BE MANUFACTURED WITHOUT MEASURABLE LEVELS OF TOXIC HEAVY METALS AND/OR OTHER TOXINS

### A.    Other Baby Food Manufacturers Offer Safer Alternatives

116.    In contrast to Hain, other baby food manufacturers have produced products free from Toxic Heavy Metals and/or other toxins or contaminants or with levels that are not measurable.

Answer: Hain Celestial denies that its baby food products are "toxic." Hain Celestial lacks knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 116 of the Complaint and on that basis denies those allegations.

117.    The Clean Label Project tests products for more than 400 contaminants, including heavy metals, chemicals, and plastics, and presents its Purity Award to companies with products with the lowest levels of the contaminants when compared to other products in a given category.[53]

Answer: Hain Celestial lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 117 of the Complaint (including those set forth in the source cited in footnote 53) and on that basis denies those allegations.

118.    Cerebelly, manufacturer of shelf-stable pureed baby food pouches and Once Upon a Farm, a manufacturer of cold-pressed, refrigerated blends for infants and children, were both recipients of the Clean Label Project's Purity Award.[54]

Answer: Hain Celestial lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 118 of the Complaint (including those set forth in the source cited in footnote 54) and on that basis denies those allegations.

---

[53]    https://cleanlabelproject.org/purity-award/ (last accessed Feb. 22, 2022); https://cleanlabelproject.org/Once%20Upon%20A%20Farm/ (last accessed Feb. 22, 2022).

[54]    https://www.foodnavigator-usa.com/Article/2021/02/08/Cerebelly-receives-The-Clean-Label-Project-Purity-Award-confirming-its-products-are-free-from-heavy-metals# (last accessed Feb. 22, 2022).

119.     Nature's One is another baby food manufacturer of organic pediatric nutritional products, including infant and toddler formulas, who received the Clean Label Project's Purity Award.[55] According to independent laboratory tests, ***its products regularly test at zero for harmful contaminants***.[56]

Answer: Hain Celestial lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 119 of the Complaint (including those set forth in the sources cited in footnotes 55 and 56) and on that basis denies those allegations.

120.     Manufacturer, Yumi, also takes numerous proactive steps to ensure its products are safe for infants and children.[57] Yumi does not use ingredients such as rice and fruit juice, both known to contain high levels of arsenic.[58] Yumi also regularly tests both the ingredients and finished products for Toxic Heavy Metals and/or other toxins.[59]

Answer: Hain Celestial lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 120 of the Complaint (including those set forth in the sources cited in footnotes 57, 58, and 59) and on that basis denies those allegations.

**B.     There Are Methods to Reduce Toxic Heavy Metals and/or other toxins to Non-Worrisome Levels**

121.     "[T]here are ways for [baby food] manufacturers to significantly reduce or eliminate these [heavy] metals from their products."[60] Consumer Reports identified baby food products with heavy metal levels low enough to not cause concern, as well as some products with heavy metal levels that were not measurable, and none were manufactured by Defendant.[61]

---

[55] https://cleanlabelproject.org/Natures-one/ (last accessed Feb. 22, 2022).

[56] Exclusive: As baby food industry is slow to reduce toxic metals, blueprint already exists | WJLA (last accessed on Feb. 22, 2022)

[57] https://helloyumi.com/heavy-metals/ (last accessed Feb. 22, 2022).

[58] *Id.*

[59] *Id.*

[60] *Id.*

[61]  https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/ (last accessed Feb. 22, 2022)

Answer: Paragraph 121 of the Complaint purports to summarize the contents of the Consumer Reports article cited in footnotes 60 and 61, which speaks for itself. Hain Celestial denies that the contents of that article are accurate, denies that Plaintiffs have accurately characterized the substance of that article, and denies the allegations of Paragraph 121 of the Complaint.

122.  In testing conducted by Consumer Reports, approximately one-third of tested products had levels of heavy metals that were below levels of concern and other products had immeasurable levels of heavy metals.[62]  As stated by Dr. James E. Rogers, the Consumer Reports Director of Food Safety Research and Testing, "'Every category of food we tested was represented in that lower-risk group. That indicates that there are ways for manufacturers to significantly reduce or eliminate these [heavy] metals from their products.'"[63]

Answer: Paragraph 121 of the Complaint purports to summarize the contents of the Consumer Reports article cited in footnotes 62 and 63, which speaks for itself. Hain Celestial denies that the contents of that article are accurate, denies that Plaintiffs have accurately characterized the substance of that article, and denies the allegations of Paragraph 122 of the Complaint.

123.  In addition, as a result of public health efforts, exposure to lead has consistently and notably decreased over the past 40 years.[64]  These efforts include increasing awareness of the dangers of even low levels of lead exposure to young children.[65] The progress towards decreasing childhood exposure to lead was so impressive that

---

[62] *Id.*

[63] *Id.*

[64] Dignam, T., Kaufmann, R. B., LeStourgeon, L., & Brown, M. J. (2019). Control of Lead Sources in the United States, 1970-2017: Public Health Progress and Current Challenges to Eliminating Lead Exposure. Journal of public health management and practice: JPHMP, 25 Suppl 1, Lead Poisoning Prevention (Suppl 1 LEAD POISONING PREVENTION), S13–S22. Available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6522252/#R6 (last accessed Feb. 22, 2022).

[65] *Id.*

the CDC identified "childhood lead poisoning prevention as 1 of 10 great US public health achievements during 2001 to 2010."[66]

Answer: Hain Celestial lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 123 of the Complaint and on that basis denies those allegations. Answering further, Hain Celestial notes that the Court has dismissed Plaintiffs' claims to the extent they are based on the alleged presence of lead in Hain Celestial's products.

124.    There are simple, inexpensive methods to reduce Toxic Heavy Metals and/or other toxins in food products.  For example, the inorganic forms of arsenic, referred to as arsenite and arsenate, are water-soluble and found in rice.

Answer: Hain Celestial lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 124 of the Complaint and on that basis denies those allegations.

## CLASS ACTION ALLEGATIONS

125.    Plaintiffs Asyia Andrews, Jessie McNaughton, and Lisa Gans bring this action individually and on behalf of the following Class pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> **Class**: All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of the United States (the "Class").[67]

Answer: Paragraph 125 of the Complaint consists of a definition of a putative nationwide class, to which no response is required.  To the extent a response is required, Hain Celestial admits that Plaintiffs Aysia Andrews, Jessie McNaughton, and Lisa Gans purport to bring this action on behalf of the putative nationwide class defined in Paragraph 125 of the Complaint, but it denies

---

[66] *Id.*

[67] Plaintiffs reserve the right to re-define the Class definition prior to class certification and after having the opportunity to conduct discovery.

that this class is amenable to certification.  Hain Celestial denies the remaining allegations, if any, of Paragraph 125 of the Complaint.

126.    Plaintiff Lizette Romero Ortiz brings this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of California (the "California Subclass").

Answer: Paragraph 126 of the Complaint consists of a definition of a putative California subclass, to which no response is required.  To the extent a response is required, Hain Celestial admits that Plaintiff Lizette Romero Ortiz purports to bring this action on behalf of the putative California subclass defined in Paragraph 126 of the Complaint, but it denies that this class is amenable to certification.  Hain Celestial denies the remaining allegations, if any, of Paragraph 126 of the Complaint.

127.    Plaintiffs Lisa Gans and Zeynep Senturk Mannix bring this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of Washington D.C. (the "D.C. Subclass").

Answer: Paragraph 127 of the Complaint consists of a definition of a putative Washington D.C. subclass, to which no response is required.  To the extent a response is required, Hain Celestial admits that Plaintiffs Lisa Gans and Zeynep Senturk Mannix purport to bring this action on behalf of the putative Washington D.C. subclass defined in Paragraph 127 of the Complaint, but it denies that this class is amenable to certification.  Hain Celestial denies the remaining allegations, if any, of Paragraph 127 of the Complaint.

128.   Plaintiff Jade Huguenot brings this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of Indiana (the "Idaho Subclass").

Answer: Paragraph 128 of the Complaint consists of a definition of a putative Indiana subclass, to which no response is required.  To the extent a response is required, Hain Celestial admits that Plaintiff Jade Huguenot purports to bring this action on behalf of the putative Idaho subclass defined in Paragraph 128 of the Complaint, but it denies that this class is amenable to certification.  Hain Celestial denies the remaining allegations, if any, of Paragraph 128 of the Complaint.

129.   Plaintiff Cassie Isza brings this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of Indiana (the "Indiana Subclass").

Answer: Paragraph 129 of the Complaint consists of a definition of a putative Indiana subclass, to which no response is required.  To the extent a response is required, Hain Celestial admits that Plaintiff Cassie Isza purports to bring this action on behalf of the putative Indiana subclass defined in Paragraph 129 of the Complaint, but it denies that this class is amenable to certification.  Hain Celestial denies the remaining allegations, if any, of Paragraph 129 of the Complaint.

130.    Plaintiff Shahalis Wilson brings this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of Kentucky (the "Kentucky Subclass").

Answer: Paragraph 130 of the Complaint consists of a definition of a putative Kentucky subclass, to which no response is required.  To the extent a response is required, Hain Celestial admits that Plaintiff Shahalis Wilson purports to bring this action on behalf of the putative Kentucky subclass defined in Paragraph 130 of the Complaint, but it denies that this class is amenable to certification.  Hain Celestial denies the remaining allegations, if any, of Paragraph 130 of the Complaint.

131.    Plaintiff Bethany Nickerson brings this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of Maine (the "Maine Subclass").

Answer: Paragraph 131 of the Complaint consists of a definition of a putative Maine subclass, to which no response is required.  To the extent a response is required, Hain Celestial admits that Plaintiff Bethany Nickerson purports to bring this action on behalf of the putative Maine subclass defined in Paragraph 131 of the Complaint, but it denies that this class is amenable to certification.  Hain Celestial denies the remaining allegations, if any, of Paragraph 131 of the Complaint.

132.    Plaintiff Myjorie Philippe brings this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of Massachusetts (the "Massachusetts Subclass").

Answer: Paragraph 132 of the Complaint consists of a definition of a putative Massachusetts subclass, to which no response is required. To the extent a response is required, Hain Celestial admits that Plaintiff Myjorie Philippe purports to bring this action on behalf of the putative Massachusetts subclass defined in Paragraph 132 of the Complaint, but it denies that this class is amenable to certification. Hain Celestial denies the remaining allegations, if any, of Paragraph 132 of the Complaint.

133.    Plaintiff Cassie Caldwell brings this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of Missouri (the "Missouri Subclass").

Answer: Paragraph 133 of the Complaint consists of a definition of a putative Missouri subclass, to which no response is required. To the extent a response is required, Hain Celestial admits that Plaintiff Cassie Caldwell purports to bring this action on behalf of the putative Missouri subclass defined in Paragraph 133 of the Complaint, but it denies that this class is amenable to certification. Hain Celestial denies the remaining allegations, if any, of Paragraph 133 of the Complaint.

134.  Plaintiff Elena Thormahlen brings this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of Nevada (the "Nevada Subclass").

Answer: Paragraph 134 of the Complaint consists of a definition of a putative Nevada subclass, to which no response is required. To the extent a response is required, Hain Celestial admits that Plaintiff Elena Thormahlen purports to bring this action on behalf of the putative Nevada subclass defined in Paragraph 134 of the Complaint, but it denies that this class is amenable to certification. Hain Celestial denies the remaining allegations, if any, of Paragraph 134 of the Complaint.

135.  Plaintiff Carolyn Leary brings this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of New Hampshire (the "New Hampshire Subclass").

Answer: Paragraph 135 of the Complaint consists of a definition of a putative New Hampshire subclass, to which no response is required. To the extent a response is required, Hain Celestial admits that Plaintiff Carolyn Leary purports to bring this action on behalf of the putative New Hampshire subclass defined in Paragraph 135 of the Complaint, but it denies that this class is amenable to certification. Hain Celestial denies the remaining allegations, if any, of Paragraph 135 of the Complaint.

136.    Plaintiff Asyia Andrews brings this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of New Jersey (the "New Jersey Subclass").

Answer: Paragraph 136 of the Complaint consists of a definition of a putative New Jersey subclass, to which no response is required.  To the extent a response is required, Hain Celestial admits that Plaintiff Aysia Andrews purports to bring this action on behalf of the putative New Jersey subclass defined in Paragraph 136 of the Complaint, but it denies that this class is amenable to certification.  Hain Celestial denies the remaining allegations, if any, of Paragraph 136 of the Complaint.

137.    Plaintiff Helen Howard brings this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of North Carolina (the "North Carolina Subclass").

Answer: Paragraph 137 of the Complaint consists of a definition of a putative North Carolina subclass, to which no response is required.  To the extent a response is required, Hain Celestial admits that Plaintiff Helen Howard purports to bring this action on behalf of the putative North Carolina subclass defined in Paragraph 137 of the Complaint, but it denies that this class is amenable to certification.  Hain Celestial denies the remaining allegations, if any, of Paragraph 137 of the Complaint.

138.    Plaintiff Tanya Motsay brings this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of Pennsylvania (the "Pennsylvania Subclass").

Answer: Paragraph 138 of the Complaint consists of a definition of a putative Pennsylvania subclass, to which no response is required. To the extent a response is required, Hain Celestial admits that Plaintiff Tanya Motsay purports to bring this action on behalf of the putative Pennsylvania subclass defined in Paragraph 138 of the Complaint, but it denies that this class is amenable to certification. Hain Celestial denies the remaining allegations, if any, of Paragraph 138 of the Complaint.

139.    Plaintiff Amanda Roman brings this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of Rhode Island (the "Rhode Island Subclass").

Answer: Paragraph 139 of the Complaint consists of a definition of a putative Rhode Island subclass, to which no response is required. To the extent a response is required, Hain Celestial admits that Plaintiff Amanda Roman purports to bring this action on behalf of the putative Rhode Island subclass defined in Paragraph 139 of the Complaint, but it denies that this class is amenable to certification. Hain Celestial denies the remaining allegations, if any, of Paragraph 139 of the Complaint.

140.    Plaintiffs Stephanie Weimer and Simone Craig bring this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of Virginia (the "Virginia Subclass").

Answer: Paragraph 140 of the Complaint consists of a definition of a putative Virginia subclass, to which no response is required. To the extent a response is required, Hain Celestial admits that Plaintiffs Stephanie Weimer and Simone Craig purport to bring this action on behalf of the putative Virginia subclass defined in Paragraph 140 of the Complaint, but it denies that this class is amenable to certification. Hain Celestial denies the remaining allegations, if any, of Paragraph 140 of the Complaint.

141.    Plaintiff Monica Hazelwood brings this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who purchased the Baby Foods for household or business use, and not for resale, during the period from February 5, 2015 to the present (the "Class Period"), while being residents of the state of Washington (the "Washington Subclass").

Answer: Paragraph 141 of the Complaint consists of a definition of a putative Washington subclass, to which no response is required. To the extent a response is required, Hain Celestial admits that Plaintiff Monica Hazelwood purports to bring this action on behalf of the putative Washington subclass defined in Paragraph 141 of the Complaint, but it denies that this class is amenable to certification. Hain Celestial denies the remaining allegations, if any, of Paragraph 141 of the Complaint.

142. **Excluded from the Class and each Subclass are**: (1) any Judge or Magistrate presiding over this action, any members of their immediate families, and any of their staff; (2) the Defendant, Defendant's subsidiaries, affiliates, parents, successors, predecessors, any entities in which the Defendant has a controlling interest, and their current or former employees, officers, and directors from February 5, 2015 to present; and (3) Plaintiffs' counsel and Defendant's counsel.

Answer: Paragraph 142 consists of a statement of the individuals and entities excluded from the putative class, to which no response is required. To the extent a response is required, Hain Celestial admits that Plaintiffs purport to exclude the individuals and entities identified in Paragraph 142 of the Complaint from the putative class, but it denies that the putative class and subclasses Plaintiffs seek to certify are properly certifiable. Hain Celestial denies the remaining allegations, if any, of Paragraph 143 of the Complaint.

143. **Numerosity (Rule 23(a)(1))**: The exact number of members of the Class is unknown and currently unavailable to Plaintiffs, but joinder of individual members herein is impractical. The Class is likely comprised of hundreds of thousands of consumers. Sales figures indicate that millions of individuals purchased Defendant's Baby Foods. The precise number of Class members, and their addresses, is unknown to Plaintiffs at this time, but can be ascertained from Defendant's records and/or retailer records. The members of the Class may be notified of the pendency of this action by mail or email, internet postings and/or publications, and supplemented (if deemed necessary or appropriate by the Court) by published notice.

Answer: Paragraph 143 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial denies the allegations of Paragraph 143 of the Complaint.

144. **Predominant Common Questions (Rule 23(a)(2))**: The Classes claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members. The common and legal questions include, without limitation:

  a. Whether Defendant knew or should have known that its Baby Foods contained Toxic Heavy Metals and/or other toxins that rendered Defendant's Baby Foods unsafe for babies;

  b. Whether Defendant wrongfully represented and continues to represent that its Baby Foods are safe for babies' consumption;

c. Whether Defendant's representations, advertisements, warranties, labeling, packaging, and logos are false, deceptive, and misleading;

d. Whether Defendant had knowledge that those representations were likely to deceive a reasonable consumer;

e. Whether Defendant had knowledge that those representations were false, deceptive, or misleading;

f. Whether Defendant continued to disseminate those false, misleading, and deceptive representations;

g. Whether Defendant failed to warn and disclose material facts regarding its Baby Foods and concealed internal testing results revealing dangerous levels of arsenic, lead, cadmium, mercury, and other heavy metals that are unsafe for babies;

h. Whether Defendant's testing showed that Defendant's products contained Toxic Heavy Metals and/or other toxins;

i. Whether Defendant violated the state consumer protection statutes alleged herein;

j. Whether Defendant was unjustly enriched; and

k. The nature of relief, including damages and equitable relief, to which Plaintiffs and members of the Classes are entitled.

Answer: Paragraph 144 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial denies the allegations of Paragraph 144 of the Complaint.

145. **Typicality of Claims (Rule 23(a)(3))**: Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like all other Class members, purchased Defendant's Baby Foods, suffered damages as a result of that purchase, and seeks the same relief as the proposed Class members.

Answer: Paragraph 145 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial denies the allegations of Paragraph 145 of the Complaint.

146.   **Adequacy of Representation (Rule 23(a)(4))**: Plaintiffs adequately represent the Class because their interests do not conflict with the interests of the members of the Class, and they have retained counsel competent and experienced in complex class action and consumer litigation.

Answer: Paragraph 146 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial denies the allegations of Paragraph 146 of the Complaint.

147.   Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the Classes.

Answer: Paragraph 147 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial denies the allegations of Paragraph 147 of the Complaint.

148.   **Superiority (Rule 23(b)(3))**: A class action is superior to other available means of adjudication for this controversy. It would be impracticable for members of the Class to individually litigate their own claims against Defendant because the damages suffered by Plaintiffs and the members of the Classes are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments and delay and expenses to the court system. A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

Answer: Paragraph 148 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial denies the allegations of Paragraph 148 of the Complaint.

### Declaratory Relief
### (Fed. R. Civ. P. 23(b)(1) and (2))

149.   In the alternative, this action may properly be maintained as a class action because:

a.   the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendant; or

b.   the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual members of the

Class which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

c.  Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

Answer: Paragraph 149 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial denies the allegations of Paragraph 149 of the Complaint.

### Issue Certification (Fed. R. Civ. P. 23(c)(4))

150.  In the alternative, the common questions of fact and law, set forth in Paragraph 74 are appropriate for issue certification on behalf of the proposed Class.

Answer: Paragraph 150 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial denies the allegations of Paragraph 150 of the Complaint.

### CAUSES OF ACTION

### COUNT I
### BREACH OF EXPRESS WARRANTY
*(On behalf of Plaintiffs Asyia Andrews, Jessie McNaughton, Lisa Gans, and the Class against Defendant)*

151.  Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

Answer: Hain Celestial incorporates its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

152.  Plaintiffs bring this claim on behalf of themselves and members of the Class.

Answer: Hain Celestial admits that Plaintiffs Aysia Andrews, Jessie McNaughton, and Lisa Gans purport to assert a claim for breach of express warranty against Hain Celestial on behalf of themselves and a putative class, but it denies that this claim is meritorious, denies that it has

breached any express warranty, and denies that this claim is amenable to class-wide resolution.

Hain Celestial denies the remaining allegations, if any, of Paragraph 152 of the Complaint.

153.    Express warranties by sellers of consumer goods are created when an affirmation of fact or promise is made by the seller to the buyer, which relates to the goods and becomes the basis of the bargain.  Such warranties can also be created based upon descriptions of the goods which are made as part of the basis of the bargain that the goods shall conform to the description.

Answer: Paragraph 153 of the Complaint consists of a legal conclusion to which no response is required.  To the extent a response is required, Hain Celestial denies the allegations of Paragraph 153 of the Complaint.

154.    Plaintiffs and members of the Class formed a contract with the Defendant at the time they purchased Defendant's Baby Foods.  The terms of that contract included the promises and affirmations of fact that Defendant made through its product labels, through other forms of uniform, nationwide marketing, its website, and on social media.  Among other affirmations of fact and promises described herein, Defendant represented that its Baby Foods were and are safe, healthy, and appropriate for infant or child consumption.

Answer: Paragraph 154 of the Complaint consists of a legal conclusion to which no response is required.  To the extent a response is required, Hain Celestial denies the allegations of Paragraph 154 of the Complaint.

155.    These affirmations of facts and promises, which are part of Defendant's uniform marketing, advertising, and product labeling, constitute express warranties and became part of the basis of the bargain, and they are part of the standardized contracts between Plaintiffs and members of the Class on the one hand, and the Defendant, on the other.

Answer: Paragraph 155 of the Complaint consists of a legal conclusion to which no response is required.  To the extent a response is required, Hain Celestial denies the allegations of Paragraph 155 of the Complaint.

156.    Contrary to these affirmations of fact and promises, Defendant's Baby Foods did not and do not contain food or beverages that are safe, healthy, and appropriate for infant or child consumption as described on the product labels or in Defendant's marketing and advertising campaign.

Answer: Denied.

157. Defendant breached the express warranties and/or contract obligations by placing these Baby Foods into the stream of commerce and selling them to consumers, when they have dangerous levels of Toxic Heavy Metals and/or other toxins, and can cause toxicity or adverse health implications, rendering these products unfit for their intended use and purpose, and unsafe and unsuitable for consumer use as marketed by Defendant. The high levels of Toxic Heavy Metals and/or other toxins substantially impair the use, value, and safety of Defendant's Baby Foods.

Answer: Denied.

158. At all times relevant herein, Defendant was aware, or should have been aware, of Toxic Heavy Metals and/or other toxins in Defendant's Baby Foods. Defendant was on notice of these concerns with its products, but nowhere on the package labeling or on Defendant's website or other marketing materials did Defendant warn Plaintiffs and members of the Class that they were at risk of feeding their children food with levels of Toxic Heavy Metals and/or other toxins that exceed the standards set by federal agencies or recommended by other organizations.

Answer: Denied.

159. Instead, Defendant concealed the high levels of Toxic Heavy Metals and/or other toxins contained in its Baby Foods and deceptively represented that these products were safe, healthy, and appropriate for infant or child consumption. Defendant, thus, utterly failed to ensure that the material representations it was making to consumers were true.

Answer: Denied.

160. The toxic and/or dangerous levels of Toxic Heavy Metals and/or other at issue in Defendant's Baby Foods existed when they left Defendant's possession or control and were sold to Plaintiffs and members of the Class. The levels of Toxic Heavy Metals and/or other toxins contained in the Defendant's Baby Foods were undiscoverable by Plaintiffs and members of the Class at the time of purchase of Defendant's Baby Foods.

Answer: Denied.

161. As a manufacturer, marketer, advertiser, distributor, and seller of Defendant's Baby Foods, Defendant has exclusive knowledge and notice of the fact that these products did not conform to the affirmations of fact and promises.

Answer: Denied.

162.   In addition, or in the alternative, to the formation of an express contract, Defendant made each of the above-described representations to induce Plaintiffs and members of the Class to rely on such representations.

Answer: Denied.

163.   Defendant's affirmations of fact and promises were material, and Plaintiffs and members of the Class reasonably relied upon such representations in purchasing the Defendant's Baby Foods.

Answer: Denied.

164.   Defendant was provided with notice by the numerous consumer class action complaints filed against it. Affording Defendant an opportunity to cure its breaches of written warranties would be unnecessary and futile here. Defendant was placed on reasonable notice of the levels of Toxic Heavy Metals and/or other toxins in Defendant's Baby Foods and breach of the warranties based on its scientific research and expertise in the food production industry. Defendant has had ample opportunity to cure the high levels of Toxic Heavy Metals and/or other toxins in its Baby Foods to render them safe and healthy for consumption by Plaintiffs and members of the putative classes and their children but has failed to do so.

Answer: Denied.

165.   Defendant has also had notice of its breach as set forth herein by virtue of the recent Congressional investigation into this matter and the prior 2019 report issued by Healthy Babies Bright Future.

Answer: Denied.

166.   As a direct and proximate result of Defendant's breaches of express warranty, Plaintiffs and members of the Class have been damaged because they did not receive the products as specifically warranted by Defendant. Plaintiffs and members of the Class did not receive the benefit of the bargain and suffered damages at the point of sale stemming from their overpayment of Defendant's Baby Foods.

Answer: Denied.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### *(On behalf of Plaintiffs Asyia Andrews, Jessie McNaughton, Lisa Gans, and the Class against Defendant)*

167.   Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

Answer:  Hain Celestial incorporates its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

168.    Plaintiffs bring this claim on behalf of themselves and members of the Class.

Answer: Hain Celestial admits that Plaintiffs Aysia Andrews, Jessie McNaughton, and Lisa Gans purport to assert a claim for breach of implied warranty against Hain Celestial on behalf of themselves and a putative class, but it denies that this claim is meritorious, denies that it has breached any implied warranty, and denies that this claim is amenable to class-wide resolution. Hain Celestial denies the remaining allegations, if any, of Paragraph 168 of the Complaint.

169.    Defendant is a merchant engaging in the sale of goods to Plaintiffs and members of the Class.

Answer:  Paragraph 169 of the Complaint consists of a legal conclusion to which no response is required.  To the extent a response is required, Hain Celestial admits that it sells baby food products to consumers, including members of the putative class Plaintiffs purport to represent. Hain Celestial denies the remaining allegations, if any, of Paragraph 169 of the Complaint.

170.    There was a sale of goods from Defendant to Plaintiffs and members of the Class.

Answer:  Paragraph 170 of the Complaint consists of a legal conclusion to which no response is required.  To the extent a response is required, Hain Celestial admits that it sells baby food products to consumers, including members of the putative class Plaintiffs purport to represent. Hain Celestial denies the remaining allegations, if any, of Paragraph 170 of the Complaint.

171.    Defendant's Baby Foods were sold to Plaintiffs and members of the Class purchased Defendant's Baby Foods from authorized resellers of Defendant's Baby Foods.

Answer: Hain Celestial admits that certain members of the putative class Plaintiffs purport to represent purchased Hain Celestial's baby foods from Hain Celestial's retailer-customers.  Hain Celestial denies the remaining allegations, if any, of Paragraph 171 of the Complaint.

172.   By placing Defendant's Baby Foods into the stream of commerce, Defendant impliedly warranted to Plaintiffs and members of the Class that Defendant's Baby Foods were of merchantable quality (i.e., a product of high-enough quality to make it fit for sale, usable for the purpose it was made, of average worth in the marketplace, or not contaminated or flawed or containing a defect affecting the safety of the product), would pass without objection in the trade or business, and were free from material defects, and reasonably fit for the use for which they were intended.

Answer: Paragraph 172 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial denies the allegations of Paragraph 172 of the Complaint.

173.   Defendant's products when sold, and at all times thereafter, were not merchantable or reasonably fit for either the use they were intended or the uses reasonably foreseeable by Defendant.

Answer: Denied.

174.   Defendant breached the implied warranty of merchantability because Defendant's Baby Foods suffer from the presence of Toxic Heavy Metals and/or other toxins, such as arsenic, lead, cadmium, and mercury, which have the propensity to cause health complications, rendering them unfit for their intended use and purpose as baby and/or children's food and beverages. The level of Toxic Heavy Metals and/or other toxins substantially impairs the use, value, and safety of these products.

Answer: Denied.

175.   The toxic and/or dangerous levels of heavy metals existed when the Defendant's Baby Foods left Defendant's possession or control and were sold to Plaintiffs and members of the putative classes. The amounts of Toxic Heavy Metals and/or other toxins contained in Defendant's Baby Foods were undiscoverable by Plaintiffs and members of the putative classes at the time of their purchase.

Answer: Denied.

176.   As described herein, Defendant advertised on its Baby Foods labels, on its website, and through a national advertising campaign, among other means, that Defendant's Baby Foods were and are safe and appropriate for infant and child consumption.

Answer: Denied.

177.   Contrary to these representations, Defendant's Baby Foods possessed dangerous levels of Toxic Heavy Metals and/or other toxins which were not revealed on Defendant's Baby Foods, product labels, or in Defendant's marketing and

advertising campaigns. Rather, Defendant's Baby Foods are unsafe because they have dangerous levels of Toxic Heavy Metals and/or other toxins. The Baby Foods are unsafe and unsuitable for consumer use as marketed by Defendant. Defendant has exclusive knowledge of material facts concerning the defective nature of Defendant's Baby Foods.

Answer: Denied.

178. Plaintiffs and members of the Class, at all relevant times, were intended third-party beneficiaries of Defendant and its agents in the distribution and sale of Defendant's Baby Foods. Moreover, Defendant exercises substantial control over which outlets can carry and sell Defendant's Baby Foods, which are the same places that Plaintiffs and members of the Class purchased them. In addition, Defendant's warranties are in no way designed to apply to the distributors that purchase these products in bulk and then sell them on an individual basis to each consumer. Individual consumers are the ones who ultimately review the labels prior to making their purchasing decisions. As a result, these warranties are specifically designed to benefit the individual consumers who purchase Defendant's Baby Foods.

Answer: Paragraph 178 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial denies the allegations of Paragraph 178 of the Complaint.

179. Plaintiffs and members of the Class sustained damages as a direct and proximate result of Defendant's breaches insofar as they paid a premium for Defendant's Baby Foods that they would not have otherwise paid had they known that Defendant's Baby Foods contained dangerous levels of Toxic Heavy Metals and/or other toxins.

Answer: Denied.

180. Plaintiffs and members of the Class did not receive the value of the product they paid for. The products are worthless or worth far less than Defendant represents due to the presence of Toxic Heavy Metals and/or other toxins contained therein which have the propensity to cause adverse health implications.

Answer: Denied.

181. Plaintiffs and members of the Class have sustained, are sustaining, and will sustain damages if Defendant continues to engage in such deceptive, unfair, and unreasonable practices.

Answer: Denied.

182.    Defendant was provided with notice by the numerous consumer class action complaints filed against it. Affording Defendant an opportunity to cure its breaches of written warranties would be unnecessary and futile here.

Answer: Denied.

183.    Defendant was also placed on reasonable notice of the high levels of Toxic Heavy Metals and/or other toxins contained in Defendant's Baby Foods and its breach of the warranties based on its own research into food processing and sourcing, as well as a recent Congressional investigation on the matter. Defendant has had ample opportunity to cure the dangerous levels of Toxic Heavy Metals and/or other toxins for Plaintiffs and members of the Class but have failed to do so. Instead, Defendant doubled down on efforts to convince consumers that its Baby Foods are safe to consume and healthy for babies and children, including public statements denying that there are any issues with its Baby Foods.

Answer: Denied.

184.    As a result of the breach of the implied warranty of merchantability, Plaintiffs and members of the Class are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

Answer: Denied.

### COUNT III
### NEGLIGENT MISREPRESENTATION
### *(On behalf of Plaintiffs Asyia Andrews, Jessie McNaughton, Lisa Gans, and the Class against Defendant)*

185.    Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

Answer: Hain Celestial incorporates its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

186.    Plaintiffs bring this claim on behalf of themselves and the Class.

Answer: Hain Celestial admits that Plaintiffs Aysia Andrews, Jessie McNaughton, and Lisa Gans purport to assert a claim for negligent misrepresentation against Hain Celestial on behalf of themselves and a putative class, but it denies that this claim is meritorious, denies that it has negligently misrepresented any fact, and denies that this claim is amenable to class-wide

resolution.  Hain Celestial denies the remaining allegations, if any, of Paragraph 186 of the Complaint.

187.    Defendant directly, or through its agents and employees, made false representations, concealments, and non-disclosures to Plaintiffs and members of the Class about its products' safety and testing.

<u>Answer:</u> Denied.

188.    Defendant intentionally, knowingly, and/or recklessly made these misrepresentations to induce Plaintiffs and members of the Class to purchase Defendant's Baby Foods.

<u>Answer:</u> Denied.

189.    In making these false, misleading, and deceptive representations and omissions, Defendant knew that consumers would purchase its products.  Defendant intended for these statements to induce consumers to purchase its Baby Foods.  Consumers who purchased Defendant's Baby Foods paid a premium for these products over what consumers would have paid had Defendant disclosed that its Baby Foods contained dangerous levels of Toxic Heavy Metals and/or other toxins.

<u>Answer:</u> Denied.

190.    Defendant created a special relationship with Plaintiffs and members of the Class through representations regarding its products' safety and the Defendant's rigorous, scientific testing and research.

<u>Answer:</u> Denied.

191.    As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive statements, representations, and omissions, Defendant injured Plaintiffs and members of the Class in that they purchased, paid a premium price for, and fed their children the Baby Foods, which were not as represented.

<u>Answer:</u> Denied.

192.    In making the misrepresentations of fact and omissions to Plaintiffs and members of the Class, Defendant has failed to fulfill its duty to disclose material facts about its Baby Foods.

<u>Answer:</u> Denied.

193.    The failure to disclose the true nature of the products' safety, testing, and compliance with internal safety thresholds was caused by Defendant's negligence and carelessness.

<u>Answer:</u> Denied.

194.    Defendant, in making these misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the misrepresentations were not true.

<u>Answer:</u> Denied.

195.    Defendant made and intended the misrepresentations to induce the reliance of Plaintiffs and Class members.

<u>Answer:</u> Denied.

196.    Defendant allowed its packaging, labels, advertisements, promotional materials, and website to intentionally mislead consumers, such as Plaintiffs and members of the Class.

<u>Answer:</u> Denied.

197.    Plaintiffs and members of the Class did in fact rely on these misrepresentations and purchased Defendant's Baby Food to their detriment.  Given the deceptive manner in which Defendant advertised, represented, and otherwise promoted the Baby Foods, Plaintiffs and members of the Class's reliance on Defendant's misrepresentations was justifiable.

<u>Answer:</u> Denied.

198.    As a direct and proximate result of Defendant's conduct, Plaintiffs and members of the Class have suffered actual damages.  Plaintiffs and members of the Class purchased products that are worth less than the price they paid, and they would not have purchased Defendant's Baby Foods, would have bought less of the Baby Foods, or would have paid less for the Baby Foods had they known of the presence, or risk of the presence of Toxic Heavy Metals and/or other toxins in the Baby Foods that do not conform to the products' labels, packaging, advertising, and statements.

<u>Answer:</u> Denied.

199.    Plaintiffs and members of the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

<u>Answer:</u> Denied.

## COUNT IV
### VIOLATIONS OF THE NEW YORK GENERAL BUSINESS LAW § 349
*(On behalf of Plaintiffs Asyia Andrews, Jessie McNaughton, Lisa Gans, and the Class against Defendant)*

200.    Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

Answer:  Hain Celestial incorporates its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

201.    New York General Business Law Section 349(a) ("Gen. Bus. Law § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

Answer:  Paragraph 201 of the Complaint consists of a legal conclusion to which no response is required.  To the extent a response is required, Hain Celestial admits that Section 349(a) of the New York General Business Law states as follows: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."  Hain Celestial denies the remaining allegations, if any, of Paragraph 201 of the Complaint.

202.    Plaintiffs and the Class members are "person[s]" within the meaning of N.Y. Gen. Bus. Law § 349(h).

Answer:  Paragraph 202 of the Complaint consists of a legal conclusion to which no response is required.  To the extent a response is required, Hain Celestial denies the allegations of Paragraph 202 of the Complaint.

203.    Defendant is a "person, firm, corporation or association" within the meaning of N.Y. Gen. Bus. Law § 349(b).

Answer:  Paragraph 203 of the Complaint consists of a legal conclusion to which no response is required.  To the extent a response is required, Hain Celestial denies the allegations of Paragraph 203 of the Complaint.

204.    The conduct alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of Gen. Bus. Law § 349, and as such, Plaintiff and the Class seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining it from inaccurately describing, labeling, marketing, and promoting its Baby Foods.  There is no adequate remedy at law. Defendant misleadingly, inaccurately, and deceptively marketed its Baby Foods to consumers as safe and concealed information about the presence of Toxic Heavy Metals and/or other toxins, including levels that exceed FDA and EPA guidance.

Answer: Hain Celestial admits that Plaintiffs purport to seek monetary damages and injunctive relief, but it denies that Plaintiffs or any class members are entitled to such relief.  Hain Celestial denies the remaining allegations of Paragraph 204 of the Complaint.

205.    Defendant made affirmative misrepresentations to Plaintiff and members of the Class that Defendant's Baby Foods were safe and suitable for consumption. Defendant, however, concealed, and suppressed material facts concerning Defendant's Baby Foods, including that Defendant's Baby Foods were unsafe and unsuitable for babies; that they contained Toxic Heavy Metals and/or other toxins; the level of the Toxic Heavy Metals and/or other toxins; that internal testing showed that Defendant's Baby Foods contained Toxic Heavy Metals and/or other toxins; and that Defendant's policies permitted the sale of products with harmful levels of Toxic Heavy Metals and/or other toxins.

Answer: Denied

206.    Defendant had an ongoing duty to Plaintiffs and members of the Class to refrain from unfair and deceptive practices.  Specifically, Defendant owed Plaintiffs and Class members a duty to disclose all the material facts regarding Defendant's Baby Foods, including that such products contained unsafe levels of Toxic Heavy Metals and/or other toxins because Defendant possessed exclusive knowledge, intentionally concealed the facts regarding Baby Foods, including that such products contained unsafe levels of Toxic Heavy Metals and/or other toxins and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

Answer: Denied.

207.    Plaintiffs and members of the Class had no way of discerning that Defendant's representations were false and misleading because members of the Class did not have access to Defendant's internal testing, internal policies, or any internal documents showing the presence of harmful heavy metals.

Answer: Denied.

208.    Defendant thus violated Gen. Bus. Law § 349 by making statements that when considered from the perspective of the reasonable consumer conveyed that Defendant's Baby Foods were safe and suitable for babies.  Defendant failed to disclose or warn that Defendant's Baby Foods were unsafe and unsuitable for children, that they contained Toxic Heavy Metals and/or other toxins, the levels of the Toxic Heavy Metals and/or other toxins, that internal testing showed that the products contained harmful Toxic Heavy Metals and/or other toxins, and that Defendant's policies permitted the sale of products with harmful levels of Toxic Heavy Metals and/or other toxins.  Defendant intentionally and knowingly made affirmative misrepresentations and failed to disclose material facts regarding the Defendant's Baby Foods with intent to mislead Class members. Defendant knows or should have known that its conduct violated Gen. Bus. Law § 349.

Answer: Denied.

209.    Defendant owed Plaintiffs and the Class a duty to disclose the true and unsafe nature of the Defendant's Baby Foods.

Answer: Denied.

210.    Defendant's concealment of the true characteristics of the Defendant's Baby Foods was material to Plaintiff and members of the Class.

Answer: Denied.

211.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs and members of the Class, about the true nature of Defendant's Baby Foods.

Answer: Denied.

212.    Plaintiffs and members of the Class would not have purchased Defendant's Baby Foods, would have bought less of the Baby Foods, or would have paid less for the Baby Foods, had they known that the products were unsafe and unsuitable for babies, that they contained Toxic Heavy Metals and/or other toxins, the levels of Toxic Heavy Metals and/or other toxins, that Defendant's testing showed that Defendant's Baby Foods contained Toxic Heavy Metals and/or other toxins, or that Defendant's policies permitted the sales of products with harmful levels of Toxic Heavy Metals and/or other toxins.

Answer: Denied.

213.    Defendant's violations present a continuing risk to Plaintiff and the Class as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

Answer: Denied.

214.    Plaintiffs and members of the Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and concealment of and failure to disclose material information.  Defendant had an ongoing duty to all customers and the public to refrain from unfair and deceptive practices.

Answer: Denied.

215.    Defendant's advertising and products' packaging and labeling induced Plaintiffs and members of the Class to buy Defendant's products and to pay a premium price for them.

Answer: Denied.

216.    Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law § 349(a), and Plaintiffs and the Class have been damaged thereby.

Answer: Denied.

217.    As a result of Defendant's recurring, unlawful deceptive acts and practices, Plaintiffs and members of the Class are entitled to monetary, compensatory, treble, and punitive damages, injunctive relief, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, attorneys' fees and costs, and an order enjoining Defendant's deceptive and unfair conduct, and all other just and appropriate relief available under the statute.

Answer: Denied.

## <u>COUNT V</u>
### VIOLATIONS OF THE NEW YORK DECEPTIVE SALES PRACTICE ACT
### New York Gen. Bus. Law § 350, *et seq.*
### *(On behalf of Plaintiffs Asyia Andrews, Jessie McNaughton, Lisa Gans, and the Class against Defendant)*

218.    Plaintiff incorporates by reference all allegations in this Complaint and restate them as if fully set forth herein.

Answer:  Hain Celestial incorporates its responses to all preceding paragraphs of the

Complaint as if fully set forth herein.

219.    N.Y. Gen. Bus. Law § 350 provides, in part, that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

Answer: Hain Celestial admits that Section 350 of the New York General Business Law states as follows: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful." Hain Celestial denies the remaining allegations, if any, of Paragraph 219 of the Complaint.

220.    N.Y. Gen. Bus. Law § 350(a)(1) provides, in part, as follows:

> The term "false advertising" means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual.

Answer: Hain Celestial admits that Section 350-a(1) of the New York General Business Law states as follows: "The term 'false advertising' means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual. For purposes of this article, with respect to the advertising of an employment opportunity, it shall be deemed 'misleading in a material respect' to either fail to reveal whether the employment available or being offered requires or is conditioned upon the purchasing or leasing of supplies, material, equipment or other property or whether such employment is on a commission rather than a fixed salary basis and, if so, whether

the salaries advertised are only obtainable if sufficient commissions are earned."  Hain Celestial

denies the remaining allegations, if any, of Paragraph 220 of the Complaint.

221.    Defendant made statements and omissions that were untrue or misleading. Defendant disseminated such statements through New York.  Defendant disseminated such statements and omissions through advertising, marketing, and other publications.  Defendant knew or through the exercise of reasonable care should have known that such statements and omissions were untrue and misleading.

Answer: Denied.

222.    Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions regarding the safety of Defendant's Baby Foods.

Answer: Denied.

223.    Defendant made numerous material and affirmative misrepresentations and omissions of fact with intent to mislead and deceive concerning Defendant's Baby Foods, particularly concerning their unsafe nature.  Specifically, Defendant intentionally concealed and suppressed material facts concerning Defendant's Baby Foods, namely, that they were unsafe and unsuitable for babies, that they contained Toxic Heavy Metals and/or other toxins, that Defendant's testing showed that its products contained Toxic Heavy Metals and/or other toxins, and that Defendant's policies permitted the sale of products with Toxic Heavy Metals and/or other toxins. Defendant intentionally and grossly defrauded and misled Class members concerning the true and unsafe nature of Defendant's Baby Foods.

Answer: Denied.

224.    Defendant made untrue and misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

Answer: Denied.

225.    Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350 as stated in ¶ 224.

Answer: Denied.

226.    Defendant made the material misrepresentations described in this Complaint in Defendant's advertising, and on the products' packaging and labeling.

Answer: Denied.

227. Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the products for purposes of consumption were and continue to be exposed to Defendant's material misrepresentations and omissions.

Answer: Denied.

228. Plaintiff and members of the Class would not have purchased Defendant's Baby Foods, would have bought less of the Baby Foods, or would have paid less for the Baby Foods, had they known that the products were unsafe and unsuitable for babies, that they contained Toxic Heavy Metals and/or other toxins, the levels of Toxic Heavy Metals and/or other toxins they contained, that Defendant's testing showed that its products contained Toxic Heavy Metals and/or other toxins, or that Defendant's policies permitted the sales of products with harmful levels of Toxic Heavy Metals and/or other toxins.

Answer: Denied.

229. Defendant's violation presents a continuing risk to Plaintiff and members of the Class. Defendant's deceptive acts and practices affect the public interest.

Answer: Denied.

230. Plaintiff and members of the Class have suffered injury-in-fact and/or actual damages and ascertainable loss as a direct and proximate result of the Defendant's violation.

Answer: Denied.

231. The Class members seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial, and (b) statutory damages in the amount of $500 for each Class member, and because Defendant's conduct was committed willingly and knowingly, Class members are entitled to recover three times actual damages, up to $10,000. The Class also seeks an order enjoining Defendant's false advertising, attorneys' fees, and any other just and proper relief under N.Y. Gen. Bus. Law § 350.

Answer: Hain Celestial admits that Plaintiffs purport to seek monetary and injunctive relief against Hain Celestial, but it denies that Plaintiffs are entitled to any such relief. Hain Celestial denies the remaining allegations, if any, of Paragraph 231 of the Complaint.

<u>COUNT VI</u>
**UNJUST ENRICHMENT**
***(On behalf of the Plaintiffs Asyia Andrews, Jessie McNaughton, Lisa Gans, and the Class against Defendant)***

232.    Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

<u>Answer:</u> Hain Celestial incorporates its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

233.    Plaintiffs bring this claim on behalf of themselves and the Class.

<u>Answer:</u> Hain Celestial admits that Plaintiffs Asyia Andrews, Jessie McNaughton, and Lisa Gans purport to assert a claim for unjust enrichment against Hain Celestial on behalf of themselves and a putative class, but it denies that this claim is meritorious, denies that it was unjustly enriched, and denies that this claim is amenable to class-wide resolution.  Hain Celestial denies the remaining allegations, if any, of Paragraph 233 of the Complaint.

234.    Plaintiffs and the other members of the Class conferred benefits on Defendant by purchasing the Defendant's Baby Foods.

<u>Answer:</u> Denied.

235.    Defendant received the benefits to the detriment of Plaintiffs and the other members of the Class because Plaintiffs and the other members of the Class purchased a mislabeled product that is not what they bargained for and did not provide the advertised benefit.

<u>Answer:</u> Denied.

236.    Defendant has been unjustly enriched in retaining the revenues derived from the purchases of Defendant's Baby Foods by Plaintiffs and the other members of the Class.  Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Baby Foods was misleading to consumers, which caused injuries to Plaintiffs and the other members of the Class, because they would not have purchased Defendant's Baby Foods, would have bought less of the products, or would have paid less for the products had they known that they contained dangerous levels of Toxic Heavy Metals and/or other toxins.

<u>Answer:</u> Denied.

237.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and the other members of the putative classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and all members of the putative classes for unjust enrichment, as ordered by the Court.

Answer: Denied.

## COUNT VII
## FRAUDULENT CONCEALMENT
### *(On behalf of the Plaintiffs Asyia Andrews, Jessie McNaughton, Lisa Gans, and the Class against Defendant)*

238.     Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

Answer: Hain Celestial incorporates its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

239.     Defendant concealed and failed to disclose the material fact that its Baby Foods contained, or were at risk of containing, elevated levels of Toxic Heavy Metals and/or other toxins, that Defendant was not testing the amount of Toxic Heavy Metals and/or other toxins in the finished products, and that the products were not safe or healthy for consumption.

Answer: Denied.

240.     Defendant had knowledge that the Baby Foods contained, or were at risk of containing, elevated levels of Toxic Heavy Metals and/or other toxins, that Defendant was not testing the amount of Toxic Heavy Metals and/or other toxins in its finished products, and that the products were not safe or healthy for consumption.

Answer: Denied.

241.     Defendant had a duty to disclose that the Baby Foods contained, or were at risk of containing, elevated levels of Toxic Heavy Metals and/or other toxins, that Defendant was not testing the amount of Toxic Heavy Metals and/or other toxins in its finished Baby Foods, and that the Baby Foods were not safe or healthy for consumption.  Defendant had superior knowledge or means of knowledge available to them and knew that Plaintiffs and the Class would rely upon the representations and omissions of Defendant regarding the quality of its products.  Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains elevated levels of Toxic Heavy Metals and/or other toxins, especially at the point of sale.

Answer: Denied.

74

242.     Defendant's concealment was material and intentional because caregivers are concerned with what they are feeding to the children in their care. Caregivers are influenced by the ingredients listed, as well as any warnings (or lack thereof) on the products they buy and feed to the children in their care. Defendant knows that if it had not omitted that the Baby Foods contained, or were at risk of containing, elevated levels of Toxic Heavy Metals and/or other toxins, that Defendant was not testing the amount of Toxic Heavy Metals and/or other toxins in the finished products, and that the products were not safe or healthy for consumption then Plaintiffs and the Class would not have paid a premium for the Baby Foods or purchased them at all.

Answer: Denied.

243.     Defendant's concealment misled Plaintiffs and the Class as to the true nature of what they were buying and feeding to children.

Answer: Denied.

244.     Defendant fraudulently concealed that the Baby Foods contained, or were at risk of containing, elevated levels of Toxic Heavy Metals and/or other toxins, that they were not testing the amount of Toxic Heavy Metals and/or other toxins in the finished products, and that the products were not safe or healthy for consumption. Consequently, Plaintiffs and the other members of the Class have suffered injury and are entitled to damages.

Answer: Denied.

245.     Plaintiffs and Class members seek all monetary and non-monetary relief allowed by law, including injunctive relief, other equitable relief, compensatory, actual, punitive, and treble damages, restitution, and attorneys' fees, filing fees, and costs.

Answer: Hain Celestial admits that Plaintiffs purport to seek "all monetary and non-monetary relief allowed by law," but it denies that Plaintiffs are entitled to any relief whatsoever.

Hain Celestial denies the remaining allegations, if any, of Paragraph 245 of the Complaint.

## COUNT VIII
### VIOLATIONS OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT
### Cal. Civ. Code §§ 1750, *et seq.*, Against Defendant
### *(On Behalf of Plaintiff Lizette Romero Ortiz and the California Subclass)*

246.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

Answer: Hain Celestial incorporates its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

247.    The California Consumers Legal Remedies Act ("CLRA") prohibits any unfair or deceptive practices, as well as unconscionable commercial practices in connection with the sale of goods or services to consumers including, (i) "[m]isrepresenting the source, sponsorship, approval, or certification of goods or services" (ii) "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which he or she does not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have;" (iii) "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" or (iv) "[a]dvertising goods or services with intent not to sell them as advertised."

Answer: Paragraph 247 of the Complaint consists of a legal conclusion to which no response is required.  To the extent a response is required, Hain Celestial admits that Section 1770 of the California Civil Code prohibits specified "unfair methods of competition and unfair or deceptive practices listed in this subdivision undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer," including "[m]isrepresenting the source, sponsorship, approval, or certification of goods or services," "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which he or she does not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," or "[a]dvertising goods or services with intent not to sell them as advertised."  Hain Celestial denies that it has engaged in any of the "unfair methods of competition and unfair or deceptive practices" prohibited by Section 1770 of the California Civil Code.  Hain Celestial denies the remaining allegations, if any, of Paragraph 247 of the Complaint.

248.    Plaintiffs and each proposed Class member are a "consumer," as defined by the CLRA.  *See* Cal. Civ. Code § 1761(d).

Answer:  Paragraph 248 of the Complaint consists of a legal conclusion to which no response is required.  To the extent a response is required, Hain Celestial admits that Section 1761(d) of the California Civil Code defines a "consumer" as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes."  Hain Celestial denies the remaining allegations, if any, of Paragraph 248 of the Complaint.

249.    Defendant's products, Earth's Best Baby Foods, are "goods," as defined by the CLRA.  *See* § 1761(a).

Answer:  Paragraph 249 of the Complaint consists of a legal conclusion to which no response is required.  To the extent a response is required, Hain Celestial admits that Section 1761(a) of the California Civil Code defines "goods" as "tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods, and including goods that, at the time of the sale or subsequently, are to be so affixed to real property as to become a part of real property, whether or not they are severable from the real property."  Hain Celestial denies the remaining allegations, if any, of Paragraph 249 of the Complaint.

250.    Defendant is a "person," as defined by the CLRA.  *See* § 1761(c).

Answer:  Paragraph 250 of the Complaint consists of a legal conclusion to which no response is required.  To the extent a response is required, Hain Celestial admits that Section 1761(c) of the California Civil Code defines a "person" as "an individual, partnership, corporation, limited liability company, association, or other group, however organized."  Hain Celestial denies the remaining allegations, if any, of Paragraph 250 of the Complaint.

251.    Plaintiffs and each proposed Class Member's purchases of Earth's Best Baby Food products from Defendant constitutes a "transaction," as defined by the CLRA.  *See* § 1761(e).

Answer: Paragraph 251 of the Complaint consists of a legal conclusion to which no response is required.  To the extent a response is required, Hain Celestial admits that Section 1761(e) of the California Civil Code defines a "transaction" as "an agreement between a consumer and another person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement." Hain Celestial denies the remaining allegations, if any, of Paragraph 251 of the Complaint.

252.    Defendant violates this statute and commits unfair or deceptive acts or practices in the conduct of trade or commerce as alleged herein.

Answer: Denied.

253.    Defendant omitted material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxic materials in its Earth's Best Baby Foods.

Answer: Denied.

254.    Defendant intentionally misrepresented the standard, quality, or grade of the Earth's Best Baby Food products and testing procedures for the products through mislabeling and false advertising in violation of CLRA § 1770 (7).

Answer: Denied.

255.    The omitted information regarding the grade, quality, testing procedures, presence of Toxic Heavy Metals and/or other toxins, and safety of baby food products is material information consumers relied on when deciding to purchase Defendant's products.

Answer: Denied.

256.    Defendant's omissions increased the risk of harm children faced by consuming the Earth's Best Baby Foods.

Answer: Denied.

257. Defendant had a duty to disclose to Plaintiffs and the Class Members that Earth's Best Baby Foods contained excessive levels of Toxic Heavy Metals and/or other toxins and were of substandard quality for at least three reasons: (1) Defendant had exclusive knowledge of the information at the time of sale; and (2) Defendant actively concealed from Plaintiffs and the Class Members the excessive levels of Toxic Heavy Metals and/or other toxins contained in the Baby Foods (3) Defendant made material misrepresentations about the Baby Foods and their toxic components.

Answer: Denied.

258. Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

Answer: Denied.

259. Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

Answer: Denied.

260. Plaintiffs and the Class have been directly and proximately harmed by Defendant's material misrepresentations and omissions.

Answer: Denied.

261. Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

Answer: Denied.

262. Plaintiff will comply with the provisions of Cal. Civ. Code § 1782(a) and notify Defendant in writing of the CLRA violation alleged herein.

Answer: Paragraph 262 of the Complaint consists of a statement that Plaintiff Lizette Romero Ortiz will notify Hain Celestial in writing of its alleged violations of the CLRA, to which no response is required. To the extent a response is required, Hain Celestial denies that Plaintiff Lizette Romero Ortiz has provided written notice to Hain Celestial pursuant to Section 1782(a) of the California Civil Code. Hain Celestial denies the remaining allegations, if any, of Paragraph 262 of the Complaint.

263.    Pursuant to California Civil Code § 1780, Plaintiff seeks all available injunctive relief, including an order enjoining Defendant from the unlawful practices described above.  If Defendant does not exercise its opportunity to provide corrective action pursuant to Section 1782(b) within the time provided, Plaintiff will amend this complaint to seek damages and all other available relief.

Answer: Paragraph 263 of the Complaint consists of a statement that Plaintiff Lizette Romero Ortiz "seeks all available injunctive relief" and that she "will amend this complaint to seek damages and all other available relief," to which no response is required.  To the extent a response is required, Hain Celestial admits that Plaintiff seeks injunctive relief and claims that she will amend her complaint to seek damages and other relief, but it denies that Plaintiff or any putative class member is entitled to such relief.  Hain Celestial denies the remaining allegations, if any, of Paragraph 263 of the Complaint.

## COUNT IX
## VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW
### Cal. Bus. & Prof. Code §§ 17500, *et seq.*
### *(On Behalf of Plaintiff Lizette Romero Ortiz and the California Subclass)*

264.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

Answer: Hain Celestial incorporates its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

265.    The California False Advertising Law ("FAL") prohibits "untrue or misleading" statements or omissions in connection with the sale of goods.

Answer: Paragraph 265 of the Complaint consists of a legal conclusion to which no response is required.  To the extent a response is required, Hain Celestial admits that Section 17500 of the California Business & Professions Code reads as follows: "It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything

of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."  Hain Celestial denies that it has violated this statute and denies the remaining allegations, if any, of Paragraph 265 of the Complaint.

266.    Defendant omitted material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxic materials in its Earth's Best Baby Food products in a manner likely to deceive consumers.

Answer: Denied.

267.    Defendant knew the Baby Foods contained Toxic Heavy Metals and/or other toxins.  Defendant had a duty to disclose the presence of Toxic Heavy Metals and/or other toxins and failed to disclose to consumers' detriment.

Answer: Denied.

268.    Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

Answer: Denied.

269. Defendant knew or should have known that its material omissions concerning the levels of Toxic Heavy Metals and/or other toxins in its Baby Foods were misleading.

Answer: Denied.

270. Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

Answer: Denied.

271. As a result of Defendant's practices, Plaintiffs and Class Members have lost money.

Answer: Denied.

272. Plaintiffs and the California Subclass seek restitution under the statute including injunctive and equitable relief, and any other relief the Court deems necessary and proper.

Answer: Paragraph 272 of the Complaint consists of a statement of the relief Plaintiffs seek, to which no response is required. To the extent a response is required, Hain Celestial admits that Plaintiff Lizette Romero Ortiz purports to seek restitution, injunctive relief, and equitable relief on behalf of herself and members of the putative California subclass, but it denies that she or any of the putative class members she purports to represent are entitled to any relief whatsoever. Hain Celestial denies the remaining allegations, if any, of Paragraph 272 of the Complaint.

## COUNT X
### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*
### *(On Behalf of Plaintiff Lizette Romero Ortiz and the California Subclass)*

273. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

Answer: Hain Celestial incorporates its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

274. The California Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice."

Answer: Paragraph 274 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial admits that Section 17200 of the California Business & Professions Code reads as follows: "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Hain Celestial denies that it has violated this statute and denies the remaining allegations, if any, of Paragraph 274 of the Complaint.

275. Defendant's material misstatements and omissions concerning the presence of Toxic Heavy Metals and/or other toxins in the Baby Foods is likely to deceive consumers and the public.

Answer: Denied.

276. Defendant's conduct, as described in ¶ 277 and alleged herein, violates the CLRA and the FAL. *See* Cal. Civ. Code §§ 1750, *et seq*; Cal. Bus. & Prof. Code §§ 17500, *et seq*.

Answer: Denied.

277. Defendant's manufacturing, packaging, distribution, and sale of Earth's Best Baby Foods are immoral, unethical, unscrupulous, or substantially injurious to consumers. The unavoidable risks and harms associated with Defendant's conduct outweigh any benefits.

Answer: Denied.

278. Defendant's conduct is unfair because it violates public policy as stated in constitutional, statutory, and/or regulatory provisions, including, but not limited to, the FAL. *See* Cal. Bus. & Prof. Code §§ 17500, *et seq*.

Answer: Denied.

279. Defendant had a duty to disclose the presence of Toxic Heavy Metals and/or other toxins in Earth's Best Baby Foods because Defendant had exclusive knowledge of the levels of Toxic Heavy Metals and/or other toxins, Defendant concealed the presence of Toxic Heavy Metals and/or other toxins in its Baby Foods, and Defendant concealed internal specifications measuring Toxic Heavy Metals and/or other toxins in its Baby Foods.

Answer: Denied.

280.    Plaintiffs relied on the Earth's Best Baby Foods labels and packaging when deciding whether to purchase Defendant's Baby Foods. Had Plaintiffs and Class Members known that the Baby Foods contained Toxic Heavy Metals and/or other toxins and were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

Answer: Denied.

281.    As a result of Defendant's practices, Plaintiffs and Class Members have lost money.

Answer: Denied.

282.    Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

Answer: Denied.

283.    Plaintiffs and the California Subclass seek restitution, injunctive, and equitable relief, and any other relief the Court deems necessary and proper under the statute.

Answer: Paragraph 283 of the Complaint consists of a statement of the relief Plaintiffs seek, to which no response is required.  To the extent a response is required, Hain Celestial admits that Plaintiff Lizette Romero Ortiz purports to seek restitution, injunctive relief, and equitable relief on behalf of herself and members of the putative California subclass, but it denies that she or any of the putative class members she purports to represent are entitled to any relief whatsoever. Hain Celestial denies the remaining allegations, if any, of Paragraph 283 of the Complaint.

**COUNT XI**
**VIOLATION OF THE DISTRICT OF COLUMBIA**
**CONSUMER PROTECTION PROCEDURES ACT**
**D.C. Code §§ 28-3904, *et seq.***
***(On Behalf of Plaintiffs Lisa Gans, Zeynep Senturk Mannix, and the D.C. Subclass)***

284.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

Answer: Hain Celestial incorporates its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

285.   The District of Columbia Consumer Protection Procedures Act ("DCCPPA") prohibits "an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby, including," (i) "represent[ing] that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;" (ii) "represent[ing] that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;" (iii) "misrepresent as to a material fact which has a tendency to mislead;" (iv) "fail[ing] to state a material fact if such failure tends to mislead;" (v) "advertis[ing] or offer[ing] goods or services without the intent to sell them or without the intent to sell them as advertised or offered;" or (vi) "advertis[ing] or offer[ing] goods or services without supplying reasonably expected public demand, unless the advertisement or offer discloses a limitation of quantity or other qualifying condition which has no tendency to mislead."

Answer: Paragraph 285 of the Complaint consists of a legal conclusion to which no response is required.  To the extent a response is required, Hain Celestial admits that Section 28-3904 of the D.C. Code states that it "shall be a violation of this chapter for any person to engage in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby" and that it makes it unlawful to "represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have," "represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another," "misrepresent as to a material fact which has a tendency to mislead," "fail to state a material fact if such failure tends to mislead," "advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered," or "advertise or offer goods or services without supplying reasonably expected public demand, unless the advertisement or offer discloses a limitation of quantity or other qualifying condition which has no tendency to mislead."  Hain Celestial denies that it has violated this statute and denies the remaining allegations, if any, of Paragraph 285 of the Complaint.

286.   Plaintiffs and each proposed Class member are a "consumer," as defined by the DCCPPA that purchased Earth's Best Baby Food products for personal, family, or household use.  *See* D.C. Code § 28-3901(a)(2).

<u>Answer:</u> Paragraph 286 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial admits that Section 28-3901(a)(2) of the D.C. Code defines a "consumer" as "a person who, other than for purposes of resale, does or would purchase, lease (as lessee), or receive consumer goods or services, including as a co-obligor or surety, or does or would otherwise provide the economic demand for a trade practice." Hain Celestial denies the remaining allegations, if any, of Paragraph 286 of the Complaint.

287.    Defendant violates this statute and commits unfair or deceptive acts or practices in the conduct of trade or commerce as alleged herein.

<u>Answer:</u> Denied.

288.    Defendant omitted material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxic materials in its Earth's Best Baby Foods.

<u>Answer:</u> Denied.

289.    Defendant intentionally misrepresented the standard, quality, or grade of the Earth's Best Baby Foods and testing procedures for the products through mislabeling and false advertising.

<u>Answer:</u> Denied.

290.    The omitted information regarding the grade, quality, testing procedures, presence of Toxic Heavy Metals and/or other toxins, and safety of baby food products is material information consumers relied on when deciding to purchase Defendant's products.

<u>Answer:</u> Denied.

291.    Defendant's omissions increased the risk of harm children faced by consuming the Earth's Best Baby Foods.

<u>Answer:</u> Denied.

292.    Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

<u>Answer:</u> Denied.

293.    Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

<u>Answer:</u> Denied.

294.    Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

<u>Answer:</u> Denied.

295.    Plaintiffs and the D.C. Subclass seek relief under the statute including the greater of $1,500 per violation or treble damages, actual damages, punitive damages, attorney's fees and costs, an injunction, and any other relief the Court deems necessary and proper.

<u>Answer:</u> Paragraph 295 of the Complaint consists of a statement of the relief Plaintiffs seek, to which no response is required.  To the extent a response is required, Hain Celestial admits that Plaintiffs Lisa Gans and Zeynep Senturk Mannix purport to seek relief on behalf of themselves and the putative D.C. subclass (including the greater of $1,500 per violation or treble damages, actual damages, punitive damages, attorney's fees and costs, an injunction), but denies that these Plaintiffs or the putative class members they purport to represent are entitled to any relief whatsoever.  Hain Celestial denies the remaining allegations, if any, of Paragraph 295 of the Complaint.

## <u>COUNT XII</u>
### VIOLATION OF THE IDAHO CONSUMER PROTECTION ACT
### Idaho Code Ann. §§ 48-601, *et seq.*
### *(On Behalf of Plaintiff Jade Huguenot and the Idaho Subclass)*

296.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

<u>Answer:</u> Hain Celestial incorporates its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

297.     The Idaho Consumer Protect Act ("ICPA") prohibits "unfair or deceptive acts and practices in the conduct of trade or commerce," including: "(2) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;" "(4) Using deceptive representations or designations of geographic origin in connection with goods or services;" "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, connection, qualifications or license that he does not have;" "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and "(9) Advertising goods or services with intent not to sell them as advertised."

Answer: Paragraph 297 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial admits that Section 48-603 of the Idaho Code states that certain "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared to be unlawful," including "[c]ausing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services," "[u]sing deceptive representations or designations of geographic origin in connection with goods or services," "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, connection, qualifications or license that he does not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised." Hain Celestial denies that it has violated this statute and denies the remaining allegations, if any, of Paragraph 297 of the Complaint.

298.     Defendant is a "person" as defined by the ICPA. *See* Idaho Code Ann. § 48-602(1).

Answer: Paragraph 298 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial admits that Section 48-

602(1) of the Idaho Code defines a "person" to include "natural persons, corporations both foreign and domestic, trusts, partnerships both limited and general, incorporated or unincorporated associations, companies, trusts, business entities, and any other legal entity, or any other group associated in fact although not a legal entity or any agent, assignee, heir, employee, representative or servant thereof."  Hain Celestial denies the remaining allegations, if any, of Paragraph 299 of the Complaint.

299.    Defendant commits these violations in the course of conducting "trade" or "commerce" as defined by the ICPA.  *See* Idaho Code Ann. § 48-602(2)

Answer: Paragraph 299 of the Complaint consists of a legal conclusion to which no response is required.  To the extent a response is required, Hain Celestial admits that Section 48-602(2) of the Idaho Code states as follows: "'Trade' and 'commerce' mean the advertising, offering for sale, selling, leasing, renting, collecting debts arising out of the sale or lease of goods or services or distributing goods or services, either to or from locations within the state of Idaho, or directly or indirectly affecting the people of this state."  Hain Celestial denies that it has committed any "violations" of the Idaho Consumer Protection Act and denies the remaining allegations, if any, of Paragraph 299 of the Complaint.

300.    Defendant violates this statute and commits unfair or deceptive acts or practices in the conduct of trade or commerce as alleged herein.

Answer: Denied.

301.    Defendant omitted material information regarding the levels of heavy metals and toxic materials in their Earth's Best Baby Food products.

Answer: Denied.

302.    Defendant intentionally misrepresented the standard, quality, or grade of the Earth's Best Baby Food products and testing procedures for the products through mislabeling and false advertising.

Answer: Denied.

303.    The omitted information regarding the grade, quality, testing procedures, presence of heavy metals, and safety of baby food products is material information consumers relied on when deciding to purchase Defendant's products.

<u>Answer:</u> Denied.

304.    Defendant's omissions increased the risk of harm children faced by consuming the Earth's Best Baby Food products.

<u>Answer:</u> Denied.

305.    Defendant's violations were and are, at least reckless or willful, deceptive, unfair, and unconscionable.

<u>Answer:</u> Denied.

306.    Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

<u>Answer:</u> Denied.

307.    Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

<u>Answer:</u> Denied.

308.    Plaintiffs and the Idaho Subclass seek relief under the statute including recovery of actual damages or damages in the amount of $1,000 per Class Member, restitution, injunctive relief, costs and attorney's fees, and any other relief the Court deems necessary and proper.

<u>Answer:</u> Paragraph 308 of the Complaint consists of a statement of the relief Plaintiffs seek, to which no response is required. To the extent a response is required, Hain Celestial admits that Plaintiff Jade Huguenot purports to seek relief under the Idaho Consumer Protection Act (including actual damages, damages in the amount of $1,000 per putative class member, restitution, injunctive relief, costs, and attorneys' fees) on behalf of herself and members of the putative Idaho subclass, but it denies that they are entitled to any relief whatsoever. Hain Celestial denies the remaining allegations, if any, of Paragraph 308 of the Complaint.

## COUNT XIII
### VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT
### Ind. Code Ann. §§ 24-5-0.5-0.1, *et seq.*
### *(On Behalf of Plaintiff Cassie Isza and the Indiana Subclass)*

309.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

Answer: Hain Celestial incorporates its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

310.    The Indiana Deceptive Consumer Sales Act ("IDCSA") prohibits "an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction" whether it is an "implicit" or "explicit misrepresentation[]." Such deceptive acts include: "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have;" and "(2) That such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not."

Answer: Paragraph 310 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial admits that Section 24-5-0.5-3(a) of the Indiana Code states that a "supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction" and that an "act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations." Hain Celestial also admits that Section 24-5-0.5-3(b) of the Indiana Code sets forth an enumerated list of "deceptive acts," which include "[t]hat such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have" and "[t]hat such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not." Hain Celestial denies that it has violated this statute and defines the remaining allegations, if any, of Paragraph 310 of the Complaint.

311.    Defendant is as a "supplier" as defined by the IDCSA.  *See* Ind. Code Ann. § 24-5-0.5-2(3).

Answer: Paragraph 311 of the Complaint consists of a legal conclusion to which no response is required.  To the extent a response is required, Hain Celestial admits that Section 24-5-0.5-2(3) of the Indiana Code defines a "supplier" as a "seller, lessor, assignor, or other person who regularly engages in or solicits consumer transactions, including soliciting a consumer transaction by using a telephone facsimile machine to transmit an unsolicited advertisement" and that "[t]he term includes a manufacturer, wholesaler, or retailer, whether or not the person deals directly with the consumer."  Hain Celestial denies the remaining allegations, if any, of Paragraph 311 of the Complaint.

312.    Defendant commits these violations in the course of a "consumer transaction" as defined by the IDCSA.  *See* Ind. Code Ann. § 24-5-0.5-2(1).

Answer: Paragraph 312 of the Complaint consists of a legal conclusion to which no response is required.  To the extent a response is required, Hain Celestial admits that Section 24-5-0.5-2(1) of the Indiana Code defines a "consumer transaction" as "a sale, lease, assignment, award by chance, or other disposition of an item of personal property, real property, a service, or an intangible, except securities and policies or contracts of insurance issued by corporations authorized to transact an insurance business under the laws of the state of Indiana, with or without an extension of credit, to a person for purposes that are primarily personal, familial, charitable, agricultural, or household, or a solicitation to supply any of these things."  Hain Celestial denies that it has committed any "violations" of the Indiana Deceptive Consumer Sales Act and denies the remaining allegations, if any, of Paragraph 312 of the Complaint.

313.    Defendant violates this statute and commits unfair or deceptive acts or practices in the conduct of business, trade or commerce as alleged herein.

Answer: Denied.

314.    Defendant omitted material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxic materials in its Earth's Best Baby Food products.

<u>Answer</u>: Denied.

315.    Defendant intentionally misrepresented the standard, quality, or grade of the Earth's Best Baby Food products and testing procedures for the products through mislabeling and false advertising.

<u>Answer</u>: Denied.

316.    The omitted information regarding the grade, quality, testing procedures, presence of Toxic Heavy Metals and/or other toxins, and safety of baby food products is material information consumers relied on when deciding to purchase Defendant's products.

<u>Answer</u>: Denied.

317.    Defendant's omissions increased the risk of harm children faced by consuming the Earth's Best Baby Food products.

<u>Answer</u>: Denied.

318.    Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

<u>Answer</u>: Denied.

319.    Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

<u>Answer</u>: Denied.

320.    Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

<u>Answer</u>: Denied.

321.    Plaintiffs and the Indiana Subclass seek relief under the statute including the greater of actual damages or $500, the greater of actual damages or $1,000 in the case of a willful violation, costs and attorney's fees, and any other relief the Court deems necessary and proper.

<u>Answer</u>: Paragraph 321 of the Complaint consists of a statement of the relief Plaintiffs seek, to which no response is required. To the extent a response is required, Hain Celestial admits

that Plaintiff Cassie Isza purports to seek relief under the Indiana Deceptive Consumer Sales Act on behalf of herself and members of the putative Indiana subclass (including the greater of actual damages or $500, the greater of actual damages or $1,000 in the case of a willful violation, costs, and attorney's fees), but it denies that they are entitled to any relief whatsoever.  Hain Celestial denies the remaining allegations, if any, of Paragraph 321 of the Complaint.

**COUNT XIV**
**VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT**
**Ky. Rev. Stat. Ann. §§ 367.110, *et seq.***
***(On Behalf of Plaintiff Shahalis Wilson and the Kentucky Subclass)***

322.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

Answer: Hain Celestial incorporates its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

323.    The Kentucky Consumer Protection Act ("KCPA") states that "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

Answer: Paragraph 323 of the Complaint consists of a legal conclusion to which no response is required.  To the extent a response is required, Hain Celestial admits that Section 367.170(a) of the Kentucky Revised Statutes states: "Unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  Hain Celestial denies that it has violated this statute and denies the remaining allegations, if any, of Paragraph 323 of the Complaint.

324.    Defendant's acts are "unfair" as defined by the KCPA.  *See* Ky. Rev. Stat. Ann. § 367.170(2).

Answer: Denied.

325.    Defendant violates this statute in the conduct of "trade" or "commerce" as defined by the KCPA.  *See* Ky. Rev. Stat. Ann. § 367.110(2).

Answer: Denied.

326.    Defendant violates this statute and commits unfair or deceptive acts or practices in connection with the sale of merchandise and in the conduct of trade or commerce as alleged herein.

<u>Answer:</u> Denied.

327.    Defendant omitted material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxic materials in its Earth's Best Baby Food products.

<u>Answer:</u> Denied.

328.    Defendant intentionally misrepresented the standard, quality, or grade of its Earth's Best Baby Food products and testing procedures for the products through mislabeling and false advertising.

<u>Answer:</u> Denied.

329.    The omitted information regarding the grade, quality, testing procedures, presence of Toxic Heavy Metals and/or other toxins, and safety of baby food products is material information consumers relied on when deciding to purchase Defendant's products.

<u>Answer:</u> Denied.

330.    Defendant's omissions increased the risk of harm children faced by consuming its Earth's Best Baby Food products.

<u>Answer:</u> Denied.

331.    Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

<u>Answer:</u> Denied.

332.    Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

<u>Answer:</u> Denied.

333.    Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

<u>Answer:</u> Denied.

334.    Plaintiffs and the Kentucky Subclass seek relief under the statute including recovery of actual damages, injunctive relief, punitive damages, costs and attorney's fees, and any other relief the Court deems necessary and proper.

Answer: Paragraph 334 of the Complaint consists of a statement of the relief Plaintiffs seek, to which no response is required. To the extent a response is required, Hain Celestial admits that Plaintiff Shahlis Wilson seeks relief (including actual damages, injunctive relief, punitive damages, costs, and attorney's fees) on behalf of herself and members of the putative Kentucky subclass, but it denies that they are entitled to any relief whatsoever. Hain Celestial denies the remaining allegations, if any, of Paragraph 334 of the Complaint.

## COUNT XV
### VIOLATION OF THE MAINE UNFAIR TRADE PRACTICES ACT
### Me. Rev. Stat. tit. 5, § 205-A, *et seq.*
### *(On Behalf of Plaintiff Bethany Nickerson and the Maine Subclass)*

335.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

Answer: Hain Celestial incorporates its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

336.    The Maine Unfair Trade Practices Act ("MUTPA") states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful."

Answer: Paragraph 336 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial admits that Title 5, Section 207 of the Maine Revised Statutes states: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful." Hain Celestial denies that it has violated this statute and denies the remaining allegations, if any, of Paragraph 336 of the Complaint.

337.    Defendant violates this statute in the conduct of "trade" or "commerce" as defined by the statute. *See* Me. Rev. Stat. tit. 5, § 206(3).

Answer: Denied.

338.    Defendant violates this statute and commits unfair or deceptive acts or practices in connection with the sale of merchandise and in the conduct of trade or commerce as alleged herein.

<u>Answer:</u> Denied

339.    Defendant omitted material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxic materials in its Earth's Best Baby Food products.

<u>Answer:</u> Denied.

340.    Defendant intentionally misrepresented the standard, quality, or grade of the Earth's Best Baby Food products and testing procedures for the products through mislabeling and false advertising.

<u>Answer:</u> Denied.

341.    The omitted information regarding the grade, quality, testing procedures, presence of Toxic Heavy Metals and/or other toxins, and safety of baby food products is material information consumers relied on when deciding to purchase Defendant's products.

<u>Answer:</u> Denied.

342.    Defendant's omissions increased the risk of harm children faced by consuming the Earth's Best Baby Food products.

<u>Answer:</u> Denied.

343.    Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

<u>Answer:</u> Denied.

344.    Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

<u>Answer:</u> Denied.

345.    Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

<u>Answer:</u> Denied.

346.    Plaintiffs and the Maine Subclass seek relief under the statute including recovery of actual damages, injunctive relief, costs and attorney's fees, and any other relief the Court deems necessary and proper.

Answer: Paragraph 346 of the Complaint consists of a statement of the relief Plaintiffs seek, to which no response is required. To the extent a response is required, Hain Celestial admits that Plaintiff Bethany Nickerson purports to seek relief under the Maine Unfair Trade Practices Act (including actual damages, injunctive relief, costs, and attorney's fees) on behalf of herself and members of the putative Maine subclass, but it denies that they are entitled to any relief whatsoever. Hain Celestial denies the remaining allegations, if any, of Paragraph 346 of the Complaint.

### COUNT XVI
### VIOLATION OF THE MASSACHUSETTS CONSUMER PROTECTION ACT
### Mass. Gen. Laws Ann. ch. 93A, §§ 1, *et seq.*
### *(On Behalf of Plaintiff Myjorie Philippe and the Massachusetts Subclass)*

347.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

Answer: Hain Celestial incorporates its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

348.    The Massachusetts Consumer Protection Act ("MCPA") states "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

Answer: Paragraph 348 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial Admits that chapter 93A, Section 2(a) of the Massachusetts General Laws states: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Hain Celestial denies that it has violated this statute and denies the remaining allegations, if any, of Paragraph 348 of the Complaint.

349.    Defendant commits the violations alleged herein in the course of conducting "trade" or "commerce" as defined by the statute. *See* Mass. Gen. Laws Ann. ch. 93A, § 1(b).

Answer: Denied.

350.    Defendant violates this statute and commits unfair or deceptive acts or practices in connection with the sale of merchandise and in the conduct of trade or commerce as alleged herein.

<u>Answer:</u> Denied.

351.    Defendant omitted material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxic materials in its Earth's Best Baby Food products.

<u>Answer:</u> Denied.

352.    Defendant intentionally misrepresented the standard, quality, or grade of the Earth's Best Baby Food products and testing procedures for the products through mislabeling and false advertising.

<u>Answer:</u> Denied.

353.    The omitted information regarding the grade, quality, testing procedures, presence of Toxic Heavy Metals and/or other toxins, and safety of baby food products is material information consumers relied on when deciding to purchase Defendant's products.

<u>Answer:</u> Denied.

354.    Defendant's omissions increased the risk of harm children faced by consuming the Earth's Best Baby Food products.

<u>Answer:</u> Denied.

355.    Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

<u>Answer:</u> Denied.

356.    Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

<u>Answer:</u> Denied.

357.    Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

<u>Answer:</u> Denied.

358.    As a result of Defendant's practices, Plaintiffs and Class Members have lost money.

<u>Answer:</u> Denied.

359. Pursuant to Section 9(3) of the MCPA, Mass. Gen. Laws Ann. ch. 93A, Plaintiff Philippe provided Defendant with a written demand for corrective action, identifying Defendant's unfair, deceptive acts and practices and injuries suffered and alleged herein.

Answer: Denied.

360. Plaintiffs and the Massachusetts Subclass seek relief under the statute including recovery of actual damages or twenty-fix [sic] dollars, whichever is greater, or up to three but not less than two times such amount, equitable relief, costs and attorney's fees, and any other relief the Court deems necessary and proper.

Answer: Paragraph 360 of the Complaint consists of a statement of the relief Plaintiffs seek, to which no response is required. To the extent a response is required, Hain Celestial admits that Plaintiff Myjorie Philippe seeks relief under the Massachusetts Consumer Protection Act (including actual damages, enhanced damages, equitable relief, costs, and attorney's fees) on behalf of herself and members of the putative Massachusetts subclass, but it denies that they are entitled to any relief whatsoever. Hain Celestial denies the remaining allegations, if any, of Paragraph 360 of the Complaint.

## COUNT XVII
### VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT
### Mo. Ann. Stat. §§ 407.010, *et seq.*
### *(On Behalf of Plaintiff Cassie Caldwell and the Missouri Subclass)*

361. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

Answer: Hain Celestial incorporates its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

362. The Missouri Merchandising Practices Act ("MMPA") prohibits "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri."

Answer: Paragraph 362 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial admits that Section 407.020 of the Missouri Statutes states as follows: "The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri, is declared to be an unlawful practice." Hain Celestial denies that it has violated this statute and denies the remaining allegations, if any, of Paragraph 362 of the Complaint.

363. Defendant is a "person" as defined by the MMPA. *See* Mo. Ann. Stat. § 407.010(5).

Answer: Paragraph 353 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial admits that Section 407.010(5) of the Missouri Statutes defines a "person" as "any natural person or his legal representative, partnership, firm, for-profit or not-for-profit corporation, whether domestic or foreign, company, foundation, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestui que trust thereof." Hain Celestial denies the remaining allegations, if any, of Paragraph 363 of the Complaint.

364. Defendant's conduct constitutes a "sale" or "advertisement" as defined by the MMPA. *See* Mo. Ann. Stat. § 407.010(1), (6).

Answer: Paragraph 364 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial admits that Section 407.010(1) of the Missouri Statutes defines an advertisement as an "attempt by publication, dissemination, solicitation, circulation, or any other means to induce, directly or indirectly, any

person to enter into any obligation or acquire any title or interest in any merchandise." Hain Celestial also admits that Section 407.010(6) of the Missouri Statutes defines a "sale" as "any sale, lease, offer for sale or lease, or attempt to sell or lease merchandise for cash or on credit." Hain Celestial denies the remaining allegations, if any, of Paragraph 364 of the Complaint.

365.    Defendant commits the violations alleged herein in the course of conducting "trade" or "commerce" as defined by the statute. *See* Mo. Ann. Stat. § 407.010(7).

Answer: Paragraph 365 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial admits that Section 407.010(7) of the Missouri Statutes defines "trade" and "commerce" as "the advertising, offering for sale, sale, or distribution, or any combination thereof, of any services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value wherever situated." Hain Celestial denies that it has committed any "violations" of the Missouri Merchandising Practices Act and denies the remaining allegations, if any, of Paragraph 365 of the Complaint.

366.    Defendant violates this statute and commits unfair or deceptive acts or practices in the conduct of trade or commerce in this state as alleged herein.

Answer: Denied.

367.    Defendant omitted material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxic materials in its Earth's Best Baby Food products.

Answer: Denied.

368.    Defendant intentionally misrepresented the standard, quality, or grade of the Earth's Best Baby Food products and testing procedures for the products through mislabeling and false advertising.

Answer: Denied.

369.    The omitted information regarding the grade, quality, testing procedures, presence of Toxic Heavy Metals and/or other toxins, and safety of baby food products is material information consumers relied on when deciding to purchase Defendant's products.

Answer: Denied.

370.    Defendant's omissions increased the risk of harm children faced by consuming the Earth's Best Baby Food products.

Answer: Denied.

371.    Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

Answer: Denied.

372.    Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

Answer: Denied.

373.    Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

Answer: Denied.

374.    Plaintiffs and the Missouri Subclass seek relief under the statute including the greater of actual damages, costs and attorney's fees, injunctive relief, and any other relief the Court deems necessary and proper.

Answer: Paragraph 374 of the Complaint consists of a statement of the relief Plaintiffs seek, to which no response is required. To the extent a response is required, Hain Celestial admits that Plaintiff Cassie Caldwell purports to seek relief under the Missouri Merchandising Practices Act (including actual damages, costs, attorney's fees, and injunctive relief) on behalf of herself and members of the putative Missouri subclass, but it denies that they are entitled to any relief whatsoever. Hain Celestial denies the remaining allegations, if any, of Paragraph 374 of the Complaint.

## COUNT XVIII
### VIOLATION OF THE NEVADA TRADE REGULATIONS AND PRACTICES ACT
### Nev. Rev. Stat. Ann. §§ 598.0903, *et seq.*
### *(On Behalf of Elena Thormahlen and the Nevada Subclass)*

375.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

Answer: Hain Celestial incorporates its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

376.    The Nevada Trade Regulations and Practices Act ("NTRPA") prohibits deceptive trade practices in the course of conducting one's business or occupation which include when a person: (i) "[k]nowingly makes a false representation as to the source, sponsorship, approval or certification of goods or services for sale or lease"; (ii) "[k]nowingly makes a false representation as to affiliation, connection, association with or certification by another person"; (iii) "[u]ses deceptive representations or designations of geographic origin in connection with goods or services for sale or lease"; (iv) "[k]nowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith"; (v) "[r]epresents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model"; or (vi) "[a]dvertises goods or services with intent not to sell or lease them as advertised."

Answer: Paragraph 376 of the Complaint consists of a legal conclusion to which no response is required.  To the extent a response is required, Hain Celestial admits that Section 598.915 of the Nevada Revised Statutes prohibits an enumerated list of "deceptive trade practice[s]" and states that a person violates the statute if, in the course of its business or occupation, it "[k]nowingly makes a false representation as to the source, sponsorship, approval or certification of goods or services for sale or lease," "[k]nowingly makes a false representation as to affiliation, connection, association with or certification by another person," "[u]ses deceptive representations or designations of geographic origin in connection with goods or services for sale or lease," "[k]nowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as

to the sponsorship, approval, status, affiliation or connection of a person therewith," "[r]epresents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model," or "[a]dvertises goods or services with intent not to sell or lease them as advertised."  Hain Celestial denies that it has violated this statute and denies the remaining allegations, if any, of Paragraph 376 of the Complaint.

377.    Defendant violates this statute and commits unfair or deceptive acts or practices in the conduct of trade or commerce in this state as alleged herein.

Answer: Denied.

378.    Defendant omitted material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxic materials in its Earth's Best Baby Food products.

Answer: Denied.

379.    Defendant intentionally misrepresented the standard, quality, or grade of the Earth's Best Baby Food products and testing procedures for the products through mislabeling and false advertising.

Answer: Denied.

380.    The omitted information regarding the grade, quality, testing procedures, presence of Toxic Heavy Metals and/or other toxins, and safety of baby food products is material information consumers relied on when deciding to purchase Defendant's products.

Answer: Denied.

381.    Defendant's omissions increased the risk of harm children faced by consuming the Earth's Best Baby Food products.

Answer: Denied.

382.    Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

Answer: Denied.

383.    Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

Answer: Denied.

384.    Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

Answer: Denied.

385.    Plaintiffs and the Nevada Subclass seek relief under the statute including actual damages, costs and attorney's fees, injunctive relief, and any other relief the Court deems necessary and proper.

Answer: Paragraph 385 of the Complaint consists of a statement of the relief Plaintiffs seek, to which no response is required.  To the extent a response is required, Hain Celestial admits that Plaintiff Elena Thormahlen seeks relief under the Nevada Trade Regulations & Practices Act (including actual damages, costs, attorney's fees, and injunctive relief) on behalf of herself and members of the putative Nevada subclass, but it denies that they are entitled to any relief whatsoever.  Hain Celestial denies the remaining allegations, if any, of Paragraph 385 of the Complaint.

## COUNT XIX
### VIOLATION OF THE NEW HAMPSHIRE CONSUMER PROTECTION ACT
### N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*
### *(On Behalf of Plaintiff Carolyn Leary and the New Hampshire Subclass)*

386.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

Answer: Hain Celestial incorporates its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

387.    Under the New Hampshire Consumer Protection Act ("NHCPA") "[i]t shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state" including, "V. [r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that such

person does not have; "VII. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" [or] "IX. Advertising goods or services with intent not to sell them as advertised[.]"

<u>Answer</u>: Paragraph 387 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial admits that Section 358-A:2 of the New Hampshire Revised Statutes makes it "unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state" and prohibits specific practices, including "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that such person does not have, "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised." Hain Celestial denies that it has violated this statute and denies the remaining allegations, if any, of Paragraph 387 of the Complaint.

388.    Defendant is a "person," as defined by the statute. *See* N.H. Rev. Stat. Ann. § 358-A:1(1).

<u>Answer</u>: Paragraph 388 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial admits that Section 358-A:1(1) of the New Hampshire Revised Statutes defines the term "person" to "include, where applicable, natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entity." Hain Celestial denies the remaining allegations, if any, of Paragraph 388 of the Complaint.

389.    Defendant violates this statute and commits unfair or deceptive acts or practices in the conduct of trade or commerce in this state as alleged herein.

Answer: Denied.

390.    Defendant omitted material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxic materials in its Earth's Best Baby Food products.

Answer: Denied.

391.    Defendant intentionally misrepresented the standard, quality, or grade of the Earth's Best Baby Food products and testing procedures for the products through mislabeling and false advertising.

Answer: Denied.

392.    The omitted information regarding the grade, quality, testing procedures, presence of Toxic Heavy Metals and/or other toxins, and safety of baby food products is material information consumers relied on when deciding to purchase Defendant's products.

Answer: Denied.

393.    Defendant's omissions increased the risk of harm children faced by consuming the Earth's Best Baby Food products.

Answer: Denied.

394.    Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

Answer: Denied.

395.    Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

Answer: Denied.

396.    Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

Answer: Denied.

397.    Plaintiffs and the New Hampshire Subclass seek relief under the statute including the greater of actual damages or $1,000, up to three times the amount of damages for a willful violation, costs and attorney's fees, injunctive relief, and any other relief the Court deems necessary and proper.

Answer: Paragraph 397 of the Complaint consists of a statement of the relief Plaintiffs seek, to which no response is required. To the extent a response is required, Hain Celestial admits that Plaintiff Carolyn Leary seeks relief (including the greater of actual damages or $1,000, up to three times the amount of damages for a willful violation, costs, attorney's fees, and injunctive relief) under the New Hampshire Consumer Protection Act on behalf of herself and members of the putative New Hampshire subclass, but it denies that they are entitled to any relief whatsoever. Hain Celestial denies the remaining allegations, if any, of Paragraph 397 of the Complaint.

## COUNT XX
### VIOLATION OF THE TRADE NAMES, TRADE-MARKS, AND UNFAIR PRACTICES ACT
### N.J. Stat. Ann. §§ 56:8-1, *et seq.*
### (On Behalf of Plaintiff Asyia Andrews and the New Jersey Subclass)

398.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

Answer: Hain Celestial incorporates its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

399.    The New Jersey Trade Names, Trade-Marks, and Unfair Practices Act ("NJTTUPA") prohibits "The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise."

Answer: Paragraph 399 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial admits that Section 56:8-2 of the New Jersey Statutes states as follows: "The act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent

performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." Hain Celestial denies that it has violated this statute and denies the remaining allegations, if any, of Paragraph 399 of the Complaint.

400.    Defendant commits the violations alleged herein in connection with the "sale" or "advertisement" of Earth's Best Baby Food products as defined by the statute. *See* N.J. Stat. Ann. § 56:8-1(a), (e).

Answer: Denied.

401.    Defendant violates this statute and commits unfair or deceptive acts or practices in the conduct of trade or commerce in this state as alleged herein.

Answer: Denied.

402.    Defendant omitted material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxic materials in its Earth's Best Baby Food products.

Answer: Denied.

403.    Defendant intentionally misrepresented the standard, quality, or grade of the Earth's Best Baby Food products and testing procedures for the products through mislabeling and false advertising.

Answer: Denied.

404.    The omitted information regarding the grade, quality, testing procedures, presence of Toxic Heavy Metals and/or other toxins, and safety of baby food products is material information consumers relied on when deciding to purchase Defendant's products.

Answer: Denied.

405.    Defendant's omissions increased the risk of harm children faced by consuming the Earth's Best Baby Food products.

Answer: Denied.

406.    Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

Answer: Denied.

407.    Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

Answer: Denied.

408.    Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

Answer: Denied.

409.    Plaintiffs and the New Jersey Subclass seek relief under the statute including actual damages, costs and attorney's fees, injunctive relief, and any other relief the Court deems necessary and proper.

Answer: Paragraph 409 of the Complaint consists of a statement of the relief Plaintiffs seek, to which no response is required.  To the extent a response is required, Hain Celestial admits that Plaintiff Aysia Andrews seeks relief (including actual damages, costs, attorney's fees, and injunctive relief) under the New Jersey Trade Names, Trade-Marks, and Unfair Practices Act on behalf of herself and members of the putative New Jersey subclass, but it denies that they are entitled to any relief whatsoever.  Hain Celestial denies the remaining allegations, if any, of Paragraph 409 of the Complaint.

## COUNT XXI
### VIOLATION OF THE NORTH CAROLINA MONOPOLIES, TRUSTS AND CONSUMER PROTECTION ACT
### N.C. Gen. Stat. Ann. § 75-1.1, *et seq.*
### *(On Behalf of Plaintiff Helen Howard and the North Carolina Subclass)*

410.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

Answer: Hain Celestial incorporates its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

411.    The North Carolina Monopolies, Trusts and Consumer Protection Act ("NCMTCPA") states "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."

Answer: Paragraph 411 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial admits that Section 75-1.1(a) of the North Carolina General Statutes states: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." Hain Celestial denies that it has violated this statute and denies the remaining allegations, if any, of Paragraph 411 of the Complaint.

412.    Defendant violates this statute while engaging in "commerce" as defined by the NCMTCPA. *See* N.C. Gen. Stat. Ann. § 75-1.1(b).

Answer: Denied.

413.    Defendant violates this statute and commits unfair or deceptive acts or practices in the conduct of trade or commerce in this state as alleged herein.

Answer: Denied.

414.    Defendant omitted material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxic materials in its Earth's Best Baby Food products.

Answer: Denied.

415.    Defendant intentionally misrepresented the standard, quality, or grade of the Earth's Best Baby Food products and testing procedures for the products through mislabeling and false advertising.

Answer: Denied.

416.    Defendant's omissions increased the risk of harm children faced by consuming the Earth's Best Baby Food products.

Answer: Denied.

417.    Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

Answer: Denied.

418.    Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

<u>Answer:</u> Denied.

419.    Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

<u>Answer:</u> Denied.

420.    Plaintiffs and the North Carolina Subclass seek relief under the statute including actual damages, treble damages, costs and attorney's fees, injunctive relief, and any other relief the Court deems necessary and proper.

<u>Answer:</u> Paragraph 420 of the Complaint consists of a statement of the relief Plaintiffs seek, to which no response is required. To the extent a response is required, Hain Celestial admits that Plaintiff Helen Howard seeks relief (including actual damages, treble damages, costs, attorney's fees, and injunctive relief) under the North Carolina Monopolies, Trusts, and Consumer Protection Act on behalf of herself and members of the putative North Carolina subclass, but it denies that they are entitled to any relief whatsoever. Hain Celestial denies the remaining allegations, if any, of Paragraph 420 of the Complaint.

## <u>COUNT XXII</u>
### VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### 73 Pa. Cons. Stat. Ann. §§ 201-1 *et seq.*
### *(On Behalf of Plaintiff Tanya Motsay and the Pennsylvania Subclass)*

421.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

<u>Answer:</u> Hain Celestial incorporates its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

422.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL") declares "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . unlawful."

<u>Answer:</u> Paragraph 422 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial admits that Title 73, Section 201-3 of the Pennsylvania Statutes states: "Unfair methods of competition and unfair or

deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of clause (4) of section 2 of this act  and regulations promulgated under section 3.1 of this act are hereby declared unlawful."  Hain Celestial denies that it has violated this statute and denies the remaining allegations, if any, of Paragraph 422 of the Complaint.

> 423.    Under the PUTPCPL, "unfair methods of competition" and "unfair or deceptive acts or practices" include, (i) "[c]ausing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;" (ii) "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;" (iii) "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;" or (iv) "[a]dvertising goods or services with intent not to sell them as advertised[.]"

Answer: Paragraph 423 of the Complaint consists of a legal conclusion to which no response is required.  To the extent a response is required, Hain Celestial admits that Title 73, Section 201-2(4) of the Pennsylvania Statutes defines "unfair methods of competition" and "unfair or deceptive acts or practices" to include "[c]ausing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services," "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have," "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised."  Hain Celestial denies the remaining allegations, if any, of Paragraph 423 of the Complaint.

> 424.    Defendant violates this statute and commits unfair or deceptive acts or practices in the conduct of trade or commerce as alleged herein.

Answer: Denied.

425.    Defendant omitted material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxic materials in its Earth's Best Baby Food products.

<u>Answer</u>: Denied.

426.    Defendant intentionally misrepresented the standard, quality, or grade of the Earth's Best Baby Food products and testing procedures for the products through mislabeling and false advertising.

<u>Answer</u>: Denied.

427.    The omitted information regarding the grade, quality, testing procedures, presence of Toxic Heavy Metals and/or other toxins, and safety of baby food products is material information consumers relied on when deciding to purchase Defendant's products.

<u>Answer</u>: Denied.

428.    Defendant's omissions increased the risk of harm children faced by consuming the Earth's Best Baby Food products.

<u>Answer</u>: Denied.

429.    Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

<u>Answer</u>: Denied.

430.    Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

<u>Answer</u>: Denied.

431.    Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

<u>Answer</u>: Denied.

432.    Plaintiffs and the Pennsylvania Subclass seek relief under the statute including the greater of actual damages or $100, costs and attorney's fees, and any other relief the Court deems necessary and proper.

<u>Answer</u>: Paragraph 432 of the Complaint consists of a statement of the relief Plaintiffs seek, to which no response is required.  To the extent a response is required, Hain Celestial admits that Plaintiff Tanya Motsay purports to seek relief (including the greater of actual damages or

$100, costs, and attorney's fees) under the Pennsylvania Unfair Trade Practices and Consumer Protection Law on behalf of herself and members of the putative Pennsylvania subclass, but it denies that they are entitled to any relief whatsoever.  Hain Celestial denies the remaining allegations, if any, of Paragraph 432 of the Complaint.

## COUNT XXIII
### VIOLATION OF THE RHODE ISLAND UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT
### R.I. GEN. LAWS ANN. §§ 6-13.1-1, et seq.
### *(On Behalf of Plaintiff Amanda Roman and the Rhode Island Subclass)*

433.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

Answer: Hain Celestial incorporates its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

434.    The Rhode Island Unfair Trade Practices and Consumer Protection Act ("RIUTPCPA") states "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful."

Answer: Paragraph 434 of the Complaint consists of a legal conclusion to which no response is required.  To the extent a response is required, Hain Celestial responds that Section 6-13-.1-2 of the Rhode Island General Laws states: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful."  Hain Celestial denies that it has violated this statute and denies the remaining allegations, if any, of Paragraph 434 of the Complaint.

435.    Defendant engages in "unfair methods of competition and unfair or deceptive acts or practices" as defined by the RIUTPCPA.  *See* R.I. Gen. Laws Ann. § 6-13.1-1(6) (ii), (iv), (v), (vii), (xii), (xiii).

Answer: Denied.

436.    Defendant violates this statute in the conduct of "trade or commerce" as defined by the RIUTPCPA.  *See* R.I. Gen. Laws Ann. § 6-13.1-1(5)

Answer: Denied.

437.    Defendant violates this statute and commits unfair or deceptive acts or practices in the conduct of trade or commerce as alleged herein.

Answer: Denied.

438.    Defendant omitted material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxic materials in its Earth's Best Baby Food products.

Answer: Denied.

439.    Defendant intentionally misrepresented the standard, quality, or grade of the Earth's Best Baby Food products and testing procedures for the products through mislabeling and false advertising.

Answer: Denied.

440.    The omitted information regarding the grade, quality, testing procedures, presence of Toxic Heavy Metals and/or other toxins, and safety of baby food products is material information consumers relied on when deciding to purchase Defendant's products.

Answer: Denied.

441.    Defendant's omissions increased the risk of harm children faced by consuming the Earth's Best Baby Food products.

Answer: Denied.

442.    Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

Answer: Denied.

443.    Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

Answer: Denied.

444.    Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

Answer: Denied.

445.    Plaintiffs and the Rhode Island Subclass seek relief under the statute including the greater of actual damages or $500, treble damages, injunctive relief, costs and attorney's fees, and any other relief the Court deems necessary and proper.

Answer: Paragraph 445 of the Complaint consists of a statement of the relief Plaintiffs seek, to which no response is required. To the extent a response is required, Hain Celestial admits that Plaintiff Amanda Roman purports to seek relief (including the greater of actual damages or $500, treble damages, injunctive relief, costs, and attorney's fees) under the Rhode Island Unfair Trade Practices and Consumer Protection Act on behalf of herself and members of the putative Rhode Island subclass, but it denies that they are entitled to any relief whatsoever. Hain Celestial denies the remaining allegations, if any, of Paragraph 445 of the Complaint.

## COUNT XXIV
### VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT
### Va. Code Ann. § 59.1-196, *et seq.*
### *(On Behalf of Plaintiffs Stephanie Weimer, Simone Craig, and the Virginia Subclass)*

446. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

Answer: Hain Celestial incorporates its responses to all preceding paragraphs of the Complaint as if fully set forth herein.

447. The Virginia Consumer Protection Act ("VCPA") declares several "fraudulent acts or practices committed by a supplier in connection with a consumer transaction . . . unlawful," including (i) "[m]isrepresenting the source, sponsorship, approval, or certification of goods or services;" (ii) "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits;" (iii) "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model;" (iv) "[a]dvertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised;" or (v) "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction."

Answer: Paragraph 447 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial admits that Section 59.1-200 of the Virginia Code states that certain "fraudulent acts or practices committed by a supplier in connection with a consumer transaction are hereby declared unlawful," including

"[m]isrepresenting the source, sponsorship, approval, or certification of goods or services," "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits," "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model," "[a]dvertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised," and "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Hain Celestial denies that it has violated this statute and denies the remaining allegations, if any, of Paragraph 447 of the Complaint.

448.    Defendant is a "supplier," as defined by the VCPA. *See* Va. Code Ann. § 59.1-198.

Answer: Paragraph 448 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial admits that Section 59.1-198 of the Virginia Code defines a "supplier" as a "seller, lessor, licensor, or professional who advertises, solicits, or engages in consumer transactions, or a manufacturer, distributor, or licensor who advertises and sells, leases, or licenses goods or services to be resold, leased, or sublicensed by other persons in consumer transactions." Hain Celestial denies the remaining allegations, if any, of Paragraph 448 of the Complaint.

449.    Defendant engaged in a "consumer transaction" with Plaintiffs and the Class members, as defined by the VCPA. *See* § 59.1-198.

Answer: Paragraph 449 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial admits Section 59.1-198 of the Virginia Code defines a "consumer transaction" as an "advertisement, sale, lease, license or offering for sale, lease or license, of goods or services to be used primarily for personal, family or household purposes." Hain Celestial denies the remaining allegations, if any, of Paragraph 449 of the Complaint.

450. Defendant violates this statute and commits unfair or deceptive acts or practices in the conduct of trade or commerce, as alleged herein, including, by omitting material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxins in Hain Baby Food products.

Answer: Denied.

451. Defendant intentionally misrepresented the standard, quality, or grade of the Earth's Best Baby Food products and testing procedures for the products through mislabeling and false advertising.

Answer: Denied.

452. The omitted information regarding the grade, quality, testing procedures, presence of Toxic Heavy Metals and/or other toxins, and safety of baby food products is material information consumers relied on when deciding to purchase Defendant's products.

Answer: Denied.

453. Defendant's omissions increased the risk of harm children faced by consuming the Earth's Best Baby food products.

Answer: Denied.

454. Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

Answer: Denied.

455. Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

Answer: Denied.

456. Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

Answer: Denied.

457. Plaintiffs and the Virginia Subclass seek relief under the statute including the greater of actual damages or $500, damages not exceeding three times actual damages or $1,000 for a willful violation, costs and attorney's fees, and any other relief the Court deems necessary and proper.

Answer: Hain Celestial admits that Plaintiffs and the putative Virginia Subclass purport to seek the relief described in Paragraph 457 of the Complaint, but it denies that Plaintiffs or any member of the putative Virginia Subclass is entitled to such relief. Hain Celestial denies the remaining allegations, if any, of Paragraph 457 of the Complaint.

## COUNT XXV
### VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT
### Wash. Rev. Code Ann. §§ 19.86.010, *et seq.*
### *(On Behalf of Plaintiff Monica Hazelwood and the Washington Subclass)*

458.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

Answer: Hain Celestial incorporates by reference its responses to all preceding paragraphs as if fully set forth herein.

459.    The Washington Consumer Protection Act ("WCPA") states "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

Answer: Paragraph 459 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial admits that Section 19.86.020 of the Washington Revised Code states as follows: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Hain Celestial denies that it has violated this statute and denies the remaining allegations, if any, of Paragraph 459 of the Complaint.

460.    Defendant engaged in "trade or commerce" as defined by the WCPA. *See* Wash. Rev. Code Ann. § 19.86.010(2).

Answer: Paragraph 460 of the Complaint consists of a legal conclusion to which no response is required. To the extent a response is required, Hain Celestial admits that Section 19.86.010(2) of the Washington Revised Code defines "trade or commerce" to "include the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of

Washington."  Hain Celestial denies the remaining allegations, if any, of Paragraph 460 of the Complaint.

461.    Defendant violates this statute and commits unfair or deceptive acts or practices in the conduct of trade or commerce, as alleged herein, including, by omitting material information regarding the levels of Toxic Heavy Metals and/or other toxins and toxins in Hain Baby Food products.

Answer: Denied.

462.    Defendant intentionally misrepresented the standard, quality, or grade of the Earth's Best Baby Food products and testing procedures for the products through mislabeling and false advertising.

Answer: Denied.

463.    The omitted information regarding the grade, quality, testing procedures, presence of Toxic Heavy Metals and/or other toxins, and safety of baby food products is material information consumers relied on when deciding to purchase Defendant's products.

Answer: Denied.

464.    Defendant's omissions increased the risk of harm children faced by consuming the Earth's Best Baby Food products.

Answer: Denied.

465.    Defendant's violations were and are, at least, reckless or willful, deceptive, unfair, and unconscionable.

Answer: Denied.

466.    Had Plaintiffs and Class Members known that the products were unsafe, they would not have purchased the products, would have bought less of the products, or would have paid less for the products.

Answer: Denied.

467.    Defendant will continue to cause harm through these material misrepresentations and omissions without legal action.

Answer: Denied.

468. Plaintiffs and the Washington Subclass seek relief under the statute including actual damages or treble damages, injunctive relief, costs and attorney's fees, and any other relief the Court deems necessary and proper.

Answer: Paragraph 468 of the Complaint consists of a legal conclusion to which no response is required.  To the extent a response is required, Hain Celestial admits that Plaintiff Monica Hazelwood seeks relief (including actual damages, treble damages, injunctive relief, costs, and attorney's fees) on behalf of herself and the putative Washington subclass, but it denies that they are entitled to any relief whatsoever.  Hain Celestial denies the remaining allegations, if any, of Paragraph 468 of the Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the proposed Class and Subclasses, pray for relief and judgment against Defendant as follows:

a. An order declaring this action to be a proper class action, appointing Plaintiffs and their counsel to represent the Class, and requiring Defendant to bear the costs of class notice;

b. An order enjoining Defendant from selling the Baby Foods until the levels of Toxic Heavy Metals and/or other toxins are removed or reduced and/or full disclosure of the presence of such prominently appears on all packaging;

c. An order requiring Defendant to establish sourcing and control protocols, consult with an independent auditor, and conduct compliance testing.

d. An order enjoining Defendant from selling its Baby Foods in any manner suggesting or implying that they are healthy, nutritious, and safe for consumption;

e. An order requiring Defendant to engage in a corrective advertising campaign and to engage in any further necessary affirmative injunctive relief, such as recalling existing products;

f. An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

g. An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful,

unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of law, plus pre- and post-judgment interest thereon;

h.  An order requiring Defendant to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

i.  Awarding Plaintiffs and the Class compensatory damages, in an amount exceeding $5,000,000, to be determined by proof;

j.  Awarding Plaintiffs and the Class appropriate relief, including actual and statutory damages;

k.  For punitive damages;

l.  Awarding Plaintiffs and the Class the costs of prosecuting this action, including expert witness fees;

m.  Awarding Plaintiffs and the Class reasonable attorneys' fees and costs as allowable by law;

n.  Awarding pre-judgment and post-judgment interest; and

o.  Granting any other relief as this Court may deem just and proper.

Answer: Plaintiffs' Prayer for Relief consists of a summary of the relief Plaintiffs seek, to which no response is required. To the extent a response is required, Hain Celestial denies that Plaintiffs or any member of the putative class they purport to represent are entitled to any relief whatsoever, and it prays that Plaintiffs take nothing by way of their complaint.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues so triable.

Answer: Hain Celestial demands a jury trial on all claims, causes of action, and issues so triable.

## STATEMENT OF DEFENSES

The following statement of defenses is not intended to characterize any particular defense as "affirmative," nor to specify which party bears the burden of proof or persuasion on any particular defense.

## FIRST DEFENSE (FAILURE TO STATE A CLAIM)

The Complaint fails to state a claim on which relief can be granted because none of the alleged representations or omissions Plaintiffs challenge are false, misleading, or unlawful.

## SECOND DEFENSE (NO RELIANCE)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs did not purchase Hain Celestial's products in reliance on any of the labeling claims or omissions they challenge or because they believed the products were free of naturally occurring heavy metals, including arsenic.  To the extent Plaintiffs did so, their alleged reliance was not reasonable as a matter of law.

## THIRD DEFENSE (NO DECEPTION)

Plaintiffs' claims are barred because no reasonable consumer would have reasonably relied on or understood the challenged labels to indicate that Hain Celestial's products were free of naturally occurring heavy metals, including arsenic.

## FOURTH DEFENSE (NO STANDING/NO INJURY)

Plaintiffs lack Article III standing, and did not suffer an injury cognizable under any of the statutes they cite in their Complaint, because Plaintiffs did not lose money or property or suffer any injury in fact as a result of any of the labeling claims or omissions Plaintiffs challenge in this action.  Furthermore, none of the challenged labeling claims resulted in any "price premium," which means that Plaintiffs have not suffered any economic injury and lack both Article III and statutory standing.

## FIFTH DEFENSE (NO HEALTH RISKS)

Plaintiffs' claims are barred, in whole or in part, because the ordinary consumption of Hain Celestial's products as part of a child's overall diet would not result in the intake of an amount of

heavy metals that poses any health risks to any consumer, as would be required for the challenged labeling claims to be false, for the alleged presence of heavy metals to be material to a reasonable consumer, and for any duty to disclose the alleged presence of heavy metals to arise.

### SIXTH DEFENSE (NO DUTY TO DISCLOSE/NO EXCLUSIVE KNOWLEDGE)

To the extent Plaintiffs' claims are premised on alleged omissions, those claims are barred because Hain Celestial had no duty to disclose the alleged presence of naturally occurring heavy metals (including arsenic) and because Hain Celestial did not have exclusive knowledge of the alleged presence of heavy metals (including arsenic) in its products.

### SEVENTH DEFENSE (NO BREACH OF WARRANTY)

Plaintiffs' claims are barred, in whole or in part, because the statements challenged in this lawsuit did not constitute warranties. Moreover, to the extent Hain Celestial's representations or omissions gave rise to any warranty, Hain Celestial did not breach any such warranty.

### EIGHTH DEFENSE (NO STANDING TO SEEK INJUNCTIVE RELIEF)

To the extent Plaintiffs seek injunctive relief, their claims are barred because they are now aware of the alleged presence of heavy metals (including arsenic) in Hain Celestial's products. As a result, Plaintiffs face no risk of future injury and lack standing to seek injunctive relief.

### NINTH DEFENSE (EXPRESS PREEMPTION)

Plaintiffs' claims are preempted by the Nutrition Labeling & Education Act, 21 U.S.C. §§ 301 *et seq.*, to the extent they seek to impose labeling requirements that are in addition to or that differ from those imposed by federal law, including by imposing liability on Hain Celestial under state law for using labeling statements that are expressly permitted by federal law (including the applicable FDA regulations) and/or "omitting" information that need not be disclosed under federal law (including the applicable FDA regulations).

**TENTH DEFENSE (CONFLICT PREEMPTION)**

Plaintiffs' claims are preempted by conflict preemption principles to the extent they seek to impose liability on Hain Celestial for selling products that contain naturally occurring heavy metals (including arsenic), as doing so would undermine the federal government's goal of encouraging children to eat a diverse, nutrient-rich diet that includes fruits, vegetables, and grains grown in the air, soil, and water.

**ELEVENTH DEFENSE (RESERVATION OF ADDITIONAL DEFENSES)**

Hain Celestial hereby reserves the right to amend its Answer to raise additional defenses as they become available or apparent to Hain Celestial through discovery or otherwise.

Dated:  January 23, 2025

Respectfully submitted,

JENNER & BLOCK LLP

By: /s/ Dean N. Panos
　　Dean N. Panos (*pro hac vice*)
　　Kate T. Spelman (*pro hac vice*)
　　Alexander M. Smith (*pro hac vice*)

Attorneys for Defendant
The Hain Celestial Group, Inc.

127

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing document was filed on January 23, 2025 with the Clerk of the Court by using the CM/ECF system, which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.


Dated:  January 23, 2025                    By:  _____/s/  Dean N. Panos_____
                                                              Dean N. Panos