UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE HAIN CELESTIAL HEAVY METALS BABY FOOD LITIGATION | Case No. 2:21-cv-00678-NRM-AYS<br><br>**ELECTRONIC DISCOVERY AGREEMENT** |

This Agreement will govern how the parties [and the Court] manage electronic discovery in the above-captioned case.

## I. PRESERVATION

Consistent with the parties' obligations under Rule 26(f) of the Federal Rules of Civil Procedure, the parties will meet and confer regarding the scope of preservation, including custodians, data sources, date ranges, and categories of information that have been or should be preserved in connection with this litigation. The parties will disclose categories or sources of responsive information that they have reason to believe have not been preserved or should not be preserved and will explain with specificity the reasons to support such a belief. As a result of investigation and/or discovery, the parties may identify additional data sources that may or may not need to be searched or preserved pursuant to the foregoing. The parties will meet and confer about preserving such ESI as any additional data sources are identified.

## II. IDENTIFICATION OF RESPONSIVE DOCUMENTS

The parties shall meet and confer in an effort to conduct discovery in the most efficient and effective manner that is proportional to the needs of the case. Specifically, the parties will attempt in good faith to come to an agreement on search and culling methods used to identify responsive information. The parties will meet and confer regarding any proposed limitations on the scope of discovery, including custodians, custodial and non-custodial sources, date ranges, file types, or any additional proposed method to cull documents for review (*e.g*., search terms, technology-assisted-review, predictive coding). The parties agree that the grounds for objections should be supported by specific information. The parties will not seek Court intervention without first attempting to resolve any disagreements in good faith, based upon all reasonably available information.

**A.    Sources**

The parties will disclose and discuss the custodial and noncustodial data sources likely to contain responsive information. The parties will identify and describe any relevant electronic systems and storage locations. The parties will also disclose and describe any document retention policies or practices (*e.g.*, retention schedules or policies, auto-delete functions, routine purging, mailbox size limits), or other practices likely to impact the existence or accessibility of responsive documents or electronically stored information. The parties will identify and describe sources likely to contain responsive information that a party asserts should not be searched or are not reasonably accessible and will explain the reasons for such assertions. The parties will disclose third-party sources, if any, likely to contain discoverable information. The parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request that files from additional custodial or noncustodial sources be searched and meet and confer regarding such requests.

The parties will provide a description of any potentially relevant data sources that the party is aware of having been lost or destroyed, and the circumstances of such loss or destruction.

**B.    Identification of Custodians**

The parties shall meet and confer regarding the selection of custodians whose files are likely to contain documents and electronically stored information ("ESI") relating to the subject matter of this litigation. This will include a description of the proposed custodians' job title, brief description of such person's responsibilities (including dates of employment by the applicable party) and a description of reporting lines (or organizational chart). The parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request that files from additional custodians be searched and meet and confer regarding such request.

### C.  Easily Targeted Responsive Documents

Documents and categories of documents that are relevant to this action and responsive to a party's document requests, and that are regularly maintained in a known location, or in a location that is knowable upon reasonable inquiry of those with knowledge about a party's document management, shall be collected without the use of search terms or other agreed-upon advanced search methodology (*e.g.*, analytics, predictive coding, technology-assisted-review). The producing party will indicate which categories of documents will be collected with and without the use of search terms or other advanced search methodology. Where potentially responsive ESI shall be identified through the use of search terms, the parties agree to follow the process identified below and the parties shall meet and confer regarding any proposed deviation.

### D.  Search Terms

The producing party shall provide a list of proposed search terms. To the extent reasonably possible, search terms will be crafted with input from the custodians in order to identify appropriate nomenclature, code words, etc. The receiving party may provide any additional search terms that it believes are necessary to identify responsive documents.

After receiving any additional proposed terms from the receiving party, the producing party will provide a search term hit list or hit report after global de-duplication (including the number of documents that hit on each term, the number of unique documents that hit on each term (documents that hit on a particular term and no other term on the list), and the total number of documents that would be returned by using the proposed search term list, including families). The parties shall meet and confer regarding the proposed search terms following receipt of the search term hit list and shall use best efforts to agree to a set of search terms as soon as is practicable.

The parties acknowledge that the development of a search methodology, and the identification of custodians and search terms in particular, is an iterative process that may be

3

modified as discovery progresses. If during discovery, sources, custodians or search terms, which were not contemplated initially, are uncovered, parties shall meet-and-confer in an effort to target unique and relevant data.

If disputed terms still exist at the end of the meet-and-confer process, the parties will submit those terms to the Court in the form of a joint discovery letter with a discussion of the relevance and/or burden associated with those search terms.

E.  **Technology-Assisted-Review**

If any party wishes to use predictive coding or technology-assisted-review for the purpose of culling documents to be reviewed or produced, the parties shall meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies. This protocol does not prohibit the use of predictive coding or technology-assisted-review for the purpose of prioritizing the review of certain documents within the set of documents that the producing party has agreed to review based on the use of agreed-upon search terms.

III.  **PRODUCTION OF HARD COPY DOCUMENTS – FORMAT**

Hard copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME" and "CUSTODIAN." The documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business. If an original document contains color or alternations, and the color or alterations are necessary to understand the meaning or content of the document, the document shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. Multi-page OCR text for each document should also be provided. The OCR software shall maximize text

quality. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

## IV. PRODUCTION OF ESI

### A. Format

The parties shall produce ESI in single-page, black and white, TIFF Group IV, 300 DPI TIFF images, or in color PDF images, with the exception of spreadsheet and presentation type files, source code, audio and video files, and documents with tracked changes in the metadata, which shall be produced in native format. If an original document contains color, the document should be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. The parties are under no obligation to enhance an image beyond how it was kept in the usual course of business. TIFFs, PDFs, and JPGs will show any and all text and images that would be visible to the reader using the native software that created the document. For example, TIFFs, PDFs, and/or JPGs of e-mail messages should include the BCC line. If the image does not accurately reflect the document as it was kept in the usual course of business, including all comments, edits, tracking, etc., the parties agree to meet and confer in good faith on production format options.

If a document is produced in native format, a single-page Bates stamped image slip sheet stating the document has been produced in native format should be provided, with the exception of PowerPoint presentations. PowerPoint documents should be produced in native format along with single-page, 300 DPI TIFF/JPG images which display both the slide and speaker's notes. Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that either party believes that specific documents or classes of documents, not already

5

identified within this protocol, should be produced in native format, the parties agree to meet and confer in good faith.

### B. De-Duplication

Each party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. The parties agree that an e-mail that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an e-mail that does not include content in those fields, even if all remaining content in the e-mail is identical. Removal of near-duplicate documents and e-mail thread suppression is not acceptable. De-duplication will be done across the entire collection (global de-duplication) and the CUSTODIAN field will list each custodian, separated by a semicolon, who was a source of that document and the FILEPATH field will list each file path, separated by a semicolon, that was a source of that document. Should the CUSTODIAN or FILEPATH metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians and file paths for the affected documents will be produced prior to substantial completion of the document production.

### C. Metadata

All ESI will be produced with a Concordance delimited, database load file that contains the metadata fields listed in Table 1, attached hereto. The metadata produced should have the correct encoding to enable preservation of the documents' original language.

For ESI other than e-mail and e-docs that do not conform to the metadata listed in Table 1, such as text messages, Instant Bloomberg, iMessage, Google Chat, Yammer, Slack, etc., the parties will meet and confer as to the appropriate metadata fields to be produced.

### D.     Embedded Objects

Embedded files shall be produced as attachments to the document that contained the embedded file, with the parent/child relationship preserved. The embedded files will be marked with a "YES" in the load file under the "Is Embedded" metadata field. The parties agree logos need not be extracted as separate documents as long as they are displayed in the parent document.

### E.     Attachments/Links

The parties agree that if any part of an e-mail or its attachments is responsive, the entire e-mail and attachments will be produced, except any attachments that must be withheld or redacted on the basis of privilege. The parties will meet and confer about whether there is an appropriate basis for withholding a family document for any reason other than attorney-client or work product privilege. The attachments will be produced sequentially after the parent e-mail.

The parties shall use their best efforts to collect and produce documents that are links in e-mails, including, but not limited to, Google G Suite, Microsoft O365, etc. Documents extracted from links shall be populated with the BegAttach and EndAttach metadata fields to show the family relationship.

### F.     Compressed Files Types

Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

### G.     Structured Data

To the extent a response to discovery requires production of electronic information stored in a database, the parties will meet and confer regarding methods of production. The parties will consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

7

**H.     Exception Report**

The producing party shall compile an exception report enumerating any unprocessed or unprocessable documents, their file type and the file location.

**I.     Decryption of Production Data**

The parties will make reasonable efforts to ensure that all encrypted or password-protected documents and ESI are successfully processed for review and production. To the extent security protection for such Documents and ESI cannot be successfully processed despite reasonable efforts, when producing such encrypted files, the producing party shall produce a slip sheet stating that the documents cannot be decrypted and provide the metadata required by Table 1, attached hereto, to the extent it can be reasonably extracted from the file in its encrypted form.

**J.     Encryption of Data in Transit**

To maximize the security of information in transit, any media on which documents are produced may be encrypted. In such cases, the producing party shall transmit the encryption key or password to the receiving party, under separate cover, contemporaneously with sending the encrypted media.

**K.     Redactions**

A party may use redactions to protect for privilege and shall log the redaction in a privilege log. Each redaction on a document shall reflect the basis for such redaction on the face of the document. (e.g., "Redacted – Attorney Client Privilege").

If documents that the parties have agreed to produce in native format need to be redacted, the parties will meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.

**L.     Privilege Log**

For all documents withheld, in whole or in part, on the basis of privilege, the parties agree to furnish logs that provide information sufficient to substantiate the withholding Party's claim of privilege, including:

(a) a unique number identifying each entry on the log;

(b) the date of the document (which for emails should be the sent date of the document and for other ESI should be the last-modified or created date of the document), to the extent it is determinable;

(c) the author of the document (which, for emails, should be populated with the metadata extracted from the "Email From" field associated with the file), to the extent it is determinable;

(d) a description of the document (which can consist of the subject line of the email, the file name and document title of a non-email document, or other language sufficient to describe the document);

(e) the recipient(s) of the document, to the extent they are determinable;

(f) the basis of the privilege claim, including information sufficient to identify whether the document contains attachments which the withholding Party is also withholding on the basis of privilege;

(g) the type of privilege asserted (which may be abbreviated as "AC" for the attorney-client privilege, "WP" for the work-product privilege, and "CI" for the common-interest privilege);

(h) information sufficient to identify the attorneys on the privilege log, either on the log itself or in a separate document served with the log.

Privilege logs shall be provided in searchable Microsoft Excel format.

9

Privilege logs shall be produced on a rolling basis. The Producing party shall provide a log within approximately thirty (30) days of its initial custodial production and shall update that log at least once every thirty (30) days thereafter. To the extent a producing Party provides multiple, or supplemental, privilege logs, each such log should contain all previous privilege log entries, such that each privilege log can supersede all prior privilege logs, with any changes to previously produced privilege log entries clearly identified. A substantially final log shall be produced thirty (30) days after the date of substantial completion.

The Parties need not log communications exclusively between a party and its representative(s), on the one hand, and its in-house or outside counsel, on the other hand, that post-date March 3, 2022.

Pursuant to Federal Rule of Evidence 502(d), the Parties agree that the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding.

The Parties agree that any Party's failure to comply with the requirements of this Order shall not, standing alone, constitute a waiver of any privilege or protection.

DATED: April 21, 2025

| | |
|---|---|
| */s/ Alexander M. Smith* | */s/ Michael P. Canty* |
| **JENNER & BLOCK LLP** | **LABATON SUCHAROW LLP** |
| Alexander M. Smith (*pro hac vice*) | Michael P. Canty |
| 515 South Flower Street | Carol C. Villegas |
| Los Angeles, CA 90071-2246 | Danielle Izzo |
| Tel: 312-923-2765 | Gloria J. Medina |
| asmith@jenner.com | Michael A. Hotz |
| | 140 Broadway |
| *Attorney for Defendant* | New York, New York 10005 |
| *The Hain Celestial Group, Inc.* | Telephone: (212) 907-0700 |
| | Facsimile: (212) 818-0477 |
| | mcanty@labaton.com |
| | cvillegas@labaton.com |

        dizzo@labaton.com
        gmedina@labaton.com
        mhotz@labaton.com

        *Appointed Interim Counsel for Plaintiffs and the Proposed Class*

# TABLE 1

# METADATA FIELDS

| Field Name | Description | Example / Format |
|---|---|---|
| **PRODBEG** | The Document ID number of first page of the document. | ABC0000001 |
| **PRODEND** | The Document ID number of the last page of a document. | ABC0000003 |
| **BEGATTACH** | The Document ID number of the first page of the parent document. | ABC0000001 |
| **ENDATTACH** | The Document ID number of the last page of the last attachment. | ABC0000008 |
| **CONFIDENTIALITY DESIGNATION** | If document assigned confidentiality by Counsel | Confidential, |
| **PGCOUNT** | The number of pages in a document. (image records) | Numeric |
| **CUSTODIAN** | All of the custodians / sources of a document from which the document originated. | Smith, Joe |
| **DUPLICATE CUSTODIAN** | Names of all other custodians who possessed the document. Where multiple individuals share first and last name, individuals should be distinguished by an initial which is kept constant between productions. For instance: Smith, John A. and Smith, John B. | Smith, John; Doe, Jane |
| **SOURCE** | Location where hard documents were found at time of collection. | Joe Smith Office; HR File Room |
| **VOLUME** | The name of the CD or Hard Drive for ESI, or collection, binder, cabinet for hard copy docs. | VOL0001 |
| **RECORD TYPE** | The type of document / record. | Email, text message, instant message, hard copy, loose eFile |
| **EMAIL SUBJECT** | The subject line of the email. | |
| **EMAIL AUTHOR / FROM** | The display name and email of the author of an email. | Joe Smith <jsmith@email.com> |
| **EMAIL RECIPIENTS / TO** | The display name and email of the recipient(s) of an email. | Joe Smith <jsmith@email.com>; tjones@email.com |
| **EMAIL CC** | The display name and email of the copyee(s) of an email. | Joe Smith <jsmith@email.com>; tjones@email.com |
| **EMAIL BCC** | The display name and email of the blind copyee(s) of an email. | Joe Smith <jsmith@email.com>; tjones@email.com |
| **EMAIL ATTACHMENT COUNT** | The number of attachments to a parent. | Numeric |
| **EMAIL ATTACHMENT NAME** | The original file name of attached record. | Attach1.doc |

12

| Field Name | Description | Example / Format |
|---|---|---|
| **RECEIVEDDATE** | For email, the date the document was received. | MM/DD/YYYY |
| **RECEIVED TIME** | For email, the time the document was received. | HH:MM |
| **SENT DATE** | For email, the date the document was sent. | MM/DD/YYYY |
| **SENT TIME** | For email, the time the document was sent. | HH:MM |
| **EMAIL IMPORTANCE** | Email Importance Flag. | Normal, Low, High |
| **EMAIL CONVERSATION INDEX / THREAD TEXT** | ID used to tie together email threads. | 01C72AC4C |
| **TIME OFFSET VALUE / TIMEZONE PROCESSED** | The time zone that the data is set to when processed. NOTE: This should be the time zone where the documents were located at time of collection. | PST, CST, EST, etc. |
| **FILE NAME** | The file name of a native document. | Document Name.xls |
| **FILE AUTHOR** | The author of a document from extracted metadata. | jsmith |
| **DOC TITLE** | The extracted title of the document. | Table of Contents |
| **FILE MANAGER / APPLICATION DESCRIPTION** | Native file application. | Microsoft Excel, Word, etc. |
| **FILE EXTENSION** | The file extension of a document. | XLS |
| **HIDDEN DATA** | Whether hidden exists in the doc. For example, hidden Excel cells or PowerPoint slides. | Y, N, Blank |
| **FILE CREATE DATE** | For e-files and attachments, the date the document was created. | MM/DD/YYYY |
| **FILE CREATE TIME** | For e-files and attachments, the time the document was created. | HH:MM |
| **FILE LAST MODIFICATION DATE** | For e-files and attachments, the date the document was last modified. | MM/DD/YYYY |
| **FILE LAST ACCESS DATE** | For e-files and attachments, the date the document was last accessed. | MM/DD/YYYY |
| **FILE LAST SAVED BY** | For e-files and attachments, the last individual to save the file. | jsmith |
| **FILE LAST EDITED BY** | For e-files and attachments, the name of the last person to edit the document from extracted metadata. | jsmith |
| **FILE UNREAD** | Y if an email is unread, N if read, and blank for attachments and non-email documents. | Y, N |
| **DATE APPOINTMENT START** | Date of calendar appointment entry. | MM/DD/YYYY |

13

| Field Name | Description | Example / Format |
|---|---|---|
| TIME APPOINTMENT START | Start time of calendar appointment entry. | HH:MM |
| DATE APPOINTMENT END | End date of calendar appointment entry | MM/DD/YYYY |
| TIME APPOINTMENT END | End time of calendar appointment entry. | HH:MM |
| FILESIZE | The file size of a document (including embedded attachments). | Numeric |
| FILE PATH / ORIGINAL PATH | Location of the original document / location in the ordinary course of business. This field should be populated for email and e-files. | Joe Smith/email/Inbox Joe Smith/email/Deleted Items |
| MD5HASH | The MD5 Hash value or de-duplication key assigned to a document. | |
| NATIVELINK | The full path to a native copy of a document. | D:\NATIVES\ABC000001.xls |
| FULLTEXT | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers. Note: emails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. | D:\TEXT\ABC000001.txt |